**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARK C. SAVIGNAC and<br>JULIA SHEKETOFF,<br><br>   *Plaintiffs*,<br><br>   v.<br><br>JONES DAY, STEPHEN J. BROGAN,<br>and BETH HEIFETZ,<br><br>   *Defendants*. | Case No. 1:19-cv-02443-RDM |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR 30-DAY EXTENSION**

For the following reasons, Defendants cannot show good cause for a 30-day extension. *See* Fed. R. Civ. P. 6(b)(1). Plaintiffs respectfully ask that the Court deny their motion.

**1.** Defendants have already taken definitive legal and factual positions on this routine employment discrimination case, demonstrating that they have had all the time they need to investigate and research it. On the same day Plaintiffs filed the Complaint, Jones Day—which has had Plaintiffs' EEOC charges since June—posted to the firm's home page (and then to Facebook and Twitter) an inaccurate and misleading statement from Defendant Stephen Brogan discussing Plaintiffs' claims and smearing their reputations. Brogan's statement, which is attached as Exhibit A, makes clear that Defendants lack good cause for an extension.

The issues that Defendants seek additional time to look into are straightforward: whether Jones Day's parental leave policy is unlawfully discriminatory; whether a negative review that reduced Julia's 2017 raise through Jones Day's black-box compensation system was discriminatory; and whether Defendants' firing of Mark three business days after Plaintiffs challenged the parental leave policy was unlawful retaliation and interference with parental leave.

The issue about the legality of the parental leave policy is a question of law that Jones Day has already answered. Brogan's tweeted statement expresses a definitive legal view: that

Plaintiffs' position is "legally indefensible" and ignores "both the law and biology." Ex. A. And Jones Day rejected Plaintiffs' request for equal treatment nearly a year ago by emailing their legal defense of the policy, which declares that the two cases and EEOC guidance example cited in that email "confirm the propriety of Jones Day's approach." Ex. B.

Defendants also have purportedly investigated and adjudicated Julia's claim of pay discrimination. Brogan's statement announces that the claim is "frivolous" and "was not made in good faith" (Ex. A)—an extremely serious allegation against Julia as an officer of this Court that surely would not have been made by a world-class law firm absent an exhaustive investigation.

And Defendants fired Mark, so they know why they fired him. They have given their reason in Brogan's statement. Ex. A. There is nothing to investigate.

**2.** Jones Day could afford to hire any firm in the world to defend it; it has chosen to litigate pro se. It is fully equipped to respond in September. The two attorneys that Defendants selected to enter appearances—the current head of the firm's ten European offices (which might explain why she is "currently traveling abroad") and the former head of its Boston office—are among the highest ranking of Jones Day's 2,500 lawyers. They will be supported by a small army of unnamed associates and other partners.[1]

Jones Day demonstrated that it can move quickly when it wants to—and that it considers the legal rights involved here either very straightforward or totally insignificant—when it took just three business days from receiving the January 16 email set forth at paragraph 146 of the Complaint to fire Mark. Defendants do not need 51 days to respond in this case.

**3.** As for prejudice, Plaintiffs recognize that anyone who challenges discrimination in court must accept a certain level of stress and other psychological and reputational harms for the duration of the lawsuit. But it is also true that delay is the standard tactic of employers charged with discrimination, and that unnecessary delays in discrimination cases undermine the civil rights

---

[1] With the vast resources at their disposal, it is notable that Defendants chose as their lead counsel a partner who supervised Mark's work in 2018, wrote him a kind email recognizing his commitment to the case, and is a fact witness in this litigation.

laws by unnecessarily increasing the costs to plaintiffs of pursuing their rights. Presumably that is why the Civil Rights Act of 1964 instructs that employment discrimination cases "be in every way expedited." 42 U.S.C. § 2000e-5(f)(5). Defendants' tactic of putting off litigation in court even as they attack Plaintiffs on Facebook and Twitter also undermines the civil rights laws by deterring others from speaking out against discrimination at Jones Day.

Plaintiffs seek an expeditious resolution to this case. Delay is particularly prejudicial here because litigation of this suit will refute Brogan's statement—which remains posted to Jones Day's home page and "pinned" to the top of its Twitter account—and vindicate Plaintiffs. Defendants are fully entitled to try this case on social media. But Plaintiffs submit that Defendants should not be permitted to do so while at the same time putting off Plaintiffs' vindication in court.

Plaintiffs recognize that good cause for extensions of time often exists. Under the circumstances, however, Defendants cannot show good cause for a 30-day extension, which would work against the just and speedy determination of this action. Plaintiffs respectfully ask that the Court deny Defendants' motion.

Dated: August 19, 2019

| | |
|---|---|
| /s/ Julia Sheketoff | /s/ Mark C. Savignac |
| Julia Sheketoff (pro se) | Mark C. Savignac (pro se) |
| 1112 M St. NW #411 | 1112 M St. NW #411 |
| Washington, D.C. 20005 | Washington, D.C. 20005 |
| (202) 567-7195 | (217) 714-3803 |
| sheketoff@gmail.com | marksavignac@gmail.com |
| D.C. Bar No. 1030225 | D.C. Bar No. 995367 |