## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARK C. SAVIGNAC and
JULIA SHEKETOFF,

     *Plaintiffs*,

     v.

JONES DAY, STEPHEN J. BROGAN,
and BETH HEIFETZ,

     *Defendants*.

Case No. 1:19-cv-02443-RDM

## REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SURREPLY

**1.** Jones Day's reply marked an astonishing desertion of its opening brief. It is beyond genuine dispute that the reply "in fact raises arguments or issues for the first time" and "expand[s] the scope of the issues presented." Dkt. 22 at 1. Though Plaintiffs' motion identified ten new arguments (Dkt. 21), Jones Day only tries to justify one of those late arrivals: Its argument that it actually *does* require new mothers to stop taking sex-based "disability" leave once they are able to work, rather than giving them eight weeks of sex-based leave regardless of disability. Dkt. 22 at 2-3; *see, e.g.*, Reply 3. But Jones Day does not dispute that it failed to raise this argument in its opening brief, or that it readily could have raised it—and surely would have, if the argument had any basis in reality. *See also* Surreply 2-3, 7-9; *MBI Group, Inc. v. Credit Foncier Du Cameroun*, 616 F.3d 568, 575 (D.C. Cir. 2010) (arguments first raised in reply are forfeited).

**2.** Since Plaintiffs had no prior opportunity to provide their position on what is now Jones Day's principal argument, it stands to reason that a surreply setting forth that position "would be helpful to the resolution of the pending motion" (Dkt. 22 at 1)—though of course the Court

could simply ignore the forfeited new issue.  Jones Day does not seriously contend that the proposed surreply is unhelpful: Its ostensible argument on that point (Dkt. 22 at 2-3) is just a rehash of its new merits argument.  Jones Day's felt need to shore up its reply brief with such a filing— really an unacknowledged "sur-sur-reply"—betrays its concern that Plaintiffs' proposed surreply may be *all too helpful* to the Court in disposing of the reply's meritless new contentions.

3.      Jones Day's latest filing also struggles hard to reframe the narrative and situate *Plaintiffs* as the ones who "continuously raise new arguments." Dkt. 22 at 2.  It does not succeed.

a.      Either Jones Day gives new mothers eight weeks of extra sex-based leave or it does not.  That is a question of fact, as Jones Day acknowledges.  Reply 6 (calling Plaintiffs' understanding of Jones Day's policy "*factually* unreasonable"); Reply 7 (twice more calling Jones Day's policy a matter of "fact").  By contrast, "the issue about the *legality* of [such a] policy is a question of law," as "Plaintiffs have consistently maintained."  Dkt. 22 at 3 (emphasis added).

Until Jones Day filed its reply brief, the legal question (whether giving mothers the extra sex-based leave regardless of disability is lawful) was the only question at issue.  The factual question (whether Jones Day does so) was undisputed: Jones Day had never cast the slightest doubt on Plaintiffs' clearly expressed understanding of its policy and, indeed, had consistently *admitted* (including in its written family leave policy and through its Human Resources Director) that it gives mothers eight extra weeks of paid leave.  Surreply 2, 7-9; *see also* MTD 11 (acknowledging "the eight weeks of disability leave that the [f]irm provides to biological mothers").

After watching Plaintiffs dismantle its legal position in their opposition brief, however, Jones Day tried to "switch horses" (Dkt. 22 at 3).  It changed up its staffing of the case, discarded its arguments on the legal question, and "attempt[ed] to manufacture factual issues" (Dkt. 22 at 2): While its opening brief averred that "the underlying dispute [about its policy] is purely *legal*"

(MTD 17 (emphasis added)), its reply asserted for the very first time that "Plaintiffs' challenge to the [f]irm's policies rests on ... a *factually* unreasonable premise" (Reply 6). "Major tactical reversal" (Dkt. 22 at 3) is an understatement.

   **b.**   By contrast, Jones Day's assertion that *Plaintiffs* have "recharacterized" their position rings hollow. Jones Day pretends that Plaintiffs only "now" claim that they are not challenging its written short-term disability policy. Dkt. 22 at 2. The truth—as Jones Day recently admitted (Reply 4)—is that Plaintiffs have *never* complained about that.

