**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MARK C. SAVIGNAC and    )
JULIA SHEKETOFF,     )
            )
    *Plaintiffs*,   )   Civ. No. 1:19-02443 (RDM)
            )
*v.*          )
            )   **MEMORANDUM IN OPPOSITION TO**
JONES DAY, *et al.*,    )   **PLAINTIFFS' MOTION FOR LEAVE TO**
            )   **FILE SUPPLEMENTAL COMPLAINT**
    *Defendants*.  )

On Monday, August 12, 2019—the day before Plaintiffs filed this suit, and two days before they served it—a *New York Times* reporter contacted Jones Day for comment on "a discrimination complaint that two former Jones Day associates, Julia Sheketoff and Mark Savignac, are planning to file against the firm." (Exh. A.) After the Firm advised that it could not comment on claims it had not seen, Sheketoff emailed a copy of the impending Complaint, because "[t]he New York Times reporter said you asked to see [it]." (Exh. B.) The Firm then responded to the inquiry by providing the reporter with a statement rebutting the claims. (Exh. C.) After the Complaint was filed and the *New York Times* ran its story, including professional photographs of the Savignac-Sheketoff family in their home (*see* Exh. D), Jones Day published the statement on its website.

Eleven months later, with a motion to dismiss their Complaint fully briefed, Plaintiffs now seek the Court's leave to supplement their pleading under Federal Rule 15(d). They want to allege that the Firm's statement—the statement responding to a press inquiry that *Plaintiffs* had initiated and facilitated, and summarizing the Firm's defense to allegations that *Plaintiffs* had asserted and chose to publicize—constituted unlawful "retaliation" for the filing of their (not-yet filed) lawsuit. (Dkt. 25.) This litigation has reached the apex of absurdity. The Court should exercise its discretion to deny the motion.

1

\*       \*       \*

"The decision to grant leave under Rule 15(d) is discretionary." *James Madison Project v. DOJ*, 208 F. Supp. 3d 265, 277 (D.D.C. 2016); *see also Clean Water Action v. Pruitt*, 315 F. Supp. 3d 72, 79-80 (D.D.C. 2018) (distinguishing motion for leave to amend).  The Court should deny leave to file a supplemental pleading if its claims are futile, meaning that they could not survive a motion to dismiss. *SAI v. DHS*, 149 F. Supp. 3d 99, 126 (D.D.C. 2015).

Plaintiffs' new claims are futile.  Most obviously, responding to and defending against a lawsuit is not—and cannot be—"retaliation" for the suit's filing.[1]  Otherwise employers would be committing retaliation every time they answer a discrimination complaint (denying the plaintiff's allegations and thus calling him a liar) or depose the plaintiff (harassing her with oppressive and intrusive questions).  The lawsuit is, to be sure, a but-for cause of the answer and deposition.  But anti-retaliation provisions "protec[t] an individual not from all retaliation, but from retaliation that produces an injury or harm" cognizable under Title VII—*i.e.*, harm "likely to dissuade employees from complaining or assisting in complaints about discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 69-70 (2006).  Any reasonable employee who is contemplating a discrimination suit necessarily understands that doing so will result in litigation in a public forum—the employer will defend against the suit, dispute its allegations, engage in discovery, and

---

[1] The claims are also futile for other reasons.  Jones Day's statements were factually true, rational interpretations of disclosed facts, or non-falsifiable matters of opinion.  *See Trudeau v. FTC*, 456 F.3d 178, 191-92 (D.C. Cir. 2006); *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 519 (1991); *Moldea v. N.Y. Times Co.*, 15 F.3d 1137, 1145 (D.C. Cir. 1994); *Clemmons v. Acad. for Educ. Dev.*, 70 F. Supp. 3d 282, 308-09 (D.D.C. 2014).  And the new Title VII claim is time-barred for the same reasons as Plaintiffs' original Title VII claim (*see* Dkt. 15 at 29): Their (supplemental) EEOC charge, like their original charge, was filed beyond the applicable 180-day window.  *See Hunter v. Dist. of Columbia*, 797 F. Supp. 2d 86, 95 (D.D.C. 2011) ("[A] plaintiff must exhaust his administrative remedies with respect to distinct acts that occurred after the filing of an administrative charge.").  The press release was issued on August 14, 2019 (Dkt. 25-1, ¶ 16), yet Plaintiffs did not file their EEOC charge until June 8, 2020 (*see* Exh. E).

exercise its procedural rights to vindicate itself.  Public airing of the defendants' legal and factual positions cannot, in the legally relevant sense, "dissuade" the employee from suing, because this is a natural and inevitable incident of litigation.

