# EXHIBIT A

**From:** Scheiber, Noam <noam.scheiber@nytimes.com>
**Sent:** Monday, August 12, 2019 11:12 AM
**To:** Petrou, David R. <drpetrou@JonesDay.com>
**Subject:** from New York Times reporter

Dear Mr. Petrou,

I'm a reporter with the NYT working on a story about a discrimination complaint that two former Jones Day associates, Julia Sheketoff and Mark Savignac, are planning to file against the firm. The impending complaint will allege that Jones Day's parental leave policy discriminates against biological fathers and harms biological mothers by making it harder for fathers to take an equal role in caregiving. It also alleges that the firm fired Ms. Savignac in retaliation for raising concerns about the parental leave policy. Mr. Savignac had asked the firm to grant him the 18 weeks it grants biological mothers and adoptive parents who seek to be their child's primary caregiver, rather than the 10 weeks it grants to biological fathers.

I think the firm is aware of the allegations because Ms. Sheketoff and Mr. Savignac filed charges with the EEOC in June of this year. They have decided not to wait for a right-to-sue letter before filing their complaint in federal district court in DC, though the specific Title VII claims will have to wait for those letters before they can move forward.

Our story will go live tomorrow morning. Is there any chance you or a colleague have some time to discuss this today?

Best,

Noam Scheiber

# EXHIBIT B

**From:** Julia Sheketoff <sheketoff@gmail.com>
**Sent:** Tuesday, August 13, 2019 11:22 AM
**To:** Lovitt, Traci L. <tlovitt@JonesDay.com>
**Subject:** Jones Day Complaint


Traci,

The New York Times reporter said you asked to see the attached complaint.

Best,
Julia Sheketoff

# EXHIBIT C

**From:** Lovitt, Traci L.
**Sent:** Tuesday, August 13, 2019 12:17 PM
**To:** Scheiber, Noam <noam.scheiber@nytimes.com>
**Subject:** Jones Day's comment

Noam,

Thank you, again, for your time and for working with me to find a fair path forward. Julia sent the complaint, and we have reviewed it. I have attached Jones Day's response to the complaint, which you can attribute to Jones Day. I believe the complaint is in the process of being filed, but given that you are running the story at the time of filing, we have assumed filing in the attached. Also, as promised, we will not publish this statement on our website or social media, or respond to other media outlets, until after you have published your story.

Best,
Traci

Traci L. Lovitt
JONES DAY® - One Firm Worldwide℠
250 Vesey Street
New York, NY 10281-1047
Direct Dial: +1.212.326.7830
Mobile: +1.917.547.2562
Facsimile: +1.212.755.7306
tlovitt@jonesday.com

**From:** Scheiber, Noam
**Sent:** Tuesday, August 13, 2019 10:42 AM
**To:** Lovitt, Traci L.
**Subject:** Re: Email

sounds good, thx again.

On Tue, Aug 13, 2019 at 9:40 AM Lovitt, Traci L. <tlovitt@jonesday.com> wrote:

Thank you. That's a good resolution. When we get the complaint, I can revert with the required timing.

Traci L. Lovitt
JONES DAY® - One Firm Worldwide℠
250 Vesey Street
New York, NY 10281-1047
Direct Dial: +1.212.326.7830
Mobile: +1.917.547.2562
Facsimile: +1.212.755.7306
tlovitt@jonesday.com

**From:** Scheiber, Noam <noam.scheiber@nytimes.com>
**Sent:** Tuesday, August 13, 2019 10:36 AM
**To:** Lovitt, Traci L. <tlovitt@JonesDay.com>
**Subject:** Re: Email

Quick follow-up: Mark Savignac is going to email you the complaint shortly. On timing: it sounds like the complaint isn't likely to be filed and up on pacer till tomorrow morning - they have to go through all the bureaucratic steps that the district court requires when you represent yourself, which includes personally

talking to a judge. So i think you guys should have enough time to comment before the story goes live. Do you want to reach out when you've had a chance to digest the complaint and have a sense of how much time you need to comment?

On Tue, Aug 13, 2019 at 9:18 AM Scheiber, Noam <noam.scheiber@nytimes.com> wrote:

> Thanks, and thanks for chatting just now. The editors here want to post the piece online when the plaintiffs file because the feeling is that other publications will write it up pretty quickly once it's in the public domain. But we will add comment from you guys as soon as you have it ready, and get that comment into the print version that closes tonight.
>
> I'm going to try to send you the complaint shortly, but we just want to check with the plaintiffs first to make sure there aren't any issues around doing that.
>
> Noam
>
> On Tue, Aug 13, 2019 at 9:17 AM Lovitt, Traci L. <tlovitt@jonesday.com> wrote:
>
>> Noam,
>>
>> Forgot to share my email address with you. This is it.
>>
>> Best,
>> Traci
>>
>> Traci L. Lovitt
>> JONES DAY® - One Firm Worldwide℠
>> 250 Vesey Street
>> New York, NY 10281-1047
>> Direct Dial: +1.212.326.7830
>> Mobile: +1.917.547.2562
>> Facsimile: +1.212.755.7306
>> tlovitt@jonesday.com
>>
>>
>> ***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

# EXHIBIT D

SUBSCRIBE NOW Account

ADVERTISEMENT

# *Couple's Suit Over Parental Leave Is New Challenge to Big Law Firm*



Julia Sheketoff and Mark Savignac at home with their son, Henry. They are suing Jones Day, where they worked as lawyers, over its parental-leave and wage practices, along with Mr. Savignac's dismissal.  T.J. Kirkpatrick for The New York Times

**By Noam Scheiber**

Aug. 14, 2019

Jones Day, one of the nation's largest law firms, faced a harsh spotlight this year when six female lawyers filed a class-action complaint saying they had faced gender and pregnancy discrimination while working there and had been subjected to a "fraternity culture."

