IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARK C. SAVIGNAC and
JULIA SHEKETOFF,

    *Plaintiffs*,

        v.

JONES DAY, STEPHEN J. BROGAN,
BETH HEIFETZ, and JOHN DOES 1-10,

    *Defendants*.

Case No. 1:19-cv-02443-RDM

Oral Argument Requested

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE
SUPPLEMENTAL COMPLAINT**

    Jones Day's tone of aggrievement is unwarranted. The conceit of its opposition is that Plaintiffs spoke to the press about this lawsuit and then called Jones Day a lawbreaker for doing the same. That conceit is a fiction. Here as elsewhere, Jones Day assails a strawman, not once addressing the key point (which occupies most of the proposed supplemental complaint) that the statements in its press release are "knowingly false, disingenuous, willfully misleading, and calculated to deceive the reader." Dkt. 25-1 at 1, ¶ 5. The distinction between truth and falsehood is central to the law and dispositive here. There is nothing untoward about the notion that Plaintiffs may *speak* about the case yet Jones Day is forbidden to *lie* about it. In short, Jones Day broke the law by fighting freestyle even as Plaintiffs adhered to the Marquis of Queensberry rules.

    **A.**    Jones Day's sole argument is that its publication and dissemination of the press release did not constitute "a materially adverse action," which is one element of a retaliation claim. Dkt. 26 at 2-5. The Supreme Court has defined that concept to encompass "any employer action that 'well might have dissuaded a reasonable worker from making or supporting a charge of

discrimination.'" *Thompson v. North American Stainless, LP*, 562 U.S. 170, 174 (2011) (quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006)).  This test is objective and hypothetical, and it takes an ex ante rather than an ex post perspective, focusing on the deterrent effect on a reasonable worker who knows that the employer would retaliate with the action in question and is deciding whether to engage in protected activity nonetheless.  *See id.* at 173-75; *Burlington*, 548 U.S. at 67-70.  Far from setting a high bar, the test "must be construed to cover a broad range of employer conduct." *Thompson*, 562 U.S. at 173.  The Supreme Court has described the sort of acts that fall short as "trivial harms," "minor annoyances," "lack of good manners," and "petty slights," such as "[a] schedule change" or "refusal to invite an employee to lunch." *Burlington*, 548 U.S. at 68-69.  And even these can qualify in the right context. *Id.* at 69.  The Court rejects categorical exclusions. *Thompson*, 562 U.S. at 174-75.

In the press release, Jones Day and Brogan falsely accuse Mark of displaying such poor judgment, immaturity, and discourtesy as to be fired from Jones Day.  They falsely accuse Julia of willfully lying to the Court by making allegations that she knows to be untrue.  These accusations will be posted to the public indefinitely and seen by practically anyone who takes enough of an interest in Julia and Mark to run a Google search, including current and prospective employers or clients.  No one who trusts Jones Day will be inclined to hire, retain, or promote Julia or Mark.  This is far more than enough to meet the standard set by *Burlington* and *Thompson*: It is "obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that" her powerful former employer would publish, and disseminate to tens of thousands of people, false accusations of serious and potentially career-ending deficiencies. *Id.* at 174.

**B.** Rather than fight this conclusion head on, Jones Day tries to sneak around behind it.  It asks the Court to adopt this sweeping categorical rule: An employer sued for civil rights

violations has an absolute right to publish false and malicious out-of-court statements about the plaintiff so long as the statements are "responsive" to the plaintiff's allegations. Dkt. 26 at 3-5. Such a rule has never been embraced by any court, at least if we are to judge by Jones Day's failure (despite its practically limitless resources) to offer a shred of support for it. And "such a limited construction would fail to fully achieve the antiretaliation provision's 'primary purpose,' namely, 'maintaining unfettered access to statutory remedial mechanisms.'" *Burlington*, 548 U.S. at 64 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)).

To support its proposed rule, Jones Day argues as follows. Every litigant understands that the other side is likely to make negative statements as part of the litigation. Such in-court statements may harm the target's reputation, but they generally will not be actionable.[1] And these in-court statements will, of course, be highly public: All agree that anyone "contemplating a

---

[1] Jones Day suggests that harmful in-court statements cannot "'dissuade' the employee from suing," as required by the *Burlington* test, because a reasonable worker would expect them as "a natural and inevitable incident of litigation." Dkt. 26 at 3. That argument is wrong, for the fact that a consequence is foreseeable hardly means that it would not dissuade a reasonable worker (indeed, the *Burlington* test *assumes* that the worker foresees the retaliation). Jones Day's employees now know that if the firm learns an employee plans to file a discrimination lawsuit, then she will be fired instantly. It does not follow that termination would not be an adverse action.

