**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MARK C. SAVIGNAC and
JULIA SHEKETOFF,

    *Plaintiffs*,

      v.

JONES DAY, STEPHEN J. BROGAN,
BETH HEIFETZ, and JOHN DOES 1-10,

    *Defendants*.

Case No. 1:19-cv-02443-RDM

**RESPONSE TO THE COURT'S ORDER OF AUGUST 4, 2020**

## TABLE OF CONTENTS

Response to the Court's Order of August 4, 2020 ..........................................................1

    A.  The Worksharing Agreement ................................................................2

    B.  The EEOC's position ...........................................................................4

    C.  The EEOC's public pronouncements ...................................................5

    D.  Supreme Court case law ......................................................................6

    E.  Decisions in this Circuit .....................................................................9

    F.  Local agency exhaustion under § 2000e-5(c) .....................................13

    G.  Election of remedies under the Human Rights Act .............................15

    H.  "Cross-filing" ....................................................................................16

    I.  Jones Day's supplemental brief ..........................................................17

# TABLE OF AUTHORITIES

**Cases**

*Ashraf-Hassan v. Embassy of France*,
    878 F. Supp. 2d 164 (D.D.C. 2012) ...................................................................10, 11, 12

*Bowden v. United States*,
    106 F.3d 433 (D.C. Cir. 1997) ........................................................................................16

*Bowers v. District of Columbia*,
    883 F. Supp. 2d 1 (D.D.C. 2011) ...................................................................................12

*Caha v. United States*,
    152 U.S. 211 (1894) ........................................................................................................17

\* *Carter v. George Washington University*,
    387 F.3d 872 (D.C. Cir. 2004) ...........................................................................12, 13, 17

*Chambers v. District of Columbia*,
    389 F. Supp. 3d 77 (D.D.C. 2019) ........................................................................9, 13, 17

*Citizens for Responsibility & Ethics in Washington v. Trump*,
    924 F.3d 602 (D.C. Cir. 2019) ......................................................................................17

*Cooper v. Henderson*,
    174 F. Supp. 3d 193 (D.D.C. 2016) ..............................................................................12

*Craig v. District of Columbia*,
    74 F. Supp. 3d 349 (D.D.C. 2014) ..........................................................................10, 13

\* *EEOC v. Commercial Office Products Co.*,
    486 U.S. 107 (1988) ..................................................................................2, 5, 8, 9, 11, 18

\* *Epps v. Potomac Electric Power Co.*,
    2019 WL 7902976 (D.D.C. 2019) ......................................................................4, 8, 9, 10

*Fort Bend County v. Davis*,
    139 S. Ct. 1843 (2019) .....................................................................................................9

*Fowler v. District of Columbia*,
    122 F. Supp. 2d 37 (D.D.C. 2000) ....................................................................10, 16, 17

*Griffin v. Acacia Life Insurance Co.*,
    925 A.2d 564 (D.C. 2007) ........................................................................................15, 16

*Harris v. Gonzales*,
    488 F.3d 442 (D.C. Cir. 2007) ......................................................................................13

*Ibrahim v. Unisys Corp.*,
    582 F. Supp. 2d 41 (D.D.C. 2008) ............................................................................16, 17

*Ivey v. District of Columbia*,
    949 A.2d 607 (D.C. 2008) .......................................................................................8, 9, 16

*Love v. Pullman Co.*,
    404 U.S. 522 (1972) ............................................................................................6, 7, 11, 18

*Major v. Plumbers Local Union No. 5*,
    370 F. Supp. 2d 118 (D.D.C. 2005) ..................................................................................12

*Mohasco Corp. v. Silver*,
    447 U.S. 807 (1980)................................................................................................7, 8, 14

*Nichols v. Muskingum College*,
    318 F.3d 674 (6th Cir. 2003) ...........................................................................................2

*Oscar Mayer & Co. v. Evans*,
    441 U.S. 750 (1979).........................................................................................................13

*Osuoha v. District of Columbia*,
    2003 WL 21466905 (D.C. Cir. 2003) ..............................................................................12

*Palmer v. Barry*,
    894 F.2d 449 (D.C. Cir. 1990) .........................................................................................7

*Proctor v. District of Columbia*,
    74 F. Supp. 3d 436 (D.D.C. 2014) ..........................................................................9, 10, 13

\* *Schuler v. PricewaterhouseCoopers, LLP*,
    514 F.3d 1365 (D.C. Cir. 2008) ..............................................2, 3, 6, 12, 13, 16, 17, 19

*Simpkins v. WMATA*,
    132 F.3d 1482 (D.C. Cir. 1997) .................................................................................12, 13

*Slate v. D.C. PDS*,
    31 F. Supp. 3d 277 (D.D.C. 2014) ...................................................................................10

*Stewart v. International Union*,
    271 F. Supp. 3d 276 (D.D.C. 2017) .................................................................................16

*Zipes v. Trans World Airlines, Inc.*,
    455 U.S. 385 (1982)..........................................................................................................6

**Statutes**

29 U.S.C. § 633(b) .............................................................................................................13

42 U.S.C. § 2000e-5(c) ...........................................................................1, 3, 7, 8, 11, 12, 13, 14

42 U.S.C. § 2000e-5(e)(1)........................................1, 3, 4, 7, 8, 11, 12, 13, 14, 15, 18, 19

42 U.S.C. § 2000e-8(b) ..............................................................................................2, 11

42 U.S.C. § 2000e-12(a) .............................................................................................5, 11

42 U.S.C. § 12117(a) .........................................................................................................4

D.C. Code § 2-1403.16(a) ...............................................................................................15

**Rules and regulations**

4 D.C.M.R. § 705.2..................................................................................................17, 19

4 D.C.M.R. § 705.3..........................................................................................................18

