**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARK C. SAVIGNAC and<br>JULIA SHEKETOFF,<br><br> *Plaintiffs*,<br><br>  v.<br><br>JONES DAY, STEPHEN J. BROGAN,<br>BETH HEIFETZ, and JOHN DOES 1-10,<br><br> *Defendants*. | Case No. 1:19-cv-02443-RDM |

**REQUEST FOR PRE-MOTION CONFERENCE IN ANTICIPATION OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
FOR RETALIATORY TERMINATION AGAINST
DEFENDANTS JONES DAY AND STEPHEN BROGAN**

In accordance with this Court's standing order, Plaintiffs Mark Savignac and Julia Sheketoff respectfully request a telephonic pre-motion conference regarding their anticipated motion for partial summary judgment.  The motion will seek summary judgment that Defendants Jones Day and Stephen Brogan violated Title VII, the Fair Labor Standards Act, and the D.C. Human Rights Act by firing Mark for Plaintiffs' complaint about Jones Day's discriminatory provision of more paid leave to new mothers than to new fathers.  *See* Dkt. 1 at 31-33 (Compl. ¶¶ 223-48, Counts VII-IX).  The motion would address only the liability of Jones Day and Brogan for firing Mark.  It would not address the liability of Brogan's "collaborat[ors]," the appropriate remedies, Defendants' other acts of illegal retaliation, or Plaintiffs' other claims.

On January 16, 2019, Plaintiffs emailed Jones Day a pre-suit demand reiterating their view that Jones Day's paid leave offerings for new parents illegally discriminate on the basis of sex.  The January email informed Jones Day that if it did not give Mark equal treatment then he would sue it for sex discrimination: "I will file a charge with EEOC and then a class-action lawsuit, and the matter will be decided in the D.C. Circuit and in the court of public opinion."  Three business days later, Jones Day fired Mark.  Defendants state that they fired Mark for his "threat" to file a civil rights lawsuit: "Jones Day fired Savignac for the poor judgment and immaturity reflected by his extortionate threat to harm the [f]irm in the 'court of public opinion' unless it acceded to his demand."  Dkt. 35 at 5 (Answer ¶ 10).

The three civil rights laws at issue here prohibit retaliation against employees for challenging sex discrimination.  An employer violates this prohibition if (1) an employee engages in "protected activity," (2) the employer takes an "adverse action" against the employee, and (3) the adverse action was "causally related" to the protected activity.  *Savignac v. Jones Day*, --- F. Supp. 3d ---, 2020 WL 5291980, at *18 (D.D.C. 2020).  Since firing an employee is clearly an

"adverse action," Jones Day is liable under its own version of the facts (making any fact dispute immaterial) if the activity for which it says it fired Mark was "protected activity."

The activity was indeed protected. The civil rights laws protect an employee's opposition to employer practices that violate those laws. *Id.* That protection also applies where the employee reasonably believes that the challenged practice is illegal, even if a court later decides that she was mistaken. *Id.* Here, Plaintiffs are not mistaken: Jones Day illegally discriminates on the basis of sex by giving eight more weeks of paid leave to a new mother than a new father without regard to whether the mother is actually disabled during that time. But regardless of whether Plaintiffs are *correct* on the merits of their underlying discrimination complaint, that complaint was undeniably *reasonable* and therefore protected—and that is all that matters for purposes of the anticipated motion.

*First*, Plaintiffs' complaint was based on an accurate (or, at least, reasonable) understanding of Jones Day's paid leave offerings. Julia laid out this understanding when she first raised Plaintiffs' concerns about discrimination in an August 2018 email:

> I was looking at the firm's parental leave policy, and I noticed that Jones Day gives women 18 weeks of paid leave (and 24 weeks total) while it gives men 10 weeks of paid leave (and 16 weeks total). Eight of the weeks for women are labeled as disability leave, but the leave is not dependent upon whether women are actually disabled. Most women aren't physically disabled from office work for such a long period and yet still get the full eight weeks of disability leave ….

