# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARK C. SAVIGNAC and<br>JULIA SHEKETOFF,<br><br>    *Plaintiffs*,<br><br>v.<br><br>JONES DAY, *et al.*,<br><br>    *Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. No. 1:19-02443 (RDM)<br><br><br>**DEFENDANTS' RESPONSE TO<br>PRE-MOTION STATEMENT** |

Traci Lovitt (Bar No. 467222)
Terri L. Chase (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, NY 10281
Phone: (212) 326-3939

Anderson T. Bailey (*pro hac vice*)
JONES DAY
500 Grant Street
Pittsburgh, PA 15219
Phone: (412) 391-3939

Christopher DiPompeo (Bar No. 1003503)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Phone: (202) 879-3939

*Attorneys for Defendants*

Although discovery has not yet begun, Plaintiffs wish to file a motion for partial summary judgment. (Dkt. 41.) Their motion would address *one* aspect of *one* set of claims against a *subset* of Defendants. (*Id.*) Plaintiffs assert claims challenging Jones Day's policies; alleging retaliation for opposing those policies; asserting pay discrimination against Sheketoff; and for alleged interference with Savignac's protected leave. Plaintiffs' proposed motion for partial summary judgment is limited to retaliation; even then, it seeks judgment only as to Savignac's termination, not the other retaliatory acts alleged in the original and supplemental Complaints; and even as to the termination, Plaintiffs seek judgment against only two of the three Defendants. (*See* Dkt. 41 at 2.) To be clear, Plaintiffs do not purport to abandon their other claims or theories. Rather, they wish to proceed piecemeal and defer those other claims until, presumably, after discovery.

If the Court authorizes this motion, Defendants anticipate invoking Rule 56(d). Defendants need discovery to challenge discrete elements of Plaintiffs' case. Defendants would also oppose the motion on grounds on which *Plaintiffs* would likely want discovery. Because proceeding piecemeal offers no advantage to the parties or the Court, the most prudent course is to defer all summary judgment motions (from both sides) until after the close of discovery.

**1.**     Plaintiffs correctly set forth the legal framework for their retaliation claims under the various statutes at issue. (Dkt. 41 at 2; *see* Dkt. 32 at 35.) Plaintiffs seek summary judgment limited to the following theory: (i) they engaged in protected activity by sending a January 2019 email about Jones Day's leave policies; (ii) the Firm terminated Savignac; and (iii) the termination was caused by the alleged protected activity. Plaintiffs bear the burden of proof, and are entitled to summary judgment only if no reasonable factfinder could conclude they did not carry that burden. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). That is a high bar. *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35 (1st Cir. 1998) ("The party who has the burden of

1

proof on a dispositive issue cannot attain summary judgment unless the evidence that he provides on that issue is *conclusive*." (emphasis added)).

**2.** In response to Plaintiffs' motion, Defendants would invoke Rule 56(d). Defendants require at least two buckets of discovery to rebut Plaintiffs' evidence concerning whether they engaged in protected activity. *First*, Defendants need discovery to challenge Plaintiffs' good faith in asserting that the Firm policies were unlawful. As Plaintiffs admit, opposing an employer's practice is protected activity only if that practice is unlawful or if the employee "reasonably believes that the challenged practice is illegal." (Dkt. 41 at 3.) At this point in the litigation, with the legality of Jones Day's policies remaining unresolved, Plaintiffs must demonstrate that they "reasonably and in good faith believed" they were legally entitled to the demands made in their January 2019 email. *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012).

