# EXHIBIT B

 Gmail

**Julia Sheketoff <sheketoff@gmail.com>**

---

# Savignac v. Jones Day - Joint Submission

**Julia Sheketoff** <sheketoff@gmail.com>                                                      Tue, Jun 1, 2021 at 8:15 AM
To: "Bailey, Anderson T." <atbailey@jonesday.com>
Cc: Mark Savignac <mark.savignac@gmail.com>, "Chase, Terri L." <tlchase@jonesday.com>

Anderson,

You begin your Sunday email by calling me a liar. Insulting me has been a central part of Defendants' strategy in their court filings and their communications about the case to the press and the public, but this is the first attack that you (Anderson) have made personally. It is also the first made in what should be calm and professional communications about the management of the case.

Your accusation is incorrect. I have serious doubts about the privacy and security of information turned over to Jones Day and am rightly troubled by the prospect of handing it the confidential medical information you demand.

Jones Day appears to have the worst record of any major law firm when it comes to maintaining the privacy of confidential information entrusted to it. Just a few months ago, an enormous amount of confidential information that Jones Day clients had given to Jones Day was released and made publicly available. Reporting by the Chicago Tribune and other sources suggests that some of the publicized information could have extremely negative consequences for officials at the City of Chicago, a Jones Day client. (Ironically, Chicago is also a Logikcull customer.) And while Jones Day's press release asserted that other law firms whose confidential information remained secure used the same *company* (Accellion) from which the Jones Day client information was taken, the press reports that although other firms use the same company, the particular Accellion *service* that was breached was a legacy service that Jones Day continued to use while others opted for a more secure service, and the more secure service was not breached (abovethelaw.com/2021/02/hackers-claim-to-have-jones-day-files/ and www.computerweekly.com/news/252496459/Law-firm-and-cyber-criminals-clash-over-source-of-stolen-data).

Jones Day's troubling record on confidentiality extends to this litigation. For instance, Defendants filed on the public docket in this case confidential materials that they failed to properly redact, according to their emergency motion to seal the unsuitably redacted filing. Jones Day's failure occurred just a few weeks after another federal judge ordered Jones Day to show cause why it should not be sanctioned for deficient redactions of grand jury testimony (www.lawsitesblog.com/2019/09/jones-day-uses-lawyerspeak-to-try-to-explain-away-botched-redaction-i-translate-for-you.html). Jones Day ended its response there by "assur[ing] the Court that it will not happen again." Yet it repeated the error just a few weeks later. Considering that Jones Day made the error (at least) twice within a matter of weeks (and made the second error after being threatened with sanctions for the first), I am concerned that Jones Day commits such errors frequently. Since I will have to rely on Jones Day to redact my confidential information, this all concerns me.

Also in this case, Jones Day violated a federal privacy rule by filing Mark's date of birth unredacted on the public docket, a direct violation of Federal Rule of Civil Procedure 5.2. Dkt. 26-1. And Jones Day committed a further violation of Rule 5.2 by filing our child's name. I'm not claiming to be aggrieved by those violations, but you'll admit that they were either inadvertent violations by Jones Day of the on-point privacy law or else intentional violations. Either way, there are further cause to doubt that Jones Day will comply with privacy protections (like those in the protective order) going forward. Why a Jones Day partner, aware of the firm's reputation on confidentiality, would accuse anyone of lying for saying that she has concerns about giving it sensitive medical information is beyond me.

The protective order offers no reassurance, as you made clear in your email on Friday. The requirement that parties take reasonable care to keep discovery material confidential is the core provision of the order when it comes to avoiding inadvertent (rather than willful) disclosures like those described above. Yet you tell us that *you personally do not understand the provision* (and so presumably cannot be counted on to abide by it)--*even though you personally proposed the provision to us* and even though you are the one person at Jones Day who should be most familiar with the protective order, having (as you say) "spen[t] weeks discussing at great length the terms" of that order.

Surely you would not have criticized, and claimed not to comprehend, the sentence if you had realized that it was your own proposed language. So either you never read through the protective order that you proposed or else you read it but quickly forgot the key provision. Your argument appears to be that we shouldn't mind that you don't know what your order says, since you've agreed to be bound by it. That is not reassuring; the order cannot prevent disclosures by people who have not read it or "don't know what [it] means." And how can we expect compliance from the other 2500 lawyers at Jones Day who did *not* personally propose and spend weeks negotiating the order?

