<pre>
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
 2
      MARK C. SAVIGNAC, et al.,
 3                                        Civil Action
               Plaintiffs,               No. 1:19-cv-2443
 4
           vs.                            Washington, DC
 5                                        March 2, 2021
      JONES DAY, et al.,
 6                                        3:30 p.m.
               Defendants.
 7    _____/

 8              TRANSCRIPT OF TELEPHONIC MOTION HEARING
                BEFORE THE HONORABLE RANDOLPH D. MOSS
 9                  UNITED STATES DISTRICT JUDGE

10    APPEARANCES:
      For the Plaintiffs:     MARK C. SAVIGNAC
11    (Pro Se)                JULIA SHEKETOFF
                                2207 Combes Street
12                              Urbana, IL 61801

13
      For the Defendants:     ANDERSON BAILEY
14                              Jones Day
                                One Mellon Bank Center
15                              500 Grant Street, Suite 4500
                                Pittsburgh, PA 15219
16
                              TERRI L. CHASE
17                              Jones Day
                                250 Vesey Street
18                              New York, NY 10281

19                            CHRISTOPHER DiPOMPEO
                                Jones Day
20                              51 Louisiana Avenue, NW
                                Washington, DC 20001
21

22
      Reported By:           JEFF M. HOOK
23                             Official Court Reporter
                               U.S. District & Bankruptcy Courts
24                             333 Constitution Avenue, NW
                               Room 4700-C
25                             Washington, DC 20001
</pre>

1          **P R O C E E D I N G S**

2               **DEPUTY CLERK:**  This is civil action 19-2443, Mark

3     Savignac, et al., versus Jones Day, et al.  Plaintiffs are

4     appearing pro se.  Appearing for defendants, Anderson

5     Bailey, Chris DiPompeo and Terri Chase.

6               **THE COURT:**  Good afternoon, everybody.  Before we

7     get going, I want to remind you that under the Court's

8     rules, you cannot record or rebroadcast today's proceedings,

9     and I'll direct that nobody do so.  I'll ask that everyone

10    mute your microphones when you're not speaking so we don't

11    get feedback, please speak into the handset when it is your

12    turn so we can hear you clearly, and please introduce

13    yourself by name each time you speak so we have a clear

14    record.

15               I have reviewed the parties' submissions regarding

16    the proposed -- the proposals to file for summary judgment

17    at this point.  I'm happy to hear anything else that the

18    parties have to offer at this point.  I have to say, my

19    principal question -- which both sides are welcome to

20    address, is just how proceeding with a separate motion for

21    summary judgment on this one discrete issue would promote

22    efficiency and advance the overall resolution of the case.

23               So who's speaking on behalf of the plaintiffs

24    today?

25               **MR. SAVIGNAC:**  Hi Judge, this is Mark Savignac.

1          **THE COURT:**  So Mr. Savignac, I'm happy to hear

2    anything you want to add.  You can address that question or

3    you can tell me anything else you think I need to know.

4          **MR. SAVIGNAC:**  Sure.  Well, I'd start by saying

5    it's undisputed that Jones Day fired me for the pre-suit

6    demand e-mail that we sent them.  So what remains disputed

7    is whether they were allowed to fire me for that e-mail.

8    And we have more than enough evidence to prove conclusively

9    as a matter of law that firing me was a blatant violation of

10   the civil rights laws by Jones Day's top leadership.

11          So their request is that you prohibit us from

12   filing any summary judgment motion on any topic until after

13   the close of discovery, which seems like a very sweeping

14   request and quite the bid for delay.  It's also a little

15   ironic --

16          **THE COURT:**  I'm sorry, how does that result in

17   delay?  I mean, you're not going to get judgment in the case

18   even if you prevail on this issue.  You say there are other

19   defendants who are subject to the claims, it's only --

20   you're not seeking it against each defendant.  You're not

21   seeking damages discovery at this point.  There's not going

22   to be a final judgment or even a partial final judgment or

23   anything.

24          So I guess I'm not quite sure why pausing things

25   to adjudicate summary judgment on this one issue would delay

1    things rather than actually -- I mean, I'm not sure why

2    doing it now would expedite things rather than delay things.

3            **MR. SAVIGNAC:**  Sure, Judge.  So by delay, I just

4    mean delay of ruling on this summary judgment motion.  And I

5    can talk about the efficiency impact on the case as a whole.

6    But so to be clear, Jones Day's theme is that this is just a

7    tiny sliver of the case.  But that's obviously not true.

8    This is the claim that they fired me illegally.  That's the

9    vast bulk of the financial and reputational significance of

10   the case.  I mean, that's the core of the case for both

11   sides.

12           So I think it stands to reason that it would be --

13   you know, advance the resolution of the case pretty

14   substantially to get an answer on that sooner rather than

15   later.  Setting aside efficiency --

16           **THE COURT:**  Why is that?

17           **MR. SAVIGNAC:**  Well, I can -- I'm sorry?

18           **THE COURT:**  How would it advance the case to do

19   that sooner rather than later?  That's what I'm not

20   following.  I mean, if you're telling me you're drafting up

21   a claim, I get it.  You say that that's the bulk of the

22   case, but I would actually think -- would have thought that

23   the more sweeping issue is the legality of Jones Day's leave

24   policy which could have dramatic effects however that issue

25   comes out for Jones Day and other companies and law firms

1    across the country, and involves much more sweeping issues

2    than the retaliation claim.

3            **MR. SAVIGNAC:**  That may be the claim that has the

4    greatest societal implications beyond the parties.  For the

5    parties, the illegal termination claim -- I mean, my

6    termination had an enormous financial impact on me.  The

7    claim also subjects Jones Day to punitive damages, which I

8    would expect to be very substantial.  The financial value of

9    the underlying claim is small.  It would be limited to I

10   guess psychological harm and to some weeks' worth of unpaid

11   leave -- or sorry, paid leave.

12           I'm happy -- I think maybe if you -- I mean, I

13   would submit that the general rule as you said in the Tolton

14   case when you allowed Jones Day to file their early summary

15   judgment motion over the plaintiffs' strenuous objection.

16   The general rule is that the federal rules allow plaintiffs

17   to -- or allow parties to move for summary judgment at any

18   time, and to --

19           **THE COURT:**  Just to interrupt you, how many times?

20   How many times?  I mean, there are a lot of courts that say

21   one motion for summary judgment and that's it.  And there

22   were reasons in the Tolton case for doing it which may no

23   longer be pertinent.  But in that case, the reason to allow

24   them to move for summary judgment early on the Equal Pay Act

25   claim was because if they were successful on that, then

1    there wasn't going to be a certification of a class or of a

2    collective action.  And so I see an argument there as to how

3    that streamlines the case.  That issue may have dropped out

4    of the case because plaintiffs are no longer seeking a

5    collective action in that case.  But at the time they filed,

6    that's what they were and so it streamlined the case.

7          I could not function as a federal judge if I let

8    parties in every case file as many motions for summary

9    judgment as they wanted to without any particularly good

10   reason for doing so.  I don't think there's any judge in the

11   country who could.

12         **MR. SAVIGNAC:**  Sure, I think that that's fair.  I

13   mean, the direct response to your question, my understanding

14   is that the D.C. Circuit says a subsequent motion for

15   summary judgment on an extended record is always

16   permissible.  But obviously a judge shouldn't be inundated

17   with successive motions on the same issue, we don't disagree

18   with that.  Again, Jones Day has already had a summary

19   judgment motion --

20         **THE COURT:**  I'm sorry, I'm sorry, just stop there

21   for a second.  I'm sorry, Mr. Savignac.  It's not just on

22   the same issue.  I mean, it can't be you have 70 claims in a

23   case, and the judge has to decide 70 motions for summary

24   judgment because one party in the case says, "I would feel

25   better getting this issue resolved today rather than

1    tomorrow, so let's just do this one now."

2        **MR. SAVIGNAC:**  I guess, yes, I agree.  Again, I'm

3    happy to talk about efficiency.  I would just say again,

4    Jones Day had their summary judgment motion on the

5    timeliness of our EEOC charges.  You had us brief that, you

6    ruled on that.  So they're certainly going to ask to be

7    allowed to file a second summary judgment motion in this

8    case.  Anyway, as for efficiency, I can explain a few ways

9    that resolving the pure legal issues that our motion would

10   raise, and which are most of the central issues in the case,

11   would remove the need for a lot of contentious discovery

12   that's otherwise going to I think waste a lot of the

13   parties' and the Court's time.  And Jones Day's six-page

14   submission is -- you know, gives some good examples of that.

15       So they talk about investigating the good faith

16   behind our demands.  I think that's irrelevant as a matter

17   of law, and we would like the opportunity to brief that.

18   But if they are -- you know, if we proceed with discovery

19   without a ruling on that, they say, for example, they are

20   going to seek drafts of our -- the demand letter that we've

21   sent them.  So draft demand letters are classic attorney --

22   or not attorney, party work product.  If they're between the

23   two of us, that's spousal privilege.  If they are with an

24   attorney in an attorney-client relationship, that would be

25   privileged.  We would have to litigate all of that

1    privilege -- those privilege issues, even though none of

2    what they would be seeking is actually legally relevant.

