IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARK C. SAVIGNAC and
JULIA SHEKETOFF,

*Plaintiffs,*

v.

JONES DAY, STEPHEN J. BROGAN,
BETH HEIFETZ, and JOHN DOES 1-10,

*Defendants.*

Case No. 1:19-cv-02443-RDM

# DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
# FOR AN "ATTORNEYS' EYES ONLY" PROTECTIVE ORDER

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ......................................................................................................................... 1

LEGAL STANDARD.................................................................................................................... 2

ARGUMENT ................................................................................................................................. 3

I.     Plaintiffs Have Failed To Substantiate Their Conclusory Claims Of Harm ...................... 3

         A.     Speculation about undefined harm does not warrant intruding on Defendants' view of the evidence and attorney-client relationship ...................... 3

         B.     [REDACTED] ...................................................................................................... 5

         C.     Plaintiffs' self-serving view of the merits is premature and unavailing ................ 7

II.    The Proposed AEO Order Is Overbroad And Unworkable ................................................ 9

CONCLUSION............................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page**

*Doe v. District of Columbia*,
    697 F.2d 1115 (D.C. Cir. 1983) ............................................................................1, 2, 3, 4, 5, 9

*FTC v. Sysco Corp.*,
    83 F. Supp. 3d 271 (D.D.C. 2015) ..........................................................................................4, 5

*Keaveney v. SRA Int'l, Inc.*,
    2017 WL 1842544 (D.D.C. May 3, 2017) ........................................................................2, 5, 10

*Klayman v. Judicial Watch*,
    247 F.R.D. 19 (D.D.C. 2007) .......................................................................................................5

*Ragland v. Blue Cross Blue Shield of N.D.*,
    2013 WL 3776495 (D.N.D. June 25, 2013) ...............................................................................10

## INTRODUCTION

This dispute does not concern technical trade secrets, data to be analyzed by an expert, or private medical information about Plaintiffs. ███████████████████████████████████████████████████████████████████████████████████ ███████ If Plaintiffs assert that these documents are relevant to the case, then they will want to explore them with relevant witnesses to authenticate the texts and explore their context, and Plaintiffs presumably will seek to introduce the evidence in briefing motions or in a public trial. Plaintiffs nevertheless ask the Court to block Defendants (and even some of their counsel of record) from seeing or learning about that same evidence, thereby prejudicing Defendants from investigating the evidence and developing and presenting their defenses. As the D.C. Circuit held in reversing such an order as an abuse of discretion, "[d]istrict courts must be . . . chary of issuing protective orders that restrict the ability of counsel and client to consult with one another during trial or during the preparation therefor." *Doe v. District of Columbia*, 697 F.2d 1115, 1119 (D.C. Cir. 1983).

Plaintiffs provide no compelling reason why the Court should take the extreme step of blocking Defendants' (and counsel's) ability to assess and investigate the evidence in this case. Plaintiffs' brief is long on speculation, rhetoric, self-serving merits arguments, and personal animus for Defendants. It is short, however, on actual evidence corroborating the supposed premise of this dispute: that current or former Jones Day lawyers need protection from the Firm. Plaintiffs point to no instance of alleged workplace retaliation outside of one of the Plaintiff's own allegations in this routine Title VII case. ███████████████████████████████████ ███████████████████████████████████ To the extent Plaintiffs believe their evidence suggests something more sinister, it is that much more imperative that Defendants be

able to confer with counsel to understand the claims against them and assess their merits. Plaintiffs cannot meet their burden to justify interfering with that ability—and certainly cannot justify the exceedingly broad and undefined scope of their proposed order. The request for an attorneys' eyes only ("AEO") protective order should be denied.

