IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK C. SAVIGNAC and JULIA SHEKETOFF,<br><br>*Plaintiffs*,<br><br>v.<br><br>JONES DAY, *et al.*,<br><br>*Defendants*. | Civ. No. 1:19-02443 (RDM) |

**STIPULATION REGARDING PRODUCTION OF
ELECTRONICALLY-STORED INFORMATION ("ESI")**

Plaintiffs and Defendants STIPULATE AND AGREE to the following for the production of electronically stored information ("ESI") in the above-captioned matter.

**I.   GENERAL**

1. This Stipulation shall govern the discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Columbia, this Court's Standing Order in Civil Cases, and any other applicable orders and rules.

2. The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the action.

3. Nothing in this Stipulation shall supersede the provisions of any subsequent Stipulated Protective Order.

4. This Stipulation applies to any third-party discovery, pursuant to Fed. R. Civ. P. 45, if agreed to by the subpoena recipient. Nothing contained herein modifies Fed. R. Civ. P. 45 and, specifically, the provision of Fed. R. Civ. P. 45(d)(2)(B) regarding the effect of a written objection to inspection or copying of any or all of the designated materials or premises.

1

      5.      In the event of remand or transfer to other courts, this Stipulation will remain in effect in all respects, until adopted by the remand or transferee court or replaced by a successor Stipulation or Order.

      6.      Nothing in this Stipulation shall be deemed to constitute a waiver of any objections a producing party may have with respect to any discovery request.

      7.      Subject to the Parties' objections and responses to requests for production of Documents, all non-privileged Documents that are identified as responsive to discovery requests shall be produced in the manner provided herein and consistent with the Parties' Stipulated Protective Order.

**II.**    **DEFINITIONS**

      1.      "**Document**" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Fed. R. Civ. P. The term "Document" shall include Hard-Copy Documents, Electronic Documents or Data, and ESI as defined herein.

      2.      "**Electronic Document or Data**" means Documents or Data existing in electronic form at the time of collection, including but not limited to: e-mail or other means of electronic communications, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint slides), spreadsheets (e.g., Excel), databases, and image files (e.g., PDF).

      3.      "**Electronically stored information**" or "**ESI**," as used herein has the same meaning as in Fed. R. Civ. P. 26 and 34.

      4.      "**Hard-Copy Document**" means Documents existing in paper form at the time of collection.

5. "**Native Format**" means and refers to the format of ESI in which it was created, maintained, generated and/or as used by the producing party in the usual course of the party's business and the party's regularly conducted activities.

6. "**Metadata**" means: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

7. "**Media**" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

8. "**Optical Character Recognition**" or "**OCR**" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

9. "**Hash Value**" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms are known as MD5 and SHA.

10. "**Confidentiality Designation**" means the legend affixed to Documents for Confidential Discovery Information as defined by, and subject to, the terms of the Parties' Discovery Stipulated Protective Order in this Litigation.

11. **"Searchable Text"** means the native text extracted from an Electronic Document and any Optical Character Recognition text ("**OCR text**") generated from a Hard-Copy Document or electronic image.

12. **"Load file"** means an electronic file provided with a production set of document images that facilitate the loading of such information into a receiving party's document review platform, and the correlation of such data in the platform.

13. **"Unitization"** means a set of paper-scanned images or electronically processed files and indicates where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends.

**III.   DATA SOURCES AND CULLING CRITERIA**

1. **Email Threading:** The Parties agree that they may use email threading to narrow the universe of documents for review. Where the most inclusive email (that is, the latest email in a chain) is responsive and non-privileged, the Parties shall use reasonable efforts to produce only the most inclusive email. However, where the most inclusive email contains only privileged or non-responsive information, the Parties shall instead use reasonable efforts to produce the latest email in the chain that contains all of the responsive, non-privileged information from the chain. This Stipulation does not change the Parties' obligation to produce responsive, non-privileged "branches" of an email chain that: (1) are not included in the most-inclusive email; or (2) contain at least one attachment that is different than the attachment(s) to the most-inclusive email. This Stipulation also does not change the Parties' obligation to produce a reasonable number of threaded emails separately, upon request.

