1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
2

3    MARK C. SAVIGNAC, et al.,
                                        Civil Action
4              Plaintiffs,             No. 1:19-cv-2443

5         vs.                          Washington, DC
                                       July 29, 2021
6    JONES DAY, et al.,
                                        2:16 p.m.
7              Defendants.
     _____/
8

9            TRANSCRIPT OF TELEPHONE CONFERENCE
          BEFORE THE HONORABLE RANDOLPH D. MOSS
10             UNITED STATES DISTRICT JUDGE

11
     APPEARANCES:
12
     For the Plaintiffs:    MARK C. SAVIGNAC
13   (Pro Se)               JULIA SHEKETOFF
                              2207 Combes Street
14                            Urbana, IL 61801

15
     For the Defendants:    TERRI L. CHASE
16                            Jones Day
                              250 Vesey Street
17                            New York, NY 10281

18                          ANDERSON BAILEY
                              Jones Day
19                            500 Grant Street, Suite 4500
                              Pittsburgh, PA 15219
20

21

22
     Reported By:           JEFF M. HOOK
23                            Official Court Reporter
                              U.S. District & Bankruptcy Courts
24                            333 Constitution Avenue, NW
                              Room 4700-C
25                            Washington, DC 20001

1          **P R O C E E D I N G S**

2          **DEPUTY CLERK:**  This is civil action 19-2443, Mark

3     Savignac, et al., vs. Jones Day, et al.  Plaintiffs are both

4     on the line and appearing pro se.  Also on the line for

5     defendants, Anderson Bailey and Terri Chase.

6          **THE COURT:**  Well, good afternoon everybody.  As

7     usual, let me remind you that it's not permitted to record

8     or to rebroadcast these proceedings, and I'll order that

9     nobody do so.  In addition, please mute your microphones

10    when you're not speaking; please speak into the microphone

11    when it's your turn; and please introduce yourself by name

12    each time you speak.

13         So I think it was plaintiffs who requested today's

14    discovery conference, is that correct?

15         **MS. SHEKETOFF:**  Your Honor, this is Julia

16    Sheketoff.  The defendants requested this conference.

17         **THE COURT:**  Okay.  So Ms. Chase, are you speaking

18    on behalf of defendants today?

19         **MR. BAILEY:**  Your Honor, this is Anderson -- oh,

20    excuse me, Terri.  Your Honor, this is Anderson Bailey.

21    I'll be presenting for the defendants.

22         **THE COURT:**  Okay.  Well, why don't you go ahead,

23    then.

24         **MR. BAILEY:**  Before I do, your Honor, I just want

25    to note that I believe there's a public line that's been

1    connected to the hearing.  There may very well be some

2    discussion about documents that were submitted in camera.  I

3    think it would be best for all concerned if we are able to

4    somehow disconnect the public line.

5        **THE COURT:**  I guess I would rather not disconnect

6    the public line, because I just think there's a public right

7    to know what's going on in these proceedings.  If there is a

8    point in the proceeding in which you need to refer in

9    specific to what's in one of those documents, we may need to

10   disconnect it at that point in time.  But I've read through

11   the materials and I know what's in there.  If you can refer

12   to them in more general terms, that would be fine.  As I

13   said, maybe towards the end of this, if we need to go into a

14   closed session, that's fine as well.  But I think that we

15   should do as much of this as we possibly can on the public

16   docket.

17       **MR. BAILEY:**  Understood, understood.  The last

18   time we were before the Court about these documents, the

19   plaintiffs took the position that the content was so

20   sensitive that the Court needed to take special precaution

21   to protect the individuals involved from the harm that would

22   come if these documents were disclosed to the defendants in

23   this case, to certain defense counsel or to anyone else.

24       Now, after your Honor held that the concerns about

25   potential retaliation were speculative and without

1    evidentiary basis, we asked the plaintiffs to confirm that
2    they would at least consider those documents to be
3    confidential under the parties' agreed upon protective order
4    which would prevent public filings and require some meet and
5    confers or discussion between the parties in the event
6    anyone felt that a particular document was germane to a
7    motion or something of that nature such that it should be
8    filed.  The plaintiffs refused to agree to that despite
9    their earlier concerns.  They are now of the view that they
10   have the right to file these documents publicly
11   notwithstanding any harm that it may cause to the third
12   parties they supposedly were trying to protect when we were
13   before your Honor last month.

14          So I didn't really understand the about-face, but
15   the fact remains that these documents contain a lot of
16   information that is both highly personal, concerns third
17   parties, many of whom -- or at least some of who are no
18   longer with Jones Day.  They concern information about
19   client matters that Jones Day handled on behalf of third
20   party clients.  Some of the information I think would be
21   quite embarrassing for the people involved, including third
22   parties, should it come to light.

23          The appropriate thing to do, given the nature of
24   this information, is simply to agree or to order that it be
25   considered confidential; and that plaintiffs be

1    prohibited -- all parties be prohibited from publicly filing

2    the documents.  And again, as would ordinarily happen in

3    most civil litigation, if there is an issue and one side

4    feels that a document is relevant and should be submitted to

5    the Court, the parties can work collaboratively to figure

6    out how that can be done as efficiently as possible and

7    without any unnecessary intrusion to third parties.

8        So under the terms of the protective order, we

9    have two days to seek a conference with your Honor once the

10   plaintiffs refused to agree that they would treat these

11   documents confidentially.  But that's the nature of the

12   request for this conference.  Your Honor's familiar with the

13   documents.  I won't go into any detail here, but I think the

14   contents speak for itself.  And there's absolutely no reason

15   why any of that needs to be publicly filed.

16       What we're talking about here is completely

17   irrelevant to the transactions at issue in this case.  None

18   of the people involved in those communications were decision

19   makers, were involved in any decision making affecting the

20   plaintiffs.  None of them have percipient information about

21   those decisions.  We're talking a lot -- about a lot of

22   hearsay, double hearsay, triple hearsay, innuendo; frankly,

23   somewhat juvenile gossip mongering and name calling.

24       And again, this involves not the defendants, but

25   third party attorneys and former attorneys at Jones Day.

1    Given the total lack of relevance to this, given the nature

2    of the communications, we think it appropriate that they be

3    considered confidential and that all parties be restricted

4    from publicly filing them in the case.

5        **THE COURT:**  When you say -- I'm sorry, when you

6    refer to they, are you referring only to the I believe

7    samples that were included in the in camera filing with the

8    Court?  I mean, if I were to agree with you and say, okay,

9    these should be confidential, how do I actually describe the

10   substance of the -- or the scope of the materials at issue

11   for purposes of such an order?

12       **MR. BAILEY:**  Your Honor would just describe it as

13   the 35 pages submitted in camera on June 7th.  The fact is,

14   in discovery -- in formal discovery in this case, the

15   plaintiffs have produced a total of seven pages of

16   documents.  All of them are W2s or other financial

17   information.  I have no idea what else they have.  I haven't

18   seen it, they haven't produced it.  If this issue comes up

19   with other documents, we will have to address it at that

20   time under the terms of the protective order.  All I have

21   received in any fashion are the 35 pages that were submitted

22   on June 7th.

23       So I think your Honor's order can just be tailored

24   to those 35 pages, but with the understanding that as the

25   plaintiffs eventually make some productions, if they include

1    other materials like this, we're going to review that; and

2    if we have an issue, we're going to raise it with the

3    plaintiffs.

4         **THE COURT:**  Okay.  Ms. Sheketoff.  I think you may

5    be on mute if you're speaking now.

6         **MS. SHEKETOFF:**  I'm very sorry, I was.  I wanted

7    to start with talking about our supposed about-face here.

8    The purpose of the AEO motion we filed was to protect these

9    people from Jones Day.  That interest is now not here

10   because the Court denied our motion.  And from what I

11   understand, Jones Day has shared those texts with Jones Day

12   leadership.  The interest that we're talking about now is

13   the public right of access to what goes on in this case, and

14   that's the only thing that's at issue before this Court;

15   whether the Court should confer on Brogan and Jones Day a

16   special, and to my knowledge entirely unprecedented, control

17   over me and my text messages to shield them from what they

18   say would be embarrassing to them or other people.  I'm not

19   aware of a single decision ever entering such a order.

20        The Court addressed this exact issue at length in

21   the June 4th conference.  The Court there distinguished

22   between nearly embarrassing documents which should be filed

23   on the public docket, and documents containing

24   attorney-client or proprietary or private medical

25   information which shouldn't be.  So the Court explained --

1  and I'm quoting, that it was, quote, "sympathetic to what

2  may be the plaintiffs' concern here is that this could just

3  be used as an opportunity to sort of tie their hands with

4  respect to filings in ways that it's just excluding

5  embarrassing information instead of information that's

6  attorney-client privileged or medical records of another

7  individual or the sort of proprietary information belonging

8  to the law firm that I'm talking about."  And that's from

9  page 43 of the June 4th conference transcript.

10         The Court said -- and now I'm quoting from page

11  37, quote:  "If it's people's opinions about Jones Day

12  partners or others who were working at Jones Day, I don't

13  see a problem.  If it's about allegations of mistreatment

14  that don't touch on confidential information like client

15  communications, I don't see a problem."  And then when I

16  described that I had, quote, "text messages about Partner A

17  and how incompetent he was, and how he was a horrible

18  writer," the Court said, quote, "I don't think that that's

19  proprietary information."  So the Court has fully decided

20  this exact issue.

21         This is all --

22         **THE COURT:**  I'm sorry, saying that that's not

23  proprietary information is one thing.  I mean, you know, I

24  guess I would want to better understand why you think it

25  would be appropriate to put on a public docket or file

1    things publicly that would be embarrassing and perhaps very

2    unfair to that individual in which people are commenting

3    perhaps correctly, perhaps incorrectly, about that person's

4    abilities and talents as a lawyer.  I guess it is not

5    entirely clear to me what relevance those comments actually

6    have to this case.

7         If you just put yourself in the shoes of that

8    individual, it could be very damaging to that individual.

9    You've expressed concerns about other individuals here.  I

10   mean, it's hard to imagine that it wouldn't be damaging to

11   that person in their personal capacity.  Putting aside how

12   Jones Day may feel about this, it may not be well taken --

13   it may or may not be well taken, but it is something that

14   none of us would like to see somebody putting on a public

15   docket about us in a case.

16        **MS. SHEKETOFF:**  I think that that may be true,

17   that we wouldn't like it.  A couple things.  One, I think

18   that to the extent your Honor's concern is individual

19   partners who are not relevant, directly relevant to the

20   specific issues, we can redact the name of whatever partner

21   that is.  Now, I don't think that all of this would be

22   irrelevant.  So, for example, I think exchanges about how

23   incompetent Partner A is are very relevant, because that

24   goes to whether he really was genuinely trying to improve

25   our work product together because he really did think that

1    he had a lot to offer and was genuinely trying to help

2    improve the work product or whether he was insecure and was

3    lashing out and was not doing it in the spirit of trying to

4    improve our work.

5         I think that --

6         **THE COURT:**  I'm not sure the text messages that

7    we're talking about here necessarily -- I mean, I'd be very

8    surprised if they ended up being admissible in that regard.

9    I don't know what theory your view is -- you know, there's

10   expert opinion, lay opinion, you know, what the basis or

11   foundation is for that.  I mean, there's people saying nasty

12   things about somebody, but you have a pretty high hill to

13   climb before any of that would come into evidence in the

14   case.

15        **MS. SHEKETOFF:**  I think a lot of it would go

16   directly to my good faith.  Jones Day has made the

17   allegation that I don't actually believe that this happened.

18   I think all of these text messages, my contemporaneous

19   interactions with --

20        **THE COURT:**  But I don't think your good faith is

21   at issue here.  Why is your good faith at issue?

