IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARK C. SAVIGNAC and
JULIA SHEKETOFF,

   *Plaintiffs*,

   v.

JONES DAY, STEPHEN J. BROGAN,
BETH HEIFETZ, and JOHN DOES 1-10,

   *Defendants*.

Case No. 1:19-cv-02443-RDM

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SURREPLY**

Jones Day opens its surreply opposition by asserting that "briefing on these [partnership] issues is necessary only because Plaintiffs sought disclosure of the compensation of all 850-plus Jones Day partners" (*but see* Plaintiffs' Br. 8-9) and "would not even consider narrowing these requests during meet-and-confer conversations." Surreply Opp. 1. Because the accusation is utterly false, and is apparently meant to suggest that the Court should deny or delay the requested discovery based on a judgment about Plaintiffs' reasonableness during meet-and-confers, Plaintiffs reluctantly submit this reply to correct the record.

During the parties' Rule 26(f) conference on April 16, Jones Day Partner Terri Chase stated that Jones Day has never produced partner pay data in litigation, that it would refuse to do so here, and that Plaintiffs would have to litigate the issue to obtain any such discovery. Plaintiffs served their discovery requests on April 28 and, after Jones Day responded on June 11 with boilerplate refusals to produce, sought to meet and confer about the requests. Jones Day Partner Anderson Bailey asked that Plaintiffs produce a written deficiency letter, which Plaintiffs did on June 23.

The letter explains why the requested partnership discovery is necessary and appropriate. *See* App. 3a-4a. The letter then states:

> It appears, however, that Defendants are flatly refusing to produce information relevant to Mark's promotion to partnership or compensation as a partner. During our Rule 26(f) conference, Terri [Chase] stated that Jones Day has never produced any partner compensation data in any lawsuit and that we would have to litigate the issue before the Court to compel it to do so. Defendants' [discovery] responses appear to confirm that statement. With respect to most of the requests just mentioned, Defendants do not indicate that they will produce anything at all, and they specifically object to several requests "insofar as [they] seek[] information related to partners."
>
> There is no basis in the law or facts to bar Plaintiffs from accessing any information to prove that Mark would have made partner, and how much he would have earned as a partner. Unless Jones Day is now willing to back down from its position as stated by Terri, the parties will need to present the issue to the Court as Terri indicated. This issue should be presented and resolved immediately, because Defendants are blocking discovery into one of the central issues in the case and the parties will need time to actually perform and review the discovery on this issue.
>
> While Plaintiffs believe that most of the relevant requests would impose no meaningful burden on Jones Day, and that any burden that might be imposed would not be disproportionate to the substantial importance of this issue, Plaintiffs are also willing to discuss and address any specific issues that Defendants may raise about particular information. Such discussions would be pointless, however, so long as Defendants adhere to their blanket refusal to participate in discovery relating to Mark's partnership promotion and compensation.

*Id.* at 4a.

The parties met and conferred on June 25. Jones Day did not point to any burden from the requests or raise specific objections about any particular request. Rather, Ms. Chase reiterated that Jones Day would not produce *any* partnership-related discovery. She proposed that, contrary to the parties' agreed discovery schedule, damages discovery be delayed until after resolution of liability. She stated that, if Plaintiffs would agree to delay that discovery until after liability was resolved, then the parties could discuss the scope of damages discovery—but she made clear that no such discussion was on the table unless Plaintiffs first agreed to Jones Day's requested bifurcation. Plaintiffs sought and received confirmation that Jones Day's position was that, unless

Plaintiffs agreed to the bifurcation, the parties had reached impasse and Plaintiffs would have to raise the matter with the Court. Plaintiffs declined to agree to such extreme protraction of the case, especially given the absence of any legal basis for Jones Day's position on the discovery. On June 30, Plaintiffs sought a conference with the Court, which was held on July 20.[1]

On June 30, Mr. Bailey emailed Plaintiffs (copying Ms. Chase) to "confirm which discovery requests this [request for a conference] relates to." App. 6a. Julia responded:

> As we discussed during our call, we hope to address damages discovery relating to partnership and punitives [at the conference with the Court]. Our understanding is that Defendants' position is that discovery should be bifurcated, with discovery on damages put off until there is a ruling on liability. We believe that discovery on all aspects of the case should move forward now, consistent with the agreed schedule. … When we discussed these issues at length during our [June 25] phone call, you and Terri reiterated that Defendants would not produce any discovery at this stage on partnership or punitives unless we went to the Court and obtained a ruling requiring them to do so.

