# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARK C. SAVIGNAC and JULIA SHEKETOFF, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | Civ. No. 1:19-02443 (RDM) |
| *v.* | ) ) | |
| JONES DAY, *et al.*, | ) ) | |
| *Defendants.* | ) ) | |

## DEFENDANTS' MOTION TO COMPEL

Terri L. Chase (*pro hac vice*)
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, Florida 33131
Ph: (305) 714-9700
Email: tlchase@jonesday.com

Traci Lovitt (Bar No. 467222)
JONES DAY
250 Vesey Street
New York, NY 10281
Ph: (212) 326-3939
Email: tlovitt@jonesday.com

Christopher DiPompeo (Bar No. 1003503)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Ph: (202) 879-3939
Email: cdipompeo@jonesday.com

Anderson T. Bailey (*pro hac vice*)
JONES DAY
500 Grant Street
Pittsburgh, PA 15219
Ph: (412) 391-3939
Email: atbailey@jonesday.com

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    A.    Plaintiffs' Blanket Assertions of Work-Product Protection Over
           Documents Relating to the August and January Emails Are Improper ..................... 2

    B.    Plaintiffs Cannot Withhold Documents that Relate to Allegations They
           Made in Their Complaints .......................................................................................... 7

    C.    Plaintiffs Cannot Rely on Conclusory Assertions of Work-Product
           Protection to Withhold Complete Responses to Interrogatories ................................. 9

    D.    Plaintiffs' Blanket Assertions of "Spousal Privilege" Are Improper ....................... 11

CONCLUSION .................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexander v. FBI*,
   192 F.R.D. 12 (D.D.C. 2000)......................................................................................10

*Avery Dennison Corp. v. Four Pillars*,
   190 F.R.D. 1 (D.D.C. 1999).........................................................................................5

███████████████████████████
████████████████████████████████████████████

*Bregman v. Dist. of Columbia*,
   182 F.R.D. 352 (D.D.C. 1998).....................................................................................9

*Carlson, Inc. v. Int'l Bus. Machs. Corp.*,
   No. 10-3410, 2011 WL 13135944 (D. Minn. Dec. 20, 2011) ....................................9

*Cornerstone Assurance Grp., Inc. v. Harrison*,
   No. 17 CV 4718, 2017 WL 4460761 (N.D. Ill. Oct. 5, 2017) ..................................13

*Dir. of Off. of Thrift Supervision v. Ernst & Young*,
   795 F. Supp. 7 (D.D.C. 1992).......................................................................................5

*EEOC v. Urb. Serv. Sys. Corp.*,
   No. CIV. A. 97-422, 1999 WL 1125134 (D.D.C. Nov. 30, 1999) ..........................11

*Engelmann v. NBC, Inc.*,
   No. 94CIV.5616, 1995 WL 214500 (S.D.N.Y. Apr. 10, 1995)................................13

████████████████████████████
████████████████████████████████████████████

*Feld v. Fireman's Fund Ins. Co.*,
   991 F. Supp. 2d 242 (D.D.C. 2013)..............................................................................5

*Feld v. Fireman's Fund Ins. Co.*,
   No. CV 12-1789, 2014 WL 12792554 (D.D.C. Dec. 19, 2014)................................6

*FTC v. Sysco Corp.*,
   308 F.R.D. 19 (D.D.C. 2015)......................................................................................10

*George v. Leavitt*,
   407 F.3d 405 (D.C. Cir. 2005)......................................................................................7

*In re Lindsey*,
   158 F.3d 1263 (D.C. Cir. 1998)....................................................................................2

*In re Sealed Case*,
   146 F.3d 881 (D.C. Cir. 1998)......................................................................................4

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Sealed Case*,
   856 F.2d 268 (D.C. Cir. 1988) ................................................................5

*In re Veiga*,
   746 F. Supp. 2d 27 (D.D.C. 2010) ..........................................................5

██████████████████████████████████████████████████████

*Knepp v. United Stone Veneer, LLC.*,
   No. 06-CV-1018, 2007 WL 2597936 (M.D. Pa. Sept. 5, 2007) ...............13

███████████████████████████████████████████████████████

*L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*,
   No. 10-CV-02868, 2014 WL 183303 (D. Colo. Jan. 12, 2014)................13

*Liles v. Stuart Weitzman, LLC*,
   No. 09-61448-CIV, 2010 WL 11505129 (S.D. Fla. Apr. 22, 2010).........8

*McGrath v. Clinton*,
   666 F.3d 1377 (D.C. Cir. 2012) ..............................................................4

