# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARK C. SAVIGNAC and
JULIA SHEKETOFF,

    *Plaintiffs*,

       v.

JONES DAY, STEPHEN J. BROGAN,
BETH HEIFETZ, and JOHN DOES 1-10,

    *Defendants*.

Case No. 1:19-cv-02443-RDM

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL AND REQUEST FOR PROTECTIVE ORDER[1]

---

[1] A court that denies a motion to compel, in whole or in part, "may issue any protective order authorized under Rule 26(c)." Fed. R. Civ. P. 37(a)(5)(B)-(C). For the reasons given herein, Plaintiffs respectfully request that the Court enter the attached proposed protective order.

## TABLE OF CONTENTS

Introduction..................................................................................................................1

Argument .....................................................................................................................2

   I.  The identities of the individuals and documents that an attorney consults in anticipation of litigation are protected from discovery by the work-product doctrine............................2

      A.  The work-product doctrine...........................................................................3

      B.  Application ..................................................................................................3

          1.  Selection of documents reviewed in drafting complaints .......................4

          2.  Identities of persons consulted in anticipation of litigation ....................9

   II.  Plaintiffs' categorical assertions of privilege are consistent with Rule 26(b)(5) .............15

      A.  Jones Day's log .........................................................................................15

      B.  Governing law ...........................................................................................17

      C.  Spousal privilege .......................................................................................21

          1.  Privilege log .........................................................................................21

          2.  Work emails ..........................................................................................24

      D.  Attorney-client privilege ...........................................................................26

  III.  Plaintiffs have properly asserted work-product protection over documents concerning the August and January emails ............................................................................27

      A.  The documents are work product..................................................................28

          1.  When Plaintiffs anticipated litigation ....................................................29

          2.  Waiver ..................................................................................................30

      B.  Plaintiffs have adequately explained their claim of privilege .......................33

  IV.  A plaintiff does not waive the psychotherapist privilege by seeking non-"garden variety" damages....................................................................................................36

      A.  Governing law ...........................................................................................36

      B.  Application ................................................................................................39

      C.  Diagnoses and prescriptions......................................................................43

Conclusion .................................................................................................................45

# TABLE OF AUTHORITIES

## Cases

*Amphastar Pharmaceuticals, Inc. v. Aventis Pharma SA*,
  2013 WL 12136380 (C.D. Cal. 2013) ...............................................................6

*Asghari-Kamrani v. USAA*,
  2016 WL 8243171 (E.D. Va. 2016) ................................................24, 27, 34

*Automobile Club of New York, Inc. v. Port Authority*,
  297 F.R.D. 55 (S.D.N.Y. 2013) .................................................................18, 35

*Avery Dennison Corp. v. Four Pillars*,
  190 F.R.D. 1 (D.D.C. 1991) ...........................................................................35

*Avila v. Lincoln Property Company Commercial, Inc*,
  2019 WL 3718931 (D.D.C. 2019) ..................................................................43

*Benson v. Rosenthal*,
  2016 WL 1046126 (E.D. La. 2016) ................................................................33

*Blau v. United States*,
  340 U.S. 332 (1951) ................................................................................21, 22

*Bregman v. District of Columbia*,
  182 F.R.D. 352 (D.D.C. 1998) .........................................................................8

*California v. Greenwood*,
  486 U.S. 35 (1988) ..........................................................................................25

*Cardwell v. Davis Polk & Wardwell LLP*,
  2021 WL 4434935 (S.D.N.Y. 2021) .................................................................1

*Carlson, Inc. v. IBM Corp.*,
  2011 WL 13135944 (D. Minn. 2011) ...............................................................8

*Coastal States Gas Corp. v. Department of Energy*,
  617 F.2d 854 (D.C. Cir. 1980) .......................................................................13

*Delaney, Migdail & Young, Chartered v. IRS*,
  826 F.2d 124 (D.C. Cir. 1987) .........................................................................3

*Doe 1 v. Baylor University*,
  320 F.R.D. 430 (W.D. Tex. 2017) ...............................................................9, 35

*Endeavor Energy Resources, L.P. v. Gatto & Reitz, LLC*,
  2017 WL 1190499 (W.D. Pa. 2017) ...............................................................29

*Esnayra v. George Washington University Hospital*,
  2006 WL 8448760 (D.D.C. 2006) ...................................................................................42

*FDIC v. Crowe Horwath LLP*,
  2018 WL 3105987 (N.D. Ill. 2018) ..................................................................................18

*Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.*,
  2007 WL 1726558 (D. Nev. 2007) ...................................................................................27

*Fitzgerald v. Cassil*,
  216 F.R.D. 632 (N.D. Cal. 2003) ................................................................................42, 43

*FTC v. Boehringer Ingelheim Pharmaceuticals, Inc.*,
  778 F.3d 142 (D.C. Cir. 2015) .........................................................................................28

*FTC v. Sysco Corp.*,
  308 F.R.D. 19 (D.D.C. 2015) ...........................................................................................11

*George v. Leavitt*,
  407 F.3d 405 (D.C. Cir. 2005) .........................................................................................31

*Gray v. Romero*,
  2016 WL 6821855 (E.D. Cal. 2016) ................................................................................43

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) .........................................................................................................28

\* *Hickman v. Taylor*,
  329 U.S. 495 (1947) ..................................................................................3, 4, 5, 8, 9, 12, 13

*Hucko v. City of Oak Forest*,
  185 F.R.D. 526 (N.D. Ill. 1999) .......................................................................................43

*In re Aenergy, S.A.*,
  451 F. Supp. 3d 319 (S.D.N.Y. 2020) ..............................................................................18

*In re Allen*,
  106 F.3d 582 (4th Cir. 1997) .............................................................................................6

*In re Grand Jury Subpoenas*,
  571 F.3d 1200 (D.C. Cir. 2009) .......................................................................................25

*In re Imperial Corp.*,
  174 F.R.D. 475 (S.D. Cal. 1997) ................................................................................18, 21

*In re Kellogg Brown & Root, Inc.*,
  796 F.3d 137 (D.C. Cir. 2015) ...........................................................................14, 32, 33, 43

*In re Sealed Case*,
    737 F.2d 94 (D.C. Cir. 1984) ............................................................25

*In re Sealed Case*,
    856 F.2d 268 (D.C. Cir. 1988) ..........................................................12

*In re Sealed Case*,
    146 F.3d 881 (D.C. Cir. 1998) .....................................................12, 29

*In re Sealed Case (Medical Records)*,
    381 F.3d 1205 (D.C. Cir. 2004) ...................................................44, 45

*In re Veiga*,
    746 F. Supp. 2d 27 (D.D.C. 2010) ...................................................35

\* *Jaffee v. Redmond*,
    518 U.S. 1 (1996) ...............................35, 36, 37, 38, 39, 40, 41, 42, 43, 45

*Judicial Watch, Inc. v. DHS*,
    841 F. Supp. 2d 142 (D.D.C. 2012) .................................................30

*Judicial Watch, Inc. v. DOJ*,
    432 F.3d 366 (D.C. Cir. 2005) ............................................................3

*Kalinoski v. Evans*,
    377 F. Supp. 2d 136 (D.D.C. 2005) ............................................42, 43

\* *Koch v. Cox*,
    489 F.3d 384 (D.C. Cir. 2007) ...............32, 33, 35, 36, 37, 38, 39, 40, 41, 42, 43, 45

*Liles v. Stuart Weitzman, LLC*,
    2010 WL 11505129 (S.D. Fla. 2010) .................................................8

*Manufacturers Collection Co. v. Precision Airmotive, LLC*,
    2014 WL 2558888 (N.D. Tex. 2014) ...........................................18, 35

*Massachusetts v. First National Supermarkets, Inc.*,
    112 F.R.D. 149 (D. Mass. 1986) ..................................................10, 11

*Menasha Corp. v. DOJ*,
    707 F.3d 846 (7th Cir. 2013) ...........................................................29

*National Association of Criminal Defense Lawyers v. DOJ*,
    844 F.3d 246 (D.C. Cir. 2016) ...................................................5, 7, 28

*Nemeroff v. Ableson*,
    620 F.2d 339 (2d Cir. 1980) ............................................................28

*Oracle USA, Inc. v. Rimini Street, Inc.*,
  2020 WL 5750850 (D. Nev. 2020) ...........................................................20, 21

*Orbit One Communications, Inc. v. Numerex Corp.*,
  255 F.R.D. 98 (S.D.N.Y. 2008) ......................................................................21

*OTS v. Ernst & Young*,
  795 F. Supp. 7 (D.D.C. 1992) ........................................................................35

*OTS v. Vinson & Elkins, LLP*,
  124 F.3d 1304 (D.C. Cir. 1997) ......................................................................5

*Oxbow Carbon & Minerals LLC v. Union Pacific Railroad Co.*,
  322 F.R.D. 1 (D.D.C. 2017)....................................................................12, 28

*Plumbers & Pipefitters v. Cisco Systems, Inc.*,
  2005 WL 1459555 (N.D. Cal. 2005) ...............................................................8

*Questcor Pharmaceuticals, Inc.*,
  2014 WL 12581784 (C.D. Cal. 2014).............................................................6

*Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*,
  32 F.3d 851 (3d Cir. 1994)..........................................................31, 32, 40

*Rockwell International Corp. v. DOJ*,
  235 F.3d 598 (D.C. Cir. 2001) ......................................................................12

*SEC v. Collins & Aikman Corp.*,
  256 F.R.D. 403 (S.D.N.Y. 2009) ..............................................................6, 7

*SEC v. Lavin*,
  111 F.3d 921 (D.C. Cir. 1997) ..........................................21, 25, 39, 42

*SEC v. Lines Overseas Management, Ltd.*,
  2007 WL 581909 (D.D.C. 2007) ...................................................................20

*SEC v. Thrasher*,
  1996 WL 125661 (S.D.N.Y. 1996)...............................................19, 20, 33

*Shapiro v. DOJ*,
  969 F. Supp. 2d 18 (D.D.C. 2013) ..................................................................7

*Shelton v. American Motors Corp.*,
  805 F.2d 1323 (8th Cir. 1986) .........................................................................6

*Sporck v. Peil*,
  759 F.2d 312 (3d Cir. 1985)......................................................................5, 13

*St. John v. Napolitano*,
    274 F.R.D. 12 (D.D.C. 2011)..........................................................................20, 43

*Stein v. SEC*,
    266 F. Supp. 3d 326 (D.D.C. 2017)...............................................................4, 29

*Teledyne Instruments, Inc. v. Cairns*,
    2013 WL 5781274 (M.D. Fla. 2013) ...................................................................18

*Tracy v. NVR, Inc.*,
    250 F.R.D. 130 (W.D.N.Y. 2008)........................................................................10

*Trammel v. United States*,
    445 U.S. 40 (1980)......................................................................................35, 36

*United States v. All Assets Held at Bank Julius Baer & Company, Ltd.*,
    270 F. Supp. 3d 220 (D.D.C. 2017) ....................................................................10

*United States v. AT&T*,
    642 F.2d 1285 (D.C. Cir. 1980) ..........................................................................12

*United States v. Babarinde*,
    126 F. Supp. 3d 22 (D.D.C. 2015) ......................................................................44

*United States v. Deloitte LLP*,
    610 F.3d 129 (D.C. Cir. 2010) ......................................................................12, 31

*United States v. Diabetes Treatment Centers of America, Inc.*,
    235 F.R.D. 521 (D.D.C. 2006)..............................................................................8

*United States v. Duran*,
    884 F. Supp. 537 (D.D.C. 1995) .........................................................................24

*United States v. Gericare Medical Supply Inc.*,
    2000 WL 33156442 (S.D. Ala. 2000) ...........................................................34, 35

*United States v. Nobles*,
    422 U.S. 225 (1975)............................................................................................13

*United States v. Philip Morris Inc.*,
    347 F.3d 951 (D.C. Cir. 2003) ............................................................................28

*United States v. Salerno*,
    505 U.S. 317 (1992)......................................................................................32, 40

*United States v. Taylor*,
    92 F.3d 1313 (2d Cir. 1996)................................................................................22

*United States v. White*,
    887 F.2d 267 (D.C. Cir. 1989) ...................................................................................14

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981)......................................................................................25, 36, 41

*Vanderbilt v. Town of Chilmark*,
    174 F.R.D. 225 (D. Mass. 1997) ...............................................................................43

**Statutes and rules**

Federal Rule of Civil Procedure 1 .......................................................................15, 19

Federal Rule of Civil Procedure 26 ........................................................................ passim

Federal Rule of Civil Procedure 34 ............................................................................8

Federal Rule of Evidence 501.............................................................................41, 45

S.D.N.Y.-E.D.N.Y. Local Rule 26.2................................................................19, 20, 26

## INTRODUCTION

Jones Day seeks to create the impression that Plaintiffs have not complied with their discovery obligations.  That impression is a false one.

