IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARK C. SAVIGNAC and
JULIA SHEKETOFF,

   *Plaintiffs*,

       v.

JONES DAY, STEPHEN J. BROGAN,
BETH HEIFETZ, and JOHN DOES 1-10,

   *Defendants*.

Case No. 1:19-cv-02443-RDM

**JOINT STATUS REPORT REGARDING OUTSTANDING DISCOVERY DISPUTES**

Pursuant to the Court's Order of October 22, 2021, the parties met and conferred about their outstanding discovery disputes and endeavored to resolve those disputes without the Court's intervention. The parties remain at impasse as to the following issues and respectfully submit this joint status report to describe those disputes and the parties' efforts to resolve them.

    **1.**     **Leave offerings announced on January 22, 2015**

<u>Plaintiffs' position</u>: Plaintiffs seek discovery relating to Jones Day's decision to adopt the leave offerings announced on January 22, 2015, which allot "mothers … a total of 18 weeks paid leave postpartum," "[f]athers … a paid paternity leave of 4 weeks," and adoptive parents "18 weeks of paid adoption leave to the primary caregiver" and "4 weeks of paid adoption leave for secondary caregivers." Dkt. 96-1 at 3. This was when Jones Day began to offer the 18-week leave period for birth mothers and for adoptive parents that was described in the Complaint and discussed during the oral argument on the motion to dismiss. Defendants have refused to provide any discovery about the decision to adopt these offerings apart from a single memo to Defendant

Brogan, and Plaintiffs believe that memo confirms that further discovery is necessary and appropriate. The parties have discussed this issue extensively, including on phone calls held on July 9, August 10, and November 10, and by letters exchanged on June 23, July 15, August 13, August 20, September 17, September 24, October 5, October 12, and October 15.

<u>Defendants' position</u>: Plaintiffs are conflating different policies and seeking discovery on a policy that is not at issue in this case, and the discovery at issue here is not proportionate to the claims and defenses in this case. At the time Plaintiffs' alleged discrimination, Jones Day offered all new parents paid family leave. Additional paid leave was also available to birthparents under the Firm's short-term disability policy, which assumed an eight-week period of disability for routine childbirth. Jones Day agreed that Savignac could take the full ten weeks of paid family leave available to primary caregivers, but denied him the additional paid leave under the short-term disability policy. In discovery, Jones Day agreed to confirm the date when the Firm first began to assume an eight-week disability period for routine childbirth and to search for and produce documents from that decision. Defendants confirmed that aspect of the short-term disability policy was implemented in 1994, and were able to locate, review, and produce or log nearly thirty-year old hard-copy files relating to that decision. Defendants also agreed to search for, collect, and produce documents regarding all family leave polices for over a four-year period that encompasses the entire duration of Savignac's employ. The policy changes that went into effect on January 22, 2015 relate only to the paid family leave policy, not the short-term disability policy in dispute. When Plaintiffs insisted on discovery into those changes as well, Defendants offered, as a compromise, to produce the written memorandum recommending those changes and setting out the bases for those recommendations. That document—plus the ability to ask deposition questions of the decision-maker who approved those recommendations—is a

proportional amount of discovery into the January 22, 2015 changes.  Particularly in light of the *de minimis* damages plausibly at issue regarding Savignac's discrimination claim, reopening electronic discovery to search for documents that were not circulated to the decision-maker who approved those changes is not proportional.

### 2. Communications with men about primary or secondary caregiver status

Plaintiffs' position: Jones Day has produced communications about parental leave between Jones Day and female associates but has refused to produce any between Jones Day and male associates.  Plaintiffs seek leave-related communications between Jones Day and male associates in the firm's Washington office who took leave in connection with the arrival of a new child between May 8, 2017, and January 22, 2019.  Plaintiffs anticipate that these communications will confirm that Jones Day (1) presumes that fathers are secondary caregivers by default and (2) scrutinizes requests by fathers to be treated as primary caregivers.  (The opposite is true when mothers ask about leave.)  Jones Day has advised that, for its own record-keeping purposes, its standard practice is to print out all such communications and place them in hard copy "leave" files maintained for each associate who takes leave.  Plaintiffs believe that their request would implicate less than 20 such files.  The parties have had extensive back-and-forth on this dispute, including on phone calls held on July 9, August 10, October 6, and November 10, and by letters exchanged on June 23, July 15, August 13, August 20, September 17, September 24, October 12, and October 15.

