# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARK C. SAVIGNAC and JULIA SHEKETOFF, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | Civ. No. 1:19-02443 (RDM) |
| *v.* | ) ) | |
| JONES DAY, *et al.*, | ) ) | |
| *Defendants.* | ) ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL**

Terri L. Chase (*pro hac vice*)
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, Florida 33131
Ph: (305) 714-9700
Email: tlchase@jonesday.com

Traci Lovitt (Bar No. 467222)
JONES DAY
250 Vesey Street
New York, NY 10281
Ph: (212) 326-3939
Email: tlovitt@jonesday.com

Christopher DiPompeo (Bar No. 1003503)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Ph: (202) 879-3939
Email: cdipompeo@jonesday.com

Anderson T. Bailey (*pro hac vice*)
JONES DAY
500 Grant Street
Pittsburgh, PA 15219
Ph: (412) 391-3939
Email: atbailey@jonesday.com

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

    A.    Plaintiffs' Blanket Assertions of Work-Product Protection Over Documents Relating to the August and January Emails Are Improper ..................... 3

    B.    Plaintiffs Cannot Withhold Documents that Relate to Allegations They Made in Their Complaints ............................................................................. 8

    C.    Plaintiffs Cannot Rely on Conclusory Assertions of Work-Product Protection to Withhold Complete Responses to Interrogatories ................................ 10

    D.    Plaintiffs' Blanket Assertions of "Spousal Privilege" Are Improper ........................ 14

    E.    Plaintiffs Cannot Claim Damages for Serious Psychological Harm While Refusing to Waive the Psychotherapist Privilege ..................................................... 17

        1.    Plaintiffs' Refusal to Provide Psychotherapist Discovery Requires that They Be Limited to Garden Variety Emotional Distress Damages ................. 17

        2.    Diagnoses and Medications Are Not Privileged ............................................. 22

CONCLUSION ................................................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Atkins v. LQ Mgmt., LLC*,
No. 3-13-0562, 2014 WL 12776326 (M.D. Tenn. Sept. 30, 2014) ........................................20

*Bagley v. Yale Univ.*,
No. 13-cv-1890, 2016 WL 1531341 (D. Conn. Apr. 15, 2016).............................................19

*Benham v. Rice*,
No. 03-cv-01127, 2007 WL 8042488 (D.D.C. Sept. 14, 2007).............................................19

*Blau v. United States*,
340 U.S. 332 (1951)..............................................................................................................16

*Bose v. Rhodes Coll.*,
No. 16-cv-02308, 2017 WL 4479258 (M.D. Tenn. Oct. 6, 2017)..........................................20

*Burke v. Lawrence*,
No. 11-cv-1044, 2013 WL 2422883 (W.D. Mich. June 3, 2013)..........................................20

*Cabot v. Lewis, C.A.*,
No. 13-11903-FDS, 2015 U.S. Dist. LEXIS 176577 (D. Mass. Apr. 28, 2015) ...................21

*Cent. Valley Chrysler-Jeep v. Witherspoon*,
No. CVF046663AWILJO, 2006 WL 2600149 (E.D. Cal. Sept. 11, 2006) .............................9

*Chase v. Nova Se. Univ., Inc.*,
No. 11-61390-CIV, 2012 WL 1936082 (S.D. Fla. May 29, 2012).........................................20

*Davenport v. Djourabchi*,
No. 16-02445, 2020 WL 7042813 (D.D.C. Nov. 30, 2020)...................................................22

*Dir. of Off. of Thrift Supervision v. Ernst & Young*,
795 F. Supp. 7 (D.D.C. 1992)..................................................................................................3

*Doe v. Oberweis Dairy*,
456 F.3d 704 (7th Cir. 2006) .................................................................................................21

*Dominguez-Silva v. Harvey*,
No. 04-cv-135, 2006 WL 826091 (N.D. Ga. Mar. 23, 2006) ................................................21

*EEOC v. Nichols Gas & Oil, Inc.*,
256 F.R.D. 114 (W.D.N.Y. 2009)...........................................................................................20

*EEOC v. Urb. Serv. Sys. Corp.*,
No. 97-422, 1999 WL 1125134 (D.D.C. Nov. 30, 1999) ........................................................5

*Est. of DiPiazza v. City of Madison*,
No. 16-cv-060, 2017 WL 1828920 (W.D. Wis. May 5, 2017)...............................................20

*George v. Leavitt*,
407 F.3d 405 (D.C. Cir. 2005)...............................................................................................12

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Gomes v. Lake Cnty.*,
No. 12 C 4439, 2013 WL 2156042 (N.D. Ill., May 15, 2013) ...............................24

*Hucko v. City of Oak Forest*,
185 F.R.D. 526 (N.D. Ill. 1999).........................................................................21

*Iannone v. Frederick R. Harris, Inc.*,
941 F. Supp. 403 (S.D.N.Y. 1996).......................................................................6

*In re Consol. RNC Cases*,
2009 WL 130178 (S.D.N.Y. Jan. 8, 2009) ...........................................................19

*In re Questcor Pharms., Inc. Sec. Litig.*,
No. 12-1623-DMG, 2014 WL 12581784 (C.D. Cal. Sept. 3, 2014)...........................9

*In re Sealed Case (Med. Recs.)*,
381 F.3d 1205 (D.C. Cir. 2004)....................................................................23, 24

\*   *In re Sims*,
534 F.3d 117 (2d Cir. 2008)..................................................................18, 19, 20

*In re Veiga*,
746 F. Supp. 2d 27 (D.D.C. 2010) .....................................................................14

*Jaffee v. Redmond*,
518 U.S. 1 (1996)......................................................................................*passim*

\*   *Koch v. Cox*,
489 F.3d 384 (D.C. Cir. 2007).......................................................17, 18, 19, 20

*Korosec v. APC Workforce Sols., LLC*,
No. 20-cv-5200, 2021 WL 4839089 (N.D. Ga. Sept. 24, 2021)................................20

*Lamb v. Hazel*,
No. 12-cv-00070, 2013 WL 1411239 (W.D. Ky. Apr. 8, 2013)................................20

*Langenfeld v. Armstrong World Indus., Inc.*,
299 F.R.D. 547 (S.D. Ohio 2014).......................................................................20

*Laudicina v. City of Crystal Lake*,
328 F.R.D. 510 (N.D. Ill. 2018).........................................................................21

*Malowsky v. Schmidt*,
No. 15-cv-666, 2017 WL 5496068 (N.D.N.Y. Jan. 9, 2017) .............................18, 20

*Mfrs. Collection Co. v. Precision Airmotive, LLC*,
No. 12-CV-853-L, 2014 WL 2558888 (N.D. Tex. June 6, 2014) ...............................7

*Michelman v. Ricoh Ams. Corp.*,
No. 11-cv-3633, 2012 WL 13046733 (E.D.N.Y. May 21, 2012)...............................20

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Morganroth & Morganroth v. DeLorean,*
    123 F.3d 374 (6th Cir. 1997) ...................................................................14

*Mukes v. City of Milwaukee,*
    No. 13-cv-1268, 2015 WL 3823887 (E.D. Wis. June 19, 2015) ...........................24

*NACDL v. DOJ Exec. Off. for U.S. Att'ys,*
    844 F.3d 246 (D.C. Cir. 2016) ...................................................................9

