**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MARK C. SAVIGNAC and JULIA SHEKETOFF, | ) ) ) | |
| *Plaintiffs*, | ) ) | Civ. No. 1:19-02443 (RDM) |
| *v.* | ) ) | JURY TRIAL DEMANDED |
| JONES DAY et al., | ) ) ) | |
| *Defendants*. | ) | |

**DEFENDANTS' ANSWER AND DEFENSES**
**TO PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendants Jones Day (or the "Firm"), Stephen J. Brogan, Beth Heifetz, and Michael Shumaker, by and through undersigned counsel, hereby file this Answer and Defenses ("Answer") to Plaintiffs' Second Amended Complaint ("Complaint"). Any allegation not explicitly admitted is denied. Headings and footnotes contained in the Complaint are not substantive allegations to which an answer is required and to the extent the headings are repeated in the Answer, it is solely for ease of reference. To the extent any heading or footnote is construed as substantive allegations to which an answer is required, Defendants deny the allegations, except admit that they consented to the filing of the Complaint and reserve all defenses thereto.

**PRELIMINARY STATEMENT**

Plaintiffs instigated this dispute with the stated intention of trying this case in the court of public opinion. They contacted media outlets and launched PR campaigns—complete with photo shoots—before even filing suit. And to grab headlines, they prepared a pleading long on salacious allegations but devoid of legal or factual merit.

Sheketoff's pay discrimination claim rests on the allegation that "Partner A," who is male, "gave her a poor performance review for not showing him the degree of deference that he demands

from female (but not male) attorneys." The claim is not made in good faith. Partner A's written evaluation of Sheketoff was only one of the negative reviews she received, and she does not allege that any of the others were discriminatory. And Partner A's evaluation had nothing to do with insufficient deference. It was positive in some respects, but commented negatively on Sheketoff's availability and academic writing style. Moreover, Sheketoff has no basis to claim that Partner A's criticisms—shared by others—were motivated by her gender. As of the filing of this lawsuit, Partner A had submitted fifteen evaluations of female associates since becoming a partner. Only Sheketoff's review was negative. Partner A was also critical of male associates' performances when the circumstances warranted.

Sheketoff's sensationalist allegation that Jones Day doctored her website photo to make her look more Caucasian is ridiculous. Jones Day celebrates its diversity and has numerous diverse lawyers in leadership positions, including the Partner-in-Charge of the Washington Office (and his predecessor) and Partner A, a practice leader. Sheketoff omits that she herself selected and approved the photo that the Firm used on its website, and that Jones Day also used other photos of Sheketoff in marketing, none of which the Complaint claims were doctored.

Savignac's claims are equally meritless. Jones Day's family leave policy affords all new birthparents the same amount of family leave, depending solely on caregiver status, a gender-neutral distinction. As required by federal law, Jones Day also extends its short-term disability leave policy to new mothers who give birth. Demonstrating immaturity and poor judgment, Savignac demanded that he be given more leave than similarly situated female associates or else he would sue Jones Day and take his case to the "court of public opinion." Savignac made this extortionate demand despite admitting that birth mothers are entitled to at least some period of disability leave and that he was never disabled. In other words, Savignac demanded the same total

leave as birth mothers while admitting that only birth mothers were entitled to disability leave—a legally indefensible position.

Plaintiffs' claim that they are fighting "archaic gender roles" is contrived.  Rather than fighting stereotypes, two highly paid associates demanded that Savignac (and just Savignac) receive additional paid leave using threats of a lawsuit based on a concocted legal theory that Jones Day's authorization of short-term disability leave after childbirth is somehow a "sham."  Their misguided allegations have no basis in fact or law.

### RESPONSES TO PLAINTIFFS' ALLEGATIONS

1. Defendants admit that Plaintiffs are attorneys and formerly clerked at the United States Supreme Court.  Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 1 of the Complaint and, on that basis, deny them.

2. Defendants admit that Jones Day is a global law firm with over 40 offices in major centers of business and finance on five continents.  Defendants lack knowledge or information sufficient to form a belief as to whether Jones Day is one of the most politically influential firms in the world and, on that basis, deny that allegation.  Defendants admit that Brogan is the Managing Partner of Jones Day and deny the remainder of the second sentence of Paragraph 2 of the Complaint, except admit that the language in the second quote has appeared on Jones Day's website.  Defendants admit that Heifetz was previously the Practice Leader of Jones Day's Issues & Appeals practice.

3. Defendants admit that Plaintiffs were associates in Jones Day's Issues & Appeals practice.

4. Defendants deny the allegations in Paragraph 4 of the Complaint.  The only distinctions in Jones Day's family leave policy are between primary and secondary caregivers, and between biological and adoptive parents.  Neither distinction is gender-based nor reflects archaic

gender roles.  Consistent with EEOC guidance, women who give birth may also qualify for short-term disability leave in addition to family leave.  That women give birth is an unavoidable biological fact, not an archaic gender role.  Moreover, any other person who qualifies may also take short-term disability leave, regardless of gender.

5.      Defendants deny that Jones Day's family leave policy reflects, establishes, is based on, or perpetuates "archaic gender roles."  Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 5 of the Complaint and, on that basis, deny them.

6.      Defendants admit that Sheketoff voluntarily resigned from Jones Day on or about August 24, 2018, and that Savignac sent an email dated January 16, 2019, to Jones Day's Director of Human Resources and Counsel.  That email is a written document that speaks for itself, and Defendants deny any allegation inconsistent therewith, including without limitation that the email was from Sheketoff.  Defendants lack information and belief as to when Plaintiffs' son was born or about Sheketoff's rationale for leaving Jones Day.

7.      The allegations in Paragraph 7 of the Complaint refer to a written document that speaks for itself, and Defendants deny any allegations inconsistent therewith.  Defendants deny the characterization of Jones Day's compensation system as a "black box," deny that Jones Day's compensation system is discriminatory, and deny that Plaintiffs experienced unlawful discrimination or retaliation at Jones Day.

8.      The allegations in Paragraph 8 of the Complaint refer to a written document that speaks for itself, and Defendants deny any allegations inconsistent therewith.  Defendants lack knowledge or information sufficient to form a belief as to Plaintiffs' subjective intent and, on that basis, deny those allegations in Paragraph 8 of the Complaint.  Defendants deny any allegation

that Plaintiffs experienced gender-based discrimination at Jones Day or that Sheketoff's compensation at Jones Day was impacted by any such discrimination.

9.    Defendants admit that Jones Day fired Savignac effective January 22, 2019.

10.    Defendants deny that Jones Day fired Savignac in retaliation for any protected activity.  Jones Day terminated Savignac's employment because it concluded that he showed poor judgment, a lack of courtesy to his colleagues, personal immaturity, and a disinterest in pursuing his career at Jones Day—all of which are reflected by and apparent in the intemperate email he sent to Ms. McClure.  Savignac exhibited open hostility to the Firm, demanding that he be given the additional eight paid weeks of leave that he wanted for himself "or else" and claiming hardship under circumstances that no reasonable person would view as anything but exceptionally generous.

11.    Defendants deny the allegations in Paragraph 11 of the Complaint and refer to their response to Paragraph 216 of the Complaint.

12.    Defendants deny the allegations in Paragraph 12 of the Complaint.

## PARTIES

13.    Defendants lack knowledge or information sufficient to form a belief as to the first sentence of Paragraph 13 of the Complaint and, on that basis, deny that sentence.  Defendants admit the second sentence of Paragraph 13 of the Complaint.

14.    Defendants lack knowledge or information sufficient to form a belief as to the first sentence of Paragraph 14 of the Complaint and, on that basis, deny that sentence.  Defendants admit the second sentence of Paragraph 14 of the Complaint.

15.    Defendants deny that Jones Day's principal place of business is in the District of Columbia.  Defendants admit the remaining allegations in Paragraph 15 of the Complaint.

