UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARK C. SAVIGNAC, *et al.*,

    *Plaintiffs*,

v.

JONES DAY, *et al.*,

    *Defendants*.

Civil Action No. 19-2443 (RDM)

## MEMORANDUM OPINION AND ORDER

Since discovery began in this case in May 2021, the parties' exchange of information has been heavily contested, necessitating the Court's intervention on no fewer than seven separate occasions.  *See* Min. Entry (June 4, 2021); Min. Entry (July 20, 2021); Min. Entry (July 29, 2021); Min. Entry (Sept. 9, 2021); Min. Entry (Sept. 29, 2021); Min. Entry (Jan. 31, 2021).  In the latest round of discovery disputes, Plaintiffs and Defendants have each filed motions to compel in which they seek to challenge various privilege assertions by their opponents.  *See* Dkt. 85; Dkt. 91.  The Court held a hearing on the disputes on January 31, 2022, at which it resolved most of the issues raised by the parties' motions and referred part of Plaintiffs' motion to a magistrate judge for *ex parte*, *in camera* review of certain documents on Defendants' privilege log.  Min. Entry (Jan. 31, 2022); *see* Min. Order (Feb. 1, 2022).

One issue that remains involves Defendants' Interrogatory No. 1, which requests information relating to an email that Savignac sent to Jones Day on January 16, 2019.  That email takes issue with Jones Day's rejection of Savignac's request for the same period of parental leave offered to female lawyers at the firm.  Copying Sheketoff, Savignac wrote: "We have closely reviewed the case law, including the two cases you rely on.  We have also discussed

the matter with other competent attorneys. Your cases do not support Jones Day's discriminatory policy, which is illegal under Title VII and D.C. law." Dkt. 84-2 at 14. Interrogatory No. 1, in turn, asks Plaintiffs to "[i]dentify each [p]erson whom you conferred or consulted with regarding Jones Day's parental and/or disability polices at any time prior to the January [e]mail, including without limitation those individuals referenced in the January [e]mail as 'other competent attorneys.'" Dkt. 91-5 at 3. In response to the interrogatory, Plaintiffs identified several current and former Jones Day attorneys with whom they had discussed Jones Day's policies. *Id.* at 3–4. They declined, however, to disclose "the identities of the persons with whom they consulted in anticipation of this litigation (including the 'other competent attorneys' and any other lawyers and law firms)," on the theory that the names are "protected from discovery by the work-product doctrine" and, in any event, are "irrelevant." *Id.* at 3. Defendants now ask the Court to compel a response. Dkt. 91 at 14.

At the outset, Plaintiffs acknowledge—as they must—that "Jones Day 'is free to ask for names of persons with knowledge of the facts.'" Dkt. 100 at 18 (quoting *United States v. All Assets Held at Bank Julius Baer & Co.*, 270 F. Supp. 3d 220, 225 (D.D.C. 2017)). But the identification of individuals whom Plaintiffs interviewed in preparation for litigation is a different matter, Plaintiffs maintain, because "[s]uch information would reveal 'how [Plaintiffs] choose to prepare their case, the efforts they undertake, and the people they interview—all information that falls within the scope of the work-product doctrine.'" *Id.* (quoting *All Assets Held*, 270 F. Supp. 3d at 225). Plaintiffs also insist that the *names* of the individuals whom they consulted are irrelevant. *Id.* at 19. These individuals do not have any "discoverable information," Plaintiff claim, because their "sole connection to this case is that they were 'consulted . . . regarding Jones Day's parental and/or disability leave policies' in anticipation of

2

litigation." *Id.* (emphases omitted). In other words, they are "not witnesses in the usual sense" because they do not have any "relevant knowledge but for those discussions." *Id.* As Plaintiffs explain, to the extent that Jones Day asks these individuals about *Plaintiffs*' beliefs while Plaintiffs anticipated litigation, "the work-product doctrine precludes Jones Day from deposing them about those conversations, which constitute [Plaintiffs'] 'mental impressions, conclusions, opinions, or legal theories . . . concerning the [anticipated] litigation.'" *Id.* at 20 (alterations in original) (quoting Fed. R. Civ. P. 26(b)(3)(B)). And to the extent that Jones Day asks these individuals for their personal views on the legality of Jones Day's policies, a third party's views are irrelevant. *Id.* at 19.

