**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MARK C. SAVIGNAC and
JULIA SHEKETOFF,

      *Plaintiffs*,

*v.*

JONES DAY, *et al.*,

      *Defendants.*

Civ. No. 1:19-02443 (RDM)

**DEFENDANTS' MOTION TO STRIKE PLAINTIFFS'
THIRD AMENDED COMPLAINT**

Terri L. Chase (*pro hac vice*)
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, Florida 33131
Ph: (305) 714-9700
Email: tlchase@jonesday.com

Traci Lovitt (Bar No. 467222)
JONES DAY
250 Vesey Street
New York, NY 10281
Ph: (212) 326-3939
Email: tlovitt@jonesday.com

Christopher DiPompeo (Bar No. 1003503)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Ph: (202) 879-3939
Email: cdipompeo@jonesday.com

Anderson T. Bailey (*pro hac vice*)
JONES DAY
500 Grant Street
Pittsburgh, PA 15219
Ph: (412) 391-3939
Email: atbailey@jonesday.com

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................. 3

ARGUMENT ................................................................................................. 5

I.    PLAINTIFFS' THIRD AMENDED COMPLAINT IS PROCEDURALLY IMPROPER ............................ 5

II.   EVEN IF PLAINTIFFS' PROCEDURAL FAILURE IS EXCUSED, LEAVE TO AMEND
      SHOULD BE DENIED ................................................................................ 8

      A.    The Court Should Deny Leave to Add Traci Lovitt as a Defendant ........................... 9

      B.    The Court Should Deny Leave to Add Discovery Material Relating
            to Existing Claims ........................................................................ 17

CONCLUSION ............................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aleshire v. Harris, N.A.*,
586 F. App'x 668 (7th Cir. 2013) ............................................................................16

*Bell v. United States*,
301 F. Supp. 3d 159 (D.D.C. 2018) ..........................................................................11

*Bingham v. Morales*,
No. CV 311-019, 2011 WL 5358594 (S.D. Ga. Nov. 4, 2011) ...........................7, 8

*Blackwell v. Simon*,
No. 1:18-cv-1261, 2020 WL 5351022 (W.D. Mich. Mar. 20, 2020) ......................18

*Brown v. Children's Nat'l Med. Ctr.*,
773 F. Supp. 2d 125 (D.D.C. 2011) .................................................................13, 14

*Conservative Club of Wash. v. Finkelstein*,
738 F. Supp. 6 (D.D.C. 1990) ...................................................................................11

*Cramton v. Grabbagreen Franchising LLC*,
No. CV-17-04663, 2019 WL 7048773 (D. Ariz. Dec. 23, 2019) ............................12

*Deutsch v. Health Ins. Plan of Greater N.Y.*,
573 F. Supp. 1443 (S.D.N.Y. 1983) ...........................................................................7

\* *Diaz v. Longcore*,
751 F. App'x 755 (6th Cir. 2018) .............................................................................12

\* *Edmonds v. U.S. Dep't of Just.*,
323 F. Supp. 2d 65 (D.C. Cir. 2004) .....................................................................9, 11

*Elliott v. Foufas*,
867 F.2d 877 (5th Cir. 1989) ......................................................................................7

*Ellis v. Georgetown Univ. Hosp.*,
631 F. Supp. 2d 71 (D.D.C. 2009) ............................................................................13

*Fischer v. Est. of Flax*,
816 A.2d 1 (D.C. 2003) ..............................................................................................11

*Foman v. Davis*,
371 U.S. 178 (1962) .....................................................................................................9

*Frett v. Howard Univ.*,
24 F. Supp. 3d 76 (D.D.C. 2014) ..............................................................................13

*Galloway v. Chugach Gov't Servs., Inc.*,
199 F. Supp. 3d 145 (D.D.C. 2016) ..........................................................................14

*Gen. Dynamics Corp. v. Superior Court*,
7 Cal 4th 1164 (Cal. 1994) ........................................................................................11

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Gentry v. Tenn. Bd. of Jud. Conduct*,
    No. 3:17-CV-00020, 2017 WL 2362494 (M.D. Tenn. May 31, 2017) ....................................7

*Gharb v. Mitsubishi Elec. Corp.*,
    148 F. Supp. 3d 44 (D.D.C. 2015) ....................................................................................6

*Goldschmidt v. Paley Rothman Goldstein Rosenberg & Cooper, Chartered*,
    935 A.2d 362 (D.C. 2007) ..............................................................................................11

*Green v. City of Southfield*,
    925 F.3d 281 (6th Cir. 2019) ..........................................................................................16

*Hedgeye Risk Mgmt., LLC v. Heldman*,
    271 F. Supp. 3d 181 (D.D.C. 2017) ..................................................................................8

*Henok v. Kessler*,
    78 F. Supp. 3d 452 (D.D.C. 2015) ....................................................................................6

*Hill v. Equifax Info. Servs., LLC*,
    No. 1:11cv107, 2013 WL 474789 (M.D.N.C. Feb. 7, 2013) ............................................16

*Hofmann v. Fermilab Nal/Ura*,
    205 F. Supp. 2d 900 (N.D. Ill. 2002) ..............................................................................12

*In re United States*,
    872 F.2d 472 (D.C. Cir. 1989) ..........................................................................................9

*Jones v. Howard Univ.*,
    574 A.2d 1343 (D.C. 1990) ............................................................................................13

*Joy v. North*,
    692 F.2d 880 (2d Cir. 1982) ............................................................................................19

*Kearney v. Jandernoa*,
    979 F. Supp. 576 (W.D. Mich. 1997) ..............................................................................7

*Kelly v. First Data Corp.*,
    No. 1:19-cv-372, 2020 WL 419440 (Jan. 27, 2020) ........................................................12

*Kim v. Lee*,
    No. 21-cv-3552, 2021 WL 6052122 (S.D.N.Y. Dec. 20, 2021) ........................................12

*Kowal v. MCI Commc'ns Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994) ..........................................................................................8

*Landmark Dev. Grp. v. JEG Holdings, Inc.*,
    185 F.R.D. 126 (D. Conn. 1999) ................................................................................15, 16

