IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARK C. SAVIGNAC and
JULIA SHEKETOFF,

   *Plaintiffs*,

   v.

JONES DAY, STEPHEN J. BROGAN,
BETH HEIFETZ, MICHAEL SHUMAKER,
and TRACI LOVITT,

   *Defendants*.

Case No. 1:19-cv-02443-RDM-ZMF

**REPLY IN SUPPORT OF OBJECTION TO MAGISTRATE JUDGE ORDER**

    Plaintiffs' Objection makes a simple argument and a modest request. The Magistrate Judge ruled that Defendant Shumaker's statement ▟▟▟▟▟▟▟▟▟▟▟▟▟▟▟▟ ▟▟▟▟▟▟ was privileged, leading Jones Day to claw back all materials evincing the ▟▟▟▟▟▟▟ But, as the Court and parties have always recognized, the ▟▟▟▟▟▟ was not privileged. While Jones Day's clawback is ineffective in any event, the Magistrate Judge's mistaken redaction of ▟▟▟▟▟▟▟▟▟▟▟▟ raises a serious risk that *other* crucial information was *also* mistakenly redacted. Given the clear importance of the Shumaker Email, which presumably documents Shumaker's business reasons for ▟▟▟▟▟▟▟▟▟▟▟▟, that risk compels Plaintiffs to invoke the rule that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). To minimize the burden, Plaintiffs propose that the Court review the Shumaker Email—less than half a page in length—and review the other in camera documents only if it finds that Jones Day improperly withheld material in that email.

Jones Day's opposition is largely superfluous. The parties have already briefed the underlying issues at great length, and the Court agreed that in camera review of the communications documenting Jones Day's decision to fire Mark was appropriate. The only question now is whether the Court should take on the modest burden of reviewing the two-paragraph Shumaker Email to determine whether the Magistrate Judge's (and Jones Day's) redactions accord with the law. *See also* Jan. 31, 2022 Tr. 23:16-17, 24:8 (THE COURT: "You probably would have a right to appeal and have an Article III judge look at the issue"; "I'm not concerned about the burden."). Jones Day apparently believes that the Court should not do so, but it offers no real argument for that position, and the Court obviously cannot make the determination called for by Rule 72(a) without looking at the email.[1]

The Shumaker Email brought Plaintiffs' discrimination complaint to Brogan's attention and directly caused Brogan to fire Mark. The email includes Shumaker's ▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉ and the redacted portions undoubtedly explain *why* Shumaker ▉▉▉▉▉▉▉▉▉▉. While Jones Day's stated reasons for firing Mark are protean to say the least, none could remotely be called a *legal* reason. Rather, they are all standard *business* reasons for terminating an employee, such as "immaturity," "unacceptable manner," "behavior towards colleagues," "intemperate tone," and "deficiencies in his legal reasoning." Mot. (Dkt. 84-1) at 14-15 (quoting various Jones Day statements). If these actually are Jones Day's reasons, then they are reflected in the Shumaker Email, and the email is not privileged.

---

[1] Jones Day notes that the Magistrate Judge had ex parte "discussions with Shumaker" (Opp. 6), but the Magistrate Judge did not say that these discussions influenced his ruling or that he found Shumaker credible. *See* Dkt. 135. In any event, Jones Day does not ask the Court to consider that transcript when it reviews the Shumaker Email, perhaps because nothing in the transcript would support Jones Day's position. If the Court does look at the transcript, it should also look at the other in camera documents, which provide contemporaneous evidence of his true role in the retaliation that may counterbalance his post hoc testimony.

There are numerous misstatements in Jones Day's brief.  A few in particular bear mention.

*First*, Jones Day says that the Magistrate Judge "upheld virtually all of Jones Day's privilege assertions."  Opp. 1.  Actually, he found that the privilege assertions were severely overbroad.  As Jones Day notes, he reviewed forty-two documents.  *See id.* at 4.  Of these, Jones Day had produced four with redactions while withholding the other thirty-eight entirely.  The Magistrate Judge ruled that *all forty-two* must be produced to one degree or another.  On many, the material that he ordered produced is relatively minor.  In many other cases, though, he ordered Jones Day to produce entire email chains with few or no redactions where Jones Day had previously withheld them entirely.  For illustration, Exhibit A includes nine email chains as the Magistrate Judge ordered Jones Day to produce them.  Jones Day withheld *all nine of them entirely*, but, as Exhibit A shows, the Magistrate Judge found that six should have been produced with *no* redactions at all and three with only minimal redactions.  In short, the in camera review has already demonstrated that Jones Day's privilege claims were vastly overbroad.  (The same is doubtless true of the withheld documents related to Jones Day's retaliatory press release.)

*Second*, Jones Day says that "Plaintiffs' objection disregards the applicable standard of review" and "seek[s] … an improper *de novo* assessment."  Opp. 2, 5.  Indeed, Plaintiffs' supposed misstatement of the standard of review is Jones Day's *lead argument* against the modest review that Plaintiffs request.  *See id.* at 5.  But Plaintiffs stated the standard twice in three pages.  Obj. 1, 3.  If anything, it is Jones Day that disregards Rule 72(a), carefully omitting and never addressing its mandatory requirement that "[t]he district judge in the case *must* consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law" (emphasis added).  *See, e.g.*, *WH Holdings, LLC v. Ace American Insurance Co.*, 2010 WL 3732149, at *2 (N.D. Ill. 2010) ("The Rule provides for a mandatory review by the district judge

if objections are filed"); *Huebner v. McCleary*, 2006 WL 8457477, at *1 (D. Utah 2006) (acknowledging "Rule 72(a)'s mandatory language").

