IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARK C. SAVIGNAC and
JULIA SHEKETOFF,

   *Plaintiffs*,

      v.

JONES DAY, STEPHEN J. BROGAN,
BETH HEIFETZ, and MICHAEL
SHUMAKER,

   *Defendants*.

Case No. 1:19-cv-02443-RDM-ZMF

**OPPOSITION TO DEFENDANTS' MOTION FOR 21-DAY EXTENSION
TO ANSWER THIRD AMENDED COMPLAINT**

Jones Day has promised to file a frivolous Rule 11 motion seeking sanctions against Plaintiffs for nearly all of their claims. *See* Addendum, *infra* (Jones Day's account of its Rule 11 arguments). It now attempts to bootstrap its impending Rule 11 motion into a basis for a three-week extension to move to strike a six-word addition to Plaintiffs' Third Amended Complaint, which was filed with *both* leave of Court *and* the express consent of the very Jones Day attorney who now seeks the extension—even though the coming Rule 11 motion has nothing to do with the language that Jones Day wants to strike.

Plaintiffs filed the TAC on September 9. *See* Dkt. 172. Jones Day's answer is due tomorrow. *See* Fed. R. Civ. P. 15(a)(3). Rather than comply with its obligations, Jones Day has filed an eleventh-hour extension motion seeking an additional 21 days (for a total time of 250 percent of the time allowed by rule), at the end of which it apparently intends to file a baseless motion to strike the TAC. The Court should deny the extension motion.

1.      This Court's Standing Order in Civil Cases directs that, "[a]bsent extraordinary circumstances, contested motions for extensions of time shall be filed at least three business days before the relevant deadline." Standing Order § 12.  Yet Jones Day filed its extension motion on the afternoon of the day before the relevant deadline (and more than 24 hours after Plaintiffs informed Jones Day that they would contest the motion).  Jones Day does not pretend that it has any excuse for the delay, much less "extraordinary circumstances."  Nor could it.  It has known of its September 23 deadline ever since the TAC was filed 13 days ago.  And it bases its extension request not on some late-breaking emergency, but rather on its threat to file a frivolous Rule 11 motion, which it has plainly been planning for some time.

2.      On May 20, 2022, Plaintiffs filed their motion for leave to file a Third Amended Complaint.  Among other proposed amendments, the proposed TAC amended an existing allegation made in each of their three retaliation counts (Counts VII-IX) to state that "Julia and Mark engaged in protected activity by … <u>participating in Jones Day's complaint process</u>." *See* Dkt. 149-3 (proposed TAC redline) ¶¶ 382, 390, 399 (underlining added to show the language added by the amendment).  At the motion hearing held on July 1, Mark specifically sought and received both leave of Court *and* Jones Day's consent to add the language in question:

> The Court:  All right.  Well, I'm going to then—I'm going to deny the motion to amend with respect to the new factual matters that don't relate to the press release.
>
> Mark:  Okay.  Can I clarify that we're talking about the allegations that the defendants have identified as allegations that they are upset about—
>
> The Court:  Well, I think—I'm not sure because I think they may have just been giving examples of ones they felt particularly egregious.  So I think the point, the point is is that anything that's not related to your efforts to add claims against Mr. Shumaker and Ms. Lovitt with respect to the press release.  With those claims, it's a separate matter.
>
> Mark:  Okay.  Can I confer with Julia about this as well?
>
> The Court: Yes.

>(Pause)
>
>Mark: Hi, Judge. Sorry. There is additional language in some of the retaliation counts. I don't have any idea whether it would be viewed as expanding legal theories. But if you look at paragraph 382, I think that's an example. It is not—
>
>The Court: Let me just pull up.
>
>Mark: This is something that Jones Day has never objected to.
>
>Ms. Chase: Mark, you said 382, the paragraph that alleges "Julia and Mark engaged in protected activity by opposing sex discrimination"?
>
>Mark: Correct. I mean I think in the red line there, it changes to that paragraph. If I'm wrong, I'm very sorry.
>
>The Court: I'm pulling it up right now. I don't see any problem with your adding paragraph 3[82]. Any objection to that, Ms. Chase?
>
>Ms. Chase: I don't either. I candidly I do see that it shows up in the red line. It does not appear to be a new allegation though. So it might have just moved.
>
>The Court: Yeah. I think it may be that it's purple on my version and the other material seems to be green. So I'm not sure what's what.
>
>Ms. Chase: Yeah.
>
>The Court: But I don't see a problem with that allegation.
>
>Mark: Okay. And then there's a similar change to the other two retaliation counts. So I assume we're on the same page about those.
>
>Ms. Chase: Yes.
>
>Mark: Okay. With that then, I think that we are able to move on to the next issue.

