IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK C. SAVIGNAC and <br> JULIA SHEKETOFF, <br> <br> *Plaintiffs*, <br> <br> v. <br> <br> JONES DAY, *et al.*, <br> <br> *Defendants*. | Civ. No. 1:19-02443 (RDM) <br> <br> **DEFENDANTS' RESPONSE TO PLAINTIFFS' PRE-MOTION STATEMENT** |

Plaintiffs wish to seek summary judgment on two sets of claims—those challenging Jones Day's disability leave policy as discriminatory, and those challenging Savignac's termination as retaliatory. *See* Dkt. 177. At the pleading stage, this Court held that both sets of claims required "factual development." Dkt. 32 at 32, 38. Yet Plaintiffs ignore the past 18 months of discovery, instead reverting to the sweeping, purely legal theories that this Court properly refused to indulge. Those theories remain meritless. And the "factual development" demonstrates that it is Defendants—not Plaintiffs—who are entitled to summary judgment.

***Alleged Intentional Discrimination – Disability Leave Policy***. At the motion-to-dismiss stage, this Court held that Jones Day's assumption that birth mothers are disabled for eight weeks could be actionable if that assumption "is a 'sham'"—*i.e.*, "nothing more than parental leave by a different name." Dkt. 32 at 24, 33. In other words, the Court held that only if Jones Day adopted its policy as a way to give women but not men eight extra weeks of family leave would it amount to "granting more family-leave time to women than to men," *Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 739 n.12 (2003), and run afoul of EEOC guidance that requires equal leave "to bond with and/or care for the baby," as opposed to for recuperation from childbirth, EEOC, *Enforcement Guidance on Pregnancy Discrimination and Related Issues*, No. 915.003 (June 25, 2015).

1

But discovery foreclosed any such claim. The undisputed evidence will instead show that Jones Day chose an eight-week assumption for legitimate, non-discriminatory reasons—to cover recovery for all routine childbirths without the need to engage in intrusive inquiries into the type of delivery or common complications. As Plaintiffs admit, both sides' experts agreed that doctors routinely certify a six-week disability for "uncomplicated vaginal births," Dkt. 177 at 2; Plaintiffs omit that the experts *also* agreed that doctors routinely certify eight weeks for cesarean births (one-third of all deliveries) or complications (including those associated with maternal age). Adopting an eight-week assumption to protect privacy and for administrative ease—a common offering by Jones Day's disability plan administrator—does not equate to illicit discrimination against men.

This evidence leaves no room to claim Jones Day assumes eight weeks as a way to deprive fathers of extra parental leave. That is why Plaintiffs all but ignore the facts and retreat to their categorical, purely legal theory that Jones Day's policy facially discriminates "as a matter of law" because it supposedly does not tie the disability leave to the actual period of disability for each individual birth mother. Dkt. 177 at 1–2. That stark argument fails for at least three reasons.

*First*, it ignores this Court's ruling that it "cannot determine whether the policy was adopted and operates … as a substitute for an extended period of parental leave" without "discovery" and "evidentiary submissions." Dkt. 32 at 32; *see also* Dkt. 52 at 10 (explaining that "lawfulness of Jones Day's leave policy" was not yet "ripe"). The Court thus made clear that establishing the invalidity of the policy would require *facts*. Plaintiffs have not come forward with any.

*Second*, Plaintiffs' framing is false on its own terms. Jones Day has maintained from the outset that disability leave under its policy covers only the period of actual disability. The Firm assumes that the doctor has certified an eight-week period of actual disability. But that is just an administrative assumption; it does not change the eligibility requirement under the policy.

Plaintiffs say—without citation—that discovery "confirmed" otherwise, but Defendants are not aware of anything in the record for that assertion. To the contrary, Jones Day's 30(b)(6) witness testified she was not aware of any situations in which a birth mother had reported a disability ending before the eight-week mark, but in that event she would ask the Firm's HR Director for guidance. The HR Director—whom Plaintiffs chose not to depose—will testify that in those circumstances the disability leave would end before eight weeks. Moreover, Jones Day not only reserves the right to reclassify leave or recoup salary if it learns that an employee on paid short-term disability did not qualify under that policy's terms—it so informs each new mother. The premise of Plaintiffs' sweeping theory is a factually unsupported mischaracterization.

