IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MARK C. SAVIGNAC and<br>JULIA SHEKETOFF,<br><br>           *Plaintiffs*,<br><br>v.<br><br>JONES DAY, *et al.*,<br><br>           *Defendants.* | Civ. No. 1:19-02443 (RDM)<br><br>**DEFENDANTS' MOTION<br>FOR RULE 11 SANCTIONS** |

Defendants respectfully move for sanctions against Plaintiffs under Rule 11 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 11. In this case, Plaintiffs, amongst other allegations, contend: (1) Jones Day's disability leave policy discriminates on the basis of sex by providing birth mothers with eight weeks of paid disability leave that is not available to fathers (Counts I-III); (2) Jones Day engaged in sex discrimination against Plaintiff Sheketoff with respect to pay, solely by virtue of an allegedly discriminatory review by Partner A (Counts IV-VI); (3) Defendants retaliatorily restricted the provision of employment references for Plaintiff Savignac (Counts VII-IX); and, (4) Defendant Beth Heifetz was involved in the decision to restrict the provision of employment references for Plaintiff Savignac (Counts VIII and IX). Discovery, however, has made clear that Plaintiffs do not currently have evidentiary support for these allegations. Indeed, discovery has established that Plaintiffs have no evidence *at all* to support these claims at summary judgment. Plaintiffs, thus, cannot continue to maintain these claims consistent with Rule 11.

In compliance with Rule 11(c)(2), on September 20, 2022, Defendants sent this motion along with a detailed cover letter to Plaintiffs. Defendants advised Plaintiffs that they must

1

withdraw all of the aforementioned claims. Plaintiffs failed to do so within twenty-one days of receiving that notice and a draft of this motion.

Accordingly, Defendants ask the Court to enter an order imposing Rule 11 sanctions. In particular, Defendants request that the Court: (1) dismiss with prejudice the entirety of Plaintiffs' Counts I-VI; (2) dismiss with prejudice Plaintiffs' Counts VII-IX to the extent these Counts assert liability related to Savignac's reference request; (3) dismiss with prejudice all claims against Ms. Heifetz and dismiss Ms. Heifetz as a defendant; (4) order Plaintiffs to pay Defendants' attorneys' fees and costs associated with this motion; and (5) impose any additional sanctions the Court deems just and proper. The grounds for this motion are set forth in the attached memorandum of law.

Dated: December 2, 2022

Respectfully submitted,

*/s/ Terri L. Chase*
Terri L. Chase (*pro hac vice*)
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, Florida 33131
Ph: (305) 714-9700
Email: tlchase@jonesday.com

Traci Lovitt (Bar No. 467222)
JONES DAY
250 Vesey Street
New York, NY 10281
Ph: (212) 326-3939
Email: tlovitt@jonesday.com

Christopher DiPompeo (Bar No. 1003503)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Ph: (202) 879-3939
Email: cdipompeo@jonesday.com

Anderson T. Bailey (*pro hac vice*)
JONES DAY
500 Grant Street
Pittsburgh, PA 15219
Ph: (412) 391-3939
Email: atbailey@jonesday.com

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MARK C. SAVIGNAC and
JULIA SHEKETOFF,

    *Plaintiffs*,

v.

JONES DAY, *et al.*,

    *Defendants.*

Civ. No. 1:19-02443 (RDM)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR RULE 11 SANCTIONS**

Terri L. Chase (*pro hac vice*)
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, Florida 33131
Ph: (305) 714-9700
Email: tlchase@jonesday.com

Traci Lovitt (Bar No. 467222)
JONES DAY
250 Vesey Street
New York, NY 10281
Ph: (212) 326-3939
Email: tlovitt@jonesday.com

Christopher DiPompeo (Bar No. 1003503)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Ph: (202) 879-3939
Email: cdipompeo@jonesday.com

Anderson T. Bailey (*pro hac vice*)
JONES DAY
500 Grant Street
Pittsburgh, PA 15219
Ph: (412) 391-3939
Email: atbailey@jonesday.com

*Attorneys for Defendants*

**INTRODUCTION**

Plaintiffs Mark Savignac and Julia Sheketoff brought a battery of claims against Jones Day, Stephen Brogan (its Managing Partner), Michael Shumaker (its Administrative Partner), and Beth Heifetz (its former Issues & Appeals Practice Leader). At the pleading stage, this Court held that "factual development" was needed to test Plaintiffs' claims. *See generally* Dkt. 32. With discovery now closed, the record proves what Defendants have been saying all along: Plaintiffs' claims have no merit.

