# SAVIGNAC DECLARATION

# EXHIBIT 1

No. 06-1595

# In the Supreme Court of the United States

---

VICKY S. CRAWFORD, PETITIONER

*v.*

METROPOLITAN GOVERNMENT OF NASHVILLE
AND DAVIDSON COUNTY, TENNESSEE

---

*ON WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT*

---

**BRIEF FOR THE UNITED STATES
AS AMICUS CURIAE SUPPORTING PETITIONER**

---

RONALD S. COOPER
  *General Counsel*
CAROLYN L. WHEELER
  *Acting Associate General
    Counsel*
JENNIFER S. GOLDSTEIN
  *Attorney*
  *Equal Employment
    Opportunity Commission
  Washington, D.C. 20507*

PAUL D. CLEMENT
  *Solicitor General
    Counsel of Record*
GRACE CHUNG BECKER
  *Acting Assistant Attorney
    General*
GREGORY G. GARRE
  *Deputy Solicitor General*
LISA S. BLATT
  *Assistant to the Solicitor
    General*
DENNIS J. DIMSEY
ANGELA M. MILLER
  *Attorneys*
  *Department of Justice
  Washington, D.C. 20530-0001
  (202) 514-2217*

### QUESTION PRESENTED

Whether, or to what extent, Title VII's anti-retaliation provision, Section 704(a) of the 1964 Civil Rights Act, 42 U.S.C. 2000e-3(a), protects an employee from being dismissed because she cooperated with her employer's internal investigation of sexual harassment.

(I)

**TABLE OF CONTENTS**

Page

Interest of the United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Summary of argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Argument:
    Title VII prohibits retaliation against an employee
    on the basis of her cooperation with an employer's
    internal investigation into suspected unlawful
    employment activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    A.   The opposition clause protects an employee
       who complains of unlawful employment
       activities during her employer's internal
       investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    B.   The participation clause protects an employee
       who participates in an employer's internal
       investigation into suspected unlawful
       employment activity . . . . . . . . . . . . . . . . . . . . . . . . . 16
    C.   Failing to protect employees who disclose
       unlawful activity during an employer's internal
       investigation would create an unwarranted gap
       in Section 704(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    D.   The EEOC's interpretation of Title VII's anti-
       retaliation provision warrants deference . . . . . . . . . . 29
Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**TABLE OF AUTHORITIES**

Cases:

    *Abbott* v. *Crown Motor Co.*, 348 F.3d 537 (6th Cir.
      2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 23
    *Alaska Dep't on Envt'l Conservantion* v. *EPA*, 540
      U.S. 461 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

(III)

IV

Cases—Continued:                                              Page

*Albemarle Paper Co.* v. *Moody*, 422 U.S. 405 (1975) . . . . . 19

*Aman* v. *Cort Furniture Rental Corp.*, 85 F.3d 1074
     (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ardestani* v. *INS*, 502 U.S. 129 (1991) . . . . . . . . . . . . 17, 18

*Armstrong* v. *Index Journal Co.*, 647 F.2d 441 (4th
     Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Beard* v. *Flying J, Inc.*, 266 F.3d 792 (8th Cir.
     2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Bell* v. *Safety Grooving & Grinding, LP*, 107 Fed.
     Appx. 607 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . 4, 12

*Booker* v. *Brown & Williamson Tobacco Co.*, 879
     F.2d 1304 (6th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . 23

*Bragdon* v. *Abbott*, 524 U.S. 624 (1998) . . . . . . . . . . . . . . . 30

*Brower* v. *Runyon*, 178 F.3d 1002 (8th Cir.
     1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Burlington Indus., Inc.* v. *Ellerth*, 524 U.S. 742
     (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 18, 19

*Burlington N. & Santa Fe Ry.* v. *White*, 126 S. Ct.
     2405 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 22, 25, 26

*Byers* v. *Dallas Morning News*, 209 F.3d 419 (5th
     Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Clark County Sch. Dist.* v. *Breeden*, 532 U.S. 268
     (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Dey* v. *Colt Constr. & Dev. Co.*, 28 F.3d 1446 (7th Cir.
     1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*EEOC* v. *Navy Fed. Credit Union*, 424 F.3d 397 (4th
     Cir. 2005), cert. denied, 547 U.S. 1041 (2006) . . . . . . . . 15

*EEOC* v. *Total Sys. Servs., Inc.*, 221 F.3d 1171 (11th
     Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

V

Cases—Continued:                                        Page

*Faragher* v. *City of Boca Raton*, 524 U.S. 775
(1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15, 18, 19

*Federal Express* v. *Holowecki*, 128 S. Ct. 1147
(2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Frederick* v. *Sprint/United Mgmt. Co.*, 246 F.3d 1305
(11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Gilooly* v. *Missouri Dep't of Health & Senior Servs.*,
421 F.3d 734 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . 15

*Harris* v. *Forklift Sys., Inc.*, 510 U.S. 17 (1993) . . . . . . . . 15

*Hechinger Inv. Co. of Del., Inc., In re*, 335 F.3d 243
(3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Jackson* v. *Birmingham Bd. of Educ.*, 544 U.S. 167
(2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Johnson* v. *University of Cincinnati*, 215 F.3d 561
(6th Cir.), cert. denied, 531 U.S. 1052
(2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15, 25

*Kolstad* v. *American Dental Ass'n*, 527 U.S. 526
(1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 18, 19

*Kotcher* v. *Rosa & Sullivan Appliance Ctr., Inc.*,
957 F.2d 59 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . 13

*Love* v. *RE/MAX of Am., Inc.*, 738 F.2d 383 (10th Cir.
1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*McDonnell* v. *Cisneros*, 84 F.3d 256 (7th Cir. 1996) . . . . . 25

*McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792
(1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*McKennon* v. *Nashville Banner Publ'g Co.*, 513 U.S.
352 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Meritor Sav. Bank, FSB* v. *Vinson*, 477 U.S. 57 (1986) . . 30

VI

Cases—Continued:                                          Page

*Mitchell* v. *Robert DeMario Jewelry, Inc.*, 361 U.S.
   288 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*NLRB* v. *Scrivener*, 405 U.S. 117 (1972) . . . . . . . . . . . 27, 28

*National R.R. Passenger Corp.* v. *Morgan*, 536 U.S.
   101 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*O'Neal* v. *Ferguson Constr. Co.*, 237 F.3d 1248 (10th
   Cir. 2001)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Ogden* v. *Wax Works, Inc.*, 214 F.3d 999 (8th Cir.
   2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Parker* v. *Baltimore & Ohio R.R*, 652 F.2d 1012 (D.C.
   Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Pastran* v. *K-Mart Corp.*, 210 F.3d 1201 (10th Cir.
   2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Payne* v. *McLemore's Wholesale & Retail Store*,
   654 F.2d 1130 (5th Cir. 1981), cert. denied,
   455 U.S. 1000 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Pennsylvania State Police* v. *Suders*, 542 U.S. 129
   (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Reed* v. *A.W. Lawrence & Co.*, 95 F.3d 1170 (2d Cir.
   1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Rollins* v. *Florida Dep't of Law Enforcement*,
   868 F.2d 397 (11th Cir. 1989)  . . . . . . . . . . . . . . . . . . . . . 15

