**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MARK C. SAVIGNAC and JULIA SHEKETOFF, *Plaintiffs*, v. JONES DAY, STEPHEN J. BROGAN, BETH HEIFETZ, and MICHAEL SHUMAKER, *Defendants*. | Case No. 1:19-cv-02443-RDM-ZMF |

**DECLARATION OF JULIA SHEKETOFF**

I, Julia Sheketoff, a pro se plaintiff in this action and an attorney admitted to practice before this Court, declare as follows under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.     I am a pro se plaintiff in this action and an attorney admitted to practice before this Court.

2.     I submit this declaration in support of Plaintiffs' summary judgment and Rule 11 filings in the above-captioned actions and to attach true and correct copies of the documents described below, each of which is designated as an exhibit to Plaintiffs' Cross-Motion for Summary Judgment and annexed to this declaration.

3.     Two male associates at Jones Day told me that, when they sought leave in connection with a new child, the firm presumed they were secondary caregivers.

4.     Both male associates told me that they were asked to justify why they were entitled to primary caregiver leave.

5.      The first explained to Jones Day that his wife was employed and would be working while he acted as a primary caregiver.

6.      The second explained to Jones Day that, although his wife was not employed, she was a full-time student.

7.      During our recruitment of Supreme Court clerks, Heifetz instructed me to inform prospective employees that the firm provides 18 weeks of paid leave to mothers and 10 weeks of paid leave to fathers, omitting mention of any requirement that mothers be disabled.

8.      Mothers-to-be at Jones Day were able to arrange to take 18 weeks of leave before they gave birth and thus before they knew how long they would be disabled from childbirth.

9.      I received at least one "transition memo" from a pregnant associate advising that she would be out of the office for 18 to 24 weeks.

10.      I gave birth to my first child at George Washington University hospital.  No one advised me that I was disabled from working for any period of time after childbirth.

11.      I gave birth to my second child at Northwestern Memorial Hospital.  No one advised me that I was disabled from working for any period of time after childbirth.  In fact, I worked on this case from my hospital room.

12.      I believed in 2018 and 2019 and I continue to believe that Jones Day's leave offerings violate the antidiscrimination laws.

13.      In August 2018, I reviewed Jones Day's "Reporting and Investigation" Policy.

14.      After Mark was terminated, I asked Partner F if he would be an employment reference for Mark, and Partner F agreed.

15.      Heifetz previously authorized me to draft a letter of reference (together with ███ ███████████████████, and another associate) for ███ Staff E ███, a Jones Day employee.

16.     Heifetz directed me to draft the letter using her letterhead and said she would send the letter as the leader of the Issues & Appeals practice.

17.     Heifetz also authorized me to write a letter of recommendation for M Associate K a former Jones Day employee who had worked with us.

18.     Since 2016, I have believed that Partner A discriminated against me because of my sex.

19.     I worked diligently and skillfully for both billable clients and pro bono clients.

20.     During the process of revising the memo for Client 1 with Partner A, Partner A made revisions to the memo that I believed made the memo misleading or unclear.

21.     After receiving those revisions from Partner A, I consulted Partner F, who was an associate at the time, about how to respond.

22.     Partner F had previously told me that he had worked with Partner A in the past and had found Partner A's legal work to be very poor and in need of substantial revision.

23.     Partner F advised me to speak up about the problems introduced by Partner A's revisions and try to improve the memo.

24.     In regard to Partner A's hostile email to me after I suggested changes to his revisions, Female Associate A told me: "And maybe you're right about the sexist thing too…  I've gotta believe he would not be sending this to Male Associate C or Male Associate B."

25.     Female Associate A also told me that after she rewrote a memo he had written, she had a bankruptcy associate circulate the revised draft and Partner A didn't say anything about it.

26.     These statements by Female Associate A strengthened my belief that Partner A's hostile response to me was motivated by sex.

27.     When Heifetz read aloud to me Partner A's performance review for my 2016 work, it further strengthened my belief that sex was a motivating factor in his hostile response to my suggested edits.

