IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK C. SAVIGNAC and<br>JULIA SHEKETOFF,<br><br> *Plaintiffs*,<br><br>   v.<br><br>JONES DAY, STEPHEN J. BROGAN,<br>and MICHAEL SHUMAKER,<br><br> *Defendants*. | Case No. 1:19-cv-02443-RDM |

**JOINT STATUS REPORT**

  Pursuant to the Court's Order of October 3, 2024, the parties met and conferred about next steps in the litigation, including without limitation the approach to addressing the privilege issue raised in the Court's September 25, 2024, Memorandum Opinion and Order ("the Opinion," publicly filed on October 3, 2024 at Dkt. 247). The parties remain at impasse as to some of the issues and note below each side's respective position on these issues.

  **1. Privilege Issue**

  <u>Plaintiffs' position</u>: In its summary judgment ruling, the Court holds that "Defendants have placed the contents of the December 1993 memorandum [from Dressing to McCartan] at issue." Op. 77. While Defendants disagree with that holding, it is indisputable that the holding means that Defendants have waived any privilege that might otherwise have applied to the memo and that they therefore must produce it.

  Defendants are entitled to seek reconsideration of the Court's holding and may seek mandamus from the D.C. Circuit. Provided that Defendants file any reconsideration motion and/or

mandamus petition by October 23, 2024 (four weeks from the Court's ruling), Plaintiffs would agree that Defendants need not produce the memo until the issue is resolved. Given the potential for an interlocutory appeal and the need to avoid delay of trial, Plaintiffs respectfully request that any reconsideration motion be resolved promptly.

Aside from reconsideration and mandamus proceedings, which are always available, Plaintiffs object to special further proceedings on this one issue out of the countless ones resolved in the opinion. Plaintiffs, too, disagree with aspects of the opinion. But Plaintiffs understand that they will receive no further opportunity to be heard except under the narrow reconsideration standard—and motions for reconsideration are strongly disfavored under the standing order.

On this waiver issue, Plaintiffs asserted the glaring at-issue waiver through a lengthy communication to Defendants demanding the memo and in their summary judgment brief (PMSJ 13-14); Defendants chose to respond with a cursory footnote making two arguments that this Court has rightly rejected (Defendants' Reply 5 n.1; Op. 75-79); Plaintiffs rebutted those two arguments (Plaintiffs' Reply 7 & n.5-6); and the issue dominated the hearing on summary judgment, giving Defendants ample additional opportunity to be heard, to the exclusion of many issues where the Court ruled against Plaintiffs without discussion at the argument (Tr. 5-15, 29-34, 49-56). There is no basis to give Defendants special treatment by reopening this one issue, which Defendants made a strategic decision not to seriously contest in their brief.

Plaintiffs especially object to ex parte discussions between Defendants and the Court, which would violate fundamental notions of due process with no justification. Whether Defendants put Dressing's advice to McCartan at issue is a legal question whose answer does not turn on the details of that advice, much less on Dressing's self-serving interpretation of it three decades later (and the Court has already observed that her current testimony "arguably conflict[s]"

with what she actually said). Op. 78-79. Defendants want Dressing to explain to the Court that, "properly understood" (by contrast to how the Court understands it, Op. 78-79), "the Memo neither explicitly addresses, nor implicitly sheds light on, Dressing's reasons for selecting a disability period of eight weeks." Defendants are entitled to argue over how to read the memo, but such arguments must be made consistent with the basic premises of our adversarial system.

Finally, Plaintiffs understand that the waiver does not extend to material that has no bearing on Dressing's advice to McCartan regarding leave for new parents. But it is implausible that that any of the memo is irrelevant to that (whether or not it can be viewed as "pure legal analysis").

Defendants' position: Defendants maintain that they have not waived attorney-client privilege over the Memo. This Court suggested that "[b]y centering its non-discriminatory rationale defense on the advice Dressing provided to McCartan, Defendants have placed the contents of the December 1993 memorandum at issue." (Dkt. 247 at 77). That suggestion was premised on this Court's impression, based on an *ex parte* review, that the Memo "does shed light on the business recommendation that Dressing made to McCartan regarding the policy change and the respective benefits provided to female and male associates." (*Id.* at 78). This Court clarified, however, that it was "reluctant to disclose the contents of an assertedly privileged document in this context and without providing the parties with a further opportunity to be heard." (*Id.* at 79).

Defendants respectfully request a further opportunity to be heard on this matter. As this Court recognized, Plaintiffs' assertion of a privilege waiver was "only briefly addressed" in the summary-judgment briefing, as "the objection was not raised during discovery." (*Id.* at 78-79). Notably, this issue was only briefly addressed in the briefing because it had not been raised by Plaintiffs until after Defendants filed their motion for summary judgment. In light of the tentative

3

views expressed in this Court's opinion, there are both legal and factual issues that warrant further development and consideration.

