# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARK C. SAVIGNAC and<br>JULIA SHEKETOFF,<br><br>*Plaintiffs*,<br><br>v.<br><br>JONES DAY, *et al.*,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. No. 1:19-02443 (RDM)<br><br>**SUPPLEMENTAL BRIEF<br>REGARDING PRIVILEGED<br>MEMORANDUM** |

Terri L. Chase (*pro hac vice*)
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, Florida 33131
Phone: (305) 714-9700

Traci Lovitt (Bar No. 467222)
JONES DAY
250 Vesey Street
New York, NY 10281
Phone: (212) 326-3939

Anderson T. Bailey (*pro hac vice*)
JONES DAY
500 Grant Street
Pittsburgh, PA 15219
Phone: (412) 391-3939

Christopher DiPompeo (Bar No. 1003503)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Phone: (202) 879-3939

*Attorneys for Defendants*

1.       The "at issue" waiver doctrine applies only where the party "*relies* on [a] privileged communication … as an element of a claim or defense." *EEOC v. George Wash. Univ.*, 502 F. Supp. 3d 62, 87 (D.D.C. 2020) (*GWU*) (quoting *In re Cnty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008)); *see In re Kellogg Brown & Root, Inc.*, 796 F.3d 137, 147 (D.C. Cir. 2015) (*KBR II*). "The assertion of an 'advice-of-counsel' defense has been … described as a 'quintessential example' of [a] waiver." *Erie*, 546 F.3d at 228. By contrast, in-house counsel's "non-privileged" "statement" of business reasons justifying a personnel decision is not a waiver just because it references "legal issues." *GWU*, 502 F. Supp. 3d at 87. And critically, courts require more than merely "put[ting] the protected information at issue by making it relevant to the case." *Erie*, 546 F.3d at 229.

In *KBR II*, the D.C. Circuit rejected a claim of "at issue" waiver over an investigative report by the defendant that was directly relevant to the plaintiff's claims. 796 F.3d at 145–50. There, the plaintiff alleged that KBR violated federal regulations in government contracting. *Id.* at 141. In response, KBR disclosed that it had conducted a privileged internal investigation. *Id.* And KBR also introduced evidence that its practice is to disclose to the government any violations uncovered by an internal investigation, and that no such disclosure occurred here. *Id.* at 141–42. The plaintiff argued that KBR thus waived privilege by putting the report's contents "at issue" by "impl[ying]" that it had uncovered no wrongdoing. *Id.* at 146.

Although the District Court agreed, the D.C. Circuit reversed. *Id.* at 150. The Court noted that an "at issue" analysis asks whether particular "documents" are "plac[ed]" "at issue," not whether the underlying topics addressed by them are at issue. *Id.* at 145. The Court explained that even though KBR cited the privileged report in its brief and arguably suggested the report found no wrongdoing, this did not put the contents of the report "at issue." *Id.* at 146–48. The Court so held even though KBR's statements went further than necessary to just explain that the internal

1

investigation was privileged, as the statements additionally implied that the report found nothing negative. *Id.* at 146. Nevertheless, there was "no *actual* disclosure" of the report's contents. *Id.* at 147. "KBR neither directly stated that the [] investigation had revealed no wrongdoing nor sought any specific relief because of [its] results." *Id.* The arguable implication that the investigation found nothing negative was too thin a read to infer a waiver. *Id.* at 147–48. For these reasons, "KBR [did] not 'base[ ] a claim or defense upon the attorney's advice,'" and thus had not placed the report "at issue." *Id.* Indeed, the D.C. Circuit held that the district court's contrary conclusion was "clear and indisputable error" warranting mandamus relief. *Id.* at 150–51; *see also Erie*, 546 F.3d at 228 (granting mandamus petition and vacating finding of at-issue waiver).