   Jones Day also asserts that Plaintiffs are "attempting to manufacture factual issues" by contending that its "'actual policy' somehow differs from its 'written policies.'" Dkt. 22 at 2. But Jones Day's actual policy is to give mothers 18 weeks of paid leave (compared to ten weeks for fathers). *See* Compl. ¶¶ 110-16; Surreply 2-3, 8-9. And its written family leave policy says exactly that—making it an *accurate admission* by Jones Day that it gives women an extra eight weeks of leave regardless of disability. *See* Surreply 7-8.

   In truth, it is *Jones Day* that is striving mightily to distinguish its written policies from its actual policy, asserting that the written policies compel dismissal even though Plaintiffs squarely allege—and everyone on both sides knows perfectly well—that "[t]he reality is that Jones Day provides 'the eight weeks' of 'disability leave' ... to all biological mothers without regard for how long they are disabled from performing legal work." Compl. ¶ 112; *see* Surreply 8-9. But though the written family leave policy is a damning admission by Jones Day, dismissal would be inappropriate no matter what the written policy said. With or without that written admission, the Complaint more than adequately alleges that Jones Day actually has the policy that Plaintiffs

challenge.  *See* Surreply 3, 9.[1]

      **c.**     Jones Day also accuses Plaintiffs of switching "from a facial legal challenge to an as-applied factual one."  Dkt. 22 at 3.  Jones Day appears to misconceive what an as-applied challenge is, and the challenge has only become "factual" inasmuch as Jones Day has conjured up a factual dispute about its (previously conceded) policy.  To the extent that Jones Day uses the term "facial" to refer to a challenge solely to a written text, Plaintiffs have never suggested that their challenge was so limited.  The Complaint is clearly focused on "reality," not just a written policy read in a vacuum.  *See* Compl. ¶¶ 104-35.  In all events, any "distinction [between facial and as-applied] goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint."  *Citizens United v. FEC*, 558 U.S. 310, 331 (2010).

      **d.**     As for Jones Day's ad hominem closing paragraph, the Court can judge for itself which parties appear to have acted precipitately and are "now left to develop *post hoc* rationales for their conduct" (Dkt. 22 at 3).

---

[1] Even considered on its own terms, Jones Day's tardy "eisegesis" of its written family leave policy requires that the phrase "the [f]irm will provide mothers eight weeks of paid leave under the [disability] policy" (Dkt. 1-1 at 3) mean that the eight weeks of extra leave are, in some metaphysical sense, "conferred" by the disability policy—and thus *do not actually exist* because they are mentioned only in the family leave policy, not in the disability policy. *See* Dkt. 22 at 2; Reply 4.  But that phrase is more sensibly understood to mean (for example) that the eight weeks of sex-based leave are deemed to be *paid* under the disability policy for some esoteric administrative or bookkeeping or tax purpose known only to Jones Day and its third-party administrator.  Or it could merely mean that the eight weeks count against Jones Day's 13-week cap on disability leave at full pay (Dkt. 1-1 at 4), thereby limiting how long Jones Day would keep a badly disabled new mother on its payroll.  Or the reference to the disability policy could be a product of its Human Resources Director's misguided theory (based on her mischaracterizations of *Guerra*, *Johnson*, and the EEOC guidance) that giving extra leave to women is lawful so long as it is *labeled* "disability leave."  *See* Dkt. 15-1 at 2.  Unlike Jones Day's self-serving and implausible interpretation, these readings would not raise the question (which Jones Day has yet to take on) of why the written family leave policy would so badly mischaracterize the written disability policy. *See also* Surreply 7-8.

/s/ Julia Sheketoff
Julia Sheketoff (pro se)
1112 M St. NW #411
Washington, D.C. 20005
(202) 567-7195
sheketoff@gmail.com
D.C. Bar No. 1030225

November 8, 2019

/s/ Mark C. Savignac
Mark C. Savignac (pro se)
1112 M St. NW #411
Washington, D.C. 20005
(217) 714-3803
marksavignac@gmail.com
D.C. Bar No. 995367