As the Seventh Circuit thus explained, "it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation prohibited by these statutes." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998).  Following that principle, a court in this district rejected an attempt to base a retaliation claim on "adversarial conduct arising in the course of litigation," such as yelling at the plaintiff during a deposition and filing a sanctions motion against her.  *Baird v. Gotbaum*, 888 F. Supp. 2d 63, 74 (D.D.C. 2012).  Indeed, courts generally hold that even *filing a counterclaim* against the plaintiff—which is not the norm in employment litigation, and imposes more of a burden—cannot be the basis for a retaliation claim.  *See Gross v. Akin, Gump, Strauss, Hauer & Feld, LLP*, 599 F. Supp. 2d 23, 33 (D.D.C. 2009) (following "other federal courts" that "specifically held that counterclaims cannot, as a matter of law, constitute an adverse employment action"); *Beltran v. Brentwood N. Healthcare Ctr., LLC*, 426 F. Supp. 2d 827, 833-34 (N.D. Ill. 2006) ("[I]f the mere filing of a counterclaim were sufficient to give rise to a retaliation claim, then every defendant in an FLSA, Title VII or ADA lawsuit who asserts a counterclaim would be subject to a retaliation claim.").  Treating rebuttal of a lawsuit's allegations as retaliation is even more of a non-starter because, unlike a counterclaim, it is *inevitable* in contested litigation.

The only difference between this case and the routine filing of an answer denying a claim's allegations or a motion to dismiss calling the allegations implausible is that Plaintiffs here object to an *out-of-court* summary of the Firm's defense.  That cannot possibly matter.  No reasonable employee would be dissuaded more by the latter than the former.  After all, the Firm's challenged statement contained only comments directly responsive to Plaintiffs' allegations—the same basic

points as its publicly filed motion to dismiss, and the same points that will be in an answer (should

one be needed).  "What is contained in the statement is no more than what would be contained in

an answer to the complaint"; under those circumstances, "prohibit[ing] [a defendant] from issuing

the type of statement that it did . . . would be tantamount to imposing a restraint on its ability to

issue any comment on the litigation unless and until it received a favorable jury verdict." *Coleman*

*v. Am. Broad. Cos.*, No. 84-1594, 1985 WL 365, at *9 (D.D.C. June 18, 1985).  That is not the

law.  The statement does not implicate the retaliation statutes because it imposed no harm above

and beyond the litigation itself.  *See McBryde v. Comm. To Review Circuit Council Conduct &*

*Disability Orders*, 264 F.3d 52, 57 (D.C. Cir. 2001) (holding that judge's challenge to suspension

order was moot, despite claimed injury to his reputation, because "[t]he legally relevant injury is

only the incremental effect of a record of the suspensions ..., over and above that caused by the

Council's and the Conference's explicit condemnations").  Indeed, in reporting on Jones Day's

public court filings, the press repeated the same basic points.  (Exh. F.)

Even if statements in a press release could theoretically be more of a deterrent than those

same statements made in court filings, that cannot be true here, when Plaintiffs affirmatively

utilized the press as part of their litigation strategy.  In his "demand letter" to Jones Day, Savignac

demanded 18 weeks of paid leave "or else" the matter "will be decided in the D.C. Circuit *and in*

*the court of public opinion*."  (Dkt. 1, ¶ 146 (emphasis added).)  Engaging with the press was part

of Plaintiffs' strategy (and threat) from the start.  As the emails with the *Times* and Sheketoff show,

Plaintiffs shopped their story to a national newspaper in advance of filing their Complaint—so far

in advance that the newspaper was ready to print the story, accompanied by professional photos of

Plaintiffs and their child shot by a *Times* photographer in the Plaintiffs' home, on the day of the

filing.  Further, before filing their Complaint, Plaintiffs knew that the newspaper had asked Jones

Day for a response and even *facilitated* that response by sharing an advance copy of their Complaint with Jones Day.  (Exhs. A-D.)  Far from being deterred, Plaintiffs continued to seek additional press coverage even *after* Jones Day posted its statement online.  (*See* Exh. G.)

"[T]he significance of any given act of retaliation will often depend upon the particular circumstances.  Context matters."  *Burlington N.*, 548 U.S. at 69.  Here the context makes clear that Plaintiffs' new retaliation claims are as contrived as their original Complaint.  No reasonable employee who seeks out nationwide press coverage for his claims against an employer would be dissuaded from advancing the claims by the prospect of the employer's press response.  *See Baird*, 888 F. Supp. 2d at 74 (refusing to treat the filing of a sanctions motion as retaliation, "particularly ... since plaintiff had filed her own sanctions motion").  Plaintiffs' new retaliation claims are futile, and the Court should deny leave to file them.

*     *     *

It is not and cannot be the law that Plaintiffs may seek widespread publicity for their claims against Jones Day yet the Firm commits unlawful "retaliation" when it responds to defend itself. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 392 (1992) (rejecting rule that would "license one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensberry rules"). For these reasons, the Court should deny Plaintiffs' motion for leave.

July 8, 2020                                           Respectfully submitted,

                                                      Traci Lovitt (Bar No. 467222)
                                                      Terri L. Chase *(pro hac vice)*
                                                      JONES DAY
                                                      250 Vesey Street
                                                      New York, NY 10281
                                                      Phone: (212) 326-3939

Anderson T. Bailey (*pro hac vice*)
JONES DAY
500 Grant Street
Pittsburgh, PA 15219
Phone: (412) 391-3939

*/s/ Christopher DiPompeo*
Christopher DiPompeo (Bar No. 1003503)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Phone: (202) 879-3939

*Attorneys for Defendants*