Now the glare has intensified, with a couple formerly employed at Jones Day charging in a federal lawsuit that the firm discriminated in its parental-leave policies and that the husband was fired after he questioned the practice.

The complaint, filed Tuesday, maintains that the firm and some of its partners promoted crude stereotypes about gender roles, with a prominent male partner asking rhetorically, "What would a man do on parental leave — watch his wife unload the dishwasher?" The same partner, the suit claims, teased a male associate for taking parental leave to care for a child.

The plaintiffs are Mark C. Savignac and Julia Sheketoff, who worked in the firm's elite appellate practice in Washington. Their lawsuit asserts that Jones Day's policy unlawfully denied Mr. Savignac the full leave he was entitled to after their son was born in January and that it unlawfully fired him when he complained about the policy.

ADVERTISEMENT

"I was shocked; we truly never considered that they would fire me," Mr. Savignac said. "We thought the law was so obvious."

Under the firm's policy, biological mothers who seek to be a primary caregiver receive 10 weeks of paid family leave plus eight weeks of disability leave, while biological fathers who seek to be a primary caregiver receive 10 weeks of family leave. The firm also awards new adoptive parents of either gender 18 weeks of paid leave if they seek to be a primary caregiver.

Thanks for reading The Times.
Subscribe to The Times

The Equal Employment Opportunity Commission has held that employers can award biological mothers eight weeks more paid leave than biological fathers if the additional time is tied to their recovery from the physical toll of childbirth.

But in their legal complaint, Mr. Savignac and Ms. Sheketoff argue that Jones Day awards mothers eight additional weeks of paid leave without regard to whether their physical condition warrants it. The plaintiffs write that the policy gives "female associates more time to enable their husbands to prioritize their careers over child care" and "reflects and reinforces archaic gender roles and sex-based stereotypes."

### Pregnancy Discrimination Is Rampant Inside America's Biggest Companies



Many pregnant women have been systematically sidelined in the workplace. They're passed over for promotions and raises. They're fired when they complain.

Cynthia Thomas Calvert, who advises employers about family-leave policies, said the claim's fate would hinge on determining whether the policy was intended to provide greater accommodation to recovering mothers or more time for bonding with a child. If meant to foster bonding, the time is supposed to be equal for fathers and mothers. Advocates argue that policies making it easier for fathers to assume domestic responsibilities help overcome an assumption that mothers are less devoted to their careers.

ADVERTISEMENT

Ms. Calvert said that the fact that adoptive parents receive the same amount of paid leave as biological mothers supported the plaintiffs' argument that the leave was for bonding, but that this fact was not decisive.

A policy like Jones Day's does not appear to have been tested in court, but in 2015 CNN settled an analogous case with a biological father.

David Lopez, a former general counsel of the Equal Employment Opportunity Commission, said Mr. Savignac appeared to have a strong claim that his firing was unlawful. Mr. Savignac was fired three business days after he and Ms. Sheketoff said in an email to the firm that the leave policy was discriminatory, and he had previously earned strong performance reviews, according to the complaint.

Jones Day defended its policy, saying it grants birth mothers eight weeks of paid disability leave to avoid having to ask for medical evidence that they are still recovering from childbirth. The firm said the firing of Mr. Savignac had not been in retaliation for criticizing the leave policy, which it said he and Ms. Sheketoff had done in 2018 without repercussions. Rather, it said, it fired him because he had shown a "lack of courtesy" to colleagues and an "open hostility to the firm," citing his email.

The firm also said its adoption-leave policy reflected the unique demands that adoptive parents can face, like foreign travel and legal proceedings.

Jones Day's policy is at odds with a trend in which companies are increasingly eliminating the distinction between fathers and mothers or primary and secondary caregivers. They award all employees the same amount of family leave for a new child, though women who give birth can sometimes receive additional time to recover through disability leave.

ADVERTISEMENT

Jones Day has risen to prominence in recent years thanks partly to its ties to President Trump, whose campaigns it has represented. Several lawyers joined the department from the firm, including Donald F. McGahn II, Mr. Trump's first White House counsel.

Mr. Savignac said he had been on parental leave for a few weeks when the firm emailed to say that he was fired, effective that day. He said that he asked Ms. Sheketoff to sit down and hand him their infant, for fear she might drop the baby upon hearing the news.



The lawsuit by Ms. Sheketoff and Mr. Savignac asserts that the gender disparity in family leave at Jones Day is intended to give "female associates more time to enable their husbands to prioritize their careers over child care."  T.J. Kirkpatrick for The New York Times

According to the lawsuit, after Jones Day fired Mr. Savignac, it refused to allow two partners who had worked closely with him and previously praised his work to recommend him to prospective employers. Mr. Savignac said he had applied to dozens of firms without receiving an offer before accepting an offer in June. Ms. Sheketoff left the firm while pregnant last year to work for a public defender's office, where she took a substantial pay cut.

Separately, the couple contends that the firm paid Ms. Sheketoff less than it would have paid a man because of her gender. The complaint says that Ms. Sheketoff received a smaller raise than she otherwise would have in 2017 after a negative evaluation from a male partner who scolded her for being

insufficiently deferential. The partner did not scold male associates who failed to defer to him, according to the complaint.

Jones Day denied that it had discriminated against Ms. Sheketoff and said that "her reviews from multiple partners were mixed."

Ms. Sheketoff was at Jones Day for almost four years, and Mr. Savignac was there about 20 months.

Their allegations echo those in the class-action complaint against Jones Day, filed in April, that spoke of a "fraternity culture." That lawsuit, pending in federal court, contends that women who give birth face obstacles to advancement at the firm and that women who have a second child are often asked to leave within a few months of returning to work.

ADVERTISEMENT

Both lawsuits describe a "black box" compensation system in which the firm's managing partner, Stephen J. Brogan, sets pay for associates. The complaints argue that this system enables pay discrimination against women.