While Jones Day's reasoning is deficient, the conclusion that an employer's good-faith defense of a suit is not illegal retaliation may still be right. Jones Day's own lead citation, *Steffes v. Stepan Co.*, suggests an alternative basis for that conclusion: a doctrine called the litigation privilege, which "affords immunity … from tort liability arising out of statements made in connection with litigation." 144 F.3d 1070, 1074 (7th Cir. 1998); *but see id.* at 1075 ("even actions taken in the course of litigation could constitute retaliation in appropriate circumstances"). Jones Day does not rely on the privilege, which does not protect out-of-court statements like press releases, *Cloonan v. Holder*, 602 F. Supp. 2d 25, 29 (D.D.C. 2009). So there is no need to consider it further.

Jones Day also cites two district court cases for the proposition that an employer's counterclaim "cannot be the basis for a retaliation claim." Dkt. 26 at 3. Yet the Supreme Court has held that "the retaliatory filing of a lawsuit against an employee" can violate the NLRA and has implied that the same is true under similar antiretaliation provisions. *Burlington*, 548 U.S. at 66-67; *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 748-49 (1983). The *Burlington* test plainly provides no basis for a categorical distinction between a separate lawsuit and a counterclaim. *Cf. Thompson*, 562 U.S. at 174-75. Of course, this issue is not before the Court.

3

discrimination suit necessarily understands" that it will entail "litigation in a public forum …. Public airing of the [parties'] positions … is a natural and inevitable incident of litigation." Dkt. 26 at 2-3.  Since the parties' statements and arguments in court will be made in a highly public forum before the press and the public, the *marginal* harm of a litigant's also making such statements *out of court* is immaterial.  So a reasonable person contemplating a potential discrimination suit, who necessarily expects and accepts that negative statements will be made publicly in court, would not be moved by the knowledge that such statements would also be made out of court.  Such out-of-court statements therefore are not actionable under the *Burlington* test.

This argument does not help Jones Day.  The problem, as mentioned at the outset, is that the out-of-court statements that Jones Day made in its press release are "knowingly false, disingenuous, willfully misleading, and calculated to deceive the reader."  Dkt. 25-1 at 1, ¶ 5. Indeed, this is the main theme of the proposed supplemental complaint.  *See id.* ¶¶ 21-91, 95.  One would not expect statements of that sort to be made within the scope of litigation.  Unlike tweets and press releases, litigation is supervised by a judge and governed by rules and norms that prohibit and penalize such statements.  Knowingly false statements and reckless misstatements in court filings violate an attorney's ethical duties and are grounds for Rule 11 sanctions.  Knowingly false statements at a deposition or on the witness stand constitute perjury.  18 U.S.C. §§ 1621, 1623. The many other safeguards for truth and candor that apply to court proceedings and attorneys need not be catalogued here.  And even where no formal punishment is likely, parties and attorneys have compelling reasons to try to maintain credibility with the judge and the jury.

Jones Day's own lead citation confirms this point.  In concluding that most "conduct occurring within the scope of litigation" is not actionable, the Seventh Circuit in *Steffes* relied on the fact that "such activities are conducted in the adversarial arena where opposing counsel *and*

*the trial court* can quickly put the brakes on unethical or unlawful behavior." 144 F.3d at 1075-76 (emphasis added).  In short, Jones Day hangs its hat on a case that simply highlights why litigants would not expect a defendant to make the sort of false, malicious statements at issue here.

For all these reasons, a reasonable worker would *not* expect her employer to respond to a lawsuit by making "knowingly false, disingenuous, [or] willfully misleading" statements *in court*. The knowledge that such statements would be made *out of court* would thus be highly dissuasive: It is "obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that" her employer would retaliate by publishing malicious out-of-court statements like those at issue here.  *Thompson*, 562 U.S. at 174.  The adverse action element is met.

**C.**   Jones Day likens its press release to "the routine filing of an answer denying a claim's allegations or a motion to dismiss calling the allegations implausible." Dkt. 26 at 3.  This is fanciful, as anyone who reads the press release will see.  And that is just what Jones Day fears: It scrupulously avoids quoting from its press release or the proposed supplemental complaint even once.  It wants the Court to treat this motion as if it addressed a commonplace statement by a defendant that it considers the claims to be without merit and expects to prevail in court.  But that is not true—as the proposed supplemental complaint makes clear.[2]

Jones Day also says that its press release makes "the same basic points as its publicly filed motion to dismiss."  Dkt. 26 at 3-4.  A cursory comparison of the two documents shows that the press release makes a number of malicious factual assertions that Jones Day has left out of its court

---

[2] Jones Day relies on *Coleman v. American Broadcasting Companies*, which rejected, under the First Amendment's protection for statements of opinion, a state-law defamation claim targeting ABC's statement that "Miss Coleman's claims have been fully reviewed and we have concluded there is no merit to them."  1985 WL 365, at *9 (D.D.C. 1985).  Even if it were correct, *Coleman* would be irrelevant.  Jones Day's press release bears no resemblance to ABC's anodyne sentence, and in any event Jones Day declines to argue that its press release is protected speech.