29 C.F.R. § 1601.13(a)(4)(ii) ..........................................................................4, 5, 9, 13, 16

Federal Rule of Civil Procedure 56 ...............................................................................16

Local Civil Rule 5.1(c)(1)...............................................................................................18

**Other authorities**

Brief for the United States as Amicus Curiae in *Fort Bend County v. Davis*,
    No. 18-525 (U.S.) (filed April 2019) .............................................................1, 2, 9, 14, 15

**RESPONSE TO THE COURT'S ORDER OF AUGUST 4, 2020**

Plaintiffs submit this response and the attached documents pursuant to the Court's August 4 order instructing them to "file the work sharing agreement and any other materials that they believe should be considered, if the Court considers Defendants' motion [to dismiss] as a motion for summary judgment on Sheketoff's exhaustion of her Title VII claim." Jones Day has asserted the identical timeliness argument against the Title VII claim in Plaintiffs' proposed supplemental complaint. Dkt. 26 at 2 n.1. Because the parties' arguments apply equally there, Plaintiffs attach materials relevant to those claims for the convenience of the Court. Ex. C; Ex. H; Ex. I.

The question is whether Plaintiffs had 180 days or 300 days to file their EEOC charges. Title VII provides that "[a] charge … shall be filed within one hundred and eighty days …, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency …, such charge shall be filed … within three hundred days." 42 U.S.C. § 2000e-5(e)(1). A related provision says that, where a state or local agency exists, "no charge may be filed [with the EEOC] before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated." *Id.* § 2000e-5(c). Thus, § 2000e-5(e)(1) requires that a victim of employment discrimination "initially institute[]" proceedings with the local agency to take advantage of the 300-day limit, and § 2000e-5(c) requires her to "commence[]" "proceedings" with the local agency (and then await the end of a 60-day "deferral period," unless the local agency terminates its proceedings earlier) before she can file a charge with the EEOC at all.

"In practice, however, an individual typically need only file a single charge with either the EEOC or the state or local agency. Pursuant to EEOC regulations and worksharing agreements with state and local agencies, whichever entity receives the charge will also file it with the other."

Ex. F at 11 (Brief for the United States as Amicus Curiae in *Fort Bend County v. Davis*, No. 18-525 (U.S.) (filed April 2019)).[1]  As discussed below, proceedings on charges submitted to the EEOC in the District of Columbia are initially instituted with the local agency—the D.C. Office of Human Rights (OHR)—pursuant to the Worksharing Agreement between the EEOC and the OHR.  It cannot be seriously disputed that Title VII plaintiffs in the District have 300 days to file EEOC charges, regardless of whether they separately go to the OHR first (which is not typical).

    **A.**    **The Worksharing Agreement.**  Title VII empowers the EEOC to "enter into written agreements" with state and local agencies to promote "effective enforcement" of the antidiscrimination laws.  42 U.S.C. § 2000e-8(b).  The Supreme Court observed in 1988 that "the EEOC has used its statutory authority to enter into worksharing agreements with approximately three-quarters of the 109 state and local agencies authorized to enforce state and local employment discrimination laws."  *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 112 (1988).  "These worksharing agreements typically provide that the state or local agency will process certain categories of charges and that the EEOC will process others, with the state or local agency waiving the 60-day deferral period in the latter instance."  *Id.*  It should go without saying that "worksharing agreements are meant to ease charges through the remedial system, not to erect hurdles claimants must decipher and overcome."  *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1374 (D.C. Cir. 2008); *see also id.* ("although … state worksharing agreements are designed to allow states a 'first bite' at resolving discrimination cases, mechanisms created to give states such an opportunity must not stand in the way of the necessarily simple claims-making procedure" (quoting *Nichols v. Muskingum College*, 318 F.3d 674, 678-79 (6th Cir. 2003))).

---

[1] Consistent with the Court's standing order, citations to the pages of the exhibits are to the page number of the pdf rather than internal pagination.

The relevant agreement here is the Fiscal Year 2018 EEOC/FEPA Model Worksharing Agreement, which is attached as Exhibit A. "FEPA" refers to "fair employment practices agencies," which are the "State or local agenc[ies]" referred to by § 2000e-5(e)(1). The OHR is such an agency. Ex. A at 2. The EEOC and the OHR executed the Agreement in October 2017 and subsequently agreed to extend it through fiscal years 2019 and 2020. *Id.* at 7-8; Ex. B; Ex. C. Thus, the Agreement was in effect at all relevant times and remains in effect today.

The Worksharing Agreement "is designed to provide individuals with an efficient procedure for obtaining redress for their grievances under appropriate District of Columbia and Federal laws," including Title VII and the D.C. Human Rights Act. Ex. A at 3; *see id.* at 2. The Agreement provides:

> In order to facilitate the assertion of employment rights, the EEOC and the FEPA each designate the other as its agent for the purpose of receiving and drafting charges. … The EEOC's receipt of charges on the FEPA's behalf *will automatically initiate the proceedings* of both the EEOC and the FEPA for the purpose of [42 U.S.C. § 2000e-5(c) and (e)(1)]. …
>
> For charges originally received by the EEOC …, the FEPA waives its right of exclusive jurisdiction [under § 2000e-5(c)] to initially process such charges for a period of 60 days for the purpose of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day.

*Id.* at 3-4 (emphasis added).

In light of the agencies' agreement that the EEOC is the OHR's "agent for the purpose of receiving … charges" and that "[t]he EEOC's receipt of charges on the [OHR]'s behalf will automatically initiate the proceedings of both the EEOC and the [OHR] for the purpose of [§ 2000e-5(e)(1)]," Plaintiffs "initially instituted proceedings with a State or local agency" within the meaning of that provision when they submitted their charges to the EEOC. *See also Schuler*, 514 F.3d at 1372 ("for all intents and purposes, the DCOHR receives charges filed with the EEOC"). Plaintiffs therefore had 300 days to file their charges.