Julia's email asserted that it is "unfairly discriminatory" to give new mothers an extra eight weeks of paid leave that are "labeled as disability leave, but … not dependent on whether women are actually disabled," such that women who "aren't physically disabled from office work for such a long period … still get the full eight weeks."

Plaintiffs' understanding that Jones Day offers every new mother eight more weeks of paid leave than it gives new fathers, without regard for whether she is actually disabled from working

at Jones Day for that period, is correct. At a minimum, it is eminently reasonable. For one thing, virtually all women at Jones Day take the full eight weeks (as Jones Day itself asserts), which would not be the case if the leave were limited to the woman's period of actual disability. Plaintiffs' understanding is also consistent with the plain terms of Jones Day's written Family Leave policy, which says that "the [f]irm will provide mothers eight weeks of paid leave under the [f]irm's Short Term Disability policy" plus "an additional ten weeks of paid family leave after the eight weeks of paid disability leave." Adding eight plus 10, the written policy describes the total paid leave entitlement for new mothers as "the 18 weeks of paid leave." Any woman who read the written policy would have the same takeaway: If she had a baby, she would be entitled to "the 18 weeks of paid leave." It is no surprise, then, that virtually all women take the full eight weeks.

In its reply in support of its motion to dismiss, Jones Day asserted (for the first time ever) that these explicit statements in its written Family Leave policy are just inaccurate "shorthand" for the terms of its written Short Term Disability policy, which, it says, limit each woman's extra leave to her period of actual physical disability—which could (and often would) be less than eight weeks. Actually, the written Short Term Disability policy says nothing of the sort; it nowhere contradicts the clear statements in the written Family Leave policy. This Court has already pointed to the "difficulties with Defendants' textual argument" about the disability policy, holding that "the language of the disability policy upon which they hang their hat is subject to different interpretations." 2020 WL 52919980, at *16. That forecloses any argument that the text of the disability policy is so clear as to render Plaintiffs' understanding unreasonable and thus unprotected. Any mother-to-be who read the two written policies together would understand that she could take the full 18 weeks of paid leave regardless of how long she was actually disabled. Again, it is no surprise that virtually all women take the full amount.

3

Even more compellingly, Julia laid out Plaintiffs' understanding in her August 2018 email (quoted above). That email went to Sarah McClure, the firm's Director of Human Resources and longtime employment lawyer. McClure would surely have corrected Julia if Julia's stated understanding of the firm's HR policy were incorrect; that is her job. But, far from offering any correction, McClure confirmed Julia's clearly stated understanding of Jones Day's paid leave offerings and denied her request for equal treatment with a lengthy analysis premised on that understanding. At a minimum, Plaintiffs' belief that Jones Day actually has the challenged leave disparity was reasonable and thus protected.

*Second*, Plaintiffs' belief that the challenged leave disparity is illegal is also eminently reasonable (and, indeed, correct). The civil rights laws prohibit sex discrimination in employment. The Supreme Court has said that employers cannot "grant[] more family-leave time to women than to men." *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721, 739 n.12 (2003). It has upheld bona fide disability leave for new mothers that is "narrowly drawn to cover only the period of *actual physical disability* on account of pregnancy, childbirth, or related medical conditions," while emphasizing that the law prohibits "special treatment of pregnant workers based on … generalizations about their needs and abilities." *California Federal Savings & Loan Ass'n v. Guerra*, 479 U.S. 272, 285 n.17, 290 (1987) (emphasis in original). Treating all women as disabled for eight weeks after childbirth is nothing if not a "generalization[]." The Supreme Court has also reaffirmed that even "true" sex-based generalizations are off-limits to employers. *E.g.*, *City of Los Angeles v. Manhart*, 435 U.S. 702, 704, 707-08 (1978). And it has made clear that eight weeks of "disability" leave for office workers is not a "true" generalization in any event. *E.g.*, *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 649 n.15 (1974).