Plaintiffs argue at length that it was *objectively reasonable* to believe Jones Day's policies were unlawful. (Dkt. 41 at 3-6.) But, even if that were true (and it is not), they ignore the threshold *subjective* question: whether Plaintiffs had a good-faith belief that Savignac was legally entitled to the additional leave he was demanding. Defendants have reason to doubt their good faith in light of the self-centered and coercive nature of Savignac's demand. He wanted more time for himself "or else," not a change in policy for all. In addition, Savignac demanded the full eight weeks of leave that birth mothers receive, despite later admitting to this Court that those mothers are entitled to at least *some* period of disability leave to which he had no right. (*See* 8/4 Oral Arg. Tr. at 38.) And, for present purposes, Defendants are entitled to discovery on the issue of good faith. "[G]ood faith is a question of fact" that Plaintiffs must prove. *A.J. McNulty & Co. v. Sec'y of Labor*, 283 F.3d 328, 338 (D.C. Cir. 2002).

2

Here, investigating good faith would require, at minimum, reviewing Plaintiffs' drafts of their email to Jones Day demanding extra leave; discovery into their communications with each other about the demand and their basis for demanding non-disability leave equal to birth mothers' full disability leave; understanding what research they did—or did not do—to support their demand; investigating the basis of and reasons for the demand's references to the "court of public opinion" and Plaintiffs' "familiar[ity] with the D.C. Circuit," Compl. ¶ 146; reviewing communications with the "competent attorneys" whose advice Plaintiffs put at issue by claiming those attorneys agreed with their position, *id.*; and discovery of their communications with other employers about parental leave (including after their second child was born). Jones Day also needs to depose Plaintiffs to inquire into the basis for their ostensible beliefs and to cast doubt on their credibility. As the Court thus already recognized, "without factual development, the Court cannot determine whether Savignac reasonably believed that the Jones Day policy" was unlawful. (Dkt. 32 at 38.) Defendants are entitled to engage in that "factual development" before responding to a summary judgment motion.

*Second*, Defendants need discovery into Sheketoff's alleged role in the January 2019 email. The Court concluded that Sheketoff "plausibly alleged that she engaged in protected activity by jointly sending an email opposing Jones Day's alleged sex discrimination." (Dkt. 32 at 41.) But that allegation, assumed true for purposes of the motion to dismiss, must be *proved* in order for Sheketoff to prevail at summary judgment. There has been no discovery into that issue, however. Defendants are entitled to review the documentary evidence and to obtain testimony about the development of the email.[1]

---

[1] To be clear, even if Sheketoff did participate in the email, there is also a separate question whether Defendants *knew* that fact. If not, that is another basis to deny summary judgment on Sheketoff's retaliation claims—a point this Court has recognized. (*See* Dkt. 32 at 41 ("Although

3

3.     Defendants would also oppose the proposed motion on other grounds, on which *Plaintiffs* may want discovery. *First*, Defendants deny, as a factual matter, that they terminated Savignac because of his protected activity. Crucially, the courts (including the D.C. Circuit) have recognized the difference between firing employees for "their opposition" to unlawful practices and firing them for "their manner of opposition." *Pendleton v. Rumsfeld*, 628 F.2d 102, 107 (D.C. Cir. 1980). "If plaintiffs were fired for the improper manner of their opposition ..., not the opposition itself, then the statute does not by its terms apply." *Id.* As the First Circuit has explained, "where an employee is discharged for aggressive and allegedly disruptive activities associated with her complaints of discrimination," a factfinder must "separate out the protected from the nonprotected conduct." *Hochstadt v. Worcester Found. for Experimental Biology*, 545 F.2d 222, 229 (1st Cir. 1976). Retaliation is only established if the reason for the adverse action was the *protected* aspect of the activity. This is an accepted principle of law across the federal courts. *See also, e.g.*, *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1141 (11th Cir. 2020) (en banc) (reiterating that a retaliation claim fails if opposition "is expressed in a manner that unreasonably disrupts other employees or the workplace"); *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998) (agreeing "Title VII was 'not intended to immunize insubordinate, disruptive, or nonproductive behavior'"). Plaintiffs simply gloss over this well-established rule. (Dkt. 41 at 6.)

That legal principle is clear; its application here presents a question of fact. Did the Firm terminate Savignac because he engaged in the putative protected activity—by opposing application of the leave policy or indicating his intention to sue over it? Or did the Firm terminate Savignac

---

it is possible that the recipients believed that the email came from Savignac alone, that is not the standard that governs *at this stage of the proceeding*." (emphasis added)).)