You also wrongly accuse us of a "double standard." A double standard exists when someone holds others to a higher standard than himself. We are not demanding that you get a certification from your vendor or from a reputable platform like Logikcull. The "double standard" here lies in Defendants' demand that we turn over private information to a law firm that has repeatedly inadvertently disclosed *its own clients' confidential information*--whereas we have not asked Defendants to produce anything to anyone with such deficiencies.

I also have strong reasons for concern about intentional disclosures, and a protective order does nothing to address those concerns either. Jones Day and Brogan have repeatedly violated the law, a fact that we have offered to prove and stand ready to prove anytime. I don't see why a protective order would offer greater protection than a federal statute.

Surely Jones Day's own clients have advised that they are likewise troubled by Jones Day's failures to maintain the confidentiality of sensitive information. Do you call them liars too?

\*\*\*

The task at hand is to submit a proposed protective order with the terms on which the parties have agreed and the terms they dispute. The most equitable and efficient procedure is for each party to state its own position on each dispute, with each party's positions clearly attributed to that party. But you demand to dictate *how we present our own position*. In your most recent email, you insist that we must "propos[e]" and "provide some explanation" to you of how to state our own position, and then you "will consider and respond." That is unreasonable.

Your three current objections are likewise unreasonable.

First, you say that our statement of one of our four positions--that the parties should be allowed to use "reputable technological services that are regularly used in litigation" even though those companies will not sign certifications for retail users like us--is broader than what the parties met and conferred about. We think that the language fairly reflects the parties' dispute as we discussed it. But there is no point in arguing about that, because your objection would be cured by a further meet-and-confer on the topic. We therefore offered to meet and confer yet again "if you believe[d] that an additional meet-and-confer ... would be in any way different from our previous discussions of the identical issues." You chose not to take us up on that offer. That obviates your objection.

Second, you say that our statement of two of the other three disputes "changed both the verbiage and placement of the relevant terms in ways that I think are less clear." We do not share your aesthetic judgment. It makes no sense for you to reject our statement of our own position (which we clearly attributed to Plaintiffs alone, leaving you to provide whatever statement you like on behalf of Defendants) because you supposedly think that our language is not "clear" enough for the Court. Again, the sensible course is for each party to state its position and be done with it.

Third, you object that we did not include your "Paragraph 3" in the draft of the protective order to go to the Court. As we said when we sent you the draft, our goal was to "accurately reflect what the parties have agreed to." We never agreed to that paragraph. But we also made clear that "Defendants should add/revise their positions as they wish." So if that paragraph is the position that you mean to advocate to the Court, you were always free to add it, attributing it to Defendants. I do not understand your complaint.

\*\*\*

This case is not being litigated on anything like an even playing field when it comes to time. Defendants have practically limitless resources; we have two very young children and other jobs. It will be impossible for us to vindicate our clear legal rights and simultaneously fulfill our other responsibilities if Defendants can send a single partner--out of the (at least) eight in this case, along with their many associates--to insist that we minutely and futilely negotiate non-substantive matters like how to phrase the parties' disputes.

You say that your way is the "ordinary course for this type of thing." I have no experience with these matters. But I feel confident that it is also perfectly ordinary for each side to merely state its position rather than futilely attempting to agree on a single statement of the dispute that both sides, with their very different perspectives, somehow view as "neutral" and "clear" (particularly when you tell us that your own proposals are just "for discussion purposes" and that you lack authority to agree to anything yourself).

In any event, the conference is three days away and we do not have more time to waste in unproductive attempts to reach agreement on a joint statement. We will file a notice stating our understanding of the disputes, and Defendants may file their own if they see fit. We understand from Defendants (e.g., Dkt. 38-1) that the "ordinary course" when such a procedural disagreement arises is to also file the parties' correspondence over that dispute. We will follow your lead on that.