3            The next category they talk about is discovery

4    into our communications with each other.  Our communications

5    with each other, as I understand it, are protected by the

6    spousal privilege.  It seems like they wrote these

7    categories of discovery that they want with the intention of

8    making clear that they were seeking -- they want to seek

9    privileged information that we will have to litigate.  They

10    want to understand what research we did to support our

11    demands.  So like they want our --

12            THE COURT:  I'm sorry, Mr. Savignac, just to pause

13    you for a second there.

14            MR. SAVIGNAC:  Sure.

15            THE COURT:  You can clarify this for me, but I

16    would assume that you have to sort of pick which way you

17    want it, and that you can't yourself rely on communications

18    with your spouse but then preclude discovery with respect to

19    other communications with your spouse relating to this

20    matter, right.  I mean, I don't know whether there's a

21    broader waiver from that, but it strikes me it would raise

22    pretty substantial questions if you said we only want to

23    disclose whatever communications we had with each other that

24    we want to, and the other side isn't entitled to inquire

25    into anything else that we haven't decided that we want to

1    use ourselves affirmatively.

2              **MR. SAVIGNAC:**  I'm not sure that I disagree with

3    that or that we would look to affirmatively use privileged

4    communications.  I mean, I could go through all of the

5    categories they've listed and explain why each one would

6    require all this privilege litigation that's unnecessary.

7              Another big area of discovery that we're going to

8    have to seek is, as you know, the issue in this case is that

9    Jones Day gives all women eight more weeks of leave than it

10   gives to men.  And that's what we challenged.  Now, in their

11   reply in support of their motion to dismiss, Jones Day

12   argued for the first time no, that's not true, that's not

13   our actual policy.  In fact, a women who takes the eight

14   weeks when she ceases to be disabled earlier is taking the

15   leave fraudulently.  That's -- you know, that argument is

16   simply false, and we have more than enough evidence now to

17   prove that.

18             But if we are not allowed to seek to prove that

19   now, then the discovery we'll have to seek in case you take

20   a different view of the law would be very voluminous into

21   communications between Jones Day and all sorts of people who

22   take parental leave between -- you know, and to the

23   development of the policy.  It's just lot of things that --

24             **THE COURT:**  I'm sorry, can I ask question,

25   Mr. Savignac?

1          **MR. SAVIGNAC:**  Yes.

2          **THE COURT:**  Because that actually strikes me as

3     potentially raising an argument why I should not allow a

4     motion for summary judgment now.  Because what you're

5     essentially saying to me here is I will have to make some

6     definitive rulings with respect to not only retaliation, but

7     with respect to the lawfulness of Jones Day's leave policy

8     in order to adjudicate your retaliation claim.  Because you

9     just said a moment ago that it would be helpful to get some

10     guidance from me at this early stage about Jones Day's

11     assertion that the policy was a lawful policy because it

12     only allowed the women associates to take such essentially

13     medical leave as they need.

14          So then you're bleeding into the other big issue

15     in the case as I see it with respect to the lawfulness of

16     the retaliation policy, and you'd be asking me to decide

17     questions relating to that before those issues actually are

18     ripe for consideration.

19          **MR. SAVIGNAC:**  Well, there's a distinction between

20     the lawfulness of a policy that gives all women some blanket

21     generalization amount of leave regardless of any

22     individual's status.  There's a difference between the

23     question of whether that's legal and the question of whether

24     Jones Day has such a policy.  I'm really focused on the

25     second question here, what is their policy.  Their position

1    is basically, yes, everyone talks about it as if all women

2    get eight weeks; and yes, we communicate that to women, et

3    cetera, et cetera, but that's not really our policy.

4    Because if you look at the short term disability policy and

5    you read it one way and sort of squint, you can read it to

6    mean something else.

7         And I'm just saying that to establish what their

8    policy really is, if we can't try to get a ruling based on

9    the already substantial evidence that we have, then we have

10   no choice but to do a lot of discovery and to get more

11   evidence.  Because we don't know ultimately what sort of

12   standard the Court will apply in answering that -- basically

13   a factual question of what is their policy.

14        **THE COURT:**  Okay.

15        **MR. SAVIGNAC:**  So Jones Day's main argument is

16   about Rule 56(d), which does allow the Court to defer a

17   summary judgment motion if Jones Day actually files an

18   affidavit that meets the requirement of the rule.  And our

19   view is that they won't be able to do so, because we're just

20   raising questions of law that don't depend on any facts that

21   they say they want discovery into.  But it seems like at a

22   minimum, we should be allowed to file the motion, and they

23   should actually have to file a 56(d) affidavit to determine

24   whether it makes sense to defer resolution of those

25   questions.

1            **THE COURT:**  Can I ask you a question?

2            **MR. SAVIGNAC:**  Sure.

3            **THE COURT:**  I think you said a minute ago that I

4    had allowed Jones Day to file a motion for summary judgment

5    in this case.  Did I misunderstand what you were saying?

6            **MR. SAVIGNAC:**  Yeah, so in this case, they argued

7    that our EEOC charges were untimely or that we hadn't

8    exhausted or something like that.  And we said -- this was

9    in their motion to dismiss.  And we said look, you can't

10   establish that on a motion to dismiss, and that was the

11   basis to deny the motion to dismiss.  You said you would

12   allow them to convert that to a summary judgment motion, and

13   we had another round of briefing on that.

14           **THE COURT:**  I see, okay.

15           **MR. SAVIGNAC:**  So you denied summary judgment to

16   them on that point.  Of course, we're just asking for our

17   sort of one early summary judgment motion.

18           **THE COURT:**  Well, that's very different, though.

19   One is a threshold issue and one is the ultimate merits.

20           **MR. SAVIGNAC:**  I see that -- I agree that that's a

21   distinction that you could draw between them.

22           **THE COURT:**  Anything more you want to add?

23           **MR. SAVIGNAC:**  Sure.  I mean, if the concern is

24   about repeat summary judgments, we don't anticipate that

25   there would be repeat motions on the same issue.  We would

1     be asking for the resolution of certain pretty abstract pure

2     questions of law, which we think should be dispositive given

3     that Jones Day has sort of gratuitously admitted that it

4     fired me for what as a matter of law is a pretty clearly

5     illegal reason.

6          **THE COURT:**  Do you agree with Jones Day that if I

7     allow you to file this and I conclude that there are facts

8     that preclude me from deciding the motion at this time

9     before discovery, that I could -- and in Jones Day's should,

10    preclude you from filing a second motion for summary

11    judgment on the same issues?

12         **MR. SAVIGNAC:**  If that's the price of being

13    allowed to file, yes, I would accept that.  I'm very

14    confident in our legal positions.  I think that I would urge

15    you not to decide now that that's what you would do.  But if

16    you want us to -- you know, if you want to say we couldn't

17    file a successive motion on the same issues without prior

18    leave of court, and we would have to explain to you

19    basically this is why I should consider this rather than

20    going to -- because the concern, of course, is that it could

21    be that we get to a position where the choice is between you

22    looking at a relatively simple successive summary judgment

23    motion that would resolve everything or going in front of a

24    jury which would take more time for everyone.

25              So I don't think you should commit yourself to

1    forcing everyone to go to a jury in that situation.  But if

2    that's -- yes, if that's the -- if that's what it takes for

3    us to be allowed to file now, then I would choose to file

4    now.

5              THE COURT:  Okay.  And one other question is you

6    were referring to D.C. Circuit precedent regarding the

7    filing of successive motions for summary judgment.  I take

8    it that you don't disagree with the proposition that the

9    district court has the authority to manage its docket and

10   decide when to allow the filing of summary judgment motions.

11   And if the Court were to decide that it was more efficient

12   to do it after discovery or all at once, that that would be

13   within the Court's authority.  But if there's some legal

14   proposition that's at odds with that, I'd like to know what

15   it is.

16             MR. SAVIGNAC:  I'm not disputing that.  I don't

17   know of any cases -- I mean, obviously that sort of case

18   would have to arise in a petition for a mandamus or

19   something.  So I don't know of any appellate authority on

20   that, and I don't disagree with that proposition.

21             THE COURT:  Okay.  Anything else you wanted to

22   raise?

23             MR. SAVIGNAC:  No, I'm happy to step down.

24             THE COURT:  Okay.  Who's speaking on behalf of

25   defendants today?

1          **MR. BAILEY:**  Good afternoon, Judge.  This is

2    Anderson Bailey of Jones Day on behalf of defendants.

3          **THE COURT:**  Okay.

4          **MR. BAILEY:**  Let me just start off where your

5    Honor started off at the beginning, which is how would

6    proceeding on this issue now promote efficiency.  I didn't

7    hear much of an answer, and that's because I don't think

8    there really is an answer here.  And it's worth taking a

9    step back for a moment to look at what the plaintiffs are

10   proposing.

11         We're talking about three of the 14 claims at

12   issue.  Counts seven, eight and nine allege retaliation.

13   Collectively, those three counts name all three defendants.

14   And each of those counts also proceeds on the basis of two

15   alleged retaliatory acts.  One is Mr. Savignac's

16   termination, and the second is alleged limitations on his

17   ability to get an employment reference.  What we're talking

18   about now solely relates to summary judgment on only one of

19   those alleged acts of retaliation, which is the termination,

20   and only two of the three defendants.