## LEGAL STANDARD

Plaintiffs admit the three elements they must prove to justify an AEO order: (1) "the harm posed by [disclosure] must be substantial and serious," (2) the order "must be narrowly drawn and precise," and (3) "there must be no alternative means of protecting the public interest which intrudes less directly on attorney-client relations." *Doe*, 697 F.2d at 1120 (cleaned up; citation omitted). The D.C. Circuit in *Doe* addressed the reasons for that stringent test:

> [E]very litigant has a powerful interest in being able to retain and consult freely with an attorney. Insofar as the fair administration of justice requires that all parties to a controversy be fully and equally informed of their entitlements, the public has a similarly important interest in preserving the ability of each disputant to confer with his lawyer. This public interest is reinforced by the value we place on the right of every litigant to participate in the process whereby justice is done—to understand and become involved in the proceeding, not to be compelled passively to await its outcome.

*Doe*, 697 F.2d at 1119-20. Thus, in seeking an AEO order, Plaintiffs have the burden and "'must articulate specific facts to support [the] request and cannot rely on speculative or conclusory statements.'" *Keaveney v. SRA Int'l, Inc.*, 2017 WL 1842544, at *4 (D.D.C. May 3, 2017) (citation omitted).[1]

---

[1] This is the legal standard for entry of an AEO protective order over objection. The parties have separately agreed to protections for various types of confidential documents. *See* ECF 51-1. To the extent the information now at issue is personally sensitive, it can still be subject to appropriate restrictions on disclosure consistent with those agreed-upon terms.

2

## ARGUMENT

I. **Plaintiffs Have Failed To Substantiate Their Conclusory Claims Of Harm.**

   A. **Speculation about undefined harm does not warrant intruding on Defendants' view of the evidence and attorney-client relationship.**

For two reasons, Plaintiffs fail to meet the first requirement for their AEO order.

*First*, as a threshold matter, Plaintiffs must pinpoint what harm they purportedly think is threatened and "cannot be avoided without … curtailing communication between" Defendants and their counsel (as well as between counsel). *Doe*, 697 F.2d at 1120. Plaintiffs never do so. The purported harm motivating their proposal is the possibility of "material[] impair[ment] [to] employees' relationship with Jones Day." ECF 55-2 at 1. Plaintiffs never articulate what that broad language encompasses. *Impairment* is not necessarily *harm* that warrants intruding on the fair administration of justice with an AEO order. Impairments can be not only lawful, but entirely appropriate. If, hypothetically, discovery showed Jones Day lawyers breaching client confidences or engaging in other misconduct, it is not a "substantial and serious harm" that those lawyers might face the reasonable consequences of their actions.

To be sure, more pedestrian forms of employee conduct can be imagined. But it is commonplace for employers to learn about their employees in the course of civil discovery, particularly in employment litigation. Employers can validly take adverse actions against at-will employees for all sorts of reasons, including conduct outside the workplace. That is not *harm* justifying an AEO order. Plaintiffs do not point to a single case in which the court stripped a defendant of its ability to view the plaintiff's evidence and consult with counsel just to make sure that non-party employees and former employees remained in good standing with their employer, notwithstanding the employees' own actions.

3

Throughout their brief, Plaintiffs raise the specter of illegal retaliation and adverse employment action taken in reprisal for protected activity. But to the extent Plaintiffs rely on illegal "impairment" for the harm they now seek to protect against, there is no need for the Court to limit Defendants' ability to assess the evidence as a safeguard against that harm. Numerous federal, state, and local laws already protect Jones Day's employees from unlawful retaliation.

*Second*, Plaintiffs present no evidence that any kind of harm is likely. Their answer to the foregoing is that the Court should not presume existing laws against retaliation are sufficient when Plaintiffs allege those laws were of no help to Savignac. Plaintiffs' self-serving recitation of Savignac's allegations are addressed more fully *infra*. The point here is that a plausible claim of retaliation cannot by itself outweigh "the value we place on the right of every litigant to participate in the process whereby justice is done." *Doe*, 697 F.2d at 1119. Otherwise, AEO orders blocking a defendant's view of the evidence would be commonplace in retaliation litigation. That is not the case—nor would it be consistent with the D.C. Circuit's mandate to be "chary of issuing protective orders that restrict the ability of counsel and client to consult." *Id.* at 1119.