2. **Proprietary Software.** To the extent that native files are produced that require proprietary software for access and review, the producing party shall make reasonable

4

efforts to supply the receiving party with a copy of such software to allow the receiving party to review the files or make such files available for review in an alternative format.

3. **Password Protected Files.** The Parties agree to utilize commercially reasonable efforts to open password-protected or encrypted files, including commercially accessible software, when appropriate and feasible.

4. **System Files**. The Parties may exclude system-generated files and folders that are not likely to contain user-created files from their review (e.g., by DeNISTing). If the Parties choose to do so, they will notify each other of that decision prior to production in writing.

5. **De-Duplication Across Custodians**. A Party is only required to produce a single copy of a responsive Document, and a Party shall make reasonable efforts to de-duplicate responsive Electronic Documents and ESI (based on MD5 or SHA-1 Hash Values at the document level) across custodians. The fields upon which the Hash Values of emails are calculated shall be disclosed by the producing party. The producing party will provide a Duplicate Custodian field in the production Load File sufficient for the receiving party to identify each custodian of a particular document that was eliminated through de-duplication. If all recipient custodians are documented for removed documents in the Duplicate Custodian field, the producing party need only produce a single copy of the particular document; however, the receiving party may request a reasonable number of duplicate copies identifying particular custodians. For Documents, prior drafts of documents will not be considered duplicates, although the Parties acknowledge that a draft of a document may be responsive while a final copy is not, and vice-versa. The Custodians will be included (for all available copies of a responsive Electronic document) in the CUSTODIAN and DUPLICATE

CUSTODIAN(S) field in the production Load File. In addition, if the e-mail files were collected directly from the MS Exchange server, outlook.ost files may be excluded from processing as duplicative of outlook.pst files unless only the .ost file version is available.

IV. **FORMAT OF PRODUCTION**

    1. **Electronically Stored Information Not Produced in Native Form**. Unredacted ESI should be produced in a form no less "searchable" than it is maintained in the **normal** course of the producing party's business. ESI will be produced to Defendants in single-page 300 DPI, Group IV TIFF image file format together with a CSV Load File containing the Metadata fields listed in Exhibit A, if applicable (except that the Parties agree that Metadata fields may be redacted on any basis permissible under the Fed. R. Civ. P., Order of Court, or stipulation, so long as redactions are identified as such), and also with an image load file in OPT or LFP format. Document-level full text files will also be produced for each document and include extracted text for unredacted ESI or OCR text for redacted documents. ESI will be produced to Plaintiffs in multi-page, color, searchable PDF file format together with a CSV Load File containing the Metadata fields listed in Exhibit A, if applicable (except that the Parties agree that Metadata fields may be redacted on any basis permissible under the Fed. R. Civ. P., Order of Court, or stipulation, so long as redactions are identified as such), and also with an image load file in OPT or LFP format. Document-level full text files (in .TXT format) will also be produced for each document and include extracted text for unredacted ESI or OCR text for redacted documents. If related documents, such as an email and attachment, are produced, the relationship between the related documents should be preserved. All non-privileged Electronic Documents attached to an email should be produced contemporaneously and sequentially immediately after the parent email.

2. **ESI to be Produced in Native Form**. Excel files, .CSV files, other similar spreadsheet files, databases, photographs, presentation (e.g., PowerPoint) files, and audio or video media files, or other similar file formats where an image file does not adequately represent the files as maintained in the ordinary course, shall be produced in their Native Format, including the formulae imbedded in the spreadsheet and any Metadata contained in the file. A party may request a reasonable number of Word documents to be produced in Native form with comments or tracked changes. The producing party reserves the right to object if the requests become unreasonably onerous. Files produced in Native Format shall be named either with a sequential Bates number followed by the file extension or with a sequential Bates number followed by the Confidentiality Designation, if applicable, and the file extension. A placeholder TIFF or PDF with language "Document Produced in Native" or similar language shall be included for each native file produced. To the extent native files must be redacted, the parties will meet and confer about the reasonably usable format in which production shall be made. To the extent other file formats present specific challenges, the Parties agree to cooperate in good faith to address the format in which those documents should be produced.