22        **MS. SHEKETOFF:**  Do you mean in the lawsuit or in

23   the text messages?

24        **THE COURT:**  In the lawsuit.

25        **MS. SHEKETOFF:**  Because Jones Day filed a press

1    release saying that I was in bad faith, and --

2         THE COURT:  I'm asking in the lawsuit.  I mean,

3    give me a legal argument.  What is the legal relevance of

4    your good faith in the claims that you've asserted?

5         MS. SHEKETOFF:  We're bringing a retaliation claim

6    in part based on their unlawful press release against us

7    where we said that their press release has false and

8    malicious statements, including that I made the claim about

9    Partner A in bad faith.  That has already been the subject

10   of a motion to dismiss, and the Court said that that is a

11   valid retaliation -- you know, or a plausible retaliation

12   claim.  And so part of what is very much at issue in the

13   case is whether it was in good faith, and these texts go

14   directly to that.

15        THE COURT:  Well, let me cut through this.  Would

16   you be amenable to agreeing that if you do publicly disclose

17   these e-mails or make public use of the e-mails, that you

18   will redact the names of all of the individuals on anything

19   that's filed on the public docket other than your name?

20        MS. SHEKETOFF:  Yes.

21        THE COURT:  Well, let me ask, Mr. Bailey, does

22   that address the concern?

23        MS. SHEKETOFF:  Your Honor, can I say one other

24   thing?

25        THE COURT:  Yes.

1          **MS. SHEKETOFF:**  I do want to be clear, we have

2     kept that partner's name secret throughout.

3          **THE COURT:**  I understand, that was one of the

4     reasons I asked because I know you have done that.

5     Mr. Bailey, would that address your concern so long as -- I

6     mean, I suppose it's also possible that there's some other

7     minimal identifying information that describes this person

8     with some specificity, their practice area or the year that

9     they made partner or something like that in a way in which

10    someone could in a minute on the internet figure out who the

11    person is.

12          But assuming you redact the person's name and any

13    of that other identifying information, does that address

14    your concerns -- those personal names?  Because I think the

15    other people involved in these text exchanges also may -- I

16    don't know, they may consent and they may not object.  I

17    don't know the answer to that, how they would feel about

18    releasing some of this stuff.  I suspect some of them would

19    not be very happy about it.

20          **MR. BAILEY:**  I suspect the same way, your Honor,

21    but I don't think redacting the names fully satisfies the

22    concern here for a couple of reasons.  One, these documents

23    are going to live on the docket forever.  As other

24    information gets disclosed, as the case progresses, as

25    summary judgment gets filed, there's going to be a lot of

1    other information on the docket, and it's going to be I

2    think easy to start piecing things together.  Particularly

3    when you're talking about things like dates or personnel

4    moves, people who may no longer be with Jones Day, things of

5    that nature.  So I just think the risk is too high given the

6    nature of this material, and it's also completely

7    unnecessary.

8         The second thing is that some of these

9    communications aren't just about the identity of the people

10    involved, but they concern, for instance, client

11    relationships, things that clients said.  The client's not

12    necessarily identified, but the content of the

13    communications or the supposed communications -- because all

14    of this, again, is double and triple hearsay.  But the

15    content of the communications, the descriptions and

16    characterizations of the client relationships, I think none

17    of that should be -- none of that should be publicly filed

18    either.  Simply redacting the names doesn't cure the problem

19    there.  So I don't think redaction is the easy answer here.

20         And again, none of this stuff is actually relevant

21    to anything.  If there is down the road a situation where

22    the plaintiffs feel they need to file a particular text

23    message or something of that nature, we could address it

24    then in context with whatever the dispute is of the moment

25    and why they need it, and whether we can agree on something

1    reasonable to make sure that there's an appropriately

2    supported motion.  But that I think is the reasonable way to

3    approach this as opposed to saying divorced of any context,

4    divorced of any actual dispute that these documents

5    supposedly support or oppose, that the plaintiffs can file

6    them whenever they want, however they want just so long as

7    they redact some of the names of the people involved.

8    There's too much other indicia of identification given a lot

9    of the other circumstances, and there's certainly some

10   information that implicates these client relationships.

11           So I think the better course now is just to say,

12   as we would with the document that Jones Day was producing,

13   this is a confidential document and should be treated as

14   such under the protective order.  If there is a scenario

15   later down the road, the parties can address it then, meet

16   and confer about it.

17           **THE COURT:**  Ms. Sheketoff.

18           **MS. SHEKETOFF:**  Your Honor, I think that gets the

19   presumption in favor of public access directly backwards.

20   The general presumption is that there's a, quote, strong

21   presumption in favor of public access to judicial

22   proceedings.  There are six factors under Hubbard which I'd

23   be happy to discuss with you.

24           **THE COURT:**  No, no, before you get -- I mean, I'm

25   familiar with all that.  But before you get to that, isn't

1    this all in some sense premature?  Do you have any plans in

2    the near future to file any of those on the docket?

3            **MS. SHEKETOFF:**  I don't think this is premature.

4    This is the set out procedure in the protective order.  I

5    think that these documents very well could be relevant -- or

6    they definitely are relevant to summary judgment.  I think

7    some of them may be relevant to the damages and punitive

8    issue that we're briefing next month.  But I think more

9    importantly, this is just a very clear, straight forward

10   legal issue that's teed up for you now.  There's no right

11   for defendants to put a gag order on our own communication

12   simply because they're embarrassing.  I've already -- we've

13   made clear that --

14           **THE COURT:**  They're not your own communications,

15   because there are people on the other side of the

16   communications as well, correct?

17           **MS. SHEKETOFF:**  Well, I mean that they're

18   communications that I possess.  They are not things I got

19   through the discovery process.

20           **THE COURT:**  Right.

21           **MS. SHEKETOFF:**  It is happenstance that defendants

22   have a copy of these right now simply because we sought the

23   in camera -- we filed the in camera filing to try to get an

24   AEO order.  But there's no reason directly --

25           **THE COURT:**  It's more than happenstance, because I

1    assume that you're going to promptly have to disclose in

2    discovery everything that you have that's relevant or that

3    you might use in the case.  It's not as though -- it may be

4    happenstance that it's today rather than two weeks from now,

5    but it's something you're going to have to disclose in any

6    event, right?

7        **MS. SHEKETOFF:**  I think that is likely true.

8    Although it is interesting that Mr. Bailey is now saying all

9    of these things are entirely irrelevant to the merits

10   issues.  But regardless, my point is that these are not

11   things that were produced through discovery, they are things

12   that belong to me.  When you text someone, it's not that you

13   have this absolute expectation of privacy.  But more

14   importantly, I would certainly redact the names of the

15   senders of the text messages.

16        And as your Honor knows, we have very much sought

17   to protect these people -- again, from Jones Day, who we

18   thought was the threat.  I don't think the threat is of

19   public access in general.  But here, I don't think it would

20   be appropriate to say, oh, Jones Day gets to put an entire

21   gag order on basically any -- I mean, I'm not really sure

22   why the rule or the principle would stop here.  There's no

23   difference between them saying, oh, they shouldn't be able

24   to file these 37 text messages subject to them asking us

25   permission versus just in general show us all of your

1    evidence before you file anything, because some of that

2    might be quite embarrassing.

3            **THE COURT:**  I think the concern that Jones Day is

4    raising is that they will be filed on the public docket not

5    because you think that they are critical evidence in the

6    case, but because you're trying to embarrass Jones Day or

7    some of the individuals involved.  I think that's the

8    concern they're raising.  I don't know whether it's a valid

9    concern or not.  But as I understand it, that's what they're

10   saying here.  They're saying that under the rules of civil

11   procedure, the Court can and should preclude somebody from

12   engaging in conduct that is intended to embarrass.

13           **MS. SHEKETOFF:**  If your Honor felt that we had

14   done something inappropriate, I expect that your Honor would

15   take appropriate action.  But we certainly have done nothing

16   to suggest that we are intending to embarrass Jones Day.  We

17   think that this information is quite relevant.  Again, we

18   have redacted at every stance in this case -- or at every

19   turn in this case, the names of everyone except the

20   individual named defendants.  So I don't see that as

21   accurate.

22           But I think that also raises the issue of that

23   seems to be Jones Day's merits argument here:  Oh, they're

24   just out to embarrass us, that's what they've been doing all

25   along.  Well, that's not correct.  And I think it would be

1    quite inappropriate -- or it is quite inappropriate to ask

2    the Court to adopt that merits argument and forbid us from

3    filing evidence that we think is very relevant.  Again,

4    particularly without having any names attached to those text

5    messages, I don't see how this could be such a compelling

6    interest as to outweigh the public right of access.  I think

7    the case law really does make clear that that's the

8    standard.

9         Again, I would say I've never seen a single case

10   in any court where someone -- where the other side is trying

11   to put a gag order on the public filings of things that

12   belong -- of communications that were obtained outside the

13   discovery process and --

14        **THE COURT:**  I can point you to a case where I

15   entered such an order myself within the past six or nine

16   months in a case in which someone filed something that was

17   inappropriate and embarrassing on the docket that they

18   possessed.  I struck the filing and didn't permit them to

19   file it on the public record -- on the public docket.  So I

20   think there are cases out there.

21        Let me get back to this question I had about the

22   timeliness of this.  When I say premature, I'm not saying

23   that you are improperly raising the issue now.  I'm just

24   asking as a practical matter, when is this likely to have

25   consequences?  When is the next time you're going to be

1    filing something on the docket that could include this?

2           **MS. SHEKETOFF:**  I think it is possible that this

3    would come up in the damages brief.  I mean, one of the

4    issues that Jones Day is raising is that Mark is -- it's

5    just way too speculative to suggest that Mark would have

6    made partner, and so we don't even have to allow discovery

7    into whether he would have made partner let alone what his

8    damages would be.  I think the fact that -- I don't want to

9    get too much into the text messages on the public line, but

10   many of these talk about the standards for partnership.  And

11   I think that they're directly relevant to that.

12          But I guess more fundamentally, this is a

13   procedural barrier that Jones Day is attempting to erect

14   that is very burdensome on two pro se litigants.  I don't

15   think there's good cause for -- it's not just good cause, I

16   don't think it is appropriate under the doctrine about the

17   public right of access grounded in the common law in the

18   First Amendment.  And so I think it's a very straight

19   forward issue.  The Court addressed --

20          **THE COURT:**  You're kind of -- you sort of keep

21   alliding my question.  Understand that I'm not saying that

22   it's improper for you to raise it or that under the

23   protective order it's not timely, and I'm not saying that

24   it's not a legal question.  I'm just trying to -- as a

25   practical matter trying to figure out whether you really

1    have -- whether this actually really is a live controversy

2    now or whether this is something that we need to resolve

3    down the road.

4         MS. SHEKETOFF:  Well, I think it is a live

5    controversy now.

6         THE COURT:  If I remember those e-mails correctly,

7    the notion that they would go to Mark's damages strikes me

8    as -- I mean, if that's what you're relying on in that

9    motion, you're going to have a tough road because they're

10   really -- I mean, to the extent they touch on at at all,

11   it's pretty indirectly in a highly speculative, sort of

12   hearsay way.  But they don't discuss -- well, I won't get

13   into the details on the public line.  There may be something

14   there, but if there is, it's not much and is something that

15   could easily be filed perhaps with some redactions to get at

16   anything that relates to Mark's likelihood of making

17   partnership.

18        MS. SHEKETOFF:  I think -- sorry, I think I'd be

19   happy to make relevant redactions to ensure the identity of

20   the people we're talking about is removed.  But I do think

21   it is relevant to the question of -- you know, Jones Day has

22   represented that it's so speculative because Mark was quote,

23   unquote not exceptional.  I don't think that is the standard

24   for partnership at Jones Day.  And I don't think that these

25   texts are simply hearsay.