*Id.* Mr. Bailey's response (copying Ms. Chase) does not dispute this account. *Id.* at 5a.[2]

At the July 20 conference, Mark opened by noting that Defendants "have refused to engage in discovery on either of those points, and told us we would have to litigate it if we want that

---

[1] On July 15, Jones Day served its written response to Plaintiffs' June 23 deficiency letter. As relevant here, it says only: "Partnership and Punitive Damages Discovery. These topics were addressed in our meet-and-confer on June 25, 2021." App. 9a.

[2] The same email exchange also belies Jones Day's remarkable assertion that "Plaintiffs' opposition raises for the first time several discovery requests [about punitive damages] that are outside the scope of the instant dispute and appear to have been raised as a basis to put into the record false and inflammatory allegations that have no legitimate connection to their punitive damages claim." Reply 23. The requests in question—Document Requests 37-38 and Interrogatory 12 concerning "employee communications opposing allegedly unlawful conduct by Jones Day and documents relat[ed] to Jones Day's dispute with Wendy Moore" (*id.*)—have always been part of the "instant dispute." Mr. Bailey's email (copying Ms. Chase) makes that clear: "I infer from our conversation last week and your letter that the relevant requests [for the conference with the Court] are … RFPs 3, 37, 38, and 39, and ROG 12, related to the request for punitive damages." App. 6a. It was entirely appropriate for Plaintiffs to address that discovery in their brief—and inexplicable that Defendants failed to address it in their opening brief. *See* Plaintiffs' Br. 42-43; *see also* July 20 Tr. 40:9-18 ("The Court: Let me just cut [Mark's presentation of this dispute] short … I think the parties should address this in the briefing we're talking about.").

3

discovery. So that's what we are here to do now." July 20 Tr. 2:25-3:3. Ms. Chase, who argued the issue for the following 13 transcript pages, did not dispute that understanding. *See id.* 3-16.

In short, the accusation that "Plaintiffs would not even consider narrowing the[ir] requests during meet-and-confer conversations" (Surreply Opp. 1) is utterly false. Plaintiffs made clear that, "[w]hile Plaintiffs believe that most of the relevant requests would impose no meaningful burden …, Plaintiffs are also willing to discuss and address any specific issues that Defendants may raise about particular information." App. 4a. But Jones Day never (until its briefing of this dispute) raised any issue with any particular request. It flatly refused to produce *any* information on partnership promotions or pay—not because of any expense, but simply because the firm has never produced such data before and has a rigid policy against ever doing so. It was that policy, and not any refusal by Plaintiffs, that led Jones Day to argue the matter at the July 20 conference (where Partner Chase admitted "I don't know that I specifically have looked at this issue," Tr. 8:22-23), to request briefing and submit nearly 60 pages, and to call for a second oral argument.

Given the absence of any real burden and the manifest flimsiness of Jones Day's legal arguments in support of its blanket refusal to participate in partnership discovery, this process has indeed been grossly wasteful. And Plaintiffs anticipate that Jones Day will seek new ways to delay discovery on this point, further compounding the waste. But, short of forfeiting the main item of damages in this action, Plaintiffs have never had any opportunity to avert the waste.

| /s/ Julia Sheketoff | /s/ Mark Savignac |
|---|---|
| Julia Sheketoff (pro se) | Mark C. Savignac (pro se) |
| 2207 Combes Street | 2207 Combes Street |
| Urbana, IL 61801 | Urbana, IL 61801 |
| (202) 567-7195 | (217) 714-3803 |
| sheketoff@gmail.com | marksavignac@gmail.com |
| D.C. Bar No. 1030225 | D.C. Bar No. 995367 |

September 8, 2021