*Mountain States Pipe & Supply Co. v. Triton Water Techs., Inc.*,
   No. CV 12-2146, 2014 WL 12730976 (E.D. La. Mar. 26, 2014)............4

*Pereira v. United States*,
   347 U.S. 1 (1954)....................................................................................13

*Plumbers & Pipefitters Loc. 572 Pension Fund v. Cisco Sys., Inc.*,
   No. C01-20418JW, 2005 WL 1459555 (N.D. Cal. June 21, 2005).........8

*SEC v. Collins & Aikman Corp.*,
   256 F.R.D. 403 (S.D.N.Y. 2009) .............................................................8

*SEC v. Lavin*,
   111 F.3d 921 (D.C. Cir. 1997)..........................................................12, 13

*Shapiro v. U.S. Dep't of Just.*,
   969 F. Supp. 2d 18 (D.D.C. 2013) ...........................................................8

*Smith v. United Salt Corp.*,
   No. 08CV00053, 2009 WL 2929343 (W.D. Va. Sept. 9, 2009)...............14

████████████████████████████████████████████████████████

*Teran v. Mut. Sec. Credit Union*,
   No. 16-CV-00466, 2017 WL 11477128 (D. Conn. Sept. 29, 2017)..................13, 14

## TABLE OF AUTHORITIES
(continued)

Page(s)

*U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*,
  235 F.R.D. 521 (D.D.C. 2006) ................................................................9

*United States v. AB Electrolux*,
  No. CV 15-1039, 2015 WL 9950141 (D.D.C. Sept. 25, 2015) ...............6

███████████████████████████████████████████████████

*United States v. Deloitte LLP*,
  610 F.3d 129 (D.C. Cir. 2010) ............................................................5, 7

*United States v. Duran*,
  884 F. Supp. 537 (D.D.C. 1995) .......................................................12, 13

*United States v. Exxon Corp.*,
  87 F.R.D. 624 (D.D.C. 1980) ................................................................2

*United States v. Hamilton*,
  701 F.3d 404 (4th Cir. 2012) ............................................................13, 14

*Wolfle v. United States*,
  291 U.S. 7 (1934) .................................................................................12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11 .......................................................................................8

Fed. R. Civ. P. 26 ................................................................................2, 5, 9

███████████████████████████████████████████████████

## PRELIMINARY STATEMENT

In response to Defendants' discovery requests, Plaintiffs have asserted several broad claims of privilege, which give rise to this Motion.  These include blanket claims of (i) work-product protection over documents relating to Plaintiffs' August 2018 and January 2019 emails to Jones Day demanding additional leave, on the ground that Plaintiffs anticipated litigation in "mid-2018," before even informing Jones Day of their concerns with the leave policies; (ii) work-product protection over any documents Plaintiffs reviewed or relied upon in drafting their complaints; (iii) spousal privilege over all communications between Savignac and Sheketoff that post-date their April 2017 marriage; and (iv) ███████████████████████████████████ ███████████████ Plaintiffs also assert a work-product objection to an interrogatory seeking the identity of the "competent attorneys" whom they cited to Jones Day in support of Savignac's improper demand for paid leave available to accommodate the physical impact of childbirth.

Based on these overbroad claims, Plaintiffs are refusing even to search for responsive documents in these categories and log them on a privilege log.  Consistent with these positions, on October 1, 2021—nearly five months after receiving Defendants' discovery—Plaintiffs produced their first privilege log, which remarkably included *only two entries*.  *See* Ex. B, Pls.' Privilege Log.  The entirety of Plaintiffs' privilege log is reproduced below:

**Savignac v. Jones Day**
**Plaintiffs' First Privilege Log**

| | Date(s) | Sender(s)/ Author(s) | Recipient(s) | Description | Privilege |
|---|---|---|---|---|---|
| L0001 | On or after April 18, 2017 | Mark or Julia | Julia or Mark | Confidential communications between Mark and Julia after their marriage on April 18, 2017. | Spousal privilege (some documents in this category are also work product) |
| L0002 | June 3 & 10, 2019 | Mark | | Two documents created by Mark that document in anticipation of litigation his job search following his termination from Jones Day. | Work product |

Plaintiffs' privilege log is, on its face, insufficient.  Federal Rule of Civil Procedure 26 requires that Plaintiffs produce a privilege log that "describe[s] the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that . . . will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A)(ii).  Blanket assertions of privilege do "not suffice."  *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998); *see United States v. Exxon Corp.*, 87 F.R.D. 624, 637 (D.D.C. 1980) ("A mere assertion of the privilege, without a description of the document tailored to the assertion, is insufficient.").