The deadline for the completion of document discovery has now passed.  Jones Day has produced 4763 pages of documents to Plaintiffs and another 2658 to Julia alone.  Plaintiffs have produced 4300 pages—an amount comparable to Jones Day's, even though Jones Day has far more resources and far more relevant documents, including because it committed the illegal acts at issue here.  Under the circumstances, Jones Day's production is small both in relation to Plaintiffs' and when compared to other similar cases.  For instance, in a single-plaintiff Title VII suit now pending against another large firm, that firm produced "over 100,000 pages."  *Cardwell v. Davis Polk & Wardwell LLP*, 2021 WL 4434935, at *1 (S.D.N.Y. 2021).  Plaintiffs do not want 100,000 pages.  But any notion that discovery against Defendants here has been excessive is no longer tenable.

Jones Day points out that Plaintiffs produced a two-line privilege log while document discovery was ongoing.  Mot. 1.  At the time that log was created, Plaintiffs had produced 2207 pages of documents, but from categories with no tendency to include privileged material— financial statements, Julia's text messages with a Jones Day lawyer, and documents relating to Mark's job search.  While Plaintiffs saw no value in producing a preliminary log at that point, Jones Day demanded it and Plaintiffs complied.  Now Plaintiffs have substantially completed their document productions.  On the same day that document discovery closed, Jones Day filed its motion to compel.  If not for that motion, Plaintiffs would have produced a final privilege log by now.  In light of Jones Day's motion, however, Plaintiffs here seek the Court's guidance as to the appropriate and proportional means of meeting their obligation under Rule 26(b)(5).  The Court should deny Jones Day's motion and enter Plaintiffs' proposed protective order.

**ARGUMENT**

I.      **The identities of the individuals and documents that an attorney consults in anticipation of litigation are protected from discovery by the work-product doctrine.**

Jones Day's Document Request 55 and Interrogatory 1 raise the same basic question about discovery into a party's preparation for and conduct of litigation.  Request 55 demands production of "[a]ll documents reviewed or relied upon by Plaintiffs in preparation of the Complaints" filed in this action.  Plaintiffs objected that the request is definitionally directed to protected work product because it seeks discovery into Plaintiffs' drafting of their pleadings.  Interrogatory 1 demands that Plaintiffs "[i]dentify each Person whom [Plaintiffs] conferred or consulted with regarding Jones Day's parental and/or disability leave policies at any time prior to the January Email."  Plaintiffs identified numerous individuals, but declined on work-product and relevance grounds to identify third parties that Plaintiffs spoke to in anticipation of litigation.

Jones Day's key move here is to conflate two distinct concepts: (1) the identification of documents and witnesses *that are relevant* and (2) the identification of that set of the relevant documents and witnesses *that counsel actually looked at or spoke to in anticipation of litigation*. Everyone agrees about the first concept: Subject to other limits such as proportionality, a party may properly seek production of relevant documents and identification of witnesses with relevant information.  Jones Day has propounded discovery requests seeking such documents and information, and in response Plaintiffs have produced thousands of pages of documents and identified many witnesses.

The question before the Court pertains to the second concept: May a party demand that opposing counsel point out the particular selection of relevant documents that counsel chose to look at while drafting a complaint, or the particular individuals that counsel chose to speak to in the course of preparing for litigation?  For the following reasons, the answer is no.

**A.** **The work-product doctrine.** The Supreme Court created the work-product doctrine in *Hickman v. Taylor*, 329 U.S. 495, 500 (1947). *Hickman* arose out of a tugboat accident. *Id.* at 497-98. Anticipating tort claims, the tugboat company hired a lawyer, who "interviewed the survivors and took statements from them with an eye toward the anticipated litigation." *Id.* at 498. In discovery, a plaintiff demanded those statements. *See id.* at 498-99. The company objected, and the Supreme Court ultimately held that "the information here sought was part of the 'work product of the lawyer' and hence privileged from discovery." *Id.* at 500. The Court explained:

> Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney. … In performing his various duties, … it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways … the "Work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own.

*Id.* at 510-11. "The work product privilege enables a lawyer to develop his mental impressions and legal theories without fear of having his adversaries rummage through them." *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 126 (D.C. Cir. 1987). It "should be interpreted broadly and held largely inviolate." *Judicial Watch v. DOJ*, 432 F.3d 366, 369 (D.C. Cir. 2005).

**B.** **Application.** In demanding discovery into which documents Plaintiffs looked at while drafting the complaints and which individuals Plaintiffs spoke to in anticipation of litigation, Jones Day disregards *Hickman*'s teaching that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties." 329 U.S. at 510.

1. **Selection of documents reviewed in drafting complaints.**   Apparently recognizing that its request is improper, Jones Day tries to recast this as a dispute about "documents that relate to" (or "support") "allegations [that Plaintiffs] made in their complaints."  Mot. 7.  But Request 55 actually demands production of "[a]ll documents *reviewed or relied upon* by Plaintiffs in preparation of the Complaints."  Plaintiffs "object[ed] pursuant to the work-product doctrine to this request for the production (and thereby identification) of documents that they considered in connection with the preparation of their pleadings."  Of course, many of the underlying documents responsive to the request are themselves discoverable to the extent targeted by appropriate requests (exceptions include legal authorities, drafts, and notes prepared in anticipation of litigation).  Plaintiffs have never suggested that an attorney's decision to consult an otherwise-discoverable document cloaks it with immunity from discovery through a proper request, such as a request for documents that relate to a particular allegation.  Indeed, Plaintiffs have agreed to search for documents responsive to *dozens* of Jones Day's demands for documents "relating to" allegations in the complaints.  The only question is whether a request whose criterion is whether the attorney looked at a given document while drafting a pleading is a proper request.

Such a request is improper.  "The defining feature of work-product is that it reflects the attorney's thought processes, mental impressions, and theories; compilations of data or documents may thus constitute work product when the act of culling, selecting or ordering documents or data reflects the attorney's opinion as to their relative significance in the preparation of the case or the attorney's legal strategy."  *Stein v. SEC*, 266 F. Supp. 3d 326, 349 (D.D.C. 2017) (quotation marks omitted).  The compilation of documents that an attorney chooses to consult in drafting a complaint surely fits the bill.  Again, *Hickman* says that "[p]roper preparation of a client's case demands that [counsel] *assemble information, sift what he considers to be the relevant from the irrelevant facts*,

prepare his legal theories and plan his strategy without undue and needless interference." 329 U.S.

at 511 (emphasis added); *see also OTS v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1308 (D.C. Cir.

1997) ("At some point, … a lawyer's factual selection reflects his focus; in deciding what to

include and what to omit, the lawyer reveals his view of the case.").

    The D.C. Circuit addressed a similar issue in *NACDL v. DOJ*, where it held that the DOJ's

"compilations of cases" for internal use by its litigating attorneys were protected work product:

> To be sure, the Blue Book contains certain information—such as "compilations of cases"—that may come with a seeming air of neutrality if considered in strict isolation.  But disclosure of the publicly-available information that a lawyer has decided to include in a litigation guide—such as citations of (or specific quotations from) particular judicial decisions and other legal sources—would tend to reveal the lawyer's thoughts about which authorities are important and for which purposes.  The Blue Book, for instance, does not include lists of cases in a vacuum. It instead "offers compilations of cases that prosecutors can use to support different arguments" in litigation as well as "[c]ases illustrating potential pitfalls that prosecutors should avoid" when conducting discovery.  That sort of information squarely implicates the work-product privilege.

844 F.3d 246, 256 (D.C. Cir. 2016) (citations omitted).  By the same token, disclosure of the

compilation of documents that Plaintiffs decided to consider in drafting their complaints would

reveal Plaintiffs' thoughts about which documents are important and for which purposes.  "That

sort of information squarely implicates the work-product privilege."  *Id.*  Indeed, Request 55

demands (among other things) the legal authorities that Plaintiffs deemed important enough to

review in drafting their pleadings—exactly the material at issue in *NACDL*.

    *Sporck v. Peil* addressed a request for the compilation of documents selected to prepare a

witness for a deposition.  759 F.2d 312, 314-15 (3d Cir. 1985).  The defendant "concede[d] that

the individual documents that comprise the grouping are not attorney work product, but argue[d]

that the selection process itself represents defense counsel's mental impressions and legal opinions

as to how the evidence in the documents relates to the issues and defenses in the litigation."  *Id.* at

315.  The Third Circuit agreed: "Because identification of the documents as a group will reveal

defense counsel's selection process, and thus his mental impressions, … identification of the documents as a group must be prevented to protect defense counsel's work product."  *Id.*; *see also id.* at 316 ("the selection and compilation of documents by counsel in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product"); *In re Allen*, 106 F.3d 582, 608 (4th Cir. 1997) ("This choice and arrangement [of records] constitutes opinion work product because [counsel's] selection and compilation of these particular documents reveals her thought processes and theories regarding this litigation."); *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1329 (8th Cir. 1986) ("This mental selective process reflects [counsel's] legal theories and thought processes, which are protected as work product.").

Courts applying these principles hold that a request for the documents that counsel reviewed in drafting a pleading is improper.  *See, e.g.*, *In re Questcor Pharmaceuticals, Inc.*, 2014 WL 12581784, at *2 (C.D. Cal. 2014) (request for "'documents and communications' upon which counsel relied in drafting the complaint … necessarily call[s] for Plaintiffs' counsel's work product" in the form of "a compilation of the documents and communications they deemed significant enough to rely on in drafting the complaint"); *Amphastar Pharmaceuticals, Inc. v. Aventis Pharma SA*, 2013 WL 12136380, at *6 (C.D. Cal. 2013) (refusing to compel response to request for documents "reviewed or relied upon by you when drafting[] your opposition" because "the RFPs clearly seek information protected by the work product doctrine").

Jones Day's citations are inapposite.  In *SEC v. Collins & Aikman Corp.*, the defendant propounded 54 discovery requests on the SEC, which responded by producing "1.7 million documents."  256 F.R.D. 403, 407 (S.D.N.Y. 2009).  The defendant complained that "the SEC failed to identify documents responsive to requests for documents supporting particular factual allegations in the Complaint, preferring instead to 'dump' 1.7 million potentially responsive

documents on [the defendant] and then suggesting that he is capable of searching them to locate those that are relevant." *Id.*  The SEC had "already segregated documents into 'approximately 175 file folders' that correlate to specific factual contentions," but it refused to share its foldering scheme on work-product grounds.  *Id.* at 408.  The court noted that "[t]he Second Circuit has recognized that the selection and compilation of documents may fall within the protection accorded to attorney work product, despite the general availability of documents from both parties and non-parties during discovery."  *Id.*  But it held that the "compilations of documents that support the factual allegations of a complaint" there at issue were not protected work product.  *Id.*; *see* Fed. R. Civ. P. 34(b)(2)(E)(i).  Here, Jones Day is not asking Plaintiffs to identify which documents correspond to which of its requests for documents supporting allegations in the complaint, but rather to produce the particular compilation that Plaintiffs looked at when drafting the complaints.