Defendants' position:  This discovery is disproportionate to the claims and defenses at issue.  As discussed above, Savignac's discrimination claim is about Jones Day's decision to deny him eight weeks of paid leave pursuant to the Firm's written short-term disability policy.  Savignac

was not denied ten weeks of paid family leave as a primary caregiver. Nor has he produced any evidence that he was somehow impeded in requesting such leave or that the Firm denied any other male associate's request for primary caregiver status. And, the amount of damages plausibly available on Savignac's discrimination claim is *de minimis*. With respect to this discovery, the only centralized source for these communications is in hard-copy leave files, which are more burdensome to collect than electronically stored information. Jones Day already conduced a nationwide collection of hard-copy leave files for female associates, and it is disproportionate to also now collect leave files for male associates.

### 3.     Responses of the relevant decisionmakers to similar discrimination complaints

Plaintiffs' position: Plaintiffs seek discovery about how the decisionmakers responsible for the alleged retaliation here have responded to other people who informed Jones Day that they would hire a lawyer (or had done so) or would file an administrative charge or lawsuit (or had done so) in connection with alleged discrimination or retaliation by Jones Day. Jones Day has limited its search to associates between 2014 and 2019, excluding everyone else. Plaintiffs seek discovery as to such complaints by both associate and non-associate personnel since 2010. The parties have discussed this dispute at length, including on phone calls on July 9 and November 10, and by letters exchanged on June 23, July 15, August 13, and August 20.

Defendants' position: The discovery that Defendants agreed to conduct on this point is more than adequate and proportional. Plaintiffs' request to extend the relevant period back another four years—thus comprising an entire *decade*—and to also include partners and staff members is a fishing expedition borne solely from the fact that proportionate discovery yielded no evidence that they consider favorable.

4

4.	**References to Plaintiffs on Jones Day's servers following Mark's termination**

Plaintiffs' position: The parties dispute whether Jones Day fired Mark for complaining about its leave offerings and stating his intent to file a discrimination suit. Jones Day has limited its search for relevant communications on this topic to the personnel directly involved in the termination decision. But others at Jones Day have knowledge of Mark's termination (from oral conversations with the personnel directly involved, for example), and they may have sent relevant communications, which are not covered by Jones Day's limited search. Jones Day can search its servers for all communications (without regard for sender or recipient) containing the terms "Savignac" and/or "Sheketoff." Plaintiffs ask that Jones Day perform that search for the time from January 22, 2019 (the day Mark was fired) through June 18, 2019 (the date of Plaintiffs' initial EEOC charge). Given that Mark was fired on January 22 and Julia had left the previous August, communications mentioning either Plaintiff during this period are likely to relate to Mark's firing. The parties have extensively discussed this dispute, including on phone calls on July 9, August 3, and November 10, and by letters exchanged on June 23, July 15, August 13, and August 20.

Defendants' position: Defendants have collected, processed, reviewed, and produced or logged ESI from all relevant decision-makers and several other custodians involved in the underlying events. Plaintiffs have never argued that those efforts are inadequate. They nevertheless want Defendants to collect every piece of email in the Firm that is dated between January 22, 2019, and June 18, 2019, and uses either of Plaintiffs' names. There are well over a thousand such emails, and the burden of reviewing them would be substantially disproportionate. While it is possible to conduct keyword searches across the Firm's thousands of custodians, it is not possible, for technical reasons, to reliably remove from the search hits email that has already been collected and reviewed. The process Plaintiffs seek to compel would thus be significantly

5

duplicative of prior discovery efforts. Moreover, because Defendants already have adequately collected from the relevant custodians, any new email is likely not to be relevant. And, Plaintiffs have refused to provide any non-speculative reason for undertaking this burden, making it a fishing expedition.