*Nehad v. Browder,*
    No. 15-cv-1386, 2016 WL 1428069 (S.D. Cal. Apr. 11, 2016) .............................21

*Plumbers & Pipefitters Loc. 572 Pension Fund v. Cisco Sys., Inc.,*
    No. C01-20418JW, 2005 WL 1459555 (N.D. Cal. June 21, 2005)........................10

*Porter v. Pinkerton Gov't Servs., Inc.,*
    304 F.R.D. 24 (D.D.C. 2014).................................................................19, 20

*SEC v. Collins & Aikman Corp.,*
    256 F.R.D. 403 (S.D.N.Y. 2009) ..............................................................10

*SEC v. Thrasher,*
    No. 92 Civ. 6987, 1996 WL 125661 (S.D.N.Y. Mar. 20, 1996) ...........................7

*Shapiro v. DOJ,*
    969 F. Supp. 2d 18 (D.D.C. 2013).............................................................8, 9

*Sporck v. Peil,*
    759 F.2d 312 (3d Cir. 1985).....................................................................9

*St. John v. Napolitano,*
    274 F.R.D. 12 (D.D.C. 2011)...................................................................19, 20

*Stevenson v. Stanley Bostitch, Inc.,*
    201 F.R.D. 551 (N.D. Ga. 2001)...............................................................20

*United States v. All Assets Held at Bank Julius Baer & Co.,*
    270 F. Supp. 3d 220 (D.D.C. 2017) ...........................................................11

*United States v. Babarinde,*
    126 F. Supp. 3d 22 (D.D.C. 2015) .............................................................23

*United States v. Portillo,*
    969 F.3d 144 (5th Cir. 2020) ...................................................................24

*United States v. Taylor,*
    92 F.3d 1313 (2d Cir. 1996).....................................................................16

*Wender v. United Servs. Auto. Ass'n,*
    434 A.2d 1372 (D.C. Cir. 1981) ...............................................................22

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Womack v. Wells Fargo Bank, N.A.*,
275 F.R.D. 571 (D. Minn. 2011)............................................................................21

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11...................................................................................................10

Fed. R. Civ. P. 26.................................................................................................3, 15

Fed. R. Civ. P. 35...................................................................................................19

Emma Garl Smith, *The Importance of the Garden-Variety Exception to Mental
Health Privilege Waivers in Protecting Patient Privacy*, 27 Annals Health L.
Advance Directive 72 (2017)..................................................................................20

## <u>INTRODUCTION</u>

Plaintiffs have previously acknowledged that they have "virtually no prior experience with civil discovery."  ECF No. 68, at 45.  Unfortunately, Plaintiffs' inexperience has led to delays and to disputes on issues—like this one—that should not have required the Court's intervention.

It should not be controversial that a party to litigation (especially a *plaintiff*) must conduct a good faith search for documents responsive to the opposing party's document requests, produce responsive documents that are not privileged, and log any responsive documents withheld in a competent privilege log.  These are a party's basic discovery obligations under the Federal Rules.  And yet Plaintiffs continue to refuse to fulfill these basic obligations.

Plaintiffs have no real explanation for why—five months after document discovery started and several weeks after it closed—they still refuse *even to search for* potentially responsive documents and log any withheld as privileged.  Instead, Plaintiffs mischaracterize Defendants' request for a privilege log, try to deflect attention to Defendants' privilege log, and provide a mixture of excuses that range from their inexperience with discovery, their need for the Court to provide them with "guidance" about what information their privilege log should contain, their *pro se* status, and their belief that the documents requested are categorically protected.

Of course, Plaintiffs' refusal to engage in good faith discovery stands in stark contrast with Defendants, who have diligently searched for potentially responsive documents, reviewed them for responsiveness and privilege, carefully evaluated any claim of privilege on an individualized basis, produced over a thousand responsive non-privileged documents dating back to 1993, and delivered a standard privilege log to Plaintiffs identifying all documents withheld as privileged.  Yet Plaintiffs still somehow manage to complain that *Defendants'* efforts are insufficient, asking the Court to conduct an independent review of Defendants' privileged documents based on nothing more than speculation and distrust.

Plaintiffs' failure to engage in good faith discovery is impeding Defendants' ability to defend against the claims Plaintiffs have asserted.  Defendants did not ask to be sued.  But now that Plaintiffs have brought these claims, Defendants have a right to evidence that may tend to disprove the allegations.  In particular, and as relevant here, Defendants must be permitted to investigate Plaintiffs' allegation that Savignac made his challenge to the leave policies and demand for 18 weeks of paid leave in "good faith," which is an essential element of his retaliation claim. Yet Plaintiffs are refusing to search for (and produce or log) documents related to the two emails in which the policies were challenged, refusing to identify the "other competent attorneys" the January 2019 email cites as a basis for Savignac's demand, and refusing to search communications between themselves even though Savignac asserted Sheketoff's experience at Jones Day as a basis for his purportedly good-faith belief that the Firm's policies were discriminatory.

Discovery should not be a one-way street.  Plaintiffs cannot claim that their documents are so obviously privileged that they do not even need to conduct searches for responsive documents or permit Defendants to evaluate the claim of privilege, while at the same time arguing that Defendants' logged documents are so obviously non-privileged that the Court needs to independently review and confirm Defendants' good faith privilege determinations.  It would be manifestly unfair for this Court to reward Plaintiffs for their delay and refusal to fulfil their discovery obligations, while simultaneously crediting arguments in Plaintiffs' motion to compel that are possible only because Defendants have produced a competent privilege log in compliance with their discovery obligations.  If Plaintiffs continue to resist basic discovery into the basis for their allegedly good faith belief in the legitimacy of Savignac's demand, the Court should draw the adverse inferences that Plaintiffs *did not* conduct the analysis their email claims, that Plaintiffs *did not* consult with or find support from any "other competent attorneys," and that Plaintiffs *did*

*not* have a good faith basis for their demand.  At the very least, Plaintiffs should be prohibited from offering any evidence that they conducted the legal analysis or consultations claimed in their email.  Plaintiffs' gamesmanship and effort to hide harmful facts should not be condoned.

## **ARGUMENT**

### A.     **Plaintiffs' Blanket Assertions of Work-Product Protection Over Documents Relating to the August and January Emails Are Improper.**

Plaintiffs continue to refuse to search for (and produce or log) documents concerning their August 2018 and January 2019 email demands of Jones Day.  As Defendants explained in their opening brief, Plaintiffs' blanket claim of work product protection over these documents is improper.  This Court has recognized that such blanket claims of work-product protection are not appropriate because "[a]lthough [a] privilege log will undoubtedly be more burdensome . . . than a blanket assertion, it is the only way by which [the opposing party] and, if necessary, the court could determine whether the documents at issue are truly privileged from production." *Dir. of Off. of Thrift Supervision v. Ernst & Young*, 795 F. Supp. 7, 11–12 (D.D.C. 1992).  By refusing to search for and provide information about withheld communications, Plaintiffs have made it impossible for Defendants to assess their work-product claims.  And because the August 2018 and January 2019 emails are central pieces of evidence in Savignac's retaliation claim, Plaintiffs' refusal to comply with Rule 26 is significantly impairing Defendants' ability to defend against that claim.  Plaintiffs make many arguments in response, but none is persuasive.