16.     Defendants admit the allegations in Paragraph 16 of the Complaint, except deny that the Managing Partner regularly works out of the Washington, D.C. office, although admit that he maintains an office there.  The allegation that Brogan "[a]t all relevant times, acted in the interest of Jones Day" is a legal conclusion to which no response is required.

17.     Defendants admit that Michael Shumaker is the Firm Administrative Partner at Jones Day and is based out of the Washington, D.C. office.  The allegation that Shumaker "[a]t all relevant times, acted in the interest of Jones Day" is a legal conclusion to which no response is required.  Defendants deny that Shumaker is "Brogan's chief business adviser on personnel and other administrative matters" and further state that the responsibilities of Jones Day's Administrative Partner include serving "as counsel to the Firm on personnel and other matters," as set forth in the Jones Day Firm Manual.

18.     Defendants admit that Heifetz was previously the practice leader of Jones Day's Issues & Appeals practice group and is based out of the Washington, D.C. office.  The allegation that Heifetz "[a]t all relevant times … acted in the interest of Jones Day" is a legal conclusion to which no response is required.

## JURISDICTION AND VENUE

19.     Paragraph 19 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required, Defendants admit that the Court has subject matter jurisdiction over certain of the claims asserted in this suit pursuant to 28 U.S.C. § 1331.

20.     Paragraph 20 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required, Defendants admit that the Court has supplemental jurisdiction over certain of the claims asserted in this suit pursuant to 28 U.S.C. § 1367.

21.     Paragraph 21 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required, Defendants admit that this Court has personal jurisdiction over them.

22.     Paragraph 22 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required Defendants admit that certain events are alleged to have taken place in the District of Columbia and that venue lies here pursuant to 28 U.S.C. § 1391(b).

23.     To the extent Paragraph 23 states a legal conclusion, no response is required. Defendants admit that Sheketoff filed a charge with the EEOC dated June 18, 2019.

24.     To the extent Paragraph 24 states a legal conclusion, no response is required. Defendants admit that Savignac filed a charge with the EEOC dated June 19, 2019.

## FACTUAL ALLEGATIONS

25.     The allegations in Paragraph 25 are vague, rely on generalization and over-simplification, generically allege activities engaged in by lawyers, and are therefore denied as stated.

26.     Defendants deny that Jones Day's main area of legal practice is litigation, admit that Plaintiffs primarily worked on civil and criminal litigation matters while at Jones Day, and incorporate their responses to the following paragraphs insofar as they relate to the remainder of Paragraph 26.

27.     The allegations in Paragraph 27 are vague, rely on generalization and over-simplification, and are therefore denied as stated.  Defendants admit that both the facts and the law are relevant to litigators in representing parties to disputes.

28.     The allegations in Paragraph 28 are vague, rely on generalization and over-simplification, and are therefore denied as stated.

29.     The allegations in Paragraph 29 are vague, rely on generalization and over-simplification, and are therefore denied as stated.

30.     The allegations in Paragraph 30 are vague, rely on generalization and over-simplification, and are therefore denied as stated.  Defendants admit that judges generally decide pure issues of law and that federal court judges are usually experienced attorneys.

31.     The allegations in Paragraph 31 are vague and rely on generalization and over-simplification, and are therefore denied as stated.

32.     The allegations in Paragraph 32 are vague, rely on generalization and over-simplification, and are therefore denied as stated.

33.     Defendants deny the allegations in Paragraph 33, except that they lack information sufficient to form a belief as to how lawyers at other firms spend their time and on that basis deny the allegation as to "similar firms."

34.     Defendants admit that some firms advertise having a practice group specializing in appellate or Supreme court practice and otherwise lack information sufficient to form a belief as to the remaining allegations in Paragraph 34 and, on that basis, deny the remaining allegations.

35.     Defendants lack information sufficient to form a belief as to how lawyers at other firms spend their time and on that basis deny the allegations in Paragraph 35.

36.     Defendants deny that "the meaningful dividing line in litigation is between facts and law."  The remaining allegations in Paragraph 36 are vague, rely on generalization and over-simplification, and are therefore denied as stated.

37.     Defendants admit that there is a practice group at Jones Day named "Issues & Appeals" and that the quoted language appears on the Jones Day website.  Defendants deny the remaining allegations in Paragraph 37.

38.     Defendants admit that a majority of attorneys practicing in Jones Day's U.S. offices are either employees with the job title "Associate" or members of the Jones Day partnership. Defendants lack information sufficient to form a belief as to "similar firms" and on that basis deny the remaining allegations in Paragraph 38.

39.     Defendants admit that associates in Jones Day's Issues & Appeals practice frequently work on trial and appellate litigation and other dispute resolution matters, and admit that the quoted language appears on the Jones Day website.  Defendants deny the last sentence in Paragraph 39.  The remaining allegations in Paragraph 39 are vague, rely on generalization and over-simplification and are therefore denied as stated.

40.     Defendants admit that Sheketoff worked on various matters, including in the U.S. Supreme Court, U.S. Courts of Appeals for the Third, Fifth, and D.C. Circuits, and trial courts; that those matters entailed drafting briefs and memoranda; and that Sheketoff argued a case in the U.S. Court of Appeals for the D.C. Circuit in 2018.

41.     The allegations in Paragraph 41, which implicitly incorporates by reference all prior allegations are similarly vague, rely on generalization and over-simplification, and are denied as stated.

42.     Defendants admit the third sentence of Paragraph 42.  Defendants also admit that some Issues & Appeals associates, as well as partners and associates in other practices, help other attorneys prepare for oral arguments; that Jones Day partners argue cases in the federal courts of appeals for paying clients more frequently than Jones Day associates; and that Jones Day encourages associates in many practices to work on pro bono trials and appeals.  Defendants deny as stated the remaining allegations in Paragraph 42.

43.     Defendants admit that all Jones Day associates are expected to be fast learners, that none work on divorce cases and that, except in pro bono cases, Jones Day lawyers do not handle child custody disputes.  Defendants also admit that the matters Plaintiffs worked on while at Jones Day spanned several different subject matters, and that one of the lawyers representing Jones Day in this action is an Issues & Appeals lawyer with bankruptcy expertise.  Defendants deny the first sentence of Paragraph 43 and deny as stated the remaining allegations in Paragraph 43, which are vague and rely on generalization and over-simplification.

44.     Defendants deny Paragraph 44.

45.     Defendants deny the first two sentences in Paragraph 45.  Defendants admit that the credentials of Issues & Appeals associates typically include experience as an appellate clerk; that Jones Day focuses certain recruiting efforts on individuals clerking for Justices of the U.S. Supreme Court and extends offers to most such individuals who apply for an associate position; that Jones Day regularly pays associates a clerkship bonus when they join the Firm from a clerkship, including a $300,000 clerkship bonus to Sheketoff and, more recently, a $400,000 bonus to other former Supreme Court clerks.  Defendants deny or deny as stated the remaining allegations in Paragraph 45.

46.     Defendants admit that a majority of the associates currently in Jones Day's Issues & Appeals practice clerked for a Justice of the U.S. Supreme Court and deny as vague the remaining allegations in Paragraph 46.

47.     Defendants admit that associates in Jones Day's Issues & Appeals practice who did not clerk at the Supreme Court satisfied the high academic standards Jones Day has set for all of its associates.  Defendants deny the remaining allegations in Paragraph 47.

48.     Defendants deny Paragraph 48.

49.     Defendants deny the first sentence of Paragraph 49.  Defendants lack information sufficient to form a belief as to the second sentence of Paragraph 49 and, on that basis, deny the sentence.  Defendants admit that Heifetz sometimes approached associates with different JD Years regarding availability for a particular project, but deny as stated the remainder of the third sentence of Paragraph 49.  Defendants further state that staffing of Issues & Appeals matters generally took into account associates' substantive expertise in the relevant field, level of experience, strategic judgment and reliability, among other factors.

50.     Defendants admit the tautology that all Issues & Appeals associates have the title of "associate" and belong to the Issues & Appeals practice but deny the remaining allegations of Paragraph 50.