Defendants make three points in response. First, they argue that a list of persons with whom the Plaintiffs consulted before sending the January 2019 email cannot be privileged attorney work product because a list, standing alone, does not "reveal anything confidential about [Plaintiffs'] litigation strategy or mental impressions." Dkt. 91 at 15. Next, they dispute Plaintiffs' contention that the identities of the individuals Plaintiffs consulted are irrelevant to the issues in the case. To the contrary, Defendants explain, these individuals may have information relevant to an essential element of Plaintiffs' retaliation claim—*i.e.*, whether Plaintiffs believed in "good faith" at the time of their January 16, 2019 email that Jones Day's policies violated Title VII. Dkt. 91 at 15–16; Dkt. 106 at 8. Because the January 16, 2019 email implies that Plaintiffs based their belief in the unlawfulness of Jones Day's leave on Plaintiffs' consultations with "other competent attorneys," Defendants contend that they should be permitted, at a minimum, "to ask those individuals whether they really agree with the premise of Savignac's January Email and demand for eight full weeks of additional paid leave." Dkt. 91 at 16. According to Defendants, they are not seeking the names of the "other competent attorneys" to

3

obtain information about Plaintiffs' preparation for this case, as Plaintiffs suggest, but rather because "such individuals may be witnesses with relevant factual information." Dkt. 91 at 15. Finally, even if the names of the individuals Plaintiffs consulted before their January email were subject to work-product privilege, Defendants argue that Plaintiffs waived that privilege by affirmatively "assert[ing] the professional qualifications and opinions of these 'other competent attorneys' as a basis for [their] demand" in the January email. *Id.* at 16. Plaintiffs may not, Defendants argue, "use their consultations with professionals as a 'sword' to support the legitimacy of their claims, and then use the work-product protection as a shield 'to prevent access to information which [they have] made relevant.'" *Id.* (quoting *EEOC v. Urb. Serv. Sys. Corp.*, No. CIV. A. 97-422, 1999 WL 1125134, at *2 (D.D.C. Nov. 30, 1999)).

For the following reasons, the Court concludes that Defendants' interrogatory seeks information that is relevant to the issues in the litigation and that Plaintiffs have not met their burden of demonstrating that the information is protected by the attorney work-product privilege. The Court will, accordingly, grant this aspect of Defendants' motion to compel, Dkt. 91, and order Plaintiffs to answer Defendants' interrogatory in full.

Under the circumstances of this case, the Court is unpersuaded that identifying the individuals whom Plaintiffs consulted about the Jones Day parental leave policy *and* referenced in their January email would reveal any privileged work product. That list of names, standing alone, would not "directly or indirectly reveal [Plaintiffs'] mental processes," nor would it "furnish[] . . . information as to the content of any statement." *Alexander v. FBI*, 192 F.R.D. 12, 19 (D.D.C. 2000) (quoting *United States v. Amerada Hess Corp.*, 619 F.2d 980, 987–88 (3d Cir. 1980)). And although a list of witnesses an attorney has interviewed in anticipation of litigation

4

can, at times, permit a requesting party impermissibly to glean its opponent's strategy, that is not the case here.

In support of their privilege assertion, Plaintiffs primarily urge the Court to adopt Magistrate Judge Harvey's reasoning in *United States v. All Assets Held at Bank Julius Baer & Co.*, 270 F. Supp. 3d 220 (D.D.C. 2017). There, Judge Harvey concluded that the work-product privilege barred an interrogatory that sought the identities of all persons "who ha[d] been interviewed by [Claimant], or from whom statements or documents ha[d] been obtained by [Claimant], in relation to the facts and allegations of the Amended Complaint." 270 F. Supp. 3d at 222 (second and fourth alterations in original). After recognizing a split between the various courts to have considered this question (as well as a split between judges on this Court), Judge Harvey opined that the "better-reasoned cases . . . are those that draw a distinction between discovery requests that seek the identification of persons with knowledge about the claims or defenses (or other relevant issues) . . . and those that seek the identification of persons who have been contacted or interviewed by counsel concerning the case." *Id.* at 225 (quotation marks omitted). Otherwise, he explained, "to grant such a request would be to reveal to . . . Claimant's adversary . . . how Claimant and his counsel ch[ose] to prepare their case, the efforts they under[took], and the people they interviewed." *Id.* (quotation marks omitted).