*LaPrade v. Abramson*,
    No. 97-10, 2006 WL 3469532 (D.D.C. Nov. 29, 2006) ..................................................15

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*McLaughlin v. Richland Shoe Co.*,
  486 U.S. 128 (1988) ..................................................................................14

*Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*,
  197 F.3d 922 (8th Cir. 1999) ....................................................................19

*Pinson v. U.S. Dep't of Just.*,
  975 F. Supp. 2d 20 (D.D.C. 2013) ..............................................................8

*Robertson v. Intratek Comp., Inc.*,
  976 F.3d 575 (5th Cir. 2020) ....................................................................16

*Scarlett v. Off. of Inspector Gen.*,
  No. 21-819, 2022 WL 111236 (D.D.C. Jan. 10, 2022) (Moss, J.) ...........16

*Sims v. Cabrera*,
  No. 1:12-CV-01904-LJO, 2014 WL 6893776 (E.D. Cal. Dec. 8, 2014) .................18

*Sipp v. Unumprovident Corp.*,
  107 F. App'x 867 (10th Cir. 2004) ............................................................16

*Soto v. John Defendants 1-5*,
  No. 13-640, 2014 WL 1607615 (D. Minn. Apr. 15, 2014) .........................7

*Thorpe v. Duve*,
  No. 7:15-cv-00736, 2020 WL 372676 (N.D.N.Y. Jan. 23, 2020) ............18

*Totten v. United States*,
  82 U.S. 105 (1875) ...............................................................................9, 11

*U.S. ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*,
  No. 8:06-cv-40-T-24, 2008 WL 343158 (M.D. Fla. Feb. 5, 2008) ..........18

\* *U.S. ex rel. D'Agostino v. EV3, Inc.*,
  802 F.3d 188 (1st Cir. 2015) .................................................................6, 7

*Wandering Dago Inc. v. N.Y. State Off. of Gen. Servs.*,
  No. 1:13-CV-1053, 2014 WL 12797920 (N.D.N.Y. July 28, 2014) .........18

\* *Williams v. Ellerbe*,
  317 F. Supp. 3d 144 (D.D.C. 2018) ......................................................9, 18

*Yeager v. Nat'l Pub. Radio*,
  No. 20-cv-00755, 2021 WL 3510653 (D.D.C. Aug. 10, 2021) ................11

*Zelaya v. UNICCO Serv. Co.*,
  587 F. Supp. 2d 277 (D.D.C. 2008) ..........................................................14

**STATUTES**

29 U.S.C. § 255 ...............................................................................................14

D.C. Code § 2-1403.16 ....................................................................................13

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

OTHER AUTHORITIES

Fed. R. Civ. P. 12 ...........................................................................................1, 4, 6, 18

Fed. R. Civ. P. 15 ................................................................................................ *passim*

Vin Gurrieri, *Parental Leave Suit Expanded To Target Jones Day Partner*,
    Law360 (Feb. 25, 2022) .................................................................................19

3 MOORE'S FEDERAL PRACTICE (2021)............................................................6, 8

Dan Packel, *'Dad Bias' Plaintiffs Detail Jones Day Succession Planning,
    The American Lawyer* (Feb. 25, 2022) .............................................................2, 19

Sam Skolnik, *Traci Lovitt to Succeed Stephen Brogan at Jones Day, Suit Claims*,
    Bloomberg Law (Feb. 25, 2022).......................................................................2, 19

6 Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. CIV. (3d ed.) ...................1, 6, 17

## INTRODUCTION

On February 23, 2022, without obtaining leave of this Court or the consent of Defendants, Plaintiffs filed a "Third Amended Complaint" on the Court's docket.  ECF No. 126.  The Third Amended Complaint purports to add Traci Lovitt—Defendants' chosen legal counsel in this matter since before this litigation began—as a defendant with respect to certain retaliation claims.  The premise for doing so is Lovitt's actions as counsel to Jones Day with respect to a press statement the Firm issued in response to Plaintiffs' media blitz at the start of this case.  The Third Amended Complaint also adds irrelevant factual allegations and evidentiary detail (much of it inadmissible) in support of already existing claims, based on information Plaintiffs purportedly learned in discovery.  The Third Amended Complaint is procedurally improper and substantively groundless, and should be stricken pursuant to Fed. R. Civ. P. 12(f), for several reasons.

For one, Plaintiffs improperly filed the Third Amended Complaint without obtaining leave from this Court, in violation of Fed. R. Civ. P. 15(a)(2) and Local Rules 7(i) and 15.1.  Although Rule 15 gives a plaintiff the opportunity to amend its complaint "once as a matter of course" during a "limited time period following commencement of the action," 6 Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. CIV. § 1480 (3d ed.), that period expired over two years ago.  Since then, Plaintiffs have filed two other amended complaints and one supplemental complaint, each time with either Defendants' consent or the Court's permission.  Plaintiffs' failure to follow the Court's rules now is inexcusable and justifies striking their Third Amended Complaint.

Moreover, even if the Court chooses to overlook Plaintiffs' procedural failures, it should not grant Plaintiffs leave to file the Third Amended Complaint because the new claims and allegations are futile, unnecessary, prejudicial, unduly delayed, and made in bad faith.  Lovitt's legal advice to her client with respect to the press statement is not a basis for a retaliation claim.  And, in any event, because this Court has already held that Lovitt's communications regarding the

1

drafting of the press release are privileged, Plaintiffs will not be able to prove either the elements of retaliation or facts necessary to establish "willfulness" in order to bring these long-delayed claims within the applicable statutes of limitations, and Defendants would be materially prejudiced in the defense of the claims.  Courts reject such efforts to drive a wedge between a defendant and its counsel.  Particularly here—where Plaintiffs have long-known about Lovitt's role in responding to their media blitz, and where this Court has already accepted the privilege assertion over Lovitt's actions—the purported amendment demonstrates bad faith.