*Third*, Jones Day pretends that it has always taken the position that Shumaker's ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨. Opp. 3, 7. That is false. As even a cursory review of the relevant exchange makes clear, when the Court asked Jones Day's lawyer if there was "[a]ny reason" why Jones Day should not disclose "whether or not Mr. Shumaker recommended Mr. Savignac's termination," the lawyer did *not* object that the recommendation is privileged. *See* July 20, 2021 Tr. 27-29. She said that Shumaker sometimes gives privileged advice, but expressly distinguished between "legal advice and … recommendations." *Id.* at 29:6-7. It is inconceivable that the Court understood itself to be rejecting a claim of privilege when it then ordered Jones Day to disclose the recommendation. *Id.* at 29:10-13. Jones Day raised no privilege objection to that ruling and thus waived any claim of privilege. *See* Fed. R. Civ. P. 46. Indeed, it has itself *publicly stated* in at least one filing on the public docket that "Shumaker ultimately recommended … that Jones Day terminate Savignac's employment." Dkt. 92 at 10. And the fact that, a few weeks after that ruling, Jones Day withheld the entire Shumaker Email as privileged—but then produced the redacted version with the ▨▨▨▨▨▨▨▨▨ only *after* Plaintiffs said they would move to compel and seek in camera review—is just another instance of Jones Day withholding crucial evidence under faulty privilege claims and merely confirms how necessary it was for Plaintiffs to move to compel. *See* Opp. 8.[2]

---

[2] It should be clear that the Magistrate Judge could not nullify the Court's earlier order requiring Jones Day to disclose whether Shumaker recommended the termination (and the Magistrate Judge surely did not intend to do so). Jones Day's contrary argument is plainly wrong, even if "this Court did not have the benefit of the full briefing and factual record." Opp. 7.

4

*Fourth*, Jones Day says that is has "acknowledged from the beginning of the case that the decision to terminate Savignac was made by Brogan." Opp. 8; *see also id.* ("it is undisputed Brogan made the decision to terminate"). That is quite untrue. As early as September 2020 and as recently as February 2022, Jones Day has *denied* Plaintiffs' allegation that "the final decision to fire Mark was made by Brogan" (Dkt. 116 at 30 (SAC ¶ 199)) and insisted that "[t]he [f]irm's decision to terminate Savignac was a *collaborative* decision, which included *consultation* with Brogan." Dkt. 116 at 30 (SAC Answer ¶ 199) (emphasis added); Dkt. 35 at 23 (Answer ¶ 154) (emphasis added). Either those past representations are false or the current one is. And if Shumaker was indeed a "collaborat[or]," and Brogan was merely "consult[ed]" by him, then Shumaker's communications on the subject plainly were not privileged. Regardless, evidence about the motives for the "collaborative decision" plainly is the most crucial evidence in the case, and Jones Day's improper attempts to shroud that decision in secrecy confirm the need for judicial scrutiny. Nor is it true that suppressing the Shumaker Email would cause "no prejudice to any retaliation claim against Jones Day or Brogan." Opp. 8. The Shumaker Email is plainly what caused Brogan to fire Mark, and it is inarguably crucial evidence on causation for the retaliation claims against Jones Day and Brogan, not just against Shumaker.[3]

*Finally*, Jones Day seeks to deflect from its apparent failure to preserve an attachment to the Shumaker Email, which should be part of this Court's in camera review. *See* Opp. 10 n.6. But three facts are beyond dispute. First, the Shumaker Email is a crucial piece of evidence created at a time when Defendants obviously (and admittedly) anticipated litigation and were obliged to

---

[3] Further confirming that Shumaker was a chief collaborator in the collaborative termination decision—and not a mere legal advisor—Jones Day has disclosed Shumaker under Rule 26(a)(1) as an "individual likely to have discoverable information … that [Jones Day] may use to support its claims or defenses" on the subject of "the termination of Plaintiff Savignac."

5

preserve relevant documents.  Second, Jones Day reports that it cannot find the Shumaker Email itself (though it has found later emails in the chain that include the *text* of the Shumaker Email—but not any *attachments* to that email).  *See* Ex. B, *infra* (Jones Day's counsel saying "we have some, but not all" of the individual emails in the chain).  Third, the Shumaker Email begins "Steve, I wanted to bring the attached to your attention."  This confluence of factors regarding the single most crucial document in the case (which, again, Jones Day initially withheld in full and produced only after Plaintiffs told the Court they would move to compel) raises serious concerns and may well necessitate Rule 37(e) relief down the road.

| | |
|---|---|
| /s/ Julia Sheketoff | /s/ Mark Savignac |
| Julia Sheketoff (pro se) | Mark C. Savignac (pro se) |
| 2207 Combes Street | 2207 Combes Street |
| Urbana, IL 61801 | Urbana, IL 61801 |
| (202) 567-7195 | (217) 714-3803 |
| sheketoff@gmail.com | marksavignac@gmail.com |
| D.C. Bar No. 1030225 | D.C. Bar No. 995367 |

May 20, 2022