July 1 Tr. 21:21-23:20. At no point in the hearing did the Court withdraw its leave, nor did Ms. Chase withdraw her consent to Plaintiffs' amending ¶ 382 and the "similar change to the other two retaliation counts." Rather, the rest of the hearing focused on matters unrelated to that change. And the Court's minute order later the same day said simply: "For the reasons stated on the record, Plaintiffs' [156] SEALED MOTION for Leave to File Third Amended Complaint is DENIED IN PART and GRANTED IN PART."

On September 9, Plaintiffs timely filed their TAC. As the accompanying redline shows, the TAC is nearly identical to the SAC. The only addition is the phrase "participating in Jones Day's complaint process," which—as the Court authorized and Ms. Chase expressly agreed at the hearing—is added to the three retaliation counts. *See* Dkt. 172-1 (TAC redline) ¶¶ 266, 274, 282. The only other change is the *withdrawal* of a handful of allegations that Plaintiffs are no longer pursuing. *See id.* pp. 14, 33, 41-43. Jones Day cannot and does not complain of (or seek to "strike") those withdrawals.

On the afternoon of September 22 (today), thirteen days after Plaintiffs filed their TAC and the day before the answer is due, Jones Day filed its extension motion, indicating that it will move to strike the phrase added to ¶¶ 266, 274, and 282—and that it inexplicably requests a total of five weeks to put together its motion to strike those six words.

The extension motion—which is signed by Ms. Chase and bears the names of two other Jones Day partners who attended the July 1 hearing—is premised on a misrepresentation of the hearing. It states that the Court granted the motion to amend only with respect to adding claims against Michael Shumaker and Traci Lovitt and "denied the motion in all other respects" and that the TAC was "filed without leave or consent." The motion never acknowledges the colloquy set forth above. Nor does it mention that Ms. Chase herself expressly consented to the very additions that she now seeks to move to strike as supposedly "filed without leave or consent." Her consent would be fatal to any motion to strike even if the Court had denied leave to make the addition in question. *See* Fed. R. Civ. P. 15(a)(2) (amendments require either leave of court *or* consent).

Jones Day has not shown good cause to take five weeks to move to strike six words on the ground that they were supposedly filed without leave or consent. The extension motion should be

4

denied, and Jones Day should answer the TAC (which would require only trivial revisions to its prior answer).

**3.** Jones Day has committed to filing a Rule 11 motion asking the Court to impose monetary sanctions on Plaintiffs for virtually every one of their claims—but *not* for any change made to the TAC vis-à-vis the SAC. *See* Addendum, *infra* (Jones Day's Rule 11 notice). While Jones Day insists that it would be "most efficient" to put off its deadline to answer the TAC until after the Rule 11 matter is resolved, the truth is that the impending Rule 11 motion has no connection to Jones Day's obligation to answer the allegation added to the TAC. That allegation goes to the protected activity element of Plaintiffs' retaliatory termination claim—the only claim in the TAC that is *not* covered by Jones Day's coming Rule 11 motion. Even if the Court granted Jones Day's Rule 11 motion in full, Jones Day would still have to answer the allegation that Plaintiffs engaged in protected activity by participating in its complaint process. The impending Rule 11 motion therefore cannot provide good cause for an extension of time to answer (or move to strike) the TAC.

| /s/ Julia Sheketoff | /s/ Mark Savignac |
|---|---|
| Julia Sheketoff (pro se) | Mark C. Savignac (pro se) |
| 2207 Combes Street | 2207 Combes Street |
| Urbana, IL 61801 | Urbana, IL 61801 |
| (202) 567-7195 | (217) 714-3803 |
| sheketoff@gmail.com | marksavignac@gmail.com |
| D.C. Bar No. 1030225 | D.C. Bar No. 995367 |

September 22, 2022

# ADDENDUM

# JONES DAY

600 BRICKELL AVENUE • BRICKELL WORLD PLAZA • SUITE 3300 • MIAMI, FLORIDA  33131

TELEPHONE: +1.305.714.9700 • JONESDAY.COM

Direct Number:  (305) 714-9722
tlchase@jonesday.com

VIA E-MAIL  September 20, 2022

Julia Sheketoff
2207 Combes Street
Urbana, IL 61801
(202) 567-7195
sheketoff@gmail.com

Mark C. Savignac
2207 Combes Street
Urbana, IL 61801
(217) 714-3803
marksavignac@gmail.com

Re:  *Savignac et al. v. Jones Day et al.*, No. 1:19-cv-2443 (D.D.C.)