*Finally*, even accepting Plaintiffs' premise, they are wrong to equate an assumption of an eight-week disability period with an unlawful "sex-based" classification. Dkt. 177 at 2. Unlike the expressly sex-based pension contribution rule in *City of Los Angeles v. Manhart*, 435 U.S. 702 (1978), Jones Day's assumption is not triggered by *sex*; it is triggered by *disability*. It does not apply to women who are not disabled (*e.g.*, the same-sex spouse of a birth mother), whereas it does apply (and actually has been applied) to disabled birth mothers who do not identify as female. It is no different from an assumed disability period for a routine appendectomy.

Indeed, Plaintiffs ultimately admit birth mothers are entitled to disability leave, contending instead that eight weeks is *too long*. Dkt. 177 at 2. But that is not the claim they exhausted or alleged, and it implicitly admits that the policy is *not* facially discriminatory; if it were, even a six-week or four-week assumption would be unlawful, since no assumption is perfect for all cases. The real issue, as this Court recognized at the outset, is thus *why* Jones Day chose an eight-week assumption. And because there is no evidence it did so as a cover for sex discrimination as opposed to for legitimate business reasons, Defendants are entitled to summary judgment. *See Johnson v.*

*Univ. of Iowa*, 431 F.3d 325, 329 (8th Cir. 2005) ("[I]t is not unreasonable for the University to establish a period of presumptive disability so that it does not need to review medical records for each and every employee who gives birth."); *see also Brady v. Off. of Sgt. at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (where "employer has asserted a legitimate, non-discriminatory reason" for policy, the "central question" is: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of … sex …?").

In short, Plaintiffs ignore the facts developed over 18 months of discovery and do not even attempt to show how the Firm's policy is the product of intentional discrimination.

***Alleged Retaliation – Savignac's Termination***.  As to retaliatory termination, Plaintiffs again oversimplify and ignore the factual record.  They say they deserve judgment as a matter of law because Jones Day fired Savignac "because of the email" he sent in January 2019.  Dkt. 177 at 3.  If that were dispositive, Plaintiffs could have sought judgment on the pleadings; it has never been contested that the email sparked the termination.  But as this Court recognized, that is not the end of the analysis.  Dkt. 52 at 10, 18–19.  Plaintiffs must clear at least three other hurdles before they could be entitled to relief.  Each independently precludes summary judgment in their favor.

*First*, to be protected opposition conduct, the email must have been objectively reasonable in its demand.  *Grosdidier v. Broad. Bd. of Governors*, 709 F.3d 19, 24 (D.C. Cir. 2013).  Plaintiffs respond that their claim survived a motion to dismiss—but this Court noted that the reasonableness of Savignac's demand required more factual development.  Dkt. 32 at 38.  And that makes sense, because the challenge to the disability policy that this Court allowed to proceed was different in important ways from the demand in Savignac's January 2019 email.  As this Court observed, at least "a portion of the eight weeks undoubtedly qualifies as disability leave."  Dkt. 32 at 32.

4

Savignac likewise admitted at his deposition that birth mothers are entitled to take at least some disability leave, whereas he was not disabled at all. Yet his email demanded *all eight weeks*. Not only was there no reasonable basis to demand equal treatment with disabled birth mothers, but acquiescing would have violated the Pregnancy Discrimination Act by depriving birth mothers of disability leave. Discovery has thus confirmed that Savignac's email was unreasonable.