Indeed, as explained more fully in Defendants' Motion for Summary Judgment ("MSJ"), filed contemporaneously herewith, certain of Plaintiffs' claims are so lacking in evidentiary support that it is *objectively unreasonable* for Plaintiffs to continue pursuing them. *See* Fed. R. Civ. P. 11(b)(3). Plaintiffs were warned at a hearing this past July that their factual contentions must satisfy Rule 11 in light of discovery. Tr. of July 1, 2022, Hr'g at 8:9–23. In response, Plaintiffs withdrew some objectively unreasonable allegations, including against Beth Heifetz, but they realleged and continue to maintain others, even after discovery has closed. Relevant here, Plaintiffs continue to assert: (1) that Jones Day's leave policies "discriminate[d]" against Savignac "on the basis of [his] sex by giving eight more weeks to female as compared to male associates to care for and bond with their new children," *e.g.*, TAC, Dkt. 172 at 34; (2) that Jones Day "discriminated" against Sheketoff "with respect to her compensation because of her sex," *see, e.g.*, *id.* at 37; (3) that Defendants retaliated against Plaintiffs by authorizing one (positive) employment reference for Savignac after his termination, *see, e.g.*, *id.* at 40; and (4) that Heifetz in particular retaliated against Plaintiffs by "prohibit[ing] other Jones Day lawyers from providing employment references for Mark, in a departure from her prior practice and the practice followed by Jones Day attorneys, because of the[ir] protected activity," *see, e.g.*, *id.*

1

Defendants sent a letter to Plaintiffs on September 20, 2022, identifying the lack of evidentiary support for each of these contentions, attaching a draft motion for sanctions pursuant to Rule 11, and requesting that Plaintiffs respond within 21 days. Defendants then filed a pre-motion statement with this Court on September 23, 2022, expressing an intention to move for summary judgment and Rule 11 sanctions with respect to these claims if Plaintiffs continued to press them. Dkt. 176. Yet Plaintiffs not only refused to withdraw their baseless claims, they filed an opposition to Defendants' pre-motion statement that reasserts these claims and makes clear that they intend to press them notwithstanding the lack of evidentiary support. *See* Dkt. 181. As a result, Defendants have been forced to expend significant time and resources moving for summary judgment on objectively unreasonable claims that are so lacking in evidentiary support that maintaining them in light of the facts revealed in discovery violates Rule 11.

At this point, discovery has proven these allegations to be demonstrably false, yet Plaintiffs persist. *See, e.g.*, *id.* And so this Court in its discretion should impose Rule 11 sanctions.

## **LEGAL STANDARD**

Rule 11 "imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991). At the pleading stage, of course, plaintiffs can allege "factual contentions . . . [that] will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). But plaintiffs cannot "later advocat[e]" the same allegations if discovery reveals that they have *no* "evidentiary support." *See* Fed. R. Civ. P. 11(b). As the Advisory Committee Notes explain: Rule 11 is triggered when a "litigant" "reaffirm[s] to the court and advocat[es] positions contained in . . . pleadings and motions after learning that they cease to have any merit." Fed. R. Civ. P. 11(b) advisory committee's note to 1993 amendment. And while Rule 11 does not always "require a

2

formal amendment to [claims] for which evidentiary support is not obtained," plaintiffs may not "thereafter . . . advocate such claims," *Democracy Partners v. Project Veritas Action Fund*, No. 17-cv-1047, 2018 WL 7958911, at *3 (D.D.C. Aug. 13, 2018) (quoting Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment), or reassert such claims in an "*amended* complaint," *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1366 (9th Cir. 1990) (emphasis added). *See also, e.g.*, *Intelsat USA Sales LLC v. Juch-Tech, Inc.*, No. 10-cv-2095, 2014 WL 12787643, at *2 (D.D.C. Oct. 15, 2014) (finding sanctions appropriate because an "amended counterclaim . . . left intact many of the original counterclaim's allegations" that were demonstrated to have been "not supported by evidence"); *Jackson v. Cronic*, No. 11-cv-00058, 2013 WL 12099477, at *4 (N.D. Ga. Aug. 23, 2013) (finding sanctions appropriate because an attorney "advocated [a] frivolous [discrimination] claim and failed to withdraw it when (1) it became clear there was no evidentiary support for it following . . . discovery and (2) he was put on notice of its deficiencies by defendants"); *cf. Huck ex rel. Sea Air Shuttle Corp. v. Dawson*, 106 F.3d 45, 51 (3d Cir. 1997) (rejecting the "position that once particular claims are deemed not to be frivolous, they are not, and cannot be, frivolous no matter how many times and in what context they are reasserted").