*Russello* v. *United States*, 464 U.S. 16 (1987) . . . . . . . . . 17

*Skidmore* v. *Swift & Co.*, 323 U.S. 134 (1944) . . . . . . . . . . 30

*Trent* v. *Valley Elec. Ass'n*, 41 F.3d 524 (9th Cir.
   1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Valerio* v. *Putnam Assoc., Inc.*, 173 F.3d 35 (1st Cir.
   1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VII

Cases—Continued:                                                      Page

   *Vasconcelos* v. *Meese*, 907 F.2d 111 (9th Cir. 1990) . . . 23, 24

   *Wyatt* v. *City of Boston*, 35 F.3d 13 (1st Cir. 1994) . . . . . . 15

Statutes:

   Civil Rights Act of 1964, Tit. VII, 42 U.S.C. 2000e

      *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

      42 U.S.C. 2000e-3(a) (§ 704(a))  . . . . . . . . . . . *passim*

      42 U.S.C. 2000e-5(b)  . . . . . . . . . . . . . . . . . . . . . . . . 16

      42 U.S.C. 2000e-8(a) . . . . . . . . . . . . . . . . . . . . . . . . . 16

      42 U.S.C. 2000e-9 . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      42 U.S.C. 2000e-16 (2000 & Supp. V 2005) . . . . . . . . 1

   National Labor Relations Act, 29 U.S.C. 151 *et seq.*:

      29 U.S.C. 158(a)(4)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Miscellaneous:

   *American Heritage Dictionary* (1982) . . . . . . . . . . . . . . 9

   EEOC:

      2 EEOC Compl. Man. (BNA) (Mar. 2003) . . . . . . 9, 14

      2 EEOC Compl. Man., *Section 2: Threshhold*
      *Issues* (May 2000) <http://www.eeoc.gov/policy/
      docs/threshold.html> . . . . . . . . . . . . . . . . . . . . . . . . 29

      2 EEOC Compl. Man., *Section 8: Retaliation* (May
      20, 1998) <http://www.eeoc.gov/policy/docs/
      retal/pdf> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

      *EEOC Interpretive Manual, Reference Manual to*
      *Title VII Law for Compliance Personnel* (1972) . . . 13

VIII

Miscellaneous—Continued:                                    Page

*Enforcement Guidance on Vicarious Employer
Liability for Unlawful Harassment by Su-
pervisors*, 2 EEOC Compl.  Man. (BNA) Pt.
V(C)(1)(b) (Oct.  2002) . . . . . . . . . . . . . . . . . . . . . . 12, 20

Jathan W. Janove, *The* Faragher/Ellerth *Decision
Tree*, 48 HR Mag.  (Sept. 2003)  . . . . . . . . . . . . . . . . 19

*The New Shorter Oxford English Dictionary* (1993)  . . . 17

*Random House Dictionary of the English Language*
(2d ed. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Webster's Third New International Dictionary*
(1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# In the Supreme Court of the United States

No. 06-1595

VICKY S. CRAWFORD, PETITIONER

*v.*

METROPOLITAN GOVERNMENT OF NASHVILLE
AND DAVIDSON COUNTY, TENNESSEE

*ON WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT*

**BRIEF FOR THE UNITED STATES
AS AMICUS CURIAE SUPPORTING PETITIONER**

### INTEREST OF THE UNITED STATES

This case presents the question whether, and to what extent, Title VII's anti-retaliation provision, Section 704(a) of the 1964 Civil Rights Act, 42 U.S.C. 2000e-3(a), protects an employee from being dismissed because she cooperated with her employer's internal investigation of sexual harassment. The United States has a significant interest in the resolution of that question. The Attorney General enforces Title VII against public employers, and the Equal Employment Opportunity Commission (EEOC) enforces Title VII against private employers. In addition, Title VII applies to the federal government as an employer. See 42 U.S.C. 2000e-16 (2000 & Supp. V 2005). The United States, as the principal enforcer of

(1)

2

the civil rights laws and the Nation's largest employer, has a strong interest in the proper enforcement of Title VII.  At the Court's invitation, the United States filed a brief at the petition stage of this case.

## STATEMENT

1.  Petitioner worked as a payroll coordinator for respondent Metropolitan Government of Nashville and Davidson County, Tennessee, for over 30 years.  In the fall of 2001, respondent hired Dr. Gene Hughes as the Metro School District's employee relations director. Pet. App. 4a, 13a.  In 2002, respondent, in accordance with its formal anti-harassment policy, initiated an internal investigation into Hughes's conduct after a lawyer in respondent's Legal Department learned that several employees had "expressed concern about specific incidents of inappropriate behavior by Hughes." *Id.* at 4a.

The assistant director of human resources, Veronica Frazier, was assigned to investigate the allegations. Pet. App. 4a-5a.  As part of respondent's investigation, Frazier interviewed several employees who worked with Hughes, including petitioner.  *Id.* at 5a, 13a.  Petitioner informed Frazier that Hughes had sexually harassed her and other employees.  Specifically, petitioner reported that Hughes "had asked to see her titties on numerous occasions"; grabbed his genitals; "put his crotch up to [her] window"; and, once "came into her office" and, after petitioner "asked him about what she could do for him," Hughes "grabbed her head and pulled it to his crotch."  *Id.* at 5a n.1.

The investigation did not result in any disciplinary action against Hughes.  Respondent, however, subsequently fired petitioner and two other employees who

3

alleged during the investigation that Hughes engaged in sexually harassing behavior.  Pet. App. 5a.  Respondent claims it fired petitioner after accusing her of embezzlement and drug use but, according to petitioner, those accusations were unfounded.  *Id*. at 5a-6a.

2.  After filing a charge with the EEOC, petitioner filed the instant suit, alleging that respondent violated Title VII by firing her because she disclosed Hughes's sexually harassing behavior during the internal investigation.  Pet. App. 13a.  The district court granted summary judgment in favor of respondent on the ground that petitioner's participation in the internal investigation of Hughes was not conduct covered by Title VII's anti-retaliation provision, Section 704(a), 42 U.S.C. 2000e-3(a).  That provision makes it "an unlawful employment practice for an employer to discriminate against any of his employees  *  *  *  [1] because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  *Ibid*.  The first of the numbered clauses is known as the "opposition clause" and the second as the "participation clause."