28.     I believed at the time (and I continue to believe) that sex was a motivating factor in Partner A's negative performance review of me.

29.     In all drafts of my memo for Partner A, I provided the precise "helpful advice" or "direction" that Partner A asked me to provide: ███████████████████████████████ ████ .

30.     Partner A never suggested to me that I had failed to provide helpful advice or direction to the client.

31.     When Partner A first asked me to draft a memo for him, he did not tell me it would be provided to the client; my understanding was that the memo was for Partner A.

32.     When Partner A broadened our project to include an investigation into the relevant historical facts, I led the investigation.

33.     I came up with the relevant questions to ask the client and then interviewed the client both by email and on the phone—all without the substantive involvement of Partner A.

34.     Partner A did not provide feedback or guidance on interview outlines.

35.     Apart from one instance when I had two filings due, there was no occasion when Partner A asked me for the next version of the memo but I was tied up with other things.

36.     I met with Partner A in person frequently.

37.     Partner A often called me on my office line and talked to me by phone while I was in my office.

38.     When I had calls with Partner A while I was working remotely, Partner A didn't ask me why I was working remotely or whether I was doing it only because it was convenient for me.

39.     Partner A never mentioned to me that he was at all dissatisfied that I sometimes worked remotely.

40.     There was not a single time that Partner A asked me to work on the weekend or asked for something that required me to work on the weekend when I refused or said I was unavailable.

41.     I offered to and did work on the weekend on my matter with Partner A and in my other matters.

42.     I joined an hourlong phone call with Partner A and other colleagues late in the evening on the Sunday after Thanksgiving in 2016.

43.     While I was working with Partner A, my office was in a different building from his, and I usually ate lunch outside, in a conference room with my friends, or in my office.

44.     I worked on numerous case teams while at Jones Day.

45.     At no time did I suggest to Partner A that I might be interested in academia.

46.     Partner A did not make self-deprecating comments about his intelligence in front of me.

47.     I spoke at length with Heifetz about Mooppan's review of me.  Heifetz told me not to worry about the review because Mooppan was known as an extremely critical reviewer.

48.     Heifetz told me that others had even coined a term for being negatively reviewed by Mooppan ("getting Hashed") because it was such a common occurrence, and that Mooppan's reviews were largely discounted because of his reputation for being extremely critical of others.

49.     I did not threaten to withdraw from the case I worked on with Mooppan.  Instead, when I was with friends (Female Associate A, Male Associate J, and possibly one other friend), and also with Mooppan, I joked about how I couldn't take any more ████████████.

50.     Heifetz was not present at the time, and I did not make any similar comment to her.

51.     It was clear to my friends, and I thought it was clear to Mooppan, that I was playfully commiserating with them.  My friends and I were laughing during the conversation.

52.     When I told my friends about Mooppan's review, they expressed shock that he had described my comments as threats to withdraw and felt that it was obvious that I was simply commiserating with them.

53.     I incorrectly believed at the time that Mooppan was a friend.

54.     I told Heifetz that I had not threatened to withdraw from my case with Mooppan and explained that I was just commiserating with friends, and Heifetz never suggested that she disbelieved me.

55.     Heifetz never did or said anything to suggest to me that she was appalled at Mooppan's allegation that I had threatened to quit our case together.

56.     After receiving the ████████████, I worked very hard to come up with the best arguments I could in response.

57.     I talked with numerous other lawyers, spent hours reading caselaw, and even researched ████ ethics in my attempt to come up with the best arguments possible.

58.     The court of appeals did not resolve the case against me on the grounds addressed ████████████—though it did subsequently ████████████ ████████████.

59.     My available preparation time for oral argument in my case with Mooppan was reduced because I spent time drafting a brief ███████████████████████████████████ in the weeks immediately before the argument.

60.     While working with Mooppan, I told him that the upcoming argument in our case would be my first appellate argument, and that I was experiencing severe public-speaking anxiety.

61.     After what my two moots with Mooppan, I convened other moots without him in order to try to overcome my nerves.

62.     After my argument, Mooppan told me that he was proud of my performance.  He also told me that, apart from my initial answer to one question, I couldn't have done anything better.