*First*, the parties should submit short, five-page briefs on the legal standard for an at-issue waiver of privilege.  Defendants respectfully submit that their having placed at issue Dressing's *business reasons* for recommending an eight-week disability period does not waive privilege over the Memo because it does not place at issue Dressing's *legal advice* in the Memo (whether or not the Memo also sheds light on Dressing's business reasons).  The court's contrary suggestion, based on inapposite cases, would have significant implications for privileged communications to a decisionmaker whenever the decisionmaker's intent was at issue.

*Second*, if necessary after reviewing the briefing, this Court should hold an *ex parte* conference where it can hear directly from Dressing about the scope and meaning of the Memo.  Defendants respectfully submit that, properly understood, the Memo neither explicitly addresses, nor implicitly sheds light on, Dressing's reasons for selecting a disability period of eight weeks rather than some lower amount.  As we noted in our October 17, 2023, email submitting the Memo for *in camera* review, Judge Faruqui previously used an *ex parte* conference to obtain additional context about privileged documents, and the same approach would be appropriate here—especially since Plaintiffs chose not to depose Dressing.  After all, if the Memo is in fact silent on Dressing's business reasons for selecting an eight-week period, then its contents not only remain privileged but are entirely irrelevant:  Jones Day's reason for selecting an 8-week period is the only legally material question left on this claim, given this Court's holding that an 8-week period is facially lawful and permissible if adopted for nondiscriminatory reasons.  (Dkt. 247 at 67).

Alternatively, even if this Court ultimately reaffirms its view that an at-issue waiver has occurred warranting production of a larger portion of the Memo, Defendants respectfully submit

that significant portions of the memo should still remain privileged because those portions address topics unrelated to the length of the disability period.  At minimum, Defendants request the opportunity to submit for *ex parte* review another redacted version of the Memo, which would leave redacted the pure legal analysis of the Firm's then-existing policies, the requirements of the FMLA, and potential claims under other federal statutes—none of which is remotely relevant to the remaining question of the selection of the 8-week postpartum disability period, and none of which has been put at issue by Defendants' defense of that period.

2. **Damages Discovery**

The parties agree that a period of time for damages discovery is necessary. They also agree that the damages discovery period will necessitate both additional document production and depositions related to the question of: (a) whether Mark Savignac would have been promoted to partner; (b) potential backpay damages for Mr. Savignac; and (c) evidence of Mr. Savignac's mitigation.  Without waiving any objections that Plaintiffs may have to the actual language of a third-party subpoena to Steptoe & Johnson, the parties agree in principle on the need for third-party discovery from Steptoe & Johnson about Mr. Savignac's reviews, compensation, likelihood of promotion to partner and the reasons why he has not been made partner. The parties do not agree regarding the availability of front pay, and the scope of discovery necessary to assess backpay.  Assuming that Plaintiffs maintain their prior "representation that the plaintiffs will not waive the psychotherapist privilege and that they will accept whatever limitations come with that with respect to the types of damages they seek in this case," Defendants will not pursue discovery related to mental health treatment for such alleged emotional distress. *See* 01.31.2022 Tr. at 55:19-25.

<u>Plaintiffs' position</u>: Plaintiffs propose the following damages discovery schedule:

| | |
|---|---|
| October 25, 2024 | Fact discovery opens |
| January 25, 2025 | Close of document discovery |
| March 25, 2025 | Close of fact depositions |
| April 25, 2025 | Exchange of expert reports |
| May 27, 2025 | Exchange of expert rebuttal reports |
| June 27, 2025 | Close of expert depositions |

Discovery cannot be anticipatorily limited to the matters that Defendants list below. To the contrary, in pausing damages discovery pending the ruling on summary judgment, the Court acknowledged that if Plaintiffs defeated summary judgment, they would be entitled to argue for "make whole compensation" (backpay and front pay) based on Jones Day partnership. 09.09.2021 Tr. 21-23, 40. For example:

- Plaintiffs are entitled to discovery to show that Mark would have made partner at Jones Day and when, including showing where Jones Day sets the bar for promotion to partner and whether Mark would have passed that bar. There is no basis for limiting this to the self-serving testimony of Defendants' attorney, as Defendants appear to propose. At a minimum, appropriate discovery will include (1) documents relevant to partnership promotions for associates in Jones Day's DC office in 2020 and surrounding years (which is necessary both to confirm Plaintiffs' position that all Supreme Court clerks who remain at Jones Day until becoming eligible are promoted and because decisions from 2019 onward may have been tainted by Defendants' awareness of this suit); (2) documents showing how Mark was viewed by relevant Jones Day partners prior to his termination; and (3) documents and depositions of actual decisionmakers.

- Plaintiffs are entitled to evidence sufficient to show what Mark's compensation would have been but for the discrimination, including following promotion to partner, which Plaintiffs believe would have occurred when Mark became eligible on January 1, 2021. Assuming judgment is entered in late 2025, this will include around five years of backpay (which is practically mandatory) as a partner plus an appropriate period of front pay in lieu of reinstatement should the Court decline to order reinstatement. *E.g.*, Dkt. 72 at 1.