The rules governing at-issue waivers apply with equal force to dual-purpose documents containing both legal and business analysis. Where "providing legal advice was *one* of the significant purposes of the attorney-client communication," the document is privileged. *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014) (*KBR I*) (emphasis added). To be sure, if the business portions of the document are segregable, then those portions may be produced with the remainder redacted. *KBR II*, 796 F.3d at 149; *see Raynor v. Dist. of Columbia*, 2019 WL 13250317, at *6 (D.D.C. Apr. 18, 2019). If the legal portions are non-segregable, however, then the document remains privileged "in its entirety." *Boca Invest. P'ship v. United States*, 31 F. Supp. 2d 9, 11 (D.D.C. 1998); *see In re Vitamins Antitrust Litig.*, 211 F.R.D. 1, 5 (D.D.C. 2002) (attorney "memoranda" with "mental impressions" and "intertwined" "factual information"). In fact, both *KBR I* and *KBR II* involved dual-purpose documents. *KBR II*, 796 F.3d at 140. And here, this Court rightly did not suggest that there is business-only language in the privileged memo that can be segregated from the intertwined legal analysis and produced even without an at-issue waiver.

2

2. Jones Day's summary-judgment defense did not place its privileged memorandum "at issue." Jones Day has not asserted an advice-of-counsel defense or otherwise "*relie[d]*" on the memorandum "as an element of … [its] defense." *GWU*, 502 F. Supp. 3d at 87. It was not even cited in the MSJ. *Compare KBR II*, 796 F.3d at 147. And the scattered references to it in exhibits, *e.g.*, MSJ Chase Decl., Ex. 5, did not put it "at issue," particularly given that there was "no *actual* disclosure" of its contents. *KBR II*, 796 F.3d at 147. The case for waiver here is thus even weaker than in *KBR II*, where the defendant both cited the privileged report in its brief and used language that carried a favorable inference about its contents.

Instead, Jones Day has based its defense on Dressing's non-privileged declaration setting forth her business reasons for the leave policy's 8-week post-partum disability assumption. MSJ 7–9 (citing Dressing Decl.). To be sure, Jones Day's defense has therefore put "at issue" Dressing's reasons for recommending the 8-week period and whether those were McCartan's reasons for adopting the 8-week period. But Jones Day has never put at issue the "privileged [memorandum's] contents" to support that defense. *KBR II*, 796 F.3d at 148; *see GWU*, 502 F. Supp. 3d at 87 (rejecting the "notion" that "disclosure of non-privileged information" can "waive[]" "privileged information" merely because it "deals with the same subject matter"). Jones Day has never argued, for example, that the privileged memorandum from Dressing to McCartan set forth her business reasons for the 8-week period. In fact, it has never argued that Dressing conveyed those business reasons to McCartan *at all*. Rather, it has argued only, as the Court recognized, that a fact-finder could infer that Dressing's nondiscriminatory reasons are attributable to Jones Day under a "'cat's paw' theory," Op. 73—*i.e.*, McCartan merely served as a "conduit" for Dressing's selection of an 8-week post-partum disability period. *Walker v. Johnson*, 798 F.3d 1085, 1095 (D.C. Cir. 2015). Such an argument is particularly appropriate here because the policy McCartan approved *did not*

3

*state* the precise length of the disability period. *See, e.g.*, Chase Decl., Ex. 6. It described the general length of physician certifications, but did not specify the actual disability period under the policy. *See id.* The 8-week assumption was not clarified until later, in a separate, non-privileged communication from Dressing to female lawyers explaining how the policy would work in practice, which has been produced to Plaintiffs. *See* Sheketoff Decl., Ex. 2. That underscores Jones Day's defense does not place at issue the earlier privileged memorandum.

3. In suggesting the contrary view, this Court focused on the memorandum's relevance in "arguably" impeaching Dressing. Op. 79. It reasoned that the memorandum might be construed to "shed light on" business reasons different from what Dressing has now declared, and those reasons could be construed to suggest the high-end of the range was selected "to minimize the financial benefit [the firm] was required to extend to male associates." *Id.* at 75, 78–79. Even accepting for now that factual characterization—though Jones Day disagrees—the legal conclusion of an at-issue waiver is still foreclosed by *KBR II*: "[w]here [Jones Day] neither directly stated that the [memorandum] had revealed [nondiscriminatory reasons for the disability period] nor sought any specific relief because of the [memorandum's contents], [it] has not 'based … [its] defense upon the [memorandum].'" 796 F.3d at 147. It is insufficient that the memorandum "might be relevant" for *Plaintiffs' attempts to impeach* Dressing's testimony. *See GWU*, 502 F. Supp. 3d at 87; *see also, e.g.*, *In re Concepts Am., Inc.*, 2021 WL 1235376, at *5 (N.D. Ill. Mar. 16, 2021) ("wish to impeach" with other side's "privileged documents" "is not a basis for finding an at-issue waiver"). As KBR's *own implication* that the internal investigation had uncovered no wrongdoing was insufficient to create an at-issue waiver, *KBR II*, 796 F.3d at 147-48, it necessarily follows that Jones Day has not put at issue Dressing's privileged memorandum to McCartan merely because Plaintiffs wish to use that memorandum to impeach Jones Day's permissible use of