Most large firms pay associates according to a so-called lock step system, said David Lat, a managing director at the legal recruiting firm Lateral Link. Under that approach, salaries are based on seniority, although bonuses can vary.

In a legal filing responding to the class-action complaint, Jones Day said that Mr. Brogan performs "a high-level review of proposed associate compensation adjustments" and denied that the system results in lower pay for women.

The firm said two plaintiffs in the earlier lawsuit had been asked to leave the firm after the birth of a second child because of "performance issues."

Both Ms. Sheketoff and Mr. Savignac were clerks at the United States Supreme Court before joining Jones Day, which typically hires more former

Supreme Court clerks than any other firm.

Ms. Sheketoff and Mr. Savignac said Jones Day had enlisted them to recruit other former clerks and extol the virtues of working in the firm's appellate practice. "I feel bad about having worked to persuade other people who may have been misled," Mr. Savignac said.

ADVERTISEMENT

**Thanks for reading The Times.** Expand your horizons with a Times subscription.
SUBSCRIBE

SUBSCRIBE

© 2020 The New York Times Company

NYTCo     Contact Us     Work with us     Advertise     T Brand Studio     Your Ad Choices     Privacy     Terms of Service     Terms of Sale     Site Map     Help     Subscriptions

# EXHIBIT E

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  <br> ☒ EEOC | 570-2020-01973 |

| D.C. Office Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Mark C. Savignac** | **217.714.3803** | **3/22/1987** |

Street Address                                                    City, State and ZIP Code

**1112 M St NW, Apt 411, Washington, DC 20005**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **Jones Day** | **2500+** | **202.879.3926** |

Street Address                                                    City, State and ZIP Code

**51 Louisiana Ave NW, Washington, DC 20001**

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **08-13-2019**   Latest **present**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**Please see attached.**

*Received by EEOC*
*Washington Field Office*
*Jun 08 2020*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. **YES.** | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. <br> SIGNATURE OF COMPLAINANT |
| **June 08, 2020**          *Mark Savignac* <br> Date                    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:**  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1.  FORM NUMBER/TITLE/DATE.**  EEOC Form 5, Charge of Discrimination (11/09).

**2.  AUTHORITY.**  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3.  PRINCIPAL PURPOSES.**  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4.  ROUTINE USES.**  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5.  WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.**  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

This charge of retaliation in violation of Title VII is filed against Jones Day, the law firm that previously employed me and my wife, Julia Sheketoff, as associates in its appellate and Supreme Court practice group.

Julia left Jones Day late in 2018, while pregnant with our son. I continued to work there. On January 16, 2019, shortly after our son was born, Julia and I sent an email to Jones Day's human resources director and the head of my practice group. Our email explained that Jones Day's parental leave policy discriminates on the basis of sex and stated that, if Jones Day did not provide equal treatment, I would file a charge of discrimination with the EEOC and a Title VII lawsuit.

Three business days later, Jones Day fired me in retaliation for that email. Julia and I filed EEOC charges followed by a federal court lawsuit claiming sex discrimination and retaliation in violation of federal and D.C. civil rights laws, including Title VII.

This charge addresses Jones Day's subsequent retaliation against us for filing that lawsuit. We filed the lawsuit on August 13, 2019. Immediately thereafter, Jones Day retaliated against us by posting to its website a press release ostensibly penned by its managing partner, Stephen Brogan. Jones Day also took to social media to promote the press release to its tens of thousands of followers. The press release is attached to this charge.

Jones Day's publication of the press release constitutes illegal retaliation against us. It makes negative assertions about us that are false, willfully misleading, and calculated to deceive the reader. Jones Day leadership apparently intended to destroy our reputations; to provide future prospective employers, other members of the legal profession, and prospective clients with permanently available false and misleading negative information to dissuade them from hiring or otherwise doing business with us; and to deter other victims of illegal discrimination at Jones Day from coming forward by demonstrating Jones Day leadership's eagerness to destroy the careers and reputations of those who speak out.

The press release remains posted to Jones Day's website and social media. It is one of the top internet search results for our names, ensuring that any future prospective employer or client, or anyone else who takes an interest in us, will encounter Jones Day's malicious statements.

# NEWS

Jones Day Responds to
Litigation Challenging
Leave Policy

## Jones Day responds to litigation challenging leave policy

AUGUST 2019  |  FIRM NEWS

Jones Day is devoted to the importance of family and maintains an environment in which our lawyers can practice at the highest professional levels and have rewarding family lives. Among the benefits it provides to parents, the Firm gives lawyers who are primary caregivers, regardless of gender, ten weeks of paid leave and six weeks of unpaid leave after the birth of a child. Birth mothers are eligible to receive an additional eight weeks of paid leave under the Firm's short term disability policy. For adoptive parents, Jones Day provides eighteen weeks of paid leave, regardless of gender.

Today, two former associates—Mark Savignac and Julia Sheketoff—sued Jones Day claiming that the ten weeks of paid leave and six weeks of unpaid leave Mr. Savignac was offered when he and Ms. Sheketoff had a child constituted gender discrimination because he was not eligible for the paid disability leave offered to birth mothers. Ignoring both the law and biology, Mr. Savignac and Ms. Sheketoff complain that this generous family leave policy, which is fully consistent with guidance of the Equal Employment Opportunity Commission, perpetuates gender stereotypes because the Firm does not require birth mothers to submit medical evidence proving that childbirth has had a physical impact on them sufficient to justify disability leave. Neither the law nor common sense requires such intrusive disclosures. Jones Day's adoptive leave policy, which is gender neutral, reflects the fact that adoptive parents face unique demands on their time and finances that differ from those faced by biological parents— such as extended foreign travel and adoption-related legal and administrative hurdles.