Finally, Jones Day's one D.C. Circuit citation (*see* Dkt. 26 at 4) is an irrelevant mootness ruling.

filings. Anyhow, the fact that a particular litigant may be willing to push or exceed ethical limits in court is irrelevant under the *Burlington* test, which asks whether a hypothetical reasonable worker "might be dissuaded from engaging in protected activity if she knew" beforehand that her employer would take a particular action in response. The reasonable worker cannot be charged with knowledge that all employers and their lawyers will litigate unethically; that is not the norm. So knowing beforehand that a particular employer would respond to a lawsuit with a malicious out-of-court statement would make a big difference and would therefore have a substantial dissuasive effect on the reasonable worker—regardless of whether she "seeks out nationwide press coverage" for her claims (which is itself protected opposition activity). Dkt. 26 at 5.

Finally, Jones Day says that, as a matter of fact, Julia and Mark have not been deterred by its malicious retaliation. Dkt. 26 at 5. The claim is incoherent and irrelevant: *Burlington* makes clear that the test is an objective one that looks to whether a hypothetical reasonable worker would be dissuaded ex ante if she knew that her employer would respond in a given way. 548 U.S. at 68-70. The press release is illegal not because it deterred Julia and Mark (who had already sued), but because it threatens to dissuade *anyone else* who faces discrimination at Jones Day from speaking up *in the future* for fear that the firm's leadership will destroy their reputations and careers.

*     *     *

Substituting assonance for analysis in a (successful) bid to garner press attention for its opposition, Jones Day quips that this case has reached "the apex of absurdity." Dkt. 26 at 1. This is hollow bluster. There is nothing absurd in the notion that a defendant who makes false and malicious statements outside litigation should be held liable for the statements. Few attorneys would advise their clients to respond to lawsuits by attacking the plaintiffs on Facebook. Virtually no attorney would ever advise a client to publish a response like the press release at issue here.

A discrimination victim who files a lawsuit does not thereby forfeit her reputation. While the employer and its attorneys are entitled to advance good-faith arguments in court, even if their statements may harm the plaintiff's reputation, there is no right to assert malicious falsehoods in litigation. And there is no entitlement under the civil rights laws to make false and malicious out-of-court statements that could not (and probably would not) be made within the litigation itself.

This Court should grant the motion and deem Plaintiffs' supplemental complaint filed as of the date when it was tendered, June 30, 2020. *See Moore v. Indiana*, 999 F.2d 1125, 1131 (7th Cir. 1993); *Mayes v. AT&T Information Systems, Inc.*, 867 F.2d 1172, 1173 (8th Cir. 1989); Dkt. 26 at 1, 2 n.1 (Jones Day disseminated the press release on August 13 and 14, 2019); D.C. Code § 2-1403.16(a) (one-year statute of limitations for the Human Rights Act).[3]

| /s/ Julia Sheketoff | /s/ Mark C. Savignac |
|---|---|
| Julia Sheketoff (pro se) | Mark C. Savignac (pro se) |
| 2207 Combes Street | 2207 Combes Street |
| Urbana, IL 61801 | Urbana, IL 61801 |
| (202) 567-7195 | (217) 714-3803 |
| sheketoff@gmail.com | marksavignac@gmail.com |
| D.C. Bar No. 1030225 | D.C. Bar No. 995367 |

July 15, 2020

---

[3] In a footnote, Jones Day asserts that the statements in the press release are "factually true, rational interpretations of disclosed facts, or non-falsifiable matters of opinion." Dkt. 26 at 2 n.1. Jones Day cannot back up that assertion, and it makes no effort to do so. *See, e.g.*, *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) (conclusory arguments in footnotes are forfeited).

Jones Day's footnote also says that one of the supplemental complaint's three claims is barred because Plaintiffs filed their EEOC charges more than 180 (but not more than 300) days after Jones Day published the press release. This issue has been fully briefed, and Plaintiffs have the better of the argument. *See* Dkt. 18 at 39 & n.6; Dkt. 21-1 at 17 & n.3; *Epps v. Potomac Electric Power Co.*, 2019 WL 7902976, at *2-4 (D.D.C. 2019) (granting reconsideration of ruling that plaintiffs have just 180 days and holding that they actually have 300).