3

    **B.**    **The EEOC's position.**  Mindy Weinstein, the Acting Director of the EEOC's Washington Field Office and the EEOC's signatory to the Worksharing Agreement, explained the operation of the Agreement in an affidavit submitted in support of the motion for reconsideration on the 180-versus-300-days issue in *Epps v. Potomac Electric Power Co.*, No. 1:18-cv-01423-CKK (D.D.C.). Her affidavit is attached as Exhibit D. It addresses the 2018 Worksharing Agreement—the precise agreement that, owing to the 2019 and 2020 extensions, was in force when Plaintiffs filed their charges and remains in force today. *See* Ex. D at 3, 6-13; Ex. B; Ex. C. The court in *Epps* granted the motion for reconsideration and held that the 300-day period applied for the reasons explained in Acting Director Weinstein's affidavit. *See* 2019 WL 7902976, at *3-4 (D.D.C. 2019).[2]

    After quoting the provisions of the Worksharing Agreement discussed above, the affidavit states:

> As a result of this worksharing agreement, when an individual submits a charge to the Washington Field Office …, three things automatically happen. *First, the EEOC, acting as the D.C. FEPA's agent, initially institutes a FEPA proceeding on behalf of the individual.* Second, the FEPA terminates that proceeding pursuant to its waiver of the 60-day exclusive-processing period. Third, the EEOC deems the charge to be filed and institutes an EEOC proceeding. In such circumstances, because the [EEOC] has initially instituted proceedings with the FEPA on the individual's behalf, and because the FEPA has automatically terminated its proceedings the same day, *the [EEOC] treats the 300-day limitations period set forth in 42 U.S.C. § 2000e-5(e)(1) as the applicable limitations period*. …
>
> The [EEOC's] approach is codified in its regulations. Those regulations explain that where, as here, a charge "on its face" falls "within a category of charges over which the [FEPA] has waived its [exclusive-processing] rights," then "the charge is deemed to be filed with the [EEOC] upon receipt of the document." 29 C.F.R. § 1601.13(a)(4)(ii)(A). "Such filing is timely if the charge is received within 300

---

[2] *Epps* was an ADA case, but, as Acting Director Weinstein observes, the timeliness of ADA charges is governed by the same provision applicable to Title VII claims, 42 U.S.C. § 2000e-5(e)(1). Ex. D at 2; 42 U.S.C. § 12117(a). The Worksharing Agreement likewise applies to both types of claim. Ex. A at 2-4.

days from the date of the alleged violation." *Id.*

Ex. D at 4-5 (emphases added).

Title VII empowers the EEOC to "issue, amend, or rescind suitable procedural regulations to carry out the provisions of" Title VII.  42 U.S.C. § 2000e-12(a).  Procedural regulations like 29 C.F.R. § 1601.13(a)(4)(ii)(A) are therefore entitled to *Chevron* deference: "[I]t is axiomatic that the EEOC's interpretation of Title VII, for which it has primary enforcement authority, need not be the best one by grammatical or any other standards.  Rather, the EEOC's interpretation of ambiguous language need only be reasonable to be entitled to deference." *Commercial Office Products*, 486 U.S. at 115.  As addressed further below, the EEOC's view on this point is reasonable and entitled to deference.

**C.     The EEOC's public pronouncements.**  As the Weinstein Affidavit goes on to explain, the EEOC represents to the public that charges filed in jurisdictions like the District of Columbia are subject to the 300-day window, and it also relies on that assumption in its dealings with victims of discrimination:

> Consistent with the governing statutory and regulatory provisions and worksharing agreement, the EEOC's website makes clear that, except in certain circumstances not present here, individuals in D.C. "ha[ve] 300 days ... to file a charge ...." EEOC, *Timeliness*, https://www.eeoc.gov/field/washington/timeliness.cfm.  In addition, the [EEOC] has established special procedures that apply when an individual seeks to file a charge close to the deadline for doing so, but those special procedures are not triggered until 60 days before the expiration of the applicable limitations period.  *See* EEOC, *Filing a Charge of Discrimination*, https://www.eeoc.gov/employees/charge.cfm.  If Epps had requested an appointment to file her charge within the [180-day] limitations period that the district court adopted [in its initial ruling], the Commission would not have granted any priority to her request because it operates on the understanding that employees like Epps have 300 days within which to file a charge.  The EEOC thus would have allowed her to make an appointment well after the expiration of the 180-day period but would have sought to ensure that she could make an appointment within the 300-day period.

Ex. D at 5.  Similarly, the page of the EEOC's website titled "Time Limits For Filing A Charge" currently informs discrimination victims across the country that "[t]he 180 calendar day filing deadline is extended to 300 calendar days if a state or local agency enforces a law that prohibits employment discrimination on the same basis" as the federal law at issue.  Ex. E at 2.  The webpage does not suggest that the employee must deliver a charge to the local agency itself to receive the benefit of the 300-day period.  *See id.*  That is because the EEOC's view is that the 300-day window applies regardless, so long as a local agency exists.  *See* Ex. D at 5.

If the 180-day limit governs, as Jones Day contends, then many victims of discrimination have been badly misled by the agency created to protect their rights.  Yet it is "a guiding principle for construing the provisions of Title VII" that "a technical reading of the statute's filing requirements is 'particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process.'"  *Schuler*, 514 F.3d at 1376 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 397 (1982), and *Love v. Pullman Co.*, 404 U.S. 522, 527 (1972)); *see also id.* (noting that this principle applies equally to trained lawyers, since courts must "interpret the statute … for all aggrieved employees").  Courts should not read the procedural requirements of the civil rights laws to set up "traps for the unwary, poised to spring into action and deny those who may have suffered employment discrimination their right to seek redress in federal court."  *Id.* at 1375.