The Third Circuit has expressly held that leave given to new mothers but not fathers is "per se void for any leave granted beyond the period of actual physical disability." *Schafer v. Board of Public Education*, 903 F.2d 243, 248 (3d Cir. 1990). The Eighth Circuit and the EEOC also support Plaintiffs' position. *See* Dkt. 18 at 13-27 (detailed analyses of the parties' legal authorities). By contrast, as this Court held after considering the parties' cited authorities, "Defendants have not shown that the text of Title VII, the FLSA, or the DCHRA or any precedent (much less any controlling precedent) is unambiguously at odds with Savignac's belief that Jones Day's leave policy was unlawful." 2020 WL 5291980, at *18. Even if Plaintiffs' view of the law were mistaken (and it is not), the civil rights laws' protection for *mistaken but reasonable* legal positions means nothing if it does not apply here.

Since Plaintiffs' view that Jones Day's paid leave offerings are illegally discriminatory was (at a minimum) reasonable, the civil rights laws protected their January 2019 complaint. Defendants' statement that "Jones Day fired Savignac for the poor judgment and immaturity reflected by his extortionate threat to harm the [f]irm in the 'court of public opinion' unless it acceded to his demand" is thus an admission of a blatant violation of the civil rights laws. Those laws protect complaints about what the employee reasonably believes to be discrimination, and they include no carve-out for complaints that advise—in Defendants' words, "threat[en]"—that the employee will pursue his rights through litigation, as Plaintiffs did in the January email: "I will file a charge with EEOC and then a class-action lawsuit, and the matter will be decided in the D.C. Circuit and in the court of public opinion." There is "no legal distinction to be made between the filing of a charge[,] which is clearly protected, and threatening to file a charge." *Gifford v. Atchison, Topeka & Santa Fe Railway Co.*, 685 F.2d 1149, 1156 n.3 (9th Cir. 1982) (citation omitted); *see also, e.g.*, *EEOC v. L.B. Foster Co.*, 123 F.3d 746, 754 (3d Cir. 1997).

5

Jones Day is also liable to Julia for illegally firing her husband. Julia engaged in the protected activity alongside Mark (in fact, she initiated it in the August 2018 email quoted above), and firing a husband is an "adverse action" for his wife, so she independently satisfies the three elements of a retaliation claim. *See Thompson v. North American Stainless, LP*, 562 U.S. 170, 174 (2011). Even if she did not, she would still have a cause of action as a "person aggrieved" by the retaliation against Mark. *See id.* at 177-78. "[T]he term 'aggrieved' in Title VII … enabl[es] suit by any plaintiff with an interest 'arguably sought to be protected by the statute.'" *Id.* at 178. Julia is *both* the wife of the fired employee *and* also herself the employee who initiated the opposition that led to the firing, so she easily clears this "low bar." *Howard R.L. Cook & Tommy Shaw Foundation v. Billington*, 737 F.3d 767, 771-72 (D.C. Cir. 2013) (Kavanaugh, J.) ("Title VII[] gives injured employees a right to sue" for retaliation against third parties).

Finally, Defendant Brogan, Jones Day's managing partner, is personally liable for illegal retaliation under the D.C. Human Rights Act. *See Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 887-88 (D.C. 1998) (law firm partners are proper defendants under the Act). This, too, is true even under Defendants' version of the facts: Defendants state that the "decision to terminate Savignac was a collaborative decision, which included consultation with Brogan." Dkt. 35 at 23 (Answer ¶ 154). Plaintiffs will pursue their rights against Brogan's "collaborat[ors]" in due course.

| | |
|---|---|
| /s/ Julia Sheketoff | /s/ Mark C. Savignac |
| Julia Sheketoff (pro se) | Mark C. Savignac (pro se) |
| 2207 Combes Street | 2207 Combes Street |
| Urbana, IL 61801 | Urbana, IL 61801 |
| (202) 567-7195 | (217) 714-3803 |
| sheketoff@gmail.com | marksavignac@gmail.com |
| D.C. Bar No. 1030225 | D.C. Bar No. 995367 |

January 18, 2021

6