4

because of the unreasonable *manner* in which he did so—including by extortionately threatening to damage the Firm in the "court of public opinion" if the Firm did not give him the same leave as birth mothers (leave to which he now admits he was not entitled), by boasting immaturely about how "familiar" he is with the court where Sheketoff clerked, and by discourteously directing a "[g]ive me ... or else" demand to a member of the Firm's professional staff?  The motive is what matters.  The record as it stands already provides sufficient basis to find a dispute of material fact here—among other things, the Firm took no adverse action against Sheketoff or Savignac when they told the Firm six months earlier that they "oppose[d]" its allegedly "illegal" policies.  Compl. ¶¶ 140-45.  What changed from August to January was their *manner*.  In opposing summary judgment, Defendants would seek to bolster that inference through a declaration from the relevant decisionmaker, explaining that Savignac's termination was attributable to his unacceptable manner and would not have occurred based on his allegedly protected activity alone.

*Second*, with respect to Sheketoff's claim, Defendants would submit testimonial evidence showing that the termination of Savignac was not somehow intended to penalize Sheketoff for any role she supposedly played in sending the email.  *See also supra* n.1.  Independent of the point discussed above, there is therefore at minimum a fact dispute over whether Defendants "retaliated against *her* ... by firing her husband." (Dkt. 32 at 41 (emphasis added).)

On both of these points—the true cause of Savignac's termination, and whether it had any connection to Sheketoff—the evidence is already in Defendants' hands, so there is no objection under Rule 56(d).  Defendants are concerned, however, that upon denial of Plaintiffs' motion, they would then seek discovery into these factual questions and file a renewed motion later, wasting the parties' and Court's resources.

5

**4.** Given the discovery to which Defendants are entitled and the discovery Plaintiffs will presumably want, Defendants believe it would be most appropriate to defer any motions for summary judgment until the usual time—after close of discovery.

That is particularly true because an early resolution of a sliver of one set of claims offers no practical benefit to the parties and no efficiencies for the Court. Whatever the outcome of this motion, discovery must proceed on the rest of the case, including retaliation claims that are bound up with this one (*e.g.*, the claim that *other* Defendants were involved in Savignac's termination and are therefore also personally liable, the claim that Defendants retaliated against Savignac by designating only one partner to serve as an employment reference, and the claim that Defendants retaliated by commenting on the litigation in a press release). There will need to be another round of summary judgment motions after discovery, on issues including the legality of the leave policy, which is intertwined with the retaliation claims. If Plaintiffs file this motion now and lose, they will likely want to renew the motion again after discovery. And even if Plaintiffs file this motion now and *prevail*, that will do nothing to streamline the proceedings, expedite the termination of this case, or address any irreparable harm (none is alleged). In short, there is simply no reason to carve out this single sub-issue for piecemeal resolution now, before discovery has even begun.

To the extent this Court disagrees, Defendants respectfully request that the Court prohibit renewed summary judgment motions on the issues Plaintiffs press now. If Plaintiffs proceed in a piecemeal fashion, they should not be allowed to do so in a way that wastes time and effort.

For these reasons, Defendants respectfully suggest that the Court defer any and all motions for summary judgment, by both sides, until after the close of discovery, or prohibit renewed motions on duplicative topics after the close of discovery.

February 23, 2021                                              Respectfully submitted,


                                                                                */s/ Traci Lovitt*
Traci Lovitt (Bar No. 467222)
Terri L. Chase (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, NY 10281
Phone: (212) 326-3939

Anderson T. Bailey (*pro hac vice*)
JONES DAY
500 Grant Street
Pittsburgh, PA 15219
Phone: (412) 391-3939

Christopher DiPompeo (Bar No. 1003503)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Phone: (202) 879-3939

*Attorneys for Defendants*