I emphasize the following points:

1. Despite Jones Day's failures to maintain the confidentiality of client and other sensitive information, we have not advocated the sort of protective order requirements that might alleviate that concern (such as a requirement that Jones Day hire a different law firm to handle our confidential productions) and we have not suggested that we would oppose any discovery request based on Jones Day's failings. Rather, I described a few of those failings above because you called me a liar.

2. We agreed to nearly all of the terms of your proposed protective order, even though we believe that the order goes too far. We agreed because we (unlike Defendants) do not have the resources for protracted litigation of every point of disagreement, and because we wish to minimize the claims made on the Court's resources even where doing so prejudices us.

3. We stood our ground only on the four points that we felt we could not concede--two because your proposal would greatly burden, without good cause, our ability to prosecute this civil rights case; one because you demand, without good cause, that the Court impose a prior restraint on our use of our own information; and one because our own suffering as a result of Jones Day's illegal firing of Mark makes us unwilling to see Jones Day do the same to other employees.

4. Even after it became clear that agreement on these points was impossible, we spent a good deal of time further explaining our positions before suggesting that the matter should be presented to the Court. Defendants have never suggested that we left any possibility for agreement on the table.

5. All involved agreed that it could be helpful to the Court to have a submission from the parties ahead of the conference.

6. For the past week, the parties' dispute has been limited to debating your attempts to dictate how we should state our own positions to the Court. You claim this authority for yourself based on two objections: (1) that the parties supposedly have not sufficiently discussed one of the four points (though you have declined our offer to do so); and (2) that you think our statements of our own positions are insufficiently "clear" (a question that the Court can easily decide for itself).

7. We have proposed that each side provide a statement of its own position on each of the four points in dispute. You have refused to do so, and you have made clear that no joint submission is possible unless we allow you to dictate *both sides' positions*.

Because we hoped to conserve the Court's resources, we have made great efforts to reach agreement and avoid dispute, including by agreeing to overbroad protective order terms. Despite our concessions, you insist on having disputes about disputes, exhausting our limited time. I doubt that any law firm would have invested half as much time as we have in debating with you about how to present the parties' positions. We cannot prosecute this case and care for our children if we continue in this unproductive fashion.

Julia

On Sun, May 30, 2021 at 8:15 AM Bailey, Anderson T. <atbailey@jonesday.com> wrote:

> Julia,
>
> However much Plaintiffs may feign to be troubled, the fact remains that Defendants – and only Defendants – have agreed that they and their vendors will be subject to the Protective Order and the Court's jurisdiction to enforce the terms of that Order. The reason why we have four disputed items for the Court to resolve is that Plaintiffs refuse to protect third-parties' medical information to the same extent Defendants have agreed to protect Plaintiffs' medical information. Having now looked more closely at the new Paragraph 2 that Plaintiffs inserted, its language makes this double standard worse. In altering the definition of "sharing," the provision would allow Plaintiffs to disclose confidential third-party medical and compensation information with companies besides Logikcull. That is not something we ever discussed. As for Paragraphs 4 and 5, Plaintiffs have changed both the verbiage and placement of the relevant terms in ways that I think are less clear. And, of course, Plaintiffs unilaterally made these changes after the meet-and-confer process had run its course, without discussing them with Defendants, and without any explanation (which you still have not provided).
>
> If all the new paragraphs do is clearly and accurately reflect the parties' prior disputes, then there is no prejudice to removing them in favor of the terms that the parties were actually considering throughout this process. Refusing

to do so suggests Plaintiffs think there is something to be gained from the new language. Whatever that is, we have not met and conferred about it.

In terms of finalizing a submission, my suggestion is that we follow the ordinary course for this type of thing. When we asked for a conference, we had a draft in place with both agreed-upon terms and disputed terms. If Plaintiffs want to change that draft at this stage of the process or insert new language that was not in the draft when we first contacted Chambers, make a proposal and provide some explanation why you think the change is warranted. We will consider that and respond.

As for the other redlines, I don't see how simply accepting the track-changes in the Protective Order that you circulated Wednesday afternoon would reflect the parties' positions. It would, for instance, entirely delete Defendants' proposed Paragraph 3.

Frankly, all of this leads me to think there may be some confusion as to what each side's respective positions are. If it would be helpful to discuss, I'm happy to convene a call any time.