21         So there is zero efficiency to be gained from

22   proceeding in this piecemeal fashion, because all of the

23   discovery surrounding this question of protected activity is

24   still going to go forward as it pertains to the other

25   alleged act of retaliation, and as it pertains to

1    Ms. Heifetz who is the defendant that they seek to omit from

2    their premature summary judgment motion.

3              So the contentious discovery that plaintiffs seek

4    to avoid here, all of those issues we are going to have to

5    address at some point.  It is obviously not the case, as

6    your Honor indicated and as I think Mr. Savignac agreed,

7    that the privileges aren't going to run as broadly as

8    plaintiffs suggest.  This is the factual development that

9    the Court contemplated in its opinion on the motion to

10   dismiss.  All we are seeking to do is to pursue that factual

11   development.  And I say that because this is not an abstract

12   legal issue.

13             Under the standard for protected activity that was

14   set out in the motion to dismiss opinion and in D.C. Circuit

15   case law, there is a subjective component to whether or not

16   activity was protected.  We are, as part of our defense to

17   these counts, going to be challenging the plaintiffs'

18   ability to establish that this was protected activity.  And

19   the Court decided at the motion to dismiss stage that it

20   really could not resolve this question without factual

21   development.  So that's what we're intending to pursue.

22             And even if your Honor were to allow the proposed

23   summary judgment motion, we're still going to be pursuing

24   all that discovery as it relates to the remainders of counts

25   seven, eight and nine.  And frankly --

1      **THE COURT:**  I'm sorry, can I interrupt just for a

2  second, Mr. Bailey?

3      **MR. BAILEY:**  Sure.

4      **THE COURT:**  Can you tell me what that discovery

5  is?  One is subjective motivation, which I can just check

6  the law on that and see whether I actually -- you and

7  Mr. Savignac disagree diametrically about whether subjective

8  intent or motivation is a factor.  That's easy enough for me

9  to check.  So point one is subjective motivation.

10      What else is there?

11      **MR. BAILEY:**  Well, as it pertains to the overall

12  issue of subjective motivation, there's obviously a lot of

13  subcomponents of that that we've laid out some of those.

14  But I think that even with respect to whether or not there's

15  a reasonable belief, some of this discovery is still going

16  to apply there.  We would like to know what the plaintiffs

17  did to investigate their claims, how they came to their

18  conclusion.  I think --

19      **THE COURT:**  That's subjective.  That's not

20  objective, that's subjective.

21      **MR. BAILEY:**  Well, but there is a question I

22  think -- as I understood the motion to dismiss opinion, the

23  Court essentially said that the policy is susceptible to

24  different interpretations, and it can't resolve on the

25  pleadings which interpretation -- you know, which

1    interpretation is correct essentially.

2         THE COURT:  Right.

3         MR. BAILEY:  So whether or not there's a

4    reasonable belief as to the interpretation the plaintiffs

5    chose I think is going to be informed by what they did to

6    choose that interpretation over another.  It's also going to

7    be informed by how they have communicated with other

8    employers about family leave policies.  So those kinds of --

9         THE COURT:  That point, I guess I'm not sure I

10   follow that point.  Why is there any relevance to what they

11   did with other employers with respect to family leave

12   policies?

13        MR. BAILEY:  Well, I'm only speculating as to what

14   the discovery would show.  But for instance, if they are

15   taking different positions with different employers with

16   materially similar policies or if they have taken family

17   leave without alleging that similar policies are

18   discriminatory.  I think that all goes to whether or not

19   they could have a reasonable belief in the interpretation of

20   the policy that they've asserted in this Court.

21        THE COURT:  It seems to me that your stronger

22   argument on this is that the retaliation claim doesn't rise

23   or fall with the merits of the underlying policy, but that

24   they are linked in certain respects.  And that the Court

25   would need to understand the policy in order to determine

1     whether the -- even under an objective test, the belief was

2     a reasonable belief in the unlawfulness of that policy; and

3     that what that policy is may require some discovery, for

4     example, based on how it was applied or understood.

5     Although I suppose the reasonableness inquiry may turn not

6     on post hoc discovery or post hoc evidence about what the

7     policy meant, but what at the relevant time Mr. Savignac

8     would have -- as a reasonable person with some knowledge in

9     the field, would have believed about the policy.

10             But I do see some connection there, and it may be

11    that it does -- as I said before, that the retaliation claim

12    does intersect with the merits even if it's not a

13    one-for-one overlap.

14             MR. BAILEY:  No, I agree with that.  And I

15    think -- what I was trying to get to, however inartfully,

16    was specific to the retaliation counts at issue in this

17    proposed summary judgment motion, and just to say that all

18    of that discovery, even as to those counts, is still going

19    to go forward.  As it pertains to the broader questions

20    about the policy itself, I think your exchange with

21    Mr. Savignac was fairly informative on that point.  I do not

22    think that the claims necessarily rise and fall together.

23    But to say that there's no relationship here I think is

24    inaccurate.  I mean, they can't be pulled apart that

25    definitively.

1          So that is all the more reason why all the

2    discovery that we've proposed is still going to go forward

3    regardless of when the plaintiffs are allowed to seek

4    summary judgment on the discrete issues they're proposing to

5    move on now.  So all of that is by way of saying there's no

6    efficiency to be gained here, because we're still going to

7    be going down this road of discovery regardless for a

8    multitude of reasons.

9          THE COURT:  Although I would caution you though --

10   I mean, I am, as you've probably gathered, somewhat

11   sympathetic to the notion that this may be premature.  But

12   on the other hand, I don't want to be opening the door to

13   discovery that is sort of unnecessary or irrelevant or even

14   unduly burdensome to the plaintiffs in this case.  So for

15   example, as I said, it's hard for me to imagine what the

16   relevance would be of what position Mr. Savignac may have

17   taken with respect to another employer's policy.  It strikes

18   me as unlikely he's actually had reason to actually express

19   to an employer one way or the other what his views are with

20   respect to some other employer's policy, but maybe he has.

21   But it's going to be a stretch as to the relevance of that.

22         So I do think you need to take care that you're

23   not using this as an opening to engage in discovery that is

24   going to have all of you back in front of me repeatedly on

25   discovery disputes about whether you're really getting into

1    things that don't have anything to do with the case.

2         **MR. BAILEY:**  Your Honor's caution is well taken.

3    I will say, though, that there just hasn't been a 26(f)

4    conference.  I mean, this is the first time I'm hearing

5    about the privilege assertions.  This is the first time

6    we've had to float the discovery that we've been

7    contemplating.  So it is, I think, most appropriate to

8    simply proceed in the ordinary course with a Rule 26(f)

9    conference and beginning the discovery process.  To force on

10   top of that summary judgment motions on this very discrete

11   issue on which the Court has already stated it is looking

12   for factual development before it addresses the merits I

13   think just gums up the works, and then ends up being very

14   ineffective and costly for all involved.

15        And I want to hone in on this point about factual

16   development, because, again, the most instructive thing here

17   I think is the Court's prior opinion on the motion to

18   dismiss.  And I would just direct your Honor to pages 36 and

19   38 where the Court talks about protected activity, and

20   concludes that factual development is required.  That's what

21   we're seeking to pursue here.

22        To go through the sort of empty exercise and costs

23   of summary judgment briefing that won't actually resolve all

24   of the retaliation issues in any event, and will require a

25   56(d) affidavit as well as merits briefing on the question,

1   I just don't see any upside whatsoever when it's not going

2   to narrow the scope of the case or the scope of discovery an

3   inch.

4           THE COURT:  Well, let me see if Mr. Savignac has

5   anything more that he wants to add before I make a decision

6   about how we should proceed.

7           MR. SAVIGNAC:  Just very briefly, I guess I would

8   propose that if we were to be allowed to file a summary

9   judgment motion, then you would be able to see the legal

10  issues that are raised and probably to judge relatively

11  easily whether they are straight forward; whether they would

12  obviate the need for discovery; whether they would promote

13  efficiency in addition to also promoting justice through the

14  quicker resolution of this central issue.  A lot of what

15  Mr. Anderson has said about subjective good faith I think is

16  just legally wrong.  We're going to have to resolve those

17  issues, whether it's through a clean summary judgment motion

18  that tees them up legally or through potentially a series of

19  discovery disputes as they seek obviously privileged or

20  protected or just irrelevant information.

21          I don't see the harm in at least looking at the --

22  you know, looking at a motion before determining whether it

23  would be efficient to proceed with briefing on that or not.

24          THE COURT:  Are you suggesting that you want to

25  just file your motion -- or not even file it, but submit it

1    to the Court, and then I can decide afterwards whether to

2    allow it to be filed at this point in time and then you

3    might perhaps a year early sort of show your hand to the

4    other side?  I mean, I don't know, you may not care about

5    that because your position may be, "I don't really care

6    anyway."

7            MR. SAVIGNAC:  Yeah, I think that that's --

8            THE COURT:  -- second time, if I say no, then

9    presumably when you file a second time you're going to want

10   to rewrite the motion.