Instead, courts hold as a matter of law that "the mere prospect of retaliation" and speculation about "a potential chilling effect" are not enough to warrant blocking a party from seeing his or her adversaries' evidence. *FTC v. Sysco Corp.*, 83 F. Supp. 3d 271, 275 (D.D.C. 2015). In *Sysco*, plaintiffs sought a protective order to maintain the anonymity of certain declarants based on the fear that the defendants would retaliate against those individuals for participating in an FTC investigation. The court denied that request: "'[C]onclusory or speculative statements about the need for a protective order and the harm which will be suffered without one,'" the court held, were not enough to prohibit disclosure. *Id.* at 274 (citation

4

omitted). The plaintiffs' failure to cite any corroborating evidence also left the court "unpersuaded by Plaintiffs' concern about a chilling effect on future investigations." *Id.* at 275; *see also Klayman v. Judicial Watch*, 247 F.R.D. 19, 23-24 (D.D.C. 2007) (denying AEO order); *Keaveney*, 2017 WL 1842544, at *4 (same).[2]

Aside from how they view their own claims, Plaintiffs have no evidence that Jones Day—much less the individual Defendants—ever retaliated against any one. They point to no prior judgments, much less multiple judgments forming a pattern that might suggest a heightened risk of future retaliation. ▮▮▮▮▮▮▮▮▮▮▮▮ Absent such evidence, the Court has no basis to take the extraordinary step of curtailing the "fair administration of justice" through Plaintiffs' proposed AEO order. *Doe*, 697 F.2d at 1119; *see also Sysco*, 83 F. Supp. 3d at 275; *Keaveney*, 2017 WL 1842544, at *4.

B. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] Plaintiffs put much stock in language from *Doe* that the harm specified in that case "might well result" from unrestricted disclosure of the evidence. ECF 55 at 4. As Plaintiffs acknowledge, the court in *Doe* reversed the AEO order as an abuse of discretion. *Id.* at 18. *Doe*'s discussion of the first two factors was, therefore, *dicta*. *Sysco* and decisions applying *Doe* make clear that something more than the possibility of harm is required.





### C. Plaintiffs' self-serving view of the merits is premature and unavailing.

Plaintiffs' only other basis for suspecting some potential "impairment" is that because Jones Day allegedly retaliated against Savignac, it will do so again if presented the opportunity. Plaintiffs go so far as to argue that Defendants have "confess[ed] ... illegal retaliation" and "adm[itted] ... a blatant violation of the civil rights laws." ECF 55 at 6, 10.

Defendants have done no such thing, as Plaintiffs are aware. Whether Jones Day terminated Savignac in retaliation for protected activity is hotly contested. Indeed, the Court has already held—twice—that discovery is required before it decides Plaintiffs' claims: The Court declined to dismiss the retaliation claim "without factual development," ECF 32 at 38, and for the same reason denied Plaintiffs' request to file an early summary judgment motion. See ECF 41 & 44. That factual development is now underway, but because Plaintiffs spend most of their brief revisiting their allegations, Defendants offer a few concise points in response.

---

3 

7

*First*, Plaintiffs' experience shows why their purported concern for retaliation is unfounded. In August 2018, both Plaintiffs emailed Jones Day claiming that its leave policy was unlawful. In response, the Firm simply provided a reasonable explanation of its policy with supporting legal authority. *See* ECF 55-1 at A4 – A9. That is hardly the type of harm for which the Court needs to protect other employees—particularly at the cost of hampering Defendants' abilities to assess the case against them and consult with counsel.

*Second*, Savignac was not terminated until months later, after a separate, intemperate email threatening to take Jones Day to the "court of public opinion" based on a demand that Savignac now acknowledges should not have been granted. *Id.* at A7. In his January 2019 email, Savignac demanded 18 weeks of paid family leave. *Id.* He later admitted in this Court that new birthmothers are entitled to at least some period of disability leave to which non-disabled fathers have no right. *See* 8/4/20 Oral Arg. Tr. at 38. Forcing women to use disability leave to reach the same amount of paid leave that Savignac was demanding would have created the kind of disparate treatment that Plaintiffs purport to be fighting against.