3. **Redacted Documents**. The Parties may redact Documents or ESI on the following bases: attorney-client privilege and attorney work-product privilege, non-party privilege, non-party work product, nonresponsive highly confidential personal or business information, or other applicable privilege or immunity from disclosure. Such redactions shall be indicated consistent with the Parties' Stipulated Protective Order. The Parties will indicate in metadata whether there is redaction and include tags in the text of the document indicating (1) Privileged Material Redacted; (2) Personally Identifying Information Redacted; or (3) Nonresponsive Material Redacted. If an Electronic Document is produced in redacted form,

the same metadata fields listed in Exhibit A shall be produced for a redacted document except that fields may be redacted to the extent that they contain redactable data. Neither party waives the right to object to relevance redactions.

4. **Hard-Copy Documents**. Hard-Copy Documents should be produced to Defendants as single-page, black and white Group IV TIFF images (300 DPI resolution) with coded data contained in a separate file. Hard-Copy Documents should be produced to Plaintiffs as multi-page, color, searchable PDF files with coded data contained in a separate CSV Load File and with an image load file in OPT or LFP format. The producing party shall also provide document level OCR text files (in .TXT format) to accompany the TIFF or PDF format production, except Plaintiffs are not required to produce such text for redacted documents. The Parties agree to make reasonable efforts to identify at least the following fields for a scanned Hard-Copy Document: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, DUPLICATE CUSTODIAN(S) (or the substantial equivalent used by a Party's ESI platform) indicating the beginning and ending Bates numbers, attachments ranges of all documents, and the custodian information.

5. **Document Unitization for Hard-Copy Documents**. If a Hard-Copy Document consists of more than one page, the Unitization of the Document and any attachments shall be maintained as it existed in the original Document, so that each document will not be split, but instead the pages thereof shall be sequenced and saved together, as they existed in the original. Pages containing affixed notes, such as Post-Its, will be scanned with and without the note, with the image with the note preceding the image without the note.

6. **Databases, Structured and/or Application ESI**. The Parties shall produce responsive ESI from any relevant database, structured and/or application ESI in a reasonably

useable production format. The Parties agree to meet and confer regarding the appropriate format(s) for production to enable review by all Parties.

7. **Social Media**. Relevant ESI from social media websites (e.g., LinkedIn, Facebook, Twitter) may be produced by capturing responsive information through "screen shots" or "screen captures" and converting same into images along with corresponding extracted text or OCR, unless the Parties agree to perform bulk exports of accounts, such as by exporting out a profile from LinkedIn or downloading a copy of an individual's Facebook data or archive.

8. **Bates Numbering**. Each page of a produced image shall have a unique Bates number electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source Document. Each TIFF image, PDF file, or native file assigned a Bates number shall be assigned a Bates number that is unique and maintains a constant length across the entire document production. No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions. The Parties acknowledge that production of multiple documents at once may at times result in a Bates number that obliterates or obscures information, and they will work together in good faith to address specific issues as they arise.

9. **Confidentiality**. Electronic data produced in discovery may be labeled with Confidentiality Designations pursuant to the Stipulated Protective Order in this matter. In the case of TIFF images or PDF files, confidentiality legends shall be "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source document. The Parties acknowledge that production of multiple documents at once may at times result in a confidentiality branding that obliterates or obscures information, and they

will work together in good faith to address specific issues as they arise. For materials produced in Native Format, the producing party shall supply fielded data identifying the confidential treatment of each document designated for confidentiality or shall name the file with the Bates number followed by the Confidentiality Designation and the file extension. A failure to make a designation through fielded data or a naming of the file may be corrected by notifying the other side of the mistaken designations of confidential materials. Furthermore, nothing in this Stipulation is intended to waive the protections set forth in any Stipulated Protective Order.

      10.     **No Color.** To the extent that the parties agree to produce in TIFF, documents in color need not be produced in color as a matter of course except where production in color is apparently necessary to fully comprehend the document (e.g. where categories are distinguished by different colors of text). A party may request that a reasonable number of specifically-identified documents (e.g., social media posts) be produced in a color .PDF or .JPG format.

      11.     **Production Media**. Documents shall be produced through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission. The Bates Number range(s) of the materials shall be included in an accompanying communication. If a Producing Party encrypts or "locks" a production, the producing party shall send, under separate correspondence, the password for decrypting the files.