1          I believe that they -- you know, that they're

2    statements of a party opponent, because these are partners

3    of Jones Day speaking in their -- one at the time a partner,

4    one at the time an associate, speaking in their capacity as

5    employees or partners of the firm.  But moreover, hearsay

6    evidence, to the extent that it will ultimately be available

7    in non hearsay form at trial, is permissible in a summary

8    judgment motion.  And I think there's no reason it wouldn't

9    be similarly permissible in this upcoming brief.

10         But I guess if I could just back up and say one

11   more time, I think that right -- what Jones Day is saying

12   now is that for no purpose -- or for any future brief or

13   filing that you want to do that touches on this information,

14   you need to come to us first; or basically that the Court

15   should enter a permanent order saying you cannot file this

16   publicly.  So no matter how directly relevant we think it

17   is, and no matter even if the Court maybe relies on it or

18   agrees that, yes, this is absolutely relevant to Julia's

19   good faith or to Mark's termination, whether it was

20   retaliation, that that should be sealed from the public.

21   That's just not consistent with the case law.

22         And I haven't seen your order, but I think maybe

23   one distinction in that case and here is that maybe in that

24   case, what was filed was actually really not relevant to an

25   issue.  But here, Jones Day is seeking a blanket restriction

1    before we file anything.  That's what I mean, it's not

2    precedented -- and that's for embarrassment reasons only.  I

3    don't think Mark or I have ever done anything I hope to

4    cause you to think we're in the habit of filing irrelevant

5    information.  I think we've proven that we don't do that.

6            So I don't think there's any reason to attribute

7    to us a motive or -- yeah, a motive to do that kind of thing

8    here simply to embarrass them.  I don't think the case law

9    would permit that.

10            **THE COURT:**  All right.  Mr. Bailey.

11            **MR. BAILEY:**  So a few points, your Honor.

12    Ms. Sheketoff referenced the public right of access several

13    times.  That's exactly what the plaintiffs were trying to

14    abridge when they came to the Court and asked for an

15    attorney's eyes only provision.  It would block it not only

16    from the public, but from the defense and defense counsel.

17    That's the about-face that I'm talking about.

18            I think your Honor understands the relevance

19    points, but just to hit on an additional point there.  I

20    don't agree with any of the characterizations of Partner A

21    in these communications.  But to the extent that the

22    accusation is that he is incompetent or that he is insecure,

23    none of that is discrimination.  That's actually favorable

24    to the defense of this case.

25            **THE COURT:**  Well, that's a merits argument.  I

1    think what Ms. Sheketoff is saying is that, one, I think

2    perhaps that the qualifications of that person in her view

3    go to the likelihood that Mark would have made partner.  I

4    think that's a bit of a stretch I have to say, but it's an

5    argument they're entitled to make.

6         And the other point I take it that she's trying to

7    make -- or that they would like to make is that the

8    evaluations of her were unfair.  They were unfair because of

9    that partner's insecurity, but that partner took out his or

10   her insecurity in a way in which the insecurity weighed in

11   favor of accepting whatever male associates may have

12   produced and saying it's great work, and in the case of a

13   female associate, having the opposite reaction.  I take it

14   that's what the argument is and what they'd like to use this

15   to argue.

16        **MR. BAILEY:**  If that's their theory, they can make

17   that argument.  But it's pretty far afield from I think what

18   one would normally expect to see in a discrimination case.

19   It's a really attenuated way to try to tie these

20   communications in with the actual claims in the case.  But

21   I'll move on, because there were a couple of other points I

22   wanted to address.  One is about the sort of threat about

23   trying to embarrass Jones Day.

24        We can go back and look at Mr. Savignac's

25   January 2019 e-mail when he explicitly threatened to sue the

1    Court in -- to sue Jones Day in the court of public opinion.

2    We can go look at their filing even yesterday where they are

3    making accusations about the positions Jones Day is taking

4    in reserving the right to fire people based on what we see

5    in documents.  That's something that the Court corrected

6    them on at the June conference we had.

7         So we see an incredible amount of animosity

8    frankly of a personal nature directed at the defendants

9    here, and we have significant concern that there will be a

10   motive to file documents on ECF solely to embarrass Jones

11   Day or its attorneys or staff.

12        **THE COURT:**  If they do that, why can't you just

13   file a motion for sanctions?  I realize the cat's out of the

14   bag a little bit.  But Mr. Savignac and Ms. Sheketoff are

15   smart lawyers, and it strikes me as unlikely that they would

16   invite that risk knowing that Jones Day would be prepared to

17   file a motion seeking a sanctions order if they did so.

18        So why isn't that an adequate check on that type

19   of behavior?

20        **MR. BAILEY:**  Well, two things, your Honor.  One,

21   as you said, the cat's out of the bag, right.  I think --

22        **THE COURT:**  Also, I guess my other point is that

23   they're smart lawyers, they care about their reputations.

24   Why would they risk a potential sanctions order if they

25   really thought something was not relevant in the case.  I

1    mean, they're certainly aware that Jones Day might file such

2    a motion if they -- if Jones Day could show that the

3    material was filed just for the purposes of embarrassment or

4    harassment.  I think it's safe to assume that they care

5    enough about their professional reputations that they

6    wouldn't run that risk unless they felt they had a good

7    faith basis for filing the material.

8         **MR. BAILEY:**  That gets me to my second point,

9    which is that their position is that they are free to file

10   any of this publicly.  If the only check on this is some

11   concern that we may file a motion for sanctions because they

12   did something with an improper motive, that's going to be a

13   pretty tough burden for us to meet I think.  And it's going

14   to be a side issue about their motive that is not going to

15   be central to the claims and defenses in the case.  So the

16   cat's out of the bag, and all of a sudden we've got this big

17   issue blowing up.

18        The plaintiffs' position is that it's their

19   documents, it's their communications, and they can do

20   whatever they want with them; that the Court can't prevent

21   them from filing it publicly; nobody can do anything; they

22   have the right to share them whoever whenever they want to.

23        **THE COURT:**  Can I ask you about the cat being out

24   of the bag.  If the redactions along the lines I've

25   indicated as well as redactions relating to any

1    identification of clients or client communications are made

2    from the documents, is there really a cat let out of the bag

3    here?  I mean, the bulk of what's at issue is something that

4    we've already discussed on the public line here now, and

5    that is in the plaintiffs' complaint in this case.  The

6    plaintiffs have publicly characterized -- I can't remember

7    if they refer to the individual as Partner A or how they do

8    so, but they've made the allegations already publicly about

9    Partner A.

10        There is some other material in the e-mails which

11    is in the nature of conclusory assertions with respect to

12    things that have occurred at Jones Day that doesn't strike

13    me as cat's out of the bag kind of stuff where if it were

14    released with the redactions of the names, identifying

15    information and client communications, I mean, how does that

16    differ from any ordinary discrimination case?  People say

17    things that are embarrassing about defendants and make

18    accusations in discrimination cases that may or may not be

19    proven at the end of the day, but that happens all the time.

20        MR. BAILEY:  Let me answer that this way -- and to

21    take up your Honor's last point, what happens all the time

22    in my experience, as was our experience in the Tolton

23    litigation, and as has been my experience throughout my

24    career frankly, is that the parties agree to an orderly

25    process.  They agree that they can cross-designate each

1    other's documents as confidential and then follow a

2    procedure.  Some of --

3              THE COURT:  I'm sorry, you say that's done

4    ordinarily, the parties agree that they can cross-designate

5    one another's documents as confidential?

6              MR. BAILEY:  Yes, that was --

7              THE COURT:  That strikes me as -- I mean, I don't

8    remember in my years of practice ever sort of discussing

9    that sort of on the checklist of things saying yes, I want

10   to make clear I can designate your documents as

11   confidential.  Maybe it comes up sometimes, but I would be

12   surprised if that would be on your Rule 26 checklist.  And

13   I've now read hundreds of Rule 16 and Rule 26 reports from

14   parties with respect to the conduct of discovery, and I

15   don't remember ever seeing in that, oh, and by the way,

16   we've agreed we can cross-designate each other's documents

17   as confidential.

18             MR. BAILEY:  Those are the terms of the Tolton

19   protective order.  I don't have a lot of others at my

20   fingerprints, but I'm sure I can submit them if you'd like.

21   But it is common practice, because it gives both sides

22   reasonable assurance against any unnecessary intrusion.  And

23   what happens is if somebody needs to use a document that any

24   party has designated as confidential, there's a meet and

25   confer process and people act reasonably.  And this is what

1    we went through consistently in the Tolton litigation.

2    There was a process, we discussed what they needed, what

3    they wanted to file.  We figured out what redactions would

4    make it amenable to all sides to have that document filed

5    publicly.  And your Honor never saw any of that, the issues

6    never got to the Court, because the parties could agree on

7    things.

8            So at a minimum, I think that's the appropriate

9    way to handle this.  If the plaintiffs are given carte

10   blanch to make redactions whatever they think is

11   appropriate, they may not know things that we know that

12   could be identifying indicia.  They may not have context

13   that we have that we would also want appropriately to be

14   redacted before the document is filed publicly.

15           So if the solution to all of this is, yes, the

16   documents should not be filed publicly; if you need to file

17   it publicly, let's just have a meet and confer process and

18   agree on redactions; and if both sides should be reasonable

19   and behave as -- with the interest of just getting the

20   document filed publicly and moving on, then I think that's

21   an acceptable outcome.  But to say that plaintiffs can file

22   the documents whenever they want, I think that is hugely

23   problematic and quite intrusive for all the reasons we've

24   discussed.

25           THE COURT:  I'm sorry, I mean, I understand why it

1    may be not an orderly process, but I don't understand why

2    it's hugely problematic in the way that you say.  Because

3    you just conceded, I think correctly, that if plaintiffs

4    came to you at the summary judgment stage and said we want

5    to -- we intend to use these documents, that you would meet

6    and confer about that and you would discuss redactions and

7    agree upon appropriate redactions.

8            We're talking about 35 pages of materials right

9    now.  I realize that it may be far from the most efficient

10   way to proceed -- and I have to say, that's been true of

11   this litigation in ways that I think are highly regrettable.

12   But it would not be hugely problematic to say you have to

13   sit down today with them or tomorrow or the next day, and go

14   through the 35 pages and say here's what we think is the

15   identifying information and we think it should come out;

16   here is client communications or information relating to

17   clients that we think should come out, and reach agreement

18   on that.  That may be inefficient if they're not going to

19   actually use it, but they tell me they are going to use it.

20   Therefore, you're going to have to do that one day anyway.

21           **MR. BAILEY:**  I may have misspoke, your Honor.  I

22   didn't mean to suggest that it was problematic to do that

23   now; we're happy to do that now.  I mean it's problematic to

24   not have a meet and confer process at all and just trust one

25   side to do it the right way.  I think it should be more

1  collaborative than that.  I think both sides have interests

2  here, and I think ours should be represented in the process

3  of agreeing what the redactions should be.

4       **THE COURT:**  So I think that's a fair point.  So

5  this is what -- I think it is regrettable that the parties

6  have not been able to work more efficiently together on

7  this.  I mean, I think this may be my third or fourth call

8  already in this case on a discovery dispute.  But what I'm

9  going to direct is that with respect to the 35 pages that

10 are at issue here, that the parties meet and confer with

11 respect to those documents; that they agree upon redactions

12 of any information that is a client communication or any

13 information that identifies clients of Jones Day; the

14 redactions of all names other than Ms. Sheketoff and

15 Mr. Savignac's names in those documents; and redactions of

16 other identifying information respecting the people who were

17 the participants in those conversations other than

18 Ms. Sheketoff and Mr. Savignac, and the individuals -- or

19 individual, Partner A, that they're commenting upon, and

20 agree on redactions with respect to that.