Plaintiffs' improper blanket assertions of privilege and refusal to search for and log potentially privileged communications deprives Defendants of any meaningful ability to assess the basis for Plaintiffs' privilege claims.  And by shielding potentially relevant documents and witnesses behind broad claims of privilege, Plaintiffs are significantly impeding Defendants' ability to investigate Plaintiffs' factual allegations.  Because Plaintiffs have refused to withdraw their blanket privilege assertions and provide a competent privilege log, Defendants must now seek the Court's intervention to compel Plaintiffs' to provide the basic level of transparency required by the Federal Rules.  For the reasons below, the Court should hold Plaintiffs to their burden under the Federal Rules, reject Plaintiffs' improper blanket assertions of privilege, and clarify the proper scope and application of the privileges that Plaintiffs invoke.

## ARGUMENT

### A.  Plaintiffs' Blanket Assertions of Work-Product Protection Over Documents Relating to the August and January Emails Are Improper.

The Court should reject Plaintiffs' claim of a blanket work-product protection over any documents related to their August 2018 and January 2019 emails to Jones Day regarding Jones Day's leave policies, and compel Plaintiffs to produce or, at a minimum, log such documents.

As the Court is aware, in August 2018, Sheketoff emailed Defendant Beth Heifetz to assert

2

that Jones Day's leave policy was unfairly discriminatory because it provided male primary caregivers with ten weeks of paid leave but allowed birth mothers to take up to eight additional weeks of paid disability leave that was not available to her husband (the "August Email").  *See* Am. Compl. ¶ 184.  In that email, Sheketoff requested that Savignac be given an additional eight weeks of paid leave—equivalent to the full period of disability leave available to birth mothers. *Id.*  Jones Day disputed her analysis and rejected the request.  Five months later, on January 16, 2019, Savignac emailed Heifetz and Jones Day's Director of Human Resources and Counsel, making intemperate demands for 18 weeks of paid leave—which included the equivalent of birth mothers' eight weeks of disability leave, despite the fact that he was admittedly not disabled (the "January Email").  *See id.* ¶ 190.  Savignac's January Email asserted that Plaintiffs had "closely reviewed the case law," had "discussed the matter with other competent attorneys," and had concluded that "[y]our cases do not support" Jones Day's policy.  *Id.*

Given the centrality to this litigation of the August and January Emails, Defendants sought documents related to them.  Specifically, Defendants' Request for Production No. 9 seeks:

> All documents concerning the January and August Emails, including but not limited to: drafts of the January and August Emails; communications about any potential or actual content of the January and August Emails; communications about any legal authority referenced in any potential or actual content of the January and August Emails; all research done in relation to any potential or actual content of the January and August Emails; all documents reflecting the discussions "with other competent attorneys" referenced in the January Email; and all documents that Plaintiffs contend support their demand in the January Email for eight weeks of additional paid leave for Savignac beyond the ten weeks that Jones Day provides primary caregivers.

*See* Ex. C, Pls.' Resp. to Defs.' First RFPs at 10.  In response, however, Plaintiffs asserted a blanket claim of work-product protection over nearly all categories of documents sought by Request No. 9, on the ground that the Request "definitionally seek[s] documents or information protected by

the work-product doctrine." Ex. D, Pls.' Oct. 15, 2021 Letter at 2–3.[1] Plaintiffs then disclosed

that they "anticipated litigation on the leave claims beginning in mid-2018"—that is, some months

*before* first contacting Jones Day about their disagreement with the leave policy—but that they

"did not anticipate litigation on the other claims before January 22, 2019." *Id.* at 2. Based on their

claim of work-product, Plaintiffs assert they will not conduct a search for all documents responsive

to Request No. 9, and thus will not include any such documents in a privilege log.[2]

Plaintiffs' blanket claim of work-product protection is improper. Among other things,

work-product protection applies only when, at time the document was created, the party claiming

the privilege had "a subjective belief that litigation was a real possibility, and that belief must have

been objectively reasonable." *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998). Establishing

the date that litigation was reasonably anticipated and the date of the withheld document are thus

crucial steps to invoke the work-product protection. *See Mountain States Pipe & Supply Co. v.