The phrase of *Shapiro v. DOJ*, 969 F. Supp. 2d 18 (D.D.C. 2013), that Jones Day quotes (Mot. 8) is itself just a quotation from *Collins & Aikman* about "documents that *support* the factual allegations of a complaint."  But, again, the set of documents that support the allegations in a complaint is very different from the set of documents that an attorney actually looked at while drafting those allegations (and Plaintiffs have already produced thousands of pages of documents from the former category).  Indeed, *Shapiro* expressly agreed that sometimes "an attorney's compilation of various documents, each of which is itself a proper subject of discovery, constitutes an attorney's opinion work product subject to protection."  *Id.* at 31.  It rejected work-product protection for a "Brief Bank" compiled for internal use by DOJ attorneys because of the "paucity of information" it had about the compilation and because DOJ compiled the briefs without a "specific claim" in mind.  *Id.* at 32-34.  That holding does not survive the D.C. Circuit's decision in *NACDL v. DOJ*, 844 F.3d at 255-56.  Anyway, it is a far cry from the request at issue here.

*Liles v. Stuart Weitzman, LLC* compelled production of "documents that *support* the allegations of Plaintiff's Complaint." 2010 WL 11505129, at *7 (S.D. Fla. 2010) (emphasis added). *Plumbers & Pipefitters v. Cisco Systems, Inc.* states, correctly, that "[t]here is nothing unusual about a discovery request asking Plaintiffs to produce or identify documents *relating to* or *supporting* allegations made in their FAC." 2005 WL 1459555, at *6 (N.D. Cal. 2005) (emphases added). The same goes for *Bregman v. District of Columbia*, 182 F.R.D. 352, 362 (D.D.C. 1998) (documents that "*pertain* … to the allegations in your complaint" (emphasis added)), and *United States v. Diabetes Treatment Centers of America, Inc.*, 235 F.R.D. 521, 524 (D.D.C. 2006) ("documents *supporting*" allegations (emphasis added)). *Carlson, Inc. v. IBM Corp.*, 2011 WL 13135944, at *3 (D. Minn. 2011), appears to be the only case Jones Day could find that upholds a request like the one at issue here. It contains no reasoning and is incorrect.[2]

Jones Day complains that "Plaintiffs refused even to identify whether documents responsive to Request No. 55 will be produced in response to other requests." Mot. 8. But if an attorney cannot be forced to identify the documents he looked at in drafting a complaint, then he cannot be forced to say whether all such documents have been produced, giving the adversary the chance to propound more requests if there are any stragglers. Jones Day's complaint echoes that of the losing party in *Hickman*, whose lawyer admitted that he wanted the other side's work product "to make sure he overlooked nothing." 329 U.S. at 516 (Jackson, J., concurring). As

---

[2] To be clear, if Jones Day's request were read (contrary to its plain language) to broadly seek "all documents relevant to any allegation in this action," then Plaintiffs would object on grounds of burden, proportionality, and violation of Rule 34(b)(1)(A)'s requirement that a document request "describe with reasonable particularity" what it seeks (the operative complaints run to more than 400 paragraphs). Both sides in this case have propounded numerous requests for documents relating to specified assertions and denials in the pleadings, and both sides have produced in response to some requests while objecting to others. None of that is before the Court.

Justice Jackson observed, though, "[d]iscovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." *Id.*

Last, Jones Day complains that Plaintiffs have not provided a document-by-document log of documents responsive to Request 55 that have not been produced. A document-by-document log is an especially poor fit when the objection itself is not a document-by-document objection but, rather, an objection that the request is directed toward a protected *compilation* of documents that are themselves largely discoverable. The obligation of a party claiming privilege is to provide information sufficient to "enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Plaintiffs claim that a request directed to the set of such documents that opposing counsel looked at in drafting a pleading is improper. Whether Plaintiffs are correct is an abstract question of law; facts about individual documents have no bearing on that question. And a document-by-document log would, if it included meaningful detail, provide the very insight into Plaintiffs' preparation that the work-product doctrine precludes. *See id.* (a log need not "reveal[] information itself privileged"); *Doe 1 v. Baylor University*, 320 F.R.D. 430, 444 (W.D. Tex. 2017) ("The Court agrees with Baylor that much of its work product cannot be itemized in a privilege log because doing so could reveal core attorney work product, such as litigation strategy.").

**2.     Identities of persons consulted in anticipation of litigation.**  Interrogatory 1 demands that Plaintiffs "[i]dentify each Person whom [they] conferred or consulted with regarding Jones Day's parental and/or disability leave policies at any time prior to the January Email." Plaintiffs named many people, but declined to name those spoken to in anticipation of litigation.

**a.**     Just as the work-product doctrine bars discovery into an attorney's choice of documents to review in drafting a filing, it bars discovery into an attorney's choice of witnesses to speak to in anticipation of or during litigation. That is the holding of the thorough opinion in

*United States v. All Assets Held at Bank Julius Baer & Company, Ltd.*, 270 F. Supp. 3d 220 (D.D.C. 2017).  The United States served an interrogatory seeking identification of "all persons with knowledge of the facts."  *Id.* at 222.  Unhappy that the response "referred to hundreds of individuals," the United States served a supplemental interrogatory demanding that the claimant "[i]dentify all natural or legal persons who have been interviewed by Claimant, or from whom statements or documents have been obtained by Claimant."  *Id.*  The claimant acknowledged that his counsel had spoken to "certain persons" among the hundreds identified as witnesses, but "did not identify who these persons were."  *Id.*  The claimant asserted work-product protection over the identities of the interviewed witnesses.  *Id.*  The court acknowledged that "the question of whether [the work-product doctrine] protects the identities of those persons interviewed by an attorney or his agent in anticipation of litigation remains unsettled."  *Id.* at 223-25 (quotation marks omitted).

*All Assets* concludes that "the better-reasoned cases … 'are those that draw a distinction between discovery requests that seek the identification of persons with knowledge about the claims or defenses (or other relevant issues) … and those that seek the identification of persons who have been contacted or interviewed by counsel."  *Id.* at 225 (quoting *Tracy v. NVR, Inc.*, 250 F.R.D. 130, 132-33 (W.D.N.Y. 2008)).  Plaintiffs ask the Court to draw the same distinction.  Jones Day "is free to ask for names of persons with knowledge of the facts, but it is not entitled … to the identification of who among such knowledgeable individuals have been interviewed."  *Id.* (quotation marks omitted).  Such information would reveal "how [Plaintiffs] choose to prepare their case, the efforts they undertake, and the people they interview—all information that falls within the scope of the work-product doctrine."  *Id.* (quotation marks omitted).

In short, "[t]he cases seem to support the distinction between asking the identity of persons with knowledge, which is clearly permissible, and asking the identity of persons contacted and/or

interviewed during an investigation, which is not. … [I]nterrogatories which seek the names of persons interviewed by an adverse party's attorney together with the dates and places of such interviews are improper." *Massachusetts v. First National Supermarkets, Inc.*, 112 F.R.D. 149, 152-53 (D. Mass. 1986).  And Jones Day's citation to *FTC v. Sysco Corp.*, 308 F.R.D. 19, 22 (D.D.C. 2015), is off point.  *Sysco* says nothing about work product and simply states the undisputed rule that the identities of persons with discoverable information are discoverable.

       **b.**     It follows a fortiori that Jones Day is not entitled to discover the identities of other persons spoken to in anticipation of litigation who would have no relevant knowledge but for those discussions and thus are not witnesses in the usual sense.  Two further points support this view.

       *First*, the identities of such individuals are irrelevant.  Jones Day wants to issue subpoenas and attempt to depose "individuals consulted by Plaintiffs," which would be highly burdensome to those individuals and would lead to further disputes.  But while it is generally appropriate to seek the identities of persons "likely to have discoverable information" (*Sysco*, 308 F.R.D. at 22), individuals whose *sole* connection to this case is that they were "consulted … regarding Jones Day's parental and/or disability leave policies" *in anticipation of litigation* do not have "discoverable information" (and certainly are not "likely" to).

       Jones Day says that it "would like to ask those individuals whether they really agree with the premise of Savignac's Email and demand for eight full weeks of additional paid leave—that *any* disability leave for birth mothers is a sham, that an associate who gives birth suffers no disability whatsoever, and that birth mothers can immediately return to practicing law."  Mot. 11. Setting aside that willful mischaracterization of Plaintiffs' position, a third party's personal view about the "premise" or "demand" of the email has no relevance to any claim or defense in this action.   Jones Day makes no effort to satisfy its "burden of … explaining how the requested

information is relevant." *Oxbow Carbon & Minerals LLC v. Union Pacific Railroad Co.*, 322 F.R.D. 1, 5-6 (D.D.C. 2017) (quotation marks omitted).

Moreover, material "prepared in anticipation of litigation or for trial *by or for* [a] party" is protected work product. Fed. R. Civ. P. 26(b)(3)(A) (emphasis added). Thus, to the extent that such individuals discussed Plaintiffs' "demand" or "belief[s]" (Mot. 10-11) during conversations with Plaintiffs while Plaintiffs anticipated litigation, the work-product doctrine precludes Jones Day from deposing them about the conversations, which constitute "mental impressions, conclusions, opinions, or legal theories … concerning the [anticipated] litigation" that "the court … must protect against disclosure." Fed. R. Civ. P. 26(b)(3)(B). As with the identities of Jones Day associates, staff, and contractors who have knowledge of this case, the identities of such people are not themselves relevant and would not lead to discoverable information.[3]

*Second*, the identities of persons consulted in anticipation of litigation fall within the work-product doctrine's policy "that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman*, 329 U.S. at 510; *see also In re Sealed Case*, 856 F.2d 268, 273 (D.C. Cir. 1988) ("The work product doctrine reflects the strong public policy against invading the privacy of an attorney's course of preparation."). "Without a strong work-product privilege, lawyers would keep their thoughts to themselves [and] avoid communicating with other lawyers." *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998).

---

[3] It is blackletter law that a party does not lose work-product protection by discussing her claims with third parties. "[W]hile the mere showing of a voluntary disclosure to a third person will generally suffice to show waiver of the attorney-client privilege, it should not suffice in itself for waiver of the work product privilege." *United States v. AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980). Rather, "disclosing work product to a third party can waive protection 'if such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary'" because the material is disclosed to the adversary itself "or a conduit to an adversary." *United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010) (quoting *Rockwell International Corp. v. DOJ*, 235 F.3d 598, 605 (D.C. Cir. 2001)).

"At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975).  "[I]t provides a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980). "Preserving the privacy of preparation that is essential to the attorney's adversary role is the central justification for the work product doctrine." *Sporck*, 759 F.2d at 316.  In the course of litigation, or in anticipation thereof, attorneys regularly consult other individuals—talking through an argument with a colleague, arguing a moot court in front of other attorneys, or interviewing laypersons about how they perceive a potential trial strategy.  These consultations would be severely chilled if they led to subpoenas from an aggressive law firm.  Fortunately, they fall within the "zone of privacy" provided by the work-product doctrine.  *Coastal States*, 617 F.2d at 864.

Were the law otherwise, Plaintiffs would be entitled to demand the identities of all Jones Day personnel who have worked on this action, and all the people those people talked to about this case.  Such individuals presumably have *relevant* information.  But the information would not be *discoverable*, because it would have been obtained in the course of litigating the case.  There would thus be no legitimate justification for an interrogatory demanding, say, the identities of all associates who have recorded time to this matter, or all attorneys who serve as moot court judges in connection with the case.  Such an interrogatory would rightly be seen as a harassing and improper intrusion into the opposing party's conduct of the suit.  "Certainly nothing in the tradition or practice of discovery … would have suggested that [the Rules] would authorize such a practice as here proposed." *Hickman*, 329 U.S. at 519 (Jackson, J., concurring).

13

**c.**      Finally, Jones Day contends (Mot. 11) that Plaintiffs may have waived privilege with respect to the individuals referenced in this sentence of their January demand email: "We have also discussed the matter with other competent attorneys."   Jones Day halfheartedly argues that "Plaintiffs cannot use their consultations with professionals as a 'sword' to support the legitimacy of their claims, and then use the work-product protection as a shield to prevent access to information which they have made relevant."  Mot. 11 (brackets and quotation marks omitted). This argument is frivolous.   Plaintiffs are not using any communications with attorneys to "support" claims or defenses in this litigation.  Jones Day pretends that Plaintiffs pointed to the "other competent attorneys" in their complaint "as a basis for Savignac's … good faith' belief in the legitimacy of [Plaintiffs'] demand."  Mot. 11.  But the complaint does not say that.  Plaintiffs have never suggested (and do not claim) that such communications establish good faith.