### 5. Family leave policies at Plaintiffs' other employers.

Defendants' position: Plaintiffs have refused to search for or produce any documents related to family leave policies at, or leaves taken from, their other employers. Based on Plaintiffs' representation that they would not seek any damages based on Sheketoff's family leaves, and in an effort to find reasonable compromise, Defendants agreed to limit their request to Savignac's time at Steptoe. According to a 2018 press release, Steptoe's polices were to provide "10 weeks of paid parental leave … to all new parents…. in addition to the eight weeks of paid medical leave available to the parent giving birth and to the primary caregiver after adoption or after a new baby first joins the family."[1] The policies at the time Plaintiffs' had their second child and Savignac's communications with the firm about its policies are discoverable documents that bear on Savignac's credibility and alleged good faith in challenging Jones Day's policies, and the requests for these documents are proportionate to the needs of the case. The parties discussed this dispute multiple times, including on phone calls on October 6 and November 10, and by letters dated July 27, August 3, August 19, and September 17.

Plaintiffs' position: Mark's current employer's policy and Mark's communications with that employer about leave following the birth of Plaintiffs' second child have no relevance to any

---

[1] https://www.steptoe.com/en/news-publications/steptoe-named-to-working-mothers-2018-best-law-firms-for-women-list.html

claim or defense in this case.  Jones Day's theory is obscure, but it appears to be that a plaintiff does not have a good-faith belief that one employer's practice is illegal unless he raises the same complaint against every later employer with a similar practice.  That theory is baseless—Title VII does not condition its protections on such repeated complaints—and Jones Day has declined to point to authority supporting it.  This is an especially glaring omission given that the Court itself has questioned the same request: "it's hard for me to imagine what the relevance would be of what position Mr. Savignac may have taken with respect to another employer's policy." March 2 Tr. 18, 20.  If irrelevance were the only issue, Plaintiffs would provide the discovery to spare the Court this dispute.  But the request implicates the interests of a third party (Mark's employer) whose internal policies and communications about those policies have no bearing on this action.

### 6. Whether certain content of text messages should be redacted from any public filing.

On July 29, 2021, the Court provided guidance on whether certain content in text messages should be redacted from any public filing and directed the parties to meet and confer.  Plaintiffs have subsequently produced hundreds of pages of text messages, and Defendants' review of those documents for material that it would request not be filed publicly is ongoing.  The parties have agreed to continue discussions and raise with the Court any points of disagreement.

Respectfully submitted, November 15, 2021

/s/ Julia Sheketoff
Julia Sheketoff (*pro se*)
2207 Combes Street
Urbana, IL 61801
(202) 567-7195
sheketoff@gmail.com

/s/ Mark C. Savignac
Mark C. Savignac (*pro se*)
2207 Combes Street
Urbana, IL 61801
(217) 714-3803
marksavignac@gmail.com

*Plaintiffs*

/s/ Terri L. Chase
Terri L. Chase (pro hac vice)
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, Florida 33131
Phone: 305-714-9700
Email: tlchase@jonesday.com

Traci Lovitt (Bar No. 467222)
JONES DAY
250 Vesey Street
New York, NY 10281
Phone: (212) 326-3939
Email: tlovitt@jonesday.com

Christopher DiPompeo (Bar No. 1003503)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Phone: (202) 879-3939
Email: cdipompeo@jonesday.com

Anderson T. Bailey (*pro hac vice*)
JONES DAY
500 Grant Street
Pittsburgh, PA 15219
Phone: (412) 391-3939
Email: atbailey@jonesday.com

*Counsel for Defendants*