First, Plaintiffs argue that their blanket claim of privilege is appropriate because "Request 9, on its face, is directed to classic examples of work product."  Pls.' Opp. at 28.  This is both not true and beside the point.  While *some* of the documents requested may indeed qualify as work product (if Plaintiffs did reasonably anticipate litigation in mid-2018), it is unreasonable to assume that "*[a]ll* documents concerning the January and August Emails" are work product.  Plaintiffs

have the burden of establishing their claim of work-product, and they cannot do this with overbroad generalizations that every document concerning the August 2018 and January 2019 emails will qualify as work product.

Nor is it sufficient for Plaintiffs simply to make the conclusory assertions that they "anticipated litigation over the subject of the August and January emails—the firm's leave offerings for new parents—as of mid-2018 (after they learned that they were expecting a child)" and that "[t]he August email and any materials created 'concerning' it were created in anticipation of litigation." Pls.' Opp. at 29. Plaintiffs have the burden of establishing when they began to anticipate litigation and their refusal to produce a privilege log with dates for the earliest documents on which they claim work product protection makes it impossible for Jones Day—or this Court—to assess the basis for the claim that they anticipated litigation even before they made their first inquiry about the leave policy in August 2018.[1]

That is especially true because Plaintiffs have not searched for all of the documents that are responsive to Request No. 9, so Plaintiffs cannot even confirm in good faith that the responsive documents they are not producing are protected. Plaintiffs' hand-waving over broad categories of documents contrasts sharply with the approach taken by Defendants, who conducted searches, identified responsive documents, and determined on an individualized basis whether these documents were privileged. Defendants did not, for example, simply assert that because their press statement was created after they anticipated litigation, *every* document concerning it must be work-

---

[1] In Plaintiffs' Reply in support of their motion to compel, Plaintiffs submitted documents showing that, ▉▉▉▉▉▉, another associate raised concerns about recently announced changes to the Firm's family leave policy. As Plaintiffs were aware ▉▉▉▉▉, the Firm revised the policy in response to those concerns. Given that background, it is difficult to conceive how Plaintiffs could reasonably have anticipated litigation before first raising their concerns, unless they knew that their demands were so lacking in legal support that they would almost certainly be rejected.

product.  Instead, they conducted a detailed review of each document and made a good faith determination about whether it was privileged, which ultimately resulted in withholding some, producing others, and producing some with partial redactions.

Plaintiffs suggest the Court should permit their blanket claim of privilege because Defendants have failed to prove waiver of work-product protection.  *See* Pls.' Opp. at 30–31.  That argument, of course, ignores that Plaintiffs bear the initial burden to establish that the withheld documents are work product, which they have not done.  But it also disregards Defendants' key point that by not providing information about withheld documents, Plaintiffs have "made it impossible" for Defendants to assess Plaintiffs' work product claims or prove that specific, unidentified documents must be produced.  Defs.' Mot. at 5.

In any event, Defendants have shown waiver of at least a subset of Plaintiffs' alleged work-product protection based on Plaintiffs' affirmative reliance in the January Email on their research and discussions with "other competent attorneys."  *See* Defs.' Mot. at 7, 11; Pls.' Am. Compl. ¶¶ 190–91.  Plaintiffs now claim that they do not intend to rely on such evidence to establish good faith, but Defendants are entitled to discovery of more than just the documents on which Plaintiffs intend to rely.  And the inclusion of those statements in their January Email necessarily puts them in issue.  Jones Day has the right to test the veracity of the statements Savignac made in January 2019, which are highly relevant to Jones Day's contention that his demands at the time were made in bad faith.  *See EEOC v. Urb. Serv. Sys. Corp.*, No. 97-422, 1999 WL 1125134, at *2 (D.D.C. Nov. 30, 1999) ("[N]o one can claim a privilege as to a matter which that person has put in issue in a lawsuit.").  This is why Defendants specifically asked for "all documents reflecting the discussions 'with other competent attorneys' referenced in the January Email" in Request No. 9,

among the other documents requested concerning the August and January Emails.[2]

Plaintiffs concede that demonstrating a good faith belief is relevant to their claim, but argue that, because Title VII plaintiffs do not *need* to perform legal research to establish good faith, their invocation of their purported work product in the January Email and complaint did not waive work-product protection.  *See* Pls.' Opp. at 31–32.  They argue that finding waiver here would mean that "every retaliation victim necessarily waives any privilege over communications that could be relevant to the 'good faith' of his belief simply by filing suit."  Pls.' Opp. at 31.  But regardless of whether Plaintiffs—who, as lawyers, are "held to a higher standard of expertise about Title VII than a layperson," *Iannone v. Frederick R. Harris, Inc.*, 941 F. Supp. 403, 410 (S.D.N.Y. 1996); *see also* ECF No. 15, at 17–19 (Defs.' Motion to Dismiss)—needed to perform legal research before demanding additional leave for Savignac, they expressly invoked that research in their January Email, which will be presented to the jury, and in their complaint.  Plaintiffs thus put their research at issue in this lawsuit in a way that most Title VII retaliation plaintiffs do not.

Moreover, in denying Defendants' motion to dismiss, this Court specifically noted that "without factual development, the Court cannot determine whether Savignac reasonably believed that the Jones Day policy provided leave to new mothers 'beyond the period of recuperation' and reasonably believed that the additional eight weeks of leave provided to birth mothers was not 'part of' a bona fide disability policy."  ECF No. 32, at 38.  This is precisely the information sought

---

[2] The full text of Request No. 9 is:  "All documents concerning the January and August Emails, including but not limited to: drafts of the January and August Emails; communications about any potential or actual content of the January and August Emails; communications about any legal authority referenced in any potential or actual content of the January and August Emails; all research done in relation to any potential or actual content of the January and August Emails; all documents reflecting the discussions 'with other competent attorneys' referenced in the January Email; and all documents that Plaintiffs contend support their demand in the January Email for eight weeks of additional paid leave for Savignac beyond the ten weeks that Jones Day provides primary caregivers."  Ex. C. to Defs.' Mot. at 10.

by Request No. 9, and which Plaintiffs are improperly refusing to search for under an unsubstantiated blanket claim of work-product protection.

Finally, Plaintiffs attempt to distract from their refusal to search for or identify *any* withheld documents by falsely claiming that Defendants seek a document-by-document privilege log more detailed than what Defendants provided. *See* Pls.' Opp. at 15–20. Defendants are seeking only what they provided: a privilege log with email chains as a single entry with information about the date, author, and recipients. *See* Pls.' Mot. to Compel, App'x at App. 2a–12a; *see also Mfrs. Collection Co. v. Precision Airmotive, LLC*, No. 12-CV-853-L, 2014 WL 2558888, at *3 (N.D. Tex. June 6, 2014) ("Typically, a privilege log must identify each document and provide basic information, including the author, recipient, date and general nature of the document." (quoting *SEC v. Thrasher*, No. 92 Civ. 6987, 1996 WL 125661, at *1 (S.D.N.Y. Mar. 20, 1996))). And, contrary to Plaintiffs' arguments, *see* Pls.' Opp. at 34, such a log *would* provide Defendants with additional information that would enable them to assess the validity of Plaintiffs' work-product assertions, such as whether the timing of the document calls into question whether litigation was reasonably anticipated and whether a withheld document was disclosed to a third party, thereby waiving the protection. *See Mfrs. Collection*, 2014 WL 2558888, at *5 (explaining that the failure to list individuals who received a document impacts a party's "ability to assess if any documents may have been disclosed to an individual whose access to a document or information may preclude a claim of privilege or work-product protection over the document"). Plaintiffs' underlying assumption seems to be that privilege logs are useless, and so they should not be bothered to make one.[3] This, however, is not how discovery works.