51.     Defendants admit that work comes to Issues & Appeals associates in a variety of ways and that the channel by which an associate receives work is irrelevant to the assessment of the level of skills, effort or responsibility involved in the assignment.

52.     Defendants admit that the Rules of the Supreme Court of the United States prohibit former clerks from participating in a professional capacity in a case before that Court for a two-year period following the clerkship, that the mix of trial, appellate, Supreme Court, and other work differs significantly among Issues & Appeals associates, that the differences are due to a variety of factors, including the associates' own interests, abilities, experience and availability, and that there is no "top-down segregation of Issues & Appeals associates into different lines of work." Defendants deny or deny as stated the remaining allegations in Paragraph 52 of the Complaint.

53.     Defendants admit that not all Issues & Appeals associates have been equally skilled or perceived as equally skilled.  Defendants deny the  second sentence of Paragraph 53.

54.     Defendants deny Paragraph 54 of the Complaint.

55.      Defendants deny Paragraph 55 of the Complaint.

56.      Defendants deny Paragraph 56 of the Complaint.

57.      Defendants deny the allegations in Paragraph 57, deny that the Issues & Appeals partners involved in either the *Tolton* litigation or this matter handle only "questions of law," and deny the alleged basis for Jones Day's selection of defense counsel.

58.      Defendants admit that Plaintiffs worked on matters before the U.S. Supreme Court while at Jones Day and otherwise deny or deny as stated the allegations in Paragraph 58 of the Complaint.

59.      Defendants admit that some Issues & Appeals associates record more billable hours than others and that no associate's productivity is measured by pages written or number of cases handled.  Defendants deny or deny as stated the remaining allegations in Paragraph 59 of the Complaint.

60.      Defendants admit that five of the eighteen male associates identified in an exhibit filed by the *Tolton* plaintiffs as having been paid more but having fewer billable hours than the Atlanta plaintiff in one particular year were former Supreme Court clerks in Jones Day's Washington, D.C. office, but deny that Jones Day expects associates in other practice groups to work more than Issues & Appeals associates, and deny that the referenced statement supports any such claim.

61.      Defendants deny the allegations in Paragraph 61 and, in particular, deny that Plaintiffs' measurement of "effort" is legally relevant or factually accurate, and deny that legal work involves "rote repetition" unless it requires "creative thought" on "novel issues."

62.      Defendants admit that most matters that Jones Day associates work on are important, complex, or both, but deny that the nature of the matter determines the level of

responsibility that any particular associate assumes in relation to that matter.  Defendants deny or deny as stated the remaining allegations in paragraph 62 of the Complaint.

63.     Defendants admits that Issues & Appeals associates—like all associates—spend some time researching the law, and admit that most Issues & Appeals associates, like many other associates, draft briefs or portions of briefs.  Defendants deny or deny as stated the remaining allegations in Paragraph 63 of the Complaint, which are vague and rely on generalization and over-simplification.

64.     Defendants admit that all Jones Day associates are supervised by partners and are accountable for their work.  Defendants deny or deny as stated the remaining allegations in Paragraph 64 of the Complaint, which are vague and rely on generalization and over-simplification.  The level of supervision provided by partners is a function, among other things, of the associates' need for supervision.

65.     The first sentence of Paragraph 65 states a legal conclusion to which no response is required and on that basis Defendants deny the allegation.  Defendants admit that all Jones Day associates, including Issues & Appeals associates, are assigned an office with heating and air conditioning, have access to office furnishings, including desks and office chairs, and in some offices have some discretion in the arrangement of office furniture, and are governed by the same overall Firm policies, subject to any variation in the laws of individual jurisdictions.  Defendants deny or deny as stated the remaining allegations in Paragraph 65 of the Complaint.

66.     Defendants deny Paragraph 66 of the Complaint.

67.     Defendants deny  Paragraph 67 of the Complaint.

68.     Defendants admit that certain Issues & Appeals associates, including Plaintiff Sheketoff, were the highest paid associates in the class of 2010 law graduates as of July 1, 2016.

69.     Defendants deny Paragraph 69 of the Complaint.  Savignac was not the highest paid associate in the class of 2011 law school graduates as of January 1, 2019.

70.     Defendants deny Paragraph 70 of the Complaint.  Savignac's salary just prior to his termination was lower than that of other associates in the class of 2011 law school graduates.

71.     Defendants admit that the quoted language has appeared on the Jones Day website.

72.     Defendants admit that the process for drafting evaluations, preparing an assessment statement, and reviewing the performance of an associate during a given calendar year typically occurs in the first six months of the following year, and admit that associate salary adjustments are based at least in part on the results of that process for each associate.  Except as expressly admitted, Defendants deny the allegations in Paragraph 72 of the Complaint, including the characterization of Jones Day's compensation system as a "black box," and deny that the Complaint has fully and accurately described the Firm's process for evaluating associates and determining associate compensation.

73.     Defendants admit that, as part of the Firm's evaluation process, more senior attorneys with whom an associate worked prepare written evaluations of the associate's performance.  Except as expressly admitted, Defendants deny the allegations in Paragraph 73 of the Complaint, and deny that the Complaint has fully and accurately described the Firm's process for evaluating associates and determining associate compensation.

74.     Defendants admit that as part of the Firm's evaluation process, an assessment statement for each associate is prepared based on the associate's written evaluations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 74 of the Complaint, and deny that the Complaint has fully and accurately described the Firm's process for evaluating associates and determining associate compensation.

75.     Defendants admit that associate salaries are determined each year according to a process that involves review by the Managing Partner of the Firm, and that associate salary adjustments typically take effect in July.  Except as expressly admitted, Defendants deny the allegations in Paragraph 75 of the Complaint, and deny that the Complaint has fully and accurately described the Firm's process for evaluating associates and determining associate compensation.

76.     Defendants admit that physical copies of the evaluations and assessment of an associate in Jones Day's Washington, D.C. office are not distributed to that associate during the review process for the associate to retain.  Except as expressly admitted, Defendants deny the allegations in Paragraph 76 of the Complaint, and deny that the Complaint has fully and accurately described the Firm's process for evaluating associates and determining associate compensation.

77.     Defendants deny the allegations in Paragraph 77 of the Complaint.

78.     Defendants deny the allegations in Paragraph 78 of the Complaint.

79.     Defendants deny the allegations in Paragraph 79 of the Complaint, but lack knowledge or information sufficient to form a belief as to how "most peer law firms set associate pay" and, on that basis, deny that allegation.  Jones Day compensates associates based on each individual's performance, inclusive of productivity, taking into account other factors such as the relevant geographic market.   The Firm makes annual compensation decisions after a comprehensive months-long evaluation process in which an assessment is made of each associate's overall contribution to the success of the Firm.

80.     Defendants deny the allegations in Paragraph 80 of the Complaint.

81.     Defendants admit that Savignac received positive written evaluations for his performance in 2017, but deny that he had a "successful career" at Jones Day or a "bright future" at the Firm.  Savignac was at the Firm for fewer than two years and, in that brief period, had not

established a career or sufficiently demonstrated that he had a "bright future" at the Firm.  The 2017 written evaluations of Savignac, who started at the Firm in May 2017, reflect eight months of work, and Savignac's performance in 2018 was not assessed through the comprehensive assessment process because he was terminated before evaluations were prepared.  Defendants deny any allegation that Savignac would have made partner at Jones Day.  Associates at Jones Day— including in the Issues & Appeals practice—often do not make partner at the Firm, and Savignac's tenure at Jones Day was too short to make any reliable assessment of his candidacy for partnership.

82.     Defendants admit that Savignac joined Jones Day following a clerkship at the Supreme Court of the United States.  Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 82 of the Complaint and, on that basis, deny them.

83.     Defendants admit the allegations in Paragraph 83 of the Complaint.

84.     Defendants admit that the quoted language appeared in Jones Day's offer letter to Savignac and deny the remaining allegations of Paragraph 84 of the Complaint.