Although Judge Harvey's reasoning is persuasive, it does not advance Plaintiffs' position here—and, indeed, if anything, *All Assets Held* illustrates why Defendants have the better of the argument. As an initial matter, the Court recognizes the utility of Judge Harvey's general distinction between requests for the identities of individuals who have knowledge about the claims, defenses, or other relevant issues in a case, on the one hand, and requests for the identities of individuals whom opposing counsel has contacted or interviewed in preparation for

5

litigation, on the other. It is not hard to imagine scenarios, for example, in which disclosing names in the latter camp might enable "significant insights into [opposing counsel's] preparation of their case (and thus mental processes)." *Chiperas v. Rubin*, No. CIV. A. 96-130, 1998 WL 531845, at *1 (D.D.C. Aug. 24, 1998) (quoting *Bd. of Educ. of Evanston Twp. v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23 (N.D. Ill. 1984)). The risk with disclosing such information is that it conveys which witnesses opposing counsel "believe are the most important, or problematic"—thereby providing "a valuable filter" for the requesting party. *All Assets Held*, 270 F. Supp. 3d at 225. The interrogatory Judge Harvey confronted in *All Assets Held* is a perfect example. That request sought to "narrow a list of several hundred individuals" that the opposing party had previously identified as knowledgeable about the facts of the case by identifying for the requesting party those individuals whom the opposing party's counsel had "determined were worth interviewing." *Id.*

      Defendants' interrogatory does not pose the same risk. It does not ask Plaintiffs to reveal anything about their strategy for the case, and it does not seek to borrow the benefit of Plaintiffs' trial preparation to save Defendants from engaging in the litigation-related leg work that Plaintiffs have previously devoted to their cause. Nor is there any reason to believe that requiring Plaintiffs to comply with the request will chill lawyers from fully preparing for litigation, based on a fear that any unhelpful investigative efforts might inure to the benefit of their opponents. Instead, the interrogatory asks only that Plaintiffs identify those individuals whom Plaintiffs "conferred or consulted with regarding Jones Day's . . . leave policies . . . *prior to the January Email*, including without limitation those individuals *referenced in the January Email* as 'other competent attorneys.'" Dkt. 91-5 at 3 (emphases added). The limitation of the interrogatory to witnesses who may possess factual information relevant to the January 16, 2019

email is significant, and ultimately dispositive in this case. As Defendants explain, these consultations are at the heart of an essential (and contested) element of Plaintiffs' retaliation claim: that Plaintiffs had a good faith basis for believing, at the time of their January 16, 2019 email to Jones Day, that Jones Day's leave policies were unlawful.

Under Title VII, a plaintiff asserting a retaliation claim based on the statute's "opposition clause"—which makes it unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]," 42 U.S.C. § 2000e-3(a)—must "demonstrate a good faith, reasonable belief that the challenged practice violates Title VII," *George v. Leavitt*, 407 F.3d 405, 417 (D.C. Cir. 2005). "Good faith" and "reasonableness" are separate requirements. And while the reasonableness of a plaintiff's belief turns on an objective test, *see Grosdidier v. Broad. Bd. of Governors*, 709 F.3d 19, 24 (D.C. Cir. 2013), the good faith requirement requires a subjective inquiry into the plaintiff's beliefs and motivations, *see Monteiro v. Poole Silver Co.*, 615 F.2d 4, 7–8 (1st Cir. 1980) ("[T]he plaintiff must show that his so-called opposition was in response to some *honestly held*, if mistaken, feeling that discriminatory practices existed." (emphasis added)); *Parker v. Baltimore & Ohio R.R. Co.*, 652 F.2d 1012, 1020 (D.C. Cir. 1981) (citing *Monteiro* for the good faith requirement).