Similarly, Plaintiffs' inclusion of extraneous new discovery material and irrelevant factual allegations also suggests a bad faith abuse of the Rule 15 process.  Amending a complaint to plead "evidence" they believe supports claims that have long since survived a motion to dismiss serves no legitimate purpose, and is a transparent attempt to attract media attention by misleadingly highlighting selective facts learned in discovery.  So too is the allegation that Lovitt is "understood to be Brogan's chosen successor as managing partner"—a claim that has no relevance to this litigation and one that Plaintiffs, who left Jones Day more than three years ago, could not possibly have a good faith basis for asserting.  ECF No. 126, at ¶ 257.  That, of course, became the headline in the media stories that Plaintiffs doubtless hoped to generate.[1]  Plaintiffs are misusing Rule 15 and this Court's docket to make good on their extortionate threat to attack Jones Day "in the court of public opinion" if the Firm did not accede to Savignac's demand for the same 8 weeks of

---

[1] *See, e.g.*, Dan Packel, *'Dad Bias' Plaintiffs Detail Jones Day Succession Planning*, The American Lawyer (Feb. 25, 2022), https://www.law.com/americanlawyer/2022/02/25/dad-bias-plaintiffs-detail-jones-day-succession-planning/; Sam Skolnik, *Traci Lovitt to Succeed Stephen Brogan at Jones Day, Suit Claims*, Bloomberg Law (Feb. 25, 2022), https://news.bloomberglaw.com/daily-labor-report/traci-lovitt-to-succeed-stephen-brogan-at-jones-day-suit-claims.

disability leave potentially available to birth mothers, notwithstanding his lack of any disability and his (now admitted) knowledge that he had no legal right to such leave.

## **BACKGROUND**

On August 12, 2019, a New York Times reporter contacted Jones Day, seeking comment on "a discrimination complaint that two former Jones Day associates, Julia Sheketoff and Mark Savignac, are planning to file against the firm." ECF No. 26, Ex. A. The New York Times inquiry was routed to Traci Lovitt, a Jones Day partner who had assumed a lead role as counsel for Jones Day following an earlier indication that Plaintiffs intended to file suit. Lovitt informed the reporter that Jones Day could not comment on a complaint it had not seen, and asked to be provided with a draft of the complaint. The next day Sheketoff emailed Lovitt a draft of the impending complaint because "[t]he New York Times reporter said you asked to see [it]." ECF No. 26, Ex. B; *see also id.*, Ex. C (New York Times reporter noting on August 13, 2019, that "Mark Savignac is going to email [Lovitt] the complaint shortly").

In response to the press inquiry, Jones Day lawyers who were already working on the firm's defense of Plaintiffs' EEOC charges—including, Lovitt, Mary Ellen Powers, Terri Chase, and others—finalized a press statement, drafts of which had been prepared based on Plaintiffs' prior threat to try their claims in the media. Because any statement needed to align with positions to be taken in the litigation, communications regarding the draft statement necessarily involved analysis of Plaintiffs' claims and potential defenses, legal advice on risks associated with its dissemination, and development of counsel's initial mental impressions and theories regarding the issues in dispute. Indeed, as this Court recently observed when accepting that all of these communications and drafts were privileged, it would "border on malpractice for a lawyer to know that their client was about to be sued, have their client issue a press release about the lawsuit without the lawyer reviewing and commenting on the press release to make sure that they're not saying something

3

that's inconsistent with the position that counsel intends to take in the case."  Jan. 31, 2022 Hearing Tr. at 44:5-10, 20-24.  After Jones Day's Managing Partner, Stephen Brogan, approved the press statement and authorized that it be publicly issued, Lovitt emailed the final press statement to the New York Times reporter on behalf of her client.  *See* ECF No. 26, Ex. C.

Plaintiffs commenced this action that same day by filing their initial Complaint.  ECF No. 1.  They coordinated the filing with the New York Times reporter so that its story—complete with photos from a previously-arranged photo shoot—could go live immediately upon filing of the complaint.  Six days later—on August 19, 2019—Lovitt and Powers each appeared as counsel on behalf of Defendants by filing, respectively, a motion for admission *pro hac vice* (Lovitt, ECF No. 10) and a notice of appearance (Powers, ECF No. 9).  Defendants responded to the Complaint on September 27, 2019, by filing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which was signed by Lovitt, who would ultimately argue the motion for Defendants.  ECF No. 15.  Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Plaintiffs' time to amend their Complaint "as a matter of course" expired 21 days later, on October 18, 2019.

Eight months later, on June 30, 2020, Plaintiffs filed a motion for leave to supplement their complaint to add retaliation claims based on the issuance of the press statement.  ECF No. 25.  Defendants opposed the motion, but the Court ultimately granted leave to file the supplemental complaint on February 11, 2021.  ECF No. 43.  Defendants filed an answer to the supplemental complaint on March 5, 2021.  ECF No. 45.

On May 12, 2021, Plaintiffs filed their First Amended Complaint, "pursuant to the Court's order requiring Julia to allege additional facts defining the job of an associate in Jones Day's Issues & Appeals group (Dkt. 47)."  ECF No. 48, at 1 n.1.  Defendants answered Plaintiffs' First Amended Complaint on May 26, 2021.  ECF No. 49.

More recently, on January 19, 2022, Plaintiffs filed their Second Amended Complaint, with Defendants' consent, which added Michael Shumaker as a defendant for certain retaliation claims. ECF No. 116.  Defendants filed their answer to the Second Amended Complaint on February 2, 2022.  ECF No. 119.

Less than a week later, on February 8, 2022, Plaintiffs again contacted Defendants, seeking consent to file yet another amended complaint.  Plaintiffs attached a proposed Third Amended Complaint, which added Lovitt as a defendant with respect to two of Plaintiffs' claims—Count XII (retaliation in violation of the Fair Labor Standards Act (the "FLSA"), as amended by the Equal Pay Act (the "EPA")), and Count XIV (retaliation in violation of the D.C. Human Rights Act (the "DCHRA")—and which included new detail based on information learned in discovery to support Plaintiffs' other, already existing claims.  Defendants did not consent to the amendments, but sought a conference with the Court to discuss the impropriety of trying to add Lovitt *after* the Court had already noted that she acted in a counsel role.  The Court declined the conference on the basis that Defendants could file an opposition to any motion by Plaintiffs for leave to file a proposed amended complaint.  Nonetheless, after receiving the Court's email, Plaintiffs filed their Third Amended Complaint on the docket without seeking leave from this Court and without noting that Defendants did not consent to the amendment.[2]