Dear Julia and Mark:

    I write on two matters.  *First*, to demand withdrawal of the Third Amended Complaint that Plaintiffs filed on September 9, 2022 (Dkt. 172) without consent or leave of court.  *Second*, to serve a motion for sanctions under Federal Rule of Civil Procedure 11(c)(2) that Defendants intend to file if the claims and contentions identified below are not withdrawn within 21 days.

    **Third Amended Complaint.**  As Judge Moss has previously ruled, Plaintiffs are no longer entitled to amend their pleading as of right; any amendment must instead be premised on consent or leave of court.  *See* Dkt. 144.  In response to that ruling, Plaintiffs sought leave to file a Third Amended Complaint on May 20, 2022, in order to "add two Jones Day managers—Traci Lovitt and Michael Shumaker—as Defendants on Plaintiffs' existing claim about Jones Day's issuance of a malicious press release in retaliation for this lawsuit."  Dkt. 150.  Defendants opposed that motion.  *See* Dkt. 160.  At an oral hearing on July 1, 2022, Judge Moss granted that motion in part and denied it in part.  The transcript indicates that the Court authorized Plaintiffs to amend their complaint *only* to add—if they concluded they had a "good faith basis" to do so after discovery— a "Fair Labor Standards retaliation claim against Ms. Lovitt or Mr. Shumaker" based on their alleged role with respect to Jones Day's press statement and "allegations that support the new claims."  Tr. of July 1, 2022 Hr'g at 47, 50.  The Third Amended Complaint that Plaintiffs recently filed, however, includes no additional claim against Ms. Lovitt or Mr. Shumaker.  In fact, it contains no new allegations at all about the press statement.   Instead, it adds unrelated allegations that were not referenced in Plaintiffs' motion for leave, not preserved in either the reply filed in support of that motion or the argument on that motion, and for which the Court never granted leave.  *See* ECF 172 ¶¶ 266, 274, 282.

AMSTERDAM  •  ATLANTA  •  BEIJING  •  BOSTON  •  BRISBANE  •  BRUSSELS  •  CHICAGO  •  CLEVELAND  •  COLUMBUS  •  DALLAS  •  DETROIT
DUBAI  •  DÜSSELDORF  •  FRANKFURT  •  HONG KONG  •  HOUSTON  •  IRVINE  •  LONDON  •  LOS ANGELES  •  MADRID  •  MELBOURNE
MEXICO CITY  •  MIAMI  •  MILAN  •  MINNEAPOLIS  •  MUNICH  •  NEW YORK  •  PARIS  •  PERTH  •  PITTSBURGH  •  SAN DIEGO  •  SAN FRANCISCO
SÃO PAULO  •  SAUDI ARABIA  •  SHANGHAI  •  SILICON VALLEY  •  SINGAPORE  •  SYDNEY  •  TAIPEI  •  TOKYO  •  WASHINGTON

JONES DAY

Julia Sheketoff
Mark C. Savignac
September 20, 2022
Page 2

Plaintiffs' filing of the Third Amended Complaint was therefore not authorized by the Court. Nor did Defendants consent to its filing. There is nothing in the amendment that is material to Plaintiffs' claims or that warrants imposing on Defendants the burden of preparing yet another Answer. Accordingly, Defendants intend to file a motion to strike unless Plaintiffs voluntarily withdraw the Third Amended Complaint within 14 days, by October 4, 2022. The only amendment to which Defendants will consent is an amendment withdrawing the claims identified below or that Plaintiffs otherwise now know to be false, all of which lack the evidentiary support required by Rule 11.

Rule 11. With discovery having now closed, it is apparent that certain claims asserted in Plaintiffs' pleadings (including both the operative Second Amended Complaint and the improperly filed Third Amended Complaint) have no factual basis. *See* Fed. R. Civ. Proc. 11(b)(3) (requiring factual contentions to "have evidentiary support"). Unless Plaintiffs dismiss the claims listed below within 21 days, Defendants intend to file the attached motion for sanctions.