*Second*, Plaintiffs must also prove they "in good faith believed" it was "unlawful" for Jones Day not to provide Savignac with all eight weeks of disability leave. *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012). As the Court recognized, that "good faith requirement requires a subjective inquiry into the plaintiff's beliefs and motivations." Dkt. 124 at 7. Defendants will point to numerous indicators of bad faith, including Savignac's effective admission he was never entitled to the eight weeks he demanded, his failure to conduct any meaningful research on birth-related disability, and Plaintiffs' claim to have consulted with "competent attorneys" even though they admittedly never showed them the actual policy at issue. At minimum, Plaintiffs—who would bear the burden of proof at trial—cannot prevail at summary judgment unless the evidence so "conclusively" proves this element that "no reasonable jury would be free to disbelieve it." 11 Moore's Federal Practice Civil § 56.40 (2022). They cannot satisfy that demanding standard.

*Third*, Plaintiffs ignore the real "causation" issue here, which is whether Savignac was terminated for any protected aspect of his email, or instead for unprotected aspects of the "manner" of his demand. *See Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1139 (11th Cir. 2020) (en banc); *Pendleton v. Rumsfeld*, 628 F.2d 102, 107 (D.C. Cir. 1980). Mr. Brogan testified that he did not make the decision based on the threats to sue, but rather based on other, unprotected conduct—including Savignac's unethical threats to smear the Firm to the press if it did not accede to his extortion, and his objectively false statements about compensation at Jones Day.

Recognizing that these obstacles preclude summary judgment, Plaintiffs invoke for the first time a new theory of retaliation—citing language they recently added to the TAC after feigning that they "don't have any idea whether it would be viewed as expanding legal theories." July 1 Tr. 22:14–18; *see also id.* at 21:11–13 (Court noting "concern" about "a different claim or even a different legal theory"). They say they are categorically protected, regardless of reasonableness, because their email constituted "participat[ion] in … an investigation … under this subchapter." 42 U.S.C. § 2000e-3. They rely exclusively on EEOC guidance—but omit its admission that "courts often limit the participation clause to administrative charges or lawsuits" and exclude "complaints made internally." EEOC, *Enforcement Guidance on Retaliation and Related Issues*, No. 915.004, § II.A.1 (Aug. 25, 2016). Indeed, the law in this Circuit is that the participation clause "shield[s] recourse *to the EEOC*," *Parker v. Baltimore & Ohio R.R. Co.*, 652 F.2d 1012, 1019 (D.C. Cir. 1981) (emphasis added), and courts thus refuse to expand the participation clause to protect internal complaints (and thereby swallow the opposition clause). *See, e.g.*, *Brady v. U.S. Capitol Police*, 200 F. Supp. 3d 208, 216 (D.D.C. 2016). That accords with the consensus position of other Courts of Appeals, too. *E.g.*, *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 49 (2d Cir. 2012); *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 746–47 (7th Cir. 2010).[1]

At summary judgment, facts matter—and the facts here foreclose Plaintiffs' claims. They are plainly not entitled to summary judgment on either the disability leave policy claims or the retaliatory termination claims. Allowing them to file these motions would only lead to another proliferation of briefing and waste more of the parties' and the Court's resources.

---

[1] Likewise, Plaintiffs' claim that the EPA protects unreasonable opposition is also contrary to well-established law. *See, e.g.*, *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 895 (7th Cir. 2018). And they cite no authority for their speculation that the DCHRA is broader than Title VII in this particular respect; again, the law is otherwise. *See, e.g.*, *Fowler v. District of Columbia*, 404 F. Supp. 2d 206, 210 (D.D.C. 2005); *see also* Dkt. 32 at 35 n.5 (noting overlapping standards).

September 30, 2022                                  Respectfully submitted,

/s/ Terri L. Chase
Terri L. Chase (*pro hac vice*)
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, Florida 33131
Ph: (305) 714-9700
Email: tlchase@jonesday.com

Traci Lovitt (Bar No. 467222)
JONES DAY
250 Vesey Street
New York, NY 10281
Ph: (212) 326-3939
Email: tlovitt@jonesday.com

Christopher DiPompeo (Bar No. 1003503)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Ph: (202) 879-3939
Email: cdipompeo@jonesday.com

Anderson T. Bailey (*pro hac vice*)
JONES DAY
500 Grant Street
Pittsburgh, PA 15219
Ph: (412) 391-3939
Email: atbailey@jonesday.com

*Attorneys for Defendants*