While, in Defendant's view, Plaintiffs never had a good faith basis for their claims, it is not necessary to assess their bona fides at the time the original complaint was filed; what matters is that, at this stage of the litigation, they have refused to withdraw and continue to press claims that they now know have no evidentiary support. Fed. R. Civ. P. 11(b)(3). *See, e.g.*, *Keister v. PPL Corp.*, 318 F.R.D. 247, 260 (M.D. Pa. 2015) (sanctioning attorney because "as the evidence would later illuminate, this Court was led down the garden path . . . when it accepted his client's allegations in good faith"; "[t]hey turned out to be patently untrue, but [the attorney] chose to plead them anyway in an attempt to prop up his client's deflated claim").

3

Ultimately, if "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). A sanction must be what is necessary "to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). That can include, but need not be limited to, the defendants' reasonable attorneys' fees for having to bring the motion and defend against the objectively unreasonable claims. *See, e.g.*, *id.*; *Intelsat USA*, 2014 WL 12787643, at *8 (finding fees warranted where a plaintiff maintained allegations in its amended complaint "without adequate factual support").

## ARGUMENT

As Defendants explain in their Rule 11 letter and MSJ, there is an utter absence of evidentiary support for numerous claims Plaintiffs have alleged and intend to advocate at summary judgment. The lacking evidentiary support makes these claims objectively unreasonable, and thus sanctionable, under Rule 11.

**1. Leave Policy Claims (Counts I–III).** Plaintiffs allege that Jones Day's "parental leave policy discriminates on the basis of sex by giving eight more weeks to female as compared to male associates to care for and bond with their new children." *E.g.*, TAC at 34. At the pleading stage, the Court held that "factual development" was required to determine whether those eight weeks of disability leave were a "sham"—*i.e.*, "not disability leave at all" but "additional parental leave provided to new mothers and not to new fathers." Dkt. 32 at 24, 32, 34.

As Defendants explain in their MSJ, discovery has conclusively proven that Jones Day's policy is not a "sham," but incorporates a practical administrative assumption that is consistent with routine medical and insurance practices. *See* Def. MSJ at 6-13. Both sides' medical experts *agree* that six-to-eight weeks of postpartum disability is routine, that doctors typically certify such

4

periods of disability following childbirth, and that they do this in their own professional practices. *See* Def. MSJ at 9-11. And like the experts, the administrator for Jones Day's short-term disability plan, Unum, confirms that an eight-week post-partum disability assumption is a standard practice based on sound medical standards. *See* Def. MSJ at 11-12. Moreover, the undisputed facts show that Jones Day adopted the eight-week disability certification assumption in 1994 based on its historical experience with postpartum medical certifications and to accommodate the greatest number of disabilities while respecting the birthmother's medical privacy and minimizing everyone's administrative burden. *See* Def. MSJ at 7-9. Plaintiffs have not identified and cannot identify *any* evidence that could reasonably support an inference that Jones Day's explanation of its disability policy is pretext. *See* Def. MSJ at 9-13.

Even the most zealous advocates, upon hearing *their own expert* opine that Jones Day's assumed disability period is medically reasonable, would withdraw their claims to avoid Rule 11 sanctions. Yet Plaintiffs press forward, retreating to an alternative theory that Jones Day's disability leave policy "is illegally discriminatory as a matter of law" because it "is not dependent upon whether women are actually disabled." Dkt. 177 at 1. But Plaintiffs themselves concede that all birthmothers suffer from some period of disability, and thus they have no basis to allege that the *entire* eight weeks is a sham (which was the predicate for Savignac's extortionate demand). *See* Def. MSJ at 19. Moreover, their theory rests on a fundamental misstatement of Jones Day's policy, both as written and as conclusively established by the testimony of Jones Day's Director of Human Resources and Counsel, who explained that if a birthmother reported she had fully recovered before eight weeks, the mother's disability leave would end at that time, and her family leave would begin. *See* Def. MSJ at 13-17. There is nothing in the evidentiary record that

contradicts that testimony. *See* Def. MSJ at 13-17. Plaintiffs' alternative argument is therefore just as objectively unreasonable as their original argument.