The district court concluded that respondent's alleged retaliation did not fall within the ambit of either clause.  Relying on Sixth Circuit precedent, the district court concluded that petitioner's participation in her employer's investigation did not fall within Title VII's participation clause because respondent's investigation was not conducted pursuant to a pending EEOC charge. Pet. App. 15a.  The district court explained that "Title VII protects an employee's participation in an employer's internal investigation into allegations of unlaw-

4

ful discrimination *where that investigation occurs pursuant to a pending EEOC charge.*" *Ibid.* (quoting *Abbott* v. *Crown Motor Co.*, 348 F.3d 537, 543 (6th Cir. 2003)). The district court further held that petitioner's involvement in the internal investigation did not constitute opposition to an unlawful employment practice, because she "merely answered questions by investigators in an already-pending internal investigation, initiated by someone else." *Id.* at 16a. The court also explained that although petitioner alleges that she "fully cooperated with Metro's investigation" and "testified unfavorably" against Hughes in response to the investigators' questions, there was no allegation that she "instigated or initiated any complaint." *Id.* at 16a-17a. The district court thus concluded that petitioner's activity was not opposition within the meaning of Section 704(a). *Ibid.*

3. The court of appeals affirmed. Pet. App. 3a-10a. The Sixth Circuit first concluded that petitioner's actions were not protected under Section 704(a)'s opposition clause. In so holding, the court stated that "[t]he general idea is that Title VII 'demands active, consistent "[o]pposing" activities to warrant . . . protection against retaliation.'" *Id.* at 7a (quoting *Bell* v. *Safety Grooving & Grinding, LP*, 107 Fed. Appx. 607, 610 (6th Cir. 2004), and citing *Johnson* v. *University of Cincinnati*, 215 F.3d 561, 579 (6th Cir.), cert. denied, 531 U.S. 1052 (2000)). The court further reasoned that petitioner's actions in "relating unfavorable information about Hughes" during the investigation did not qualify as "overt opposition" protected under the statute, because petitioner "does not claim to have instigated or initiated any complaint prior to her participation in the investigation, nor did she take any further action

5

following the investigation and prior to her firing." *Id.* at 7a-8a.

The court of appeals next concluded that petitioner's actions were not protected under Section 704(a)'s participation clause. Pet. App. 8a. The court reasoned that Title VII protects an employee's participation in an employer's internal investigation into allegations of unlawful discrimination only when that investigation occurs pursuant to a pending EEOC charge. *Ibid.* In this case, the court explained, "no EEOC charge had been filed at the time of the investigation or prior to her firing." *Ibid.*

4. The court of appeals denied rehearing. Pet. App. 1a-2a.

### SUMMARY OF ARGUMENT

Title VII prohibits an employer from retaliating against an employee who discloses unlawful activity during her employer's internal investigation. Such retaliation comes within the ambit of both clauses of Title VII's anti-retaliation prohibition, and there is no reason that Congress would have countenanced the inexplicable gap in Title VII's enforcement scheme created by the court of appeals.

A. Section 704(a)'s opposition clause is written in broad terms that gives effect to its critical enforcement objectives. When an employer asks an employee, as part of an internal investigation designed to root out alleged unlawful employment practices, to disclose instances of inappropriate conduct by a supervisor, and when the employee in turn discloses unwelcomed and unlawful employment practices, that employee has "opposed" conduct made unlawful by Title VII. The employee is thus protected from retaliation under Title

6

VII's opposition clause.  Nothing in that clause restricts protection to only those employees who either initiated the discussion with their employer or who took further action beyond complaining to their employer during the investigation, and reading that limitation into the clause would be at odds with the purpose of the statute and its enforcement scheme.

B. Section 704(a)'s participation clause also protects an employee's participation in an employer-initiated investigation into unlawful employment practices.  Congress's expansive use of "investigation, proceeding, or hearing" reflects that Congress intended to cover the gamut of situations in which an employee might be asked to participate.  An employer-initiated investigation designed to detect discrimination prohibited by Title VII is reasonably construed to be an investigation "under" Title VII.  42 U.S.C. 2000e-3(a).  Employers must conduct such investigations to avoid liability under this Court's decisions in *Faragher* v. *City of Boca Raton*, 524 U.S. 775 (1998), *Burlington Industries, Inc.* v. *Ellerth*, 524 U.S. 742 (1998), and *Kolstad* v. *American Dental Ass'n*, 527 U.S. 526 (1999).  Such investigations are an integral part of Title VII's framework and accordingly are fairly viewed as being subject to and governed by Title VII.

Conditioning protection under the participation clause on the filing of an EEOC charge would lead to the perverse result of requiring employers to conduct internal investigations to identify potentially unlawful employment practices so that the employer may avoid liability under Title VII, but denying the full protections of Title VII to the witnesses who participate in those investigations.  Such a result is inconsistent with Title VII's central objective to prevent and deter harm.  At a

7

minimum, the court of appeals erred in concluding that Congress intended to leave petitioner unprotected by *both* clauses. A complaining witness needs protection against retaliation for providing candid information to the employer during an internal investigation regardless of whether a charge has been filed at the time of the employee's participation in the investigation.

C. Congress did not intend to leave an unjustified and inexplicable gap in Section 704(a)'s coverage by failing to provide protection against retaliation to employees who disclose unlawful conduct during an employer-initiated investigation. Internal investigations are an integral aspect of Title VII, and there is no reason to leave complaining witnesses unprotected. Title VII's enforcement depends on participation and truthful cooperation by employees during employer-sponsored investigations. If employees are afraid to report instances of harassment or to participate in employer investigations out of fear of retaliation, employers may not become fully aware of harassment, thereby preventing them from taking corrective action.

Moreover, by virtue of this Court's decisions, recovery by employees and liability for employers can turn on the existence of the adoption of internal complaint policies and the extent to which the employee avails herself of such procedures. Those internal procedures can give effect to Title VII's enforcement scheme, as intended by this Court's decisions, only if employees who give candid testimony are protected against retaliation.

D. The EEOC's reasonable interpretation of Section 704(a)'s protective reach is entitled to a measure of deference. EEOC's interpretation is embodied in its Compliance Manual and has been embraced in litigation. The agency's interpretation not only squares with the

8

text of the statute for the reasons summarized above, but reflects the EEOC's considered and expert judgment that anti-retaliation protection for employees in petitioner's position is critical to the effective enforcement of Title VII.  To the extent that the Court has doubt about the reach of the language used by Congress, it should give effect to the longstanding interpretation of the EEOC that Section 704(a) extends to the circumstances presented by this case.

ARGUMENT

**TITLE VII PROHIBITS RETALIATION AGAINST AN EMPLOYEE ON THE BASIS OF HER COOPERATION WITH AN EMPLOYER'S INTERNAL INVESTIGATION INTO SUSPECTED UNLAWFUL EMPLOYMENT ACTIVITIES**

Title VII expressly prohibits employers from retaliating against employees who report or complain about unlawful discrimination in the workplace.  The opposition clause of Title VII's anti-retaliation provision protects an employee who has "opposed" an employment practice made unlawful by Title VII, and  the participation clause of that provision protects an employee who has "participated in any manner in an investigation * * * under [Title VII]."  42 U.S.C. 2000e-3(a).  Both of those clauses protect an employee's disclosure of discriminatory acts during an employer's internal investigation into suspected sexual harassment in the workplace.  The court of appeals' contrary conclusion that *neither* clause of Section 704(a) protects petitioner creates an inexplicable enforcement gap in Title VII's protection against retaliation that conflicts with the text and purposes of Section 704(a) and the considered views of the EEOC.  In part because of this Court's own decisions interpreting Title VII, internal investigations are

9

increasingly an integral aspect of Title VII and there is
no reason to hold that complaining and cooperating wit-
nesses in such circumstances are left unprotected by
Title VII's anti-retaliation provision.