63.     My draft motion for Partner J was as passionate, creative, and persuasive as the law and my ethical obligations allowed.

64.     After I circulated a draft of my motion, another partner on the project and the head of the office where Partner J worked (███████████) thanked me for my quick and excellent work on the motion.

65.     After I finished the draft memo, I stopped working on the matter with Partner J.

66.     Another associate who was on the project told me that Jones Day ███████████ ███████████████████████████████████████████.

67.     The associate further advised me that ████████████████████████ ████████████████████r.

68.     ███████████████████████████████████.

69.     As a party to these proceedings, I was involved in the collection and production of documents in this matter.

70.     The documents referenced below and identified with a Bates number beginning "JD_" (including "JD_MS_" and "JD_JS_") or stamped with a privilege log entry number beginning "JD_PRIV_" are, with the exception of any exhibit stickers and Bates numbers I added to .pdf conversions of natively produced spreadsheets, true and correct copies of documents produced by Defendants in this litigation.

71.     The documents referenced below and identified with a Bates number beginning "P" were produced by Plaintiffs during discovery in this litigation and, with the exception of any Bates numbers, exhibit stickers, or redactions for privilege or confidential information, are true and correct copies of documents in Plaintiffs' possession, custody, or control.

72.     The other documents referenced below are true and correct copies of written discovery served by parties to this litigation, exhibits used at depositions in this litigation, and/or materials referenced in declarations submitted by Defendants in support of their summary judgment motion.

**Exhibit Numbers and Document Descriptions**

1.     Memorandum re "Proposed Changes in the Non-Partner Maternity Leave Policy" from Julie Stumpe Dressing to Patrick McCartan (dated Dec. 22, 1993) (JD_00003291-99).

2.     Memorandum re "The Firm's Maternity Leave Policy" from Julie Stumpe Dressing to the Female Of Counsel, Senior Attorneys and Associates (dated June 15, 1994) (JD_00003301-02).

3.     Memorandum re "Changes in Non-Partner Maternity Leave Policy" from Patrick McCartan to Julie Stumpe Dressing (dated Jan. 11, 1994) (JD_00003300).

4.     Email re "Maternity Leave Policies (US)" to Michael Shumaker et al. (dated July 30, 2014), with attachment (JD_00005125-29).

5.    Email re "Re: Maternity Leave Policies (US)" (dated Aug. 6, 2014), with attachment (JD_00005102-07).

6.    Email re "FW: Sheketoff, Jula – Cobra Packet Request" from Julia Sheketoff to Julia Sheketoff (dated August 16, 2018) (P02753-55).

7.    Document titled "Short Term Disability Early Intervention Claims Management Program for Jones, Day, Reavis & Pogue" by Trans-General Group (dated June 23, 1995) (JD_00003910-46).

8.    Email re "Revised Maternity Memo" from Michael Shumaker to Sharyl Reisman et al. (dated Oct. 24, 2014), with attachment (JD_00005140-46).

9.    Email re "Re: Maternity, Paternity and Adoption Leave Policy" from Stephen Brogan to Michael Shumaker (dated Jan. 20, 2015) (JD_00005164-69).

10.    Email re "Re: EEOC guidance on paid family leave" to Julia Sheketoff (dated Jan. 29, 2015) (P02720).

11.    Email re "Benefits question from yesterday" to Beth Heifetz (dated May 13, 2015) (JD_00001957).

12.    Email re "Revisions to Firm Manual to reflect new family leave provisions for lawyers" from Sarah McClure (dated Feb. 3, 2015), with attachment (JD_00003767-72).

13.    Excerpts of document titled "Jones Day Firm Manual" (revised as of Dec. 17, 2014) (JD_00000210-0342).

14.    Excerpts of document titled "Jones Day Firm Manual" (revised as of May 18, 2015) (JD_00000705-0838).

15.    Document titled Plaintiffs' Notice of Deposition of Jones Day (listing 30(b)(6) topics) (dated May 13, 2022).

16.     Email re "Maternity/Adoption Leave Policy Recommendation Memo" to Michael Shumaker et al. (dated Sept. 15, 2014), with attachments (JD_00005130-39).