Plaintiffs have no interest in litigating for more information than is necessary to support requests for appropriate backpay and front pay, and Plaintiffs welcome the Court's guidance on the appropriate scope of discovery. At a minimum, however, Plaintiffs need compensation information (e.g., pay figures and how they were set) for other DC attorneys in the Issues & Appeals group who were promoted to partner effective in 2017-2023. Information on partners promoted somewhat earlier than 2020 is necessary, including because (1) Plaintiffs are entitled to argue that Mark would have been paid more than the three particular DC Issues & Appeals associates who made partner effective 2021; (2) Plaintiffs are entitled to seek front pay for years following entry of final judgment, and

6

data for partners further along the pay curve is directly relevant to that; (3) Defendants' decisions from 2019 on were likely affected by their knowledge of Plaintiffs' claim for partner backpay and front pay in this case; and (4) Plaintiffs are entitled to a sample size large enough to rebut arguments that their request is too speculative.

As the Court noted when staying damages discovery several years ago, Defendants have the power to obviate the need for litigation over and discovery into the details of partner compensation through an appropriate stipulation—e.g., a stipulation that Mark would have been paid the top compensation that Jones Day offers to D.C. Issues & Appeals partners at each given year of partnership seniority. Plaintiffs welcome proposals for stipulations that could streamline discovery and litigation over these matters.

- Plaintiffs are entitled to evidence bearing on how long attorneys in the Issues & Appeals group generally remain at Jones Day after being promoted to partner, which the D.C. Circuit has said is important in determining front pay.

- Plaintiffs are entitled to evidence relevant to punitive damages, including evidence of Defendants' financial resources, as discussed in prior briefing. *E.g.*, Dkt. 72 at 39-43.

<u>Defendants' position</u>: Defendants assert that the remaining damages discovery can be completed by April 30, 2025, including the seeking of documents and testimony through a third-party subpoena of Steptoe & Johnson. In terms of the scope of discovery, Defendants assert that discovery should include:

(a) Supplementing associate review and compensation information for Issues & Appeals associates for January 2021 through 2024 (in the same detail as previously provided for 2014-2020);

(b) A Rule 30(b)(6) deposition of Traci Lovitt regarding the promotional standards and the relevant process of counseling out associates deemed unlikely to make partner;

(c) Documents and testimony from Steptoe & Johnson regarding Mr. Savignac's performance reviews, compensation, and likelihood of making partner; and

7

        (d) The deposition of Plaintiffs regarding their claimed damages and efforts to mitigate same, including Mr. Savignac's future career plans.

As the Court is aware, the Firm maintains strict confidentiality regarding partnership compensation. In recognition of the confidentiality concerns, the Court previously indicated that any production of partnership compensation data could be limited to compensation ranges and ranges of those likely to be comparators. 09.09.2021 Tr. at 10:14-14:17, 40:4-41:5. For example, the compensation of a senior partner or even a newly admitted partner with decades of experience (such as a former partner returning from government service) would not be relevant to Mr. Savignac's potential damages. At earliest, even by his own assertion, Mr. Savignac would have become a partner effective January 1, 2021. Accordingly, if the Court determines that partnership compensation data should be produced, Defendants respectfully request the opportunity to confer with the Court regarding the provision of compensation ranges for a subset of new partners promoted effective January 2021, 2022 and 2023.

**3.  Remaining Schedule**

In order to secure a trial date and set appropriate deadlines for pre-trial submissions, the parties request the opportunity to discuss available trial dates with the Court at the upcoming conference.

<u>Plaintiffs' position</u>:  Plaintiffs request a trial date in fall 2025, but at least 90 days after the end of damages discovery to allow time for motions in limine, proposed jury instructions, etc.

<u>Defendants' position</u>: Defendants request a trial date in the summer or fall of 2025. Defendants anticipate that the trial will last two weeks. We will confer with our key witnesses regarding their availability and be prepared to discuss specific trial dates at the conference.

Respectfully submitted,                                                                                          October 11, 2024

| | |
|---|---|
| /s/ *Julia Sheketoff* | /s/ *Terri L. Chase* |
| Julia Sheketoff (*pro se*) | Terri L. Chase (pro hac vice) |
| 2207 Combes Street | JONES DAY |
| Urbana, IL 61801 | 600 Brickell Avenue, Suite 3300 |
| (202) 567-7195 | Miami, Florida 33131 |
| sheketoff@gmail.com | Phone: 305-714-9700 |
| | Email: tlchase@jonesday.com |
| /s/ *Mark C. Savignac* | |
| Mark C. Savignac (*pro se*) | Christopher DiPompeo (Bar No. 1003503) |
| 2207 Combes Street | JONES DAY |
| Urbana, IL 61801 | 51 Louisiana Avenue NW |
| (217) 714-3803 | Washington, DC 20001 |
| marksavignac@gmail.com | Phone: (202) 879-3939 |
| | Email: cdipompeo@jonesday.com |
| *Plaintiffs* | |
| | Anderson T. Bailey (*pro hac vice*) |
| | JONES DAY |
| | 500 Grant Street |
| | Pittsburgh, PA 15219 |
| | Phone: (412) 391-3939 |
| | Email: atbailey@jonesday.com |
| | |
| | *Counsel for Defendants* |