4

Dressing's non-privileged declaration to satisfy its burden to produce evidence of a nondiscriminatory rationale for the 8-week assumption, Op. 72–73.

This would be obvious if McCartan were available to testify. If he had testified that he never focused on what the specific length of the disability period should be, and that the Firm used an 8-week assumption simply because that was what Dressing recommended, Plaintiffs could not obtain a privileged memorandum to try to impeach his testimony. Privilege is not waived just because one who received privileged advice testifies as to the non-privileged reasons for a decision, and the other side wants to explore the veracity of that testimony. *See GWU*, 502 F. Supp. 3d at 83, 88; *Concepts Am.*, 2021 WL 1235376, at *5; *cf. KBR I*, 756 F.3d at 758. Otherwise, a defendant could *never* rely on non-privileged testimony without waiving privilege over other communications on the same subject. The fact that McCartan is no longer available to testify does not alter the analysis. It still remains that *Plaintiffs* are the ones trying to use the memo to prove an element—discriminatory intent—on which *they* have the ultimate burden of proof. That is not Jones Day putting the memo at issue and waiving its privilege. *See KBR II*, 796 F.3d at 147.

The Court's opinion did not address *KBR II*, and the cases it cited instead do not support finding an at-issue waiver here. *See* Op. 76–77. None found a waiver merely because a privileged communication might help impeach non-privileged testimony. Rather, in the cases that found a waiver, the party to some degree *affirmatively relied on* or *partially disclosed* the *privileged advice itself*. And nearly all the cases pre-date *KBR II*, which acknowledged the earlier D.C. Circuit cases that this Court cited but rejected an at-issue waiver there for reasons that apply here *a fortiori*.[1]

---

[1] Moreover, *Minebea Co. v. Papst*, 355 F. Supp. 2d 518 (D.D.C. 2005), a pre-*KBR II* case, relied on *Hearn v. Rhay*, 68 F.R.D. 574, 582 (E.D. Wash. 1975), and "two courts of appeals have … specifically rejected *Hearn*," *Elec. Wrkrs. Local No. 26 Pension Tr. Fund v. Tr. Fund Adv., Inc.*, 266 F.R.D. 1, 11–12 (D.D.C. 2010) (citing, *e.g.*, *Erie*, 546 F.3d at 227-29). *KBR II* effectively rejected *Hearn*, too. *See* 796 F.3d at 137 (citing *Koch v. Cox*, 489 F.3d 384, 390 (D.C. Cir. 2007)).

5

Dated: October 30, 2024

Respectfully submitted,

 /s/ *Terri L. Chase*
Terri L. Chase (*pro hac vice*)
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, Florida 33131
Ph: (305) 714-9700
Email: tlchase@jonesday.com

Traci Lovitt (Bar No. 467222)
JONES DAY
250 Vesey Street
New York, NY 10281
Ph: (212) 326-3939
Email: tlovitt@jonesday.com

Christopher DiPompeo (Bar No. 1003503)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Ph: (202) 879-3939
Email: cdipompeo@jonesday.com

Anderson T. Bailey (*pro hac vice*)
JONES DAY
500 Grant Street
Pittsburgh, PA 15219
Ph: (412) 391-3939
Email: atbailey@jonesday.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that on October 30, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and distribution to all registered participants of the CM/ECF System, which will serve all counsel of record.

*/s/ Terri L. Chase*
Terri L. Chase (*pro hac vice*)