Mr. Savignac's claim that he was retaliated against for espousing his legally indefensible view of Jones Day's family leave policy is both false and self-indulgent. In August 2018, Mr. Savignac and Ms. Sheketoff raised questions about the legal basis for the leave policies, and the Firm responded to those questions. No adverse actions were taken against either of them in response to their inquiries. Five months later, Jones Day terminated Mr. Savignac's employment because it concluded that he showed poor judgment, a lack of courtesy to his colleagues, personal immaturity, and a disinterest in pursuing his career at Jones Day—all of which are apparent in an intemperate email he sent to a member of our professional staff and in the complaint itself. Mr. Savignac exhibited open hostility to the Firm, demanding that he be given what he wants "or else" and claiming hardship under circumstances that no reasonable person would view as anything but exceptionally generous.

The gratuitous allegation that Ms. Sheketoff, who voluntarily left the Firm in August 2018, was a victim of gender pay discrimination is false and was not made in good faith. Ms. Sheketoff was a highly paid associate who made more than her husband despite the fact that her reviews from multiple partners were mixed, her contribution to billable client representations was below expectations, and her attention was focused on idiosyncratic concerns. Reflecting the frivolousness of her claims, Ms. Sheketoff resorts to the sensationalized allegation that the Firm doctored her website photo "to conform to the firm's Caucasian standards of female beauty." Jones Day never altered any photographs of Ms. Sheketoff, and in fact, Ms. Sheketoff personally selected the precise photo that was used on the Firm's website.

Jones Day intends to try this case in court, not in the media, and will have no further comment beyond the pleadings and proofs in the case.

*Jones Day is a global law firm with more than 2,500 lawyers in 43 offices across five continents. The Firm is distinguished by: a singular tradition of client service; the mutual commitment to, and the seamless collaboration of, a true partnership; formidable legal talent across multiple disciplines and jurisdictions; and shared professional values that focus on client needs.*

**STEPHEN J. BROGAN**
Managing Partner
Washington  |  + 1.202.879.3926
sjbrogan@jonesday.com
Practice:   Business & Tort Litigation

# YOU MAY ALSO BE INTERESTED IN:

**JUNE 2020  |  FIRM NEWS**

**Jones Day welcomes former Assistant U.S. Attorney and Chief of Cybercrime Unit Amy Harman Burkart as of counsel in Boston**

# EXHIBIT F

Daily Labor Report®

# Jones Day Defends Leave Policies, Blasts Dad-Lawyer's 'Threat'

By Patrick Dorrian

Sept. 28, 2019, 11:43 AM

- Says male associate demanded same leave as birth mothers

- Lawyer-wife's bias claims over performance, pay also lacking

Jones Day struck back at a lawsuit by husband and wife lawyers who accused the law firm of sex discrimination in the parental leave available to men, telling a D.C. federal court the claims are without merit.

Attorney Mark Savignac was instead fired by the firm because of "the poor judgment and immaturity" evident in his "extortionate threat" to hurt the firm's reputation if it didn't treat him the same as a new birth mother for parental-leave purposes, Jones Day said Sept. 27.

The filing seeks to quickly dismiss the lawsuit, which Savignac and wife Julia Sheketoff lodged against Jones Day Aug. 4 in the U.S. District Court for the District of Columbia.

The firm's policies relating to new parents are all gender-neutral, with primary caregivers eligible for up to 10 weeks of coverage and secondary caregivers up to four. That's regardless of sex, Jones Day said in its motion to dismiss.

The couple says they planned to share child-care duties equally. The sexist stereotypes underlying the firm's policies required Sheketoff to take more parental leave than she would have liked from the public defender job she started after leaving Jones Day, they say.

What Savignac really objected to was its short-term disability policy that permits "birth mothers alone" to seek an additional eight weeks of paid leave, Jones Day said. That differential treatment not only makes sense biologically, it's also required by anti-bias law, the firm said. The one federal appeals court to address a claim similar to Savignac's rejected it and the Equal Employment Opportunity Commission has embraced that view, the firm said.

Savignac's complaints and threats about parental leave weren't the sort of activity protected from workplace repercussions, Jones Day said. A reasonable attorney, let alone one with the pedigree of former U.S. Supreme Court clerk Savignac, couldn't have really believed Jones Day's handling of parental leave violates anti-bias law, the firm said. He therefore can't prove his discharge two weeks after his son's birth and three business days after he and Sheketoff sent Jones Day an email complaining about the alleged gender bias was illegal retaliation, the firm said.

The motion also seeks dismissal of Sheketoff's claims of sex discrimination in how her performance was rated and how she was paid by Jones Day. She left the firm shortly before giving birth.

Jones Day's pay practices are also the subject of a class lawsuit by female associates.

Savignac and Sheketoff represent themselves. Jones Day represents itself.

The case is Savignac v. Jones Day, D.D.C., No. 1:19-cv-02443, motion to dismiss 9/27/19.

To contact the reporter on this story: Patrick Dorrian in Washington at pdorrian@bloomberglaw.com

To contact the editor responsible for this story: Jo-el J. Meyer at jmeyer@bloomberglaw.com

© 2020 The Bureau of National Affairs, Inc.   All Rights Reserved

The United States Law Week

# Jones Day Says Parental Leave Suit Fails 'On Its Own Terms' (1)

By Julie Steinberg and Erin Mulvaney

Oct. 18, 2019, 10:42 AM

- Couple alleged policy discriminates against men

- Jones Day says claims lack merit

Jones Day is continuing to stand by its parental leave policies, telling a D.C. federal court that an attorney-couple's lawsuit is "an insubstantial quibble that fails even on its own terms."

Husband and wife lawyers Mark Savignac and Julia Sheketoff sued in August, alleging Jones Day's policy discriminates based on sex.

Savignac's discharge came two weeks after their son was born and three business days after he and Sheketoff sent the firm an email complaining about gender inequity in its allowing male employees to take eight weeks less leave for the birth of a child than female employees may use, according to the lawsuit.