**D.    Supreme Court case law.**  The relevant decisions of the Supreme Court further confirm that the 300-day window applies to Plaintiffs' charges.  In *Love v. Pullman Co.*, the Court blessed the EEOC's practice of accepting charges on behalf of a local agency and then deeming them properly filed with the EEOC:

> Nothing in [Title VII] suggests that the state proceedings may not be initiated by the EEOC acting on behalf of the complainant rather than by the complainant

> himself ….  Further, we cannot agree with the respondent's claim that the EEOC may not properly hold a complaint in "suspended animation," automatically filing it upon termination of the state proceedings. …
>
> To require a second "filing" by the aggrieved party after termination of state proceedings would serve no purpose other than the creation of an additional procedural technicality.  Such technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process.

404 U.S. at 525-27 (footnotes omitted).

In *Mohasco Corp. v. Silver*, the Court relied on *Love* to hold that the 300-day period applied because the plaintiff submitted an EEOC charge on day 291 and "state proceedings were instituted by the EEOC when it immediately forwarded his [charge] to the state agency."  447 U.S. 807, 816 (1980); *see also id.* at 812 (referring to § 2000e-5(e)'s "300-day time limit for filing in so-called 'deferral States'").[3]  *Mohasco* further holds that, under § 2000e-5(c), a charge *must* be filed with the local agency *before* it can be deemed filed with the EEOC.  *Id.* at 817.  The decision thus confirms Acting Director Weinstein's statement that, when the EEOC accepts a charge under a worksharing agreement, the EEOC "[f]irst" initiates proceedings with the local agency, *then* deems that proceeding terminated, *then* deems the charge filed with the EEOC.  Ex. D at 4 (relying on *Mohasco*, 447 U.S. at 816-17).  Accordingly, even on the (erroneous) view that § 2000e-5(e)(1)'s requirement that proceedings be "initially" instituted with the local agency unambiguously requires that the local proceeding be instituted *before* the EEOC proceeding, and not *simultaneously* with it, the statutory requirement is satisfied here.  By operation of law, the proceeding is initially instituted with the local agency (through the EEOC as the local agency's

---

[3] "Under Title VII, the District of Columbia is a deferral jurisdiction for purposes of processing discrimination complaints."  *Palmer v. Barry*, 894 F.2d 449, 451 n.2 (D.C. Cir. 1990).

agent) while the filing with the EEOC is held in "suspended animation," taking effect only after the (automatic and immediate) termination of the local proceeding. *See* Ex. D at 4.[4]

In *Commercial Office Products*, the Court confirmed that "a state agency's decision to waive its exclusive 60-day period for initial processing of a discrimination charge, pursuant to a worksharing agreement with the EEOC, 'terminates' the agency's proceedings within the meaning of" § 2000e-5(c). 486 U.S. at 109; *see id.* at 114-16. The employee there submitted her charge to the EEOC 290 days after the discrimination occurred. *Id.* at 112-13. Pursuant to the worksharing agreement, the EEOC then instituted proceedings with the state agency and the state agency waived its right to initially process the charge. *Id.* at 113. The Court explained that "[i]f the [state agency's] waiver 'terminated' its proceedings, then [the employee's] charge was filed with the EEOC just under the 300-day limit." *Id.* And it held that the waiver indeed terminated the state proceeding, permitting the charge to be timely filed with the EEOC under § 2000e-5(c) and (e)(1). *Id.* at 114-16. In short, because the charge was submitted to the EEOC, the EEOC initiated proceedings with the state agency, and the state agency waived its right under § 2000e-5(c) to an "exclusive 60-day period for initial processing," the Court concluded that "the extended 300-day federal limitations period is applicable to this case." *Id.* at 125. Jones Day's position is irreconcilable with that holding. *See also, e.g.*, *Ivey v. District of Columbia*, 949 A.2d 607, 612

---

[4] The court in *Epps* reasoned that "the statutory requirement that the plaintiff 'initially institute[]' proceedings with" the local agency is "ambiguous" and deferred to the reasonable view that *simultaneous* filing with both the local agency and the EEOC satisfies the requirement. 2019 WL 7902976, at *3. Plaintiffs agree that deference would be appropriate in that scenario. But, in light of *Mohasco*, no such deference is actually necessary: It is clear that the proceedings are instituted with the local agency *before* the charge is legally "filed" with the EEOC, because the charge cannot be filed (though the EEOC may accept it and hold it in "suspended animation") until the state proceeding has first been (automatically) terminated. 447 U.S. at 817.

(D.C. 2008) ("under *Commercial Office Products*, wherever a work-sharing agreement exists, complainants may wait the full 300 days before filing with the EEOC").

These decisions remain settled law.  Just last year, the unanimous Supreme Court cited 29 C.F.R. § 1601.13 in the course of explaining that, "[i]f the state or local agency has a 'worksharing' agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies.  She may file her charge with one agency, and that agency will then relay the charge to the other." *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1846 (2019).  The Solicitor General (a once and future Jones Day partner) and the Assistant Attorney General for the Civil Rights Division (also recently a Jones Day partner) explained in their amicus brief in support of the plaintiff that the practical effect of the EEOC's regulation and worksharing agreement is to give employees in jurisdictions with a state or local agency 300 days to file, with no requirement that they first go to the local agency:

> If the state or local proceedings do not resolve the matter, the [charging] individual has "three hundred days after the alleged unlawful employment practice occurred" … to file a charge with the EEOC.  42 U.S.C. § 2000e-5(e)(1).  In practice, however, an individual typically need only file a single charge with either the EEOC or the state or local agency.  Pursuant to EEOC regulations and worksharing agreements with state and local agencies, whichever entity receives the charge will also file it with the other.