Anderson T. Bailey
Partner
**JONES DAY® - One Firm Worldwide℠**
500 Grant Street, Suite 4500
Pittsburgh, PA 15219-2514
Office +1.412.391.3939
Direct +1.412.394.7250
atbailey@jonesday.com

**From:** Julia Sheketoff <sheketoff@gmail.com>
**Sent:** Friday, May 28, 2021 6:21 PM
**To:** Bailey, Anderson T. <atbailey@JonesDay.com>
**Cc:** Chase, Terri L. <tlchase@jonesday.com>; Mark Savignac <mark.savignac@gmail.com>
**Subject:** Re: Savignac v. Jones Day - Joint Submission

** External mail **

Hi Anderson,

Our proposals clearly and accurately reflect the disputes between the parties. The only thing you identify as a "new provision"--and which you say you don't understand--is your own language. We copied it verbatim from a later paragraph in the order (where it remains). Your suggestion that you don't understand, and thus presumably cannot be expected to adhere to, protective language that you proposed to us is deeply troubling when Defendants are demanding that we turn over confidential medical information.

As for the cover notice, we agree not to further revise our statement of our position on the point where we are the proponents of the protective order and thus put our position before Defendants' position (protections for Jones Day employees). For the three points where Defendants are the proponents, we will look at how Defendants describe their

position and then make whatever revisions to our positions are necessary for our language to make sense in light of your preceding language.  That should be a fast and easy process.  I don't see how attempting to reach agreement on language that both sides would see as "neutral" could possibly require less back-and-forth than that.  We don't object to identifying in the notice the relevant paragraph numbers from the protective order.

As for the protective order itself, I'm a little confused about your response.  You say that our proposed version of the order "include[s] a bunch of red-lines that we are not asking the Court to consider" and that we "le[ft] several track-changes with no explanation."  But, in our cover email to you, we said that "[w]e propose that all redlines in the proposed protective order be accepted, in which case we believe it would accurately reflect what the parties have agreed to" (aside from the disputed terms, which are highlighted and bracketed).  We did not intend for the redlines to go to the Court; they were only for your benefit.  Once they are accepted, we believe that our proposal, which puts each of the four disputed terms into a single paragraph of the order, is clearer and easier to follow than your proposed version, in which some disputes are spread over stray phrases (like "it produces") and paragraphs on numerous pages.  Again, we are happy to have Defendants include whatever terms they prefer in the protective order insofar as they are attributed to Defendants like Plaintiffs' proposed terms are attributed to Plaintiffs.


Best,
Julia


On Fri, May 28, 2021 at 3:23 PM Bailey, Anderson T. <atbailey@jonesday.com> wrote:

> Julia,
>
>
> What is not productive is for us to spend weeks discussing at great length the terms of a Protective Order, then for Plaintiffs to propose new provisions after we have identified discrete points of disagreement and scheduled a conference with the Court on those points.  That is particularly the case where the new provisions include vague language like the following:  "Persons subject to this Order remain obligated to exercise, at the very least, the same standard of due and proper care with respect to the storage, custody, use, or dissemination of Discovery Material as is exercised by the recipient with respect to its own equivalent information, and is reasonably calculated to maintain the confidentiality of the Discovery Material in conformance with the terms of this Protective Order."  I don't know what that means and it appears to go beyond the specific question of whether the vendor to which Plaintiffs are disclosing designated documents should be subject to the terms of the Protective Order.  Regardless, it would be inaccurate to say we have met and conferred.  If you wanted to meet and confer on new proposed language, you could have said as much, rather than just add it to a proposed joint filing for us to see for the first time.
>
>
> As for the cover notice, Defendants are not "dictating" anything.  What I proposed is a more neutral filing that saved the substantive positions of both sides for the conference next week – and that was also much more clear in identifying the language at issue, instead of leaving several track-changes with no explanation.  I then invited comments and Plaintiffs were free to suggest edits to the extent you found any of the language too weighted.
>
>
> If Plaintiffs insist on having their position statements in the notice that you previously circulated, fine.  We will revise the Defendants' position statements that you drafted, and I assume you will agree that we are not then going to have any back-and-forth refining our respective position statements (a dynamic that a neutral notice avoids).  I do think, however, that the notice should refer to the specific paragraphs at issue, and that the order we submit should be much cleaner than what you previously circulated.  There is no reason to include a bunch of red-lines that we are not asking the Court to consider or that make alterations the parties have agreed upon.
>
>
> Anderson T. Bailey
> Partner