11           MR. SAVIGNAC:  I'm sorry, I didn't entirely

12   follow.  I'm just proposing that if the question is would

13   resolving this motion be efficient or would it gum up the

14   works, you would probably have a much better sense of that

15   if we filed the motion and you took a look at it than just

16   based on these six-page things where you have -- you know,

17   Mr. Anderson is sort of misunderstanding some of the key

18   legal points that he's pointing to as contrary to our

19   efficiency rationale for filing now and having this decided

20   now.

21           THE COURT:  Well, I have to say --

22           MR. BAILEY:  Your Honor, if I may on that?

23           THE COURT:  No, I think I know enough at this

24   point the way that we should proceed here.  I have to say, I

25   still don't really get the efficiency point.  Because it

1    seems to me, Mr. Savignac, the only -- you make sort of two

2    arguments for efficiency.  One is just that having sort of

3    the Court decide legal issues early on will help the parties

4    in narrowing the issues and they can focus on their case.

5    I'm dealing with very sophisticated parties here on both

6    sides.  They could read the cases and they could figure out

7    for themselves what the law is here.  And if the law is as

8    clear as you say it is, that subjective intent or a

9    subjective view of the lawfulness of the policy is not an

10    issue, I don't think we're going to have a problem there.

11    If the law is unsettled on that, maybe we may have an issue.

12    But if it's as clear as you say it will be, I don't think

13    we're going to have an issue on that.  I just also don't

14    think that judges are typically in the process of deciding

15    early motions simply for providing guidance to the parties

16    regarding what the law is to help them in their discovery

17    process.  I think it usually works the other way around in

18    the process.

19             I do think that there is going to be overlap

20    between this issue and the remainder of the case.  You're

21    not even seeking summary judgment with -- you wouldn't even

22    be seeking summary judgment with respect to all the

23    defendants on these issues or damages, and so I don't really

24    see how it advances the case.  And I can understand from

25    your perspective why, if you were to prevail on this motion,

1    there could be some personal satisfaction to you in doing

2    that, and perhaps even some professional satisfaction.  I'm

3    not convinced yet that that is enough to file for summary

4    judgment at this point in the process.

5         I do think, though, that we should get discovery

6    going in the process so that you can file relatively

7    promptly.  I'm not going to foreclose the possibility of

8    your filing a motion for summary judgment at some later

9    date, even before the rest of the case may be teed up for

10   summary judgment briefing.  I'll let you come back to me at

11   that point.  And if you want to offer me -- show me what

12   your brief would look like to convince me that it makes

13   sense for you to file it early, I'm open to that and would

14   consider that.

15        But what I think we really should do now is go

16   ahead and schedule a discovery conference so we can get the

17   discovery process going.  I know you all are waiting on a

18   decision on the motion for reconsideration, and perhaps

19   that's -- perhaps I'm waiting on that as well, and that's

20   what's held things up.  I will get you that decision soon.

21   But I think what we ought to do is go ahead and schedule

22   both the Rule 16 report and an initial scheduling conference

23   so that we can at least get the discovery process going in

24   this case.

25        If, in the process of that, the parties have

1   fundamental disputes about what is relevant and open to

2   discovery that you want to bring to me, under my standing

3   order you have to meet and confer and do your best to work

4   it out.  And if you can't, you can contact the courtroom

5   deputy and find a time for us to talk about it.  So if,

6   Mr. Savignac, you think that the defendants are getting into

7   areas that are just way out of bounds, you can raise that

8   with me in that way.  But I just see too much overlap

9   between the issues that you want to raise and the remainder

10  of the case.

11          And I also think that the issues that you want to

12  raise, even though in your view are of central importance to

13  the case, are not even summary judgment with respect to a

14  particular claim.  It's really -- it's not even in fact

15  summary judgment, it is what I think they refer to in some

16  courts as a summary determination of a legal issue.  But

17  it's not even summary judgment as to a claim in the case.

18  So that's my view on it.

19          So let me ask the parties, when would you propose

20  to file with the Court -- you'll need to meet and confer,

21  when do you want to file your Rule 16 report with the Court?

22          **MR. BAILEY:**  Your Honor, this is Anderson Bailey.

23  I would suggest we get the Court the report about a month

24  from today.  That would give us time I think to meet and

25  confer and prepare the submission.

1      **THE COURT:**  Mr. Savignac?

2      **MR. SAVIGNAC:**  I would ask for eight weeks to do

3   that.  Obviously this is Mr. Anderson's job, but we're pro

4   se.  I have a fairly demanding job.  Julia's got a job.  We

5   have a 25-month-old and a five-month-old in a pandemic.  So

6   obviously discovery against one of the largest law firms in

7   the world, I would ask for eight weeks.

8      **THE COURT:**  Well, that's okay with me.  I was

9   actually setting it earlier sort out of respect for your

10  desire to move forward with the case.  But if you want eight

11  weeks, that's okay with me.  So let me ask --

12     **MR. SAVIGNAC:**  Thank you.

13     **THE COURT:**  Today is the 2nd of March, so eight

14  weeks would be on April 27th.  Is that acceptable for the

15  parties for the Rule 16 report?

16     **MR. BAILEY:**  Yes for defendants, your Honor.

17     **MR. SAVIGNAC:**  Yes.

18     **THE COURT:**  And then let me just ask if the

19  courtroom deputy can pick a date either a week or two after

20  that when we can have time for a telephonic initial

21  scheduling conference.

22     **DEPUTY CLERK:**  Yes, your Honor, please stand by.

23  You want it a week after that?

24     **THE COURT:**  Yes.

25     **DEPUTY CLERK:**  You start trial that week, so

1   perhaps -- would the following week be okay on a Friday?

2   Usually Fridays are better for you when you're in trial.

3           THE COURT:  That's fine.

4           DEPUTY CLERK:  Do you want to do 9:00 a.m. before

5   court starts for trial?

6           THE COURT:  Yes.

7           DEPUTY CLERK:  That would be April -- excuse me,

8   May 7.

9           THE COURT:  So May 7 at 9:00 a.m. for the initial

10  scheduling conference.  Does that work for everybody?  We'll

11  do it telephonically in the same way that we're doing it

12  today.

13          MR. SAVIGNAC:  Yes.

14          MR. BAILEY:  Yes, your Honor.

15          THE COURT:  And I can tell you that I will have a

16  decision for you on the motion for reconsideration before

17  then, so you'll have that to help you for purposes of

18  scheduling.

19          Mr. Savignac, anything further you want to raise

20  today?

21          MR. SAVIGNAC:  Nothing further.  Thank you, Judge.

22          THE COURT:  Okay.  Mr. Bailey, anything further?

23          MR. BAILEY:  Nothing for defendants.  Thank you.

24          THE COURT:  All right, thank you all.

25          (Proceedings adjourned at 4:11 p.m.)

1                    **C E R T I F I C A T E**

2

3              I, **Jeff Hook, Official Court Reporter**,

4    certify that the foregoing is a true and correct transcript

5    of the remotely reported proceedings in the above-entitled

6    matter.

7                    **PLEASE NOTE:**  This hearing occurred during

8    the COVID-19 pandemic and is therefore subject to the

9    technological limitations of court reporting remotely.

10

11

12

13    __June 7, 2021__                    _____

14         **DATE**                             **Jeff M. Hook**

15

16

17

18

19

20

21

22

23

24

25

**1**

10281 [1]   1/18
14 [1]   15/11
15219 [1]   1/15
16 [3]   25/22 26/21
   27/15
19 [1]   29/8
19-2443 [1]   2/2
1:19-cv-2443 [1]
   1/3

**2**

20001 [2]   1/20 1/25
2021 [1]   1/5
2207 [1]   1/11
2443 [2]   1/3 2/2
25-month-old [1]
   27/5
250 [1]   1/17
26 [2]   21/3 21/8
27th [1]   27/14
2nd [1]   27/13

**3**

333 [1]   1/24
36 [1]   21/18
38 [1]   21/19
3:30 [1]   1/6

**4**

4500 [1]   1/15
4700-C [1]   1/24
4:11 p.m [1]   28/25

**5**

500 [1]   1/15
51 [1]   1/20
56 [3]   11/16 11/23
   21/25

**6**

61801 [1]   1/12

**7**

70 [2]   6/22 6/23

**9**

9:00 a.m [2]   28/4
   28/9

**A**

a.m [2]   28/4 28/9
ability [2]   15/17
   16/18
able [2]   11/19 22/9
above [1]   29/5
above-entitled [1]
   29/5
abstract [2]   13/1
   16/11
accept [1]   13/13
acceptable [1]
   27/14
across [1]   5/1
act [2]   5/24 15/25
action [4]   1/3 2/2
   6/2 6/5
activity [5]   15/23
   16/13 16/16 16/18