*Third*, Plaintiffs' submission belies many of their other allegations. ███████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

8

███████████████████████████████████████████████

████████████████████████

*Fourth*, Plaintiffs claim that Jones Day "has never offered a shred of evidence" about why it terminated Savignac. ECF 55 at 10. That is not true. ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████ And, it is safe to assume there will be additional testimony on this point in depositions.

The point is that Plaintiffs cannot simply rehash their allegations as a basis for an AEO order that obstructs Defendants' attorney-client relationships and participation in this case. The Court has twice declined to prematurely judge the merits of Plaintiffs' allegations. It should not now grant a protective order based on Plaintiffs' own view of those merits.

## II.   The Proposed AEO Order Is Overbroad And Unworkable.

Plaintiffs' request also fails because their proposed AEO order is anything but narrowly drawn and precise, as the D.C. Circuit requires. *Doe*, 697 F.2d at 1120. Even in the most narrow terms Plaintiffs could fashion, their proposed order is still critically overbroad in key respects.

*First*, there is no subject-matter restriction to what Plaintiffs can designate. In *Doe*, for instance, the district court put specific, manageable walls around what was subject to the AEO order and what was not. The order only applied to designated "areas of inquiry," such as possession of weapons, or the identity of certain correctional officers. *Id.* at 1118 n.3. Those topics were also linked to the specific harm that Plaintiffs identified. *Id.* at 1121. There is no such

---

[4] ███████████████████████████████████████████████
███████████████████████████████████████████████

9

clarity or linkage here. Under their proposed AEO order, Plaintiffs can presumptively strip from Defendants' view anything that Plaintiffs, in their own discretion, think might "materially impair" an employee's relationship with Jones Day in any way. ECF 55-2 at 1. And the designation is not linked to any specific type of potential impairment. Under their proposed order, Plaintiffs could strike from Defendants' view even information that would legitimately warrant some corrective employment action.

Plaintiffs' argument to the contrary are unavailing. They claim that "[b]ecause the scope of the proposed order is defined in terms of the likely effect of disclosure of the material, it is true by definition that 'information … of the specific sorts identified likely would have provoked retribution' if known to Jones Day leadership." ECF 55 at 18 (quoting *Doe*). That is circular. The designation itself cannot be proof that the designation is appropriate. The proposed order gives Plaintiffs—who admit to thinking of Defendants as "hotheaded, malicious, and willfully illegal" actors prone to quick retribution, *id.* at 4—free rein to apply the AEO designation as broadly as they think appropriate, no matter what or who the communication is about.[5] AEO orders are "neither 'narrowly drawn' nor 'precise,'" when they leave "too much to the discretion of the party making the designation." *Keaveney*, 2017 WL 1842544, at *5. What Plaintiffs are asking for is a "sword" that allows them to "infringe on the other party's ability to consult with their counsel about matters disclosed in discovery." *Id.*; *see also Ragland v. Blue Cross Blue Shield of N.D.*, 2013 WL 3776495, at *2 (D.N.D. June 25, 2013) ("[T]he court is not willing to delegate to the

---

[5] Plaintiffs' brief is replete with name-calling, conclusory assertions, speculation, and guess-work about, for example, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ which defense counsel are actively involved in the defense of this case. *See, e.g.*, ECF 55 at 20 (unredacted version). These do not merit a response, but for avoidance of any doubt, that should not be construed as agreement.

parties the ability to unilaterally apply an 'attorneys' eyes only' designation in the first instance."). That is impermissible.