**V.**    **PRIVILEGE AND WORK PRODUCT CLAIMS**

      1.     **Privilege Log**. The Parties recognize that Documents may be redacted or withheld on the grounds of attorney-client privilege, work-product doctrine, or other applicable privilege or immunity from disclosure (collectively, "privilege"). The Parties agree that the following documents, if privileged, need not be included on a privilege log: (a)

communications between the Plaintiffs on or after June 18, 2019, and regarding the prosecution or defense of the claims in this matter; (b) documents covered by the attorney-client or work product doctrine created on or after August 15, 2019; and (c) material that is protected by the attorney-client privilege or attorney work product doctrines based on an attorney-client relationship with a non-party if neither Plaintiff worked on the matter to which that document relates. The Parties believe that, where it is necessary to redact material in category "c," it will generally be obvious from the context of the redactions that material in this category has been redacted. While the Parties will make reasonable efforts to identify these redactions, they will not be required to log them. Where material in category "c" is withheld from production entirely (e.g., where such material was attached to a responsive, non-privileged email), the Parties agree that a slip-sheet bearing the label "DOCUMENT WITHHELD DUE TO NON-PARTY PRIVILEGE OR WORK PRODUCT" will be produced in the document's place, and no metadata for that document will be produced.

    2.    **Claw-Back Protection**. The productions of hard-copy documents and ESI are subject to the parties' rights under the Protective Order to be entered by the Court, the practices of this Court, Rule 26(b)(5), and Federal Rule of Evidence 502, to request the return of inadvertently produced discovery.

## VI. <u>MISCELLANEOUS</u>

    1.    **Objections Preserved.** Nothing in this Stipulation shall be interpreted to require disclosure of irrelevant information, information that the Court has ruled is not proportional to the needs of the case, or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties

do not waive any objections as to the production, discoverability, admissibility, or confidentiality of hard-copy documents and ESI.

2.     **No Effect on Cost Shifting.** Each party shall bear its own costs of producing relevant ESI in its possession or control. This provision does not prohibit any party from seeking cost-sharing measures in the event that a particular discovery request is overly broad or unduly burdensome, or in the event that the producing party engages in sanctionable discovery conduct.

3.     **Stipulated Protective Order**. All Documents produced by the Parties will be subject to the terms of the agreed to Stipulated Protective Order entered in this Litigation, including but not limited to the terms regarding secure storage of Protected Material.

4.     **Meet-and-Confer and Modification**.  The Parties acknowledge they have entered this Stipulation in a good-faith effort to facilitate the exchange of ESI and minimize to the extent possible undue burden from electronic discovery.  To the extent either Party concludes that any term of this Stipulation imposes unexpected burden or expense, the Parties agree to meet-and-confer to address any such concern and discuss proposed amendments to this Stipulation.  This Stipulation may be modified by stipulation of the Parties with notice to the Court or by the Court for good cause shown.

Respectfully submitted,                                                                 Dated: July 16, 2021

/s/ *Julia Sheketoff*                                    /s/ *Anderson T. Bailey*
Julia Sheketoff (*pro se*)                          Terri L. Chase (pro hac vice)
2207 Combes Street                                 JONES DAY
Urbana, IL 61801                                      600 Brickell Avenue, Suite 3300
(202) 567-7195                                         Miami, Florida 33131
sheketoff@gmail.com                             Phone: 305-714-9700
                                                                 Email: tlchase@jonesday.com

<div style="display: flex;">

<div>

/s/ *Mark C. Savignac*
Mark C. Savignac (*pro se*)
2207 Combes Street
Urbana, IL 61801
(217) 714-3803
marksavignac@gmail.com

*Plaintiffs*

</div>

<div>

Traci Lovitt (Bar No. 467222)
JONES DAY
250 Vesey Street
New York, NY 10281
Phone: (212) 326-3939
Email: tlovitt@jonesday.com

Christopher DiPompeo (Bar No. 1003503)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Phone: (202) 879-3939
Email: cdipompeo@jonesday.com

Anderson T. Bailey (*pro hac vice*)
JONES DAY
500 Grant Street
Pittsburgh, PA 15219
Phone: (412) 391-3939
Email: atbailey@jonesday.com