21       I also think that after you receive discovery in

22 the case -- and I assume that you've requested discovery of

23 anything -- any documents that plaintiffs may use or rely

24 upon in the case.  If there are other documents that you

25 receive that are similarly problematic, I would direct that

1    the parties meet and confer about whether plaintiffs intend

2    to use those documents.  And if plaintiffs do intend to use

3    those documents in the litigation, that you go through a

4    similar process with respect to those documents.

5              I realize this is inefficient, but it's perhaps

6    less inefficient than my having yet another discovery

7    conference about this a month from now when plaintiffs have

8    prepared their next brief and they want to attach these

9    documents as exhibits.  And they have represented to me that

10   they intend to use them, so I think that's appropriate.

11             MR. BAILEY:  Thank you, Judge.

12             THE COURT:  All right, thank you.  Ms. Sheketoff,

13   anything further today?

14             MS. SHEKETOFF:  Can I consult with Mr. Savignac

15   for just one second?

16             THE COURT:  Yes.

17             MS. SHEKETOFF:  Thank you.

18             DEPUTY CLERK:  Judge Moss, this is Kristin.  While

19   we're waiting on plaintiffs to consult, I just got notice

20   from one of your clerks who got an e-mail to the Moss

21   chambers that the public line got disconnected.  On my phone

22   I'm showing that we have both lines, but I actually just

23   spoke to IT a week ago about the issue that came up on

24   another hearing at the very end.  I just wanted to advise

25   you so you know.

1      **THE COURT:**  Okay.  Is there a way to open that

2   now, Kristin?  I think we're just about done, but is there a

3   way to reopen the line?

4      **DEPUTY CLERK:**  I'm going to try to if I can manage

5   it without dropping you all.

6      **THE COURT:**  Okay, thank you.

7      **MS. SHEKETOFF:**  Your Honor, this is Julia.

8      **THE COURT:**  Yes.

9      **MS. SHEKETOFF:**  I guess my -- with respect to your

10  Honor's ruling, my question is there are many, many pages of

11  text messages, and every meet and confer that we have with

12  defendants is very protracted and it's very difficult to

13  reach agreement.  So I wonder if maybe the faster thing

14  would be for us to just simply file provisionally under seal

15  with these redactions that we propose of the very specific

16  and limited categories you identified, and then have the

17  Court review it that way.  I just -- we are pro se

18  litigants, and it is extremely burdensome with two children.

19  And it's just very, very difficult to do these meet and

20  confers.

21      **THE COURT:**  I'm sorry, you're basically asking for

22  me to do the work instead of you all, and I've got a busy

23  docket too.  You may be pro se, but you are two highly

24  talented lawyers.  If most pro ses were so well represented,

25  we would be in good shape.  So I am going to direct that you

1    meet and confer.

2          What I will say is if there are many other

3    documents going forward, I do think that Mr. Bailey

4    suggested a much more efficient way to proceed and that you

5    not meet and confer over hundreds of pages of documents.

6    But if you intend to use any of the documents in a filing,

7    that you identify those to Mr. Bailey or one of his

8    colleagues before you make a filing, and there can be a meet

9    and confer with respect to that more limited universe.

10          And you may be able to do that with respect to the

11   35 pages as well.  If you're not actually intending to use

12   any of them anytime soon, tell them that we're only planning

13   on using these three pages, let's meet and confer on those.

14   That will make things much more efficient for you.  So I

15   would recommend that you identify for Jones Day what

16   documents you intend to use in advance, which I think will

17   expedite the meet and confer process.

18          **MS. SHEKETOFF:**  Okay.  And can I confirm one final

19   thing?

20          **THE COURT:**  Yes.

21          **MS. SHEKETOFF:**  So in terms of names and entities

22   that we're redacting, we're not redacting, for example, the

23   individual defendant's names or anything about Jones -- any

24   of the defendants themselves.  We're simply talking about

25   individual partners who are not really at issue in the case?

1    **MR. BAILEY:**  Your Honor, we'd like to meet and

2    confer about that.

3    **THE COURT:**  I'll let you meet and confer about

4    that.  I frankly don't remember off the top of my head

5    whether there were references to the individuals.  I mean,

6    if there's a reference to Jones Day, generically Jones Day,

7    I don't think that -- I'm not talking about redacting that.

8    If it's one of the named defendants in the case, I'd have to

9    go back and look at it.  I just don't remember what it said

10   about those individuals.  I do think the parties should meet

11   and confer about it.  Although I do think, quite frankly,

12   that in all likelihood, that I would conclude that redaction

13   is not required when you're talking about the actual named

14   parties in the case.  But I can't say that in the abstract

15   without looking at the documents.  So hopefully you can work

16   that out amongst yourselves.  If not, I guess we'll be

17   talking about again.

18   **MS. SHEKETOFF:**  Okay.  And then the second issue

19   that we wanted to address was the protective order, just

20   about the language that, "Discovery material produced and

21   given a confidentiality designation shall be used only used

22   for purposes of this action, and shall not be used for any

23   business purpose or for other purpose besides the

24   prosecution or defense of any claims in this action."

25           So our view is that language very clearly

1    prohibits Jones Day from taking action against an individual
2    if they sent information in our text messages.  And my
3    understanding is that Jones Day is now saying that that's
4    not correct, and that it can fire or discipline people based
5    on that information.  So we wanted to get clarity from the
6    Court on the language in this order.
7              **MR. BAILEY:**  If I can, your Honor?
8              **THE COURT:**  Yes.
9              **MR. BAILEY:**  So this also came up at the June 4th
10   conference.  Your Honor I think twice identified scenarios
11   in which it would be perfectly appropriate for Jones Day to
12   take certain actions based on information it might see in
13   these documents, such things as stealing from the firm or
14   disclosing attorney-client privilege.  Plaintiffs have
15   consistently asked us to commit ourselves to some very
16   broad, vague language that we won't do anything at all based
17   on any document that they produce of this nature.
18              But as we discussed in June for the reasons your
19   Honor identified, we can't do that.  I don't think that was
20   ever the intent or spirit of the protective order, and I
21   think that's a misreading of the language of the order
22   itself.  We're not going to use the documents for
23   competitive purposes.  We're not going to use them in other
24   proceedings.  If there's a subpoena that we receive that
25   requests these documents, we'll of course meet with the

1    plaintiffs and go through the process.  That's the kind of

2    scenario that the protective order envisions.

3              The plaintiffs cling to this notion that Jones Day

4    is seeking to retaliate against anybody and everybody who

5    says anything bad about the firm.  But we went through that

6    process last month.  They submitted their briefs.  Your

7    Honor did not see any evidence in support of that, called

8    the concern unduly speculative and denied the request for an

9    attorney's eyes only provision.  So I just don't think

10   there's any reason to think that there's any risk or harm or

11   concern that needs to be addressed like this.

12             As we discussed in June, and for the reasons that

13   your Honor identified then, it is a misapplication of the

14   protective order to get that kind of broad commitment that

15   the plaintiffs seem to be thinking we need to commit

16   ourselves to.

17             THE COURT:  Well, what I'm going to say about this

18   is I think the protective order speaks for itself.  Again,

19   this feels to me like a very abstract question.  If there is

20   some document or concern -- I mean, I'm not aware of

21   anything in the 35 pages that appears to raise this type of

22   concern.  If there's some other document out there that

23   might raise the concern in the future or anything arises,

24   you can bring it to my attention.  But I think the

25   protective order speaks for itself in this regard.

1              I don't want to have the Court getting involved

2     in, in essence, adopting a court ordered anti-retaliation

3     rule in which violations of any anti-retaliation rules then

4     become contempt proceedings before the Court.  Maybe that

5     happens at some point in this case, but I think the

6     protective order does speak for itself on this.  And it

7     sounds to me frankly like this is more a product of just

8     distrust between the parties than a real issue in this case,

9     so I'm going to leave it at that for now.

10             **MR. BAILEY:**  Thank you, Judge.

11             **THE COURT:**  Thank you.  Anything further,

12    Ms. Sheketoff?

13             **MS. SHEKETOFF:**  No, your Honor.

14             **THE COURT:**  And Mr. Bailey, anything further?

15             **MR. BAILEY:**  No, thank you.

16             **THE COURT:**  Well, thank you all.

17         (Proceedings adjourned at 3:06 p.m.)

18

19

20

21

22

23

24

25

1                    **C E R T I F I C A T E**

2

3              I, **Jeff Hook, Official Court Reporter**,

4    certify that the foregoing is a true and correct transcript

5    of the remotely reported proceedings in the above-entitled

6    matter.

7                    **PLEASE NOTE:**  This hearing occurred during

8    the COVID-19 pandemic and is therefore subject to the

9    technological limitations of court reporting remotely.

10

11

12

13      **August 6, 2021**                    _____

14             **DATE**                              **Jeff M. Hook**

15

16

17

18

19

20

21

22

23

24

25

**1**

10281 [1]   1/17
15219 [1]   1/19
16 [1]   27/13
19 [1]   38/8
19-2443 [1]   2/2
1:19-cv-2443 [1]
  1/4

**2**

20001 [1]   1/25
2019 [1]   23/25
2021 [1]   1/5
2207 [1]   1/13
2443 [2]   1/4 2/2
250 [1]   1/16
26 [2]   27/12 27/13
29 [1]   1/5
2:16 [1]   1/6

**3**

333 [1]   1/24
35 [8]   6/13 6/21
  6/24 29/8 29/14
  30/9 33/11 36/21
37 [2]   8/11 16/24
3:06 p.m [1]   37/17

**4**

43 [1]   8/9
4500 [1]   1/19
4700-C [1]   1/24
4th [3]   7/21 8/9
  35/9

**5**

500 [1]   1/19

**6**

61801 [1]   1/14

**7**

7th [2]   6/13 6/22

**A**

abilities [1]   9/4
able [4]   3/3 16/23
  30/6 33/10
about-face [3]   4/14
  7/7 22/17
above [1]   38/5
above-entitled [1]
  38/5
abridge [1]   22/14
absolute [1]   16/13
absolutely [2]   5/14
  21/18
abstract [2]   34/14
  36/19
acceptable [1]
  28/21
accepting [1]   23/11
access [7]   7/13
  14/19 14/21 16/19
  18/6 19/17 22/12
accurate [1]   17/21
accusation [1]
  22/22
accusations [2]

24/3 26/18
act [1]   27/25
action [6]   1/3 2/2
  17/15 34/22 34/24
  35/1
actions [1]   35/12
actual [3]   14/4
  23/20 34/13
actually [10]   6/9
  9/5 10/17 13/20
  20/1 21/24 22/23
  29/19 31/22 33/11
addition [1]   2/9
additional [1]
  22/19
address [8]   6/19
  11/22 12/5 12/13
  13/23 14/15 23/22
  34/19
addressed [3]   7/20
  19/19 36/11
adequate [1]   24/18
adjourned [1]   37/17
admissible [1]   10/8
adopt [1]   18/2
adopting [1]   37/2
advance [1]   33/16
advise [1]   31/24
AEO [2]   7/8 15/24
affecting [1]   5/19
afield [1]   23/17
afternoon [1]   2/6
again [10]   5/2 5/24
  13/14 13/20 16/17
  17/17 18/3 18/9
  34/17 36/18
against [4]   11/6
  27/22 35/1 36/4
ago [1]   31/23
agree [14]   4/8 4/24
  5/10 6/8 13/25
  22/20 26/24 26/25
  27/4 28/6 28/18
  29/7 30/11 30/20
agreed [2]   4/3
  27/16
agreeing [2]   11/16
  30/3
agreement [2]   29/17
  32/13
agrees [1]   21/18
ahead [1]   2/22
al [4]   1/3 1/6 2/3
  2/3
allegation [1]
  10/17
allegations [2]
  8/13 26/8
alliding [1]   19/21
allow [1]   19/6
alone [1]   19/7
along [2]   17/25
  25/24
Although [2]   16/8
  34/11
amenable [2]   11/16
  28/4
Amendment [1]   19/18
amongst [1]   34/16
amount [1]   24/7