Triton Water Techs., Inc.*, No. CV 12-2146, 2014 WL 12730976, at *6 (E.D. La. Mar. 26, 2014)

(ordering documents to be produced when a party could not prove they were "prepared in

anticipation or preparation of litigation" because, in part, the documents were undated). Moreover,

---

[1] Plaintiffs have agreed to produce only documents they believe *support* their demands in the January Email. *See* Ex. C, Pls.' Resp. to Defs.' First RFPs at 10; Ex. D, Pls.' Oct. 15, 2021 Letter at 2-3. They refuse on the basis of work product to produce or log all of the documents they considered, including documents that might have *undermined* the basis for Savignac's demand. Plaintiffs also asserted blanket work-product protection over all other topics in Request No. 9, including the August Email and their discussions with the "other competent attorneys" referenced in the January Email. To date, Plaintiffs have neither produced any documents responsive to Request No. 9, nor have they included any such documents on their privilege log.

[2] Plaintiffs also assert that none of the documents responsive to these categories are even relevant. But as the Court has noted, Savignac must have "'reasonably and in good faith believed'" he was opposing unlawful activity. Opinion at 36 (ECF #32) (quoting *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012)). To the extent Plaintiffs contend Savignac's January 2019 email constitutes protected activity, Defendants are entitled to take discovery on, among other things, Savignac's own understanding of the issues, the foundation—or lack thereof—for that understanding, and his communications with others on the subject.

like other privileges, work-product protection can be waived.  *See United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010); *Feld v. Fireman's Fund Ins. Co.*, 991 F. Supp. 2d 242, 247 (D.D.C. 2013).  And even if the protection applies, it can be overcome by showing "substantial need" and "undue hardship." Fed. R. Civ. P. 26(b)(3); *In re Sealed Case*, 856 F.2d 268, 273 (D.C. Cir. 1988).

In addition, this Court has recognized that a blanket claim of work-product protection is not appropriate:  "Although the privilege log will undoubtedly be more burdensome . . . than a blanket assertion, it is the only way by which [the opposing party] and, if necessary, the court could determine whether the documents at issue are truly privileged from production." *Dir. of Off. of Thrift Supervision v. Ernst & Young*, 795 F. Supp. 7, 11–12 (D.D.C. 1992); *see also Avery Dennison Corp. v. Four Pillars*, 190 F.R.D. 1, 1–2 (D.D.C. 1999) ("condemn[ing] as insufficient" a "general objection" that a request seeks "production of materials protected from disclosure by the attorney-client and the attorney work product privileges").  Without information about the withheld documents, Plaintiffs have not "establish[ed] any facts necessary to find the . . . work product doctrine protect[s] the sought-after documents." *In re Veiga*, 746 F. Supp. 2d 27, 40 (D.D.C. 2010).

Here, by refusing to search for and provide information about withheld documents that are responsive to Request No. 9, Plaintiffs have failed to provide any basis for the assertion of work-product protection.  Plaintiffs' refusal has made it impossible for Defendants to evaluate any context surrounding the withheld documents, such as when in "mid-2018" Plaintiffs supposedly anticipated that they would sue Jones Day and whether the documents could credibly and reasonably have been created in anticipation of litigation.

Moreover, there are reasons to believe at least *some* documents shielded by Plaintiffs are

not subject to work-product protection.  Even assuming Plaintiffs did actually anticipate suing Jones Day months before raising questions about its leave policies, it is impossible to believe that *every* document related to the August and January emails are necessarily protected work-product. For example, the January Email discusses not only Savignac's leave demands, but also alleged pay discrimination against Sheketoff in 2017.  But Plaintiffs, by their own admission, did not anticipate litigation on that claim until *after* the January 2019 email was sent.   On Plaintiffs' own assumptions, there is no basis for asserting a blanket work-product protection over all the documents regarding the August and January emails that they are refusing to search for.  *See United States v. AB Electrolux*, No. CV 15-1039, 2015 WL 9950141, at *5 (D.D.C. Sept. 25, 2015) (rejecting a blanket assertion of privilege and reasoning that, "[a]lthough it is feasible that *some portion* of the communications at issue may rise to the level of either ordinary or opinion work product, the claim that *all* communications at issue fall within the scope of the work-product doctrine's protective arms is highly suspicious").[3]

In addition, even if some of the withheld documents are protected work product, Plaintiffs have likely waived protection over at least a subset of the documents.  Based on even Plaintiffs' incomplete interrogatory responses, it is clear that Plaintiffs communicated about Jones Day's leave policies with numerous Jones Day attorneys and other undisclosed people.  *See* Ex. E, Pls.' Resp. to Second Discovery Requests at 4–5.  Any work-product protection would be waived if

---

[3] In any event, because Plaintiffs have not shown when the withheld documents were created, they are precluded from proving their claim of work-product privilege.  *See Feld v. Fireman's Fund Ins. Co.*, No. CV 12-1789, 2014 WL 12792554, at *1 (D.D.C. Dec. 19, 2014) (noting that "specifics about date and author are required" on a privilege log so work-product claims can be assessed), *aff'd*, 909 F.3d 1186 (D.C. Cir. 2018).  And there is reason to think there are responsive documents from well before Plaintiffs allege they anticipated litigation.  Plaintiffs admit that they discussed Jones Day's leave policies before they were married in April 2017.  *See* Ex. E, Pls.' Resp. to Second Discovery Requests at 4–5.