Nor have Plaintiffs disclosed the attorneys' views or the content of any communication.  It is well established that "a 'general assertion lacking substantive content that one's attorney has examined a certain matter is not sufficient to waive the attorney-client privilege.'"  *In re Kellogg Brown & Root, Inc.*, 796 F.3d 137, 145-46 (D.C. Cir. 2015) (quoting *United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989)).  That is why then-Judge Ginsburg, writing for the D.C. Circuit in *White*, rejected the district court's finding that the defendant had waived the privilege when he stated that his attorneys "had thoroughly reviewed the [allegedly illegal] decision … after … looking at the matter from nine different ways."  887 F.2d at 270-71.  "An averment that lawyers have looked into a matter does not imply an intent to reveal the substance of the lawyers' advice. Where a [party] neither reveals substantive information, nor prejudices the [opposing party's] case, nor misleads a court by relying on an incomplete disclosure, fairness and consistency do not require the inference of waiver."  *Id.*  Were it otherwise, Jones Day would itself have waived privilege

with its statement that, "" Plaintiffs' Mot. to Compel App. 18a.[4]

## II.   Plaintiffs' categorical assertions of privilege are consistent with Rule 26(b)(5).

Jones Day demands that Plaintiffs create a document-by-document privilege log covering "[a]ll documents concerning the January and August Emails" and all communications between Plaintiffs during a period of more than two years between their marriage in April 2017 and the commencement of this litigation in August 2019.   Such a log would run to hundreds if not thousands of entries and be immensely and disproportionately burdensome to create; would do nothing to "secure the just, speedy, and inexpensive determination" of this action, Fed. R. Civ. P. 1; and is not required by any rule.   Plaintiffs are appropriately complying with Rule 26(b)(5).

A.   **Jones Day's log.**  Jones Day's privilege log provides a helpful benchmark for its demand, since Jones Day surely does not expect pro se plaintiffs to create a more detailed one.

As updated following the close of document discovery, Jones Day's log runs to 161 entries. It has eleven columns.   Columns 1-3 provide a privilege ID number and, for the handful of documents that have been partially produced (with redactions), Bates numbers.   Column 4 is the document's date.   Columns 5-9 name the custodian or, where the document is an email chain (nearly all of them are), the senders and recipients of emails in the chain.   Column 10 states the asserted privilege(s).   And column 11 provides a "Description," which is limited to the generic type of document (usually "email chain" or "email chain and attachments") and boilerplate reciting the definition of the privilege (as in "Confidential email chain and attachments reflecting

---

[4] Jones Day says that "Plaintiffs do not claim they had an attorney-client relationship with these 'other competent attorneys,' nor do they assert attorney-client privilege over the documents." Mot. 11.   That is a mischaracterization of Plaintiffs' response to this interrogatory.   This is a dispute over an interrogatory seeking only the *identities* of persons consulted.   Identities of attorneys are not protected by the attorney-client privilege.   And the dispute has nothing to do with documents.

communications between attorney and client for the purpose of providing or obtaining legal assistance regarding an employment dispute").

Equally relevant is what Jones Day's log does *not* include.  *First*, it does not include an entry for each withheld document.  Rather, most of the entries are either an email *chain* or an email chain "and attachment(s)."  An email chain, of course, is not a single communication but a series of any number of communications; the individual emails in the chain may have been sent on different dates and even weeks or months apart.  And the fact that they are grouped into a chain results from the whim of the senders; nothing prevented the Jones Day personnel on the emails from communicating about this case in a single chain comprising hundreds of emails, resulting in a one-line privilege log.  More significantly, where an email includes one or more attachments, there is no information about the attachment (or even any indication of the number of attachments). Attachments are often more important than the emails to which they are attached (e.g., drafts of Jones Day's press release), but the attachments mentioned on the log are neither described nor logged separately.  Their authors are not identified.  And because the only date given is the date of the email that happens to be last in the chain, the log provides no information about when earlier emails were sent or when attached documents were created.  In short, Jones Day produced a categorical log that categorizes withheld documents on an arbitrary chain-by-chain basis.[5]

*Second*, the log provides no meaningful description of logged documents beyond generic document categories like "email chain."  For instance, it does not provide the subject lines of logged email chains, or substantive descriptions like "research memo regarding retaliation claim" or "draft press release," or the number of pages or individual emails that each entry represents.

---

[5] The parties have agreed that when emails are *produced*, the producing party need only produce the last email in a chain, so long as it includes all information in the earlier emails.  But Jones Day's chain-by-chain entries do not include the information that an email-by-email log would.

*Third*, the log provides no information about the individuals identified as custodians or as senders or recipients of emails.  Most obviously, while most of the people named on the log appear to have been Jones Day personnel at the relevant times, the log does not say whether Jones Day is claiming that a given individual was acting as counsel or as client.  Nor does it say what positions the individuals hold or held at Jones Day (some of this information is not publicly available).  And, for documents attributed to a custodian, the log does not identify the document's author(s).

*Fourth*, Jones Day's log provides no information that might be thought relevant to the potential *waiver* of the claimed privileges, such as the identities of persons who reviewed logged documents (other than email recipients) or whether their contents were otherwise shared.

In sum, Jones Day's privilege log is not a document-by-document log.  Rather, Jones Day chose to make its log on a categorical basis, treating each email-chain-and-attachments family as a single category and providing virtually no information for emails other than the one that happens to be the final one in a chain.  While Plaintiffs' own motion to compel mentions some of these omissions, Plaintiffs have not demanded that Jones Day provide a better log, much less moved the Court to compel one.  Rather that make that procedural argument, Plaintiffs' motion points to serious substantive deficiencies in Jones Day's assertions of privilege.

**B.    Governing law.**  While Jones Day demands that Plaintiffs create a document-by-document log, no rule calls for such a log.  The relevant rule is Rule 26(b)(5), which provides:

(A) *Information Withheld.*  When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

17

Plaintiffs have expressly made their claims of privilege.  The question is whether Plaintiffs have adequately described the documents so as to "enable other parties to assess the claim[s]."  Is a document-by-document log required, or do categorical assertions of privilege suffice?

Though Jones Day never acknowledges the possibility of a categorical privilege log, that method has always been recognized as a potentially appropriate means of complying with Rule 26(b)(5).  Rule 26(b)(5) was added in 1993, and the Advisory Committee Notes for the 1993 Amendment explain:

> The party [claiming privilege] must also provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection. … The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection.  Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, *but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories*.

Fed. R. Civ. P. 26, Advisory Committee Notes for the 1993 Amendment (emphasis added).  In short, "sometimes deciding a privilege dispute does not require the make-work of a document-by-document privilege log, so long as asserting *categories* of documents subject to the privilege is clear enough."  *FDIC v. Crowe Horwath LLP*, 2018 WL 3105987, at *6 (N.D. Ill. 2018).[6]

---

[6] *See also, e.g.*, *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 325 (S.D.N.Y. 2020) ("There is little doubt that both the Federal and Local Rules permit categorical privilege logs." (cleaned up)); *Manufacturers Collection Co. v. Precision Airmotive, LLC*, 2014 WL 2558888, at *4 (N.D. Tex. 2014) ("it is not the case that identification of a specific document is necessary … to raise a challenge to a privilege or work-product claim"); *Automobile Club of New York, Inc. v. Port Authority*, 297 F.R.D. 55, 59-60 (S.D.N.Y. 2013) ("a categorical privilege log is adequate if it provides information about the nature of the withheld documents sufficient to enable the receiving party to make an intelligent determination about the validity of the assertion of the privilege," and "there is a strong justification for a categorical log when thousands of documents have been withheld"); *Teledyne Instruments, Inc. v. Cairns*, 2013 WL 5781274, at *16 (M.D. Fla. 2013) ("The Court has the discretion to allow a party to produce a categorical privilege log."); *In re Imperial Corp.*, 174 F.R.D. 475, 477 (S.D. Cal. 1997) ("nowhere in [Rule] 26(b)(5) is it mandated that a document-by-document privilege log is required" (citing Advisory Committee Notes)).

The Local Rules of this District do not address privilege logs.  But they are addressed in detail by the shared Local Rules of S.D.N.Y. and E.D.N.Y.—two districts that are generally at the forefront of developments in the law governing civil discovery.  Their Local Rule 26.2 requires that a party claiming privilege over documents state:

> (i) the type of document, *e.g.*, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other.

S.D.N.Y-E.D.N.Y. Local Rule 26.2(a)(2)(A).  The rule expressly blesses categorical logs:

> Efficient means of providing information regarding claims of privilege are encouraged, and parties are encouraged to agree upon measures that further this end.  For example, when asserting privilege on the same basis with respect to multiple documents, *it is presumptively proper to provide the information required by this rule by group or category*.  A party receiving a privilege log that groups documents or otherwise departs from a document-by-document or communication-by-communication listing may not object solely on that basis, but may object if the substantive information required by this rule has not been provided in a comprehensible form.

S.D.N.Y-E.D.N.Y. Local Rule 26.2(c) (emphasis added).

Proportionality and efficiency are no less relevant to privilege logs than to other aspects of discovery.  *See* Fed. R. Civ. P. 1, 26(b).  Thus, the 1993 Advisory Committee Note to Rule 26(b)(5) observes that parties "can seek relief through a protective order under [Rule 26(c)] if compliance with [Rule 26(b)(5)] would be an unreasonable burden."  *See also* Fed. R. Civ. P. 26(c) (empowering court to enter order "to protect a party … from … undue burden" in discovery).  A categorical log is "certainly" proper "if (a) a document-by-document listing would be unduly burdensome and (b) the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well grounded."  *SEC v. Thrasher*, 1996 WL 125661, at *1 (S.D.N.Y. 1996).  The Committee Note to the S.D.N.Y.-E.D.N.Y. rule echoes these factors: "With the advent of electronic discovery and the

proliferation of e-mails and e-mail chains, traditional document-by-document privilege logs may be extremely expensive to prepare, and not really informative to opposing counsel and the Court."

Plaintiffs respectfully request that the Court enter a protective order stating that Plaintiffs (1) may comply with their obligations under Rule 26(b)(5) by providing the information required by S.D.N.Y.-E.D.N.Y. Local Rule 26.2(a) to the same extent as Jones Day's own log (except to the extent that certain information is itself privileged, *see* Fed. R. Civ. P. 26(b)(5)(A)(ii)); and (2) may do so in categorical form, as is "presumptively proper" under S.D.N.Y.-E.D.N.Y. Local Rule 26.2(c). While the Local Rule obviously is not itself applicable to this action, the Court has broad discretion over how parties comply with Rule 26(b)(5). The requirements applied to wealthy companies in the nation's commercial center are not too lax for pro se discrimination plaintiffs. *See also St. John v. Napolitano*, 274 F.R.D. 12, 21 (D.D.C. 2011) (allowing plaintiff to produce "a categorical privilege log"); *SEC v. Lines Overseas Management, Ltd.*, 2007 WL 581909, at *1 n.5 (D.D.C. 2007) ("If such a document-by-document log would be unduly burdensome, the law provides for some reasonable adjustment" (citing cases permitting categorical logs)).