---

[3] Plaintiffs' disdain for privilege logs is consistent with the position they have taken in their motion to compel. Rather than engaging with the information on Defendants' privilege log and making challenges to specific documents, Plaintiffs simply ask the Court to disregard Defendants'

**B.      Plaintiffs Cannot Withhold Documents that Relate to Allegations They Made in Their Complaints.**

Next, Plaintiffs have no valid basis to refuse to produce documents they relied upon or reviewed in drafting the factual allegations in the complaint.  As Defendants' motion explained, courts have recognized that such documents are discoverable because "'documents that support the factual allegations of a complaint reveals no more than that already revealed by the filing of the complaint' and [are] not protected by work-product doctrine."  Defs.' Mot. at 8 (quoting *Shapiro v. DOJ*, 969 F. Supp. 2d 18, 32 (D.D.C. 2013)).

Plaintiffs argue in response that Defendants are not permitted to obtain discovery of a "compilation" of documents reviewed or relied upon by Plaintiffs in preparation of the Complaint, because such a compilation would reveal Plaintiffs' mental impressions about their claims in violation of the work-product doctrine.  Pls.' Opp. at 4–9.  But Defendants' Request No. 55 does not actually ask for Plaintiffs to produce documents they consulted when drafting their complaint as a "compilation," nor are Defendants asking Plaintiffs to identify which documents they reviewed or relied upon.[4]  Defendants have simply asked Plaintiffs to produce—along with all other documents they are producing—any documents Plaintiffs consulted when drafting the allegations in their complaint.  Plaintiffs have not explained how simply including in their productions such documents (most, if not all, of which would be responsive to other requests) would reveal which documents Plaintiffs relied upon when drafting their complaint, what evidence they believe is most important, or anything else about their strategy.  The fact that Plaintiffs may have reviewed or relied upon a document when drafting the complaint does not turn that document

_____

log in its entirety and review substantially all of the documents.  As explained in Defendants' opposition to Plaintiffs' motion to compel, there is no basis for this request.  *See* Defs.' Opp. to Pls.' Mot. to Compel (ECF No. 94) at 19–22, 28–32.

[4] Defendants' Request No. 55 seeks the following:  "All documents reviewed or relied upon by Plaintiffs in preparation of the Complaints."  Ex. C to Defs.' Mot. at 40.

into work-product, and there is no basis to withhold such documents where production would not reveal anything about Plaintiffs' strategy.  *See Shapiro*, 969 F. Supp. 2d at 32.

Plaintiffs' cases do not support their argument that documents reviewed or relied upon when drafting the allegations in a complaint are categorically work product.  In fact, *In re Questcor Pharms., Inc. Sec. Litig.*, No. 12-1623-DMG, 2014 WL 12581784, at *2 (C.D. Cal. Sept. 3, 2014), holds exactly the opposite.   That case granted a motion to compel discovery "request[ing] documents and communications relating to the allegations in the Complaint," explaining that "[e]ven the cases Plaintiffs cite make clear that such discovery should be produced except for attorney work product."   *Id.* (citing *Cent. Valley Chrysler-Jeep v. Witherspoon*, No. CVF046663AWILJO, 2006 WL 2600149, at *3 (E.D. Cal. Sept. 11, 2006)).   Where that court drew the line, however, was when it denied a request for production of documents "'sufficient to identify' . . . 'documents and communications' upon which counsel relied in drafting the complaint."  *Id.*  The court explained that requiring the plaintiff to "identify" the documents relied upon intruded into work-product territory.  *Id.*  Plaintiffs' other cases all involve very different requests—*e.g.*, compilations of cases (*NACDL v. DOJ Exec. Off. for U.S. Att'ys*, 844 F.3d 246, 256 (D.C. Cir. 2016)), or compilations of documents used to prepare a witness for a deposition (*Sporck v. Peil*, 759 F.2d 312, 314–15 (3d Cir. 1985))—and also all involve the *identification*, not the *production*, of such documents.  Here, Defendants are not asking Plaintiffs to identify which documents they reviewed or relied upon when drafting the complaint, but only to produce those documents along with all other documents being produced.  *See Cent. Valley Chrysler-Jeep*, 2006 WL 2600149, at *3 (permitting discovery relating to claims in complaint because the "requests do not appear calculated, nor likely, to reveal which documents Plaintiffs intend to use at trial, which documents support or undermine their position, or what inferences counsel has drawn from them").

In any event, Plaintiffs do not dispute the cases cited by Defendants holding that documents *supporting* a complaint's factual allegations are not protected by the work-product doctrine. *See* Pls.' Opp. at 7–8. At a minimum, Plaintiffs should be compelled to produce these documents. Plaintiffs object on "grounds of burden, proportionality," and a lack of "reasonable particularity" because "the operative complaints run to more than 400 paragraphs." *See* Pls.' Opp. at 8 n.2. But this is not a basis for refusing discovery. Federal Rule of Civil Procedure 11 "requires all parties to have 'evidentiary support' for the factual contentions in their pleadings," *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 410 (S.D.N.Y. 2009), and "[t]here is nothing unusual about a discovery request asking Plaintiffs to produce or identify documents relating to or supporting allegations made in their [complaint], *Plumbers & Pipefitters Loc. 572 Pension Fund v. Cisco Sys., Inc.*, No. C01-20418JW, 2005 WL 1459555, at *6 (N.D. Cal. June 21, 2005)*. It was *Plaintiffs* who drafted a 400 paragraph complaint, so any burden is of their own making. Defendants are entitled to discovery of that evidentiary basis.

### C. Plaintiffs Cannot Rely on Conclusory Assertions of Work-Product Protection to Withhold Complete Responses to Interrogatories.

Plaintiffs next refuse to identify the "other competent attorneys' with whom they consulted about Savignac's January 2019 email. This is likewise improper. Case law demonstrates that disclosing the identities of persons who may have information relevant to a dispute is not protected by the work-product doctrine. *See* Defs.' Mot. at 9–11. Plaintiffs have no basis for refusing even to *identify* individuals Savignac himself asserted as a basis for his (allegedly good faith) belief that his demands were legally appropriate.

Plaintiffs nonetheless argue that "[j]ust as the work-product doctrine bars discovery into an attorney's choice of documents to review in drafting a filing, it bars discovery into an attorney's choice of witnesses to speak to in anticipation of or during litigation." Pls.' Opp. at 9. But this

argument is beside the point.  The "other competent attorneys" were not "witnesses" Plaintiffs chose to interview while investigating their claims; they are professionals whose expertise Savignac expressly relied upon in justifying his demand.  Plaintiffs identify no reason why merely disclosing the *names* of the "other competent attorneys" they consulted before Savignac's demand would reveal anything about their litigation strategy.  Indeed, to the extent they consulted with these attorneys in writing, Plaintiffs are required to disclose their identities in a privilege log.