85.     Defendants lack knowledge or information sufficient to form a belief as to what enticed Savignac or other Supreme Court clerks to accept Jones Day's offer of an associate position, or about the salaries and billable hours expectations of peer firms, and on that basis deny those allegations in Paragraph 85 of the Complaint.  Defendants deny that Jones Day offers to prospective associates in its Issues & Appeals practice group either substantially lower billable hours expectations than peer firms, or a virtual certainty of making partner if they so desire.

86.     Defendants admit the allegations in Paragraph 86 of the Complaint.

87.     Defendants admit the allegations in Paragraph 87 of the Complaint.

88.     Defendants admit the allegations in Paragraph 88 of the Complaint.

89.     Defendants deny the allegations in Paragraph 89 of the Complaint.

90.     Savignac's written evaluations and assessment statement for his performance in 2017 are written documents and speak for themselves, and Defendants deny any allegation in Paragraph 90 of the Complaint inconsistent therewith.

91.     Defendants admit that Jones Day increased Savignac's annual salary to $500,000 effective July 2018, deny the remaining allegations in Paragraph 91 of the Complaint, and refer to their response to Paragraph 79 of the Complaint.

92.     Defendants admit that written evaluations of Savignac's performance in 2018 were not completed and submitted in 2019 because the Firm fired Savignac in January 2019, and that one partner did submit a written evaluation of Savignac's performance in 2018.

93.     Defendants deny the allegations in Paragraph 93 of the Complaint.

94.     Defendants deny the allegations in Paragraph 94 of the Complaint.  Jones Day does not have a minimum hours target that must be attained by an associate in order to obtain a bonus, but Jones Day does set hours targets for associates and communicates those targets to associates.

95.     Defendants admit that Savignac billed over 1,900 in client and other legal hours in 2018 and deny the remaining allegations in Paragraph 95 of the Complaint.

96.     Defendants admit that promotion to partnership at Jones Day and salary adjustments for Jones Day associates are not based solely on the number of hours billed and that Heifetz has informed some Supreme Court clerk candidates for employment that attorneys in the practice can maintain a work-life balance.  Defendants deny the remaining allegations in Paragraph 96 of the Complaint.

97.     Defendants admit that Heifetz asked Savignac in 2018 to work with other Jones Day attorneys to write the briefs in a case that was pending before the U.S. Supreme Court. Defendants deny the remaining allegations in Paragraph 97 of the Complaint.

98.     Defendants admit that Heifetz assigned Savignac to the case because of his background as a Supreme Court clerk and to help ensure that the briefing in the case was commensurate with Jones Day's standards for Supreme Court advocacy. Defendants deny the remaining allegations in Paragraph 98 of the Complaint, including the allegation that Heifetz lacked confidence in the supervising partner's ability to represent the client.

99.     Defendants admit that Jones Day's client prevailed in the Supreme Court appeal following argument by the supervising partner, and admit that Savignac worked on the briefing. Defendants deny the remaining allegations in Paragraph 99 of the Complaint.

100.    Defendants deny the allegations in Paragraph 100 of the Complaint.

101.    Defendants deny the allegations in Paragraph 101 of the Complaint.

102.    Defendants admit that Sheketoff joined Jones Day following a clerkship at the Supreme Court of the United States. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 102 of the Complaint and, on that basis, deny them.

103.    Defendants admit the allegations in Paragraph 103 of the Complaint.

104.    Defendants deny the allegations in Paragraph 104 of the Complaint.

105.    Defendants admit that a photograph of Sheketoff was taken for the Jones Day website and deny that any Jones Day partner or employee doctored any photograph of Sheketoff or directed anyone else to doctor any photograph of Sheketoff. The photograph selected for the Jones Day website was chosen by Sheketoff. A print of that photograph was then given to

Sheketoff for her approval before it was posted to the website.  No photo was posted to the website without Sheketoff's advance approval.  Defendants further aver that Jones Day used other photographs of Sheketoff on its website and in marketing material, such as photographs of Sheketoff posing with other former Supreme Court clerks.  Sheketoff does not allege that any of those images of her were doctored.  Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 105 of the Complaint about whether Sheketoff is bi-racial and, on that basis, deny them.

106.    Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 106 of the Complaint and, on that basis, deny them.

107.    Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 107 of the Complaint and, on that basis, deny them.

108.    Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 108 of the Complaint and, on that basis, deny them.  Jones Day did not instruct the photographer to make Sheketoff appear more Caucasian or more attractive.

109.    Defendants deny the allegations in Paragraph 109 of the Complaint.

110.    Defendants admit that Jones Day does not edit the photographs of any lawyer or employee to make them appear more Caucasian or more attractive.  Except as expressly admitted, Defendants deny the allegations in Paragraph 110 of the Complaint.

111.    Defendants deny the allegations in Paragraph 111 of the Complaint.

112.    Defendants deny the allegations in Paragraph 112 of the Complaint.

113.    Defendants admit that Sheketoff received four salary increases during her tenure at Jones Day, and that one of those increases was comparatively smaller than the others.  Except as expressly admitted, Defendants deny the allegations in Paragraph 113 of the Complaint.

114.    Defendants admit the allegations in Paragraph 114 of the Complaint.

115.    Defendants admit the allegations in Paragraph 115 of the Complaint.

116.    Defendants admit that Sheketoff worked with Partner A during her third year at Jones Day, that the project involved writing a memorandum for a Jones Day client, and that Partner A is not in the Issues & Appeals practice group.  Except as expressly admitted, Defendants deny the allegations in Paragraph 116 of the Complaint.

117.    Defendants deny the allegations in Paragraph 117 of the Complaint.

118.    Defendants deny the allegations in Paragraph 118 of the Complaint.

119.    Defendants admit the allegations in Paragraph 119 of the Complaint.

120.    Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 120 of the Complaint and, on that basis, deny them.  In commenting on Partner A's edits to the memorandum, Sheketoff did not indicate that any rendered the memorandum misleading.

121.    Defendants admit that Sheketoff consulted an attorney in the Issues & Appeals group about Partner A's edits.

122.    Defendants admit that the attorney with whom Sheketoff consulted advised her to raise with Partner A any concerns she may have regarding the memorandum.  Except as expressly admitted, Defendants deny the allegations in Paragraph 122 of the Complaint.

123.    Defendants deny the allegations in Paragraph 123 of the Complaint as stated. Sheketoff edited the draft memorandum without first discussing her proposed changes with Partner A.  After revising the draft, Sheketoff sent her changes to Partner A.

124.    Defendants deny the allegations in Paragraph 124 of the Complaint.   In fact, Sheketoff's email to Partner A summarized five groups of changes to the memorandum.  On the

first group of edits, Partner A commented "very good" and changed one item.  On the second, Partner A commented "I like your changes a lot" and made a stylistic change.  On the third, Partner A commented "Those look great" and made no alterations.  The fourth, which Partner A considered stylistic change, he reversed.  On the fifth, Partner A commented "That's fine."  Nothing in Partner A's email conveyed that "it was inappropriate for Julia to suggest that his work could be improved or clarified" or that "her role was simply to defer to him," as Paragraph 124 alleges.

125.   Defendants deny the allegations in Paragraph 125 of the Complaint.

126.   Defendants deny the allegations in Paragraph 126 of the Complaint.

127.   Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 127 of the Complaint and, on that basis, deny them.

128.   Defendants deny the allegations in the first sentence of Paragraph 128 of the Complaint.  Defendants deny any allegation that Partner A inappropriately demands or expects deference from any associate based on the associate's gender.

129.   Defendants deny the allegations in Paragraph 129 of the Complaint.

130.   Defendants deny the allegations in Paragraph 130 of the Complaint.

131.   The allegations in Paragraph 131 of the Complaint refer to a written document that speaks for itself, and Defendants deny any allegations inconsistent therewith, including the allegation that Partner A's evaluation criticized Sheketoff for being insufficiently deferential. Partner A criticized Sheketoff because "her initial drafts were far more academic / pure legal analysis than helpful advice to the client"; for "exhibit[ing] little-to-no initiative"; and for poor availability.