Because the good faith requirement is an essential element of Plaintiffs' retaliation claim, Defendants are entitled to inquire into whether Plaintiffs acted in good faith when they sent their January 16, 2019 email to Jones Day. Enter Defendants' interrogatory. Defendants assert that they need to know the names of the "other competent attorneys" whom Plaintiffs referenced having consulted in their January 16, 2019 email because those individuals have information relevant to Plaintiffs' good faith. As Defendants explain, a reasonable jury could conclude that

7

the text of Plaintiffs' January 2019 email—a key piece of evidence in this case—implies that the "other competent attorneys" Plaintiffs consulted "blessed Savignac's views about Jones Day's policies" and, in all likelihood, "will weigh that assertion in favor of Savignac's good faith." Dkt. 106 at 18.  Defendants insist that they "must be able to investigate those consultations to have the opportunity to impeach or discredit" the implication of that statement, *id.*, at a minimum by asking whether those individuals agreed with the position that Plaintiffs took in their January email, Dkt. 91 at 16.  Moreover, Defendants continue, if it turns out that "those consultations never occurred—or if they did occur and the input Plaintiffs received was based on incomplete information or not consistent with their position—that is a critical fact that will seriously undermine the credibility of Savignac's allegation of good faith."  Dkt. 106 at 18.

       The Court agrees with Defendants that the "other competent attorneys" may possess information that is relevant to an issue in this case, given the relevance of Plaintiffs' consultations to the good faith element.  To the extent that Plaintiffs did not consult with "other competent attorneys," as they claimed, or that those individuals did not believe that Jones Day's leave policies violated Title VII, that information would tend to make Plaintiffs' good faith "less probable than it would be without the evidence" and, thus, would be "of consequence in determining the action."  Fed. R. Evid. 401.  Moreover, these circumstances plainly distinguish Defendants' interrogatory from the requests in *All Assets Held* and other decisions that have deemed lists of interviewees to be protected under the work-product privilege.  *See* 270 F. Supp. 3d at 224–25 (citing cases).  Here, Defendants have requested the names of the attorneys Plaintiffs consulted before their January email not as a method to glean Plaintiffs' litigation strategy, but rather as an effort to identify witnesses who might have factual information relevant

8

to an important issue in the case. As a result, the Court concludes that this information is both relevant and not subject to the work-product privilege.[1]

The Court notes that Plaintiffs do not claim that the attorney-client privilege protects the identities of the "other competent lawyers" referenced in their email or anyone else whom they consulted about the policy before sending the January 2019 email. *See* Dkt. 91 at 16 & n.5; Dkt. 100 at 19–20, 23 n.4; Dkt. 106 at 18. The question whether Plaintiffs have an attorney-client relationship with the "other competent lawyers" referenced in the email poses a very different question from the question posed by Defendants' motion to compel. Finally, for present purposes, the Court need address only whether Plaintiffs must respond to the interrogatory, which merely asks for a list of names. The Court expresses no view on what, if any, limits might exist on questioning those individuals at deposition or trial in this matter.

Accordingly, it is hereby **ORDERED** that Defendants' motion to compel, Dkt. 91, is **GRANTED** in part with respect to Interrogatory No. 1, and Plaintiffs are hereby **ORDERED** to respond to Interrogatory No. 1 and to identify each person with whom Plaintiffs conferred or consulted regarding Jones Day's parental and/or disability leave policies at any time prior to Plaintiffs' January 16, 2019 email to Jones Day, including those individuals referenced in that email as "other competent attorneys."

**SO ORDERED**.

---

[1] Because the Court concludes that the work-product privilege does not apply, it need not address whether Plaintiffs waived the work-product privilege. *Compare* Dkt. 91 at 15, *with* Dkt. 100 at 22. And, similarly, the Court need not reach the question whether the privilege, if applicable, would yield to Defendants' "substantial need for the materials to prepare [their] case." Fed. R. Civ. P. 26(b)(3)(A).

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: February 20, 2022