## ARGUMENT

### I. PLAINTIFFS' THIRD AMENDED COMPLAINT IS PROCEDURALLY IMPROPER.

"Under Federal Rule of Civil Procedure 15(a)(1), a party may amend its pleading once as matter of course within twenty-one days after serving it, or twenty-one days after service of a

---

[2] Pursuant to Local Rule 7(m), Defendants' counsel discussed this motion with Plaintiffs before filing it and determined that Plaintiffs oppose the relief requested herein.

responsive pleading under Rule 12(b), (e) or (f)." *Gharb v. Mitsubishi Elec. Corp.*, 148 F. Supp. 3d 44, 52 (D.D.C. 2015) (citing Fed. R. Civ. P. 15(a)(1)).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Here, Plaintiffs filed their Complaint on August 13, 2019, and Defendants moved to dismiss the Complaint on September 27, 2019.  *See* ECF Nos. 1, 15.  Consequently, Plaintiffs' time to amend as a matter of course expired on October 18, 2019—twenty-one days after Defendants filed their motion to dismiss.  *See Henok v. Kessler*, 78 F. Supp. 3d 452, 458 (D.D.C. 2015) (requiring plaintiff to obtain leave of court because plaintiff "filed his motion to amend more than 21 days after the defendants had filed their motions to dismiss").

The right to amend "once as a matter of course" does not survive throughout the duration of a case.  Rather, Rule 15(a)(1) establishes a "limited time period following commencement of the action" in which a plaintiff has the right to amend its complaint without judicial involvement. 6 Charles Alan Wright & Arthur Miller, FED. PRAC. & PROC. CIV. § 1480 (3d ed.); *see also* 3 MOORE'S FEDERAL PRACTICE § 15.12 (2021) (noting that "the time period for amendments 'as a matter of course' was sharply curtailed [by the 2009 amendments] to a fixed, predictable, and reasonably short period").

Courts have repeatedly rejected the argument that a plaintiff's time to amend its complaint as a matter of course extends beyond the initial stages of litigation.  The First Circuit, for example, has expressly rejected the argument that a plaintiff's "right to amend as a matter of course renewed each time the defendants filed a responsive pleading (either an answer or a responsive motion) to a particular version of the complaint."  *U.S. ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 192 (1st Cir. 2015).  As the First Circuit explained, this "tortured interpretation of Rule 15 not only defies common sense but also runs contrary to the historic structure of Rule 15 and to the stated purpose

of the 2009 amendments to the Rule," which were designed "to remedy inefficiencies created by granting plaintiffs the unconditional right to amend as a matter of course at any time before an answer was filed (regardless of how much litigation and discovery activity had occurred in the interim)." *Id.* at 193; *see also Gentry v. Tennessee Bd. of Jud. Conduct*, No. 3:17-CV-00020, 2017 WL 2362494, at *1 (M.D. Tenn. May 31, 2017) ("As to the plaintiff's assertion that the filing of each new motion to dismiss affords him an additional opportunity to amend his complaint as a matter of course, without seeking leave of court, that, too is in error. The plain language of the rule dictates this conclusion, which is also supported by the definitive learned treatise on federal civil procedure and the Advisory Committee Notes to Rule 15.").

Accordingly, courts hold that "the automatic amendment provisions of [Rule] 15(a) do not apply to amendments of amended pleadings." *Deutsch v. Health Ins. Plan of Greater New York*, 573 F. Supp. 1443, 1445 (S.D.N.Y. 1983); *see also Soto v. John Defendants 1-5*, No. 13-640, 2014 WL 1607615, at *4-5 (D. Minn. Apr. 15, 2014), *aff'd* 581 F. App'x 606 (8th Cir. 2014) (rejecting argument that plaintiff had right as a matter of course to amend its amended complaint when defendants moved to dismiss amended complaint); *Bingham v. Morales*, No. CV 311-019, 2011 WL 5358594, at *2 (S.D. Ga. Nov. 4, 2011) (rejecting argument that plaintiff could amend his amended complaint without leave where prior amendments were ordered by Court).

Courts thus also hold that if a pleading has previously been amended (regardless of the reason for the amendment), any subsequent amendments require consent or the court's leave. *See, e.g.*, *Elliott v. Foufas*, 867 F.2d 877, 882-83 (5th Cir. 1989) (holding that "[a]lthough [Plaintiff's first] amendment was not voluntary, it was an amendment within the terms of Rule 15(a)" so "[a]ny further amendment, therefore, could only be by leave of the court"); *Kearney v. Jandernoa*, 979 F. Supp. 576, 581 (W.D. Mich. 1997) ("Even where a first amendment of a complaint is not

voluntary, any further amendment must be by leave of court."); *Bingham*, 2011 WL 5358594, at *2 (rejecting argument that plaintiff can amend as a matter of course where two prior amendments were ordered by the Court to address pleading deficiencies); 3 MOORE'S FEDERAL PRACTICE § 15.10 (2021) ("The reason for the first amendment of a pleading is also irrelevant to its effect. For example, a plaintiff must obtain leave of court or consent of opposing parties to amend a once-amended complaint even if the first amendment was at the court's direction.").

Plaintiffs have already amended their complaint three other times. *See* ECF Nos. 43, 48, 116. And the period during which they were permitted to amend without judicial involvement or consent expired twenty-one days after Defendants filed their motion to dismiss—*i.e.*, on October 18, 2019. Fed. R. Civ. P. 15(a)(1). Plaintiffs were therefore required to obtain leave from this Court or consent before filing their Third Amended Complaint. Fed. R. Civ. P. 15(a)(2). They did not do so, and the Third Amended Complaint should be stricken for this "unexcused procedural default[ ]." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1280 (D.C. Cir. 1994); *see also Pinson v. U.S. Dep't of Just.*, 975 F. Supp. 2d 20, 28 (D.D.C. 2013) (granting motion to strike amended complaint where plaintiff did not first seek leave from the court).