Counts I-III. These counts allege that Jones Day's leave policies discriminate on the basis of sex by giving eight more weeks of paid leave to female associates compared to male associates to care for and bond with their new children. Although Plaintiffs have acknowledged that these eight additional weeks are available only under Jones Day's *disability* leave policy, Plaintiffs have argued that the disability "label" for these eight weeks is a "sham." Savignac, however, admitted in his deposition that women who give birth are entitled to some amount of disability leave, and that he was not disabled after the birth of his son. And both sides' medical experts agree that women are disabled for some period of time following childbirth. Plaintiffs therefore lack evidentiary support for their claim that the entire eight-week period is a "sham" for these reasons alone.

In any event, there is also no evidentiary support for a challenge to Jones Day's presumption of an eight-week disability period following childbirth. To the contrary, the undisputed facts show that (i) Jones Day adopted the disability-leave policy for legitimate reasons, not to discriminate against fathers, and (ii) its presumption is medically reasonable and consistent with prevailing obstetric practices, so there is no basis to infer pretext. Specifically, Julie Dressing, Jones Day's Human Resources Director when the policy was enacted in 1994, has signed a declaration explaining that Jones Day selected an eight-week presumption because it comports with medical standards of care and timeframes insurance carriers will approve for leave for routine childbirth; avoids requiring intrusive disclosures regarding the type of birth and other medical conditions; establishes a presumptive period that covers all short-term disabilities for routine childbirth; and promotes administrative convenience. Each of those reasons is a legitimate, non-discriminatory reason for the eight-week presumption. Nor is there even a hint in the record that these reasons are pretextual. There is no evidence suggesting anything other than the rationale set

Julia Sheketoff
Mark C. Savignac
September 20, 2022
Page 3

forth in Ms. Dressing's declaration motivated the selection of an eight-week presumption. And *both sides'* medical experts agree that doctors routinely certify a disability period of six-to-eight weeks following childbirth, that such certifications are medically reasonable, and that this is their own professional practice. There is no basis whatsoever to argue that the eight-week presumption is a "sham," and it would violate Rule 11 to argue otherwise on this record.

Counts IV-VI. These counts allege that Jones Day engaged in sex discrimination against Sheketoff with respect to pay solely by virtue of an allegedly discriminatory review by Partner A. Discovery has revealed no evidence to support a reasonable inference that Partner A's review was discriminatory and no evidence that his review was the reason for Sheketoff's compensation adjustment in 2017.

Indeed, there is no evidence that Partner A has ever engaged in sex discrimination against, or exhibited gender-based animus towards, *anyone*. His reviews, both of Sheketoff and of other associates, expose no gender bias. He explained the legitimate, non-discriminatory basis for his review—which was consistent with concededly non-discriminatory reviews of Sheketoff by other attorneys—and the record contains not a hint of pretext. At this point, the allegations concerning Partner A amount to baseless *ad hominem* attacks stemming from Sheketoff's apparent belief that Partner A did not invite her to a lunch for black lawyers (while acknowledging that he did invite other female associates). That is nowhere close to the level of evidentiary support necessary to support a good faith claim.

Moreover, discovery has foreclosed any allegation that Partner A's review influenced Sheketoff's compensation. Steve Brogan, the decisionmaker as to her compensation, testified that he *never saw* Partner A's evaluation, and instead based Sheketoff's salary adjustment in 2017 on her low practice ratings. Beth Heifetz assigned Sheketoff below-average practice ratings in two consecutive years based on multiple (non-discriminatory) reviews containing a pattern of consistent performance criticisms, poor productivity, and concerns about commitment to private practice. In 2017, an additional factor was Sheketoff's failure to correct deficiencies identified in the prior year. As Ms. Lovitt testified, most associates with two consecutive years of below-average performance are counseled out of the firm and typically receive no raise. There is therefore substantial, undisputed evidence proving that Sheketoff was not discriminated against in pay on the basis of her gender, and Plaintiffs have absolutely no evidence to the contrary. While we believe Plaintiffs had no good faith basis for filing these claims in the initial Complaint, the refusal to withdraw them now, after discovery has demonstrated their falsity and lack of evidentiary support, is grounds for Rule 11 sanctions.

Our Rule 11 concerns about Sheketoff's pay claims are heightened by her apparent history of dishonesty about her compensation, including false statements to another associate concerning

JONES DAY

Julia Sheketoff
Mark C. Savignac
September 20, 2022
Page 4

the compensation adjustment at issue. That lawyer has informed us that during a 2017 conversation, Sheketoff falsely stated that she had received the same adjustment as the other lawyer. That lawyer has also informed us that Sheketoff called her before filing the complaint to confess that Sheketoff had lied in 2017 about her compensation adjustment, as the lawyer would see when Sheketoff filed the complaint. Yet, at her deposition, Sheketoff's testimony on this issue was (at best) misleading, flatly denying she had shared her 2017 compensation with this lawyer while failing to admit that she lied to her colleague about the raise she received. That pattern of dishonesty—which goes to the heart of Sheketoff's pay claims—calls into question whether she is asserting these claims in good faith.