In short, Plaintiffs have no objectively reasonable basis to claim that the eight-week presumption is a "sham" or that Jones Day's policy is facially discriminatory. Making this argument requires Plaintiffs to pretend as if discovery never happened, ignoring the opinions of *both* experts, the testimony of the author and the current administrator of Jones Day's policy, the plain language of the policy, and the testimony of the person responsible for implementing it. No reasonable lawyer would press these claims on this evidentiary record, and, in doing so, Plaintiffs have violated Rule 11. *See, e.g.*, *Townsend*, 929 F.2d at 1366; *Intelsat USA*, 2014 WL 12787643, at *8; *Cronic*, 2013 WL 12099477, at *4.

2. **Discriminatory Pay Claims (Counts IV–VI)**. Plaintiffs allege that Jones Day "discriminated against [Sheketoff] with respect to her compensation because of her sex," *e.g.*, TAC at 37, by providing her a smaller raise ($15,000) in 2017 than she had received in prior years. To support that allegation, Sheketoff continues to point solely to an allegedly discriminatory review by Partner A. *See* Dkt. 181. At the pleading stage, the Court noted that "[t]hese factual assertions might (or might not) all be true," but it let them proceed to discovery. *See* Dkt. 32 at 20; *see also* Dkt. 47 at 21. Now that discovery has concluded, it is clear that Plaintiffs have absolutely no evidence that Partner A's review was discriminatory, or that it was a motivating factor in Sheketoff's 2017 compensation adjustment. *See* Def. MSJ at 31-38.

There is *zero evidence* that Sheketoff's gender had anything at all to do with Partner A's review—no gender-based comments from Partner A, no evidence that Partner A treated males better in similar circumstances, no evidence showing a pattern of bias against women in Partner A's other reviews, and no evidence that even remotely connects Partner A's review with

6

Sheketoff's gender. Def. MSJ at 31-33. In fact, the available evidence is entirely to the contrary—while Partner A's reviews of women (other than Sheketoff) were uniformly positive, Partner A's reviews of *male* associates have included substantially more critical statements, including for some of the same issues he identified as Sheketoff's challenges. Def. MSJ at 32-33. Further, there is not a shred of evidence in the record that Partner A lacked an honest and reasonable belief in what he wrote in his review. *See* Def. MSJ at 33-34. Partner A's narrative review contained many positive statements about Sheketoff's work, and the critiques were consistent with Sheketoff's other evaluations that she admits were not biased. Def. MSJ at 33-34. And Sheketoff's allegations about why Partner A supposedly falsified his review—that Partner A could not accept a woman rejecting his revisions to a client memo—are not supported by the contemporaneous evidence regarding that incident and are nothing more than unfounded speculation. Def. MSJ at 34.

Moreover, as explained more fully in Defendants' MSJ, it is undisputed that Jones Day's Managing Partner, Defendant Stephen Brogan, *personally* decided each of Sheketoff's compensation adjustments, and that he was not aware of Partner A's review until *after* she left the firm. Def. MSJ at 35. Instead, Brogan based Sheketoff's 2017 compensation adjustment on the fact that Sheketoff had been given below-average ratings (2 on a scale of 1–5) by Beth Heifetz, her practice leader, in both 2016 and 2017. Def. MSJ at 35-36. And Heifetz explained that Sheketoff's below-average rating in 2017 was based on her personal observations of Sheketoff's performance and the consistent, recurring criticisms expressed over a two-year period by multiple reviewers (none, other than Partner A, alleged to be discriminatory). Def. MSJ at 36-37. Thus, as was true in 2016, Sheketoff would have received the identical rating even if Partner A had not submitted a review. Def. MSJ at 36-37. The undisputed evidence thus shows that Partner A's

7

(non-discriminatory) review was not a "motivating factor" in Sheketoff's compensation adjustment. *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 297 (D.C. Cir. 2015).

In short, Sheketoff's complete lack of evidentiary support for her claims means she has no objectively reasonable basis to assert gender-based pay discrimination, so maintaining this claim violates Rule 11. *See, e.g.*, *Townsend*, 929 F.2d at 1366; *Intelsat USA*, 2014 WL 12787643, at *8; *Cronic*, 2013 WL 12099477, at *4.