### A. The Opposition Clause Protects An Employee Who Complains Of Unlawful Employment Activities During Her Employer's Internal Investigation

Section 704(a)'s opposition clause is written in broad
terms that give effect to its important remedial objec-
tives. It protects an employee from retaliation because
she has "opposed any practice made an unlawful em-
ployment practice" by Title VII. 42 U.S.C. 2000e-3(a).
Properly construed, that clause protects an employee
who, during an employer-initiated internal investigation
into suspected unlawful employment practices, communi-
cates to her employer a reasonable belief that she was
the victim of an unlawful employment practice.

1. The plain meaning of the word "oppose" is "to be
hostile or adverse to, as in opinion." *Random House
Dictionary of the English Language* 1359 (2d ed. 1987);
*American Heritage Dictionary* 872 (1982) ("[t]o be in
contention or conflict with" or "[t]o be resistant to").
When an employee communicates to her employer a
belief that the employer has engaged in activity that
constitutes a form of employment discrimination, that
communication constitutes the employee's *opposi-
tion* to the activity. See 2 EEOC Compl. Man. (BNA)
§ 8-II(B)(1), at 614:0003 (Mar. 2003) (opposition clause
"applies if an individual explicitly or implicitly communi-
cates to his or her employer or other covered entity a
belief that its activity constitutes a form of employment
discrimination"); *id.* § 8-II(B)(2), at 614:0003 (protected
opposition occurs when a "complaint would reasonably

10

[be] interpreted as opposition to employment discrimi-
nation"). Cooperation with an employer's internal in-
vestigation is by no means incompatible with opposition
to the subject of that investigation. An employee's dis-
closure of *unlawful* activity in response to the em-
ployer's investigation to root out unlawful activity is
reasonably—and naturally—viewed as opposition to
that activity. Title VII was undoubtedly written against
the common sense understanding that no reasonable
employee welcomes discrimination in the workplace,
especially when it is directed at the employee herself,
and that declarations that a supervisor engaged in, for
example, sexual harassment, constitutes opposition to
that activity (much the same way statements covering it
up would be viewed as supporting the activity).

This case well illustrates the point. Respondent in-
itiated an investigation after several employees ex-
pressed concern about sexual harassment by Hughes.
Pet. App. 4a. Petitioner was interviewed as part of that
investigation, and was asked in the investigation to re-
port "any *inappropriate* behavior by Mr. Hughes." C.A.
App. 46 (Dep. of Vicki Crawford) (emphasis added); ac-
cord *id.* at 47. Petitioner then made unmistakably clear
that Hughes's conduct was unwelcomed as she report-
ed that she had "*felt very uncomfortable* around Mr.
Hughes" because he "would grab himself" whenever she
would speak to him. *Id.* at 44 (emphasis added). Peti-
tioner also reported that Hughes would respond to her
question of "what's up?" by grabbing his crotch and say-
ing "you know what's up," *id.* at 45; that he would knock
on the window to her office and would press his crotch
to the window, *ibid.*; that at times, "he would come to
[her] window  *  *  *  and would say, "Let me see your
titties," *ibid.*; and that he once walked into her office,

11

and when she asked how could she help him, "he grabbed her head and pulled it to his crotch." Pet. App. 5a n.1. Particularly given respondent's request to disclose Hughes's inappropriate behavior, petitioner's specific responses establish her reasonable belief that the conduct she described was unwelcomed and unlawful.

Moreover, petitioner's disclosure during the interview of such reprehensible conduct unmistakably communicated her opposition to Hughes's conduct. After recounting such graphic and obviously inappropriate acts against her in response to a request to report inappropriate behavior, petitioner was not required to make explicit that she opposed such conduct before coming within Section 704(a)'s protection. The nature of the conduct described and the setting of the internal investigation sufficed to register petitioner's opposition to the conduct. Certainly, Hughes could have reasonably perceived it as such. Indeed, the record reflects that petitioner reasonably believed that by reporting Hughes's misconduct during a formal investigation, she had "testified *against*" Hughes. C.A. App. 47; accord Pet. App. 5a ("According to petitioner, she believed that she was exercising her rights under federal law when she informed Frazier of Hughes's actions."). And in any event, the Congress that passed Title VII would have assumed that employees who reported such misconduct *opposed* such misconduct. Petitioner's recital during the course of her employer's investigation of specific instances of conduct by Hughes that she reasonably believed to be unlawful was therefore protected activity under the opposition clause.

2. The court of appeals believed that the opposition clause "demands active, consistent '[o]pposing' activities to warrant * * * protection against retaliation." Pet.

12

App. 7a (quoting *Bell*, *LP*, 107 Fed. Appx. at 610). But Section 704(a) protects employees who "oppose[]" unlawful practices; the terms "active" and "consistent" nowhere appear in the text of the statute. Indeed, no other circuit has adopted such a circumscribed interpretation of Section 704(a)'s opposition clause. The court of appeals likewise engrafted an extra-textual gloss on the statute by holding that petitioner was not covered by the opposition clause because respondent initiated the interview in which petitioner complained of Hughes's harassing conduct. *Ibid.* Whether an employee receives protection under Title VII's anti-retaliation provision does not depend on who initiated the interview in which the employee complained of unlawful conduct. The statutory touchstone is opposition, not initiation.

The court of appeals' initiation requirement ignores the practical reality that many employees do not *initiate* complaints of discrimination precisely because they fear retaliation. *Enforcement Guidance on Vicarious Employer Liability for Unlawful Harassment by Supervisors*, 2 EEOC Compl. Man. (BNA) Pt. V(C)(1)(b) at 615:0108 n.59 (Oct. 2002) ("Surveys have shown that a common reason for failure to report harassment to management is fear of retaliation * * * [and] a significant proportion of harassment victims are worse off after complaining."); see, *e.g.*, C.A. App. 47 (petitioner's testimony that "I felt afraid that if I testified against him * * * I would lose my job").

Moreover, regardless of why an employee did not initiate a complaint earlier, Title VII protects employees who do so as part of an internal investigation. Although Title VII encourages all employees to report unlawful employment practices, it does not discriminate against those who (for whatever reason) wait to report unlawful

13

practices in the context of an employer investigation. Accordingly, the relevant inquiry in this context is whether the employer reasonably should have understood that the employee was disclosing an employment practice made unlawful by Title VII. 2 EEOC Compl. Man. (BNA) § 8-II(B)(2) (Mar. 2003); accord *EEOC Interpretive Manual, Reference Manual to Title VII Law for Compliance Personnel* § 493.2 (1972) (individual protected from retaliation if "the circumstances surrounding the complaints were such that [the employer] knew or should have known that [the individual] was complaining about Title VII discrimination."). When that criteria is satisfied, Title VII protects the employee against retaliation for her disclosure.