17.     Email re "Maternity Leave Memo (with Exhibits)" to Michael Shumaker et al. (dated Oct. 29, 2014), with attachments (JD_00005148-61).

18.     Letter from Terri Chase to Plaintiffs addressing Plaintiffs' Rule 30(b)(6) notice (dated May 27, 2022).

19.     Email re "Re: NALP Form Statement concerning parental leave/family care policy" from Sarah McClure to Lori Bounds (dated March 7, 2015) (JD_00003788-89).

20.     Page from Jones Day website titled "Judicial Clerks: Why Jones Day?" (JD_00003905-06).

21.     Email re "Re: For Your Review / Statement of Benefits and Parental Leave for new Careers Website" from Sarah McClure to Sharyl Reisman (dated June 2, 2015) (JD_00003797-3806).

22.     Document titled "Summary of Benefits – New Associates/Judicial Clerks" (dated May 2015) (JD_00002663-66).

23.     Email re "Re: Fw: Benefits Section – 2016 NALP Form" from Sarah McClure to Lori Bounds (dated Mar. 2, 2016) (JD_00003813-16).

24.     Page from Jones Day website titled "Judicial Clerks: Why Jones Day?" (JD_00003907-09).

25.     Email re "Re: leave question" to Beth Heifetz (dated July 12, 2016) (JD_00003969).

26.     Email re "FW: Sheketoff, Jula [sic] - Cobra Packet Request" to Julia Sheketoff (dated Aug. 16, 2018) (P02753-55).

27. Email re "Update to STD" from Lori Bounds (dated July 18, 2018) (JD_00003853-56).

28. Document titled "ACOG Postpartum Toolkit" with cover letter from American College of Obstetricians and Gynecologists (designated Copyright 2018) (labeled Plaintiffs' Exhibit 102).

29. Document titled "ACOG Postpartum Toolkit – Returning to Work and Paid Leave" (designated Copyright 2018) (P02258-61).

30. Defendants' First Supplemental Objections and Responses to Plaintiffs' First Set of Interrogatories to Defendants (dated Sept. 10, 2021).

31. Defendants' Amended and Supplemental Objections and Responses to Plaintiffs' Interrogatories (dated May 20, 2022).

32. Defendants' Objections and Responses to Plaintiffs' First Requests for Admission, as Revised (dated Mar. 23, 2022).

33. Defendants' Objections and Responses to Plaintiffs' Second Requests for Admission (dated Aug. 26, 2022).

34. Defendants' Amended Rule 26(a)(1) Disclosures, with Attachment (dated May 23, 2022).

35. Plaintiffs' Responses and Objections to Defendants' Second Discovery Requests (dated Sept. 1, 2021).

36. Plaintiffs' Supplemental Responses to Defendants' First Interrogatories (dated Mar. 7, 2022).

37. Plaintiffs' Responses and Objections to Defendants' First Set of Requests for Admission (Sept. 12, 2022).

38.     Rebuttal Report of Plaintiffs' Expert Dr. Kenneth L. Naylor (dated Sept. 1, 2022), and exhibit.

39.     Text messages between Julia Sheketoff and ▉Partner F▉ (P04084-P04282, P04325-26).

40.     Replaced with Text messages between Julia Sheketoff and ▉M Associate J▉ (P04067).

41.     Text messages between Julia Sheketoff and ▉F Associate A▉ (P02160-2207).

42.     Text messages between Julia Sheketoff and ▉F Associate B▉ (P04070-72).

43.     Email re "Re: EEOC guidance on paid family leave" from Mark Savignac to Julia Sheketoff (dated Jan. 29, 2015) (P02721).

44.     Email re "Re: Photograph for The New York Times" from Julia Sheketoff (dated Aug. 8, 2019) (P03672).

45.     Document titled "Jones Day Firm Manual - Reporting And Investigation" (printed Aug. 26, 2018) (P02146).

46.     Email re ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉ from Kevyn Orr to Adrian Wager-Zito et al. (dated Jan. 22, 2019) (JD_PRIV_0024).