Jones Day asked the U.S. District Court for the District of Columbia in September to dismiss the suit, saying Savignac was fired because of "the poor judgment and immaturity" evident in his "extortionate threat" to hurt the firm's reputation if it didn't treat him the same as a new birth mother for parental-leave purposes.

In response, the couple said the justification Jones Day cites for giving new mothers eight more weeks of paid leave than new fathers may take "is a sham."

Parental leave policies that exclude fathers from the same coverage as mothers have been targeted in recent years, which led to settlements with JPMorgan Chase and Estée Lauder. The U.S. Equal Employment Opportunity Commission's 2018 settlement with Estée Lauder was over its first lawsuit that targeted a policy that gave new mothers more than time than fathers.

Paid-time off policies are grabbing attention and have been targeted as the U.S. lags behind almost all developed nations for its lack of a national policy, as well as playing a role in the imbalance of power between men and women in the workplace.

In its latest filing, Jones Day said the firm's policy, including its use of a medically reasonable, rebuttable presumption that birth mothers have been certified disabled for eight weeks post-partum, is lawful. The plaintiffs concede that Jones Day's family leave policy—10 weeks for primary caregivers and four weeks for secondary caregivers, regardless of sex—is sex-neutral and lawful, the firm's Oct. 17 filing said.

According to the firm, the plaintiffs challenge the short-term disability policy by saying that instead of offering leave to birth mothers equal to the length of their post-partum disability and then excusing them from providing evidence of a disability for the first eight weeks after the birth, Jones Day offers eight weeks of disability leave as the benefit.

Those two regimes are "identical in all relevant and practical respects," Jones Day said.

And the operative terms of Jones Day's disability policy track what the plaintiffs acknowledge is lawful—that routine childbirth results in a standard four- to eight-week period of disability and new mothers need not provide evidence of disability for the first eight weeks after giving birth, the firm said.

Additionally, Savignac's demand for 18 weeks' paid leave was unreasonable and his email complaining about alleged bias wasn't protected activity, Jones Day said.

Jones Day also reiterated that Sheketoff's sex discrimination claims concerning her pay and performance should be dismissed. She left the firm shortly before giving birth.

Savignac and Sheketoff represent themselves. Jones Day represents itself. The parties did not immediately respond to requests for comment.

The case is Savignac v. Jones Day, D.D.C., No. 1:19-cv-02443, reply memorandum 10/17/19.

To contact the reporters on this story: Julie Steinberg in Washington at jsteinberg@bloomberglaw.com; Erin Mulvaney in Washington at emulvaney@bloomberglaw.com

To contact the editors responsible for this story: Jo-el J. Meyer at jmeyer@bloomberglaw.com; Karl Hardy at khardy@bloomberglaw.com

© 2020 The Bureau of National Affairs, Inc.   All Rights Reserved

# THE AMERICAN LAWYER

NOT FOR REPRINT

🖨 Click to print or Select '**Print**' in your browser menu to print this document.

Page printed from: *https://www.law.com/americanlawyer/2019/09/27/jones-day-parental-leave-lawsuit-by-married-ex-associates-meritless/*

## Jones Day: Parental Leave Lawsuit by Married Ex-Associates 'Meritless'

In a motion to dismiss, the firm said its policies are legal and it fired one of the plaintiffs for "poor judgment and immaturity," not out of bias.

By David Thomas | September 27, 2019



*Jones Day's offices. Photo: John Disney/ALM*

Jones Day on Friday shot back at allegations that it discriminates against men, arguing that its parental leave policies for birth parents and adoptive parents are "sex-neutral in every respect."

In a 37-page motion to dismiss (https://www.documentcloud.org/documents/6433334-Jones-Day-MTD.html) filed Friday in D.C. federal court, attorneys for Jones Day said the claims raised by Mark Savignac and Julia Sheketoff, a married couple who worked at the firm as associates, are "legally meritless."

"The only disparate treatment here is between primary and secondary caregivers—regardless of gender. That does not (and is not alleged to) violate the law," Jones Day's lawyers wrote.

Savignac and Sheketoff alleged (https://www.law.com/americanlawyer/2019/08/14/ex-scotus-clerks-sue-jones-day-alleging-anti-male-bias/) the firm's leave policy—in which birth mothers are offered eight weeks of paid disability leave—is discriminatory. But that's because "fathers are not similarly situated to postpartum mothers," the firm argued.

"If a father suffered a heart attack while in the delivery room, he too would be entitled to disability leave," Jones Day continued.

Savignac and Sheketoff complained to the firm about its parental leave policies in 2018 before their son was born. Sheketoff left Jones Day in August 2018. Savignac, described by Jones Day in its filing as a "supposedly sophisticated attorney," was fired five months later, after he sent another email demanding 18 weeks of paid leave or else he would sue and fight the issue both in court and the "court of public opinion."

Jones Day in its motion described Savignac's email as a threat and thus grounds for termination. It was not, the firm's attorneys argued, a "protected activity" because his complaints were not about unlawful activity or discrimination.

"Actually, Jones Day fired him for the poor judgment and immaturity reflected by his extortionate threat to harm the firm in the 'court of public opinion' unless it acceded to his unreasoned demand for the same disability leave afforded to women who give birth," the firm's lawyers wrote.

Jones Day denied the other claims raised by the couple, who met when clerking for U.S. Supreme Court Justice Stephen Breyer. The firm described the two as "undoubtedly, clever and creative lawyers with aspirational views of the law," and suggested that the best way they can achieve their goals for parental leave is to pursue legislative action.

The lawsuit from Savignac and Sheketoff comes as Jones Day fights off a proposed $200 million class action (https://www.law.com/americanlawyer/2019/04/03/associates-assail-fraternity-culture-at-jones-day-in-200m-sex-bias-suit/) that was filed by former associates who allege that the firm systemically discriminates against women lawyers.

Savignac and Sheketoff are representing themselves in the case. Savignac did not immediately respond to a request for comment Friday.