Ex. F at 11 (citing 29 C.F.R. § 1601.13(a)(3) & (b)(1); EEOC, Fair Employment Practices Agencies (FEPAs) and Dual Filing, https://www.eeoc.gov/employees/fepa.cfm; *Commercial Office Products*, 486 U.S. at 112).

**E.**     **Decisions in this Circuit.**  Consistent with these precedents and the longstanding view of the EEOC and the OHR, numerous decisions in this District recognize that "a plaintiff, in the District of Columbia, has 300 days to file a charge with the EEOC." *Chambers v. District of Columbia*, 389 F. Supp. 3d 77, 87 (D.D.C. 2019); *see also, e.g.*, *Epps*, 2019 WL 7902976, at *3-4 (analyzing the Worksharing Agreement and adopting Plaintiffs' position); *Proctor v. District of*

*Columbia*, 74 F. Supp. 3d 436, 455 (D.D.C. 2014) ("In the District of Columbia, a plaintiff has 300 days to file a charge with the EEOC."); *Craig v. District of Columbia*, 74 F. Supp. 3d 349, 361 (D.D.C. 2014) ("In the District of Columbia, however, a 'worksharing agreement' … results in the automatic cross-filing of an EEOC complaint …, thereby extending the filing deadline for plaintiffs in the District to 300 days."); *Slate v. D.C. PDS*, 31 F. Supp. 3d 277, 294-95 (D.D.C. 2014) (collecting additional cases); *Fowler v. District of Columbia*, 122 F. Supp. 2d 37, 40-43 (D.D.C. 2000) (analyzing and applying the Worksharing Agreement).

It is true that a handful of decisions have reached the opposite conclusion. *See Epps*, 2019 WL 7902976, at *2 (citing cases). But they appear to have done so on the basis of deficient briefing, for they do not consider the authorities and arguments discussed above. Indeed, the judge in *Epps* pointed to deficient briefing as the cause of her initial, later-reconsidered ruling erroneously adopting the position that Jones Day now presses upon this Court. *Id.* at *4 ("with more helpful and detailed briefing, Plaintiff's Motion for Reconsideration may well have been unnecessary").

Jones Day bases its position on *Ashraf-Hassan v. Embassy of France*, 878 F. Supp. 2d 164 (D.D.C. 2012). *See* Dkt. 15 at 29. That ruling acknowledges that the time to file a charge "may be extended to 300 days where a worksharing agreement exists between the EEOC and a state or local Fair Employment Practices (FEP) agency." *Id.* at 170. And it recognizes that the OHR "has entered into such an agreement with the EEOC." *Id.* Yet it holds the 180-day period applicable, reasoning that "[w]here Plaintiff has failed to pursue her grievances through the state's administrative process, as here, she cannot invoke the longer presentment window." *Id.* at 171.

The flaw in this reasoning (which may well be attributable to deficient briefing) is that, under the Worksharing Agreement, a discrimination victim who files with the EEOC in the District

10

of Columbia *has* thereby "institute[d] proceedings" with the OHR.  42 U.S.C. § 2000e-5(e)(1).

That is the point of the Agreement, and the text of Title VII requires no more for the 300-day

window to apply.  Certainly Title VII does not require that the local agency itself actively

participate in considering the charge.[5]  It requires only that the victim (or, as *Love* holds, the EEOC

acting on behalf of the victim) "institute proceedings" with the local agency.  Nothing in Title VII

precludes the local agency from designating the EEOC as its agent for these purposes to promote

the efficient and effective implementation of the civil rights laws.  To the contrary, the statute

expressly empowers the EEOC to "cooperate with" local agencies, "utilize the services of such

agencies and their employees," and "enter into written agreements with" local agencies that

"serve[] the interest of effective enforcement of" Title VII.  42 U.S.C. § 2000e-8(b).

Finally, the undefined phrase "institute proceedings" necessarily refers to an abstract legal

event, not a physical occurrence with some concrete meaning.  It therefore resists any unambiguous

judicial interpretation.  The EEOC has "authority … to issue … procedural regulations" to

implement Title VII, including by reasonably construing such ambiguous terms.  42 U.S.C.

§ 2000e-12(a); *see Commercial Office Products*, 486 U.S. at 115.  And the OHR surely has some

leeway to determine what it takes to "institute proceedings with" the OHR.  Indeed, § 2000e-5(c)

recognizes that the local authority generally "impose[s]" "requirement[s] for the commencement

of such proceedings" for federal as well as local purposes (though that provision sets a ceiling, for

federal purposes, on what local authorities can require before the victim files with the EEOC).[6]

---

[5] Indeed, under the division of labor prescribed by the Worksharing Agreement, "the EEOC will initially process … [a]ll Title VII … charges … received by the FEPA 240 days or more after the date of violation." Ex. A at 4.  In other words, if a Title VII charge is filed with the OHR after 240 days, then the OHR will decline to process the charge itself and will simply send it to the EEOC.