**JONES DAY® - One Firm Worldwide℠**
500 Grant Street, Suite 4500
Pittsburgh, PA 15219-2514
Office +1.412.391.3939
Direct +1.412.394.7250
atbailey@jonesday.com

**From:** Julia Sheketoff <sheketoff@gmail.com>
**Sent:** Friday, May 28, 2021 3:29 PM
**To:** Bailey, Anderson T. <atbailey@JonesDay.com>
**Cc:** Chase, Terri L. <tlchase@jonesday.com>; Mark Savignac <mark.savignac@gmail.com>
**Subject:** Re: Savignac v. Jones Day - Joint Submission

 ** External mail **

Thanks, Anderson.  We cannot agree to these proposed filings, which we believe are less clear than our proposals.
It is not productive for Defendants to seek to dictate Plaintiffs' framing of Plaintiffs' own positions on the disputed
issues.  The more sensible course is for each side to state its position, with the statement clearly attributed to that
side, along the lines of the proposals we sent you two days ago.  We propose that Defendants enter whatever
language they would like in the protective order and cover filing that we sent you on Wednesday, attributing that
language to Defendants, while leaving the language that Plaintiffs have attributed to Plaintiffs.

We also disagree with your suggestion that our proposed joint filings violate the meet-and-confer requirement.   The
language in our proposed filings accurately reflects the disputes that the parties are asking the Court to resolve, as
the parties have discussed those disputes at great length by phone, email, and comment bubble--and you don't
suggest otherwise.  But if you believe that an additional meet-and-confer focused on the specific words in our
Wednesday redline would be in any way different from our previous discussions of the identical issues, we would be
happy to arrange that.

Best,
Julia

On Fri, May 28, 2021 at 12:05 PM Bailey, Anderson T. <atbailey@jonesday.com> wrote:

> Thanks, Julia.  I appreciate you putting these together.  However, I find the draft of the order to be confusing
> and think we can simplify things considerably for the Court.  I also do not agree with including language that
> was not previously proposed and not the subject of any meet-and-confer.

> As an alternative, please see the attached.  With respect to the order, I started with the draft attached to your
> email of May 25 and received at 8:28 am EDT.  I accepted all redlines consistent with the parties' final
> positions, deleted all comments, and highlighted the language at issue.  I think this is a clearer way to present
> the items in question.  Please note that formatting continues to be an adventure with this document, and I
> reformatted some things as necessary to make it user-friendly and have the paragraph numbering
> continuous.  Those changes did not alter any text.

I also revised the draft joint submission to more expressly connect the highlighted language with the specific disputes and to take a more neutral overall approach for purposes of this submission.

Comments welcome.  I have prepared the attached for discussion purposes and will still need final sign-off from my clients prior to any filing.  Given the Friday conference, I think it would be sufficient to file on Tuesday or Wednesday of next week.

Best,

Anderson T. Bailey
Partner
**JONES DAY® - One Firm Worldwide℠**
500 Grant Street, Suite 4500
Pittsburgh, PA 15219-2514
Office +1.412.391.3939
Direct +1.412.394.7250
atbailey@jonesday.com

**From:** Julia Sheketoff <sheketoff@gmail.com>
**Sent:** Wednesday, May 26, 2021 3:33 PM
**To:** Chase, Terri L. <tlchase@jonesday.com>; Bailey, Anderson T. <atbailey@JonesDay.com>
**Cc:** Mark Savignac <mark.savignac@gmail.com>
**Subject:** Savignac v. Jones Day - Joint Submission

** External mail **

Hi Terri and Anderson,

As discussed, here is a draft of the proposed protective order to be submitted to the court and a cover document. We propose that all redlines in the proposed protective order be accepted, in which case we believe it would accurately reflect what the parties have agreed to.  Of course, Defendants should add/revise their positions as they wish.  We look forward to hearing back from you.

Best,
Julia

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***