21/19
acts [2]   15/15
   15/19
actual [1]   9/13
actually [12]   4/1
   4/22 8/2 10/2 10/17
   11/17 11/23 17/6
   20/18 20/18 21/23
   27/9
add [3]   3/2 12/22
   22/5
addition [1]   22/13
address [3]   2/20
   3/2 16/5
addresses [1]   21/12
adjourned [1]   28/25
adjudicate [2]   3/25
   10/8
admitted [1]   13/3
advance [3]   2/22
   4/13 4/18
advances [1]   24/24
affidavit [3]   11/18
   11/23 21/25
affirmatively [2]
   9/1 9/3
afternoon [2]   2/6
   15/1
afterwards [1]   23/1
again [4]   6/18 7/2
   7/3 21/16
against [2]   3/20
   27/6
ago [2]   10/9 12/3
agree [4]   7/2 12/20
   13/6 19/14
agreed [1]   16/6
ahead [2]   25/16
   25/21
al [4]   1/2 1/5 2/3
   2/3
allege [1]   15/12
alleged [4]   15/15
   15/16 15/19 15/25
alleging [1]   18/17
allow [10]   5/16
   5/17 5/23 10/3
   11/16 12/12 13/7
   14/10 16/22 23/2
allowed [11]   3/7
   5/14 7/7 9/18 10/12
   11/22 12/4 13/13
   14/3 20/3 22/8
Although [2]   19/5
   20/9
always [1]   6/15
amount [1]   10/21
ANDERSON [6]   1/13
   2/4 15/2 22/15
   23/17 26/22
Anderson's [1]   27/3
anticipate [1]
   12/24
apart [1]   19/24
APPEARANCES [1]
   1/10
appearing [2]   2/4
   2/4
appellate [1]   14/19
applied [1]   19/4

apply [2]   11/12
   17/16
appropriate [1]
   21/7
April [2]   27/14
   28/7
April 27th [1]
   27/14
area [1]   9/7
areas [1]   26/7
argued [2]   9/12
   12/6
argument [5]   6/2
   9/15 10/3 11/15
   18/22
arguments [1]   24/2
arise [1]   14/18
around [1]   24/17
aside [1]   4/15
asserted [1]   18/20
assertion [1]   10/11
assertions [1]   21/5
associates [1]
   10/12
assume [1]   8/16
attorney [4]   7/21
   7/22 7/24 7/24
attorney-client [1]
   7/24
authority [3]   14/9
   14/13 14/19
Avenue [2]   1/20
   1/24
avoid [1]   16/4

**B**

back [3]   15/9 20/24
   25/10
BAILEY [6]   1/13 2/5
   15/2 17/2 26/22
   28/22
Bank [1]   1/14
Bankruptcy [1]   1/23
based [3]   11/8 19/4
   23/16
basically [3]   11/1
   11/12 13/19
basis [2]   12/11
   15/14
beginning [2]   15/5
   21/9
behalf [3]   2/23
   14/24 15/2
behind [1]   7/16
belief [5]   17/15
   18/4 18/19 19/1
   19/2
best [1]   26/3
better [3]   6/25
   23/14 28/2
beyond [1]   5/4
bid [1]   3/14
big [2]   9/7 10/14
blanket [1]   10/20
blatant [1]   3/9
bleeding [1]   10/14
both [4]   2/19 4/10
   24/5 25/22
bounds [1]   26/7
brief [3]   7/5 7/17

25/12
briefing [5]   12/13
   21/23 21/25 22/23
   25/10
briefly [1]   22/7
bring [1]   26/2
broader [2]   8/21
   19/19
broadly [1]   16/7
bulk [2]   4/9 4/21
burdensome [1]
   20/14

**C**

came [1]   17/17
can [24]   2/12 3/2
   3/3 4/5 4/17 7/8
   8/15 9/24 11/5 12/1
   17/1 17/4 17/5 23/1
   24/4 24/24 25/6
   25/16 25/23 26/4
   26/7 27/19 27/20
   28/15
care [3]   20/22 23/4
   23/5
case [41]
cases [2]   14/17
   24/6
categories [2]   8/7
   9/5
category [1]   8/3
caution [2]   20/9
   21/2
ceases [1]   9/14
Center [1]   1/14
central [3]   7/10
   22/14 26/12
certain [2]   13/1
   18/24
certainly [1]   7/6
certification [1]
   6/1
certify [1]   29/4
cetera [2]   11/3
   11/3
challenged [1]   9/10
challenging [1]
   16/17
charges [2]   7/5
   12/7
CHASE [2]   1/16 2/5
check [2]   17/5 17/9
choice [2]   11/10
   13/21
choose [2]   14/3
   18/6
chose [1]   18/5
Chris [1]   2/5
CHRISTOPHER [1]
   1/19
Circuit [3]   6/14
   14/6 16/14
civil [3]   1/3 2/2
   3/10
claim [13]   4/8 4/21
   5/2 5/3 5/5 5/7 5/9
   5/25 10/8 18/22
   19/11 26/14 26/17
claims [5]   3/19
   6/22 15/11 17/17

**C**

claims... [1]   19/22
clarify [1]   8/15
class [1]   6/1
classic [1]   7/21
clean [1]   22/17
clear [5]   2/13 4/6
8/8 24/8 24/12
clearly [2]   2/12
13/4
client [1]   7/24
close [1]   3/13
collective [2]   6/2
6/5
Collectively [1]
15/13
COLUMBIA [1]   1/1
Combes [1]   1/11
commit [1]   13/25
communicate [1]
11/2
communicated [1]
18/7
communications [7]
8/4 8/4 8/17 8/19
8/23 9/4 9/21
companies [1]   4/25
component [1]   16/15
concern [2]   12/23
13/20
conclude [1]   13/7
concludes [1]   21/20
conclusion [1]
17/18
conclusively [1]
3/8
confer [3]   26/3
26/20 26/25
conference [6]   21/4
21/9 25/16 25/22
27/21 28/10
confident [1]   13/14
connection [1]
19/10
consider [2]   13/19
25/14
consideration [1]
10/18
Constitution [1]
1/24
contact [1]   26/4
contemplated [1]
16/9
contemplating [1]
21/7
contentious [2]
7/11 16/3
contrary [1]   23/18
convert [1]   12/12
convince [1]   25/12
convinced [1]   25/3
core [1]   4/10
costly [1]   21/14
costs [1]   21/22
country [2]   5/1
6/11
counts [7]   15/12
15/13 15/14 16/17
16/24 19/16 19/18

course [3]   12/16
13/20 21/8
court [22]   1/1 1/23
11/12 11/16 13/18
14/9 14/11 16/9
16/19 17/23 18/20
18/24 21/11 21/19
23/1 24/3 26/20
26/21 26/23 28/5
29/3 29/9
Court's [4]   2/7
7/13 14/13 21/17
courtroom [2]   26/4
27/19
courts [3]   1/23
5/20 26/16
COVID [1]   29/8
COVID-19 [1]   29/8
cv [1]   1/3

**D**

D.C [3]   6/14 14/6
16/14
damages [3]   3/21
5/7 24/23
date [3]   25/9 27/19
29/14
DAY [20]   1/5 1/14
1/17 1/19 2/3 3/5
4/25 5/7 5/14 6/18
7/4 9/9 9/11 9/21
10/24 11/17 12/4
13/3 13/6 15/2
Day's [8]   3/10 4/6
4/23 7/13 10/7
10/10 11/15 13/9
DC [3]   1/4 1/20
1/25
dealing [1]   24/5
decide [7]   6/23
10/16 13/15 14/10
14/11 23/1 24/3
decided [1]   8/25
16/19 23/19
deciding [2]   13/8
24/14
decision [4]   22/5
25/18 25/20 28/16
defendant [2]   3/20
16/1
defendants [12]   1/6
1/13 2/4 3/19 14/25
15/2 15/13 15/20
24/23 26/6 27/16
28/23
defense [1]   16/16
defer [2]   11/16
11/24
definitive [1]   10/6
definitively [1]
19/25
delay [6]   3/14 3/17
3/25 4/2 4/3 4/4
demand [3]   3/6 7/20
7/21
demanding [1]   27/4
demands [2]   7/16
8/11
denied [1]   12/15
deny [1]   12/11

depend [1]   11/20
deputy [2]   26/5
27/19
desire [1]   27/10
determination [1]
26/16
determine [2]   11/23
18/25
determining [1]
22/22
development [7]
9/23 16/8 16/11
16/21 21/12 21/16
21/20
diametrically [1]
17/7
difference [1]
10/22
different [5]   9/20
12/18 17/24 18/15
18/15
DiPOMPEO [2]   1/19
2/5
direct [3]   2/9 6/13
21/18
disability [1]   11/4
disabled [1]   9/14
disagree [5]   6/17
9/2 14/8 14/20 17/7
disclose [1]   8/23
discovery [39]
discrete [3]   2/21
20/4 21/10
discriminatory [1]
18/18
dismiss [9]   9/11
12/9 12/10 12/11
16/10 16/14 16/19
17/22 21/18
dispositive [1]
13/2
disputed [1]   3/6
disputes [3]   20/25
22/19 26/1
disputing [1]   14/16
distinction [2]
10/19 12/21
district [5]   1/1
1/1 1/9 1/23 14/9
docket [1]   14/9
door [1]   20/12
down [2]   14/23 20/7
draft [1]   7/21
drafting [1]   4/20
drafts [1]   7/20
dramatic [1]   4/24
draw [1]   12/21
dropped [1]   6/3
during [1]   29/7