*Second*, as discussed above, "impairment" is overly broad. It covers the gamut, from unlawful retaliation, to legitimate termination for cause, to everything in between. This is an impossible standard for the Court to administer in deciding objections to Plaintiffs' designations. How do we adjudicate whether a particular document is likely to impair someone's relationship with Jones Day? Is Jones Day supposed to put forth evidence about each relevant non-party's overall contributions to the Firm; or how those individuals have been evaluated and compensated during their careers; or how leadership views their prospects for partnership; or what kinds of information might alter those prospects in the mind of each individual Firm leader? Presumably, this Court does not intend to become the arbiter of how Jones Day views individual lawyers, hold mini-trials over the career prospects of each of those individuals, or begin deciding what employment actions the Firm can and cannot take outside of this litigation. But absent that, there is no basis to decide objections.[6]

*Third*, the restrictions on who is permitted to see designated material are improperly broad. Not only are the individual Defendants and every person in a leadership position at Jones Day walled off from seeing the evidence, but so are their "deputies," anyone who "informal[ly]" participates "in compensation decisions," anyone who *formerly* had one of these roles, and anyone "reasonably anticipated" to become a leader sometime in the future. *Id.* The Firm has over a hundred partners in defined leadership roles and countless others who serve in informal leadership

---

[6] This stands in contrast with the other types of confidentiality designations to which the parties agreed. The Court can decide on the face of a document or with minimal factual development whether the document contains, for instance, a "trade secret," "proprietary financial" information, "personal phone numbers," "medical or health information," or attorney-client privileged information. ECF 51-1 at ¶¶ 6, 8, 11 (draft protective order).

roles or advise the Managing Partner. Given the high expectations of leadership placed on all partners in this general partnership, all current partners likely fall within the definition of anyone reasonably anticipated to have a leadership role sometime in the future. The defense counsel who can see this evidence have no easily administered way of knowing who else can view the material. As further proof that these terms are unworkable, Plaintiffs had to agree to an exception just for the purpose of litigating the propriety of their proposed order. *See* 6/4/21 Oral Arg. Tr. at 56, 59 (agreeing that Ms. Chase, a member of the Firm's Advisory Committee, can view Plaintiffs' *in camera* submission).

*Fourth*, the proposed order prevents two of Defendants' counsel of record from seeing the evidence.[7] That is unprecedented. The *Doe* court did not consider such an order or purport to announce a test for one, and Plaintiffs do not cite any employment case in which the Court blocked defense counsel from seeing the plaintiff's evidence. Plaintiffs' response—that Jones Day has other lawyers—is beside the point. These are the counsel of Defendants' choosing, and Plaintiffs have the burden to demonstrate why two of those counsel, both of whom entered appearances at the outset of this case and have been actively involved in its defense, should be prohibited from seeing ████████████████████████████████ Their only argument for such an order is that it purportedly is "necessary to effectuate the purpose" of the AEO provision. ECF 55 at 19. If Plaintiffs' proposed AEO order is unworkable, that is because its purpose is vague and

---

[7] As drafted, the order would also prohibit Ms. Chase from seeing the material. In their brief, Plaintiffs apparently agree that Ms. Chase can see all AEO designated material regardless of the terms of the order itself. ECF 55 at 20.

speculative, its terms are overbroad, and it does not meet the requirements of *Doe*. The answer is not to therefore also preclude *counsel* from seeing evidence. It is to deny Plaintiffs' request.[8]

## CONCLUSION

For the foregoing reasons, Plaintiffs' request for an attorney' eyes only protective order should be denied.

June 28, 2021

Respectfully submitted,

/s/ *Anderson T. Bailey*
Anderson T. Bailey (pro hac vice)
JONES DAY
500 Grant Street
Pittsburgh, PA 15219
Phone: (412) 391-3939
Email: atbailey@jonesday.com

Terri L. Chase (pro hac vice)
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, Florida 33131
Phone: 305-714-9700
Email: tlchase@jonesday.com

*Counsel for Defendants*

---

[8] In their submissions, Plaintiffs also take the position that the Court issued discovery rulings at the June 4, 2021 conference on the parties' protective order disputes, and that Plaintiffs are now refusing to produce ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *see also* ECF 55 at 1 n.1. Defendants do not agree that the Court was making rulings on discovery, which is not subject only to a relevance standard. To the extent Plaintiffs are refusing to produce responsive, accessible, and non-privileged material in their possession, custody, or control, that is improper. More importantly, Plaintiffs should be barred from trying to rely on material they withhold at any argument, hearing, or trial in this matter.

13