*Counsel for Defendants*

</div>

</div>

## **Exhibit A**

| Field | Definition | Doc |
|---|---|---|
| CUSTODIAN<br><br>Custodian | Name of person or other data source (non-human) from where documents/files are produced | All |
| DULICATE CUSTODIAN(S)<br><br>Additional Custodian(s) | Names of other persons or other data sources (non-human) from where documents/files are produced. *Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.* | All |
| BEGBATES<br><br>Begin Doc | Beginning Bates Number (production number) | All |
| ENDBATES<br><br>End Doc | End Bates Number (production number) | All |
| PGCOUNT<br><br>Page Count | Number of pages in the document | All |
| FILESIZE<br><br>File Size | File Size | All |
| APPLICAT<br><br>Document Type | Commonly associated application for the specified file type, or the type of document | All |
| FILEPATH(S)<br><br>File Path+Name | Original file/path of the locations where the item resided at the time of preservation. This should include location, file name, and file source extension, if practicable. | All |
| NATIVEFILELINK<br><br>Native File Link | File path for documents provided in native format | All |
| TEXTPATH | File path for OCR or Extracted Text files (as appropriate given the format of production) | All |

| Text File Link | | |
|---|---|---|
| FILE NAME<br><br>File Name | Original file name of the item | All |
| FILETYPE<br><br>File Type | Application that created the file e.g., Word, Outlook, Excel, Adobe, or the file extension type | All |
| FILE EXTENSION<br><br>File Type | Extension of the file e.g., .docx, .pdf, .xlsx, .msg | All |
| EMAIL FOLDER(S)<br><br>Email Folder Path | Folder location of the email within the PST/OST | E-mail |

| FROM<br><br>Email From<br>Email From Address | Sender's Name and Sender's Email Address, to the extent this information automatically populates | E-mail |
|---|---|---|
| TO<br><br>Email To<br>Email To Address | Recipient's Name and Recipient's Email Address, to the extent this information automatically populates | E-mail |
| CC<br><br>Email CC<br>Email CC Address | Additional Recipients' Names and Email Addresses, to the extent this information automatically populates | E-mail |
| BCC<br><br>Email BCC<br>Email BCC Address | Blind Additional Recipients' Names and Email Addresses, to the extent this information automatically populates | E-mail |
| SUBJECT<br><br>Email Subject | Subject line of e-mail | E-mail |
| PARENTBATES<br><br>Begin Family;<br>End Family | BEGBATES number for the parent e-mail of a family (will not be populated for documents that are not part of a family) | E-mail |
| ATTACHBATES<br><br>Begin Attach | Bates number from the first page of the first attachment | E-mail |
| End Family | Bates number from the last page of each family | |
| BEGATTACH<br><br>Begin Family | First Bates number of family range (i.e. Bates number of the first page of the parent e-mail) | E-mail |
| ENDATTACH<br><br>End Attach | Last Bates number of family range (i.e. Bates number of the last page of the last attachment) | E-mail |
| Family ID | Control number that identifies members of a document family | Email |

| | | |
|---|---|---|
| DATESENT (mm/dd/yyyy hh:mm:ss AM)<br><br>Email Sent Date; Email Sent Time | Date Sent | E-mail |
| DATERCVD (mm/dd/yyyy hh:mm:ss AM)<br><br>Email Date Received Email Time Received | Date Received | E-mail |
| Email Thread ID | | E-mail |
| HASHVALUE<br><br>Hash | MD5 hash value (or alternatively agreed upon hash) for Edocs, e-attachments and e-mail, computed at the time of processing | All |
| TITLE<br><br>File Title | Internal document property | Edocs |
| AUTHOR<br><br>File Author | Creator of a document | Edocs |
| DATECRTD (mm/dd/yyyy hh:mm:ss AM)<br><br>File Date Created; File Time Created | Creation Date | Edocs |
| LASTMODD (mm/dd/yyyy hh:mm:ss AM)<br><br>File Date Last Modified; File Time Last Modified | Last Modified Date | All |
| LASTMODBY<br><br>File Last Saved By | | All |

| | | |
|---|---|---|
| Redacted<br><br>Redaction Label Summary | For documents that contain redactions, tags indicating (1) Privileged Material Redacted; (2) Personally Identifying Information Redacted; or (3) Nonresponsive Material Redacted | All |
| Confidentiality | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation. | All |