ANDERSON [4]   1/18
  2/5 2/19 2/20
animosity [1]   24/7
another's [1]   27/5
anti [2]   37/2 37/3
anti-retaliation [2]
  37/2 37/3
APPEARANCES [1]
  1/11
appearing [1]   2/4
appears [1]   36/21
approach [1]   14/3
appropriate [11]
  4/23 6/2 8/25 16/20
  17/15 19/16 28/8
  28/11 29/7 31/10
  35/11
appropriately [2]
  14/1 28/13
area [1]   12/8
argue [1]   23/15
argument [7]   11/3
  17/23 18/2 22/25
  23/5 23/14 23/17
arises [1]   36/23
aside [1]   9/11
asserted [1]   11/4
assertions [1]
  26/11
associate [2]   21/4
  23/13
associates [1]
  23/11
assume [3]   16/1
  25/4 30/22
assuming [1]   12/12
assurance [1]   27/22
attach [1]   31/8
attached [1]   18/4
attempting [1]
  19/13
attention [1]   36/24
attenuated [1]
  23/19
attorney [3]   7/24
  8/6 35/14
attorney's [2]
  22/15 36/9
attorney-client [2]
  7/24 8/6 35/14
attorneys [3]   5/25
  5/25 24/11
attribute [1]   22/6
available [1]   21/6
Avenue [1]   1/24
aware [3]   7/19 25/1
  36/20

**B**

back [4]   18/21
  21/10 23/24 34/9
backwards [1]   14/19
bad [3]   11/1 11/9
  36/5
bag [6]   24/14 24/21
  25/16 25/24 26/2
  26/13
BAILEY [10]   1/18
  2/5 2/20 11/21 12/5
  16/8 22/10 33/3

33/7 37/14
Bankruptcy [1]   1/23
barrier [1]   19/13
based [5]   11/6 24/4
  35/4 35/12 35/16
basically [3]   16/21
  21/14 32/21
basis [3]   4/1 10/10
  25/7
become [1]   37/4
behalf [2]   2/18
  4/19
behave [1]   28/19
behavior [1]   24/19
belong [2]   16/12
  18/12
belonging [1]   8/7
besides [1]   34/23
best [1]   3/3
better [2]   8/24
  14/11
big [1]   25/16
bit [2]   23/4 24/14
blanch [1]   28/10
blanket [1]   21/25
block [1]   22/15
blowing [1]   25/17
both [6]   2/3 4/16
  27/21 28/18 30/1
  31/22
brief [4]   19/3 21/9
  21/12 31/8
briefing [1]   15/8
briefs [1]   36/6
bring [1]   36/24
bringing [1]   11/5
broad [2]   35/16
  36/14
Brogan [1]   7/15
bulk [1]   26/3
burden [1]   25/13
burdensome [2]
  19/14 32/18
business [1]   34/23
busy [1]   32/22

**C**

call [1]   30/7
called [1]   36/7
calling [1]   5/23
came [4]   22/14 29/4
  31/23 35/9
camera [5]   3/2 6/7
  6/13 15/23 15/23
can [32]   3/1 3/15
  5/5 5/6 6/23 9/20
  11/23 13/25 14/5
  14/15 17/11 18/14
  23/16 23/24 24/2
  25/19 25/21 25/23
  26/25 27/4 27/10
  27/16 27/20 28/21
  31/14 32/4 33/8
  33/18 34/15 35/4
  35/7 36/24
capacity [2]   9/11
  21/4
care [2]   24/23 25/4
career [1]   26/24
carte [1]   28/9

# C

case [38]   3/23 5/17
6/4 6/14 7/13 9/6
9/15 10/14 11/13
12/24 16/3 17/6
17/18 17/19 18/7
18/9 18/14 18/16
21/21 21/23 21/24
22/8 22/24 23/12
23/18 23/20 24/25
25/15 26/5 26/16
30/8 30/22 30/24
33/25 34/8 34/14
37/5 37/8
cases [2]   18/20
26/18
cat [2]   25/23 26/2
cat's [4]   24/13
24/21 25/16 26/13
categories [1]
32/16
cause [4]   4/11
19/15 19/15 22/4
central [1]   25/15
certain [2]   3/23
35/12
certainly [4]   14/9
16/14 17/15 25/1
certify [1]   38/4
chambers [1]   31/21
characterizations [2]
13/16 22/20
characterized [1]
26/6
CHASE [3]   1/15 2/5
2/17
check [2]   24/18
25/10
checklist [2]   27/9
27/12
children [1]   32/18
circumstances [1]
14/9
civil [4]   1/3 2/2
5/3 17/10
claim [3]   11/5 11/8
11/12
claims [4]   11/4
23/20 25/15 34/24
clarity [1]   35/5
clear [6]   9/5 12/1
15/9 15/13 18/7
27/10
clearly [1]   34/25
clerks [1]   31/20
client [12]   4/19
7/24 8/6 8/14 13/10
13/16 14/10 26/1
26/15 29/16 30/12
35/14
client's [1]   13/11
clients [5]   4/20
13/11 26/1 29/17
30/13
climb [1]   10/13
cling [1]   36/3
closed [1]   3/14
collaborative [1]
30/1

collaboratively [1]
5/5
colleagues [1]   33/8
COLUMBIA [1]   1/1
Combes [1]   1/13
commenting [2]   9/2
30/19
comments [1]   9/5
commit [2]   35/15
36/15
commitment [1]
36/14
common [2]   19/17
27/21
communication [2]
15/11 30/12
communications [17]
5/18 6/2 8/15 13/9
13/13 13/13 13/15
15/14 15/16 15/18
18/12 22/21 23/20
25/19 26/1 26/15
29/16
compelling [1]   18/5
competitive [1]
35/23
complaint [1]   26/5
completely [2]   5/16
13/6
conceded [1]   29/3
concern [17]   4/18
8/2 9/18 11/22 12/5
12/22 13/10 17/3
17/8 17/9 24/9
25/11 36/8 36/11
36/20 36/22 36/23
concerned [1]   3/3
concerns [5]   3/24
4/9 4/16 9/9 12/14
conclude [1]   34/12
conclusory [1]
26/11
conduct [2]   17/12
27/14
confer [17]   7/15
14/16 27/25 28/17
29/6 29/24 30/10
31/1 32/11 33/1
33/5 33/9 33/13
33/17 34/2 34/3
34/11
conference [10]   1/9
2/14 2/16 5/9 5/12
7/21 8/9 24/6 31/7
35/10
confers [2]   4/5
32/20
confidential [11]
4/3 4/25 6/3 6/9
8/14 14/13 27/1
27/5 27/11 27/17
27/24
confidentiality [1]
34/21
confidentially [1]
5/11
confirm [2]   4/1
33/18
connected [1]   3/1
consent [1]   12/16

consequences [1]
18/25
consider [1]   4/2
considered [2]   4/25
6/3
consistent [1]
21/21
consistently [2]
28/1 35/15
Constitution [1]
1/24
consult [2]   31/14
31/19
contain [1]   4/15
containing [1]   7/23
contemporaneous [1]
10/18
contempt [1]   37/4
content [3]   3/19
13/12 13/15
contents [1]   5/14
context [3]   13/24
14/3 28/12
control [1]   7/16
controversy [2]
20/1 20/5
conversations [1]
30/17
copy [1]   15/22
corrected [1]   24/5
correctly [3]   9/3
20/6 29/3
counsel [2]   3/23
22/16
couple [3]   9/17
12/22 23/21
course [2]   14/11
35/25
court [35]   1/1 1/23
3/18 3/20 5/5 6/8
7/10 7/14 7/15 7/20
7/21 7/25 8/10 8/18
8/19 11/10 17/11
18/2 18/10 19/19
21/14 21/17 22/14
24/1 24/1 24/5
25/20 28/6 32/17
35/6 37/1 37/2 37/4
38/3 38/9
Court in [1]   24/1
Courts [1]   1/23
COVID [1]   38/8
COVID-19 [1]   38/8
critical [1]   17/5
cross [3]   26/25
27/4 27/16
cross-designate [3]
26/25 27/4 27/16
cure [1]   13/18
cut [1]   11/15
cv [1]   1/4

# D

damages [4]   15/7
19/3 19/8 20/7
damaging [2]   9/8
9/10
DATE [1]   38/14
dates [1]   13/3
day [49]

Day's [1]   17/23
days [1]   5/9
DC [2]   1/5 1/25
decided [1]   8/19
decision [3]   5/18
5/19 7/19
decisions [1]   5/21
defendant's [1]
33/23
defendants [16]   1/7
1/15 2/5 2/16 2/18
2/21 3/22 5/24
15/11 15/21 17/20
24/8 26/17 32/12
33/24 34/8
defense [5]   3/23
22/16 22/16 22/24
34/24
defenses [1]   25/15
definitely [1]   15/6
denied [2]   7/10
36/8
describe [2]   6/9
6/12
described [1]   8/16
describes [1]   12/7
descriptions [1]
13/15
designate [4]   26/25
27/4 27/10 27/16
designated [1]
27/24
designation [1]
34/21
despite [1]   4/8
detail [1]   5/13
details [1]   20/13
differ [1]   26/16
difference [1]
16/23
difficult [2]   32/12
32/19
direct [3]   30/9
30/25 32/25
directed [1]   24/8
directly [7]   9/19
10/16 11/14 14/19
15/24 19/11 21/16
discipline [1]   35/4
disclose [3]   11/16
16/1 16/5
disclosed [2]   3/22
12/24
disclosing [1]
35/14
disconnect [3]   3/4
3/5 3/10
disconnected [1]
31/21
discovery [14]   2/14
6/14 6/14 15/19
16/2 16/11 18/13
19/6 27/14 30/8
30/21 30/22 31/6
34/20
discrimination [4]
22/23 23/18 26/18
26/18
discuss [3]   14/23
20/12 29/6

**D**

discussed [5]   26/4
28/2 28/24 35/18
36/12
discussing [1]   27/8
discussion [2]   3/2
4/5
dismiss [1]   11/10
dispute [3]   13/24
14/4 30/8
distinction [1]
21/23
distinguished [1]
7/21
DISTRICT [4]   1/1
1/1 1/10 1/23
distrust [1]   37/8
divorced [2]   14/3
14/4
docket [13]   3/16
7/23 8/25 9/15
11/19 12/23 13/1
15/2 17/4 18/17
18/19 19/1 32/23
doctrine [1]   19/16
document [11]   4/6
5/4 14/12 14/13
27/23 28/4 28/14
28/20 35/17 36/20
36/22
documents [44]
done [7]   5/6 12/4
17/14 17/15 22/3
27/3 32/2
double [2]   5/22
13/14
down [4]   13/21
14/15 20/3 29/13
dropping [1]   32/5
during [1]   38/7