Plaintiffs shared their views or legal research about Jones Day's policies with Jones Day's attorneys, who are "conduit[s] to [Plaintiffs'] adversary." *See Deloitte LLP*, 610 F.3d at 140.

Plaintiffs have likewise waived protection for the documents they considered in connection with the January Email because they have affirmatively alleged that the email was sent "in good faith"—an essential element of the proof required for their retaliation claim.   Am. Compl. ¶ 191; *see George v. Leavitt*, 407 F.3d 405, 417 (D.C. Cir. 2005).   Plaintiffs cannot use privileges or protections as both a sword and a shield.  Jones Day is entitled to know the basis on which Plaintiffs demanded that Savignac be given the exact same leave as birth mothers despite his admission to this Court that birth mothers are entitled to disability leave and he is not.  *See, e.g.*, 08/04/2020 Tr. 38:4–7; 44:3–10.  Jones Day is also entitled to know what, if any, investigation Plaintiffs did before Savignac asserted that "Jones Day's black-box compensation system and its attempts to keep associate salaries secret are tailor-made to enable sex discrimination,  including retaliation," and that "[w]e ourselves experienced this."  Am. Compl. ¶ 190.[4]

The Court should hold Plaintiffs to their burden, requiring Plaintiffs to either produce the responsive documents or provide a privilege log detailing the withheld documents sufficient for Defendants to evaluate any claim of work-product protection.

## B.    Plaintiffs Cannot Withhold Documents that Relate to Allegations They Made in Their Complaints.

The Court should likewise compel Plaintiffs to produce documents that support the factual allegations in the Complaints.  Plaintiffs have failed to show that these documents are protected

---

[4] As this Court is aware, a similar allegation made in the *Tolton* case was voluntarily withdrawn for lack of proof after plaintiffs' experts had reviewed extensive nationwide associate compensation data.   Plaintiffs' admission that they did not anticipate litigation over this claim when they included it in the January Email is further proof that Savignac was not acting in good faith and, instead, gratuitously added this false allegation in an unsuccessful attempt to pressure the Firm to pay him money to which he knew he was not entitled.

by the work-product doctrine.  Indeed, the case law demonstrates the opposite.

Defendants' Request No. 55 seeks production of "[a]ll documents reviewed or relied upon by Plaintiffs in preparation of the Complaints."  Ex. C at 40.  Plaintiffs, however, have asserted a blanket work-product objection and refuse to search for, produce, or log any documents responsive to that request.  *See id*.  In fact, in response to questions designed to confirm whether there is a concrete dispute on this point, Plaintiffs refused even to identify whether documents responsive to Request No. 55 will be produced in response to other requests, which would moot any need for motion practice on the matter.  Plaintiffs' work-product objection is wrong.

As courts have recognized, "the selection of documents according to facts alleged in a pleading does not elevate the compilation to core work product," because Federal Rule of Civil Procedure 11 "requires all parties to have 'evidentiary support' for the factual contentions in their pleadings." *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 410 (S.D.N.Y. 2009).  Accordingly, "'compilations of documents that support the factual allegations of a complaint reveals no more than that already revealed by the filing of the complaint' and [are] not protected by work-product doctrine." *Shapiro v. U.S. Dep't of Just.*, 969 F. Supp. 2d 18, 32 (D.D.C. 2013) (quoting *Collins & Aikman*, 256 F.R.D. at 410–11); *see Liles v. Stuart Weitzman, LLC*, No. 09-61448-CIV, 2010 WL 11505129, at *7 (S.D. Fla. Apr. 22, 2010) (concluding the plaintiff failed to establish that "the work product doctrine applies to the compilation or identification of documents sought" where the defendant was "seeking documents that support the allegations of Plaintiff's Complaint in order to ascertain the facts in this case").  Consequently, "[t]here is nothing unusual about a discovery request asking Plaintiffs to produce or identify documents relating to or supporting allegations made in their [complaint]." *Plumbers & Pipefitters Loc. 572 Pension Fund v. Cisco Sys., Inc.*, No. C01-20418JW, 2005 WL 1459555, at *6 (N.D. Cal. June 21, 2005).