Jones Day's sole objection appears to be that it would prefer a document-by-document log. "In the absence of any articulated showing of need, it cannot justify its demand for such a detailed log." *Thrasher*, 1996 WL 125661, at *2. The proposed protective order would appropriately resolve the parties' dispute on this point. *See id.*[7]

---

[7] While Jones Day's discovery litigators are surely familiar with categorical privilege logs, they studiously avoid using the word "categorical" or acknowledging the possibility that anything other than a document-by-document (or chain-by-chain) log could satisfy Rule 26(b)(5). Instead, they point to cases that frown on "blanket" assertions of privilege. That courts frown on conclusory "blanket objections" does not change the fact that categorical logs are proper. *See, e.g.*, *Oracle USA, Inc. v. Rimini Street, Inc.*, 2020 WL 5750850, at *4 (D. Nev. 2020) ("The Court agrees that 'blanket objections' are improper … However, the Court disagrees that such documentation *must* be in the form of a privilege log. … [A] detailed privilege log 'may be unduly burdensome when

C. **Spousal privilege.** "[T]he confidential marital communications privilege …
protects from disclosure private communications between the spouses in the confidence of the
marital relationship." *SEC v. Lavin*, 111 F.3d 921, 925 (D.C. Cir. 1997).

1. **Privilege log.** Plaintiffs' privilege log (Mot. 1) claims privilege over
"[c]onfidential communications between Mark and Julia after their marriage on April 18, 2017."
Thus, the log covers only confidential communications made between the parties to a valid
marriage during the existence of that marriage. It provides all information relevant to assessing
the claim of privilege to at least the same extent at Jones Day's log does. It satisfies Rule 26(b)(5).

Not so fast, Jones Day says. It observes that spousal communications may not be
"confidential" if, for some reason, the spouse making the communication actually does not want
it to be confidential, or if it is made under circumstances inconsistent with confidentiality. And
even where a communication is confidential when made, the spousal privilege (like other
privileges) can be waived if the communication is later disclosed. Jones Day says that it needs a
document-by-document log to assess whether each individual communication between Plaintiffs
either was not confidential when made or was later disclosed.

"This contention ignores the rule that marital communications are presumptively
confidential." *Blau v. United States*, 340 U.S. 332, 333 (1951). *Blau* rejected the notion that the
defendant "should be denied the benefit of the privilege because he failed to prove that the
information was privately conveyed"—rather, the opposing party bore the burden of proving that

───────────────

voluminous documents are claimed to be privileged or protected, particularly if the items can be
described by categories'" (quoting Fed. R. Civ. P. 26, 1993 Advisory Committee Notes)); *Orbit
One Communications, Inc. v. Numerex Corp.*, 255 F.R.D. 98, 109 (S.D.N.Y. 2008) ("Lowenstein
may not assert a blanket claim of privilege," but "may provide a categorical privilege log rather
than a traditional, itemized privilege log"); *Imperial*, 174 F.R.D. at 477 ("'blanket objections …
are improper," but "nowhere in [Rule] 26(b)(5) is it mandated that a document-by-document
privilege log is required").

the communication was *not* private.  *Id.*  Other cases confirm that the party opposing the privilege has "the burden of defeating this [confidentiality] presumption by showing that the communication was not made privately."  *United States v. Taylor*, 92 F.3d 1313, 1332 (2d Cir. 1996).  Jones Day has not met its burden, or even offered any basis to doubt Plaintiffs' claim of confidentiality.

And even setting aside the allocation of the burden, Jones Day's demand is absurd.  Confidentiality and non-waiver are, of course, also elements of the privileges that Jones Day asserts.  And Plaintiffs' categorical log on spousal privilege provides just as much information relevant to assessing confidentiality and non-waiver as Jones Day's own log does.

Start with confidentiality.  For each logged email chain, Jones Day offers a boilerplate description limited to a conclusory recitation of the elements of the privilege (e.g., "Confidential email chain reflecting communications between attorney and client for the purpose of obtaining legal assistance regarding an employment dispute").  Each boilerplate description begins with the word "Confidential."  Plaintiffs' categorical log likewise claims privilege only over "Confidential communications."   Repeating the conclusory term "Confidential" innumerable times, as a document-by-document spousal privilege log would do, would not advance the objective of Rule 26(b)(5)—enabling assessment of the claim of privilege—in the slightest.  (And, by contrast to the spousal privilege, there is no "presumption" of confidentiality in the attorney-client context.)[8]

Jones Day's log also provides the names of individuals who sent or received each email.  This information could address *some* concerns about confidentiality, by showing whether a given email was sent to individuals other than the client and its attorneys (though Jones Day does not

---

[8]  Jones Day says that, "[b]ecause the confidential marital communications privilege is not absolute, Plaintiffs cannot meet their burden with a blanket assertion that all communications between them are privileged."  Mot. 14.  To be clear, Plaintiffs' categorical log is expressly limited to communications that are "between Mark and Julia" and "[c]onfidential."  Again, Jones Day's log provides no more information than that (even though it enjoys no confidentiality presumption).

say whether it deems any given individual to be client or attorney, much less offer information to assess the validity of that classification). On this point, too, Plaintiffs' log is at least as good: It applies only to communications "between Mark and Julia." Jones Day's purported concern is that the log does not address *other* potential questions about confidentiality, such as whether the sender subjectively intended the communication to be confidential, or whether a third party was reading over the sender's shoulder while she drafted the communication. *See* Mot. 12-14. But Jones Day's log likewise offers no information relevant to such concerns. Probably no log does.

The same goes for waiver. Jones Day's log offers no information on whether the attorney-client privilege over a given email chain has been waived by disclosure outside the privileged relationship. Jones Day cannot demand more of Plaintiffs than it demands of itself.[9]

In fact, a document-by-document log that tracked Jones Day's to a T would not provide *any* more useful information than Plaintiffs' categorical log *already* provides. Again, five columns on Jones Day's log address the senders and recipients of logged emails. A document-by-document spousal privilege log would merely repeat Mark and Julia's names over and over. The next column on Jones Day's log states the privilege being asserted over the logged communication; the hypothetical spousal privilege log would repeat "Spousal Privilege" countless times. Jones Day's final column ("Description") just says that the document is an email chain and offers a boilerplate recitation of elements of the privilege. The hypothetical spousal privilege log would just repeat "Confidential email [or text] between the parties to a valid marriage" ad nauseum. Aside from

---

[9] Jones Day asserts that any disclosure of one privileged communication invariably waives the privilege over all other communications on the same subject, and speculates in a footnote that some communications between Plaintiffs "may not" be privileged, "depending on the circumstances." Mot. 13, 14 n.7. Jones Day is wrong on the law and the facts. But its speculation is irrelevant to the relief that it actually seeks; a document-by-document log would not assist it. And footnote musings about what "may not" be privileged do not merit a response, much less call for a ruling.

Bates numbers, the only other column on Jones Day's log gives the date of the document.   On most days, Plaintiffs exchange numerous emails and texts.   Jones Day does not attempt to explain how a log with separate (but materially identical) entries for each of those communications would help it assess the claims of spousal privilege.   So long as a communication occurred during the marriage, its date is irrelevant to the privilege.   Jones Day "has failed to demonstrate what would be gained by requiring Plaintiffs to list each document separately, when the only information conceivably missing is the specific date of each email, or the identity of which [Plaintiff] drafted which email."   *Asghari-Kamrani v. USAA*, 2016 WL 8243171, at *3 (E.D. Va. 2016).   Again, Jones Day's own log does not provide that information, except for the very last email in a chain.[10]

  **2.**  **Work emails.**   Jones Day also makes a substantive argument that communications are not confidential "if a spouse did not have a reasonable expectation of privacy in the communication, such as when the spouse uses a work email account or computer to communicate with the other spouse."   Mot. 13.   This argument, for which Jones Day offers only out-of-Circuit citations, is wrong.   It cannot be true that a communication is only "confidential" for privilege purposes if the parties have a "reasonable expectation of privacy" in the Fourth Amendment sense.   For instance, the D.C. Circuit has held that an attorney-client discussion in the cabin of a

---

[10] Jones Day states that "because Plaintiffs have flatly refused to search for responsive documents in their communications, even *they* cannot claim to know in good faith whether responsive documents exist that may not be privileged."   Mot. 14.   But Plaintiffs are aware of their own practices with regard to spousal communications.   They would know, for instance, if it were their practice to show spousal communications to third parties.   If one Plaintiff had sent the other a manifesto that was actually meant to be publicized—the far-fetched fact pattern of Jones Day's lead citation, *United States v. Duran*, 884 F. Supp. 537 (D.D.C. 1995)—then Plaintiffs would be aware of that fact.   And Jones Day surely is not interviewing every author and recipient of every document it claims is privileged in an attempt to ascertain whether a communication that appears to be privileged on its face was truly intended to be confidential, or whether the privilege might have been waived by some later disclosure.   Generally speaking, the burden of such an exercise would be grossly disproportional to its benefits.

commercial airplane was sufficiently confidential where the attorney and client sat next to each other and spoke quietly, though they "could not recall whether other people were seated nearby." *In re Sealed Case*, 737 F.2d 94, 102 (D.C. Cir. 1984).   But there is no Fourth Amendment "reasonable expectation of privacy" over conversations in public.   There is also no reasonable expectation of privacy in documents placed in a trash bag and left at the curb for collection. *California v. Greenwood*, 486 U.S. 35, 40-41 (1988).   But Plaintiffs are unaware of any case holding that throwing out a confidential letter waives the attorney-client or spousal privilege.

Likewise incorrect is the more specific proposition that emails sent on a work email account are not confidential (and thus cannot be covered by any privilege doctrine) if the employer claims the right to "review" such messages, as most employers do.   If the parties to a communication have made a commonsense practical judgment that the communication is *in fact* confidential (that is, that no one is monitoring or eavesdropping), then that should suffice, consistent with *Lavin* and *Sealed Case*.   *See, e.g.*, *Lavin*, 111 F.3d at 930 ("communications remain privileged as long as the holder has acted reasonably in attempting to protect them").   That is plainly the standard that the D.C. Circuit was applying in both cases, and there is no justification for a special standard for communications on work email accounts.   "[T]he scope of a privilege must be clear and predictable for the privilege to serve its purpose," for "'[a]n uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.'"   *In re Grand Jury Subpoenas*, 571 F.3d 1200, 1206 (D.C. Cir. 2009) (quoting *Upjohn Co. v. United States*, 499 U.S. 383, 393 (1981)).   If the parties reasonably believe that no one will actually read or overhear the communication, then it is confidential in the relevant sense, regardless of whether the third party has some theoretical right or ability to do so. The rule applies equally to airplane cabins, office telephone lines, and office email accounts.

Even if the Court were to adopt Jones Day's sweeping rule on this point, however, that would not remotely justify the relief that Jones Day seeks (a document-by-document log). Notably, until it filed its motion, Jones Day had *never advised Plaintiffs that it believes emails sent using work email accounts are not confidential*.  Privilege logs do not generally state which email account a communication was sent from—certainly Jones Day's does not.  Had Plaintiffs gone through the incredible effort of producing a document-by-document log, it would not even include the information that Jones Day apparently views as key to its (heretofore secret) plan to pierce the spousal privilege.  And if Jones Day's concern is the possibility that a handful of responsive emails were sent with work accounts, that concern plainly would not call for a burdensome logging of countless communications made using Plaintiffs' personal email accounts and phones.[11]

**D.    Attorney-client privilege.**    Plaintiffs respectfully request a protective order permitting them to assert attorney-client privilege on a categorical basis consistent with S.D.N.Y.-E.D.N.Y. Local Rule 26.2.  Plaintiffs have collected and reviewed communications with around 15 law firms, nearly all of which follow Mark's termination on January 22, 2019.  Plaintiffs have produced the handful that are responsive and unprivileged (e.g., emails conveying a potential lead for Mark's post-termination job search).  The communications include more than 800 emails; creating a document-by-document log would be highly burdensome.  Plaintiffs therefore propose to serve a categorical privilege log with an entry for each law firm providing: (i) the date range for

---

[11] In any event, Plaintiffs anticipated litigation before either left Jones Day, so any relevant communications from work email accounts with their new employers would be covered by the work-product protection, which is not waived by sharing with those employers. *See* n.3, *supra*.

To the extent that Jones Day is arguing that Plaintiffs have no privilege over emails sent from their *Jones Day* email accounts (rather than accounts of other employers), the Court could order production of that subset of emails if it reaches the question and concludes that they are unprivileged.  Again, Jones Day never raised this issue with Plaintiffs prior to its present motion, and no privilege log would have addressed it.

the communications; (ii) the name of the law firm; (iii) the identities of the senders and recipients

of the communications; (iv) the privilege(s) being asserted; and (v) a description equivalent to the

descriptions in Jones Day's own log.