Plaintiffs analogize to cases holding that the work-product doctrine precludes disclosure of the names of people interviewed during a plaintiff's investigation of facts underlying a complaint, but these cases are clearly inapposite.  Plaintiffs rely primarily on *United States v. All Assets Held at Bank Julius Baer & Co.*, 270 F. Supp. 3d 220, 224 (D.D.C. 2017), which held that a listing of witnesses interviewed by a plaintiff in formulating its complaint was protected work product because it would "reveal [counsel's] legal theories and strategic decisions regarding who to interview in preparation for trial" and "who, based on their theory of the case, they believe are the most important, or problematic [witnesses]."  *Id.* at 225.

This case is nothing like *All Assets Held*.  Here, Plaintiffs did not consult the "other competent attorneys" in the course of a factual investigation into past events that would form the basis of a complaint.  They consulted these individuals before making the January 2019 demand and specifically asserted these individuals' expertise as a justification for Savignac's challenge and demand.  *See* Am. Compl. ¶ 190.  Revealing the names of the individuals consulted would not reveal anything about which witnesses Plaintiffs believe are most important to this case, or anything else about Plaintiffs' legal strategy.  In fact, unlike in *All Assets Held*, Plaintiffs here are not just refusing to identify which of their disclosed witnesses they consulted about the policy, they are attempting to shield the identities of the "other competent attorneys" in their entirety.  In

any event, because Savignac's good faith is an element of his retaliation claim and he asserted these consultations as a basis for his demand, the fact of the consultations is itself a highly relevant fact. *See George v. Leavitt*, 407 F.3d 405, 417 (D.C. Cir. 2005) (explaining employees must demonstrate a good faith and reasonable belief that a challenged practice is unlawful). Savignac cannot base his demand on the opinions of "other competent attorneys," and then refuse even to identify those attorneys.

Indeed, Savignac's stated reliance on the views of these "other competent attorneys" is precisely why the identity of those individuals is significant. Savignac's January 2019 email will be one of the central pieces of evidence on his retaliation claim. Any jury reading that email is going to read Plaintiffs' assertion that "other competent attorneys" have blessed Savignac's views about Jones Day's policies, and will weigh that assertion in favor of Savignac's good faith. Defendants *must* be able to investigate those consultations to have the opportunity to impeach or discredit Plaintiffs' statement these "other competent attorneys" agreed with his position and demand. If those consultations never occurred—or if they did occur and the input Plaintiffs received was based on incomplete information or not consistent with their position—that is a critical fact that will seriously undermine the credibility of Savignac's allegation of good faith. Plaintiffs' refusal even to identify the individuals they supposedly consulted suggests that such consultations never occurred, or that the other "competent attorneys" did not fully understand the policies or advise that the demands actually made were proper.

Plaintiffs next argue that the identities of the "other competent attorneys" are not relevant, because any information Defendants could obtain from them would itself be privileged. Pls.' Opp. at 11–12. But this is not true. Plaintiffs have not claimed an attorney-client relationship with these individuals, so the attorney-client privilege does not apply. And it is very unlikely that the entirety

of Plaintiffs' consultations with these attorneys would be protected work product.  Savignac's view

that any birth-related disability leave is a sham is the premise of Plaintiffs' claim that equal

treatment required granting him eight weeks of paid leave, and it is relevant whether these

"competent attorneys" really agree with that view of the law.   Moreover, even if some

communications are work product, Defendants may be able to show a substantial need for such

information that would override the work-product protection, given the importance of those

communications to Savignac's good faith and the prejudice to Defendants if they are unable to

rebut Savignac's claim.  In any event, these are not questions that can be answered in the abstract,

and the fact that some communications *might* be privileged is not a basis for refusing to answer a

simple interrogatory identifying a small number of individuals.

Finally, Plaintiffs argue that disclosing the names of the "other competent attorneys" would

undermine the privacy protections of the work-product privilege, and that doing so would chill

communications by lawyers when preparing a case.  *See* Pls.' Opp. at 12.  In particular, Plaintiffs

note that lawyers often talk through issues with colleagues, and argue that identifying the "other

competent attorneys" would be like asking Jones Day to identify every lawyer who has worked on

this case and everyone they discussed it with.  These policy arguments are misplaced.  Defendants

did not put the identity of the individuals working on this case at issue and are not seeking

discovery of "all the people [Plaintiffs] talked to about this case."[5]  Pls.' Opp. at 13.  They are

seeking the identities of the specific professionals Savignac held up as a basis for his belief in the

legitimacy of his claim, in a case in which the good faith of that belief is a necessary element.

Nothing about Defendants' interrogatory would lead to harmful consequences.  It will simply mean

---

[5] In fact, the parties agreed they did not have to log "documents covered by the attorney-client or work product doctrine created on or after August 15, 2019."  ECF No. 57-2, § V.1.

that if an employee tells his employer that he believes he is being discriminated against after consulting several lawyers, he may be required someday to disclose the names of those lawyers. That is not controversial or problematic.

### D.   Plaintiffs' Blanket Assertions of "Spousal Privilege" Are Improper.

Plaintiffs continue to refuse to search for (and log or produce) communications between them that may be responsive to Defendants' document requests, under a blanket claim of privilege. As Defendants explained in their opening brief, such a broad categorical claim of privilege is not sufficient because the confidential marital communications privilege is not absolute. *See* Defs.' Mot. at 11–15. Rather, the privilege applies only when the communication is meant to be (and remains) confidential, and would not apply to communications ultimately disclosed to third parties, those exchanged through work emails subject to monitoring, or those where the substance of the communication was later disclosed. *See* Defs.' Mot. at 13–14. Plaintiffs' blanket assertion of "spousal privilege" and refusal to search for, produce, or log communications between them is therefore insufficient. Plaintiffs must search for responsive communications and, at a minimum, provide enough information for Defendants to evaluate their privilege claims.

Plaintiffs largely fail to engage with Defendants' arguments. Rather than explaining why they can establish the spousal privilege without actually searching for and logging responsive documents, Plaintiffs attempt to justify the single entry on their log by comparing it to the information on Defendants' privilege log. Plaintiffs claim that their entry provides the same information as Defendants' log, and, therefore, provides sufficient information for Jones Day to assess the validity of the claimed privilege. *See* Pls.' Opp. at 21–23. Plaintiffs miss the mark.

For starters, Plaintiffs have the burden of "demonstrating the applicability of any asserted privilege," *In re Veiga*, 746 F. Supp. 2d 27, 33 (D.D.C. 2010); *see Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 383 (6th Cir. 1997) (proponent has burden on marital privilege), and

they must describe the withheld documents with enough specificity that "will enable other parties to assess the claim" of privilege, Fed. R. Civ. P. 26(b)(5)(ii).   While it is true that marital communications are presumptively confidential, that presumption can be overcome in appropriate circumstances.   Plaintiffs have not cited a single case in which a court permitted a blanket assertion of the marital privilege without requiring a privilege log.   And for good reason:  Without any details about specific documents, Defendants have no ability even to consider arguing that the presumption of confidentiality has been overcome.