132.   Defendants deny the allegations in Paragraph 132 of the Complaint.

133.    Defendants deny the allegations in Paragraph 133 of the Complaint.  Between the time he joined the Jones Day partnership and the time of Sheketoff's allegations, Partner A submitted fifteen evaluations of female associates, only one of which expressed overarching criticism—his evaluation of Sheketoff.  Partner A also negatively reviewed male associates when he found their performance lacking.  There is nothing gender-based about Partner A's evaluation of associates generally or Sheketoff in particular.

134.    Defendants admit that Sheketoff's assessment statement for 2016 took into account the written evaluations that individual attorneys submitted, and deny that any of the supposed criticisms Sheketoff alleges in the Complaint appeared either in Partner A's evaluation of Sheketoff, or in Sheketoff's 2016 assessment statement.  Partner A criticized Sheketoff because "her initial drafts were far more academic / pure legal analysis than helpful advice to the client"; for "exhibit[ing] little-to-no initiative"; and for poor availability.  Sheketoff's assessment statement echoed the concern, which other reviewers also raised, about her availability and the fact that "a client memo was too focused on pure legal analysis without accompanying advice," while also noting comments from other evaluators that "some of [Sheketoff's] writing was viewed as complicated for a judge who might not be as immersed in the law and facts," and that "a motion did not read enough like an advocacy piece."  There is nothing in either Partner A's evaluation or in Sheketoff's assessment statement about insufficient deference.

135.    Defendants admit that Sheketoff received a salary increase of $15,000 effective July 1, 2017, and that the increase was based in part on her 2016 assessment statement.

136.    Defendants deny the allegations in Paragraph 136 of the Complaint.  Sheketoff's compensation adjustment reflected the fact that her reviews from multiple partners were mixed

and her contribution to billable client representations was below expectations due to a focus on idiosyncratic concerns.

137.    Defendants deny the allegations in Paragraph 137 of the Complaint.  Three male Issues & Appeals associates received a smaller compensation adjustment than Sheketoff or no adjustment on July 1, 2017, but all female Issues & Appeals associates received larger raises than Sheketoff.

138.    Defendants admit the allegations in Paragraph 138 of the Complaint.

139.    Defendants admit the allegations in Paragraph 139 of the Complaint.

140.    Defendants deny the allegations in Paragraph 140 of the Complaint.

141.    Defendants admit that Sheketoff's salary effective as of July 1, 2018, was below the salaries of the four Issues & Appeals associates—two female, two male—whose salaries had been the same as Sheketoff's for the one year between July 1, 2016, and June 30, 2017.  Defendants deny the remaining allegations in Paragraph 141 of the Complaint.

142.    Defendants deny the allegations in Paragraph 142 of the Complaint.

143.    Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 143 of the Complaint and, on that basis, deny them.

144.    Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 144 of the Complaint and, on that basis, deny them.

145.    Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 145 of the Complaint and, on that basis, deny them.

146.    Defendants deny the allegations in Paragraph 146 of the Complaint.

147.    Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 147 of the Complaint and, on that basis, deny them.

148.    Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 148 of the Complaint and, on that basis, deny them.

149.    Defendants deny the allegations in Paragraph 149 of the Complaint.

150.    Defendants deny the allegations in Paragraph 150 of the Complaint.

151.    Defendants deny the allegations in Paragraph 151 of the Complaint as stated.  The paid leave potentially available to biological mothers includes both family leave and short-term disability leave.  Assuming comparable caregiver status, biological mothers and fathers are given the same amount of paid family leave.

152.    Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 152 of the Complaint and, on that basis, deny them.  Defendants note that regardless of the amount of paid family leave provided to new parents, it would likely violate the Pregnancy Discrimination Act to deny new birth mothers short-term disability leave available to other individuals who qualify for such leave.

153.    Defendants deny that there is any gender-based distinction in Jones Day's family leave policy.  Defendants admit that adoptive parents who act as primary caregivers receive 18 weeks of paid family leave.  The additional leave given to adoptive parents is gender neutral and accounts for the unique aspects of the adoptive process.  Biological parents of all genders receive the same amount of parental family leave (4 weeks or 10 weeks), depending on caregiver status. All new biological mothers and fathers who have a short-term disability can also take paid disability leave, with the amount of such leave dependent on the disability.

154.    Defendants admit the first sentence of Paragraph 154 of the Complaint and deny the second sentence of Paragraph 154 of the Complaint.

155.     Defendants admit that, in addition to paid family leave, biological mothers can take short-term disability leave to recover from childbirth.  Biological fathers with a short-term disability can also take paid disability leave, but not for a childbirth that they did not experience as the birth parent.  Defendants deny the remaining allegations in Paragraph 155 of the Complaint.

156.     Defendants deny the allegations in Paragraph 156 of the Complaint.

157.     Defendants deny the allegations in Paragraph 157 of the Complaint.

158.     Defendants admit that Jones Day's insurance carrier applies a presumption of eight weeks of short-term disability to new biological mothers.  Defendants deny any allegation in Paragraph 158 of the Complaint that Jones Day treats short-term disability leave related to childbirth as a form of family leave.

159.     Defendants deny the allegations in Paragraph 159 of the Complaint.

160.     Defendants deny the allegations in Paragraph 160 of the Complaint.

161.     Defendants deny the allegations in Paragraph 161 of the Complaint.

162.     Defendants deny the allegations in Paragraph 162 of the Complaint.  Adoptive primary caregivers (regardless of gender) receive 18 weeks of paid family leave.  The family leave available to adoptive parents is not "the same" as the leave available to birth mothers, which includes both family leave (4 weeks or 10 weeks, depending on caregiver status) and short-term disability leave for recovery from childbirth.  The additional family leave given to adoptive parents accounts for the unique burdens of the adoptive process and is gender-neutral.  In contrast, short-term disability leave based on childbirth is available only to birth mothers because only birth mothers experience childbirth.

163.     Defendants lack knowledge or information sufficient to form a belief as to any specific associate's experience with childbirth or the basis for the generalized allegations in Paragraph 163 of the Complaint and, on that basis, deny them.

164.     Defendants deny the allegation that the physical demands placed on Jones Day associates are *de minimis*.  The allegation that Jones Day associates perform mere "office work" is vague, ambiguous, and lacks context, and is denied.  Defendants further aver that Sheketoff appeared in court as a Jones Day associate, including to present argument.  Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 164 of the Complaint and, on that basis, deny them.

165.     Defendants lack knowledge or information as to any basis for comparing the physical demands of being a primary caregiver and being a Jones Day associate or that such demands can be generalized across all primary caregivers or all Jones Day associates and, on that basis, deny the allegations in Paragraph 165 of the Complaint.

166.     Defendants deny the allegations in Paragraph 166 of the Complaint.

167.     Defendants deny the allegations in Paragraph 167 of the Complaint.

168.     Defendants deny the allegations in Paragraph 168 of the Complaint.

169.     Defendants deny the allegations in Paragraph 169 of the Complaint.

170.     Defendants deny the allegations in Paragraph 170 of the Complaint.

171.     The allegations in Paragraph 171 of the Complaint refer to a written document that speaks for itself, and Defendants deny any allegations inconsistent therewith.

172.     Defendants admit that Jones Day acted as co-counsel for Petitioners in *Department of Human Resources v. Hibbs*, the decision in which is reported at 538 U.S. 721 (2003).

173.    The allegations in Paragraph 173 of the Complaint refer to a written document that speaks for itself, and Defendants deny any allegations inconsistent therewith.

174.    The allegations in Paragraph 174 of the Complaint refer to a written document that speaks for itself, and Defendants deny any allegations inconsistent therewith.

175.    Defendants deny the allegations in Paragraph 175 of the Complaint.

176.    Defendants lack knowledge or information as to any basis for the allegations regarding how caregiving roles are allocated and, on that basis, deny those allegations in Paragraph 176 of the Complaint, and deny the remaining allegations as unrelated to Jones Day's family leave policy.