## II. EVEN IF PLAINTIFFS' PROCEDURAL FAILURE IS EXCUSED, LEAVE TO AMEND SHOULD BE DENIED.

The decision to deny leave to amend is within the sound discretion of the District Court. *See Kowal*, 16 F.3d at 1280. Although the Court should "freely" grant leave to amend a pleading "when justice so requires," Fed. R. Civ. P. 15(a)(2), "that does not mean a motion for leave to amend must be granted as a matter of course." *Hedgeye Risk Mgmt., LLC v. Heldman*, 271 F. Supp. 3d 181, 191 (D.D.C. 2017). "Rather, the Court must consider whether 'any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party . . . [or] futility of amendment'—counsels against allowing the proposed amendment." *Williams v. Ellerbe*, 317 F. Supp. 3d 144, 147 (D.D.C. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Here, for the reasons below, leave to file the Third Amended Complaint is not appropriate.

### A.      The Court Should Deny Leave to Add Traci Lovitt as a Defendant.

Plaintiffs' only proposed claims against Lovitt are retaliation claims under the DCHRA and the FLSA/EPA, premised upon actions taken by Lovitt in her role as counsel to Defendants with respect to the press statement.  Those claims are futile, untimely, prejudicial to Defendants, and a bad faith effort to interfere with Defendants' chosen counsel in this case.  Leave to amend should therefore be denied, for several reasons.

*First*, as an initial matter, Plaintiffs' claims against Lovitt are futile because litigation of those claims would require evidence the Court has already ruled is undiscoverable.  "The effect of a valid claim of privilege on the outcome of a particular case depends on the purpose that the privileged information would have served.  If the information is essential to establishing plaintiff's prima facie case, dismissal is appropriate."  *In re United States*, 872 F.2d 472, 476 (D.C. Cir. 1989).  This is because "public policy forbids the maintenance of any suit in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential, and respecting which it will not allow the confidence to be violated.  On this principle, suits cannot be maintained which would require a disclosure . . . of communications by a client to his counsel for professional advice."  *Totten v. United States*, 82 U.S. 105, 107 (1875).  Courts have thus dismissed claims that either depend upon the disclosure of privileged information for plaintiffs to prove the elements of their claims or that would force defendants to waive privilege to assert valid defenses to those claims.  *See, e.g.*, *Edmonds v. U.S. Dep't of Just.*, 323 F. Supp. 2d 65, 79 (D.C. Cir. 2004) (dismissing various claims, including retaliation, where "plaintiff is not

only unable to prove the prima facie elements of each of her claims without the disclosure of privileged information, but that the defendants are unable to assert valid defenses to her claims without such disclosures").

Such is the case here. This Court has already held, after careful consideration of the parties' privilege assertions and arguments, that documents regarding the drafting of Jones Day's press release identified on Defendants' privilege log are protected from disclosure by the attorney-client privilege and/or work product protection, and do not otherwise fall within the crime-fraud exception. *See* Jan. 31, 2022 Hearing Tr. at 50: 16-25; 51:1-13. These documents and any witness's recollection of privileged communications are essential to Plaintiffs' press-release claims against Lovitt, and Lovitt's ability to defend against those claims. Plaintiffs do not (and cannot) allege that Lovitt had authority as counsel to authorize the public dissemination of the press release. Rather, as Plaintiffs know from discovery, the press release was submitted for approval to, and its issuance was authorized by, Stephen Brogan acting in his capacity as Managing Partner of Jones Day, Lovitt's client. *See* Exhibit A, at 9 (Defendants' *First Supplemental Objections and Responses to Plaintiffs' First Set of Interrogatories to Defendants*). Plaintiffs' claims against Lovitt instead focus on the content of the press release and Lovitt's alleged motivations with respect to that content. *See, e.g.*, ECF No. 126 ¶ 266 ("As Lovitt and the other Defendants intended, the press release makes a slew of negative assertions about Julia and Mark that are false, disingenuous, willfully misleading, and calculated to deceive the reader.").

The privileged information, however, is the only evidence that could shed light on Lovitt's role with respect to the drafting of the press release—such as what portions she reviewed, commented on, or revised, the reasons behind her recommendations, and (as explained below) whether Lovitt acted with sufficient "willfulness" to trigger the longer statute of limitations under

the FLSA.  Without this information, Plaintiffs cannot prove a claim of retaliation against Lovitt, and Lovitt cannot adequately defend by explaining her role, reasoning, or motivations.  Nor can Jones Day be compelled to waive its attorney-client privilege as the cost of Lovitt defending against Plaintiffs' claim.  *See Totten*, 82 U.S. at 107.  Plaintiffs' retaliation claims under both the FLSA and DCHRA are therefore futile because "plaintiff[s] [are] not only unable to prove the prima facie elements of each of [their] claims without the disclosure of privileged information, but [Lovitt is also] unable to assert valid defenses to [the] claims without such disclosures." *Edmonds*, 323 F. Supp. 2d at 79; *see also Gen. Dynamics Corp. v. Superior Court*, 7 Cal 4th 1164, 1190 (Cal. 1994) ("[W]here the elements of a wrongful discharge in violation of fundamental public policy claim cannot, for reasons peculiar to the particular case, be fully established without breaching the attorney-client privilege, the suit must be dismissed in the interest of preserving the privilege.").

*Second*, and relatedly, Plaintiffs' claims are futile because Lovitt's actions as counsel to her clients in connection with the press statement are not a proper subject of a retaliation claim. As counsel to Jones Day, Lovitt's duty was to her client, not to Plaintiffs.[3]  Although Lovitt was her clients' chosen representative for responding to the New York Times inquiries instigated by

---

[3] *See Conservative Club of Washington v. Finkelstein*, 738 F. Supp. 6, 11 (D.D.C. 1990) ("The notion that an attorney owes a duty to his client's adversary is entirely inconsistent with the practice of law in this nation and with the attorney-client relationship. To impose such a duty could place an attorney in the difficult position of choosing whether to proceed in a manner that is consistent with his clients best interests or to proceed in the manner that is least likely to expose him to a future action by his client's adversary. The adversarial system cannot countenance such a rule of liability that has the effect of chilling zealous advocacy."); *Yeager v. Nat'l Pub. Radio*, No. 20-cv-00755, 2021 WL 3510653, at *12 (D.D.C. Aug. 10, 2021) ("[O]pposing counsel is not legally obligated in any way to an adverse party.") (citing *Bell v. United States*, 301 F. Supp. 3d 159, 164 (D.D.C. 2018), *aff'd*, 2018 WL 6720681 (D.C. Cir. Dec. 17, 2018)); *Goldschmidt v. Paley Rothman Goldstein Rosenberg & Cooper, Chartered*, 935 A.2d 362, 381 (D.C. 2007) ("Only in rare circumstances will a party be justified in suing his opponent's lawyer. 'An attorney "who pursues in good faith his or her client's interests on a matter fairly debatable in the law" cannot be held liable to an opposing party.'" (quoting *Fischer v. Est. of Flax*, 816 A.2d 1, 6 (D.C. 2003))).