Further suggesting a lack of good faith in pursuing the pay claims, Plaintiffs' deposition of Partner A spent little time on questions relevant to alleged gender bias but wasted much time questioning the accuracy of Partner A's time entries. Throughout this case, Plaintiffs have shown little professional restraint in making scurrilous accusations with no supporting evidence. With respect to Partner A's time entries, there is zero evidence to support any accusation of impropriety. Given the nature of that allegation and the seriousness with which Jones Day and Partner A treat their professional obligations, I strongly caution Plaintiffs not to suggest in any court filing the unsubstantiated, frivolous, and unethical allegation that the Firm or any of its lawyers inaccurately billed a client for time not worked. In the event Plaintiffs do not heed this warning, all rights are reserved.

<u>Employment Reference Claims.</u> Counts VII-IX allege that certain actions were taken with retaliatory animus, including the Firm's determination to allow Partner D (and only Partner D) to provide an employment reference to Savignac. *See* Dkt. 172 ¶¶ 268-269, 276-277, 285-286. But discovery has provided no factual basis for those allegations. It is undisputed that Jones Day's written policies forbid employment references unless authorized by specified individuals, including the Administrative Partner. The Administrative Partner testified that he *allowed* Partner D to provide an employment reference for Savignac, and that he did so to *benefit* Savignac. Partner D is a respected appellate attorney, was "very complimentary" in his reference, and spoke to the firm that offered Savignac a position. Discovery has revealed no instances of the Firm or the Administrative Partner treating anyone (let alone anyone similarly situated) better than Savignac in this regard. There is no basis on which Plaintiffs could allege this theory of retaliation in the Third Amended Complaint or continue to advance this claim at summary judgment under Rule 11.

<u>Beth Heifetz.</u> Plaintiffs have named Ms. Heifetz as a Defendant only on Counts VIII and IX (retaliation under the Equal Pay Act and D.C. Human Rights Act). The record reveals, however, that Ms. Heifetz was not the decisionmaker as to any allegedly retaliatory act.

JONES DAY

Julia Sheketoff
Mark C. Savignac
September 20, 2022
Page 5

      Plaintiffs' only allegation against Ms. Heifetz is that she was involved in restricting the provision of employment references for Savignac.  For the reasons above, Plaintiffs must dismiss that theory of retaliation against all defendants.  In all events, the testimony is undisputed that it was *Mr. Shumaker* (the Firm's Administrative Partner) who made the decisions with respect to Savignac's reference requests—consistent with Jones Day's written policies.  Indeed, the only witness who testified about not providing a reference stated he did so based on the Firm's policy and Mr. Shumaker's decision to designate another lawyer to provide a reference.  Plaintiffs have alleged that Ms. Heifetz personally violated Jones Day's reference policy on other occasions, but discovery has revealed no evidence to support that allegation.  Nor would it matter, anyway, given that the decisions regarding Savignac's reference requests were by all accounts made by Mr. Shumaker, not Ms. Heifetz.  There is no viable claim against Ms. Heifetz that Plaintiffs can continue to maintain consistent with Rule 11.

      For the above reasons, we expect Plaintiffs to voluntarily dismiss (i) claims of sex discrimination based on Jones Day's disability leave policy; (ii) Sheketoff's claims of sex discrimination affecting her pay; (iii) the employment-reference theory of retaliation in Counts VII-IX; and (iv) all claims against Ms. Heifetz.  No evidentiary support for these claims has materialized in discovery, and they can no longer be maintained consistent with Rule 11.

      **Extension of Time To Answer.**  In light of the above and to ensure that Plaintiffs have sufficient time to consider these points, Defendants intend to seek an extension of time to answer or otherwise respond to Plaintiffs' Third Amended Complaint until, if necessary, October 14, 2022 (*i.e.*, three days after the deadline for Plaintiffs' response to this Rule 11 letter).  Please let us know your position on that request by September 21, 2022.  If we have not heard differently by that date, we will assume that Plaintiffs do not consent to the extension.

                                              Sincerely,

                                              */s/ Terri L. Chase*

                                              Terri L. Chase

cc:    Anderson Bailey