**3.     Employment Reference Claims (Counts VII–IX)**.  Plaintiffs allege that the Firm's determination to allow Partner D (and only Partner D) to provide an employment reference for Savignac was impermissible retaliation for Saviganc's challenge to Jones Day's disability leave policy. *See, e.g.*, TAC ¶¶ 268–69, 276–77, 285–86. But contrary to Plaintiff's allegations, and as discovery has now conclusively shown, Jones Day's written policies *prohibit* employment references unless authorized by specified individuals, including the Administrative Partner. *See* Def. MSJ at 28-29. And the Administrative Partner, Michael Shumaker, testified that he made an exception to this policy in order to *help* Savignac find a job. *See* Def. MSJ at 29. In fact, Partner D is a respected appellate attorney and gave a reference that one of Savignac's prospective employers described as "very complimentary." *See* Def. MSJ at 29. It is patently absurd to argue that any reasonable employee in Savignac's position would have been chilled from sending the January 2019 email because the employee would have received "only" a single positive reference to which the employee was not entitled. *See* Def. MSJ at 29-30. Plaintiffs have no objectively reasonable basis for this theory of retaliation, and maintaining it after discovery violates Rule 11. *See, e.g.*, *Townsend*, 929 F.2d at 1366; *Intelsat USA*, 2014 WL 12787643, at *8; *Cronic*, 2013 WL 12099477, at *4.

**4.    Claims Against Beth Heifetz (Counts VIII–IX)**.  The only claim currently asserted against Defendant Beth Heifetz is that she was involved in restricting the provision of employment references for Savignac.  As noted above, there is no "evidentiary support" for *any* retaliation claims based on Savignac's reference requests.  *See supra* at 8.  But such claims are particularly inappropriate against Heifetz, whom discovery has revealed was not a decisionmaker with respect to Savignac's reference requests.  *See* Def. MSJ at 30.  As Defendants explain in their MSJ, Heifetz was not authorized to make an exception to Jones Day's policy prohibiting employment references; Shumaker testified that he made the decision with respect to Savignac's requests; and Heifetz's only involvement was to convey the Firm's policy and Shumaker's decision.  *See* Def. MSJ at 30.  Plaintiffs have no objectively reasonable basis for *any* claim against Heifetz, and their continued assertion of such claims violates Rule 11.  *See, e.g.*, *Townsend*, 929 F.2d at 1366; *Intelsat USA*, 2014 WL 12787643, at *8; *Cronic*, 2013 WL 12099477, at *4.

\* \* \*

In sum: "this Court was led down the garden path . . . when it accepted [Plaintiffs'] allegations in good faith."  *Keister*, 318 F.R.D. at 260.  Those allegations "turned out to be patently untrue," but Plaintiffs "chose to plead them anyway" in their Third Amended Complaint, near the close of discovery.  *Id*.  That alone could warrant sanctions.  *See Intelsat*, 2014 WL 12787643, at *8 (imposing sanctions because a plaintiff maintained "allegations in [an] amended [pleading] without adequate factual support").  But Plaintiffs have also continued to "advocate[]" their "frivolous claim[s]" "[after] discovery," *Cronic*, 2013 WL 12099477, at *4, by opposing Defendants' summary judgment motion.  Because Plaintiffs are continuing to advance these claims at summary judgment, well after "it became clear there was no evidentiary support for [them]," they are "subject to Rule 11 sanctions."  *Cronic*, 2013 WL 12099477, at *4.

For the foregoing reasons, Defendants respectfully ask this Court to impose sanctions.

9

Dated: December 2, 2022                                    Respectfully submitted,

                                                                          */s/ Terri L. Chase*
Terri L. Chase (*pro hac vice*)
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, Florida 33131
Ph: (305) 714-9700
Email: tlchase@jonesday.com

Traci Lovitt (Bar No. 467222)
JONES DAY
250 Vesey Street
New York, NY 10281
Ph: (212) 326-3939
Email: tlovitt@jonesday.com

Christopher DiPompeo (Bar No. 1003503)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Ph: (202) 879-3939
Email: cdipompeo@jonesday.com

Anderson T. Bailey (*pro hac vice*)
JONES DAY
500 Grant Street
Pittsburgh, PA 15219
Ph: (412) 391-3939
Email: atbailey@jonesday.com

*Attorneys for Defendants*