For the same reasons, Section 704(a) does not require an employee to take "further action" in opposition beyond complaining about unlawful activity to an employer. Pet. App. 7a. Voicing opposition to an employer about suspected unlawful activity constitutes protected opposition, whether or not she has filed a formal or informal complaint. See, *e.g.*, *Kotcher* v. *Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992) (opposition encompasses an individual's complaints to supervisors regardless of whether she also files an EEOC charge); *Pastran* v. *K-Mart Corp.*, 210 F.3d 1201, 1205 (10th Cir. 2000) (same); *Rollins* v. *Florida Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) (opposition clause protects "those * * * who informally voice complaints to their supervisors"); *Armstrong* v. *Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981) (same). Here again, the statutory trigger is "opposi[tion]"; the statute does not require an employee to take further action, such as filing a formal complaint, *in addition to* expressing her opposition to discriminatory conduct.

14

Contrary to respondent's suggestion, requiring an employee to engage in "affirmative action," beyond complaining about unlawful employment action during an employer-initiated interview, is not necessary to prevent the opposition clause from "entirely supplant[ing] the participation clause." Supp. Br. 10 n.10. The participation clause covers any employee who participated "in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. 2000e-3(a). The clause therefore protects an employee even if she does not oppose an employment practice, and even if she does not complain about conduct made unlawful under Title VII. 2 EEOC Compl. Man. (BNA) § 8-II(C)(2) (Mar. 2003). Moreover, the notion that both clauses of Section 704(a) are written expansively reflects Congress's intent to ensure broad protection against retaliation, not an effort to identify two mutually exclusive or hermetically sealed sub-species of retaliation.

3. Under the opposition clause, the employee must have at least a *reasonable* belief that the conduct she is opposing is unlawful under Title VII. 2 EEOC Compl. Man. (BNA) § 8-II(B)(3)(b) (Mar. 2003) ("A person is protected against retaliation for opposing perceived discrimination if s/he had a reasonable and good faith belief that the opposed practices were unlawful."). The courts of appeals uniformly have endorsed that view and have held that the protections of Section 704(a) are not limited to those employees who have opposed a practice that is ultimately adjudged to be unlawful, but rather to those employees who oppose a practice they reasonably believe to be unlawful.[1]

---

[1] See, *e.g.*, *Parker* v. *Baltimore & Ohio R.R.*, 652 F.2d 1012, 1020 (D.C. Cir. 1981); *Wyatt* v. *City of Boston*, 35 F.3d 13, 15 (1st Cir. 1994);

15

According to petitioner, Hughes's conduct towards her was frequent and humiliating, and his explicit demands to "see your titties" and his act of grabbing her head and "pull[ing] it to his crotch," C.A. App. 44 (Dep. of Vicki Crawford), Pet. App. 5a n.1, obviously went well beyond "simple teasing." *Faragher*, 524 U.S. at 788; cf. *Clark County Sch. Dist.* v. *Breeden*, 532 U.S. 268, 271 (2001) ("single incident" in which co-workers "chuckl[ed]" at job applicant's sexual statement was "at worst an 'isolated inciden[t]' that cannot remotely be considered 'extremely serious'") (brackets in original) (quoting *Faragher*, 524 U.S. at 788. A reasonable person in petitioner's position could believe that Hughes's conduct was sufficiently severe or pervasive to create an abusive working environment and thus constituted an employment practice made unlawful under Title VII. *Harris* v. *Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

---

*Reed* v. *A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996); *Aman* v. *Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996); *EEOC* v. *Navy Fed. Credit Union*, 424 F.3d 397, 406-407 (4th Cir. 2005), cert. denied, 547 U.S. 1041 (2006); *Payne* v. *McLemore's Wholesale & Retail Store*, 654 F.2d 1130, 1138-1139 (5th Cir. 1981), cert. denied, 455 U.S. 1000 (1982); *Johnson*, 215 F.3d at 579-580; *Dey* v. *Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1457-1458 (7th Cir. 1994); *Gilooly* v. *Missouri Dep't of Health & Senior Servs.*, 421 F.3d 734, 742 (8th Cir. 2005); *Trent* v. *Valley Elec. Ass'n*, 41 F.3d 524, 526-527 (9th Cir. 1994); *Love* v. *RE/MAX of Am., Inc.*, 738 F.2d 383, 385 (10th Cir. 1984); *Rollins*, 868 F.2d at 400; cf. *Clark County Sch. Dist.* v. *Breeden*, 532 U.S. 268, 270 (2001) (declining to consider the issue but holding that employee's conduct was not protected opposition because "no one could reasonably believe" that the behavior the employee opposed was unlawful under Title VII).

16

### B. The Participation Clause Protects An Employee Who Participates In An Employer's Internal Investigation Into Suspected Unlawful Employment Activity

The participation clause protects an employee against retaliation for her participation in "an investigation, proceeding, or hearing under this subchapter," *i.e.*, under Title VII. Congress's use of the phrase "investigation, proceeding, or hearing" indicates that it intended this clause to have great breadth as to the types of situations in which it would apply. And an employer-initiated investigation designed to detect or root out discrimination prohibited by Title VII is an investigation "under" the statute. The court of appeals erred when it held that Section 704(a)'s participation clause is limited to disclosures during an employer's internal investigation that occur only after the filing of an EEOC charge.

1. There is no basis for limiting the phrase "investigation * * * under this subchapter" to investigations conducted by the EEOC, and no court of appeals—including the Sixth Circuit in this case—has limited the statute in that fashion. In addition, Congress elsewhere in Title VII used language making clear its intent to address only investigations conducted by the Commission. See 42 U.S.C. 2000e-5(b) ("the Commission * * * shall make an investigation" of a charge), 2000e-8(a) (the Commission shall have access to evidence relating to unlawful employment practices "[i]n connection with any investigation of a charge"), and 2000e-9 (referring to "hearings and investigations conducted by the Commission or its duly authorized agents or agencies"). The fact that Congress did not use such Commission-specific language in Section 704(a) suggests that employer-initi-

17

ated investigations into conduct proscribed by Title VII would be covered. See *Burlington N. & Santa Fe Ry.* v. *White*, 126 S. Ct. 2405, 2412 (2006) ("We normally presume that, where words differ as they differ here, 'Congress acts intentionally and purposely in the disparate inclusion or exclusion.'") (quoting *Russello* v. *United States*, 464 U.S. 16, 23 (1983)).

Here, the court of appeals did *not* attempt to limit the participation clause to EEOC's own investigations, but *did* limit it to internal investigations that follow an employee's filing of a charge with the EEOC. There is no textual basis for that limitation. Nothing in the statute's text indicates that protection under the participation clause applies *only* if an EEOC charge has been filed. To the contrary, while the statute explicitly extends to employees who file a "charge," it goes on to state that it applies as well to employees who "participated *in any manner* in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. 2000e-3(a) (emphasis added).