47.     Email re "RE: ▉M Assoc. K▉ from Beth Heifetz to Julia Sheketoff (dated Oct. 10, 2017) (JD_00003760).

48.     Jones Day's Assessment Statements, Ratings, and Evaluations for Mark Savignac (JD_MS_00000001-09).

49.     Email re "RE: Julia Sheketoff" to Michael Shumaker et al. (dated Jan. 21, 2019), with attachment (JD_PRIV_0019).

50.     Email re "RE: Privileged and Confidential – [REDACTED]" from Michael Shumaker to Mary Ellen Powers (dated Jan. 22, 2019) (JD_PRIV_0163).

51.     Screenshot of Jones Day's Twitter social media page (dated June 7, 2020) (P02274-80).

52.     Screenshot of Jones Day's Twitter social media page (dated Aug. 19, 2019) (P02246).

53.     Print-out of Jones Day's Facebook social media page (dated Aug. 19, 2019) (P02237-45).

54.     Additional print-out of Jones Day's Facebook social media page (dated Aug. 19, 2019) (P02247-52).

55.     Page from Jones Day website titled "Associates" (retrieved April 17, 2019) (P04299-4300).

56.     Complaint in *Wendy Moore v. Jones Day* (dated June 19, 2018).

57.     Document titled "WilmerHale – Work and Life Balance" (P02476).

58.     Document titled "Covington – Work-Life Balance" (P02479).

59.     Third Amended Complaint in *Tolton v. Jones Day* (dated Aug. 16, 2019) (P04329-4463).

60.     Jones Day's Amended Answer and Defenses to Third Amended Complaint in *Tolton v. Jones Day* (dated Feb. 9, 2021) (P04464-4589).

61.     Letter re "*Sheketoff v. Jones Day*, EEOC No. 570-2020-01972 and *Savignac v. Jones Day*, EEOC No. 570-2020-01973," from Anderson Bailey to U.S. Equal Employment Opportunity Commission (dated July 28, 2020) (P02318-68).

62.     Email re "FW: Reuters features SCOTUS clerk hires" from Julia Sheketoff (dated Dec. 8, 2014) (P03599-3600).

63.     Email re "FW: Fw: Photograph for Website" from Julia Sheketoff (dated Mar. 9, 2018) (P02747-50).

64.     Document titled "Ideas for Letter of Recommendation" (P02208-09).

65.     Email re "recommendation for Staff E from Julia Sheketoff to Sparkle Sooknanan et al. (dated Aug. 16, 2015), with attachment (P02724-26).

66.     Email re "Re: recommendation for Staff E from Aaron Tang to Julia Sheketoff (dated Aug. 17, 2015), with attachment (P02727-29).

67.     Email re "Re: recommendation for Staff E from Sparkle Sooknanan to Aaron Tang et al. (dated Aug. 17, 2015), with attachment (P02730-32).

68.     Email re "Re: recommendation for Staff E to Julia Sheketoff (dated Aug. 17, 2015) (P02733).

69.     Document titled "Overview of the postpartum period: Normal physiology and routine maternal care" by Dr. Pamela Berens (current through Aug. 2022) (labeled Plaintiffs' Exhibit 137).

70.     Document titled "Building the Evidence Base for Postoperative and Postpartum Advice" by Dr. Lucas Minig et al. (Oct. 2009) (labeled Plaintiffs' Exhibit 138).

71.     Document titled "Patient education: Care after gynecologic surgery (Beyond the Basics)" by Dr. Colleen Feltmate (current through Aug. 2022) (labeled Plaintiffs' Exhibit 139).

72.     Document titled "Exercise during pregnancy and the postpartum period" by Dr. Raul Artal (current through Aug. 2022) (labeled Plaintiffs' Exhibit 142).

73.     Document from American College of Obstetricians and Gynecologists titled "Frequently Asked Questions – Exercise After Pregnancy" (designated Copyright 2019) (labeled Plaintiffs' Exhibit 143) (P02262-64).