## Read More

Ex-SCOTUS Clerks Sue Jones Day, Alleging Anti-Male Bias (https://www.law.com/americanlawyer/2019/08/14/ex-scotus-clerks-sue-jones-day-alleging-anti-male-bias/)

Copyright 2020. ALM Media Properties, LLC. All rights reserved.

9/30/19 REUTERS LEGAL 17:26:52

REUTERS LEGAL
Copyright (c) 2019 Thomson Reuters

September 30, 2019

Jones Day seeks to toss married lawyers' claims of sex bias against men and women

Daniel Wiessner

(Reuters) - Jones Day has asked a federal judge in Washington D.C. to toss out a former associate's claims that the firm discriminates against men by giving women more parental leave, calling the case meritless and saying the lawyer was fired for "poor judgment and immaturity."

The firm in a motion to dismiss filed on Friday said it gives men and women the same amount of paid time off after having children, but offers women an additional eight weeks of disability leave because it is required by federal law.

Plaintiff Mark Savignac and his wife Julia Sheketoff, both of whom joined the firm in 2014 and worked in its appellate practice, say in a August lawsuit that the firm violated Title VII of the Civil Rights Act of 1964 by denying him 18 weeks of leave after she gave birth last year.

Sheketoff, who left the firm last year, also says she was paid less than male colleagues and given a negative performance review because of her sex. Jones Day on Friday said she earned more than her husband when they both worked at the firm, and the review she cited was mostly positive.

Sheketoff, who is now with the Federal Public Defenders Office in Washington, and Savignac, an associate at Steptoe & Johnson, did not respond to requests for comment. They are representing themselves in the litigation.

In their lawsuit, the couple said the additional eight weeks of leave granted to women should not be treated as "disability leave" because it is not based on whether female lawyers are actually unable to do their jobs.

Savignac in the lawsuit says he was unlawfully fired three days after sending an email to Jones Day's human resources director claiming the firm's parental leave policies were discriminatory.

But on Friday, the Jones Day partners representing the firm wrote that both male and female lawyers are entitled to the same 10 weeks of paid parental leave.

Biological mothers are granted an additional eight weeks of disability leave, the firm said, because the federal Pregnancy Discrimination Act requires employers to give women who are pregnant or recently gave birth the same accommodations as workers who are disabled.

Savignac was not fired for complaining, Jones Day said, but for the immature and "extortionate" tone of his email. According to the firm, Savignac in the email threatened to sue and said "the matter will be decided in the D.C. Circuit and in the court of public opinion ... (and) we are very familiar with the D.C. Circuit and confident that we will win."

Jones Day also said Sheketoff had failed to show any discriminatory animus against women by the male partner who conducted her performance reviews. To the contrary, the firm said, several men received less favorable reviews from the partner than Sheketoff.

Jones Day is facing a separate proposed class action in the same court by several female former associates who say the firm discriminates against women in pay and promotions. Jones Day has denied the claims and says the named plaintiffs in the

**Jones Day seeks to toss married lawyers' claims of sex bias against men and women**

lawsuit failed to advance because of their performance.

The case is Savignac v. Jones Day, U.S. District Court for the District of Columbia, No. 1:19-cv-02443.

For Savignac and Sheketoff: Pro se

For Jones Day: Traci Lovitt

**---- Index References ----**

Company: JONES DAY LP; STEPTOE AND JOHNSON LLP

News Subject: (Civil Rights Law (1CI34); Family Social Issues (1FA81); Health & Wellness (1HE60); Judicial Cases & Rulings (1JU36); Legal (1LE33); Social Issues (1SO05))

Industry: (Healthcare (1HE06); Healthcare Practice Specialties (1HE49); Women's Health (1WO30))

Region: (Asia (1AS61); Southern Asia (1SO52))

Language: EN

Other Indexing: (Savignac) (Traci Lovitt; Julia Sheketoff; Mark Savignac)

Keywords: health; employment; fedlit (OCC:OLRTXT); (N2:US)Keywords:

Word Count: 563

End of Document                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT G

Married ex-Supreme Court clerks allege legal giant Jones Day discriminates against men in parental leave - The Washington Post

Case 1:19-cv-02443-RDM    Document 26-1    Filed 07/08/20    Page 33 of 39

Sections

The Washington Post logo
*Democracy Dies in Darkness*

Sign In

Get 1 year for $29

[Legal Issues]

Married ex-Supreme Court clerks allege legal giant Jones Day discriminates against men in parental leave



Julia Sheketoff, Mark Savignac and their infant son, Henry. (Carolyn Van Houten/The Washington Post)

By [Spencer S. Hsu]

August 15, 2019

Two former U.S. Supreme Court clerks who married and worked for the Jones Day law firm allege in a new federal lawsuit that the firm's parental-leave policies are discriminatory and that the husband was fired after he challenged its practices.

Married ex-Supreme Court clerks allege legal giant Jones Day discriminates against men in parental leave - The Washington Post

Case 1:19-cv-02443-RDM    Document 26-1    Filed 07/08/20    Page 34 of 39

The lawsuit, filed Tuesday in federal court in Washington, is the second high-profile workplace claim this year against one of the country's largest and most politically influential law firms. It follows a $200 million class-action lawsuit in April by women who allege that Jones Day and its "fraternity culture" systematically discriminate against female associates in matters of pay, promotions and pregnancy.

The Cleveland-based international law firm has risen in prominence since representing Donald Trump's 2016 presidential campaign and sending a number of lawyers into the administration — headlined by Donald McGahn, who recently rejoined the firm after serving as White House counsel, and top Justice Department officials and U.S. Appeals Court appointees.

In their 44-page complaint, Mark C. Savignac, 32, and Julia Sheketoff, 36, who live in the District, allege that Jones Day grants eight more weeks of leave to all women than to men, and that it unlawfully fired Savignac from the firm's elite appellate practice in Washington after he complained about the policy. The couple filed suit under the Civil Rights Act of 1964 that prohibits employers from discriminating against workers on the basis of sex, race, color, national origin and religion, and other federal and District statutes.