[6] *Ashraf-Hassan* thus erred in disregarding the D.C. Court of Appeals' view that, under the Worksharing Agreement, the EEOC's receipt of a charge operates to institute proceedings with

Here, the two agencies have agreed that "[t]he EEOC's receipt of charges on the [OHR]'s behalf will automatically initiate the proceedings of both the EEOC and the [OHR] for the purposes of" § 2000e-5(c) and (e)(1). Ex. A at 3; *see also* Ex. D at 4; *Osuoha v. District of Columbia*, 2003 WL 21466905, at *1 (D.C. Cir. 2003) (quoting this language with approval). The shared view of the federal and local agencies is entitled to respect. "[F]or all intents and purposes, the DCOHR receives charges filed with the EEOC." *Schuler*, 514 F.3d at 1372. In this District, then, the 300-day window applies to all Title VII charges filed with the EEOC.[7]

\*                    \*                    \*

The D.C. Circuit has left no room for doubt that the 300-day window applies. In *Carter v. George Washington University*, a precedential decision, it considered and directly rejected Jones Day's precise argument:

---

the OHR. *See* 878 F. Supp. 2d at 170. *Ashraf-Hassan* said that it was "not interpreting an issue of D.C. law" and concluded that it could therefore disregard the D.C. court's view. *Id.* That is only half correct. The meaning of "institute[] proceedings" in § 2000e-5(e)(1) is indeed a question of federal law inasmuch as it is a phrase in a federal statute. Yet the local agency must have the ability to determine what it takes to "institute[] proceedings" with that agency, as § 2000e-5(c) recognizes and as the D.C. Circuit acknowledged in *Schuler*, 514 F.3d at 1374. At any rate, because the local agency and the federal agency charged with implementing Title VII's procedures have *agreed* on that point, their agreement is surely entitled to deference.

*Ashraf-Hassan* also said that it was deferring to the D.C. Circuit's nonprecedential decision in *Simpkins v. WMATA*, 132 F.3d 1482 (D.C. Cir. 1997). But *Simpkins* turned on the plaintiff's failure to point to "a worksharing agreement between the DCOHR and the EEOC such that her EEOC filing satisfied the local filing requirement." *Id.* at *3.

[7] Jones Day also cites, without discussion, three other decisions from this District. *See* Dkt. 19 at 16 n.4 (citing *Cooper v. Henderson*, 174 F. Supp. 3d 193, 202-03 (D.D.C. 2016); *Bowers v. District of Columbia*, 883 F. Supp. 2d 1, 7 (D.D.C. 2011); *Major v. Plumbers Local Union No. 5*, 370 F. Supp. 2d 118, 126 (D.D.C. 2005)). *Major* does not support Jones Day; it merely repeats the statutory requirement that the victim initially institute proceedings with the local agency and defers to the EEOC's view that the requirement was satisfied. *See* 370 F. Supp. 2d at 126 ("Therefore, the Court will apply the 300-day filing period."). Anyway, Jones Day's cited rulings evince no awareness of the Worksharing Agreement. It is no wonder that they go astray. *See, e.g.*, *Osuoha*, 2003 WL 21466905, at *1 (summarily reversing dismissal for failure to exhaust where "the district court failed to consider the worksharing agreement" and citing *Fowler* approvingly).

> Carter filed her complaint with the EEOC more than 180 days after GW's decision to select Betts and more than 240 days after learning that the committee had declined to send her name forward to Worth. Asserting that Title VII requires the filing of complaints within 180 days of the time the employee learns of the challenged employment action, GW argues that Carter's claims are untimely. But 29 C.F.R. § 1601.13(a)(4)(ii)(A) provides that employees have up to 300 days to file where a worksharing agreement exists between the EEOC and a local fair employment practices agency. Since the EEOC had such an agreement with the D.C. Office of Human Rights at the time of Carter's complaint, Carter had up to 300 days to file with the Commission.

387 F.3d 872, 879 (D.C. Cir. 2004) (citation omitted); *see also Schuler*, 514 F.3d at 1373-74 (holding, under "analogous" ADEA provision, that "the D.C. worksharing agreement alone sufficed to 'commence[]' proceedings under state law as ADEA section 633(b) requires")[8]; *Harris v. Gonzales*, 488 F.3d 442, 445 (D.C. Cir. 2007) (Title VII decision explaining that 29 C.F.R. § 1601.13(a)(4)(ii) "establish[es] [a] 300-day time limit for private sector employees where the EEOC has a worksharing agreement with a state or local agency"); *Simpkins v. WMATA*, 132 F.3d 1482, at *3 (D.C. Cir. 1997) (unpublished) (suggesting that Title VII's 300-day window applies in the presence of "a worksharing agreement between the DCOHR and the EEOC such that [the plaintiff's] EEOC filing satisfied the local filing requirement"). *Carter* compels rejection of Jones Day's position, as numerous decisions have recognized. *See, e.g.*, *Chambers*, 389 F. Supp. 3d at 87; *Proctor*, 74 F. Supp. 3d at 455; *Craig*, 74 F. Supp. 3d at 361.

**F.    Local agency exhaustion under § 2000e-5(c).** As an aside, the issue here is not solely or even mainly an issue of timeliness. The statute says that the 300-day window for filing an EEOC charge applies to a discrimination victim in a jurisdiction with a state or local agency who has "initially instituted proceedings" with the local agency. 42 U.S.C. § 2000e-5(e)(1). The

---

[8] Like the D.C. Circuit, the Supreme Court has interpreted the ADEA's state filing requirement in light of Title VII's analogous requirement, 42 U.S.C. § 2000e-5(c), because the two provisions are "virtually *in haec verba*." *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 755 (1979).

statute also prohibits a victim in such a jurisdiction from filing an EEOC charge *at all* until "proceedings have been commenced" with the local agency and either 60 days have passed or the local agency has terminated the proceedings. *Id.* § 2000e-5(c); *Mohasco*, 447 U.S. at 817; Ex. F at 11. In other words, the prerequisite for the 300-day window is subsumed within the prerequisites for filing an EEOC claim at all, so anyone who is permitted to file at all in a jurisdiction with a local agency has 300 days to do so; conversely, anyone in such a jurisdiction who does not qualify for the 300-day window also does not qualify to file an EEOC charge at all. Read alone, § 2000e-5(e)(1) seems to give victims the option of skipping the local agency entirely so long as they file with the EEOC within the 180-day limit that applies to jurisdictions without a local agency; but that is incorrect, because § 2000e-5(c) makes filing with the local agency mandatory if such an agency exists. *Mohasco*, 447 U.S. at 817.