**E**

e-mail [2]   3/6 3/7
earlier [2]   9/14
27/9
early [8]   5/14 5/24
10/10 12/17 23/3
24/3 24/15 25/13
easily [1]   22/11
easy [1]   17/8
EEOC [2]   7/5 12/7

effects [1]   4/24
efficiency [12]
2/22 4/5 4/15 7/3
7/8 15/6 15/21 20/6
22/13 23/19 23/25
24/2
efficient [3]   14/11
22/23 23/13
eight [9]   9/9 9/13
11/2 15/12 16/25
27/2 27/7 27/10
27/13
either [1]   27/19
else [6]   2/17 3/3
8/25 11/6 14/21
17/10
employer [1]   20/19
employer's [2]
20/17 20/20
employers [3]   18/8
18/11 18/15
employment [1]
15/17
empty [1]   21/22
ends [1]   21/13
engage [1]   20/23
enormous [1]   5/6
enough [5]   3/8 9/16
17/8 23/23 25/3
entirely [1]   23/11
entitled [2]   8/24
29/5
Equal [1]   5/24
essentially [4]
10/5 10/12 17/23
18/1
establish [3]   11/7
12/10 16/18
et [6]   1/2 1/5 2/3
2/3 11/2 11/3
even [18]   3/18 3/22
8/1 16/22 17/14
19/1 19/12 19/18
20/13 22/25 24/21
24/21 25/2 25/9
26/12 26/13 26/14
26/17
event [1]   21/24
everybody [2]   2/6
28/10
everyone [4]   2/9
11/1 13/24 14/1
evidence [5]   3/8
9/16 11/9 11/11
19/6
example [3]   7/19
19/4 20/15
examples [1]   7/14
exchange [1]   19/20
excuse [1]   28/7
exercise [1]   21/22
exhausted [1]   12/8
expect [1]   5/8
expedite [1]   4/2
explain [3]   7/8 9/5
13/18
express [1]   20/18
extended [1]   6/15

**F**

factor [1]   17/8
facts [2]   11/20
13/7
factual [7]   11/13
16/8 16/10 16/20
21/12 21/15 21/20
fair [1]   6/12
fairly [2]   19/21
27/4
faith [2]   7/15
22/15
fall [2]   18/23
19/22
false [1]   9/16
family [3]   18/8
18/11 18/16
fashion [1]   15/22
federal [2]   5/16
6/7
feedback [1]   2/11
feel [1]   6/24
few [1]   7/8
field [1]   19/9
figure [1]   24/6
file [21]   2/16 5/14
6/8 7/7 11/22 11/23
12/4 13/7 13/13
13/17 14/3 14/3
22/8 22/25 22/25
23/9 25/3 25/6
25/13 26/20 26/21
filed [3]   6/5 23/2
23/15
files [1]   11/17
filing [6]   3/12
13/10 14/7 14/10
23/19 25/8
final [2]   3/22 3/22
financial [3]   4/9
5/6 5/8
find [1]   26/5
fine [1]   28/3
fire [1]   3/7
fired [3]   3/5 4/8
13/4
firing [1]   3/9
firms [2]   4/25 27/6
first [3]   9/12 21/4
21/5
five [1]   27/5
five-month-old [1]
27/5
float [1]   21/6
focus [1]   24/4
focused [1]   10/24
follow [2]   18/10
23/12
following [2]   4/20
28/1
For the Defendants [1]
1/13
force [1]   21/9
forcing [1]   14/1
foreclose [1]   25/7
foregoing [1]   29/4
forward [5]   15/24
19/19 20/2 22/11
27/10

frankly [1]   16/25
fraudulently [1]
9/15
Friday [1]   28/1
Fridays [1]   28/2
front [2]   13/23
20/24
function [1]   6/7
fundamental [1]
26/1
further [3]   28/19
28/21 28/22

**G**

gained [2]   15/21
20/6
gathered [1]   20/10
general [2]   5/13
5/16
generalization [1]
10/21
given [1]   13/2
gives [4]   7/14 9/9
9/10 10/20
goes [1]   18/18
good [6]   2/6 6/9
7/14 7/15 15/1
22/15
Grant [1]   1/15
gratuitously [1]
13/3
greatest [1]   5/4
guess [5]   3/24 5/10
7/2 18/9 22/7
guidance [2]   10/10
24/15
gum [1]   23/13
gums [1]   21/13

**H**

had a [1]   6/18
hand [2]   20/12 23/3
handset [1]   2/11
happy [5]   2/17 3/1
5/12 7/3 14/23
hard [1]   20/15
harm [2]   5/10 22/21
hear [4]   2/12 2/17
3/1 15/7
hearing [3]   1/8
21/4 29/7
Heifetz [1]   16/1
held [1]   25/20
help [3]   24/3 24/16
28/17
helpful [1]   10/9
Hi [1]   2/25
hoc [2]   19/6 19/6
hone [1]   21/15
Honor [9]   15/5 16/6
16/22 21/18 23/22
26/22 27/16 27/22
28/14
Honor's [1]   21/2
HONORABLE [1]   1/8
HOOK [3]   1/22 29/3
29/14

**I**

IL [1]   1/12

illegal [2]   5/5
13/5
illegally [1]   4/8
imagine [1]   20/15
impact [2]   4/5 5/6
implications [1]
5/4
importance [1]
26/12
inaccurate [1]
19/24
inartfully [1]
19/15
inch [1]   22/3
indicated [1]   16/6
individual's [1]
10/22
ineffective [1]
21/14
information [2]   8/9
22/20
informative [1]
19/21
informed [2]   18/5
18/7
initial [3]   25/22
27/20 28/9
inquire [1]   8/24
inquiry [1]   19/5
instance [1]   18/14
instructive [1]
21/16
intending [1]   16/21
intent [2]   17/8
24/8
intention [1]   8/7
interpretation [5]
17/25 18/1 18/4
18/6 18/19
interpretations [1]
17/24
interrupt [2]   5/19
17/1
intersect [1]   19/12
into [8]   2/11 8/4
8/25 9/20 10/14
11/21 20/25 26/6
introduce [1]   2/12
inundated [1]   6/16
investigate [1]
17/17
investigating [1]
7/15
involved [1]   21/14
involves [1]   5/1
ironic [1]   3/15
irrelevant [3]   7/16
20/13 22/20
issue [2]   2/11
3/18 3/25 4/23 4/24
6/3 6/17 6/22 6/25
9/8 10/14 12/19
12/25 15/6 15/12
16/12 17/12 19/16
21/11 22/14 24/10
24/11 24/13 24/20
26/16
issues [17]   5/1 7/9
7/10 8/1 10/17
13/11 13/17 16/4

20/4 21/24 22/10
22/17 24/3 24/4
24/23 26/9 26/11

**J**

JEFF [3]   1/22 29/3
29/14
job [3]   27/3 27/4
27/4
JONES [28]   1/5 1/14
1/17 1/19 2/3 3/5
3/10 4/6 4/23 4/25
5/7 5/14 6/18 7/4
7/13 9/9 9/11 9/21
10/7 10/10 10/24
11/15 11/17 12/4
13/3 13/6 13/9 15/2
judge [10]   1/9 2/25
4/3 6/7 6/10 6/16
6/23 15/1 22/10
28/21
judges [1]   24/14
judgment [45]
judgment with [1]
24/21
judgments [1]   12/24
JULIA [1]   1/11
Julia's [1]   27/4
jury [2]   13/24 14/1
justice [1]   22/13

**K**

key [1]   23/17
kinds [1]   18/8
knowledge [1]   19/8

**L**

laid [1]   17/13
largest [1]   27/6
later [3]   4/15 4/19
25/8
law [14]   3/9 4/25
7/17 9/20 11/20
13/2 13/4 16/15
17/6 24/7 24/7
24/11 24/16 27/6
lawful [1]   10/11
lawfulness [4]   10/7
10/15 10/20 24/9
laws [1]   3/10
leadership [1]   3/10
least [2]   22/21
25/23
leave [13]   4/23
5/11 5/11 9/9 9/15
9/22 10/7 10/13
10/21 13/18 18/8
18/11 18/17
legal [9]   7/9 10/23
13/14 14/13 16/12
22/9 23/18 24/3
26/16
legality [1]   4/23
legally [3]   8/2
22/16 22/18
letter [1]   7/20
letters [1]   7/21
limitations [2]
15/16 29/9
limited [1]   5/9

**L**

linked [1]   18/24
listed [1]   9/5
litigate [2]   7/25
  8/9
litigation [1]   9/6
little [1]   3/14
longer [2]   5/23 6/4
look [6]   9/3 11/4
  12/9 15/9 23/15
  25/12
looking [4]   13/22
  21/11 22/21 22/22
lot [7]   5/20 7/11
  7/12 9/23 11/10
  17/12 22/14
Louisiana [1]   1/20