**E**

e-mail [2]   23/25
31/20
e-mails [4]   11/17
11/17 20/6 26/10
earlier [1]   4/9
easily [1]   20/15
easy [2]   13/2 13/19
ECF [1]   24/10
efficient [3]   29/9
33/4 33/14
efficiently [2]   5/6
30/6
either [1]   13/18
else [2]   3/23 6/17
embarrass [7]   17/6
17/12 17/16 17/24
22/8 23/23 24/10
embarrassing [9]
4/21 7/18 7/22 8/5
9/1 15/12 17/2
18/17 26/17
embarrassment [2]
22/2 25/3
employees [1]   21/5
end [3]   3/13 26/19
31/24
ended [1]   10/8

engaging [1]   17/12
enough [1]   25/5
ensure [1]   20/19
enter [1]   21/15
entered [1]   18/15
entering [1]   7/19
entire [1]   16/20
entirely [3]   7/16
9/5 16/9
entities [1]   33/21
entitled [2]   23/5
38/5
envisions [1]   36/2
erect [1]   19/13
essence [1]   37/2
et [4]   1/3 1/6 2/3
2/3
evaluations [1]
23/8
even [3]   19/6 21/17
24/2
event [2]   4/5 16/6
eventually [1]   6/25
everybody [2]   2/6
36/4
everyone [1]   17/19
evidence [6]   10/13
17/1 17/5 18/3 21/6
36/7
evidentiary [1]   4/1
exact [2]   7/20 8/20
exactly [1]   22/13
example [2]   9/22
33/22
except [1]   17/19
exceptional [1]
20/23
exchanges [2]   9/22
12/15
excluding [1]   8/4
excuse [1]   2/20
exhibits [1]   31/9
expect [2]   17/14
23/18
expectation [1]
16/13
expedite [1]   33/17
experience [3]
26/22 26/22 26/23
expert [1]   10/10
explained [1]   7/25
explicitly [1]
23/25
expressed [1]   9/9
extent [4]   9/18
20/10 21/6 22/21
extremely [1]   32/18
eyes [2]   22/15 36/9

**F**

face [3]   4/14 7/7
22/17
fact [3]   4/15 6/13
19/8
factors [1]   14/22
fair [1]   30/4
faith [9]   10/16
10/20 10/21 11/1
11/4 11/9 11/13
21/19 25/7

false [1]   11/7
familiar [2]   5/12
14/25
far [2]   23/17 29/9
fashion [1]   6/21
faster [1]   32/13
favor [3]   14/19
14/21 23/11
favorable [1]   22/23
feel [3]   9/12 12/17
13/22
feels [2]   5/4 36/19
felt [3]   4/6 17/13
25/6
female [1]   23/13
few [1]   22/11
figure [3]   5/5
12/10 19/25
figured [1]   28/3
file [20]   4/10 8/25
13/22 14/5 15/2
16/24 17/1 18/19
21/15 22/1 24/10
24/13 24/17 25/1
25/9 25/11 28/3
28/16 28/21 32/14
filed [18]   4/8 5/15
7/8 7/22 10/25
11/19 12/25 13/17
15/23 17/4 18/16
20/15 21/24 25/3
28/4 28/14 28/16
28/20
filing [14]   5/1 6/4
6/7 15/23 18/3
18/18 19/1 21/13
22/4 24/2 25/7
25/21 33/6 33/8
filings [3]   4/4 8/4
18/11
final [1]   33/18
financial [1]   6/16
fine [2]   3/12 3/14
fingerprints [1]
27/20
fire [2]   24/4 35/4
firm [4]   8/8 21/5
35/13 36/5
first [2]   19/18
21/14
follow [1]   27/1
For the Defendants [1]
1/15
forbid [1]   18/2
foregoing [1]   38/4
forever [1]   12/23
form [1]   21/7
formal [1]   6/14
former [1]   5/25
forward [3]   15/9
19/19 33/3
foundation [1]
10/11
fourth [1]   30/7
frankly [6]   5/22
24/8 26/24 34/4
34/11 37/7
free [1]   25/9
fully [2]   8/19
12/21

fundamentally [1]
19/12
further [3]   31/13
37/11 37/14
future [3]   15/2
21/12 36/23

**G**

gag [3]   15/11 16/21
18/11
general [4]   3/12
14/20 16/19 16/25
generically [1]
34/6
genuinely [2]   9/24
10/1
germane [1]   4/6
gets [5]   12/24
12/25 14/18 16/20
25/8
given [7]   4/23 6/1
6/1 13/5 14/8 29/9
34/21
gives [1]   27/21
goes [2]   7/13 9/24
good [11]   2/6 10/16
10/20 10/21 11/4
11/13 19/15 19/15
21/19 25/6 32/25
gossip [1]   5/23
Grant [1]   1/19
great [1]   23/12
grounded [1]   19/17
guess [8]   3/5 8/24
9/4 19/12 21/10
24/22 32/9 34/16

**H**

habit [1]   22/4
handle [1]   28/9
handled [1]   4/19
hands [1]   8/3
happen [1]   5/2
happened [1]   10/17
happens [4]   26/19
26/21 27/23 37/5
happenstance [3]
15/21 15/25 16/4
happy [4]   12/19
14/23 20/19 29/23
harassment [1]   25/4
hard [1]   9/10
harm [3]   3/21 4/11
36/10
head [1]   34/4
hearing [3]   3/1
31/24 38/7
hearsay [8]   5/22
5/22 5/22 13/14
20/12 20/25 21/5
21/7
held [1]   3/24
help [1]   10/1
here's [1]   29/14
high [2]   10/12 13/5
highly [4]   4/16
20/11 29/11 32/23
hill [1]   10/12
hit [1]   22/19
Honor [27]   2/15

**H**

Honor... [26]   2/19
2/20 2/24 3/24 4/13
5/9 6/12 11/23
12/20 14/18 16/16
17/13 17/14 22/11
22/18 24/20 28/5
29/21 32/7 34/1
35/7 35/10 35/19
36/7 36/13 37/13
Honor's [5]   5/12
6/23 9/18 26/21
32/10
HONORABLE [1]   1/9
HOOK [3]   1/22 38/3
38/14
hope [1]   22/3
hopefully [1]   34/15
horrible [1]   8/17
Hubbard [1]   14/22
hugely [3]   28/22
29/2 29/12
hundreds [2]   27/13
33/5

**I**

idea [1]   6/17
identification [2]
14/8 26/1
identified [5]
13/12 32/16 35/10
35/19 36/13
identifies [1]
30/13
identify [2]   33/7
33/15
identifying [6]
12/7 12/13 26/14
28/12 29/15 30/16
identity [2]   13/9
20/19
IL [1]   1/14
imagine [1]   9/10
implicates [1]
14/10
importantly [2]
15/9 16/14
improper [2]   19/22
25/12
improperly [1]
18/23
improve [3]   9/24
10/2 10/4
in their [1]   21/3
inappropriate [4]
17/14 18/1 18/1
18/17
include [2]   6/25
19/1
included [1]   6/7
including [2]   4/21
11/8
incompetent [3]
8/17 9/23 22/22
incorrectly [1]   9/3
incredible [1]   24/7
indicated [1]   25/25
indicia [2]   14/8
28/12

indirectly [1]
20/11
individual [11]   8/7
9/2 9/8 9/8 9/18
17/20 26/7 30/19
33/23 33/25 35/1
individuals [7]
3/21 9/9 11/18 17/7
30/18 34/5 34/10
inefficient [1]
29/18 31/5 31/6
information [30]
4/16 4/18 4/20 4/24
5/20 6/17 7/25 8/5
8/5 8/7 8/14 8/19
8/23 12/7 12/13
12/24 13/1 14/10
17/17 21/13 22/5
26/15 29/15 29/16
30/12 30/13 30/16
35/2 35/5 35/12
innuendo [1]   5/22
insecure [2]   10/2
22/22
insecurity [3]   23/9
23/10 23/10
instance [1]   13/10
instead [2]   8/5
32/22
intend [6]   29/5
31/1 31/2 31/10
33/6 33/16
intended [1]   17/12
intending [2]   17/16
33/11
intent [1]   35/20
interactions [1]
10/19
interactions with [1]
10/19
interest [4]   7/9
7/12 18/6 28/19
interesting [1]
16/8
interests [1]   30/1
internet [1]   12/10
into [7]   2/10 3/13
5/13 10/13 19/7
19/9 20/13
introduce [1]   2/11
intrusion [2]   5/7
27/22
intrusive [1]   28/23
invite [1]   24/16
involved [9]   3/21
4/21 5/18 5/19
12/15 13/10 14/7
17/7 37/1
involves [1]   5/24
irrelevant [4]   5/17
9/22 16/9 22/4
issue [25]   5/3 5/17
6/10 6/18 7/2 7/14
7/20 8/20 10/21
10/21 11/12 15/8
15/10 17/22 18/23
19/19 21/25 25/14
25/17 26/3 30/10
31/23 33/25 34/18
37/8

issues [4]   9/20
16/10 19/4 28/5

**J**

January [1]   23/25
January 2019 [1]
23/25
JEFF [3]   1/22 38/3
38/14
JONES [48]
JUDGE [4]   1/10
31/11 31/18 37/10
judgment [4]   12/25
15/6 21/8 29/4
judicial [1]   14/21
JULIA [3]   1/13 2/15
32/7
Julia's [1]   21/18
July [1]   1/5
June [8]   6/13 6/22
7/21 8/9 24/6 35/9
35/18 36/12
June 4th [3]   7/21
8/9 35/9
June 7th [2]   6/13
6/22
juvenile [1]   5/23

**K**

keep [1]   19/20
kept [1]   12/2
kind [5]   19/20 22/7
26/13 36/1 36/14
knowing [1]   24/16
knowledge [1]   7/16
knows [1]   16/16
Kristin [2]   31/18
32/2

**L**

lack [1]   6/1
language [5]   34/20
34/25 35/6 35/16
35/21
lashing [1]   10/3
last [4]   3/17 4/13
26/21 36/6
later [1]   14/15
law [5]   8/8 18/7
19/17 21/21 22/8
lawsuit [3]   10/22
10/24 11/2
lawyer [1]   9/4
lawyers [3]   24/15
24/23 32/24
lay [1]   10/10
leadership [1]   7/12
least [2]   4/2 4/17
leave [1]   37/9
legal [4]   11/3 11/3
15/10 19/24
length [1]   7/20
less [1]   31/6
light [1]   4/22
likelihood [3]
20/16 23/3 34/12
likely [2]   16/7
18/24
limitations [1]
38/9

limited [2]   32/16
33/9
line [10]   2/4 2/4
2/25 3/4 3/6 19/9
20/13 26/4 31/21
32/3
lines [2]   25/24
31/22
litigants [2]   19/14
32/18
litigation [5]   5/3
26/23 28/1 29/11
31/3
little [1]   24/14
live [3]   12/23 20/1
20/4
long [2]   12/5 14/6
longer [2]   4/18
13/4
look [3]   23/24 24/2
34/9
looking [1]   34/15
lot [8]   4/15 5/21
5/21 10/1 10/15
12/25 14/8 27/19

**M**

made clear [1]
15/13
mail [2]   23/25
31/20
mails [4]   11/17
11/17 20/6 26/10
makers [1]   5/19
making [3]   5/19
20/16 24/3
male [1]   23/11
malicious [1]   11/8
manage [1]   32/4
many [5]   4/17 19/10
32/10 32/10 33/2
MARK [8]   1/3 1/12
2/2 19/4 19/5 20/22
22/3 23/3
Mark's [3]   20/7
20/16 21/19
material [5]   13/6
25/3 25/7 26/10
34/20
materials [4]   3/11
6/10 7/1 29/8
matter [5]   18/24
19/25 21/16 21/17
38/6
matters [1]   4/19
may [31]   3/1 3/9
4/11 7/4 8/2 9/12
9/12 9/13 9/13 9/16
12/15 12/16 12/16
13/4 15/7 16/3
20/13 23/11 25/11
26/18 26/18 28/11
28/12 29/1 29/9
29/18 29/21 30/7
30/23 32/23 33/10
maybe [7]   3/13
21/17 21/22 21/23
27/11 32/13 37/4
mean [25]   6/8 8/23
9/10 10/7 10/11