Courts thus do not allow plaintiffs to hide behind conclusory assertions of work-product protection to avoid producing or identifying documents relating to allegations in the complaint. *See Bregman v. Dist. of Columbia*, 182 F.R.D. 352, 362–63 (D.D.C. 1998) (rejecting plaintiff's conclusory claims of work-product and attorney-client privilege and concluding an interrogatory requesting that plaintiff "identify documents which 'in any way pertain[s] to the allegations of [his] complaint'" was proper); *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 235 F.R.D. 521, 524 (D.D.C. 2006) (finding "no legitimate problem with the information sought" by an interrogatory requesting a party to "identify all documents supporting" his contentions about illegal kickbacks); *Carlson, Inc. v. Int'l Bus. Machs. Corp.*, No. 10-3410, 2011 WL 13135944, at *3 (D. Minn. Dec. 20, 2011) (concluding the identification of "every document or communication reviewed or relied on in drafting [the plaintiff's] demand letter and Complaint" is not protected by work-product protection and falls "within the scope of Fed. R. Civ. P. 26(b)(5)"). And Plaintiffs cannot employ similar tactics to avoid their discovery obligations here.

In any event, Plaintiffs have not met their burden to show work-product protection applies to the documents requested, because they have not included those documents on a privilege log as required by Rule 26. *See Bregman*, 182 F.R.D. at 363 ("[P]laintiff's failure to comply with [Fed. R. Civ. P.] 26(b)(5), requiring him to file a privilege log, bars in itself any claim of privilege, whatever its basis."). The Court should therefore compel Plaintiffs to search for and produce documents responsive to Request No. 55, logging any withheld on a competent privilege log.

**C.     Plaintiffs Cannot Rely on Conclusory Assertions of Work-Product Protection to Withhold Complete Responses to Interrogatories.**

Next, the Court should compel a response to Defendants' interrogatory requesting the names of all persons with whom Plaintiffs discussed Jones Day's leave policies, including the "other competent attorneys" with whom Plaintiffs claimed in the January Email to have consulted.

Defendants have issued the following interrogatory to Plaintiffs:

> 1. Identify each Person whom you conferred or consulted with regarding Jones Day's parental and/or disability leave policies at any time prior to the January Email, including without limitation those individuals referenced in the January Email as "other competent attorneys."

*See* Ex. E at 4.  In response, Plaintiffs identified several current and former Jones Day attorneys with whom they conferred regarding Jones Day's policies.  *Id.* at 4–5.  They withheld, however, the identities of other persons, asserting that "the identities of the persons with whom they consulted in anticipation of this litigation (including the 'other competent attorneys' and any other lawyers and law firms) are protected from discovery by the work-product doctrine."  *Id.* at 4.

The identities of individuals consulted by Plaintiffs in connection with the January Email are not entitled to work-product protection, for several reasons.

First, merely disclosing a list of persons who supplied information or with whom the Plaintiffs consulted before sending the January Email or drafting the complaints does not reveal any privileged information.  Rather, "a list of interviewees is just that, a list."  *Alexander v. FBI*, 192 F.R.D. 12, 19 (D.D.C. 2000).  Plaintiffs have not explained how disclosing the names of such individuals would reveal anything confidential about their litigation strategy or mental impressions, which are required to establish the work-product protection.

Second, identifying persons with information relevant to the dispute "is foundational to our adversarial system."  *FTC v. Sysco Corp.*, 308 F.R.D. 19, 22 (D.D.C. 2015).  That is why "[o]ne of the key pieces of information that parties exchange in every case is the identity of witnesses" under the Federal Rules of Civil Procedure.  *Id.*  Here, because of the nature of Plaintiffs' claims, such individuals may be witnesses with relevant factual information.  For example, individuals consulted by Plaintiffs may have information regarding Plaintiffs' allegations of discrimination and/or whether Savignac's demand for eight additional weeks of paid leave was the product of a

good faith belief in the legitimacy of his demand, as the Amended Complaint asserts.  *See* Am. Compl. ¶ 191.  At a minimum, Defendants would like to ask those individuals whether they really agree with the premise of Savignac's January Email and demand for eight full weeks of additional paid leave—that *any* disability leave for birth mothers is a sham, that an associate who gives birth suffers no disability whatsoever, and that birth mothers can immediately return to practicing law.