> As one court reasoned:

> [C]onfidential email communications between Plaintiffs and their attorneys are generally protected by the attorney-client privilege.  Additionally, email communications exchanged between Plaintiffs' counsel during this lawsuit or in anticipation of this lawsuit are generally entitled to protection from disclosure under the attorney work-product doctrine.  If, as Plaintiffs claim, emails regarding such communications are in the hundreds or thousands, requiring Plaintiffs to provide a privilege log for each privileged email communication would be unduly burdensome and not serve the legitimate purposes of discovery under [Rule] 26.

*Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.*, 2007 WL 1726558, at *8 (D. Nev.

2007).  Another court explained:

> [R]equiring Plaintiffs to separately list each of the 439 documents separately would be unduly burdensome for no meritorious purpose.  Inasmuch as the eleven categories Plaintiffs included sufficiently describe the documents so that [the defendant] can assess the privilege claims, requiring Plaintiffs to create a separate listing for each document seems designed to accomplish nothing more than increasing attorneys' fees.

*Asghari-Kamrani*, 2016 WL 8243171, at *4.  The same reasoning applies here.

## III.  Plaintiffs have properly asserted work-product protection over documents concerning the August and January emails.

In August 2018 and January 2019, Plaintiffs sent emails to Jones Day challenging its

discriminatory leave offerings.  Jones Day moves to compel on its Request 9, which demands:

> All documents concerning the January and August Emails, including but not limited to: [1] drafts of the January and August Emails; [2] communications about any potential or actual content of the January and August Emails; [3] communications about any legal authority referenced in any potential or actual content of the January and August Emails; [4] all research done in relation to any potential or actual content of the January and August Emails; [5] all documents reflecting the discussions "with other competent attorneys" referenced in the January Email; and [6] all documents that Plaintiffs contend support their demand in the January Email for eight weeks of additional paid leave for Savignac beyond the ten weeks that Jones Day provides primary caregivers.

Plaintiffs agreed to produce documents in the sixth category.  (Jones Day complains that "Plaintiffs have agreed to produce only documents they believe *support* their demands in the January Email," Mot. 4 n.1, but that is what it asked for.)  Plaintiffs objected to the other five categories "on the ground that [they are] directed to information protected from discovery."  In particular, documents concerning the August and January emails are protected under the work-product doctrine.[12]

> A.      **The documents are work product.**  Request 9 is clearly directed to work product: drafts of Plaintiffs' communications to Jones Day attempting to resolve their claim without litigation (the August and January emails), research in support of that claim, and communications about the content of the August and January emails or research done in relation to those emails. Jones Day's motion does not dispute that Request 9, on its face, is directed to classic examples of work product.  *See NACDL v. DOJ*, 844 F.3d at 256 (disclosure of lawyer's "compilations of cases" "would tend to reveal the lawyer's thoughts about which authorities are important," which "squarely implicates the work-product privilege"); *FTC v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 778 F.3d 142, 146, 147, 149 (D.C. Cir. 2015) (work-product doctrine applies to materials created in connection with attempts to settle anticipated or ongoing litigation);

---

[12] As Jones Day notes (Mot. 4 n.2), Plaintiffs also object on relevance grounds.  See *United States v. Philip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003) (no privilege log necessary until court rules that documents are "otherwise discoverable").  For instance, the legal research that an employee does (and "communications about any legal authority") is plainly irrelevant; the antiretaliation laws do not require a worker to do any research before raising a complaint about workplace discrimination, and Jones Day points to no case that treated such research as legally relevant.  If Plaintiffs' legal view that it is illegal to offer all women eight weeks of sex-based paid leave without regard for disability is either correct or objectively reasonable (as required for it to be protected under Title VII's opposition clause), then it cannot have been in bad faith: By definition, Plaintiffs could not "know" that an objectively reasonable legal view was "wrong." *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("If the law at that time was not clearly established, an official could not … fairly be said to 'know' that the law forbade conduct not previously identified as unlawful."); *Nemeroff v. Ableson*, 620 F.2d 339, 348 (2d Cir. 1980) ("for a finding of bad faith," "there must be 'clear evidence' that the claims are 'entirely without color'").  Jones Day has not met its burden on relevance.  *See Oxbow Carbon*, 322 F.R.D. at 5-6.

*Menasha Corp. v. DOJ*, 707 F.3d 846, 851 (7th Cir. 2013) ("information about litigating strategy, about the strengths and weaknesses of the client's and adversary's cases, about possible terms of settlement [are] kinds of information that the work product privilege shields from an adversary"); *Stein*, 266 F. Supp. 3d at 348 ("classic attorney work product" includes "legal and factual research and analyses"); *Endeavor Energy Resources, L.P. v. Gatto & Reitz, LLC*, 2017 WL 1190499, at *11 (W.D. Pa. 2017) ("The work-product doctrine protects Endeavor's draft demand letters from disclosure. … The comments and revisions on the draft letters are classic forms of work-product").

Instead, Jones Day raises concerns about whether responsive documents might be unprotected either (1) because they were created before Plaintiffs anticipated litigation or (2) because Plaintiffs may have somehow waived the protection. These concerns have no merit.

1.     **When Plaintiffs anticipated litigation.** The work-product protection applies only to materials created in anticipation of litigation. "For a document to meet this standard, the lawyer must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." *Sealed Case*, 146 F.3d at 884. Plaintiffs anticipated litigation over the subject of the August and January emails—the firm's leave offerings for new parents— as of mid-2018 (after they learned that they were expecting a child). The August email and any materials created "concerning" it were created in anticipation of litigation. Jones Day does not deny that it was "objectively reasonable" to see litigation as "a real possibility" in mid-2018. And while it insinuates that Plaintiffs may not have subjectively held that belief, there is no basis for the insinuation. Julia's August 16 email carefully describes the leave offerings and the legal problems with them, asserts that they are "unfairly discriminatory," and asks for equal treatment for her family in connection with the impending arrival of her first child. An attorney could hardly

29

have written such an email without holding "a subjective belief that litigation was a real possibility" if the recipient persisted in violating the law.

Plaintiffs are not withholding as work product documents created before they anticipated litigation.  Because Plaintiffs anticipated litigation before the drafting of Julia's August 2018 email, however, they do not understand Request 9—which seeks categories of documents "concerning the January and August emails"—to reach anything created before they anticipated litigation.  Jones Day suggests that "there is reason to think there are responsive documents from well before Plaintiffs allege they anticipated litigation," because "Plaintiffs admit that they discussed Jones Day's leave policies before they were married in April 2017."  *Id.*  But such documents, created years before the August and January emails, are not responsive to Request 9.  Anyway, Plaintiffs have produced them in response to other requests.

Jones Day also says that documents concerning the January Email might not be work product because the email "discusses not only Savignac's leave demands, but also alleged pay discrimination against Sheketoff," yet Julia "did not anticipate litigation on that claim until after" Jones Day illegally fired her husband in retaliation for the January email.  Mot. 6.  But the January email is a pre-suit demand aimed at Jones Day's discriminatory leave offerings.  Documents concerning that demand email are classic work product.  To the extent that there are documents about discrimination against Julia that were created before Julia anticipated litigation on that claim and do not concern the January email, Plaintiffs have not claimed work-product protection and have produced them unless otherwise privileged (e.g., confidential spousal communications).

2.     **Waiver.**  Jones Day bears the burden of showing waiver of the work-product protection.  *See Judicial Watch, Inc. v. DHS*, 841 F. Supp. 2d 142, 158-59 (D.D.C. 2012).  It posits that "Plaintiffs have likely waived protection over at least a subset of the [responsive] documents"

because Plaintiffs admittedly "communicated about Jones Day's leave policies with numerous Jones Day attorneys and other undisclosed people." Mot. 6. Jones Day suggests that "[a]ny work-product protection would be waived if Plaintiffs shared [responsive documents] with Jones Day's attorneys, who are 'conduit[s] to [Plaintiffs'] adversary.'" *Id.* at 6-7 (quoting *Deloitte LLP*, 610 F.3d at 140). As noted above, the work-product protection generally is not waived when work product is shared with a third party; Jones Day does not suggest that a waiver would have resulted from sharing with "other undisclosed people" who are not Jones Day employees, so its reference to such people is irrelevant. And the notion that sharing with *any* Jones Day employee would waive the privilege because such employees are invariably "conduits" to Jones Day is dubious. But this is all moot: Plaintiffs are not withholding as work product documents concerning the August and January emails that were shared with others who were Jones Day personnel at the time.

Last, Jones Day argues that Plaintiffs "waived protection for the documents they considered in connection with the January Email because they have affirmatively alleged that the email was sent 'in good faith.'" Mot. 7. Jones Day appears to be invoking the implied ("at issue") waiver doctrine. But its argument is unserious. A standard way for a retaliation victim to show that his complaint about discrimination was protected activity is to "demonstrate a good faith, reasonable belief that the challenged practice violates Title VII." *George v. Leavitt*, 407 F.3d 405, 417 (D.C. Cir. 2005). Jones Day is thus saying that every retaliation victim necessarily waives any privilege over communications that could be relevant to the "good faith" of his belief simply by filing suit. But "[r]elevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if" (unlike the documents at issue here) "one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue." *Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*,

31

32 F.3d 851, 864 (3d Cir. 1994).  Parties do not forfeit a privilege "merely by taking a position that the [privileged] evidence might contradict."  *United States v. Salerno*, 505 U.S. 317, 323 (1992).  If the law were otherwise, then litigation over retaliation would be radically different, and there would be many cases reflecting the unique absence of privilege for retaliation plaintiffs. Plaintiffs are aware of no such case, and Jones Day offers none.  And Jones Day asserts as its Sixth Defense that "[a]ll actions by Defendants with respect to Plaintiffs were lawful and were made in good faith compliance with applicable provisions of law."  Dkt. 49 at 39.  If Jones Day's waiver argument is right, then Jones Day has waived privilege over its actions "with respect to Plaintiffs."

It is not true that Plaintiffs have used work-product protection "as both a sword and a shield."  Mot. 7.  They have "neither directly stated" the substance of any privileged material "nor sought any specific relief because of" the substance of that privileged material, and thus have not "'based a claim or defense on the [privileged material].'"  *Kellogg*, 796 F.3d at 147 (quoting *Koch v. Cox*, 489 F.3d 384, 390 (D.C. Cir. 2007)).  Plaintiffs do not contend that their claim of discrimination was in "good faith" *because* Plaintiffs reviewed case law or performed an investigation.  That is not what cases like *George* mean by "good faith"; at most, they appear to require that plaintiffs *actually believed* that the practice they challenged was discriminatory.  *See* Dkt. 96 at 19.  Making that showing does not require plaintiffs to show that they performed any investigation or research; Title VII does not require investigation or research for a challenge to discrimination to be protected activity.  Indeed, Jones Day makes no effort to explain what it thinks "good faith" means in the context of Title VII retaliation case law.  And attorney statements in litigation correspondence about the strength of the opposing side's position ("[y]our cases do not support" your position) are commonplace and obviously do not waive work-product protection over the underlying research and analyses.  Jones Day's waiver argument is meritless.  *See, e.g.*,

*Kellogg*, 796 F.3d at 147 ("Where KBR neither directly stated that [its] investigation had revealed no wrongdoing nor sought any specific relief because of the results of the investigation, KBR has not 'based a claim or defense on the [privileged material]'" so as to waive the privilege over the substance of the investigation (quoting *Koch*, 489 F.3d at 390).