Nor are Plaintiffs correct that their single marital communications entry provides sufficient information for Defendants to assess the claim of privilege.  Plaintiffs' entry discloses no more information than that the withheld documents were communications exchanged between Savignac and Sheketoff after the date of their marriage.  Notably, contrary to their contention, Plaintiffs did not provide essentially the same information as Defendants.  Defendants provided information regarding the specific dates, subject matter, and volume of withheld documents on their privilege log.  *See* Pls.' Mot. to Compel, App'x at App. 2a–12a.  This information, combined with the larger context and produced documents, provided sufficient information for Plaintiffs to assess the validity of Defendants' asserted attorney-client privilege and work-product protection claims.  *See* Defs.' Opp. at 11–12.  If Plaintiffs provided similar information, Defendants could better assess Plaintiffs' claimed privilege.  For example, Defendants could look at the date of a specific spousal communication and compare it to produced documents to ascertain whether there was a partial waiver of the subject matter of that communication.   But Plaintiffs provided none of that comparable information; they provided only the following:

|  | Date(s) | Sender(s)/ Author(s) | Recipient(s) | Description | Privilege |
|---|---|---|---|---|---|
| L0001 | On or after April 18, 2017 | Mark or Julia | Julia or Mark | Confidential communications between Mark and Julia after their marriage on April 18, 2017. | Spousal privilege (some documents in this category are also work product) |

Defs.' Mot., Ex. B.

Indeed, Plaintiffs could not provide comparable information because they do not know that information themselves.  That is because—as they do not dispute—they have refused to search their communications.  *See* Pls.' Opp. at 24 n.10.  Without searching for and reviewing their responsive communications, Plaintiffs cannot know whether all of the withheld documents were confidential or whether, as is likely, some communications were intended to be later shared, were emails subject to monitoring, or were partially disclosed.  *See* Defs.' Mot. 13–14 & n.7.[6]  Once Plaintiffs have conducted such a review, they will know the circumstances of specific communications and whether they can properly assert privilege.  They can then also provide a privilege log that is comparable to Defendants' log.  Even Plaintiffs' cited cases do not suggest that Plaintiffs can rely on a presumption of confidentiality without providing information about the particular communication at issue.  *See Blau v. United States*, 340 U.S. 332, 333–34 (1951) (concluding defendant husband properly asserted privilege over a conversation with his wife about her whereabouts when she was hiding from a process server); *United States v. Taylor*, 92 F.3d 1313, 1331–32 (2d Cir. 1996) (concluding a particular, recorded conversation between spouses regarding whether defendant husband was carrying a gun was not privileged).[7]

---

[6] Plaintiffs' assurance that their general practice is not "to show spousal communications to third parties" is insufficient to address these concerns, *see* Pls.' Opp. at 24 n.10, especially when Defendants have given specific reasons why it is likely that some of Plaintiffs' communications with each other are not protected by the confidential marital communications privilege, *see* Defs.' Mot. at 14 n.7.

[7] Plaintiffs also argue that Defendants made a "substantive" argument that information exchanged between them over an employer's servers is not confidential.  But Defendants are not seeking in this motion to prove that any particular communications are not privileged.  Plaintiffs have not searched for, much less identified, any of their purportedly confidential communications, making it impossible for Defendants to assess the validity of Plaintiffs' privilege claims regarding particular documents.  *See* Defs.' Mot. at 14.  Plaintiffs also claim that a privilege log would be unnecessary because it would not contain the email addresses from which the communications originated.  But that is not a reason to allow Plaintiffs not to search for responsive documents.  If

Finally, Plaintiffs' claim that searching and logging their communications will be unnecessarily burdensome is wrong. Defendants are not asking Plaintiffs to review *all* of their communications, but only those that hit on narrowly defined search terms designed to target responsive documents, over a specific time period. Defendants will of course work with Plaintiffs to minimize any burden.

### E. Plaintiffs Cannot Claim Damages for Serious Psychological Harm While Refusing to Waive the Psychotherapist Privilege.

#### 1. Plaintiffs' Refusal to Provide Psychotherapist Discovery Requires that They Be Limited to Garden Variety Emotional Distress Damages.

Plaintiffs do not disclaim their allegations that Jones Day knowingly harmed their child and caused them years' worth of ongoing psychological harm. Instead, they argue that two cases—*Jaffee* and *Koch*—permit them to advance even the most extreme allegations of emotional harm while still shielding relevant discovery vital to defending against those allegations. Plaintiffs are wrong, and if they insist on asserting the psychotherapist privilege, they are limited to seeking damages for garden variety emotional harm.[8]

Initially, Plaintiffs ignore the aspects of *Jaffee* that don't fit their thesis. *Jaffe* involved a *defendant* who asserted the psychotherapist privilege, and the Court rejected a balancing test to decide *application* of the privilege in the first instance. *See Jaffee v. Redmond*, 518 U.S. 1, 3–4, 17–18 (1996). Those are material distinctions from a case like this, where a *plaintiff* seeks

---

anything, it is a reason to require Plaintiffs to take the minimal additional step of listing the email addresses involved in responsive communications between themselves.

monetary recovery for alleged emotional harm but insists she has not *waived* her privilege.  *See Malowsky v. Schmidt*, No. 15-cv-666, 2017 WL 5496068, at *4 (N.D.N.Y. Jan. 9, 2017) (distinguishing between the "application" question in *Jaffee* and the "forfeiture" question where a plaintiff seeks damages for emotional harm).  *Jaffee* says nothing relevant to this case other than to acknowledge in a footnote that a "patient may of course waive" the psychotherapist privilege. 518 U.S. at 15 n.14.

Plaintiffs similarly attempt to expand the holding of *Koch* to say more than it did, but it, like *Jaffee*, does not compel the restrictive approach that Plaintiffs advocate.  In *Koch*, the D.C. Circuit surveyed the three approaches—broad, narrow, and middle ground—to assess implied waiver of  psychotherapist privilege in a different context: where the plaintiff made "no claim for recovery based upon injury to his mental or emotional state."  *Koch v. Cox*, 489 F.3d 384, 391 (D.C. Cir. 2007).  The question before the court was only "whether a plaintiff puts his mental state in issue in such a way as to waive the psychotherapist-patient privilege by acknowledging he suffers from depression"—*not* by affirmatively seeking damages for emotional distress.  *Id*. at 388. In that context, the court applied a narrow approach to implied waiver.  That does not mean a narrow approach applies when a party *is* seeking damages for emotional distress.

Indeed, the Second Circuit does not interpret *Koch* as expansively as Plaintiffs do.  In *In re Sims*, the Second Circuit analyzed "whether a plaintiff's claim for injuries that include only the garden-variety emotional injury … constitutes a forfeiture of his psychotherapist-patient privilege."  534 F.3d 117, 129 (2d Cir. 2008).  The court aligned itself with the reasoning of *Koch* and the D.C. Circuit's interpretation of *Jaffee*.  *Id*. at 134 ("we agree with the *Koch* Court").  It then deployed a *fairness analysis* that examined several factors—exactly the approach that Plaintiffs argue *Jaffee* and *Koch* prohibit.  *See id*. at 137 (noting "the type of fairness analysis that

a determination as to forfeiture requires"); *see also id.* at 132–33 (explaining "waiver may be implied in circumstances where it is called for in the interests of fairness"); *In re Consol. RNC Cases*, 2009 WL 130178, at *7 (S.D.N.Y. Jan. 8, 2009) (finding waiver based on the "fairness factors identified in *Sims*"). Not only did the plaintiff in *Sims* commit not to offer privileged communications as affirmative evidence, but "neither complaint so much as mentions emotional injury," the plaintiff "was not receiving any treatment for emotional injury related to the events underlying this litigation," and he "had expressly withdrawn any claim of emotional distress injury (beyond 'garden variety' pain and suffering from physical injury)." 534 F.3d at 135, 138, 139.