177.    Defendants lack knowledge or information as to the allegations in Paragraph 177 of the Complaint and, on that basis, deny them.  Jones Day's family leave policies afford all parents paid family leave well above what many other employers provide, including the federal government.

178.    Defendants lack knowledge or information as to the allegations in Paragraph 178 of the Complaint and, on that basis, deny them.

179.    Defendants deny that Jones Day "giv[es] new mothers more time than new fathers to care for and bond with their children," or gives "the husbands of female associates more time to focus on their own careers than the wives of male associates receive, nor for giving sex-based disability leave to employees who are not disabled."

180.    Defendants deny the allegations of Paragraph 180 of the Complaint.

181.    Defendants lack knowledge or information as to the allegations in Paragraph 181 of the Complaint and, on that basis, deny them.

182.     Defendants admit that Sheketoff resigned from Jones Day in August 2018. Defendants lack knowledge or information as to the remaining allegations in Paragraph 182 of the Complaint and, on that basis, deny them.

183.     Defendants deny that Jones Day's family leave policy imposes any gender-based stereotype.   Defendants lack knowledge or information as to the remaining allegations in Paragraph 183 of the Complaint and, on that basis, deny them.

184.     Defendants deny the allegations in Paragraph 184 of the Complaint.

185.     The allegations in Paragraph 185 of the Complaint refer to a written document that speaks for itself, and Defendants deny any allegations inconsistent therewith.

186.     The allegations in Paragraph 186 of the Complaint refer to a written document that speaks for itself, and Defendants deny any allegations inconsistent therewith.

187.     Defendants admit that Jones Day's Director of Human Resources called Sheketoff. Except as expressly admitted, Defendants deny the allegations in Paragraph 187 of the Complaint.

188.     Defendants deny the allegations in Paragraph 188 of the Complaint.

189.     Certain allegations in Paragraph 189 of the Complaint refer to a written document that speaks for itself, and Defendants deny any allegations inconsistent therewith.  Defendants lack knowledge and information as to what motivated Savignac to send the referenced email, but deny that he had any reasonable basis to fear that Jones Day might retaliate.

190.     The allegations in Paragraph 190 of the Complaint refer to a written document that speaks for itself, and Defendants deny any allegations inconsistent therewith.

191.     Certain allegations in Paragraph 191 of the Complaint refer to a written document that speaks for itself, and Defendants deny any allegations inconsistent therewith.   Defendants

deny that both Julia and Mark sent the referenced email and lack knowledge and information as to when Plaintiffs' son was born, and on that basis deny those allegations.

192.     Defendants deny the allegations in Paragraph 192 of the Complaint.

193.     Defendants admit that neither Heifetz nor the Human Resources Director wrote to Savignac in response to his January 16, 2019 email.

194.     Defendants admit that Jones Day fired Savignac effective January 22, 2019.

195.     The allegations in Paragraph 195 of the Complaint refer to a written document that speaks for itself, and Defendants deny any allegations inconsistent therewith.

196.     Defendants admit that the notice of termination was sent via both email and hand delivery, along with personal effects from Savignac's office that Jones Day returned to him. Defendants lack knowledge or information as to the remaining allegations in Paragraph 196 of the Complaint and, on that basis, deny them.

197.     Defendants admit the notice of termination was directed to Mark, who was fired because of his poor judgment, behavior toward colleagues, and intemperate, unreasoned threat to wage a public relations campaign to damage Jones Day if it did not provide him with extra paid family leave beyond what all other associates, both male and female, receive under the family leave policy.  Except as expressly admitted, Defendants deny the allegations in Paragraph 197 of the Complaint.

198.     Defendants deny the allegations in Paragraph 198 of the Complaint.  Savignac challenged the Firm's family leave policy months prior to his termination and was not terminated for doing so.

199.     Defendants deny the allegations in Paragraph 199 of the Complaint, except they admit that the quoted language has appeared on the Jones Day website.  The Firm's decision to terminate Savignac was a collaborative decision, which included consultation with Brogan.

200.     Defendants deny the allegations in Paragraph 200 of the Complaint.

201.     Defendants deny the allegations in Paragraph 201 of the Complaint.

202.     Defendants deny the allegations in Paragraph 202 of the Complaint.

203.     Defendants deny the allegations in Paragraph 203 of the Complaint.

204.     Defendants admit that Savignac, subsequent to his termination, contacted certain Jones Day attorneys with whom he had worked to ask that they provide a reference.  Defendants admit that the attorneys Savignac contacted know other attorneys outside of Jones Day.  Except as expressly admitted, Defendants deny the allegations in Paragraph 204 of the Complaint.

205.     The allegations in Paragraph 205 of the Complaint refer to a written document that speaks for itself, and Defendants deny any allegations inconsistent therewith.  Defendants further aver that in January 2019, Partner C was relatively new to Jones Day.

206.     Defendants deny the allegations in Paragraph 206 of the Complaint.

207.     Defendants deny the allegations in Paragraph 207 of the Complaint, except admit that long-standing written policy at Jones Day prohibits lawyers at the Firm from providing "any employment reference of any type to any other party, including current or former employees themselves.  Requests for employment references should be referred, in the case of lawyer requests, to the Firm Administrative Partner or appropriate Partner-in-Charge….   In most circumstances, the response will be limited to disclosing the date of original hire and the date of most recent severance of employment…."

208.     Defendants deny the allegations in Paragraph 208 of the Complaint.

209.     Defendants deny the allegations in Paragraph 209 of the Complaint.

210.     Defendants deny the allegations in Paragraph 210 of the Complaint.

211.     Defendants admit that Heifetz previously told Sheketoff that the latter could provide a letter of recommendation for an employee who was applying to law school, which is not an employment reference subject to the policy referenced in response to Paragraph 211 of the Complaint.

212.     Defendants lack knowledge or information as to the allegations in Paragraph 212 of the Complaint and, on that basis, deny them, and deny that Heifetz has acted contrary to the policy referenced in response to Paragraph 207 of the Complaint.

213.     Defendants lack knowledge or information as to the allegations in Paragraph 213 of the Complaint and, on that basis, deny them, and deny that Heifetz has acted contrary to the policy referenced in response to Paragraph 207 of the Complaint.

214.     Defendants lack knowledge or information as to the allegations in Paragraph 214 of the Complaint and, on that basis, deny them, and deny that Heifetz has acted contrary to the policy referenced in response to Paragraph 207 of the Complaint.

215.     Defendants deny the allegations in Paragraph 215 of the Complaint.

216.     The allegations in Paragraph 216 of the Complaint refer to a written document that speaks for itself, and Defendants deny any allegations inconsistent therewith.  Pursuant to the policy referenced in response to Paragraph 207 of the Complaint, Jones Day authorized Partner D to provide an employment reference for Savignac.  Partner D is a well-respected appellate advocate who has argued twelve cases in the U.S. Supreme Court and dozens more in appellate courts nationwide; who worked on matters to which Savignac billed over 700 hours; who was personally familiar with Savignac's work; and who provided an employment reference for Savignac to

Steptoe & Johnson, which subsequently hired Savignac according to that firm's website. Defendants deny the remaining allegations in Paragraph 216 of the Complaint.

217.   Defendants deny the allegations in Paragraph 217 of the Complaint.

218.   Defendants deny the allegations in Paragraph 218 of the Complaint.

219.   Defendants deny the allegations in Paragraph 219 of the Complaint and refer to their response to Paragraph 216 of the Complaint.

220.   Defendants admit that Jones Day did not choose Partner D to provide an employment reference for Savignac based solely on Partner D's level of experience with Savignac's work.  Except as expressly admitted, Defendants deny the allegations in Paragraph 220 of the Complaint.