Plaintiffs, that does not subject Lovitt to liability for retaliation based on actions directed by her clients.  Plaintiffs do not (and cannot) allege that Lovitt was acting as Plaintiffs' "employer" in connection with the press release, as is required to establish liability under the FLSA and DCHRA. Indeed, courts have dismissed similar retaliation claims premised on counsel's actions, on the ground that actions taken by counsel with respect to litigation do not pertain to the employment relationship.  *See, e.g.*, *Diaz v. Longcore*, 751 F. App'x 755, 759 (6th Cir. 2018) (holding that retaliation claims can only be brought against persons "acting on behalf of the employer . . . *with respect to the employment relationship*, such as by hiring, supervising, paying and managing employees," not against persons "acting on behalf of [the employer] *with respect to a legal matter*" (emphasis added)); *Kelly v. First Data Corp.*, No. 1:19-cv-372, 2020 WL 419440, at *8-9 (Jan. 27, 2020) (dismissing retaliation claims under the Americans with Disabilities Act, Title VII, the Pregnancy Discrimination Act, and Ohio civil rights act against former employer's law firms and attorneys); *Hofmann v. Fermilab Nal/Ura*, 205 F. Supp. 2d 900, 905 (N.D. Ill. 2002) (barring plaintiff's claims against former employer's lawyers under employment discrimination law); *Kim v. Lee*, No. 21-cv-3552, 2021 WL 6052122, at *7-9 (S.D.N.Y. Dec. 20, 2021) (dismissing retaliation claims under the FLSA and New York Labor Law against employer's counsel); *Cramton v. Grabbagreen Franchising LLC*, No. CV-17-04663, 2019 WL 7048773, at *25 (D. Ariz. Dec. 23, 2019) (denying claims under state wage law against general counsel where she was "merely acting as the attorney for the entity that served as [Plaintiff's] actual employer"). Maintaining retaliation claims against Lovitt in her role as counsel to Defendants is therefore inappropriate.

*Third*, Plaintiffs' claims against Lovitt are futile for the additional reason that they are outside the applicable statutes of limitations.

With respect to the DCHRA retaliation claim, "'[t]he limitation period for a civil action brought pursuant to the [DCHRA] is one year.'"  *Brown v. Children's Nat'l Med. Ctr.*, 773 F. Supp. 2d 125, 136 (D.D.C. 2011) (quoting *Jones v. Howard Univ.*, 574 A.2d 1343, 1345 (D.C. 1990)); *see also* D.C. Code § 2-1403.16(a) ("A private cause of action pursuant to [the DCHRA] shall be filed in a court of competent jurisdiction within one year of the unlawful discriminatory act[.]").  However, "the timely filing of a charge with the EEOC, and the automatic cross-filing of a claim with the [D.C. Office of Human Rights] that follows, is sufficient to toll the one-year statute of limitations for filing a claim under the DCHRA." *Ellis v. Georgetown Univ. Hosp.*, 631 F. Supp. 2d 71, 78 (D.D.C. 2009) (citations omitted).  Even so, such tolling of the statute of limitations applies only to parties who were named in the EEOC charge; the statute of limitations continues to run with respect to parties not named in the charge.  *See, e.g.*, *Brown*, 773 F. Supp. 2d at 136-37 (holding that DCHRA claims against individual supervisors were time-barred where EEOC charge named only corporate employer); *Frett v. Howard Univ.*, 24 F. Supp. 3d 76, 84 (D.D.C. 2014) (same).

Here, the Third Amended Complaint alleges that the press statement was issued on August 14, 2019.  Savignac and Sheketoff each filed EEOC charges related to the press release on June 8, 2020.  *See* Exhibit B (Savignac and Sheketoff EEOC charges regarding press release).  Those charges, however, name only Jones Day as the "Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others."  *Id.*  Although Plaintiffs had communicated directly with Lovitt in August 2019 about the New York Times inquiry, and therefore knew of her involvement in the issuance of the press release, the charges do not even mention Lovitt, let alone identify her as a potentially responsible party.  *See id.*  Consequently, even if the EEOC charges were sufficient

13

to toll the DCHRA statute of limitations with respect to Jones Day, they did not toll the statute of limitations with respect to Lovitt.  *See Brown*, 773 F. Supp. 2d at 137; *Zelaya v. UNICCO Serv. Co.*, 587 F. Supp. 2d 277, 285–86 (D.D.C. 2008) (finding statute of limitations tolled with respect to supervisors named in EEOC charge but not tolled with respect to site managers not named). The time by which Plaintiffs had to assert a DCHRA claim against Lovitt with respect to the press statement expired on August 14, 2020, and the inclusion of a DCHRA claim against Lovitt in the Third Amended Complaint is therefore futile.

Nor will Plaintiffs be able to establish a timely FLSA/EPA retaliation claim against Lovitt. The FLSA and EPA provide "different statutes of limitations for 'ordinary violations and willful violations.'"  *Galloway v. Chugach Gov't Servs., Inc.*, 199 F. Supp. 3d 145, 151 (D.D.C. 2016) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 123 (1988)).  "In an 'ordinary' case, the action must be commenced within two years, but where a violation is 'willful' the plaintiff may bring suit 'within three years after the cause of action [has] accrued."  *Id.* (quoting 29 U.S.C. § 255(a)).  "[T]he Supreme Court has held that a violation of the FLSA is 'willful' only if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'"  *Id.* (quoting *Richland Shoe*, 486 U.S. at 133).  That is, "[a] plaintiff *must be able to show* that her employer was aware of its obligations under the FLSA and chose not to comply with the law or recklessly disregarded its statutory duties."  *Id.* (emphasis added).