An employer-initiated investigation in response to allegations of conduct made unlawful by Title VII is an investigation "under" Title VII. The ordinary meaning of the word "under" in the context of a statute is "subject to" or "governed by" the statute in question. *Ardestani* v. *INS*, 502 U.S. 129, 135 (1991); see *The New Shorter Oxford English Dictionary* 3469 (1993) ("Subject to the authority, control, direction, or guidance of."); *Webster's Third New International Dictionary* 2487 (1986) ("required by: in accordance with: bound by"); *In re Hechinger Inv. Co. of Del., Inc.*, 335 F.3d 243, 252 (3d Cir. 2003) (Alito, J.) ("When an action is said to be taken 'under' a provision of law  *  *  *, what is generally

18

meant is that the action is 'authorized' by the provision of law."). This Court's precedents interpreting Title VII leave no doubt that such investigations occur "under" Title VII because such investigations are subject to or governed by Title VII. See *Ardestani*, 502 U.S. at 135.

In a series of cases, this Court has held that Title VII imposes an affirmative duty on employers to investigate allegations of sexual harassment to avoid liability under the statute. For example, the Court in *Faragher* and *Ellerth* held that an employer can assert an affirmative defense to avoid vicarious liability for its supervisor's unlawful employment actions that do not result in a tangible employment action if (1) "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer." *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765. Likewise, in *Kolstad*, 527 U.S. at 545-546, the Court held that an employer could avoid punitive damages under Title VII by showing that the supervisor was acting contrary to the employer's good faith efforts to comply with Title VII.

The decisions in *Faragher*, *Ellerth*, and *Kolstad* thus create strong incentives for employers to implement policies and procedures that would identify and correct instances of unlawful discrimination as a means to avoid liability or limit damages under Title VII. Not surprisingly, employers have responded to the decisions by implementing or expanding their policies and internal complaint procedures. Pet. Br. 24-28; see, *e.g.*, Amicus Chamber of Commerce Br. at 2, *Pennsylvania State Police* v. *Suders*, 542 U.S. 129 (2004) (No. 03-95) ("Fol-

19

lowing this Court's decisions in *Faragher* and *Ellerth*
* * *, employers have made great strides in  * * *
implementing zero-tolerance policies, establishing user-
friendly, effective internal complaint procedures, and
vigorously investigating complaints of sexual and other
harassment in the workplace."); Jathan W. Janove, *The*
Faragher/Ellerth *Decision Tree*, 48 HR Mag. (Sept.
2003) ("There is no question that [*Faragher* and *Ellerth*]
have increased employer understanding of the impor-
tance of preventive measures.  They have contributed to
the development of sound anti-harassment policies [and]
procedures.").

When an employer conducts an internal investigation
into whether a Title VII violation has occurred, either
before or after the filing of an EEOC charge, the em-
ployer not only ensures that it qualifies for the affirma-
tive defense recognized by this Court's Title VII cases,
but also acts in conformity with Title VII's central ob-
jective to prevent and deter harm.  See *Faragher*, 524
U.S. at 806 (Title VII's "'primary objective,' like that of
any statute meant to influence primary conduct, is not
to provide redress but to avoid harm.") (quoting *Albe-
marle Paper Co.* v. *Moody*, 422 U.S. 405, 417 (1975));
*Ellerth*, 524 U.S. at 764 ("Title VII is designed to en-
courage the [employer's] creation of antiharassment
policies and effective grievance mechanisms."); *Kolstad*,
527 U.S. at 546 (recognizing "Title VII's objective of mo-
tivat[ing] employers to detect and deter Title VII viola-
tions"); accord *McKennon* v. *Nashville Banner Publ'g
Co.*, 513 U.S. 352, 358 (1995).

Those principles also make clear that an employer's
investigation into allegations of illegal conduct take
place under Title VII's framework.  Such an investiga-

tion is a fundamental and indispensable component of an employer's good faith efforts to comply with Title VII through the development and implementation of anti-harassment policies and complaint procedures. See *Enforcement Guidance on Vicarious Employer Liability for Unlawful Harassment by Supervisors,* 2 EEOC Compl. Man. (BNA) Pt. V(C)(1), at 615:0107 (Oct. 2002) ("An anti-harassment policy and complaint procedure should contain, at a minimum * * * [a] complaint process that provides a prompt, thorough, and impartial investigation."). Accordingly, such investigations are subject to review in Title VII actions to ensure compliance with the employer's obligations as envisioned by this Court's decisions.[2]

In light of the importance of the internal investigation process to Title VII liability, it would make no sense to interpret the participation clause to leave employees unprotected in that process. Employee cooperation is essential to making such internal investigations effective, yet employee cooperation will hardly be forthcoming if employees are unprotected against retaliation in the event they disclose that their supervisors have engaged in unlawful practices. Without such protection, employees will avoid negative comments about

---

[2]  See, *e.g.*, *Beard* v. *Flying J, Inc.*, 266 F.3d 792, 799 (8th Cir. 2001) (no affirmative defense where employer interviewed only alleged harasser and victim, and not other employees who could have told of harassment, and where investigation ended only with warning to harasser); *Frederick* v. *Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1314-1315 (11th Cir. 2001) (employer must act in reasonably prompt manner to respond to complaint); *Ogden* v. *Wax Works, Inc.*, 214 F.3d 999,  1007 (8th Cir. 2000) (no affirmative defense where employer performed cursory investigation that culminated with forcing plaintiff to resign, rather than imposing discipline on harasser).

21

their supervisors and the internal investigation will be robbed of its value. Because employer-initiated investigations attendant to an employer's anti-harassment policies and procedures are integral to achieving the statutory goals of promoting employer compliance and avoiding harm, and because those internal investigations will not perform the function envisioned by *Faragher* and *Ellerth* if the candor of cooperating employees is unprotected, such investigations are fairly considered to be conducted "under" Title VII.

2. In light of those principles, when respondent's legal department launched an investigation into Hughes's conduct, employees cooperating in that investigation participated in an investigation "under" Title VII and were entitled to protection under the participation clause. Whether or not a victim of Hughes's conduct had filed a formal charge at the point of petitioner's interview does not change the fact that the investigation was within the purview of Title VII. Indeed, if one of respondent's employees sued respondent based on Hughes's conduct, respondent presumably would point to the investigation as part of its defense to vicarious liability. In such a case, respondent's defense under *Faragher* and *Ellerth* would not turn on whether the charge had been filed before petitioner's interview. Employers should not be permitted to use such an investigation as a shield to liability under Title VII while at the same insisting that the absence of an EEOC charge precludes any liability to retaliation for participation in the very same investigation.