74.     Document from American College of Obstetricians and Gynecologists titled "ACOG Committee Opinion – Optimizing Postpartum Care" (May 2018) (labeled Plaintiffs' Exhibit 126).

75.     Email re "███████████████████████████" from Julia Sheketoff (dated February 2, 2016), with attachment (███████████) (JD_JS_00000458-68).

76.     Email re "[client name] memo" to Julia Sheketoff (dated February 5, 2016), with attachment (████████████████████████████) (JD_JS_00000487-0511).

77.     Email re memo from Julia Sheketoff (dated February 8, 2016), with attachment (███████████) (JD_JS_00000512-35).

78.     Memorandum from Julia Sheketoff (dated February 8, 2016) (███████████) (JD_JS_00000263-73).

79.     Email from Julia Sheketoff (dated February 9, 2016), with attachment (███████████) (JD_JS_00000541-58).

80.     Word document created by Julia Sheketoff ███████████████ (labeled Plaintiffs' Exhibit 62).

81.     Email re memos from Julia Sheketoff (dated February 17, 2016), with attachment (███████████) (JD_JS_00000602-29).

82.     Email re memo to Julia Sheketoff (dated March 1, 2016), with attachment (███████████ (JD_JS_00001428-40).

83.     Word document created by Julia Sheketoff ███████████████ (labeled Plaintiffs' Exhibit 77).

84.     Email re memo from Julia Sheketoff (dated March 2, 2016), with attachment (███████████) (JD_JS_00000638-63).

85.     Email re memo from Julia Sheketoff (dated March 3, 2016), with attachment (██████████) (JD_JS_00000666-80).

86.     Email re memo from Julia Sheketoff (dated March 8, 2016), with attachment (██████████) (JD_JS_00000696-0710).

87.     Email re memo (dated March 28, 2016), with attachments (██████████) (JD_JS_00002201-29).

88.     Word document created by Julia Sheketoff ██████████████████ (labeled Plaintiffs' Exhibit 97).

89.     Email from Julia Sheketoff (dated March 31, 2016), with attachment (████ ██████) (JD_JS_00000780-94).

90.     Email re memo from Julia Sheketoff (dated April 13, 2016), with attachments (██████████) (JD_JS_00002322-54).

91.     Email re memo to Julia Sheketoff (dated April 13, 2016), with attachments (████ ████████████████) (JD_JS_00000923-54).

92.     Email re "FW: Reference" from Beth Heifetz to Shay Dvoretzky (dated October 22, 2018) (JD_00003836-37).

93.     Email re memo from Julia Sheketoff (dated April 14, 2016) (JD_JS_00000956-57).

94.     Draft of memo from Julia Sheketoff et al. (dated April 15, 2016) (████████ ██ (JD_JS_00000084-98).

95.     Email re memos copying Julia Sheketoff (dated April 18, 2016), with attachments (██████████) (JD_JS_00001681-1710).

96.     Word document created by Julia Sheketoff ████████████ (labeled Plaintiffs' Exhibit 120).

97.     Email re "████████████" from Julia Sheketoff (dated April 21, 2016), with attachments (████████████) (JD_JS_00001141-74).