In a six-paragraph statement Wednesday, Jones Day's D.C.-based managing partner, Stephen J. Brogan, called the couple's allegations false and frivolous and accused them of "ignoring both the law and biology" in attacking what he described as generous family leave policies that are consistent with Equal Employment Opportunity Commission guidance.

Savignac said he learned he was fired in an email and a hand-delivered letter at the couple's Logan Circle apartment on the evening of Jan. 22 when he and his wife returned from Shake Shack — their first meal out alone with their newborn son, Henry — three business days after the couple

Married ex-Supreme Court clerks allege legal giant Jones Day discriminates against men in parental leave - The Washington Post

Case 1:19-cv-02443-RDM   Document 26-1   Filed 07/08/20   Page 35 of 39

sent an email demanding equal treatment and threatening to bring a class-action lawsuit.



Julia Sheketoff and Mark Savignac, two former U.S. Supreme Court clerks who married and worked for the Jones Day law firm, allege the firm's parental leave policies are discriminatory. (Carolyn Van Houten/The Washington Post)

"Perhaps we were really just very naive in never considering that Jones Day would fire Mark, but we thought the law so clearly protected our complaint and our demand for equal treatment, and that this was a law firm and they would know the law," said Sheketoff, who had left the firm's appellate practice in August 2018 after four years to be an appellate attorney for the Federal Public Defender's Office of the District of Columbia.

"The principle is extremely important to us of being equal parents to Henry, as well as giving each other equal opportunity to pursue our careers," said Savignac, who worked 20 months at Jones Day and is now at Steptoe & Johnson. Savignac was earning $500,000 a year and on track to become partner at Jones Day next year, he said, but "under the law, I was not risking anything because it is illegal to take an adverse action against an employee because they make a reasonable complaint."

Jones Day fired Savignac because he showed "poor judgment, a lack of courtesy to his colleagues, personal immaturity, and a disinterest in pursuing his career," Brogan said. He cited Savignac's "intemperate" email "demanding that he be given what he wants 'or else' . . . under circumstances that no reasonable person would view as anything but exceptionally generous."

The firm said it intends to try the case in court and would have no further comment beyond legal filings.

Jones Day, which employs 2,500 attorneys worldwide, said it gives lawyers who are primary

Married ex-Supreme Court clerks allege legal giant Jones Day discriminates against men in parental leave - The Washington Post

Case 1:19-cv-02443-RDM   Document 26-1   Filed 07/08/20   Page 36 of 39

caregivers 10 weeks of paid leave and six weeks of unpaid leave after the birth of a child. Biological mothers may receive an additional eight weeks of paid leave under a short-term disability policy. Adoptive parents receive 18 weeks of paid leave, regardless of gender, the firm said.

The EEOC allows employers to award biological mothers eight weeks more paid leave than biological fathers if the added time is related to recuperation from childbirth.

Savignac and Sheketoff argued that Jones Day awards mothers 18 weeks leave without regard to disability, a stance that provides "female associates more time to enable their husbands to prioritize their careers over child care."

In the lawsuit, the couple, who clerked separately for Associate Supreme Court Justice Stephen G. Breyer, alleged that the policy reinforces archaic gender roles and sex-based stereotypes and stands against a backdrop of discriminatory pay practices.

The lawsuit states that one of the firm's most prominent male partners needled a male associate for taking parental leave, allegedly joking, "What would a man do on parental leave — watch his wife unload the dishwasher?"

Married ex-Supreme Court clerks allege legal giant Jones Day discriminates against men in parental leave - The Washington Post

Case 1:19-cv-02443-RDM   Document 26-1   Filed 07/08/20   Page 37 of 39

The suit also alleges that the law firm doctored a photo of Sheketoff, who is biracial, for a company website "to lighten her skin and narrow her nose," making her appear "more Caucasian" and attractive in the eyes of the editor. After she objected, the original image was used, the suit contends.

Brogan's statement called the allegation "sensationalized" and said Sheketoff was highly paid and earned more than her husband — $525,000 when she left the firm, according to the lawsuit — despite mixed evaluations, "below expectations" billings and focus on "idiosyncratic concerns."

**Read more:**

[RNC paid $2 million to law firm employing former White House counsel Donald McGahn](#)

[Democrats ask federal judge to force testimony from ex-White House counsel McGahn](#)

[How a dad's lawsuit against JPMorgan Chase could lead to more equal parental leave elsewhere](#)

[Local newsletters: Local headlines (8 a.m.) | Afternoon Buzz (4 p.m.)](#)

[Like PostLocal on Facebook](#) | [Follow @postlocal on Twitter](#) | [Latest local news](#)

☐ **386 Comments**

▪ Law.com Home    ▪ Newswire    ▪ LawJobs    ▪ CLE Center    ▪ LawCatalog    ▪ Our Sites    ▪ Advertise

An **ALM** Website    THE **careerist** *a lawjobs.com blog*    [ ] search

| lawjobs.com Home | Job Seekers▾ | Employers▾ | News & Views▾ | Directories▾ | The Careerist Home | Help |

« Why Is David Boies Bothering to Sue Alan Dershowitz? | Main | Jones Day Smears Its Prized Hires—Is That Smart? »

## Meet the Ex-Supreme Court Clerks Suing Jones Day

Vivia Chen
August 22, 2019



Of all the fair law firms in the land, how did Mark Savignac and Julia Sheketoff pick Jones Day to launch their careers? That question must be bugging the hell out of them at the moment.

Not long ago, they were trophy recruits for the firm (Savignac and Sheketoff are both former clerks of U.S. Supreme Court Justice Stephen Breyer), trotted out like prized stallions. But now, they are embroiled in a bitter lawsuit against their former firm in which they claim that Jones Day's parental leave policy discriminates based on gender and that Savignac was fired in retaliation for complaining about the policy.