Thus, if the Worksharing Agreement is insufficient to institute proceedings with the local agency so as to invoke the 300-day window, it is also insufficient to exhaust with the local agency so as to allow the victim to file a charge with the EEOC at all. And, at least in the District of Columbia, victims of workplace discrimination who intend to sue in court rarely seek to have the OHR actually process their claims (rather than waiving its jurisdiction pursuant to the Worksharing Agreement), because anyone who does so risks losing her right to pursue her Human Rights Act claim in court under that Act's election-of-remedies provision (further discussed immediately below). In short, if Jones Day is right about the 300-day window, then most Title VII claims filed in the District in recent decades were invalid under § 2000e-5(c) regardless of whether they were filed within 180 days or 300. But Jones Day is wrong: Under the Worksharing Agreement, submitting a charge to the EEOC satisfies the requirements of both § 2000e-5(c) and § 2000e-5(e)(1)—exactly as the EEOC and the OHR intended. *See* Ex. A at 3 ("The EEOC's receipt of

charges … will automatically initiate the proceedings … for the purpose of Section 706(c) and (e)(1) of Title VII."); Ex. D at 4; Ex. F at 11.

      **G.**    **Election of remedies under the Human Rights Act.**  Jones Day is wrong again when it asserts that the EEOC could not have instituted proceedings with the OHR on Julia's charge because the D.C. Human Rights Act's "election of remedies provision states that a person seeking relief must choose between filing a complaint with [the OHR] and filing a complaint in court."  Dkt. 19 at 16-17 (quoting *Griffin v. Acacia Life Insurance Co.*, 925 A.2d 564, 572 (D.C. 2007)).  Jones Day's position is that no one who files both a Title VII claim and a Human Rights Act claim in court—the typical practice for workplace discrimination victims in the District—is entitled to the 300-day time limit, because the Human Rights Act generally requires victims to choose between filing a charge with the OHR and filing a complaint in court.  *Id.*  But Jones Day's own cited authority, the D.C. Court of Appeals' decision in *Griffin*, reversed a lower court ruling for adopting precisely the reasoning that Jones Day would have this Court embrace.  *See* 925 A.2d at 571-72 (describing the ruling being reversed, which appears to be where Jones Day got its argument).

      As *Griffin* explains, the Human Rights Act's election-of-remedies provision makes clear that, "where the [OHR] has dismissed [a] complaint on the grounds of administrative convenience … [the victim] shall maintain all rights to bring suit as if no complaint had been filed."  *Id.* at 572 (quoting D.C. Code § 2-1403.16(a)).  *Griffin* authoritatively holds that "the OHR's automatic dismissal of [a] complaint in accordance with the worksharing agreement amount[s] to a dismissal 'on the grounds of administrative convenience,'" meaning that the victim "still ha[s] a right to sue in court 'as if no complaint had been filed.'"  *Id.* at 573 (quoting D.C. Code § 2-1403.16(a)); *see id.* at 573-74 (explaining how this conclusion follows from "how the worksharing agreement

operates"). That is precisely what happened here. *See also, e.g.*, *Ibrahim v. Unisys Corp.*, 582 F. Supp. 2d 41, 46-47 (D.D.C. 2008) (applying *Griffin*). It is not clear why Jones Day has chosen to argue directly contrary to its own binding citation.

**H.** **"Cross-filing."** Finally, Jones Day complains that Julia "has not even *alleged* that her charge was cross-filed" with the OHR. Dkt. 19 at 16. No such allegation was necessary, for a complaint need not plead the facts necessary to rebut an affirmative defense like untimeliness. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); *Stewart v. International Union*, 271 F. Supp. 3d 276, 280 (D.D.C. 2017). And Jones Day bears the burdens of production and persuasion on its motion for summary judgment on its affirmative defense. Fed. R. Civ. P. 56. So Jones Day would have the burden of proving that the charges were *not* cross-filed.

Anyway, Jones Day misunderstands the concept of "cross-filing." Under the Worksharing Agreement, proceedings with the OHR are instituted by the EEOC "automatically"—*by operation of law*—for *all* Title VII charges filed with the EEOC in the District. Ex. A at 3; Ex. D at 4. Thus, "for all intents and purposes, the DCOHR receives charges filed with the EEOC." *Schuler*, 514 F.3d at 1372. The 300-day period therefore applies to such charges purely as a result of the Agreement. No further evidence or action by the charging party is necessary. *E.g.*, *id.* at 1376 ("Schuler's actual filing with the EEOC and his nominal filing with the DCOHR" satisfied the ADEA's analogous requirement that "proceedings have been commenced under the State law" before suit may be filed); *Ivey*, 949 A.2d at 612 ("Actual receipt by the state agency is irrelevant, because the state is deemed to have received the complaint and waived its jurisdiction upon receipt by the EEOC." (quoting 29 C.F.R. § 1601.13(a)(4)(ii)(A))); *Fowler*, 122 F. Supp. 2d at 43.[9]

---

[9] That said, if there is such a requirement, then Plaintiffs have satisfied it. Their EEOC charges expressly state: "I want this charge filed with both the EEOC and the State or local Agency." Ex. G

That is why the D.C. Circuit ruled in *Carter* that the plaintiff "had up to 300 days to file" simply because "the EEOC had [a worksharing] agreement with the [OHR]," without any discussion of whether "cross-filing" had occurred in that particular case.  387 F.3d at 879 ("employees have up to 300 days to file where a worksharing agreement exists between the EEOC and a local fair employment practices agency").  *Chambers* was thus correct in stating plainly that "a plaintiff, in the District of Columbia, has 300 days to file a charge with the EEOC."  389 F. Supp. 3d at 87.