**M**

mail [2]   3/6 3/7
main [1]   11/15
makes [2]   11/24
  25/12
making [1]   8/8
manage [1]   14/9
mandamus [1]   14/18
many [3]   5/19 5/20
  6/8
March [2]   1/5 27/13
MARK [4]   1/2 1/10
  2/2 2/25
materially [1]
  18/16
matter [5]   3/9 7/16
  8/20 13/4 29/6
may [15]   5/3 5/22
  6/3 19/3 19/5 19/10
  20/11 20/16 23/4
  23/5 23/22 24/11
  25/9 28/8 28/9
May 7 [2]   28/8 28/9
may on [1]   23/22
maybe [3]   5/12
  20/20 24/11
mean [19]   3/17 4/1
  4/4 4/10 4/20 5/5
  5/12 5/20 6/13 6/22
  8/20 9/4 11/6 12/23
  14/17 19/24 20/10
  21/4 23/4
meant [1]   19/7
medical [1]   10/13
meet [3]   26/3 26/20
  26/24
meets [1]   11/18
Mellon [1]   1/14
men [1]   9/10
merits [5]   12/19
  18/23 19/12 21/12
  21/25
microphones [1]
  2/10
might [1]   23/3
minimum [1]   11/22
minute [1]   12/3
misunderstand [1]
  12/5
misunderstanding [1]
  23/17

moment [2]   10/9
  15/9
month [3]   26/23
  27/5 27/5
more [11]   3/8 4/23
  5/1 9/9 9/16 11/10
  12/22 13/24 14/11
  20/1 22/5
MOSS [1]   1/8
most [3]   7/10 21/7
  21/16
motion [44]
motions [8]   6/8
  6/17 6/23 12/25
  14/7 14/10 21/10
  24/15
motivation [4]   17/5
  17/8 17/9 17/12
move [4]   5/17 5/24
  20/5 27/10
Mr. [18]   3/1 6/21
  8/12 9/25 15/15
  16/6 17/2 17/7 19/7
  19/21 20/16 22/4
  22/15 24/1 26/6
  27/1 28/19 28/22
Mr. Anderson [1]
  22/15
Mr. Bailey [2]   17/2
  28/22
Mr. Savignac [14]
  3/1 6/21 8/12 9/25
  16/6 17/7 19/7
  19/21 20/16 22/4
  24/1 26/6 27/1
  28/19
Mr. Savignac's [1]
  15/15
Ms. [1]   16/1
Ms. Heifetz [1]
  16/1
much [4]   5/1 15/7
  23/14 26/8
multitude [1]   20/8
mute [1]   2/10

**N**

name [2]   2/13 15/13
narrow [1]   22/2
narrowing [1]   24/4
necessarily [1]
  19/22
need [7]   3/3 7/11
  10/13 18/25 20/22
  22/12 26/20
New [1]   1/18
next [1]   8/3
nine [2]   15/12
  16/25
nobody [1]   2/9
none [2]   8/1
NOTE [1]   29/7
notion [1]   20/11
NW [2]   1/20 1/24
NY [1]   1/18

**O**

objection [1]   5/15
objective [2]   17/20
  19/1

obviate [1]   22/12
obviously [8]   4/7
  6/16 14/17 16/5
  17/12 22/19 27/3
  27/6
occurred [1]   29/7
odds [1]   14/14
off [2]   15/4 15/5
offer [2]   2/18
  25/11
Official [2]   1/23
  29/3
old [2]   27/5 27/5
omit [1]   16/1
on which [1]   21/11
once [1]   14/12
one [21]   1/14 2/21
  3/25 5/21 6/24 7/1
  9/5 11/5 12/17
  12/19 12/19 14/5
  15/15 15/18 17/5
  17/9 19/13 19/13
  20/19 24/2 27/6
one-for-one [1]
  19/13
only [8]   3/19 8/22
  10/6 10/12 15/18
  15/20 18/13 24/1
open [2]   25/13 26/1
opening [2]   20/12
  20/23
opinion [4]   16/9
  16/14 17/22 21/17
opportunity [1]
  7/17
order [3]   10/8
  18/25 26/3
ordinary [1]   21/8
otherwise [1]   7/12
ought [1]   25/21
ourselves [1]   9/1
out [8]   4/25 6/3
  16/14 17/13 24/6
  26/4 26/7 27/9
over [2]   5/15 18/6
overall [2]   2/22
  17/11
overlap [3]   19/13
  24/19 26/8

**P**

p.m [2]   1/6 28/25
PA [1]   1/15
page [2]   7/13 23/16
pages [1]   21/18
paid [1]   5/11
pandemic [2]   27/5
  29/8
parental [1]   9/22
part [1]   16/16
partial [1]   3/22
particular [1]
  26/14
particularly [1]
  6/9
parties [11]   2/18
  5/4 5/5 5/17 6/8
  24/3 24/5 24/15
  25/25 26/19 27/15
parties' [2]   2/15

7/13
party [2]   6/24 7/22
pause [1]   8/12
pausing [1]   3/24
Pay [1]   5/24
people [1]   9/21
perhaps [5]   23/3
  25/2 25/18 25/19
  28/1
permissible [1]
  6/16
person [1]   19/8
personal [1]   25/1
perspective [1]
  24/25
pertains [4]   15/24
  15/25 17/11 19/19
pertinent [1]   5/23
petition [1]   14/18
pick [2]   8/16 27/19
piecemeal [1]   15/22
Pittsburgh [1]   1/15
plaintiffs [13]   1/3
  1/10 2/3 2/23 5/16
  6/4 15/9 16/3 16/8
  17/16 18/4 20/3
  20/14
plaintiffs' [2]
  5/15 16/17
pleadings [1]   17/25
please [4]   2/11
  2/12 27/22 29/7
point [15]   2/17
  2/18 3/21 12/16
  16/5 17/9 18/9
  18/10 19/21 21/15
  23/2 23/24 23/25
  25/4 25/11
pointing [1]   23/18
points [1]   23/18
policies [4]   18/8
  18/12 18/16 18/17
policy [26]   4/24
  9/13 9/23 10/7
  10/11 10/11 10/16
  10/20 10/24 10/25
  11/3 11/4 11/8
  11/13 17/23 18/20
  18/23 18/25 19/2
  19/3 19/7 19/9
  19/20 20/17 20/20
  24/9
position [4]   10/25
  13/21 20/16 23/5
positions [2]   13/14
  18/15
possibility [1]
  25/7
post [2]   19/6 19/6
potentially [1]
  10/3 22/18
pre [1]   3/5
pre-suit [1]   3/5
precedent [1]   14/6
preclude [3]   8/18
  13/8 13/10
premature [2]   16/2
  20/11
prepare [1]   26/25
presumably [1]   23/9

**P**

pretty [4]   4/13
8/22 13/1 13/4
prevail [2]   3/18
24/25
price [1]   13/12
principal [1]   2/19
prior [2]   13/17
21/17
privilege [6]   7/23
8/1 8/1 8/6 9/6
21/5
privileged [4]   7/25
8/9 9/3 22/19
privileges [1]   16/7
pro [3]   1/11 2/4
27/3
probably [3]   20/10
22/10 23/14
problem [1]   24/10
proceed [5]   7/18
21/8 22/6 22/23
23/24
proceeding [3]   2/20
15/6 15/22
proceedings [3]   2/8
28/25 29/5
proceeds [1]   15/14
process [9]   21/9
24/14 24/17 24/18
25/4 25/6 25/17
25/23 25/25
product [1]   7/22
professional [1]
25/2
prohibit [1]   3/11
promote [3]   2/21
15/6 22/12
promoting [1]   22/13
promptly [1]   25/7
proposals [1]   2/16
propose [2]   22/8
26/19
proposed [4]   2/16
16/22 19/17 20/2
proposing [3]   15/10
20/4 23/12
proposition [3]
14/8 14/14 14/20
protected [7]   8/5
15/23 16/13 16/16
16/18 21/19 22/20
prove [3]   3/8 9/17
9/18
providing [1]   24/15
psychological [1]
5/10
pulled [1]   19/24
punitive [1]   5/7
pure [2]   7/9 13/1
purposes [1]   28/17
pursue [3]   16/10
16/21 21/21
pursuing [1]   16/23

**Q**

quicker [1]   22/14
quite [2]   3/14 3/24

**R**

raise [7]   7/10 8/21
14/22 26/7 26/9
26/12 28/19
raised [1]   22/10
raising [2]   10/3
11/20
RANDOLPH [1]   1/8
rather [6]   4/1 4/2
4/14 4/19 6/25
13/19
rationale [1]   23/19
read [3]   11/5 11/5
24/6
really [11]   10/24
11/3 11/8 15/8
16/20 20/25 23/5
23/25 24/23 25/15
26/14
reason [6]   4/12
5/23 6/10 13/5 20/1
20/18
reasonable [5]
17/15 18/4 18/19
19/2 19/8
reasonableness [1]
19/5
reasons [2]   5/22
20/8
rebroadcast [1]   2/8
reconsideration [2]
25/18 28/16
record [3]   2/8 2/14
6/15
refer [1]   26/15
reference [1]   15/17
referring [1]   14/6
regarding [3]   2/15
14/6 24/16
regardless [3]
10/21 20/3 20/7
relates [2]   15/18
16/24
relating [2]   8/19
10/17
relationship [2]
7/24 19/23
relatively [3]
13/22 22/10 25/6
relevance [3]   18/10
20/16 20/21
relevant [3]   8/2
19/7 26/1
rely [1]   8/17
remainder [2]   24/20
26/9
remainders [1]
16/24
remains [1]   3/6
remind [1]   2/7
remotely [2]   29/5
29/9
remove [1]   7/11
repeat [2]   12/24
12/25
repeatedly [1]
20/24
reply [1]   9/11
report [4]   25/22