## M

mean... **[20]** 10/22
11/2 12/6 14/24
15/17 16/21 19/3
20/8 20/10 22/1
25/1 26/3 26/15
27/7 28/25 29/22
29/23 30/7 34/5
36/20
medical **[2]** 7/24
8/6
meet **[20]** 4/4 14/15
25/13 27/24 28/17
29/5 29/24 30/10
31/1 32/11 32/19
33/1 33/5 33/8
33/13 33/17 34/1
34/3 34/10 35/25
merits **[4]** 16/9
17/23 18/2 22/25
message **[1]** 13/23
messages **[11]** 7/17
8/16 10/6 10/18
10/23 16/15 16/24
18/5 19/9 32/11
35/2
microphone **[1]** 2/10
microphones **[1]** 2/9
might **[5]** 16/3 17/2
25/1 35/12 36/23
minimal **[1]** 12/7
minimum **[1]** 28/8
minute **[1]** 12/10
misapplication **[1]**
36/13
misreading **[1]**
35/21
misspoke **[1]** 29/21
mistreatment **[1]**
8/13
moment **[1]** 13/24
mongering **[1]** 5/23
month **[4]** 4/13 15/8
31/7 36/6
months **[1]** 18/16
more **[12]** 3/12 15/8
15/25 16/13 19/12
21/11 29/25 30/6
33/4 33/9 33/14
37/7
moreover **[1]** 21/5
MOSS **[3]** 1/9 31/18
31/20
most **[3]** 5/3 29/9
32/24
motion **[11]** 4/7 7/8
7/10 11/10 14/2
20/9 21/8 24/13
24/17 25/2 25/11
motive **[5]** 22/7
22/7 24/10 25/12
25/14
move **[1]** 23/21
moves **[1]** 13/4
moving **[1]** 18/20
Mr. **[12]** 11/21 12/5
16/8 22/10 23/24
24/14 30/15 30/18
31/14 33/3 33/7

37/14
Mr. Bailey **[7]**
11/21 12/5 16/8
22/10 33/3 33/7
37/14
Mr. Savignac **[3]**
24/14 30/18 31/14
Mr. Savignac's **[1]**
23/24 30/15
Ms. **[10]** 2/17 7/4
14/17 22/12 23/1
24/14 30/14 30/18
31/12 37/12
Ms. Chase **[1]** 2/17
Ms. Sheketoff **[9]**
7/4 14/17 22/12
23/1 24/14 30/14
30/18 31/12 37/12
much **[8]** 3/15 11/12
14/8 16/16 19/9
20/14 33/4 33/14
mute **[2]** 2/9 7/5
myself **[1]** 18/15

## N

name **[6]** 2/11 5/23
9/20 11/19 12/2
12/12
named **[3]** 17/20
34/8 34/13
names **[13]** 11/18
12/14 12/21 13/18
14/7 16/14 17/19
18/4 26/14 30/14
30/15 33/21 33/23
nasty **[1]** 10/11
nature **[10]** 4/7
4/23 5/11 6/1 13/5
13/6 13/23 24/8
26/11 35/17
near **[1]** 15/2
nearly **[1]** 7/22
necessarily **[2]**
10/7 13/12
need **[9]** 3/8 3/9
3/13 13/22 13/25
20/2 21/14 28/16
36/15
needed **[2]** 3/20
28/2
needs **[3]** 5/15
27/23 36/11
New **[1]** 1/17
next **[4]** 15/8 18/25
29/13 31/8
nine **[1]** 18/15
nobody **[2]** 2/9
25/21
non **[1]** 21/7
none **[7]** 5/17 5/20
9/14 13/16 13/17
13/20 22/23
normally **[1]** 23/18
note **[2]** 2/25 38/7
notice **[1]** 31/19
notion **[2]** 20/7
36/3
notwithstanding **[1]**
4/11
NW **[1]** 1/24

## NY **[1]** 1/17

## O

object **[1]** 12/16
obtained **[1]** 18/12
occurred **[2]** 26/12
38/7
off **[1]** 34/4
offer **[1]** 10/1
official **[2]** 1/23
38/3
once **[1]** 5/9
one **[24]** 3/9 5/3
8/23 9/17 11/23
12/3 12/22 19/3
21/3 21/4 21/10
21/23 23/1 23/18
23/22 24/20 27/5
29/20 29/24 31/15
31/20 33/7 33/18
34/8
only **[9]** 6/6 7/14
22/2 22/15 22/15
25/10 33/12 34/21
36/9
open **[1]** 32/1
opinion **[3]** 10/10
10/10 24/1
opinions **[1]** 8/11
opponent **[1]** 21/2
opportunity **[1]** 8/3
oppose **[1]** 14/5
opposed **[1]** 14/3
opposite **[1]** 23/13
order **[30]** 2/8 4/3
4/24 5/8 6/11 6/20
6/23 7/19 14/14
15/4 15/11 15/24
16/21 18/11 18/15
19/23 21/15 21/22
24/17 24/24 27/19
34/19 35/6 35/20
35/21 36/2 36/14
36/18 36/25 37/6
ordered **[1]** 37/2
orderly **[2]** 26/24
29/1
ordinarily **[2]** 5/2
27/4
ordinary **[1]** 26/16
other's **[2]** 27/1
27/16
others **[2]** 8/12
27/19
ours **[1]** 30/2
ourselves **[2]** 35/15
36/16
out **[19]** 5/6 10/3
12/10 15/4 17/24
18/20 19/25 23/9
24/13 24/21 25/16
25/23 26/2 26/13
28/3 29/15 29/17
34/16 36/22
outcome **[1]** 28/21
outside **[1]** 18/12
outweigh **[1]** 18/6
over **[2]** 7/17 33/5
own **[2]** 15/11 15/14

## P

p.m **[2]** 1/6 37/17
PA **[1]** 1/19
page **[2]** 8/9 8/10
pages **[12]** 6/13
6/15 6/21 6/24 29/8
29/14 30/9 32/10
33/5 33/11 33/13
36/21
pandemic **[1]** 38/8
part **[2]** 11/6 11/12
participants **[1]**
30/17
particular **[2]** 4/6
13/22
particularly **[2]**
13/2 18/4
parties **[19]** 4/5
4/12 4/17 4/22 5/1
5/5 5/7 6/3 14/15
26/24 27/4 27/14
28/6 30/5 30/10
31/1 34/10 34/14
37/8
parties' **[1]** 4/3
partner **[14]** 8/16
9/20 9/23 11/9 12/9
19/6 19/7 21/3
22/20 23/3 23/9
26/7 26/9 30/19
partner's **[2]** 12/2
23/9
partners **[5]** 8/12
9/19 21/2 21/5
33/25
partnership **[3]**
19/10 20/17 20/24
party **[4]** 4/20 5/25
21/2 27/24
past **[1]** 18/15
people **[18]** 4/21
5/18 7/9 7/18 9/2
10/11 12/15 13/4
13/9 14/7 15/15
16/17 20/20 24/4
26/16 27/25 30/16
35/4
people's **[1]** 8/11
percipient **[1]** 5/20
perfectly **[1]** 35/11
perhaps **[6]** 9/1 9/3
9/3 20/15 23/2 31/5
permanent **[1]** 21/15
permissible **[2]**
21/7 21/9
permission **[1]**
16/25
permit **[2]** 18/18
22/9
permitted **[1]** 2/7
person **[4]** 9/11
12/7 12/11 23/2
person's **[2]** 9/3
12/12
personal **[4]** 4/16
9/11 12/14 24/8
personnel **[1]** 13/3
phone **[1]** 31/21
piecing **[1]** 13/2

**P**

Pittsburgh [1]   1/19
plaintiffs [29]   1/4
1/12 2/3 2/13 3/19
4/1 4/8 4/25 5/10
5/20 6/15 6/25 7/3
13/22 14/5 22/13
26/6 28/9 28/21
29/3 30/23 31/1
31/2 31/7 31/19
35/14 36/1 36/3
36/15
plaintiffs' [3]   8/2
25/18 26/5
planning [1]   33/12
plans [1]   15/1
plausible [1]   11/11
please [4]   2/9 2/10
2/11 38/7
point [11]   3/8 3/10
16/10 18/14 22/19
23/6 24/22 25/8
26/21 30/4 37/5
points [3]   22/11
22/19 23/21
position [3]   3/19
25/9 25/18
positions [1]   24/3
possess [1]   15/18
possessed [1]   18/18
possible [3]   5/6
12/6 19/2
possibly [1]   3/15
potential [2]   3/25
24/24
practical [2]   18/24
19/25
practice [3]   12/8
27/8 27/21
precaution [1]   3/20
precedented [1]
22/2
preclude [1]   17/11
premature [3]   15/1
15/3 18/22
prepared [2]   24/16
31/8
presenting [1]   2/21
press [3]   10/25
11/6 11/7
presumption [3]
14/19 14/20 14/21
pretty [4]   10/12
20/11 23/17 25/13
prevent [2]   4/4
25/20
principle [1]   16/22
privacy [1]   16/13
private [1]   7/24
privilege [1]   35/14
privileged [1]   8/6
pro [6]   1/13 2/4
19/14 32/17 32/23
32/24
problem [3]   8/13
8/15 13/18
problematic [6]
28/23 29/2 29/12
29/22 29/23 30/25

procedural [1]
19/13
procedure [3]   15/4
17/11 27/2
proceed [2]   29/10
33/4
proceeding [1]   3/8
proceedings [7]   2/8
3/7 14/22 35/24
37/4 37/17 38/5
process [13]   15/19
18/13 26/25 27/25
28/2 28/17 29/1
29/24 30/2 31/4
33/17 36/1 36/6
produce [1]   35/17
produced [5]   6/15
6/18 16/11 23/12
34/20
producing [1]   14/12
product [3]   9/25
10/2 37/7
productions [1]
6/25
professional [1]
25/5
progresses [1]
12/24
prohibited [2]   5/1
5/1
prohibits [1]   35/1
promptly [1]   16/1
propose [1]   32/15
proprietary [4]
7/24 8/7 8/19 8/23
prosecution [1]
34/24
protect [4]   3/21
4/12 7/8 16/17
protective [14]   4/3
5/8 6/20 14/14 15/4
19/23 27/19 34/19
35/20 36/2 36/14
36/18 36/25 37/6
protracted [1]
32/12
proven [2]   22/5
26/19
provision [2]   22/15
36/9
provisionally [1]
32/14
public [29]   2/25
3/4 3/6 3/6 3/15
4/4 7/13 7/23 8/25
9/14 11/17 11/19
14/19 14/21 16/19
17/4 18/6 18/11
18/19 18/19 19/9
19/17 20/13 21/20
22/12 22/16 24/1
26/4 31/21
publicly [17]   4/10
5/1 5/15 6/4 9/1
11/16 13/17 21/16
25/10 25/21 26/6
26/8 28/5 28/14
28/16 28/17 28/20
punitive [1]   15/7
purpose [4]   7/8

21/12 34/23 34/23
purposes [4]   6/11
25/3 34/22 35/23
put [5]   8/25 9/7
15/11 16/20 18/11
putting [2]   9/11
9/14

**Q**

qualifications [1]
23/2
quite [7]   4/21 17/2
17/17 18/1 18/1
28/23 34/11
quote [6]   8/1 8/11
8/16 8/18 14/20
20/22
quoting [2]   8/1
8/10