And third, Plaintiffs have directly asserted their "consult[ations] with other competent attorneys" as a basis for Savignac's demand for an additional eight weeks of paid leave and his "good faith" belief in the legitimacy of this demand.  *Id.* ¶¶ 190–91.  Plaintiffs do not claim they had an attorney-client relationship with these "other competent attorneys," nor do they assert attorney-client privilege over the documents.[5]  Yet—in one of the central pieces of evidence in this case—Savignac asserts the professional qualifications and opinions of these "other competent attorneys" as a basis for his demand.  Plaintiffs cannot use their consultations with professionals as a "sword" to support the legitimacy of their claims, and then use the work-product protection as a shield "to prevent access to information which [they have] made relevant."  *EEOC v. Urb. Serv. Sys. Corp.*, No. CIV. A. 97-422, 1999 WL 1125134, at *2 (D.D.C. Nov. 30, 1999).

The Court should compel Plaintiffs to completely answer Defendants' first interrogatory.

### D.    Plaintiffs' Blanket Assertions of "Spousal Privilege" Are Improper.

The Court should also reject Plaintiffs' overbroad assertion of a "spousal privilege" and compel Plaintiffs to search for responsive documents among their communications with each other, logging any withheld documents in a competent privilege log.

During meet and confer discussions regarding Defendants' document requests, Plaintiffs

---

[5] Even the attorney-client privilege would not protect the identity of the counsel with whom a client has a privileged communication.  Rather, the party would be required to identify the attorney on a privilege log.  Indeed, Plaintiffs have already produced documents identifying an attorney who evidently represented them in this matter before they decided to proceed *pro se*.

took the position that all their responsive communications with each other that occurred after their marriage were protected by a spousal privilege. According to Plaintiffs, because of the absolute nature of this privilege, they were neither required to search for such documents, nor would they log any withheld documents in a privilege log. Accordingly, Plaintiffs included a single entry on their privilege log to encompass all communications between them since April 2017:

| | Date(s) | Sender(s)/ Author(s) | Recipient(s) | Description | Privilege |
|---|---|---|---|---|---|
| L0001 | On or after April 18, 2017 | Mark or Julia | Julia or Mark | Confidential communications between Mark and Julia after their marriage on April 18, 2017. | Spousal privilege (some documents in this category are also work product) |

This is insufficient. As explained below, the confidential marital communications privilege is not absolute and does not automatically apply to all communications between spouses. Plaintiffs' refusal to search for communications between themselves is improper, and their conclusory assertion of a blanket privilege in their privilege log makes it impossible for Defendants to assess the application of privilege to any particular communications.

The confidential marital communications privilege applies "when four prerequisites are met: (1) there must have been a communication; (2) there must have been a valid marriage at the time of the communication; (3) the communication must have been made in confidence; and (4) the privilege must not have been waived." *SEC v. Lavin*, 111 F.3d 921, 925 (D.C. Cir. 1997) (internal citations omitted). Thus, although the scope of the privilege is broad, it does not apply to *all* communications between spouses. Rather, it covers only communications "where the spouse intended for the communication to be confidential." *United States v. Duran*, 884 F. Supp. 537, 540 (D.D.C. 1995). And while private communications between spouses are presumed to be confidential, "wherever a communication, because of its nature or the circumstances under which it was made, was obviously not intended to be confidential, it is not a privileged communication." *Wolfle v. United States*, 291 U.S. 7, 14 (1934).

Courts have identified several circumstances in which communications between spouses will not be regarded as confidential.  For example, private communications that are intended to be later shared with a third party are not privileged.  *Pereira v. United States*, 347 U.S. 1, 6–7 (1954); *Duran*, 884 F. Supp. at 540–41.  Communications are likewise not confidential—and thus not privileged—if a spouse did not have a reasonable expectation of privacy in the communication, such as when the spouse uses a work email account or computer to communicate with the other spouse.  *United States v. Hamilton*, 701 F.3d 404, 407–09 (4th Cir. 2012).  Thus, "[s]everal courts have held that emails between spouses, sent on work computers or using work email accounts are not privileged if the employee was on notice that his computer use would be monitored."  *Teran v. Mut. Sec. Credit Union*, No. 16-CV-00466, 2017 WL 11477128, at *4 (D. Conn. Sept. 29, 2017).[6]  In addition, "any disclosure by a holder of a privilege inconsistent with maintaining the confidential nature of marital communications waives the privilege," even if it is a partial disclosure.  *Lavin*, 111 F.3d at 933; *see Cornerstone Assurance Grp., Inc. v. Harrison*, No. 17 CV 4718, 2017 WL 4460761, at *5 (N.D. Ill. Oct. 5, 2017).  And this waiver extends to "all communications on the same subject matter" as the disclosure.  *Knepp v. United Stone Veneer, LLC.*, No. 06-CV-1018, 2007 WL 2597936, at *5 (M.D. Pa. Sept. 5, 2007); *see also Engelmann v. NBC, Inc.*, No. 94CIV.5616, 1995 WL 214500, at *3 (S.D.N.Y. Apr. 10, 1995) (marital privilege