**B.     Plaintiffs have adequately explained their claim of privilege.**   None of Jones Day's purported concerns would be addressed by a detailed privilege log.  Nonetheless, Jones Day demands an order compelling Plaintiffs to compile a document-by-document log covering, e.g., each court opinion they looked at in connection with the August and January emails.  Mot. 5.  But Jones Day "offers no suggestion as to why it might need the requested details in order to determine whether the work-product rule … is likely to be applicable to some or all of the withheld documents.  In substance, all that it argues is that it is entitled to a log. … In the absence of any articulated showing of need, it cannot justify its demand for such a detailed log with respect to this category of documents." *Thrasher*, 1996 WL 125661, at *2.  Plaintiffs have provided an adequate basis for their claim of privilege and complied with Rule 26(b)(5)'s requirement that they provide information sufficient to enable Jones Day to assess the claim of privilege.  No more is required. *See also Benson v. Rosenthal*, 2016 WL 1046126, at *10 (E.D. La. 2016) ("courts have allowed a privilege log to employ a categorical approach when the discovery request on its face seeks wholesale production of documents that are ordinarily covered by work-product protection").

Plaintiffs' claim of privilege and the basis therefor may be expressed as follows:

Plaintiffs claim work-product protection over the requested categories of documents that "concern[]" the August and January emails (drafts of the emails, research done in relation to the emails, and communications concerning that research and the content of the emails).  Plaintiffs anticipated litigation on the claim that is the subject of those emails as of mid-2018, before conceiving of the first email, and all documents that fall into the categories subject to this claim of privilege were created after Plaintiffs first anticipated litigation.  While Plaintiffs do not agree that sharing work product with Jones Day personnel would necessarily

> effect a waiver, they are not withholding documents under this claim of privilege
> that were shared with other Jones Day personnel.  Because sharing work product
> with third parties other than "conduits" to the adversary does not waive work-
> product protection, the identities of others with whom responsive documents may
> have been shared are irrelevant to the assessment of the claim of privilege.  *See,
> e.g.*, *United States v. Gericare Medical Supply Inc.*, 2000 WL 33156442, at *4 (S.D.
> Ala. 2000) (because work-product protection does not depend on confidentiality,
> there is no need to disclose recipients of work product on privilege log).

This is far more relevant and substantive information that Jones Day provided in its own log.

The reasons that Jones Day gives for demanding a privilege log with the same format as Jones Day's log—which would be burdensome for Plaintiffs but would not help Jones Day to assess the claim of privilege—are deficient.  Jones Day says that "[e]stablishing the date that litigation was reasonably anticipated and the date of the withheld document are thus crucial steps to invoke the work-product protection."  Mot. 4.  But establishing when litigation was anticipated is not a task for a privilege log (certainly Jones Day's log does not undertake it), and Plaintiffs have performed that task as discussed above.  The date of an individual document is relevant only inasmuch as that date has to be *after* the party anticipated litigation.  A categorical assertion of the privilege limited to described categories of documents created after litigation was anticipated— which is exactly what Plaintiffs have provided—plainly satisfies the requirements of Rule 26(b)(5) so far as the dates of the documents goes.  A document-by-document log giving the date of each withheld document (all of them after litigation was first anticipated) would be burdensome and would not improve Jones Day's ability to assess the assertion of privilege.  To the extent that Jones Day wishes to challenge the one temporal issue that it has identified as relevant—when Plaintiffs anticipated litigation—it appears to have the information it needs to do so.  It certainly would not be aided by a document-by-document log.  *See Asghari-Kamrani*, 2016 WL 8243171, at *3 ("While certainly Plaintiffs have not provided a specific date for each email, they have provided a range which, given USAA's representation that it is before litigation could have been anticipated,

is sufficient to assess the claimed privileges."); *Auto Club*, 297 F.R.D. at 62 (date ranges sufficient

to show whether documents preceded privilege-related event).  As another court explained:

> [I]t is not the case that identification of a specific document is necessary, as [the defendant] suggests, to raise a challenge to a privilege or work-product claim. Other courts have permitted a categorical privilege log where, for example, "defendants have not explained how a categorical privilege log impaired their ability to test the plaintiff's claim of work product protection, which rises or falls as a unit."

*Manufacturers Collection*, 2014 WL 2558888, at \*4 (quoting *Gericare*, 2000 WL 33156442, at

\*4).  That court rejected the defendant's argument "that it cannot identify which, if any, withheld

documents may not be properly subject to privilege or work-product protection if all of the

documents are not specifically identified."  *Id.*  "At the risk of being uncharitable," the court said,

this "argument essentially amounts to denying that a privilege log could ever take a categorical

approach."  *Id.*  The same is true here.  Moreover, a document-by-document log would provide the

very insight into Plaintiffs' preparation that the work-product doctrine protects against.  *See Baylor*

*University*, 320 F.R.D. at 444 ("much of [the defendant's] work product cannot be itemized in a

privilege log because doing so could reveal core attorney work product, such as litigation

strategy").  Plaintiffs' categorical assertion of privilege in response to the first five categories of

Request 9 is proportional, efficient, informative, and appropriate.[13]

---

[13] Jones Day repeats the notion that a "blanket" claim of work-product protection is improper. Mot. 5.  As set forth above, however, it is beyond dispute that categorical privilege logs can satisfy Rule 26(b)(5).  Jones Day's citations do it no good.  *Avery Dennison Corp. v. Four Pillars* acknowledges that "the degree of specificity required is dictated by the needs of the case."  190 F.R.D. 1, 1 (D.D.C. 1991) (quotation marks omitted).  *OTS v. Ernst & Young*, 795 F. Supp. 7 (D.D.C. 1992), predates the 1993 creation of Rule 26(b)(5), with its Advisory Committee Note saying that categorical logs are not inappropriate, and in any event *Ernst & Young* does note that such logs are acceptable under the right circumstances.  Finally, *In re Veiga* is a critique of the sort of boilerplate privilege log that *Jones Day* has offered in this case.  746 F. Supp. 2d 27, 39 (D.D.C. 2010) (criticizing "conclusory and empty invocations of privilege" and noting that "the descriptions of the documents [in the privilege log] are so brief and of such a general nature that they fail to give the court any basis for determining whether the privilege was properly invoked").

IV.     **A plaintiff does not waive the psychotherapist privilege by seeking non-"garden variety" damages.**

Jones Day asks the Court to "clarify the permissible scope" of damages for emotional harm where the plaintiff declines to produce information protected by the psychotherapist-patient privilege.  Mot. 15.  On Jones Day's view, a plaintiff waives the privilege merely by seeking actual damages instead of just "garden variety" damages, even if she never does any of the things that would ordinarily waive a confidential communications privilege (such as putting the communications at issue or disclosing them).  When the dispute on this point arose, Jones Day represented that the Court has endorsed its position, albeit in rulings available to Jones Day alone:

> Based on our briefing a similar issue to Judge Moss in ⬛⬛⬛⬛⬛ and his rulings therein (which are under seal), we understand Judge Moss to agree with our understanding of the scope of this privilege, including the use of the term "garden variety."

Aug. 19 Letter 3.  Plaintiffs responded:

> We do not want to waste the Court's time retreading ground that it may have thoroughly covered already.  But we are unable to accept on faith your representation about your understanding of his views.  (Indeed, Terri [Chase] represented to us that, based on her nonpublic interactions with Judge Moss in ⬛ ⬛⬛⬛ she was confident that he would preclude us from seeking discovery into partnership promotions and partner pay; that prediction was mistaken.)  And the Court may be willing to revisit in this case a ruling made in a different case.

Sept. 17 Letter 2.  Plaintiffs have respectfully briefed the issue based on the law available to them.

A.      **Governing law.**  The leading cases on the psychotherapist privilege are *Jaffee v. Redmond*, 518 U.S. 1 (1996), and *Koch v. Cox*, 489 F.3d 384 (D.C. Cir. 2007).

In *Jaffee*, the Supreme Court reasoned that "a psychotherapist-patient privilege will serve a 'public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth'" and "h[e]ld that confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure."  518 U.S. at 15 (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)).

The Court repeatedly analogized the privilege to two other confidential communications privileges: the spousal privilege and the attorney-client privilege. *See id.* at 10 ("Like the spousal and attorney-client privileges, the psychotherapist-patient privilege is 'rooted in the imperative need for confidence and trust.'" (quoting *Trammel*, 445 U.S. at 51)); *id.* at 11 (like the other two privileges, the psychotherapist privilege "serv[es] public ends" (quoting *Upjohn*, 449 U.S. at 389)); *id.* at 15 n.14 ("Like other testimonial privileges, the patient may of course waive the protection.").

The Court disavowed the Seventh Circuit's view that the privilege "would not apply if, 'in the interests of justice, the evidentiary need for the disclosure of the contents of a patient's counseling sessions outweighs that patient's privacy interests.'" *Id.* at 7 (quoting the decision below). It "reject[ed] the balancing component of the privilege implemented by [the Seventh Circuit] and a small number of States. Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Id.* at 17. Again analogizing to the attorney-client privilege, the Court explained that, "if the purpose of the privilege is to be served, the participants in the confidential conversation 'must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.'" *Id.* at 18 (quoting *Upjohn*, 449 U.S. at 393).

In *Koch*, the D.C. Circuit applied *Jaffee* to an employment discrimination suit. 489 F.3d at 386. The employer "attempted to serve a subpoena for confidential records relating to communications between Koch and his psychiatrist," and the district court held that "Koch, by placing his mental state in issue, had impliedly waived the psychotherapist-patient privilege." *Id.* The D.C. Circuit reversed the finding of wavier. *Id.* It acknowledged that, while *Jaffee* recognized

that a patient may waive the privilege, *Jaffee* "did not speak further to the subject of waiver." *Id.*
at 389. "The Court did provide some guidance relevant to waiver, however, when it likened the
privilege to the attorney-client and spousal privileges." *Id.* As the D.C. Circuit "observe[d]," the
analogy suggests that claiming emotional damages does not waive the psychotherapist privilege:

> A client waives [the attorney-client] privilege when he puts the attorney-client
> relationship in issue—for example, by suing the attorney for malpractice or by
> claiming he relied upon the attorney's advice. By analogy, a patient would waive
> the psychotherapist-patient privilege when he sues the therapist for malpractice, or
> relies upon the therapist's diagnoses or treatment in making or defending a case.

*Id.* (citations omitted).

The D.C. Circuit then summarized "the 'narrow,' 'broad,' and 'middle ground' approaches
to determining whether a patient has placed his mental state in issue." *Id.* at 390. Under the
"narrow" approach, "patients only waive the privilege by affirmatively placing the substance of
the advice or communication directly in issue." *Id.* (quotation marks omitted). The "middle
ground" is the one that Jones Day advocates: "[W]here a plaintiff merely alleges 'garden variety'
emotional distress and neither alleges a separate tort for the distress, any specific psychiatric injury
or disorder, or unusually severe distress, the plaintiff has not placed his/her mental condition at
issue to justify a waiver of the psychotherapist-patient privilege." *Id.* (quotation marks omitted).

Because the plaintiff was not seeking damages for emotional harm, the D.C. Circuit did
not decide among these approaches. It confirmed, though, that "the question before us should be
answered with reference to the Supreme Court's guidance analogizing the psychotherapist-patient
privilege to the attorney-client and spousal privileges." *Id.* (citing *Jaffee*, 518 U.S. at 10-11). The
D.C. Circuit therefore "look[ed] to [its] cases concerning waiver of those analogous privileges."
*Id.* Summarizing those cases, the D.C. Circuit noted that "a client waives the attorney-client
privilege when he sues the attorney for malpractice or bases a claim or defense upon the attorney's
advice. … A party also puts a communication with his attorney or spouse in issue if he 'selectively

disclose[s] part of a privileged communication in order to gain an advantage in litigation.'" *Id.* (quoting *Lavin*, 111 F.3d at 933). "By analogy, a patient would waive the psychotherapist-patient privilege when he sues the therapist for malpractice, or relies upon the therapist's diagnoses or treatment in making or defending a case." *Id.* at 389.

**B.    Application.**  The question is whether a plaintiff waives the psychotherapist privilege by seeking damages for the emotional harm that she has actually suffered, rather than stipulating to just "garden variety" damages (whatever that means). *Jaffee* and *Koch* leave no room for doubt: The spousal and attorney-client privileges provide the appropriate analogy, and as with those privileges, the party claiming the privilege waives it only by putting *the substance of the privileged communications* at issue, as by suing the therapist for malpractice, asserting a claim based on the privileged communications, or selectively disclosing communications to gain an unfair advantage in the litigation. When a plaintiff merely seeks emotional damages, she does not put privileged communications about that harm at issue and therefore does not waive the privilege.