A request for monetary damages based on emotional harm is a type of sword. *See id.* at 138 (plaintiff's withdrawal of "any claim of emotional distress injury (beyond 'garden variety'")" meant he was not using the privilege as a sword); *Bagley v. Yale Univ.*, No. 13-cv-1890, 2016 WL 1531341, at *2 (D. Conn. Apr. 15, 2016) (applying *Sims* and holding that if plaintiff "wishes to deflect discovery by using the shield, she must drop the sword of a claim for emotional distress"). Applying *Jaffee*—and consistent with *Koch* and *Sims*—courts thus tie waiver to whether the claim for emotional distress goes beyond garden variety. That includes the courts in this Circuit that have considered this issue after *Koch*[9]; courts in the Second Circuit, which expressly endorsed

---

[9] *See Porter v. Pinkerton Gov't Servs., Inc.*, 304 F.R.D. 24, 30 (D.D.C. 2014) (recognizing that "courts in this District have adopted the 'middle ground' approach" and finding "the middle ground approach to be reasonable and appropriate"); *St. John v. Napolitano*, 274 F.R.D. 12, 19 (D.D.C. 2011) (concluding than an allegation of "ordinary or 'garden variety' emotional distress" does not waive privilege and is consistent with *Koch*). The court in *St. John* cited *Sims* approvingly and observed that courts "in this district have also applied the approach endorsed in *Sims*." 274 F.R.D. at 19.

The middle approach is also consistent with how courts decide whether to order a mental examination under Federal Rule of Civil Procedure 35(a). In determining whether the plaintiff has put her mental condition "in controversy" under Rule 35(a), this Court has agreed with "[t]he majority of the courts" that "a Rule 35 mental examination should not be ordered unless something more is involved than just a 'garden-variety' claim of emotional distress," such as claiming "ongoing" harm. *Benham v. Rice*, No. 03-cv-01127, 2007 WL 8042488, at *2 (D.D.C. Sept. 14,

*Koch*'s analysis in *Sims*[10]; and courts across the United States that acknowledge this middle ground approach as "the majority view."  *Atkins v. LQ Mgmt., LLC*, No. 3-13-0562, 2014 WL 12776326, at *3 (M.D. Tenn. Sept. 30, 2014); *see also Chase v. Nova Se. Univ., Inc.*, No. 11-61390-CIV, 2012 WL 1936082, at *4 (S.D. Fla. May 29, 2012) ("The majority of district courts considering the issue . . . have adopted the middle position.").[11]

Plaintiffs think all of these courts have it wrong.  They ask this Court to go beyond *Koch*, diverge from *Porter* and *St. John*, and join the "numerous cases [that] adopt" the narrow approach to waiver, under which no plaintiff can ever waive the privilege unless she has sued her therapist

---

2007) (quotations omitted); *see also St. John*, 274 F.R.D. at 19–22 (looking to five-factor approach courts use in Rule 35(a) context to determine whether plaintiff's claims were "'garden variety' emotional distress"); *Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 553 (N.D. Ga. 2001) (collecting cases and agreeing with this "majority" rule).

[10] *Malowsky*, 2017 WL 5496068, at *3–4; *EEOC v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 121 (W.D.N.Y. 2009).  Some courts in the Second Circuit have held under *Sims* that even a claim for emotional distress coupled with a request for monetary damages is sufficient to waive the privilege.  *See Michelman v. Ricoh Ams. Corp.*, No. 11-cv-3633, 2012 WL 13046733, at *3–4 (E.D.N.Y. May 21, 2012) (requiring withdrawal of claim for damages related to garden variety emotional distress as a condition of preserving the privilege).

[11] *Est. of DiPiazza v. City of Madison*, No. 16-cv-060, 2017 WL 1828920, at *2 (W.D. Wis. May 5, 2017) (explaining the "third approach, which has been adopted by a greater number of district courts in this circuit and elsewhere … attempts to stake out a more pragmatic 'middle ground'" (citation omitted); *Korosec v. APC Workforce Sols., LLC*, No. 20-cv-5200, 2021 WL 4839089, at *2 (N.D. Ga. Sept. 24, 2021) (explaining that "a majority of courts … have consistently held that a plaintiff does not waive the privilege simply by alleging garden variety emotional distress and seeking recovery for such damages," but must instead claim, "for example, unusually severe emotional distress"(citation omitted)); *Bose v. Rhodes Coll.*, No. 16-cv-02308, 2017 WL 4479258, at *7 (M.D. Tenn. Oct. 6, 2017) ("The court finds that the middle-ground approach is the appropriate test because it takes into account both the patient's privacy interests as well as circumstances in which a party in fairness should be allowed to access the patient's mental health information."); *Langenfeld v. Armstrong World Indus., Inc.*, 299 F.R.D. 547, 552–53 (S.D. Ohio 2014); *Burke v. Lawrence*, No. 11-cv-1044, 2013 WL 2422883, at *2 (W.D. Mich. June 3, 2013); *Lamb v. Hazel*, No. 12-cv-00070, 2013 WL 1411239, at *7 (W.D. Ky. Apr. 8, 2013); *see also* Emma Garl Smith, *The Importance of the Garden-Variety Exception to Mental Health Privilege Waivers in Protecting Patient Privacy*, 27 Annals Health L. Advance Directive 72, 74 (2017) ("The garden-variety exception, however, aligns with the *Jaffee* court's intention.").

or is using communications with her therapist as affirmative evidence.  Pls.' Opp. at 43.[12]  But the middle ground reflects the majority view—and the view of this District—for a reason.  The garden variety "approach is sound, because it appropriately considers the importance of the psychotherapist privilege and its purpose of promoting successful psychiatric treatment by encouraging confidence and trust within the psychotherapist-patient relationship."  *Dominguez-Silva v. Harvey*, No. 04-cv-135, 2006 WL 826091, at *1 (N.D. Ga. Mar. 23, 2006).  It allows litigants to still obtain counseling and still seek emotional damages; it's simply up to them whether they wish to waive privilege in exchange for seeking damages for "unusually severe emotional distress."  *Id.*  In other words, it "gives the plaintiff, as master of his Complaint, clear guidance on what claims or allegations will operate to waive the privilege."  *Id.*; *see also Womack v. Wells Fargo Bank, N.A.*, 275 F.R.D. 571, 573 (D. Minn. 2011) (the middle ground leaves waiver to plaintiffs' prerogative without prejudicing "a Defendant's interest in adequately defending itself").