221.   Defendants deny the allegations in Paragraph 221 of the Complaint.

222.   Defendants deny the allegations in Paragraph 222 of the Complaint.

223.   Defendants admit that, as of the relevant time, Partner D had a longer tenure at Jones Day than both Partners C and E, who had more recently joined the Firm.  Defendants lack knowledge and information for the basis of the allegations in Paragraph 223 about who is "a Jones Day insider" or "heir apparent" for leadership positions within the Firm and, on that basis, deny those allegations.

224.   Defendants admit the allegations in Paragraph 224 of the Complaint.

225.   Defendants deny the allegations in Paragraph 225 of the Complaint.

226.   Defendants deny the allegations in Paragraph 226 of the Complaint and refer to their response to Paragraph 216 of the Complaint.

227.   Defendants deny the allegations in Paragraph 227 of the Complaint.

<u>**COUNT I**</u>
**SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**
**OF 1964, 42 U.S.C. § 2000e, *et seq.***
**(on behalf of Sheketoff and Savignac against Jones Day)**

228.    Defendants incorporate Paragraphs 1-227 above.  Except as expressly admitted,

Defendants deny the allegations in Paragraph 228 of the Complaint.

229.    Defendants deny the allegations in Paragraph 229 of the Complaint.

230.    Defendants deny the allegations in Paragraph 230 of the Complaint.

231.    Defendants deny the allegations in Paragraph 231 of the Complaint.

232.    Defendants deny the allegations in Paragraph 232 of the Complaint.

233.    Defendants deny the allegations in Paragraph 233 of the Complaint.

<u>**COUNT II**</u>
**SEX DISCRIMINATION IN VIOLATION OF THE EQUAL PAY ACT OF 1963,**
**29 U.S.C. § 206(d)**
**(on behalf of Savignac against Jones Day)**

234.    Defendants incorporate Paragraphs 1-233 above.  Except as expressly admitted,

Defendants deny the allegations in Paragraph 234 of the Complaint.

235.    Defendants deny the allegations in Paragraph 235 of the Complaint.

236.    Defendants deny the allegations in Paragraph 236 of the Complaint.

237.    Defendants deny the allegations in Paragraph 237 of the Complaint.

238.    Defendants deny the allegations in Paragraph 238 of the Complaint.

<u>**COUNT III**</u>
**SEX DISCRIMINATION IN VIOLATION OF THE D.C. HUMAN RIGHTS ACT,**
**D.C. Code § 2-1401 *et seq*.**
**(on behalf of Sheketoff and Savignac against Jones Day)**

239.    Defendants incorporate Paragraphs 1-238 above.  Except as expressly admitted,

Defendants deny the allegations in Paragraph 239 of the Complaint.

240.    Defendants deny the allegations in Paragraph 240 of the Complaint.

241.    Defendants deny the allegations in Paragraph 241 of the Complaint.

242.    Defendants deny the allegations in Paragraph 242 of the Complaint.

243.    Defendants deny the allegations in Paragraph 243 of the Complaint.

244.    Defendants deny the allegations in Paragraph 244 of the Complaint.

## COUNT IV
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
## OF 1964, 42 U.S.C. § 2000e, *et seq.*
## (on behalf of Sheketoff against Jones Day)

245.    Defendants incorporate Paragraphs 1-244 above.  Except as expressly admitted,

Defendants deny the allegations in Paragraph 245 of the Complaint.

246.    Defendants deny the allegations in Paragraph 246 of the Complaint.

247.    Defendants deny the allegations in Paragraph 247 of the Complaint.

248.    Defendants deny the allegations in Paragraph 248 of the Complaint.

249.    Defendants deny the allegations in Paragraph 249 of the Complaint.

250.    Defendants deny the allegations in Paragraph 250 of the Complaint.

251.    Defendants deny the allegations in Paragraph 251 of the Complaint.

252.    Defendants deny the allegations in Paragraph 252 of the Complaint.

## COUNT V
## SEX DISCRIMINATION IN VIOLATION OF THE EQUAL PAY ACT OF 1963,
## 29 U.S.C. § 206(d)
## (on behalf of Sheketoff against Jones Day)

253.    Defendants incorporate Paragraphs 1-252 above.  Except as expressly admitted,

Defendants deny the allegations in Paragraph 253 of the Complaint.

254.    Defendants deny the allegations in Paragraph 254 of the Complaint.

255.    Defendants admit that effective July 1, 2017, Sheketoff had a lower annual salary than the three female and three male associates of the same class year in the Issues & Appeals practice in Jones Day's Washington, D.C. office.

256.    Defendants deny the allegations in Paragraph 256 of the Complaint.

257.    Defendants deny the allegations in Paragraph 257 of the Complaint.

258.    Defendants deny the allegations in Paragraph 258 of the Complaint.

259.    Defendants deny the allegations in Paragraph 259 of the Complaint.

## COUNT VI
## SEX DISCRIMINATION IN VIOLATION OF THE D.C. HUMAN RIGHTS ACT, D.C. Code § 2-1401 *et seq.*
## (on behalf of Sheketoff against Jones Day)

260.    Defendants incorporate Paragraphs 1-259 above.  Except as expressly admitted, Defendants deny the allegations in Paragraph 260 of the Complaint.

261.    Defendants deny the allegations in Paragraph 261 of the Complaint.

262.    Defendants deny the allegations in Paragraph 262 of the Complaint.

263.    Defendants deny the allegations in Paragraph 263 of the Complaint.

264.    Defendants deny the allegations in Paragraph 264 of the Complaint.

265.    Defendants deny the allegations in Paragraph 265 of the Complaint.

266.    Defendants deny the allegations in Paragraph 266 of the Complaint.

267.    Defendants deny the allegations in Paragraph 267 of the Complaint.

## COUNT VII
## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq.*
## (on behalf of Sheketoff and Savignac against Jones Day)

268.    Defendants incorporate Paragraphs 1-267 above.  Except as expressly admitted, Defendants deny the allegations in Paragraph 268 of the Complaint.

269.    Defendants deny the allegations in Paragraph 269 of the Complaint.

270.    Defendants deny the allegations in Paragraph 270 of the Complaint.

271.    Defendants deny the allegations in Paragraph 271 of the Complaint.

272.    Defendants deny the allegations in Paragraph 272 of the Complaint.

273.    Defendants deny the allegations in Paragraph 273 of the Complaint.

274.    Defendants deny the allegations in Paragraph 274 of the Complaint.

275.    Defendants deny the allegations in Paragraph 275 of the Complaint.

## COUNT VIII
### RETALIATION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT, AS AMENDED BY THE EQUAL PAY ACT, 29 U.S.C. § 215
### (on behalf of Sheketoff and Savignac against all Defendants)

276.    Defendants incorporate Paragraphs 1-275 above.   Except as expressly admitted, Defendants deny the allegations in Paragraph 276 of the Complaint.

277.    Defendants deny the allegations in Paragraph 277 of the Complaint.

278.    Defendants deny the allegations in Paragraph 278 of the Complaint.

279.    Defendants deny the allegations in Paragraph 279 of the Complaint.

280.    Defendants deny the allegations in Paragraph 280 of the Complaint.

281.    Defendants deny the allegations in Paragraph 281 of the Complaint.

282.    Defendants deny the allegations in Paragraph 282 of the Complaint.

283.    Defendants deny the allegations in Paragraph 283 of the Complaint.

## COUNT IX
### RETALIATION IN VIOLATION OF THE D.C. HUMAN RIGHTS ACT, D.C. Code § 2-1401 *et seq*.
### (on behalf of Sheketoff and Savignac against all Defendants)

284.    Defendants incorporate Paragraphs 1-283 above.   Except as expressly admitted, Defendants deny the allegations in Paragraph 284 of the Complaint.