Here, because the allegedly retaliatory press statement was issued on August 14, 2019, the statute of limitations for "ordinary" FLSA and EPA claims expired on August 14, 2021.  A new FLSA claim against Lovitt will therefore be timely only if Plaintiffs can show that Lovitt "knew or showed reckless disregard" for whether her conduct violated the FLSA/EPA.  *Id.*  However, because the documents and testimony necessary to determine whether Lovitt's actions were

14

"willful" are all privileged, Plaintiffs will never be able to establish the state of mind necessary to trigger the 3-year statute of limitations.  Plaintiffs' FLSA/EPA retaliation claim against Lovitt is therefore also untimely and an amendment to add that claim is also futile.

   *Fourth*, allowing Plaintiffs to add claims against Lovitt at this point in the litigation would be highly prejudicial to the existing Defendants, as it could potentially limit Lovitt's ability to represent Defendants in this lawsuit.  *See Landmark Dev. Grp. v. JEG Holdings, Inc.*, 185 F.R.D. 126, 128 (D. Conn. 1999) (denying joinder of party's attorney because it would prejudice plaintiff, who had relied on attorney in litigation for years).  In stark contrast, Plaintiffs will suffer no prejudice if they are precluded from adding Lovitt as a defendant.  Plaintiffs are seeking to add Lovitt as a defendant only on two already existing retaliation claims.  Both of these claims have already been asserted against Jones Day, Stephen Brogan, and Michael Shumaker, and Plaintiffs cannot claim the existing defendants are insufficient to afford complete relief, or that adding Lovitt as a defendant is necessary for their claims.[4]  Indeed, it is doubtful Plaintiffs will be able to show that they suffered *any* damages at all from the press release, as it contains nothing that is not part of Defendants' defense to the underlying claims in the court record.

   *Fifth*, the prejudice to Defendants is heightened by the fact that Plaintiffs have delayed bringing these claims until now, even though Plaintiffs have known about Lovitt's contacts with the New York Times since August 2019—and, in fact, facilitated those contacts.  It is well-established that "[a] motion to amend may be denied as dilatory or unduly delayed where a plaintiff was aware of the facts giving rise to the cause of action before filing the complaint that she now wishes to amend."  *LaPrade v. Abramson*, No. 97-10, 2006 WL 3469532, at *4 (D.D.C. Nov. 29,

---

   [4] Rather, as we previously have advised Plaintiffs, Jones Day is the only defendant necessary to provide them with complete relief with respect to their claims.

2006); *see Green v. City of Southfield*, 925 F.3d 281, 286 (6th Cir. 2019) (affirming the denial of leave to amend when plaintiff sought, "over a year after the lawsuit began," "to add five defendants, all of whom she knew about from the outset of the case").[5]  Such is the case here. Plaintiffs knew Lovitt was involved in Jones Day's media response to the lawsuit on August 13, 2019, because Sheketoff emailed Lovitt the original complaint before it was filed, expressly to allow Lovitt to respond to the New York Times reporter's request for comment on a media story Plaintiffs had solicited.  *See* ECF No. 26-1, at 4.  Plaintiffs thus knew Lovitt's involvement over *ten months* before they first asserted the press release was retaliatory, *see* ECF No. 25 (June 30, 2020), and *nearly two and a half years* before they filed their last amended complaint, *see* ECF No. 116 (Jan. 19, 2022).  Yet Plaintiffs did not attempt to add claims against Lovitt in either pleading.  Instead, Plaintiffs now seek to add Lovitt two-and-a-half years into her representation of Defendants in this Court.  *See Landmark Dev. Grp.*, 185 F.R.D. at 128.

*Finally*, Plaintiffs' delay and effort to drive a wedge between Defendants and their chosen counsel suggests the Third Amended Complaint is in bad faith.  *See Hill v. Equifax Info. Servs., LLC*, No. 1:11cv107, 2013 WL 474789, at *4 (M.D.N.C. Feb. 7, 2013) (denying plaintiff's request

---

[5] *See also Scarlett v. Office of Inspector Gen.*, No. 21-819, 2022 WL 111236, at *2 (D.D.C. Jan. 10, 2022) (Moss, J.) (indicating plaintiff unduly delayed amending her complaint where she knew "the facts on which her amended complaint is premised since the filing of her original complaint, yet she failed to raise these claims until this litigation had progressed to the point of summary judgment briefing"); *Robertson v. Intratek Computer, Inc.*, 976 F.3d 575, 584 (5th Cir. 2020) ("The district court also may consider whether the facts underlying the amended complaint were known to the party when the original complaint was filed." (quotation omitted)); *Aleshire v. Harris, N.A.*, 586 F. App'x 668, 672 (7th Cir. 2013) (affirming denial of leave to amend where "the facts underlying the proposed new claims were known to [plaintiff] at the time she filed her original complaint" and she "had ample opportunity to assert her proposed claims in either her original complaint or two successive complaints"); *Sipp v. Unumprovident Corp.*, 107 F. App'x 867, 877 (10th Cir. 2004) ("Denial of leave to amend is particularly appropriate in cases in which the cause(s) of action were available to the plaintiff at the time that the original complaint was filed.").

to amend or supplement complaint to add defendant's counsel, nearly two months after plaintiff had learned of alleged violation, noting "propos[al] to add Defendant's counsel as party-defendants heightens the degree of prejudice and may suggest bad faith on Plaintiff's part");  Wright & Miller, 6 FED. PRAC. & PROC. CIV. § 1488 (3d ed.) (observing that plaintiffs "demonstrate[] bad faith . . . [b]y failing to introduce the matter contained in the proposed amendment at as early a stage in the litigation as possible").  Plaintiffs' bad faith is further evidenced by their attempt to add claims against Lovitt with respect to the press release, even though this Court had specifically noted less than a month before that Lovitt was acting as counsel for Jones Day with respect to the press release, and that her communications with her client were undiscoverable.  Particularly given the lack of any demonstrable prejudice to Plaintiffs, their efforts to bring Lovitt into this case strongly suggests Plaintiffs are simply using the amendment process to burden Defendants' counsel, harass Defendants, generate media publicity, and interfere with Defendants' ability to defend the claims against them.