Conditioning protection against retaliation on the filing of an EEOC charge would lead to the perverse result of requiring employers to conduct internal inves-

22

tigations to identify potentially unlawful employment practices (even in the absence of formal EEOC charges having been filed), but denying the full protections of Title VII to the witnesses who participate in those investigations and assist their employers in uncovering potentially unlawful employment practices. Such a result would flout the purposes of a statute that "depends for its enforcement upon the cooperation of employees who are willing to * * * *act as witnesses*," and accordingly whose anti-retaliation provision must be interpreted "to provide *broad* protection from retaliation" to "assure [employee] cooperation." *White*, 126 S. Ct. at 2414 (emphasis added).

The court of appeals' construction of the participation clause, particularly when coupled with the court's crabbed construction of the opposition clause, would also permit employers to use investigations under facially appropriate anti-harassment policies as a means of identifying and rooting out employees who have knowledge of discrimination in the workplace, as opposed to identifying and fostering action against those who discriminate. Cf. *Valerio* v. *Putnam Assoc., Inc.*, 173 F.3d 35, 43 (1st Cir. 1999) (limiting the protections of the anti-retaliation provision of the Fair Labor Standards Act to filing of judicial or agency complaints "would have the bizarre effect of both discouraging early settlement attempts and creating an incentive for the employer to fire an employee as soon as possible after learning the employee believed he was being treated illegally"). Indeed, in this case, the employer fired three of the witnesses (including petitioner) who cooperated with the investigation, but ultimately allowed the

23

subject of the investigation (Mr. Hughes) to remain in place.  Pet. App. 5a.

For similar reasons, the court of appeals erred in concluding that protecting petitioner from retaliation under Section 704(a)'s participation clause would unjustifiably burden employers who "proactively" launch an investigation before an EEOC charge is filed.  Pet. App. 10a.  As discussed, this Court's decisions require proactive efforts on the part of employers regardless of whether an employee has instituted formal proceedings with the EEOC arising out of the conduct under investigation.  In any event, employers have no legitimate interest in retaliating against employees who disclose conduct made unlawful under Title VII, either *before or after* an EEOC charge is filed.  And, indeed, employers interested in rooting out discrimination in the workplace will suffer themselves if employees do not participate in the internal complaint and investigation process out of fear of retaliation.

3.  The court of appeals' conclusion that the participation clause protects an employee's participation in an investigation only *after* the filing of an EEOC charge comports with decisions of other circuits to have considered the issue.  *Abbott*, 348 F.3d at 543; *EEOC* v. *Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000); *Byers* v. *Dallas Morning News*, 209 F.3d 419, 428 (5th Cir. 2000); *Brower* v. *Runyon*, 178 F.3d 1002, 1006 (8th Cir. 1999); *Vasconcelos* v. *Meese*, 907 F.2d 111, 113 (9th Cir. 1990); *Booker* v. *Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989).  Those decisions generally have reasoned that the participation clause should be construed to protect only those employees "who utilize[] the tools provided by Congress to protect

24

[their] rights" and "to protect [employees'] access to machinery under Title VII." See, *e.g.*, *Meese*, 907 F.2d at 113; accord *Runyon*, 178 F.3d at 1006 ("The participation clause is designed to ensure that Title VII protections are not undermined by retaliation against employees who use the Title VII process to protect their rights."). But that construction ignores the reality that Title VII's anti-retaliation provision protects witnesses just as much as the direct victims of discrimination and that internal investigations are an integral part of Title VII—whether or not a charge has been filed with the EEOC.

The Eleventh Circuit in *Total System Services*, 221 F.3d at 1174 n.3, also reasoned that Congress did not intend "to protect absolutely every sexual harassment complaint made to an employer * * * as a protected activity under the participation clause," because doing so would render the opposition clause "largely meaningless." That is not correct. As noted earlier, p. 14, *supra*, giving the participation and opposition clauses their natural breadth does not render either clauses superfluous. Employees may engage in a wide variety of "opposing" conduct independent of participating in an investigation, such as complaining to "management, unions, other employees, or newspapers[] about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer—*e.g.*, former employers, union, and co-workers." *Johnson*, 215 F.3d at 579-580; accord 2 EEOC Compl. Man. *Section 8: Retaliation* (May 20, 1998) <http://

25

www.eeoc.gov/policy/docs/retal.pdf>.[3]  In any event, as
also noted earlier, p. 14, *supra*, the two subsections of
Section 704(a), are best read, not as a mutually exclusive
sub-species of retaliation, but as complementing provi-
sions designed to ensure that all retaliation that could
reasonably deter the filing of Title VII complaints is
prohibited.  The approach of the court of appeals ig-
nores that notion and creates an inexplicable enforce-
ment gap in the statute.

### C. Failing To Protect Employees Who Disclose Unlaw-ful Activity During An Employer's Internal Investiga-tion Would Create An Unwarranted Gap In Section 704(a)

1.  Protecting employees from retaliation for disclos-
ing unlawful conduct during an employer-initiated in-
vestigation is necessary to ensure the effective enforce-
ment of Title VII.  In that regard, the decision below
creates an inexplicable gap in Title VII's anti-retaliation
provision.  In light of the integral role internal investi-
gations play in Title VII even before a charge is filed, it
makes no sense to conclude that Congress intended to
leave employees protected by *neither* clause of Section
704(a).

As this Court recently explained in *White*, 126 S. Ct.
at 2412, the purpose of the anti-retaliation provision is
to secure a discrimination-free workplace "by preven-
ting an employer from interfering (through retaliation)

---

[3]  The opposition clause thus covers, inter alia, sending letters to em-
ployers objecting to certain employment practices, *O'Neal* v. *Ferguson
Constr. Co.*, 237 F.3d 1248, 1255 (10th Cir. 2001); *Johnson*, 215 F.3d
at 579-580, and failing to deter a subordinate from filing a complaint,
*McDonnell* v. *Cisneros*, 84 F.3d 256, 262 (7th Cir. 1996).

26

with an employee's efforts to secure or advance enforcement of [Title VII's] basic guarantees."  Title VII thus "forbids discrimination against * * * employees for attempting to protest or correct allegedly discriminatory conditions of employment."  *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 796 (1973).  This Court's precedents accordingly hold that Title VII should be interpreted to "assure * * * cooperation" from employees in achieving Title VII's objectives.  *White*, 126 S. Ct. at 2414.

Effective enforcement of Title VII's protections depends "upon the cooperation of employees who are willing to * * * act as witnesses" and who feel "free to approach officials with their grievances."  *White*, 126 S. Ct. at 2414 (quoting *Mitchell* v. *Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)); cf. *Jackson* v. *Birmingham Bd. of Educ.*, 544 U.S. 167, 180 (2005) (explaining that if retaliation were permitted, "individuals who witness discrimination would be loath to report it," and the discriminatory conduct "might go unremedied as a result").  In the absence of protection against retaliation, witnesses and victims naturally would be reluctant to participate in an investigation into unlawful conduct, which, in turn, would undermine Title VII's purpose to spur employers' efforts to deter and detect unlawful discrimination in the workplace.