98.     Draft of memo from Julia Sheketoff et al. (dated April 22, 2016) (memo version 19.2) (JD_JS_00000114-29).

99.     Word document created by Julia Sheketoff ████████████████████████ (labeled Plaintiffs' Exhibit 125).

100.    Memo from Julia Sheketoff et al. (dated April 28, 2016) (████████████) (JD_JS_00001929-59).

101.    Email re memos to Julia Sheketoff et al. (dated February 28, 2016) (JD_JS_00001427).

102.    Email re "████████████" (dated May 9, 2016) (JD_JS_00002412).

103.    Document titled "2016 DC Lit Eval Meeting (covering 2015 evaluations)" (JD_00003732-49).

104.    Email re ████████████████████████████████" from Saundra C. Madyun (dated July 13, 2017) (JD_00000040-43).

105.    Email re "RE: ████████████" from Julia Sheketoff (dated January 27, 2016) (JD_JS_00000418-20).

106.    Email from Julia Sheketoff (dated January 29, 2016) (JD_JS_00000439-44).

107.    Email re memo from Julia Sheketoff (February 5, 2016) (JD_JS_00000470).

108.    Email from Julia Sheketoff (dated February 11, 2016) (JD_JS_00002149-57).

109.    Email from Julia Sheketoff (dated February 28, 2016) (JD_JS_00000630-31).

110.    Email from Julia Sheketoff (dated March 28, 2016) (JD_JS_00002230-39).

111.    Email from Julia Sheketoff (dated March 29, 2016) (JD_JS_00002276-87).

112.   Email from Julia Sheketoff (dated April 4, 2016) (JD_JS_00000900).

113.   Email from Julia Sheketoff (dated April 18, 2016) (JD_JS_00001040).

114.   Email re "█████████████" to Julia Sheketoff (dated April 19, 2016) (JD_JS_00002638-42).

115.   Email to Julia Sheketoff (dated November 29, 2016) (JD_JS_00002045-46).

116.   Email from Partner A to Julia Sheketoff (dated March 30, 2016) (JD_JS_00002537-40).

117.   Email from Partner A (dated March 30, 2016) (JD_JS_00000760-62).

118.   Email re from Julia Sheketoff (dated March 31, 2016) (JD_JS_00000776-78).

119.   Email to Julia Sheketoff (dated April 4, 2016) (JD_JS_00001553-71).

120.   Email to Julia Sheketoff (dated April 4, 2016) (JD_JS_00001575-91).

121.   Email from Partner A to Julia Sheketoff (dated April 5, 2016) (JD_JS_00000902).

122.   Email from Julia Sheketoff (dated April 19, 2016) (JD_JS_00001073).

123.   Email to Julia Sheketoff (dated April 21, 2016) (JD_JS_00001823-42).

124.   Email from Julia Sheketoff to Partner A (dated January 28, 2016) (JD_JS_00000431-34).

125.   Email from Julia Sheketoff to Partner A re "████████████████" (dated March 8, 2016) (JD_JS_00000696-98).

126.   Email from Julia Sheketoff to Partner A (dated March 25, 2016) (JD_JS_00000742).

127.   Email from Julia Sheketoff to Partner A (dated March 29, 2016) (JD_JS_00002531-33).

128. Email from Julia Sheketoff to Partner A (dated March 29, 2016) (JD_JS_00002534-36).

129. Email from Julia Sheketoff to Partner A re "███████" (dated April 22, 2016) (JD_JS_00001180-81).

130. Email from Partner A to Julia Sheketoff (dated April 25, 2016) (JD_JS_00001857-59).

131. Email from Partner A to Julia Sheketoff (dated April 27, 2016) (JD_JS_00001917-20).

132. Email from Partner A to Julia Sheketoff (dated September 19, 2016) (JD_JS_00001252-53).

133. Email from Partner A (dated October 27, 2016) (JD_JS_00002427-2429).

134. Email from Julia Sheketoff to Partner A (dated October 27, 2016), with attachment (JD_JS_00001254-55).

135. Email to Julia Sheketoff (dated October 27, 2016) (JD_JS_00001968-72).

136. Email from Julia Sheketoff to Partner A (dated October 28, 2016), with attachment (JD_JS_00001257-59).

137. Email from Partner A to Julia Sheketoff (dated November 22, 2016) (JD_JS_00002005-10).

138. Email from Partner A (dated April 5, 2016) (JD_JS_00002316).

139. Email from Partner to Julia Sheketoff re "███████" (dated April 22, 2016) (JD_JS_00001848-51).

140. Email to Partner A and Julia Sheketoff (dated November 27, 2016) (JD_JS_00002017-18).

141.   Email from Michael Shumaker to Beth Heifetz re "WAI_3186918_2_US Law Firm Maternity_Paternity Leave Policies (2014).DOCX" (dated August 5, 2015) (JD_00005174-79).