It's easy to say they were a mismatch with the firm now, but I can't help asking this question: How did Jones Day's Supreme Court and appellate practice group win them over, when they could have gone to any firm that their heart desired?

Was it the money? Inevitably, that had to be a big draw. Jones Day, as everyone knows, pays big bucks for Supreme Court clerks. According to their complaint, Savignac started at the firm in May 2017 with a $375,000 salary plus a $350,000 Supreme Court clerk bonus; then in July, his salary rose to $405,000. That's a grand total of $755,000!

But monetary rewards were probably not the only seduction. (Firms such as Susman Godfrey reportedly pay more than Jones Day for Supreme Court clerks.)

From their complaint, what comes through is a sense of personal disappointment and betrayal—something akin to a promising relationship gone toxic.

So why are these two young lawyers (Sheketoff, 36, is now working at the Federal Public Defender's Office and Savignac, 32, is an associate at Steptoe & Johnson) with their futures in front of them taking on a big, powerful law firm like Jones Day? And how do they think this will affect their career trajectory?

I posed these questions and more to them during several phone calls. Below is an edited version of our conversation. (Jones Day responded to inquiries by referring to its previously issued statement.)

**Jones Day issued a statement in response to your complaint in which you were both assailed. Mark, the firm calls your views of its leave policy "false and self-indulgent," then it suggested that you acted like an ingrate for making demands "that no reasonable person would view as anything but exceptionally generous." What's your reaction?** We strongly believe our view of the policy is correct.

**Julia, your complaint says that you got good reviews except for the partner you had a run-in with— the one that you said expected deferential behavior from women. But the firm claims that you got mixed reviews from a bunch of partners.** I got a raise for $85,000 the last year I was at the firm and my final salary was $525,000. If [managing partner Stephen] Brogan thought so little of me, I wonder what he thought about all the women that he paid even less. [The firm pays a wide range of salaries, as evidenced by the documents in the pending class action suit for gender discrimination.]

   

### the careerist e-mail

**Subscribe to get The Careerist via e-mail**
Enter your e-mail address:

[ ]

subscribe

Delivered by **FeedBurner**

### top jobs

more jobs    post jobs

### about the careerist

**About The Careerist**
The Careerist takes an inside look at how lawyers shape their careers and manage their lives. The blog aims to dissect developments in the profession, provide useful information and advice, and give lawyers a platform to voice their views. The goal is to provide a fresh, provocative take on the state of lawyering.

**About Vivia Chen**

 Vivia Chen, The Careerist's chief blogger, has been covering the business and culture of law firms for a decade. A former corporate lawyer, Chen is fascinated by those who thrive (as well as those who don't) in the legal profession. Her take: Success in the law (and life) doesn't always travel a linear path. If you have topics you'd like to discuss or information to share, contact her: VChen@alm.com

### blog topics

▪ Advice
▪ Alternative Careers/Straying Off Track
▪ Diversity

**I can't imagine what it must be like to sue a big firm. How did you decide to start the lawsuit?** Julia: Mark's firing was devastating to us. Mark: It was illegal act, and I don't see how you can not sue them when that happens.

**Mark, you didn't expect to be fired for complaining, did you?** Mark: We were completely shocked and never thought they would do something that's retaliatory and illegal. We felt exposed and stunned.

**Parts of your complaint read like a novel. The lawsuit also seems very personal in that Beth Heifetz [who heads the firm's appellate and Supreme Court group] recruited you, gave you advice, then, according to your telling, turned against you by making it virtually impossible for Mark to get a reference.** Julia: I don't want to say it's personal or not. After I finished my clerkship, a huge reason I went to Jones Day was because of Beth. She seemed like a progressive person and I thought she would look after me.

**Why are you doing this pro se?** Mark: We care about these issues and we're both lawyers.

**Are there any discussions to settle?** Mark: We can't comment on that.

**Do you regret going to Jones Day?** Julia: We regret that we were treated illegally.

**It seems Jones Day was perhaps not a good fit.** Julia: It's fair to say that it's run by Steve Brogan and that [structure] affects a lot of decisions. I think that's what distinguishes it from other firms. It's more of an autocratic structure rather than a democratic one.

**Do you think Supreme Court clerks are paying attention to this case and that this will affect their choice of jobs?** Mark: It certainly would have affected me.

*Contact Vivia Chen at vchen@alm.com. On Twitter: @lawcareerist.*

Posted by Vivia Chen at 11:21:38 AM in Law Students/Law Schools, Money/Power

SHARE

---

**Comments**

You can follow this conversation by subscribing to the comment feed for this post.

---

**Post a comment**

Comments are moderated, and will not appear until the author has approved them.

(URLs automatically linked.)

Your Information
(Name and address are required. Email address will not be displayed with the comment.)

- Fashion/Style/Etiquette
- Home/Work
- Law Students/Law Schools
- Management/Mismanagement
- Money/Power
- Partner chats
- Sex, Lies, and Other Career Sinkers
- Web Briefs
- Women

**recent posts**

- "My Daughter Should NOT Have To Deal With The Same Crap": Diverse Female Lawyers Speak Out
- Big Law's Double Talk About Racism: This You?
- Am Law 100 Firms That Are Failing Women
- Kirkland Ellis Associate Speaks Out About Race/Racism in Big Law
- "Money" Is the Reason Asian Americans Are Rejecting Law School

**most popular posts**

Powered by Postrank

**careerist's personal faves**

- Your Gray Hair
- Real Men Wear Stached Shirts
- Extremely Loud and Incredibly Deep
- (Over)Dressed for Success?
- Little Toe Peep

**news & views**

To search across all ALM blogs, go to www.Lexis.com.

About ALM | About Law.com | Customer Support | Privacy Policy | Terms & Conditions
Copyright 2020. ALM Media Properties, LLC. All rights reserved.