At least so long as the Worksharing Agreement persists, the law of this District is as simple as that.  Plaintiffs' charges were timely, and Jones Day's motion should be denied.[10]

**I.     Jones Day's supplemental brief.**  The two brand-new arguments in Jones Day's supplemental brief on this issue fare no better than its previous offerings.

*First*, Jones Day observes that Julia's charge was not notarized.  Dkt. 30 at 1.  It does not suggest that the EEOC requires notarization.   But it points to a D.C. municipal regulation addressing complaints filed with the OHR that says that "the finalized complaint shall be signed and verified before a notary public."  4 D.C.M.R. § 705.2.  "For that reason alone," Jones Day urges, Julia's charge "should not be treated as having triggered the 300-day rule."  Dkt. 30 at 1.

---

at 2; Ex. H at 2; Ex. I at 2.  Jones Day has always known this, for it received Plaintiffs' charges and even filed one of them with the Court.  *See* Dkt. 26-1 at 18; *see also Schuler*, 514 F.3d at 1374-75 (finding "no reason to believe" that "the DCOHR had to receive an actual copy of the complaint to commence proceedings" under the ADEA, and holding that, even if it did, it was sufficient that the plaintiff "explicitly told the EEOC that his complaint should be [cross-filed]," because "[i]t is well settled law that if the EEOC fails to refer a charge to the state charging agency, the EEOC's misfeasance is not held against the plaintiff" (quotation marks omitted)).

[10] Courts may take judicial notice of the Worksharing Agreement at the pleading stage; conversion to summary judgment is not necessary.  *See Caha v. United States*, 152 U.S. 211, 221-22 (1894); *Citizens for Responsibility & Ethics in Washington v. Trump*, 924 F.3d 602, 607 (D.C. Cir. 2019); *Ibrahim*, 582 F. Supp. 2d at 43 n.2; *Fowler*, 122 F. Supp. 2d at 40 n.4.

Jones Day's position—for which it offers zero authority—is irreconcilable with *Commercial Office Products*. There, the Supreme Court held that the 300-day window for cases where the plaintiff has initially instituted proceedings with the state agency applies even if the plaintiff filed her charge after the deadline set by state law for such charges. 486 U.S. at 122-124. If a charge that is time-barred under state law is sufficient to "institute[] proceedings" for federal purposes (42 U.S.C. § 2000e-5(e)(1)), it follows a fortiori that a charge without notarization called for by state law is sufficient for those same federal purposes. *See also Love*, 404 U.S. at 525.

Anyway, Plaintiffs did not file OHR charges; they submitted EEOC charges to the EEOC. *See* Ex. G at 2; Ex. H at 2; Ex. I at 2. As explained above, the EEOC then instituted proceedings with the OHR by operation of the Worksharing Agreement. The Agreement does not require any notarization for the EEOC to do so. And, in the Worksharing Agreement, the OHR designates the EEOC "as its agent for the purpose of receiving and drafting charges." Ex. A at 3. Notably, the D.C. regulation immediately following the one that Jones Day points to empowers the OHR's Director to initiate complaints—and it does *not* require notarization. 4 D.C.M.R. § 705.3. It makes sense, then, that when the EEOC initiates an OHR proceeding while acting in its capacity as the OHR's agent, it likewise is unbound by any notarization requirement. So even if the technical requirements of D.C. law were controlling for federal purposes, contra *Commercial Office Products*, Jones Day's argument would fall flat.

Nor does Jones Day contend that the OHR would treat the absence of notarization even from an OHR complaint filed by an individual (rather than the EEOC as agent of the OHR) as a fatal flaw rendering the charge null and void, rather than as a technical defect analogous to Jones Day's failure to provide the "full residence address[es]" of Defendants Stephen Brogan and Beth Heifetz in their first (or any) filing in this action. LCvR 5.1(c)(1). Jones Day omits from its brief

the first clause of the sentence that it hangs its hat on: "*Although the date of the online filing will constitute the filing date for the complaint*, the finalized complaint shall be signed and verified before a notary public." 4 D.C.M.R. § 705.2 (emphasis added).  The omitted language makes clear that, although the OHR also requires submission of a notarized "finalized complaint," it treats an un-notarized online filing as sufficient to "institute[] proceedings."  As Jones Day admits, § 2000e-5(e)(1) requires no more than that.  Dkt. 30 at 1.

*Second*, Jones Day observes that the notice it received from the EEOC "does not advise Jones Day that the charge was cross-filed," even though the Worksharing Agreement says that the EEOC would provide such notice.  Dkt. 30 at 2.  Jones Day did receive the charge itself, which indicates that Julia asked that it be filed with the local agency; perhaps the EEOC views that as sufficient notice.  Ex. G at 2; *see also* Ex. H at 2; Ex. I at 2.  Anyway, even assuming that the EEOC failed to give Jones Day the notice of cross-filing contemplated by the Worksharing Agreement, that omission would hardly compel a reasonable juror to conclude that no such filing occurred.  Finally, as explained above: (1) Such "cross-filing" occurs automatically by operation of the Worksharing Agreement, with no requirement that the EEOC actually file anything with the OHR; and (2) the D.C. Circuit has made clear that, if there were such a requirement, it would be enough for the plaintiff to *ask* the EEOC to cross-file; the EEOC's failure to do so could not be held against the plaintiff.  *See Schuler*, 514 F.3d at 1374-76.

/s/ Julia Sheketoff

Julia Sheketoff (pro se)
2207 Combes Street
Urbana, IL 61801
(202) 567-7195
sheketoff@gmail.com
D.C. Bar No. 1030225

August 11, 2020

/s/ Mark C. Savignac

Mark C. Savignac (pro se)
2207 Combes Street
Urbana, IL 61801
(217) 714-3803
marksavignac@gmail.com
D.C. Bar No. 995367