26/21 26/23 27/15
reported [2]   1/22
29/5
Reporter [2]   1/23
29/3
reporting [1]   29/9
reputational [1]
4/9
request [2]   3/11
3/14
require [3]   9/6
19/3 21/24
required [1]   21/20
requirement [1]
11/18
research [1]   8/10
resolution [5]   2/22
4/13 11/24 13/1
22/14
resolve [5]   13/23
16/20 17/24 21/23
22/16
resolved [1]   6/25
resolving [2]   7/9
23/13
respect [11]   8/18
10/6 10/7 10/15
17/14 18/11 20/17
20/20 24/22 26/13
27/9
respects [1]   18/24
response [1]   6/13
rest [1]   25/9
result [1]   3/16
retaliation [11]
5/2 10/6 10/8 10/16
15/12 15/19 15/25
18/22 19/11 19/16
21/24
retaliatory [1]
15/15
reviewed [1]   2/15
rewrite [1]   23/10
right [3]   8/20 18/2
28/24
rights [1]   3/10
ripe [1]   10/18
rise [2]   18/22
19/22
road [1]   20/7
Room [1]   1/24
round [2]   12/13
rule [8]   5/13 5/16
11/16 11/18 21/8
25/22 26/21 27/15
ruled [1]   7/6
rules [2]   2/8 5/16
ruling [3]   4/4 7/19
11/8
rulings [1]   10/6
run [1]   16/7

**S**

same [6]   6/17 6/22
12/25 13/11 13/17
28/11
satisfaction [2]
25/1 25/2
SAVIGNAC [18]   1/2
1/10 2/3 2/25 3/1

6/21 8/12 9/25 16/6
17/7 19/7 19/21
20/16 22/4 24/1
26/6 27/1 28/19
Savignac's [1]
15/15
saying [5]   3/4 10/5
11/7 12/5 20/5
schedule [2]   25/16
25/21
scheduling [4]
25/22 27/21 28/10
28/18
scope [2]   22/2 22/2
se [3]   1/11 2/4
27/4
second [9]   6/21 7/7
8/13 10/25 13/10
15/16 17/2 23/8
23/9
seek [9]   7/20 8/8
9/8 9/18 9/19 16/1
16/3 20/3 22/19
seeking [9]   3/20
3/21 6/4 8/2 8/8
16/10 21/21 24/21
24/22
seems [5]   3/13 8/6
11/21 18/21 24/1
sense [3]   11/24
23/14 25/13
sent [2]   3/6 7/21
separate [1]   2/20
series [2]   22/18
set [1]   16/14
setting [2]   4/15
27/9
seven [2]   15/12
16/25
SHEKETOFF [1]   1/11
short [1]   11/4
show [3]   18/14 23/3
25/11
side [2]   8/24 23/4
sides [3]   2/19 4/11
24/6
significance [1]
4/9
similar [2]   18/16
18/17
simple [1]   13/22
simply [3]   9/16
21/8 24/15
situation [1]   14/1
six [2]   7/13 23/16
six-page [2]   7/13
23/16
sliver [1]   4/7
small [1]   5/9
societal [1]   5/4
solely [1]   15/18
somewhat [1]   20/10
soon [1]   25/20
sooner [2]   4/14
4/19
sophisticated [1]
24/5
sorry [10]   3/16
4/17 5/11 6/20 6/20
6/21 8/12 9/24 17/1

**S**

sorry... [1]   23/11
sort [13]   8/16 11/5
11/11 12/17 13/3
14/17 20/13 21/22
23/3 23/17 24/1
24/2 27/9
sorts [1]   9/21
speak [2]   2/11 2/13
speaking [3]   2/10
2/23 14/24
specific [1]   19/16
speculating [1]
18/13
spousal [2]   7/23
8/6
spouse [2]   8/18
8/19
squint [1]   11/5
stage [2]   10/10
16/19
stand [1]   27/22
standard [2]   11/12
16/13
standing [1]   26/2
stands [1]   4/12
start [3]   3/4 15/4
27/25
started [1]   15/5
starts [1]   28/5
stated [1]   21/11
STATES [2]   1/1 1/9
status [1]   10/22
step [2]   14/23 15/9
still [7]   15/24
16/23 17/15 19/18
20/2 20/6 23/25
stop [1]   6/20
straight [1]   22/11
streamlined [1]   6/6
streamlines [1]   6/3
Street [3]   1/11
1/15 1/17
strenuous [1]   5/15
stretch [1]   20/21
strikes [3]   8/21
10/2 20/17
stronger [1]   18/21
subcomponents [1]
17/13
subject [2]   3/19
29/8
subjective [10]
16/15 17/5 17/7
17/9 17/12 17/19
17/20 22/15 24/8
24/9
subjects [1]   5/7
submission [2]   7/14
26/5
submissions [1]
2/15
submit [2]   5/13
22/25
subsequent [1]   6/14
substantial [3]   5/8
8/22 11/9
substantially [1]
4/14

successful [1]   5/25
successive [4]   6/17
13/17 13/22 14/7
suggest [2]   16/8
26/23
suggesting [1]
22/24
suit [1]   3/5
Suite [1]   1/15
summary [44]
support [2]   8/10
9/11
suppose [1]   19/5
sure [11]   3/4 3/24
4/1 4/3 6/12 8/14
9/2 12/2 12/23 17/3
18/9
surrounding [1]
15/23
susceptible [1]
17/23
sweeping [3]   3/13
4/23 5/1
sympathetic [1]
20/11

**T**

talk [5]   4/5 7/3
7/15 8/3 26/5
talking [2]   15/11
15/17
talks [2]   11/1
21/19
technological [1]
29/9
teed [1]   25/9
tees [1]   22/18
telephonic [2]   1/8
27/20
telephonically [1]
28/11
telling [1]   4/20
term [1]   11/4
termination [4]   5/5
5/6 15/16 15/19
TERRI [2]   1/16 2/5
test [1]   19/1
theme [1]   4/6
therefore [1]   29/8
things that [1]
9/23
think that [1]   23/7
though [6]   8/1
12/18 20/9 21/3
25/5 26/12
thought [1]   4/22
three [4]   15/11
15/13 15/13 15/20
threshold [1]   12/19
timeliness [1]   7/5
times [2]   5/19 5/20
tiny [1]   4/7
today [7]   2/24 6/25
14/25 26/24 27/13
28/12 28/20
today's [1]   2/8
together [1]   19/22
Tolton [2]   5/13
5/22
tomorrow [1]   7/1

took [1]   23/15
top [2]   3/10 21/10
topic [1]   3/12
transcript [2]   1/8
29/4
trial [3]   27/25
28/2 28/5
true [3]   4/7 9/12
29/4
try [1]   11/8
trying [1]   19/15
turn [2]   2/12 19/5
two [5]   7/23 15/14
15/20 24/1 27/19
typically [1]   24/14

**U**

U.S [1]   1/23
ultimate [1]   12/19
ultimately [1]
11/11
under [4]   2/7 16/13
19/1 26/2
underlying [2]   5/9
18/23
understood [2]
17/22 19/4
undisputed [1]   3/5
unduly [1]   20/14
UNITED [2]   1/1 1/9
unlawfulness [1]
19/2
unlikely [1]   20/18
unnecessary [2]   9/6
20/13
unpaid [1]   5/10
unsettled [1]   24/11
untimely [1]   12/7
up [7]   4/20 21/13
21/13 22/18 23/13
25/9 25/20
upside [1]   22/1
Urbana [1]   1/12
urge [1]   13/14
use [2]   9/1 9/3
using [1]   20/23
usually [2]   24/17
28/2

**V**

value [1]   5/8
vast [1]   4/9
versus [1]   2/3
Vesey [1]   1/17
view [5]   9/20 11/19
24/9 26/12 26/18
views [1]   20/19
violation [1]   3/9
voluminous [1]   9/20

**W**

waiting [2]   25/17
25/19
waiver [1]   8/21
wants [1]   22/5
Washington [3]   1/4
1/20 1/25
waste [1]   7/12
way [9]   8/16 11/5
20/5 20/19 23/24

24/17 26/7 26/8
28/11
ways [1]   7/8
week [4]   27/19
27/23 27/25 28/1
weeks [7]   9/9 9/14
11/2 27/2 27/7
27/11 27/14
weeks' [1]   5/10
welcome [1]   2/19
what's [1]   25/20
whatsoever [1]   22/1
who's [2]   2/23
14/24
whole [1]   4/5
within [1]   14/13
without [5]   6/9
7/19 13/17 16/20
18/17
women [6]   9/9 9/13
10/12 10/20 11/1
11/2
work [3]   7/22 26/3
28/10
works [3]   21/13
23/14 24/17
world [1]   27/7
worth [2]   5/10 15/8
wrong [1]   22/16
wrote [1]   8/6

**Y**

year [1]   23/3
York [1]   1/18

**Z**

zero [1]   15/21