**R**

raise [4]   7/2 19/22
36/21 36/23
raises [1]   17/22
raising [4]   17/4
17/8 18/23 19/4
RANDOLPH [1]   1/9
rather [2]   3/5 16/4
reach [2]   29/17
32/13
reaction [1]   23/13
read [2]   3/10 27/13
real [1]   37/8
realize [3]   24/13
29/9 31/5
really [13]   4/14
9/24 9/25 16/21
18/7 19/25 20/1
20/10 21/24 23/19
24/25 26/2 33/25
reason [5]   5/14
15/24 21/8 22/6
36/10
reasonable [4]   14/1
14/2 27/22 28/18
reasonably [1]
27/25
reasons [6]   12/4
12/22 22/2 28/23
35/18 36/12
rebroadcast [1]   2/8
receive [3]   30/21
30/25 35/24
received [1]   6/21
recommend [1]   33/15
record [2]   2/7
18/19
records [1]   8/6
redact [5]   9/20
11/18 12/12 14/7
16/14
redacted [2]   17/18
28/14
redacting [5]   12/21
13/18 33/22 33/22
34/7
redaction [2]   13/19
34/12
redactions [16]
20/15 20/19 25/24

25/25 26/14 28/3
28/10 28/18 29/6
29/7 30/3 30/11
30/14 30/15 30/20
32/15
refer [4]   3/8 3/11
6/6 26/7
reference [1]   34/6
referenced [1]
22/12
references [1]   34/5
referring [1]   6/6
refused [2]   4/8
5/10
regard [2]   10/8
36/25
regardless [1]
16/10
regrettable [2]
29/11 30/5
relates [1]   20/16
relating [2]   25/25
29/16
relationships [3]
13/11 13/16 14/10
release [3]   11/1
11/6 11/7
released [1]   26/14
releasing [1]   12/18
relevance [4]   6/1
9/5 11/3 22/18
relevant [18]   5/4
9/19 9/19 9/23
13/20 15/5 15/6
15/7 16/2 17/17
18/3 19/11 20/19
20/21 21/16 21/18
21/24 24/25
relies [1]   21/17
rely [1]   30/23
relying [1]   20/8
remains [1]   4/15
remember [6]   20/6
26/6 27/8 27/15
34/4 34/9
remind [1]   2/7
remotely [2]   38/5
38/9
removed [1]   20/20
reopen [1]   32/3
reported [2]   1/22
38/5
Reporter [2]   1/23
38/3
reporting [1]   38/9
reports [1]   27/13
represented [4]
20/22 30/2 31/9
32/24
reputations [2]
24/23 25/5
request [2]   5/12
36/8
requested [3]   2/13
2/16 30/22
requests [1]   35/25
require [1]   4/4
required [1]   34/13
reserving [1]   24/4
resolve [1]   20/2

**R**

respect [10]    8/4
26/11 27/14 30/9
30/11 30/20 31/4
32/9 33/9 33/10
respecting [1]
30/16
restricted [1]    6/3
restriction [1]
21/25
retaliate [1]    36/4
retaliation [7]
3/25 11/5 11/11
11/11 21/20 37/2
37/3
review [2]    7/1
32/17
right [18]    3/6 4/10
7/13 15/10 15/20
15/22 16/6 18/6
19/17 21/11 22/10
22/12 24/4 24/21
25/22 29/8 29/25
31/12
risk [5]    13/5 24/16
24/24 25/6 36/10
road [4]    13/21
14/15 20/3 20/9
Room [1]    1/24
rule [5]    16/22
27/12 27/13 27/13
37/3
rules [2]    17/10
37/3
ruling [1]    32/10
run [1]    25/6

**S**

safe [1]    25/4
same [1]    12/20
samples [1]    6/7
sanctions [4]    24/13
24/17 24/24 25/11
satisfies [1]    12/21
SAVIGNAC [6]    1/3
1/12 2/3 24/14
30/18 31/14
Savignac's [2]
23/24 30/15
saw [1]    28/5
saying [17]    8/22
10/11 11/1 14/3
16/8 16/23 17/10
17/10 18/22 19/21
19/23 21/11 21/15
23/1 23/12 27/9
35/3
scenario [2]    14/14
36/2
scenarios [1]    35/10
scope [1]    6/10
se [5]    1/13 2/4
19/14 32/17 32/23
seal [1]    32/14
sealed [1]    21/20
second [4]    13/8
25/8 31/15 34/18
secret [1]    12/2
seeing [1]    27/15

seek [1]    5/9
seeking [3]    21/25
24/17 36/4
seem [1]    36/15
seems [1]    17/23
senders [1]    16/15
sense [1]    15/1
sensitive [1]    3/20
sent [1]    35/2
ses [1]    32/24
session [1]    3/14
set [1]    15/4
seven [1]    6/15
several [1]    22/12
shall [2]    34/21
34/22
shape [1]    32/25
share [1]    25/22
shared [1]    7/11
SHEKETOFF [11]    1/13
2/16 7/4 14/17
22/12 23/1 24/14
30/14 30/18 31/12
37/12
shield [1]    7/17
shoes [1]    9/7
show [2]    16/25 25/2
showing [1]    31/22
side [5]    5/3 15/15
18/10 25/14 29/25
sides [4]    27/21
28/4 28/18 30/1
significant [1]
24/9
similar [1]    31/4
similarly [2]    21/9
30/25
simply [8]    4/24
13/18 15/12 15/22
20/25 22/8 32/14
33/24
single [2]    7/19
18/9
sit [1]    29/13
situation [1]    13/21
six [2]    14/22 18/15
smart [2]    24/15
24/23
solely [1]    24/10
solution [1]    28/15
somebody [4]    9/14
10/12 17/11 27/23
somehow [1]    3/4
someone [4]    12/10
16/12 18/10 18/16
sometimes [1]    27/11
somewhat [1]    5/23
soon [1]    33/12
sorry [7]    6/5 7/6
8/22 20/18 27/3
28/25 32/21
sort [7]    8/3 8/7
19/20 20/11 23/22
27/8 27/9
sought [2]    15/22
16/16
sounds [1]    37/7
speak [4]    2/10 2/12
5/14 37/6
speaking [5]    2/10

2/17 7/5 21/3 21/4
speaks [2]    36/18
36/25
special [2]    3/20
7/16
specific [3]    3/9
9/20 32/15
specificity [1]
12/8
speculative [5]
3/25 19/5 20/11
20/22 36/8
spirit [2]    10/3
35/20
spoke [1]    31/23
staff [1]    24/11
stage [1]    29/4
stance [1]    17/18
standard [2]    18/8
20/23
standards [1]    19/10
start [2]    7/7 13/2
statements [2]    11/8
21/2
STATES [2]    1/1 1/10
stealing [1]    35/13
stop [1]    16/22
straight [2]    15/9
19/18
Street [3]    1/13
1/16 1/19
stretch [1]    23/4
strike [1]    26/12
strikes [3]    20/7
24/15 27/7
strong [1]    14/20
struck [1]    18/18
stuff [3]    12/18
13/20 26/13
subject [3]    11/9
16/24 38/8
submit [1]    27/20
submitted [5]    3/2
5/4 6/13 6/21 36/6
subpoena [1]    35/24
substance [1]    6/10
sudden [1]    25/16
sue [2]    23/25 24/1
suggest [3]    17/16
19/5 29/22
suggested [1]    33/4
Suite [1]    1/19
summary [4]    12/25
15/6 21/7 29/4
support [2]    14/5
36/7
supported [1]    14/2
suppose [1]    12/6
supposed [2]    7/7
13/13
supposedly [2]    4/12
14/5
sure [4]    10/6 14/1
16/21 27/20
surprised [2]    10/8
27/12
suspect [2]    12/18
12/20
sympathetic [1]    8/1

**T**

tailored [1]    6/23
talented [1]    32/24
talents [1]    9/4
talk [1]    19/10
talking [14]    5/16
5/21 7/7 7/12 8/8
10/7 13/3 20/20
22/17 29/8 33/24
34/7 34/13 34/17
technological [1]
38/9
teed [1]    15/10
TELEPHONE [1]    1/9
termination [1]
21/19
terms [5]    3/12 5/8
6/20 27/18 33/21
TERRI [3]    1/15 2/5
2/20
texts [3]    7/11
11/13 20/25
theory [2]    10/9
23/16
therefore [2]    29/20
38/8
thinking [1]    36/15
third [7]    4/11 4/16
4/19 4/21 5/7 5/25
30/7
though [1]    16/3
thought [2]    16/18
24/25
threat [3]    16/18
16/18 23/22
threatened [1]
23/25
three [1]    33/13
throughout [2]    12/2
26/23
tie [2]    8/3 23/19
timeliness [1]
18/22
timely [1]    19/23
times [1]    22/13
today [4]    2/18 16/4
29/13 31/13
today's [1]    2/13
together [3]    9/25
13/2 30/6
Tolton [3]    26/22
27/18 28/1
tomorrow [1]    29/13
took [2]    3/19 23/9
top [1]    34/4
total [2]    6/1 6/15
touch [2]    8/14
20/10
touches [1]    21/13
tough [2]    20/9
25/13
towards [1]    3/13
transactions [1]
5/17
transcript [3]    1/9
8/9 38/4
treat [1]    5/10
treated [1]    14/13
trial [1]    21/7

# T

triple [2]   5/22 13/14
true [4]   9/16 16/7 29/10 38/4
trust [1]   29/24
try [3]   15/23 23/19 32/4
trying [11]   4/12 9/24 10/1 10/3 17/6 18/10 19/24 19/25 22/13 23/6 23/23
turn [2]   2/11 17/19
twice [1]   35/10
two [6]   5/9 16/4 19/14 24/20 32/18 32/23
type [2]   24/18 36/21

# U

U.S [1]   1/23
ultimately [1]   21/6
under [9]   4/3 5/8 6/20 14/14 14/22 17/10 19/16 19/22 32/14
understands [1]   22/18
understood [2]   3/17 3/17
unduly [1]   36/8
unfair [3]   9/2 23/8 23/8
UNITED [2]   1/1 1/10
universe [1]   33/9
unlawful [1]   11/6
unless [1]   25/6
unlikely [1]   24/15
unnecessary [3]   5/7 13/7 27/22
unprecedented [1] 7/16
unquote [1]   20/23
up [10]   6/18 10/8 15/10 19/3 21/10 25/17 26/21 27/11 31/23 35/9
upcoming [1]   21/9
upon [5]   4/3 29/7 30/11 30/19 30/24
Urbana [1]   1/14
use [16]   11/17 16/3 23/14 27/23 29/5 29/19 29/19 30/23 31/2 31/2 31/10 33/6 33/11 33/16 35/22 35/23
used [4]   8/3 34/21 34/21 34/22
using [1]   33/13
usual [1]   2/7

# V

vague [1]   35/16
valid [2]   11/11 17/8
versus [1]   16/25
Vesey [1]   1/16

view [4]   4/9 10/9 23/2 34/25
violations [1]   37/3

# W

w2s [1]   6/16
waiting [1]   31/19
Washington [2]   1/5 1/25
way [17]   12/9 12/20 14/2 19/5 20/12 23/10 23/19 26/20 27/15 28/9 29/2 29/10 29/25 32/1 32/3 32/17 33/4
ways [2]   8/4 29/11
week [1]   31/23
weeks [1]   16/4
weighed [1]   23/10
what's [4]   3/7 3/9 3/11 26/3
whenever [3]   14/6 25/22 28/22
within [1]   18/15
without [5]   3/25 5/7 18/4 32/5 34/15
wonder [1]   32/13
work [8]   5/5 9/25 10/2 10/4 23/12 30/6 32/22 34/15
working [1]   8/12
writer [1]   8/18

# Y

year [1]   12/8
years [1]   27/8
yesterday [1]   24/2
York [1]   1/17
you get [1]   14/24