---

[6] To determine "whether the spousal email communication was made in confidence" when a spouse used a work email account or computer, courts "look to such factors as whether the employee was on notice that emails would be monitored, whether the employer had a right of access to the computer or emails, whether an employer email policy forbade personal use of the account or computer, or whether the employee took any steps to protect the communication."  *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, No. 10-CV-02868, 2014 WL 183303, at *6 (D. Colo. Jan. 12, 2014).  Here, the Jones Day Firm Manual states that ███████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████.

cannot be waived selectively).  "In essence, the circumstances surrounding the communication determine whether it is confidential or not."  *Smith v. United Salt Corp.*, No. 08CV00053, 2009 WL 2929343, at *9 (W.D. Va. Sept. 9, 2009)).

Here, Plaintiffs' blanket assertion of privilege over all communications between Sheketoff and Savignac is insufficient to establish application of the privilege.  Because the confidential marital communications privilege is not absolute, Plaintiffs cannot meet their burden with a blanket assertion that all communications between them are privileged.  Indeed, because Plaintiffs have flatly refused to search for responsive documents in their communications, even *they* cannot claim to know in good faith whether responsive documents exist that may not be privileged.  The lack of information on Plaintiffs' privilege log makes it impossible for Defendants to asses Plaintiffs' claim of privilege over any particular documents.[7]

Finally, Defendants' request that Plaintiffs make at least some effort to search for and log communications between themselves prior to the initiation of litigation is not overly burdensome.

---

[7] Nonetheless, there are reasons to believe that at least *some* communications between Savignac and Sheketoff may not be protected by the confidential marital communications privilege.  Plaintiffs' prior productions make clear that they were communicating with each other via Jones Day email and computer systems, through which they could have had no expectation of privacy.  *See, e.g.*, *Hamilton*, 701 F.3d at 407–09; *Teran*, 2017 WL 11477128, at *4.  It is reasonable to assume that they have continued that practice in their new jobs.  Plaintiffs, moreover, have sought out substantial press coverage of their claims and they recounted to the media private communications with each other about the issues in the litigation and Savignac's termination.  And throughout the factual record, Plaintiffs make reference to communications between themselves to support their claims.  For example, Savignac asserted in the January 2019 email to Jones Day's Director of Human Resources and Counsel that he and Sheketoff had together "closely reviewed the case law," discussed the matter with "other competent attorneys," and "experienced [discrimination] when Julia's salary was cut in relative terms based on a negative review from a partner who, in hindsight, clearly treated her worse because she is a woman."  Am. Compl. ¶ 190.  Depending on the circumstances of the communications, Savignac's reliance on his communications with Sheketoff to support his demands and their "hindsight" judgment about discrimination reflect an intention to disclose those communications and/or a waiver of the privilege over that subject matter.

Searching for responsive documents and logging documents withheld as privileged are basic obligations of any civil litigant. At issue here are basic ESI searches on specific topics among emails and other written communications between two identified people. As with all Defendants' requests, to the extent burden is a concern, the parties can discuss ways to minimize that burden. Unfortunately, because of Plaintiffs' flat-out refusal to search for responsive documents among their communications, the parties have not even progressed to the point of having such discussions.

The Court should reject Plaintiffs' overbroad assertion of the confidential marital communications privilege and require Plaintiffs to produce responsive communications or log them on a competent privilege log.



## **CONCLUSION**

For these reasons, the Court should grant Defendants' motion to compel, and enter an order substantially in the form attached hereto as Exhibit A.

October 22, 2021

Respectfully submitted,

/s/ Terri L. Chase
Terri L. Chase (*pro hac vice*)
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, Florida 33131
Ph: (305) 714-9700
Email: tlchase@jonesday.com

Traci Lovitt (Bar No. 467222)
JONES DAY
250 Vesey Street
New York, NY 10281
Ph: (212) 326-3939
Email: tlovitt@jonesday.com

Christopher DiPompeo (Bar No. 1003503)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Ph: (202) 879-3939
Email: cdipompeo@jonesday.com

Anderson T. Bailey (*pro hac vice*)
JONES DAY
500 Grant Street
Pittsburgh, PA 15219
Ph: (412) 391-3939
Email: atbailey@jonesday.com

*Attorneys for Defendants*