As the D.C. Circuit instructed in *Koch*, "the question before us should be answered with reference to the Supreme Court's guidance analogizing the psychotherapist-patient privilege to the attorney-client and spousal privileges." 489 F.3d at 390. Jones Day asserts that "[a] plaintiff waives the psychotherapist privilege by putting her mental health at issue." Mot. 16. But if the analogy to the attorney-client and spousal privileges is to be maintained (as *Jaffee* and *Koch* require), then it is necessary to distinguish between putting one's *mental health* at issue and putting *confidential communications about mental health* at issue. A privilege over confidential communications is waived when the holder of the privilege puts *the communications themselves* at issue. No waiver occurs when the privilege-holder merely puts at issue matters that were the subject of privileged communications. It is the difference between (1) "su[ing] [one's] attorney

for malpractice" or "bas[ing] a claim or defense upon the attorney's advice" itself and (2) basing a claim or defense upon a matter about which the attorney gave advice. *Id.*

Just as one discusses one's mental state with a therapist, one discusses legal issues with an attorney. If a client waived the attorney-client privilege by putting legal issues "at issue" (by asserting a claim or defense based upon those legal issues), that privilege would be eviscerated. A married person who files suit will presumably have discussed the matters put "at issue" in the suit with her spouse; but merely putting her claims at issue does not put at issue those discussions and thus does not waive the spousal privilege. Similarly, the fact that a plaintiff might be said to have put her mental state "at issue" does not mean that she has put privileged communications about her mental state at issue. Indeed, if seeking emotional damages waived the psychotherapist privilege, it would usually waive the spousal and attorney-client privileges too, since most plaintiffs discuss the harm from unlawful acts with attorney and spouse as well as therapist.

As courts have explained in the attorney-client context, "[r]elevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue." *Rhone-Poulenc*, 32 F.3d at 864. "Parties may forfeit a privilege by exposing privileged evidence, but do not forfeit one merely by taking a position that the [privileged] evidence might contradict." *Salerno*, 505 U.S. at 323. *Koch* leaves no doubt that this principle applies equally to the psychotherapist privilege.

The "garden variety" view consigns the psychotherapist privilege to second-class status relative to the attorney-client and spousal privileges, in contravention of *Koch* and *Jaffee*. A party who has confidential communications with an attorney or spouse is entitled to maintain the confidentiality of those communications and pursue his claims or defenses *as if the*

*communications did not exist*—that is what it means to have privileged communications.  What the party cannot do (while maintaining the privilege) is put the communications themselves at issue.  By contrast, under the "garden variety" view, a party who has confidential communications with a therapist is thereby put to a disadvantage in litigation.  She loses the right, which she would have had if she had not sought treatment, to seek her actual damages without sacrificing privacy by waiving the privilege.  There is no justification—either in the precedents or in "reason and experience" (Fed. R. Evid. 501)—for giving the psychotherapist privilege second-class status relative to other privileges, or for putting a plaintiff who has had confidential communications with a therapist at a disadvantage compared to a plaintiff who suffered the same harm but never sought treatment (and is thus free to seek her actual damages with no sacrifice of privacy).

In addition to violating *Koch*'s teaching that waiver of the psychotherapist privilege works the same way as waiver of other privileges, the "garden variety" view is also inconsistent with other aspects of *Jaffee*.  For instance, *Jaffee* rejects the notion that the scope of the privilege should be "contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure."  518 U.S. at 17.  Thus, if the justification for the "garden variety" view is that it would be somehow unfair to let a plaintiff recover damages while withholding privileged communications that might be relevant to those damages, the Supreme Court has already rejected that justification.  Moreover, "if the purpose of the privilege is to be served, the participants in the confidential conversation 'must be able to predict with some degree of certainty whether particular discussions will be protected.  An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.'"  *Jaffee*, 518 U.S. at 18 (quoting *Upjohn*, 449 U.S. at 393).  "[T]he use of a test for waiver that hinges on an after-the-fact judicial assessment of

numerous qualitative factors [as required by the 'garden variety' approach] introduces a risk of uncertainty that the Supreme Court in *Jaffee* sought to avoid." *Fitzgerald v. Cassil*, 216 F.R.D. 632, 639 (N.D. Cal. 2003) (rejecting the "garden variety" approach).

Penalizing plaintiffs who seek treatment by barring them from recovering their actual damages (except at the cost of an enormous invasion of privacy) would also put victims of crimes and other unlawful acts to a choice that would deter many from seeking treatment or at least chill their openness during treatment. That outcome would be inconsistent with the Supreme Court's observation that "[e]ffective psychotherapy" requires "a frank and complete disclosure" by the patient and that "[t]he psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem," which "is a public good of transcendent importance." *Id.* at 10-11.

The policy underlying the law on waiver is that parties should not be allowed to "employ privileges both as a sword and as a shield" by putting privileged communications at issue while maintaining the privilege. *Koch*, 489 F.3d at 390 (quoting *Lavin*, 111 F.3d at 933). But a plaintiff who seeks damages for the psychological harm that she has suffered while asserting privilege over confidential communications about that harm (whether with her attorney or her therapist or her spouse or her priest) has not attempted to use the privilege as a sword. Limiting her to "garden variety" damages would simply penalize her for using the privilege *as a shield*. *Jaffee* says that "mental health … is a public good of transcendent importance." 518 U.S. at 11. There is no basis for imposing an aberrational restriction on a privilege created to protect that "public good."

Rather than grapple with *Jaffee* and *Koch*, Jones Day cites four district court cases. *See* Mot. 16-17. Two of the four—*Esnayra and Kalinoski*—predate *Koch* and are inconsistent with it. *Esnayra* never even mentions *Jaffee*. And *Kalinoski* was the decision relied on by the judge

reversed in *Koch*.  *See* 489 F.3d at 387.  Jones Day also cites *St. John v. Napolitano*, which *rejects*

the defendant's reliance on *Kalinoski* and explains that *Kalinoski* followed the Eighth Circuit case

"that was explicitly critiqued by the D.C. Circuit in *Koch*."  274 F.R.D. at 20-21.  *St. John* finds

no waiver because the plaintiff was only seeking garden variety damages; since there was no

waiver even under the garden variety rule, the decision had no reason to address (and did not

address) whether that or a narrower approach is the correct rule.  Finally, Jones Day relies on *Avila*

*v. Lincoln Property Company Commercial, Inc.*, 2019 WL 3718931 (D.D.C. 2019).  That case

never cites *Jaffee* or *Koch*, because it was applying *state* privilege law.  *Id.* at *2 & n.2.

To be sure, plenty of nonbinding rulings have applied the "garden variety" rule.  But

Plaintiffs are not aware of any that actually considers and rejects the arguments made above, which

flow from the binding precedents.  By contrast, numerous cases adopt Plaintiffs' approach.  *See,*

*e.g.*, *Gray v. Romero*, 2016 WL 6821855, at *2-4 (E.D. Cal. 2016) (citing *Koch* and holding that

waiver occurs "only when a plaintiff puts a confidential communication expressly at issue");

*Fitzgerald*, 216 F.R.D. at 635-39 (after thorough analysis, rejecting the "garden-variety test" as

"not sufficiently protective of the psychotherapist-patient privilege established in *Jaffee*"); *Hucko*

*v. City of Oak Forest*, 185 F.R.D. 526, 526-31 (N.D. Ill. 1999) (no waiver unless plaintiff puts

privileged communications at issue); *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 227-30

(D. Mass. 1997) (holding, based on analogy to other privileges, that "Plaintiff must use the

privileged communication as evidence herself before she waives the privilege").[14]

C.    **Diagnoses and prescriptions.**  In a throwaway paragraph, Jones Day asks the

Court to hold that information about "mental health diagnoses and medications … is not subject

---

[14] Jones Day hopes to cause a waiver by asking about emotional harm at deposition.  Mot. 17.
But mere deposition testimony does not place anything "at issue."  *See Kellogg*, 796 F.3d at 146.

to the psychotherapist-patient privilege." Mot. 16. Jones Day offers no reasoning for this proposition, and the one ruling it cites does not support it. *United States v. Babarinde* started from the premise that "Ms. Talley's medical records are protected by the psychotherapist-patient privilege." 126 F. Supp. 3d 22, 25 (D.D.C. 2015). The defendants argued that "Ms. Talley waived the privilege by," among other things, "identif[ying] her mental health diagnoses and describ[ing] to the Court what medications she was taking." *Id.* The court disagreed, holding that those disclosures did not waive privilege over the medical records that the defendants sought: "the court cannot conclude that, by merely relating her diagnoses, the medication she takes for the conditions and impact the medication has on her memory, Ms. Talley waived her right to the psychotherapist-patient privilege." *Id.* The question whether the privilege covers diagnoses and prescriptions was not before the court, and the court did not purport to decide it.

It is questionable whether the Court should undertake to resolve such a weighty question on the basis of the deficient briefing that Jones Day offers. Jones Day has made no effort to explain why it thinks that information about "diagnoses and medications" is relevant to any party's claims or defenses. If such information does have any marginal relevance, it could only be to damages—and the Court has suspended discovery on damages. And even if such intrusive discovery were marginally relevant, it would not be proportional. "[I]n exercising their discretion [to grant protective orders] under [Rule 26(c)], courts have long 'recognized that interests in privacy may call for a measure of extra protection,' even where the information sought is not privileged." *In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1215 (D.C. Cir. 2004) (quoting Fed. R. Civ. P. 26, Advisory Committee Notes). In *Medical Records*, the D.C. Circuit held that by "failing to weigh the appellant's privacy interest in a [non-privileged medical] record against the record's value to [the opposing party], the district court abused the discretion conferred upon it by Rule

26." *Id.* at 1217.  While the discovery at issue would obviously be highly intrusive, Jones Day has made no effort to explain what interest it believes it has in taking such discovery.

If the Court reaches the issue, it should hold that mental health diagnoses and prescriptions arising out of a confidential psychotherapist-patient relationship are privileged.  The scope of privileges is to be determined "by United States courts in the light of reason and experience."  Fed. R. Evid. 501; *see Jaffee*, 518 U.S. at 8-9.  Such determinations are made "on a case-by-case basis," which is why *Jaffee* did not "delineate [the privilege's] full contours."  *Id.* at 18.  *Jaffee* expressly defined the privilege as covering "confidential communications … in the course of *diagnosis or treatment*," which would appear to include the information at issue.  *Id.* at 15 (emphasis added); *see also Koch*, 489 F.3d at 389 (litigant waives privilege if she "relies upon the therapist's diagnoses or treatment in making or defending a case").  And *Jaffee*'s reasoning is fully applicable to such information.  Disclosure of diagnoses and prescriptions "may cause embarrassment or disgrace," so "the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment."  518 U.S. at 10; *see id.* ("confidentiality is a *sine qua non* for successful psychiatric treatment" (quotation marks omitted)).  The point of the privilege is to "facilitate[] the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem."  *Id.* at 11.  And "the likely evidentiary benefit that would result from the denial of the privilege is modest" since, "[i]f the privilege were rejected," then creation of the evidence "would surely be chilled, particularly when it is obvious that the circumstances that give rise to the need for treatment will probably result in litigation."  *Id.* at 11-12.  By any measure, "reason and experience" call for privilege here.

## CONCLUSION

The Court should deny Jones Day's motion and enter Plaintiffs' proposed protective order.

/s/ Julia Sheketoff
Julia Sheketoff (pro se)
2207 Combes Street
Urbana, IL 61801
(202) 567-7195
sheketoff@gmail.com
D.C. Bar No. 1030225

November 5, 2021

/s/ Mark Savignac
Mark C. Savignac (pro se)
2207 Combes Street
Urbana, IL 61801
(217) 714-3803
marksavignac@gmail.com
D.C. Bar No. 995367