Claims for emotional distress damages are the psychotherapist version of an advice-of-counsel defense.  Waiver occurs in the latter context because of *fairness* and does not depend exclusively on some technical question about whether the actual content of specific communications has been put at issue.  Plaintiffs insist there is no analogy between a claim for

---

[12] Defendants urge a wary approach to these "numerous cases."  *Hucko v. City of Oak Forest*, 185 F.R.D. 526 (N.D. Ill. 1999), predates the Seventh Circuit's decision in *Doe v. Oberweis Dairy*, 456 F.3d 704 (7th Cir. 2006), which "applied waiver of the psychotherapist-patient privilege broadly."  *Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 514–15 (N.D. Ill. 2018) (discussing *Oberweis* and rejecting the middle-ground approach as too narrow).  The Massachusetts case that Plaintiffs cite does not reflect a unanimous court.  *Compare Cabot v. Lewis, C.A.*, No. 13-11903-FDS, 2015 U.S. Dist. LEXIS 176577, at *9 (D. Mass. Apr. 28, 2015) ("This Court agrees with the "middle ground" approach.").  Neither do the two California cases on which Plaintiffs rely.  *Compare Nehad v. Browder*, No. 15-cv-1386, 2016 WL 1428069, at *3 (S.D. Cal. Apr. 11, 2016) ("[T]his Court adopts the broad approach and concludes Plaintiffs waived the psychotherapist privilege.").  Plaintiffs have not cited a single case in this District that rejects the majority middle ground approach and endorses Plaintiffs' restrictive view instead.

emotional distress damages and the advice-of-counsel defense, but they ignore the factors relevant to waiver for that defense:  whether some affirmative act "'such as filing suit'" makes the protected information "'relevant to the case,'" and whether "'application of the privilege would have denied the opposing party access to information vital to his defense.'"  *Davenport v. Djourabchi*, No. 16-02445, 2020 WL 7042813, at *11 (D.D.C. Nov. 30, 2020) (quoting *Wender v. United Servs. Auto. Ass'n*, 434 A.2d 1372, 1374 (D.C. Cir. 1981)).  That is exactly what is happening here.  It is not "[p]enalizing plaintiffs who seek treatment" by asking them to choose between garden variety emotional distress damages and the psychotherapist privilege.  Pls.' Opp. at 42.  It is enforcing basic standards of fairness that commonly inform waiver issues.

Plaintiffs have made it clear that they intend to seek more than garden variety emotional distress damages.  That is their prerogative as masters of their complaint, but Defendants are entitled to defend against those claims as a matter of fairness, ███████████████████████████ ████████████████.  If that is unacceptable to Plaintiffs, it is not Defendants who must sacrifice their ability to defend against the claims.  It is Plaintiffs who must withdraw any claim for damages beyond the garden variety.

### 2.    Diagnoses and Medications Are Not Privileged.

Plaintiffs separately fault Defendants for their "deficient briefing" on whether diagnoses and medications fall within the privilege.  Pls.' Opp. at 44.  It is the rare discovery dispute that actually warrants a forty-five page brief.  This is not one of them.  The privilege that *Jaffee* created permits "confidential *communications* between a licensed psychotherapist and her patients in the course of diagnosis or treatment [to be] protected from compelled disclosure."  *Jaffee*, 518 U.S. at 15 (emphasis added).

Plaintiffs twist select quotes from that opinion to argue that anything that "'may cause embarrassment or disgrace'" and somehow "'impede development of the confidential

relationship'" is walled off from discovery.  Pls.' Opp. at 44 (quoting *Jaffe*, 518 U.S. at 10).  This overbroad reasoning would extend the privilege to all manner of basic facts if a litigant thought they might be embarrassing but nevertheless worth disclosing to a therapist.  That is contrary to the D.C. Circuit's holding that the psychotherapist privilege *Jaffee* recognized "extends no further than confidential communications between licensed mental health professionals and their patients."  *In re Sealed Case (Med. Recs.)*, 381 F.3d 1205, 1214 (D.C. Cir. 2004).

Moreover, Plaintiffs admit that even under the most restrictive interpretation of waiver, a patient can still waive the privilege over communications by "disclosing them."  Pls.' Opp. at 36.  Indeed, a patient can "waive the psychotherapist-patient privilege by knowingly and voluntarily relinquishing it."  *United States v. Babarinde*, 126 F. Supp. 3d 22, 25 (D.D.C. 2015) (citation omitted).  How, then, does the disclosure of diagnoses and medications *not* waive the privilege, as *Babarinde* held?  Because that information is not privileged.

Plaintiffs make no attempt to explain *Babarinde* except to argue that the "question whether the privilege covers diagnoses and prescriptions was not before the court" in *Barbarinde*.  Pls.' Opp. at 44.  Not so.  The *Babarinde* court had to decide whether the patient "waived the privilege by … testifying in open-court…. [and] identif[ying] her mental health diagnoses and describ[ing] … what medications she was taking."  *Babarinde*, 126 F. Supp. 3d at 25 (marks and citations omitted).  The court distinguished between (on the one hand) medications and diagnoses and (on the other) "the substance of [any of her] therapy session[s]."  *Id*.  The only way that disclosure of the former does not waive privilege over the latter is if "medications and diagnoses" are not themselves privileged.  The Fifth Circuit reached the same conclusion under similar circumstances:

> Winans did not waive the privilege simply by testifying about her psychiatric conditions and medication history.  The privilege protects confidential *communications* between a psychotherapist and a patient.  Winans testified about

the *facts* of her medical diagnoses and medication history, but she did not provide any details about the nature of her conversations with her doctor.

*United States v. Portillo*, 969 F.3d 144, 182 (5th Cir. 2020); *see also Mukes v. City of Milwaukee*, No. 13-cv-1268, 2015 WL 3823887, at *7–8 (E.D. Wis. June 19, 2015) (holding that medications were not covered by the privilege); *Gomes v. Lake Cnty.*, No. 12 C 4439, 2013 WL 2156042, at *2 (N.D. Ill., May 15, 2013) ("[A] doctor's prescription of a drug or a referral for treatment for a mental health condition" are "not privileged information").[13]

The sum total of Plaintiffs' arguments is that they are allowed to claim all manner of extreme emotional harm, while Defendants' ability to take discovery on those allegations is restricted beyond worth.  That is not consistent with either the law or fairness.

## <u>CONCLUSION</u>

For these reasons and the reasons given in Defendants' motion to compel, the Court should grant Defendants' motion.

---

[13] Plaintiffs instead argue that their privacy interests must win out under *In re Sealed Case (Medical Records)*.  Pls.' Opp. at 44.  They fail to mention that the case addressed privacy interests of a *nonparty*, not a plaintiff seeking to recover monetary damages on the basis of purported emotional harm.

November 15, 2021

Respectfully submitted,

*/s/ Terri L. Chase*
Terri L. Chase (*pro hac vice*)
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, Florida 33131
Ph: (305) 714-9700
Email: tlchase@jonesday.com

Traci Lovitt (Bar No. 467222)
JONES DAY
250 Vesey Street
New York, NY 10281
Ph: (212) 326-3939
Email: tlovitt@jonesday.com

Christopher DiPompeo (Bar No. 1003503)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Ph: (202) 879-3939
Email: cdipompeo@jonesday.com

Anderson T. Bailey (*pro hac vice*)
JONES DAY
500 Grant Street
Pittsburgh, PA 15219
Ph: (412) 391-3939
Email: atbailey@jonesday.com

*Attorneys for Defendants*