285.     Defendants deny the allegations in Paragraph 285 of the Complaint.

286.     Defendants deny the allegations in Paragraph 286 of the Complaint.

287.     Defendants deny the allegations in Paragraph 287 of the Complaint.

288.     Defendants deny the allegations in Paragraph 288 of the Complaint.

289.     Defendants deny the allegations in Paragraph 289 of the Complaint.

290.     Defendants deny the allegations in Paragraph 290 of the Complaint.

291.     Defendants deny the allegations in Paragraph 291 of the Complaint.

292.     Defendants deny the allegations in Paragraph 292 of the Complaint.

293.     Defendants deny the allegations in Paragraph 293 of the Complaint.

## COUNT X
### INTERFERENCE IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT OF 1993, 29 U.S.C. § 2611 *et seq.*
### (on behalf of Savignac against Jones Day)

294.     Defendants admit that the Court has dismissed Count X.

## COUNT XI
### INTERFERENCE IN VIOLATION OF THE DISTRICT OF COLUMBIA FAMILY AND MEDICAL LEAVE ACT, D.C. Code § 32-501 *et seq.*
### (on behalf of Savignac against Jones Day)

295.     Defendants incorporate Paragraphs 1-294 above.  Except as expressly admitted, Defendants deny the allegations in Paragraph 295 of the Complaint.

296.     Paragraph 296 of the Complaint states a legal conclusion to which no response is required.

297.     Defendants deny the allegations in Paragraph 297 of the Complaint.

298.     Defendants deny the allegations in Paragraph 298 of the Complaint.

299.     Defendants deny the allegations in Paragraph 299 of the Complaint.

300.     Defendants deny the allegations in Paragraph 300 of the Complaint.

## PRAYER FOR RELIEF

Defendants deny that Plaintiffs are entitled to any relief.

## JURY DEMAND

Defendants demand a trial by jury for all issues so triable.

## AFFIRMATIVE & OTHER DEFENSES

Without admitting any of the facts alleged in the Complaint, Defendants hereby assert and allege the following separate and additional defenses, without assuming the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiffs, and without prejudice to Defendants' right to argue that Plaintiffs bear the burden of proof as to any one or more of said defenses.  Furthermore, all such defenses are pleaded in the alternative and do not constitute an admission of liability or an admission that Plaintiffs are entitled to any relief whatsoever.  Defendants presently have insufficient knowledge or information as to whether they may have additional, as yet unasserted, defenses.  Defendants therefore reserve the right to assert additional defenses in the event discovery or further proceedings indicate such additional defense would be appropriate:

## FIRST DEFENSE

The Complaint fails, in whole or in part, to state a claim upon which relief can be granted or a claim for which the relief sought may be awarded.

## SECOND DEFENSE

Plaintiffs lack standing to seek declaratory or injunctive relief because they are no longer employed by Jones Day.

## THIRD DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitation and/or by statutory filing deadlines that they failed to meet.

## FOURTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by equitable defenses, including the doctrines of equitable estoppel, laches, waiver and/or unclean hands.

## FIFTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, as for any matters for which Plaintiffs have failed to satisfy administrative, procedural or jurisdictional prerequisites for commencing and maintaining this action.

## SIXTH DEFENSE

All actions by Defendants with respect to Plaintiffs were lawful and were made in good faith compliance with applicable provisions of law, rules and regulations, and all actions by Defendants with respect to Plaintiffs were taken for legitimate, non-discriminatory, non-retaliatory, non-prohibited reasons and/or for good cause.

## SEVENTH DEFENSE

Plaintiffs' claims are barred in whole or in part because Jones Day's employment decisions and actions were based on legitimate, nondiscriminatory business reasons and were not pretexts for discrimination.

## EIGHTH DEFENSE

Plaintiffs' claims are barred in whole or in part because Jones Day's employment decisions and actions were job-related and consistent with business necessity.

## NINTH DEFENSE

Plaintiffs' claims are barred in whole or in part because Jones Day's employment decisions and actions were based on bona fide factors other than race, sex, gender, pregnancy, or parenthood.

**TENTH DEFENSE**

Plaintiffs' claims are barred in whole or in part to the extent that the claims challenge employment decisions and actions that were based on a bona fide seniority, merit, or incentive system.

**ELEVENTH DEFENSE**

Jones Day at all relevant times has maintained, disseminated and observed equal employment, affirmative action, a harassment-free work environment, and anti-retaliation policies, that, *inter alia*, provide that all personnel decisions are to be made on the basis of merit without regard to gender, protected activity, or on any other basis that is protected under applicable law, and prohibit any form of retaliation against an individual who in good faith reports a claim of discrimination or who opposes any act or practice made unlawful by any federal, state, or local statute, or who cooperates in the investigation of such a report.

**TWELFTH DEFENSE**

Plaintiffs' claims are barred in whole or in part because Defendants did not intentionally engage in an unlawful employment practice.

**THIRTEENTH DEFENSE**

Plaintiffs' claims are barred in whole or in part to the extent that the claims are based on alleged incidents that do not constitute tangible adverse employment actions against Plaintiffs, Jones Day exercised reasonable care to prevent the alleged incidents, and the Plaintiffs unreasonably failed to take advantage of available preventative or corrective opportunities.

**FOURTEENTH DEFENSE**

Plaintiffs' claims are barred in whole or in part because actual payments given to Plaintiffs were reasonable, appropriate, and commensurate with the services and work actually performed.

## FIFTEENTH DEFENSE

Plaintiffs have suffered no damages as a result of any alleged act or omission of Defendants.

## SIXTEENTH DEFENSE

Even if Plaintiffs have suffered damages, Plaintiffs' claims are barred in whole or in part by their failure to mitigate, or attempt to mitigate, their damages.

## SEVENTEENTH DEFENSE

Plaintiffs' claims are barred to the extent that damages, if any, resulted from the acts and/or omissions of a Plaintiff or any person on whose behalf relief is sought.

## EIGHTEENTH DEFENSE

Plaintiffs' claims for equitable relief are barred in whole or in part to the extent Plaintiffs have not suffered injury or harm and will not suffer imminent and irreparable injury or harm as a result of any action or conduct by Defendants.

## NINETEENTH DEFENSE

Plaintiffs' claims for injunctive, equitable, and/or declaratory relief are inappropriate to the extent Plaintiffs have an adequate remedy at law.

## TWENTIETH DEFENSE

Plaintiffs' claims are barred to the extent they result in an unjust enrichment to Plaintiffs and/or any person on whose behalf relief is sought.

## TWENTY-FIRST DEFENSE

The Complaint fails to state a claim upon which an award of punitive damages can be granted.

### TWENTY-SECOND DEFENSE

Plaintiffs' claims for punitive damages are barred because Defendants did not act with, ratify, authorize, or acquiesce in any acts of fraud, oppression, malice, wanton, willful, or conscious disregard, or reckless indifference toward Plaintiffs.

### TWENTY-THIRD DEFENSE

Plaintiffs' claims for punitive damages are barred to the extent such damages are not authorized by applicable federal or D.C. law.

### TWENTY-FOURTH DEFENSE

The imposition of punitive damages or penalties would violate Defendants' constitutional rights, including, without limitation, Defendants' rights to equal protection under the United States Constitution, Defendants' rights to procedural due process under the Fourteenth Amendment of the United States Constitution, and Defendants' rights to substantive due process under the Fifth and Fourteenth Amendments of the United States Constitution.

### TWENTY-FIFTH DEFENSE

Plaintiffs are not entitled to recover attorneys' fees and costs under the causes of action as demanded in the Complaint.

Dated:  February 2, 2022     Respectfully submitted,

            /s/ *Terri L. Chase*
          Terri L. Chase (*pro hac vice*)
          JONES DAY
          600 Brickell Avenue, Suite 3300
          Miami, Florida 33131
          Phone: (305) 714-9722
          tlchase@jonesday.com

          Traci Lovitt (Bar No. 467222)
          JONES DAY
          250 Vesey Street
          New York, NY 10281
          Phone: (212) 326-3939

Christopher DiPompeo (Bar No. 1003503)
JONES DAY
51 Louisiana Avenue NW
Washington, D.C. 20001
Phone: (202) 879-3939

Anderson T. Bailey (*pro hac vice*)
JONES DAY
500 Grant Street
Pittsburgh, PA 15219
Phone: (412) 391-3939

*Counsel for Defendants*