  **B.**   **The Court Should Deny Leave to Add Discovery Material Relating to Existing Claims.**

  In addition to adding Lovitt as a defendant with respect to two of the retaliation claims, the Third Amended Complaint also contains various evidentiary detail (much of it inadmissible) allegedly supporting Plaintiffs' other existing claims.  These new allegations incorporate selective information learned by Plaintiffs in discovery to present a misleading and one-sided picture of this litigation.  *See, e.g.*, Third Amend. Compl. ¶¶ 95, 153, 162-63, 169-72, 202-07, 216-20, 224, 227, 239.  As explained below, Plaintiffs' addition of this extraneous material is not only unnecessary and futile, it is a transparently bad faith effort to litigate this case in "the court of public opinion," as Savignac threatened from the beginning.  Plaintiffs' efforts to use the press to their advantage

should not be condoned. *See Williams*, 317 F. Supp. 3d at 147 (explaining that bad faith or futility "counsels against allowing the proposed amendment").

Significantly, none of the new factual detail is necessary to support any of Plaintiffs' existing claims—claims as to which the Court has already denied Defendants' motion to dismiss. *See* ECF No. 32, pp. 47–48.  "[J]ustice does not require allowing Plaintiff[s] to amend" in such circumstances.  *See Sims v. Cabrera*, No. 1:12-CV-01904-LJO, 2014 WL 6893776, at *3 (E.D. Cal. Dec. 8, 2014) (denying motion for leave to amend "where the proposed amendments would cause undue delay and are futile in that they would add purely superfluous facts to the pleading"); *Wandering Dago Inc. v. New York State Office of Gen. Servs.*, No. 1:13-CV-1053, 2014 WL 12797920, at *13 (N.D.N.Y. July 28, 2014) (finding new factual allegations "futile because they are unnecessary"); *cf.* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter.").  To the contrary, courts properly deny "motions to amend where the proposed amendment does nothing but bolster factual allegations where the original complaint contained enough allegations to state a claim for relief."  *Thorpe v. Duve*, No. 7:15-cv-00736, 2020 WL 372676, at *3 (N.D.N.Y. Jan. 23, 2020); *see U.S. ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*, No. 8:06-cv-40-T-24, 2008 WL 343158, at *2 (M.D. Fla. Feb. 5, 2008) ("With regards to Count I, leave to amend is unnecessary, as the Court has denied Defendants' motions to dismiss that count, and the new allegations merely bolster his existing claim.").  This Court should likewise deny leave to add gratuitous and unnecessary allegations.

Indeed, given that Plaintiffs' new factual allegations serve no *legitimate* purpose in this litigation, it is likely that Plaintiffs aim is an *illegitimate* one—to harass Defendants and draw media attention by making irrelevant but sensational factual allegations and selectively but misleadingly disclosing material learned in discovery.  *Cf. Blackwell v. Simon*, No. 1:18-cv-1261,

2020 WL 5351022, at *12 (W.D. Mich. Mar. 20, 2020) (disapproving of a motion that "is designed as a vehicle to harass [the defendant] and generate more media coverage for this case"), *report and recommendation adopted*, 2020 WL 2553146 (W.D. Mich. May 20, 2020); *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 926 (8th Cir. 1999) (reminding "appellants that '[d]iscovery involves the use of compulsory process to facilitate orderly preparation for trial, not to educate or titillate the public'" (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982))).   Plaintiffs are continuing to make good on their threat to try their claims "in the court of public opinion."  *See* ECF No. 116, ¶ 191.   And this bad faith effort is bearing fruit. Several articles have already been published that repeat Plaintiffs' biased—and often false— narrative.[6]  Meanwhile, because of the posture of the amended complaint, Defendants will have no opportunity to rebut Plaintiffs' additional detail for several months until summary judgment briefing.  The Court should not reward such bad faith tactics or incentivize serial pleading of cumulative allegations as proxies for forthcoming summary judgment submissions.  It should instead deny leave to amend.

## **CONCLUSION**

For the reasons explained above, the Court should strike the Third Amended Complaint.

---

[6] *See, e.g.*, Vin Gurrieri, *Parental Leave Suit Expanded To Target Jones Day Partner*, Law360 (Feb. 25, 2022), https://www.law360.com/articles/1468151/; Dan Packel, *'Dad Bias' Plaintiffs Detail Jones Day Succession Planning*, The American Lawyer (Feb. 25, 2022), https://www.law.com/americanlawyer/2022/02/25/dad-bias-plaintiffs-detail-jones-day-succession-planning/; Sam Skolnik, *Traci Lovitt to Succeed Stephen Brogan at Jones Day, Suit Claims*, Bloomberg Law (Feb. 25, 2022), https://news.bloomberglaw.com/daily-labor-report/traci-lovitt-to-succeed-stephen-brogan-at-jones-day-suit-claims.

Dated: March 9, 2022                              Respectfully submitted,

                                                  */s/ Terri L. Chase*
                                                  Terri L. Chase (*pro hac vice*)
                                                  JONES DAY
                                                  600 Brickell Avenue, Suite 3300
                                                  Miami, Florida 33131
                                                  Ph: (305) 714-9700
                                                  Email: tlchase@jonesday.com

                                                  Traci Lovitt (Bar No. 467222)
                                                  JONES DAY
                                                  250 Vesey Street
                                                  New York, NY 10281
                                                  Ph: (212) 326-3939
                                                  Email: tlovitt@jonesday.com

                                                  Christopher DiPompeo (Bar No. 1003503)
                                                  JONES DAY
                                                  51 Louisiana Avenue NW
                                                  Washington, DC 20001
                                                  Ph: (202) 879-3939
                                                  Email: cdipompeo@jonesday.com

                                                  Anderson T. Bailey (*pro hac vice*)
                                                  JONES DAY
                                                  500 Grant Street
                                                  Pittsburgh, PA 15219
                                                  Ph: (412) 391-3939
                                                  Email: atbailey@jonesday.com

                                                  *Attorneys for Defendants*