The court of appeals' decision unjustifiably puts an employee asked to disclose specific incidents of unlawful discrimination in a pre-charge internal investigation in an untenable position.  The employee risks retaliation for disclosing the unlawful activity or for refusing to cooperate with the employer's investigation.  The only safe course for the employee would be to provide only inno-

27

cuous information about the supervisor, even when dis-
crimination is rampant.  There is no reason to believe
that Congress intended to place employees in that posi-
tion.  Nor is there any reason to believe that Congress
intended to create a system in which employees have a
*disincentive*—*i.e.*, the possibility of retaliation not cov-
ered by Title VII—to cooperate with ongoing investiga-
tions designed to root out discrimination and, thus,
avoid potential liability under Title VII.  The statutory
scheme can work as intended only if persons feel secure
in reporting discrimination when they believe it exists,
and that sense of security is unlikely in the absence of
adequate protection against retaliation.

   This Court's decision in *NLRB* v. *Scrivener*, 405 U.S.
117 (1972), is instructive.  In *Scrivener*, this Court con-
strued the National Labor Relations Act's anti-retalia-
tion provision, which prohibited retaliation against an
employee "because he has filed charges or given testi-
mony under this subchapter," 29 U.S.C. 158(a)(4), to
protect an employee who cooperated with a preliminary
investigation by the National Labor Relations Board in-
to an unfair labor practice charge, but who did not file
the charge or testify at a formal hearing on the charge.
The Court explained that interpreting the statute to
protect those employees who participate in an investi-
gation's preliminary stages "squares with the practical-
ities" of the investigative process, *Scrivener*, 405 U.S. at
123, and that "[w]hich employees receive statutory pro-
tection should not turn on  *  *  *  events that have no
relation to the need for protection," *id*. at 123-124.  That
reasoning similarly applies here:  protecting employees
who disclose unlawful employment practices during an
employer's internal investigation only if and after an

28

EEOC charge has been filed leaves an inexplicable gap in Title VII's protective reach for reasons that are not tethered to the statutory text and are wholly unrelated to the need for protection.

This Court in *Scrivener* also reasoned that failing to protect employees who participate in the investigative stage is necessary "to prevent the Board's channels of information from being dried up by employer intimidation of prospective complainants and witnesses." 405 U.S. at 122. That concern is present here as well: if employers are free to retaliate against witnesses in internal investigations, at least until a charge has been filed, employees who are intimidated from disclosing unlawful employment practices during an employer-conducted investigation may well be reluctant to vary from what they disclosed to the employer if later approached by the EEOC after a charge has been filed. Such employees may continue to be reluctant to speak candidly out of fear that their truthfulness will be questioned or that they will be accused of withholding information in the initial investigation.

2. The court of appeals observed that an employer that retaliates against an employee who has participated in an internal investigation might be acting unreasonably and would risk losing its affirmative defense to a claim under Title VII's anti-discrimination provisions. Pet. App. 9a-10a. That observation merely underscores, however, that employer-sponsored investigations are governed by and subject to Title VII and therefore take place "under" the statute. See pp. 17-20 & n.2, *supra*. In any event, the court's observation offers no relief to the victims of *retaliation* who would have no cause of action to vindicate that distinct injury under the statute.

29

It is telling that where Congress has addressed the problem of retaliation directly, it provided a distinct remedy for the victims of retaliation, and did not merely eliminate a defense in the underlying discrimination action.  And if no victim of harassment files suit (*e.g.*, out of fear of reprisal), both the harassment and the retaliation would occur without redress.  Moreover, the court of appeals' exclusive focus on the *employer's* motivations ignores the obvious chilling effect that its rule would have on an employee's willingness to cooperate with the employer's investigation.  In short, no policy justification supports the court of appeals' crabbed construction of both clauses of Section 704(a).

### D.  The EEOC's Interpretation Of Title VII's Anti-Retaliation Provision Warrants Deference

The EEOC consistently has taken the view that an employee who complains of unlawful employment practices in an employer-initiated investigation is protected from retaliation under Section 704(a).  Thus, the EEOC has stated its view that such an employee is protected under the opposition clause, 2 EEOC Compl. Man., *Section 2, Threshold Issues* (May 12, 2000)  <http://www.eeoc.gov/policy/docs/threshold.html>, as well as under the participation clause, EEOC Br., *EEOC* v. *Total Sys. Servs., Inc.*, 221 F.3d 1171 (11th Cir. 2000) (No. 99-13196JJ); accord http://www.eeoc.gov/types/retaliation.html ("Examples of participation include * * * Cooperating with an internal investigation of alleged discriminatory practices").  Under this Court's decisions, such EEOC guidance, while not controlling, reflects "a body of experience and informed judgment to which courts and litigants may properly

30

resort for guidance" and, as such, is at least "entitled to a 'measure of respect'" by this Court.  *Federal Express Corp.* v. *Holowecki*, 128 S. Ct. 1147, 1156 (2008) (quoting *Bragdon* v. *Abbott*, 524 U.S. 624, 642 (1998) and *Alaska Dep't on Envtl. Conservation* v. *EPA*, 540 U.S. 461, 488 (2004)); *National R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 110 n.6 (2002); *Meritor Sav. Bank, FSB* v. *Vinson*, 477 U.S. 57, 65 (1986); *Skidmore* v. *Swift & Co.*, 323 U.S. 134, 140 (1944).

The interpretation embodied in the EEOC's Compliance Manual and its *Total System* amicus brief has been in place for more than seven years and reflects the agency's consistent position on the question presented.  Cf. *Holowecki*, 128 S. Ct. at 1156 (deferring to interpretive statement in an agency memorandum that "has been binding on EEOC staff for at least five years").  Moreover, in the wake of this Court's decisions in *Ellerth, Faragher*, and *Kolstad*, the EEOC determined that Section 704(a) protects employees in petitioner's position because employer investigations into allegations of unlawful employment practices are an indispensable component of an employer's good faith efforts to comply with Title VII and because broad protection to employees who cooperate in such investigations is consistent with the expansive language used by Congress and is critical to ensuring the effective enforcement of the statute.  Because those judgments are based on the EEOC's extensive experience and expertise administering Title VII, they are entitled to respect and, at a minimum, should tip the balance in the event that this Court has any doubt as to the proper interpretation of Section 704(a).

31

**CONCLUSION**

The judgment of the court of appeals should be reversed.

Respectfully submitted.

PAUL D. CLEMENT
*Solicitor General*

GRACE CHUNG BECKER
*Acting Assistant Attorney
General*

RONALD S. COOPER
*General Counsel*

CAROLYN L. WHEELER
*Acting Associate General
Counsel*

JENNIFER S. GOLDSTEIN
*Attorney
Equal Employment
Opportunity Commission*

GREGORY G. GARRE
*Deputy Solicitor General*

LISA S. BLATT
*Assistant to the Solicitor
General*

DENNIS J. DIMSEY
ANGELA M. MILLER
*Attorneys*

APRIL 2008