142.   Document titled "NPE Entries by Partner A – Numeric Ratings" (JD_00002861-62).

143.   Excel spreadsheet listing 2017 practice and office rankings for Issues & Appeals associates (JD_00004026).

144.   Email re memo from Julia Sheketoff (dated April 22, 2016), with attachments (███████████████████████████████████████) (JD_JS_00000666-80).

145.   Email from Partner A to Julia Sheketoff (dated April 25, 2016) (JD_JS_00002411).

146.   Email to Julia Sheketoff (dated April 27, 2016), with attachment (██████████████) (JD_JS_00001860-78).

147.   Excel spreadsheet containing certain Partner A billing records from January 27, 2016, to April 12, 2016) (JD_JS_00002657).

148.   Excel spreadsheet containing certain Partner A billing records from April 14, 2016, to November 1, 2016 (JD_JS_00002658).

149.   Excel spreadsheet containing Julia Sheketoff's billing records from October 27, 2014, to August 24, 20 (JD_JS_00002511).

150.   Word document created by Julia Sheketoff ███████████████████████.

151.   Email re "██████████" from Partner A to Julia Sheketoff (dated January 25, 2016) (JD_JS_00001367-68).

152.   Excerpts of document titled "Jones Day Firm Manual" (revised as of Nov. 4, 2016) (JD_00001369-1459).

153.    Email re "*Confidential: Memo from Jim Jones re: March 30-31 Meeting on Associate Performance Evaluations for Litigation Practices" from Suzanne Coussons to Theodore Chung et al. (dated February 20, 2017) (JD_00003048-53).

154.    Email re "RE: Confidential: I&A Ratings & Forced Rankings" from Suzanne Coussons to Beth Heifetz (dated February 21, 2018) (JD_00003132).

155.    Document titled "Delivery, Spontaneous and/or Assisted Vaginal" by MDGuidelines (available at https://www.mdguidelines.com/) (downloaded December 16, 2022).

156.    Document titled "Cesarean Delivery" by MDGuidelines (available at https://www.mdguidelines.com/) (downloaded December 16, 2022).

157.    Document titled "Pregnancy and Delivery" by odg by mcg (available at https://www.mcg.com/odg/) (downloaded December 20, 2022).

158.    Document titled "Cesarean Delivery" by odg by mcg (available at https://www.mcg.com/odg/) (downloaded December 20, 2022).

159.    Letter re "Savignac et al. v. Jones Day et al., No. 1:19-cv-2443 (D.D.C.) from Anderson Bailey to Julia Sheketoff and Mark Savignac (dated August 30, 2021).

160.    Excerpt from Excel spreadsheet providing partnership, pay, and other information for Issues & Appeals associates (JD_00003984).

161.    Hard-copy leave file for female associate ███████ (JD_00002867-2916).

162.    Hard-copy leave file for female associate ███████ (JD_00004029-74).

163.    Hard-copy leave file for female associate ███████ (JD_00004119-76).

164.    Hard-copy leave file for female associate ███████ (JD_00004177-4224).

165.    Hard-copy leave file for female associate ███████ (JD_00004271-4334).

166.    Hard-copy leave file for female associate ███████ (JD_00004227-70).

167.    Hard-copy leave file for male associate ▮▮▮▮▮ (JD_00004965-88).

168.    Hard-copy leave file for male associate ▮▮▮▮▮ (JD_00004989-5014).

169.    Hard-copy leave file for male associate ▮▮▮▮▮ (JD_00005015-28).

170.    Email re "RE: Jones Day's comment" from Traci Lovitt to Noam Scheiber (dated August 13, 2019) (JD_00002559-61).

171.    Email re "Re: do you have a few minutes to help me think through a problem?" from Gregory Shumaker to Beth Heifetz (dated April 15, 2015) (JD_00003755-56).

172.    Excerpt from spreadsheet containing assessment statements, hours, and ratings for Issues & Appeals associates (JD_00004009).


In compliance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 27, 2023.           /s/ Julia Sheketoff
                                         Julia Sheketoff (pro se)
                                         2207 Combes Street
                                         Urbana, IL 61801
                                         (202) 567-7195
                                         sheketoff@gmail.com
                                         D.C. Bar No. 1030225